Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

***Attorneys for The Dixon Water Foundation***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor. | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |

**DEFENDANT THE DIXON WATER FOUNDATION'S RESPONSE TO PLAINTIFF'S OBJECTION TO MOTION TO INTERVENE AND BRIEF IN SUPPORT**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, The Dixon Water Foundation, a Texas non-profit corporation and the defendant in this adversary proceeding ("Dixon"), and files this, its Response (the "Response") to

the *Plaintiff's Objection* (the "Objection") to the *Motion to Intervene and Brief in Support* [Docket No. 14] (the "Motion"), which has been filed by proposed intervenor, Lumar Land & Cattle, LLC ("Lumar" or "Intervenor"), and in support of this Response would respectfully show the Court as follows:

## I. BACKGROUND

1. Dixon does not oppose the Motion seeking intervention but files this Response to address certain allegations made by the Plaintiff in its Objection.

### A. Pre-petition Background

2. Prior to the Petition Date, on or about November 26, 2018, Dixon, a not for profit foundation whose mission statement is the promotion of healthy watersheds through sustainable land management to ensure that future generations have the water resources they need, entered into a financed purchase and sale agreement with Plaintiff BM318, LLC ("Plaintiff" or "Debtor"), for Dixon's sale to the Plaintiff of over two thousand fifty five (2055.7) acres of real property located in Parker County, Texas and known as the Bear Creek Ranch.

3. In connection with this purchase, the Plaintiff granted to Dixon a promissory note in the original principal amount of $32,946,900, which was secured by the Property (with the exception of a 118.34 acre tract) pursuant to a Deed of Trust recorded under document number 2025-262749 in the official records of Parker County, Texas.

4. By February 2020, Plaintiff was by its own admission in material default of its obligations owed to Dixon, its secured lender. Accordingly, on or about February 27, 2020, Dixon and the Debtor entered into that certain Deed in Escrow Agreement (the "Deed in Escrow Agreement") with American Escrow Company as escrow agent (the "Escrow Agent").

5. Pursuant to the Deed in Escrow Agreement, the Debtor promised Dixon, *inter alia* that if Dixon would forbear from enforcing its legal and equitable rights and remedies, the Debtor

would not permit or cause any further default of its obligations to Dixon, and would pay off its obligations in full, by July 1, 2020. Deed in Escrow Agreement, at §§ 1, 3. A true and correct copy of the Deed in Escrow Agreement is attached hereto as **Exhibit "A"** and incorporated herein by reference for all purposes. In support of these assurances, the Debtor granted to Dixon a Special Warranty Deed incorporated as Exhibit "B" into the Deed in Escrow Agreement and serving as a deed in lieu of foreclosure placed in escrow by the parties with the Escrow Agent (the "Deed in Lieu"). The property the subject of the Deed in Escrow Agreement was comprised of the then remaining, approximately 1,531.75 acres of the Bear Creek Ranch (the "Property").

6. Under this well-established commercial arrangement, the Debtor agreed that if it defaulted on its obligations under the Deed in Escrow Agreement, then pursuant to Dixon's corresponding instructions to the Escrow Agent, the Escrow Agent was directed to record the Deed in Lieu, transmit documentation of the recorded Deed in Lieu to Dixon, and deliver to Dixon the Debtor's Release of Lender ("Release of Dixon"). Deed in Escrow Agreement, at § 3.

7. The Debtor expressly acknowledged, represented and agreed that Dixon's forbearance provided valuable consideration to and for the Debtor in exchange for the Deed in Escrow Agreement granted by the Debtor, and that such Deed in Escrow Agreement is enforceable, including by specific performance:

> The provisions of this Agreement shall be enforceable by any means available at law or equity, including (without limitation) an action for specific performance.
>
> ****
>
> LENDER HAS AGREED TO FOREBEAR FROM EXERCISING CERTAIN APPLICABLE REMEDIES (INCLUDING, WITHOUT LIMITATION, FORECLOSURE OF THE PROPERTY) IN CONNECTION WITH THE SPECIFIED DEFAULT, AND SUCH FORBEARANCE BY LENDER IS VALUABLE AND MEANINGFUL CONSIDERATION TO BORROWER IN EXCHANGE FOR BORROWER'S EXECUTION OF THIS AGREEMENT AND COMPLIANCE WITH THE TERMS OF THIS AGREEMENT (INCLUDING,

> WITHOUT LIMITATION, DELIVERY OF THE ESCROWED DOCUMENTS AND CONDITIONAL AUTHORIZATION TO RELEASE THE ESCROWED DOCUMENTS AS PROVIDED HEREIN).

Deed in Escrow Agreement, at §§ 8, 10.d.

8. After the Debtor defaulted on its modified obligations to Dixon, on July 2, 2020, the Escrow Agent recorded the Deed in Lieu and then transmitted the recorded deed, as well as the Release of Dixon, to Dixon. *See, e.g.,* Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer [Docket No. 1], at ¶ 15.

**B. Bankruptcy Background**

9. Subsequent thereto, on September 1, 2020, the Debtor filed with this Court its voluntary petition under Chapter 11 of Title 11 of the United States Code, §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), and thereby initiating its above-captioned bankruptcy case ("Bankruptcy Case").

10. Beginning on November 13, 2020, through January 4, 2021, the Debtor filed an original and amended proposed chapter 11 plan, as well as four (4) successive Disclosure Statement iterations and inserts. *See* Bankruptcy Case Docket Nos. 36, 37, 39, 40, 52, 56.

11. The first few of these plan and disclosure statement documents do not mention Dixon at all, but at all times the iterations of the Debtor's proposed plan consistently provided for payment in full with interest, of all allowed claims. *See, e.g.*, Bankruptcy Case Docket No. 36, at Art.V.B.

12. Although the Debtor's Amended Disclosure Statements filed on December 28, 2020 [Bankruptcy Case Docket No. 52] and January 4, 2021 [Bankruptcy Case Docket No. 56] do mention Dixon (each in 3 places), they do not discuss in any respect any potentially avoidable or otherwise disputed transfer to Dixon. *See* Bankruptcy Case Docket No. 56, at §§ 3.05, 4.03 (n. 3) 15.01. In fact, the Debtor's foregoing discussion is limited to contending that it properly disclosed

to other parties the prior release of any debt owed to Dixon when the Debtor deeded the Property back to Dixon as the original seller.

13. On April 23, 2021, Dixon conveyed a portion of the Property comprised of approximately 204.5 acres, to Lumar (the "Lumar Property").

14. Subsequently, on May 5, 2021, the Debtor filed its *First Modification to the Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 79] and disclosed for the first time, that it asserts corresponding claims against Dixon (*see* pp. 4-5).

15. On May 10, 2021, the Debtor filed its Second Amended Schedules of Assets and Liabilities [Docket No. 82] for the first time including alleged possible claims and causes of action against Dixon. The Debtor did not disclose such alleged possible claims and causes of action in its Original Schedules of Assets and Liabilities filed on September 22, 2020 [Docket No. 20] or in its First Amended Schedules of Assets and Liabilities filed on January 4, 2021 [Docket No. 54].

16. On August 2, 2021, this Court entered its *Order Confirming the Debtor's Second Amended Plan of Reorganization, Dated November 19, 2020* [Bankruptcy Case Docket No. 106] ("Confirmation Order").

**C. Background of the Adversary Proceeding**

17. On August 10, 2021, BM318 filed its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* [Docket No. 1] (the "Complaint"), commencing this adversary proceeding.

18. After Dixon filed its Answer and Counterclaims in response to the Complaint on September 30, 2021, on October 27, 2021, the Debtor filed a *Notice of Lis Pendens* in the official public records of Parker County on and over the entirety of the Bear Creek Ranch originally sold by Dixon to the Debtor, including but not limited to the Property (which itself included the Lumar Property) (the "Lis Pendens").

19. In violation of law, the Debtor has not at any time provided notice to Dixon of the recording of the Lis Pendens. *See* Texas Property Code - PROP § 12.007(d) ("Not later than the third day after the date a person files a notice for record under this section, the person must serve a copy of the notice on each party to the action who has an interest in the real property affected by the notice.").

20. On January 14, 2022, Lumar filed its Motion, seeking to intervene, and pursuant to which Dixon understands that Lumar asserts: (i) that Lumar also has never received notice from the Plaintiff of the recorded Lis Pendens; (ii) that Lumar is a bona fide purchaser for value of the Lumar Property, and the transfer by Dixon to Lumar, accordingly, is not avoidable under the express provisions of section 550(b) of the Bankruptcy Code ("The Trustee may not recover…from a transferee that takes for value…in good faith and without knowing the avoidability of the transfer avoided…"); and (iii) accordingly, because the Lis Pendens clouds Lumar's title to the Lumar Property, Lumar should be granted intervention of right or permissively, pursuant to Fed. R. Civ. P. 24 (made applicable herein under Fed. R. Bankr. P. 7024), to seek a determination from this Court that Lumar is a good faith transferee and bona fide purchaser for value under section 550, and accordingly entitled to expunge the Lis Pendens on the Lumar Property. Motion, at ¶¶ 6-9, 14.

21. The Plaintiff filed its Objection on January 28, 2022 [Docket No. 17], opposing Lumar's intervention alleging that Lumar should not be granted intervention on the alleged grounds that: (i) as a subsequent transferee, Lumar has no interest in the subject matter but only potential claims against Dixon; (ii) "Intervenor either knew of the encumbrance or this fact was hidden by Dixon"; (iii) "Intervenor cannot qualify as a good faith transferee" and knew or should have known of Plaintiff's avoidance claims; (iv) Lumar's interests in intervening are fully

encompassed by Dixon's interests and arguments and therefore adequately represented; and finally (v) a bizarre allegation that Lumar's requested intervention should not be granted, "for the purpose of attacking jurisdiction". Objection, at ¶¶ 4-7. As to permissive intervention, the Plaintiff's Objection asserts the same argument that Lumar's potential interests in this litigation are adequately represented by Dixon. *Id*., at ¶ 2.

## II. RESPONSES AND ARGUMENTS IN SUPPORT

22. Each of the Plaintiff's arguments is unsupported by the applicable facts and law.

23. First, the Plaintiff's argument, in paragraph 4 of its Objection, that Lumar has no justiciable interest in this proceeding because, "…it is a subsequent transferee from Dixon. Its claims are those against Dixon Water Foundation not the Plaintiff," flies in the face of the express terms of 11 U.S.C. § 550(b) invoked by Lumar. That section expressly provides a subsequent transferee such as Lumar with a statutory defense to the *Plaintiff's* claims to recover any interest in the Lumar Property. This subsequent transferee defense is plainly an interest that is *not* held or assertable by Dixon and expressly refutes the positon that Lumar has no justiciable interest herein.

24. Second, in support of its arguments regarding adequate representation the Plaintiff cites to a Ninth Circuit line of cases and three (3) part test promulgated in the 1970's. *See* Objection at ¶ 3(citing *County of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980) (citing *Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977)); *accord Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 529 (9th Cir. 1983).

25. Although the Fifth Circuit Court of Appeals has identified this test as "similar", it is not applicable in this Circuit; rather, the applicable standard here is the "minimal burden" test promulgated by the Supreme Court and cited by Lumar. *See* Motion, at ¶ 12 (citing *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). *See also Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014); *Heaton v. Monogram Credit Card Bank*, 297 F.3d 416, 425 (5th Cir.

2002) ("All he needs to show is that representation by the existing parties ***may*** be inadequate." Emphasis supplied; citation omitted).

26. The same considerations apply to the Lumar Property and Lumar's rights to expunge the Lis Pendens. The surreptitious encumbrance of another party's property rights without notice to that party has long been expressly invalidated under Texas law. *See* Tex. Prop. Code § 12.0071(a), (c) ("The court shall order the notice of lis pendens expunged if the court determines that…the person who filed the notice for record did not serve a copy of the notice on each party entitled to a copy under Section 12.007(d)").

27. While Dixon also holds the right to expunge the Lis Pendens with respect to the Property interests that Dixon continues to hold, Dixon simply has no present interest in the Lumar Property. Put another way, because Dixon has no present interest in the Lumar Property, Dixon at least arguably has no standing or basis to seek to lift the Lis Pendens from encumbering the specific Lumar Property.[1] While Dixon reserves all of its rights as to same, under the express ruling of *Heaton v. Monogram Credit Card Bank* cited above, this *possible* deficiency in the representation of these specific interests in this adversary proceeding is sufficient to grant Lumar's intervention as of right.

28. That the Plaintiff is making such an attempt against Lumar's separate interests is confirmed by the Lis Pendens encumbering the Lumar Property. Simply put, by its own Objection and improper Lis Pendens, it is clear that the Plaintiff seeks to recover the Lumar Property and to thereby attack Lumar's unique interests.

[1] *See, e.g., In re Solomat Partners, L.P.*, 231 B.R. 149, 155 (2d. Cir. B.A.P. 1999) (parties have standing only to assert their own interests); *In re Applied Safety, Inc.*, 200 B.R. 576, 587 (E.D. Pa. 1996) ("Generally, it is only an aggrieved party, whose own interests are impacted…may object…"); *Davis v. Seidler (In re HST Gathering Co.)*, 125 B.R. 466, 468 (W.D. Tex. 1991) (standing is absent where the putative party lacks a legally cognizable interest in the subject matter).

29. Moreover, the Plaintiff's allegation that at the time of Dixon's sale to Lumar Dixon knew of, and concealed, the alleged avoidability of the transfer of the property to Dixon pursuant to the Deed in Escrow Agreement and Deed in Lieu, is plainly false under the circumstances. This allegation is refuted on the face of the Deed in Escrow Agreement and the Plaintiff's numerous, foregoing representations to Dixon therein as to the enforceability and validity of that agreement.

30. It is also the case that the Plaintiff itself did not disclose that it might seek to transfer the Property until after Dixon sold the Lumar Property to Lumar, given that at such time the Debtor had filed several iterations of a proposed plan and disclosure statement seeking to pay 100% of allowed claims, with interest, and without mentioning any such potential claims or disputes.

31. The Plaintiff's attempt to oppose Lumar's intervention by disputing that Lumar is a good faith transferee and bona fide purchaser for value cannot be a valid basis to oppose Lumar's requested intervention, because these are the very claims and causes of action that Lumar seeks to assert for the Court's resolution in this proceeding. It is inappropriate to oppose relief under the mere assumption that the objector will prevail, as such an argument presupposes the Plaintiff's victory. "Logicians from Aristotle to Bertrand Russell — not to mention the Supreme Court of the United States — do not approve of such a logical Möbius strip." *Kidd v. Dir. of the Fed. Bureau of Prisons*, No. 2:19-CV-113-Z, 2020 U.S. Dist. LEXIS 26488, at *8 (N.D. Tex. Feb. 14, 2020) (citations omitted).

32. Finally, as to the Plaintiff's jurisdictional argument, Lumar actually does not mention any jurisdictional issue or dispute in its Motion whatsoever, and in fact, Lumar's proposed complaint attached to its Motion expressly avers and acknowledges that this Court has jurisdiction over the adversary proceeding and Lumar's proposed intervention claims. *See* Motion, at Exh. A (Art.II – Jurisdiction and Venue).

WHEREFORE, PREMISES CONSIDERED, Defendant The Dixon Water Foundation, a not for profit corporation, respectfully prays that this Court overrule the Objection, grant Lumar Land & Cattle, LLC's Motion for Intervention, and that the Court grant any other relief that it deems just and proper.

Dated: February 8, 2022

/s/ *Deborah M. Perry*

Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

*Attorneys for The Dixon Water Foundation*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of February, 2022, a true and correct copy of the foregoing document was served via ECF notification on all parties entitled to ECF notification in this Bankruptcy Case.

/s/ *Deborah M. Perry*
Deborah M. Perry