Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

# PLAINTIFF-IN-INTERVENTION LUMAR LAND & CATTLE, LLC'S OBJECTION TO BM318'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff-in-Intervention Lumar Land & Cattle, LLC ("Lumar"), files this Objection (the "Objection") to *BM318's Motion for Leave to File Amended Complaint* ("Motion for Leave") and respectfully shows the Court the following:

## I.
## SUMMARY OF OBJECTION

1. By the Motion for Leave, BM318, LLC ("BM318" or "Debtor") seeks leave from the Court, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, as made applicable to this adversary proceeding (the "Adversary Proceeding") pursuant to rule 7015 of the Federal Rules of Bankruptcy Procedure, to file the *Plaintiff's First Amended Complaint* (the "Amended Complaint") attached as Exhibit A to the Motion for Leave.

2. The Amended Complaint asserts the following causes of action (collectively, the "Common Law Claims") against Lumar and other parties:

a. Count V – Tortious Interference with a Contract;

b. Count VI – Tortious Interference with a Prospective Contract;

c. Count VII – Breach of Fiduciary Duties;

d. Count VIII – Fraud;

e. Count IX – Conversion;

f. Count X – Fraud in a Real Estate Transaction;

g. Count XI – Constructive Fraud;

h. Count XII – Negligent Misrepresentation;

i. Count XIII – Aiding and Abetting and/or Knowing Participation – Breach of Fiduciary Duties;

j. Count XIV – Conspiracy to Commit Fraud and/or Fraud in Real Estate;

Constructive Fraud, Conversion, Tortious Interference (Contract and Prospective Contract), and/or Breach of Fiduciary Duties; and,

k. Count XVI – Alter-Ego/Piercing the Corporate Veil/Reverse Piercing the Corporate Veil.

3. BM318 seeks to add as parties, GH Lumar, LLC, Aledo West, LLC, GH Lumar, JV, Railhead Realty LLC, Jim Martin, Ronald Hughes, Robert Potts, Gary Hazelwood, and individual members of the Dixon Water Foundation board of directors (collectively, the "Proposed Additional Parties").

4. All of the Common Law Claims are state common law causes of action.

5. Lumar requests that the Court deny leave to BM318 to file the Amended Complaint asserting the Common Law Claims, against Lumar and the Proposed Additional Parties, because (1) BM318 is judicially estopped from asserting the Common Law Claims because BM318 failed to disclose the Common Law Claims as assets of BM318's bankruptcy estate in either the bankruptcy schedules or the disclosure statement, and/or (2) BM318 has no standing to assert the Common Law Claims because such claims were not properly disclosed and preserved to be prosecuted post-confirmation by BM318 pursuant to its confirmed Plan (defined below).

6. The Court has discretion to deny a motion to amend if the amendment is futile. *See Marucci Sports, L.L.C. v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014) (citing *Jones v. Robinson Prop. Grp., Lp,* 427 F.3d 987, 994 (5th Cir. 2005). As will be demonstrated below, Lumar contends that a denial of leave to amend as to the Common Law Claims is warranted because the record in BM318's chapter 11 case clearly establishes the basis for the application of judicial

estoppel as well as BM318's lack of standing. According, Lumar respectfully requests that the Court deny BM318's Motion for Leave.

## II.
## RECORD IN THE CHAPTER 11 CASE

### A. Debtor's Schedules.

7. The Debtor filed its original schedules in the chapter 11 case on September 22, 2020 [BK Dkt. No. 20] (the "Original Schedules"). The Original Schedules disclosed only two assets: a Certificate of Deposit at Citizens Bank in the amount of $169,636.00 and a parcel of undeveloped real property located in Parker County with a value of $4,250,000.[1]

8. On January 4, 2021, the Debtor filed an amended Schedule A/B and G [BK Dkt. No. 54] ("First Amended Schedule A/B"). In the First Amened Schedule A/B, the Debtor disclosed one additional asset consisting of an oil and gas interest on the Debtor's 118-acre real property.[2]

9. On May 10, 2021, the Debtor filed a further amended Schedule A/B and Schedule E/F ("Second Amended Schedule A/B"). In the Second Amended Schedule A/B, the Debtor disclosed another asset consisting of possible causes of action against Dixon Water Foundation ("Dixon").[3]

10. Two days after filing the Second Amended Schedule A/B, on May 12, 2021, the Debtor amended Schedule A/B for the third time [BK Dkt. No. 93] ("Third Amended Schedule A/B"). In the Third Amended Schedule A/B, in response to question 74 ("Question 74") relating

---

[1] *See* Original Schedules, Schedule A/B, questions 4.1 and 55.1.
[2] *See* First Amended Schedule A/B, question 77.
[3] *See* Second Amended Schedule A/B, question 74.

to causes of action against third parties, the Debtor added potential causes of action against three individuals, Tim Green, Chuck Stark, and Jim Martin as follows:

74. Causes of action against third parties (whether or not a lawsuit has been filed)

| | | |
|---|---|---|
| Possible cause of action against Dixon Water Foundation for preferential transfer under 11 U.S.C. Section 547, fraudulent transfer under 11 U.S.C. Section 548, recovery of avoidable transfers under 11 U.S.C. Section 550, and disallowance of claims under 11 U.S.C. Section 502. | | $27,000,000.00 |
| Nature of claim | Fraudulent Transfer & Other Actions | |
| Amount requested | | |
| Possible cause of action against Tim Green for claims including, but not limited to, tortious interference, breach of contract, misrepresentation, fraud, breach of fiduciary duty and all related claims and causes of action | | Unknown |
| Nature of claim | Fraudulent Transfer & Other Actions | |
| Amount requested | | |
| Possible cause of action against Chuck Stark for claims including, but not limited to, tortious interference, breach of contract, misrepresentation, fraud, breach of fiduciary duty and all related claims and causes of action | | Unknown |
| Nature of claim | Fraudulent Transfer & Other Actions | |
| Amount requested | | |
| Possible cause of action against Jim Martin for claims including, but not limited to, tortious interference, breach of contract, misrepresentation, fraud, breach of fiduciary duty and all related claims and causes of action | | Unknown |
| Nature of claim | Fraudulent Transfer & Other Actions | |
| Amount requested | | |

Third Amened Schedule A/B, p. 6. The Original Schedules, the First Amended Schedule A/B, the Second Amended Schedule A/B, and the Third Amended Schedule A/B are collecctively referred to as the "Schedules A/B."

11. No further amended schedules were filed after the Third Amended Schedule A/B. BM318 has never disclosed any of the Common Law Claims against Lumar, or the Proposed Additional Parties in its Schedules A/B except for the potential causes of action against Jim Martin disclosed in the Third Amended Schedule A/B.

**B. The Debtor's Plan and Disclosure Statement.**

12. On January 5, 2021, the Court entered the *Order Approving Debtor's Second Amended Disclosure Statement for Debtor's Plan of Reorganization Dated November 19, 2020*

[BK Dkt. No. 57] ("Disclosure Statement Order") approving the Debtor's *Second Amended Disclosure Statement for Debtor's Plan of Reorganization Dated November 19, 2020* filed on January 4, 2021 [BK Dkt. No. 56] (the "Disclosure Statement").

13. On August 6, 2021, the Court entered the *Order Confirming Debtor's First Amended Plan of Reorganization Dated November19, 2020, As Modified* [BK Dkt. No. 106] (the "Confirmation Order"), confirming the *Debtor's First Amended Plan of Reorganization Dated November 19, 2020* [BK Dkt. No. 39] ("Amended Plan"), as modified by the *First Modification to Debtor's First Amended Plan of Reorganization* [Dkt. No. 79] ("First Modification") and the *Third Modification to Debtor's First Amended Plan of Reorganization* [Dkt. No. 100] ("Third Modification," and collectively with the Amended Plan and the First Modification, the "Plan").

14. The Disclosure Statement includes as Article IV an "Analysis of Valuation of Property." Article IV includes in section 4.02 a description of BM318's personal property and, in section 4.03, a liquidation analysis. These portions of the Disclosure Statement do not mention any of the Common Law Claims. The Disclosure Statement also does not contain any provision specifically addressing the reservation of any of the Common Law claims by BM318.

15. Article VIII, section 8.01 of the Amended Plan is the provision addressing preservation of claims and causes of action for prosecution by the Reorganized Debtor. Section 8.01 of the Amended Plan was subsequently replaced in its entirety by the First Modification (which is reproduced in full below). However, this provision, on its face only purports to specifically reserve claims against Dixon. In this context, a "Claim" is defined in Article I of the Amended Plan to have the "meaning set forth in Bankruptcy Code § 101(5)."

6. Section 8.01 of the Plan is replaced in its entirety with the following new Section 8.01:

> **8.01 <u>The Debtor's Causes of Action</u>**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.
>
> **<u>Reservation of causes of action against Dixon Water Foundation.</u>** The Debtor has causes of action against Dixon Water Foundation ("Dixon") related to a deed in lieu of foreclosure recorded by Dixon on or about July 2, 2020, pursuant to which Dixon took title to approximately 1,531.75 acres of land owned by the Debtor in Parker County, Texas. The Debtor's causes of action against Dixon related to this transaction are for preferential transfer under 11 U.S.C. Section 547, fraudulent transfer under 11 U.S.C. Section 548, recovery of avoidable transfers under 11 U.S.C. Section 550, and disallowance of claims under 11 U.S.C. Section 502. It is possible the Debtor has other causes of action against Dixon related to the same transaction. Without limiting the general reservation of all causes of action by the Debtor in the foregoing paragraph, the Debtor hereby specifically reserves and retains the aforementioned causes of action against Dixon. The Debtor intends to file an adversary complaint against Dixon based on these causes of action.

## III.
## <u>OBJECTION</u>

16. FRCP Rule 15(a)(1) permits a party to amend its pleading once as a matter of course (a) twenty-one (21) days after serving it, or (b) if a responsive pleading is required, twenty-one (21) days after service of either a responsive pleading or a motion under Rule 12(b), (e) or (f) of the Federal Rules of Civil Procedure. Where Rule 15(a)(1) does not apply, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further provides that the

Court "should freely give leave where justice so requires." *Id*. "This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment…'" *Carroll v. Ft. James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (quoting *Dussouy v. Gulf Coast Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981).

17. Trial courts are entrusted with the discretion to grant or deny motions to amend and may consider a variety of factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed undue prejudice to the opposing party… and futility of the amendment." *Marucci Sports*, 751 F.3d at 378. An amendment is considered futile if the amended pleading would be subject to a motion to dismiss, including on the basis of lack of standing. *See e.g. Official Comm. of Unsecured Creditors v. Pardee (In re Stanwich Fin. Servs. Corp.)*, 317 B.R. 224, 226-227 (Bankr. D. Conn. 2004); *Maloney v. Weintraub (In re Weintraub)*, 2005 Bankr. LEXIS 983 *5-6 (Bankr. N.D. Ga. April 25, 2005).

18. In the instant case, justice would not be served by permitting the requested amendment. Rather, the Motion for Leave must be denied because the amendment would be futile as to the Common Law Claims because BM318 (1) is judicially estopped from pursuing the Common Law Claims because such claims were never disclosed by BM318 in its Schedules A/B or the Disclosure Statement prior to confirmation of the Plan; and/or (2) lacks standing to prosecute the Common Law Claims because the Common Law Claims were not properly preserved for post-confirmation prosecution by BM318 under either the Plan or the Disclosure Statement.

**A. BM318 is judicially estopped from pursuing the Common Law Claims.**

19. Judicial estoppel is "a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position". *Brandon v. Interfirst Corp*., 858 F.2d 266, 268 (5th Cir. 1988). "[A]gainst the backdrop of the bankruptcy system… judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system…" *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2015). The Bankruptcy Code places an "an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*." *Browning Mfg. v. Mims* (*In re Coastal Plains, Inc.)*, 179 F.3d 197, 207-08 (5th Cir. 1999) (emphasis in original). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.* The Fifth Circuit has further instructed that the duty of full disclosure is sacrosanct and that its importance in the bankruptcy system "cannot be overemphasized." *Id*.

20. Courts in many cases have precluded debtors or former debtors from pursuing claims about which the debtor had knowledge but did not disclose during the debtor's bankruptcy case.[4] In assessing whether judicial estoppel should apply, courts in the Fifth Circuit consider three primary guidelines:

(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position;

(2) a court accepted the prior position; and

(3) the party did not act inadvertently.

---

[4] *See*, *e.g., Payless Wholesale Distributors, inc. v. Alberto Culver (P.R.) Inc.*, 989 F.2d 570 (1st Cir.), *cert. denied*, 510 U.S. 931 (1993); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3rd Cir. 1988); *Chandler v. Samford University*, 35 F.Supp. 2d 861 (ND. Ala. 1999).

*Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005). In this case, the court entered the Disclosure Statement Order approving the Disclosure Statement, the approval of which was a condition to soliciting acceptances of the Plan, which fails to disclose any of the Common Law Claims.

21. The Fifth Circuit has found that "[j]udicial estoppel is particularly appropriate where… a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Id.* "However, judicial estoppel is not governed by 'inflexible prerequisites or an exhaustive formula for determining [its] applicability,' and numerous considerations 'may inform the doctrine's application in specific factual contexts.'" *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

**(a) The Debtor has taken inconsistent positions.**

22. Prior to confirmation of the Plan, the Debtor amended the Schedules A/B three times. Question 74 in Part 11 specifically requires the disclosure of causes of action against third parties. Consequently, in the final amendment to Schedules A/B dated May 12, 2021, BM318 finally disclosed potential causes of action against Dixon and three individuals: Tim Green, Chuck Stark, and Jim Martin. While BM318 may have delayed the disclosures of these causes of action for tactical reasons, it clearly appreciated the need to disclose all causes of action in response to Question 74.

23. Schedules A/B, in all its iterations, never disclosed, in response to Question 74, any possible causes of action against Lumar or any of the Proposed Additional Parties (other

than Jim Martin).[5] Likewise, in the Disclosure Statement, BM318 never disclosed the existence of any of the Common Law Claims, even though Article IV contained an analysis of the value of BM318's personal property and a liquidation analysis. The Common Law Claims clearly should have been disclosed and addressed in this context.

24. BM 318's failure to disclose these causes of action amounts to a tacit representation that they do not exist. "In light of [the] duties and obligations [of disclosure imposed on a debtor by the Bankruptcy Code], a debtor's failure to disclose a claim during the bankruptcy 'is tantamount to a representation that no such claim existed.'" *ASARCO, LLC v. Mont. Res., Inc.,* 514 B.R. 168 (S.D. Tex. 2013) (citing *In re Superior Crewboats,* 374 F.3d 330, 335 (5th Cir. 2004)); *Davis v. Wells Fargo Bank*, 2020 U.S. Dist. LEXIS *87592 *10* (N.D. Tex. April 23, 2020) ("By omitting a claim or potential claim from the applicable bankruptcy schedule(s), a debtor represents to the bankruptcy court that the claim does not exist.").

25. Accordingly, the omission by BM318 to disclose the Common Law Claims in its Schedules A/B (except as to Jim Matin) or in the Disclosure Statement requires BM318 to assert an inconsistent position based on its request to amend and assert these causes of action and satisfies the first element of judicial estoppel. *See Id*. ("Accordingly, if a litigant fails to disclose a pending or potential claim during a bankruptcy proceeding and later attempts to pursue that claim in a court of law, then element one of the test for judicial estoppel is met.").

**(b) The Bankruptcy Court has accepted Debtor's prior position.**

26. The second element of judicial estoppel requires that "the first court has adopted

[5] In the Amended Complaint BM318 asserts that Jim Martin is an owner, principals, and/or president of Lumar. *See* Amended Complaint, ¶ 17. It is important to note that in the Third Amened Schedule A/B, the disclosure of possible claims against Jim Martin makes no references to any possible claims against entities owned or controlled by, or affiliated with, Mr. Martin.

the position urged by the party, either as a preliminary matter or as a part of a final disposition." *In re Superior Crewboats,* 374 F.3d 330, 335 (5th Cir. 2004). "Courts have consistently held that a bankruptcy court accepts a debtor's position when it relies on her asset schedules and confirms her bankruptcy plan." *Abreu v. Zale Corp.*, 2013 U.S. Dist. LEXIS 67385 at *8 (N.D. Tex. May 13, 2013). "A formal judgment is not required" for the "court assumes reliance on the debtor's schedules when the bankruptcy court confirms the debtor's plan." *Id.* (citing *Jethroe v. Omnova Solutions, Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

27. In this case, the Court has entered the Disclosure Statement Order approving the Disclosure Statement which, while it purports to address BM318's assets and provides a liquidation analysis, fails to disclose or address the existence of the alleged Common Law Claims. Approval of the Disclosure Statement was a condition to soliciting acceptances of the Plan, a process which ultimately concluded with the entry of the Confirmation Order. BM318 received a discharge pursuant to Article XI, section 9.01 of the Plan. Indeed, the entire progress of the bankruptcy case, culminating with the entry of the Confirmation Order, all rested on the premise that BM318 had fully disclosed all of its assets, including causes of action against third parties. Based on the entry of the Disclosure Statement Order and the Confirmation Order confirming the Plan, the Court has accepted BM318's position as represented in Schedules A/B and the Disclosure Statement that no causes of action existed except as expressly disclosed. Accordingly, the second element of judicial estoppel is satisfied.

**(c) The failure to disclose the Common Law Claims was not inadvertent.**

28. The third element for judicial estoppel addresses whether the party to be estopped acted inadvertently. "In considering judicial estoppel for bankruptcy cases, the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either

lacks knowledge of the undisclosed claims or has no motive for concealment." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012)

29. BM318 and its insiders had knowledge of the acts and transactions giving rise to the alleged Common Law Claims. The Amended Complaint is replete with allegations in support of the Common Law Claims that Jim Martin either acted through Lumar or certain of the other Proposed Additional Parties acted through Jim Martin. The acts, transactions, or circumstances which form the basis of the Common Law Claims against Jim Martin, Lumar, and the Proposed Additional Parties were known to BM318 and BM318 clearly believed that these acts, transactions, and circumstances gave rise to common law tort claims. By including a disclosure of possible causes of action against Jim Martin in the Schedules A/B arising out of the same acts, transactions, and circumstances as gave rise to the alleged Common Law Claims, BM318 cannot deny that it had knowledge of the Common Law Claims asserted against Lumar and the Proposed Additional Parties.

30. BM318's motive here is to make an improper use of the alleged Common Law Claims for the purpose of harassment in an attempt to force a settlement from Lumar and the other defendants. As explained in the First Modification, prior to confirmation of the Plan, BM318 sold the 118-acre parcel of undeveloped real property it owned. The sale generated sufficient proceeds to pay its secured creditor in full. It also appears that the sale proceeds are sufficient to pay the non-insider unsecured creditors in full, although the Plan does not provide for interest to be paid to unsecured creditors. Thus, the only remaining class of creditors potentially not yet paid in full from the sale proceeds are insider creditors. As a result, the undisclosed Common Law Claims against Lumar and other defendants in this Adversary Proceeding are being asserted solely for the benefit BM318 and its insiders. The prosecution of

undisclosed causes of action for the benefit of the debtor and its insider is an improper abuse of the bankruptcy process.

31. Denying BM318 leave to amend does not adversely impact any non-insider creditors. The prosecution of the Common Law Claims does not advance any proper bankruptcy objective. Once BM318 chose to utilize the bankruptcy process and accepted the full benefits of the process by confirming the Plan, it must be bound by, and held accountable for, the corollary obligations of disclosure imposed by the Bankruptcy Code. BM318 failed to satisfy its duty to disclose the Common Law Claims and should not be allowed to prosecute these undisclosed claims solely for its own benefit and the benefits of its insiders. This presents the exact type of situation that threatens to undermine the integrity of the bankruptcy system. Under these circumstances, application of judicial estoppel is warranted.

32. Based upon the foregoing, Lumar moves the Court to deny the Motion for Leave on the basis that BM318 is judicially estopped from pursuing the Common Law Claims.

**B. BM318 lacks standing to pursue the Common Law Claims.**

33. During the pendency of a chapter 11 case, a debtor-in-possession has most of the powers of a bankruptcy trustee to pursue claims on behalf of the estate. *See* 11 U.S.C. § 1107(a). Upon confirmation the occurrence of the effective date of a chapter 11 plan, "the debtor losses its debtor-in-possession status and with it, standing to pursue the estate's claims." *Compton v. Anderson (In re MPF Holdings US LLC)*, 701 F.3d 449, 453 (5th Cir. 2012) (citing *Dynasty Oil & Gas, LLC v. Citizens Bank (In re United Operating, LLC)*, 540 F.3d 351 (5th Cir. 2008)). However, Section 1123(b)(3) of the Bankruptcy Code allows a debtor to retain causes of action of the bankruptcy estate through the reorganization plan so to give standing to a reorganized debtor to bring a post-confirmation action on a "claim or interest belonging to the debtor or to

the estate." 11 U.S.C. § 1123(b)(3). "A debtor may preserve its standing to bring such a claim (e.g. for fraud or breach of fiduciary duty, or to avoid a preferential transfer) but only if the plan of reorganization expressly provides for the claim's 'retention an enforcement by the debtor'" United *Operating*, 540 F.3d at 355.

34. "Standing is a jurisdictional requirement, and [the court is] obliged to ensure it is satisfied regardless of whether the parties address the matter." *Id.* at 354; *In re Weaver*, 632 F.2d 461, 463 n.6 (5th Cir. 1980) ("The standing of the trustee to bring these actions was neither argued nor decided in the courts below. Because standing is an element of constitutional requirement of 'case or controversy,' lack of standing deprives the court of subject matter jurisdiction. Therefore, objections to standing are never waived and must be raised by an appellate court *sua sponte."*). "There is no case or controversy without standing to sue. Standing is a threshold issue that [the court] consider[s] before examining the merits." *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (citing *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

35. For a reservation to be effective, it "must be specific and unequivocal" – blanket reservations of "'any and all claims' are insufficient." *United Operating*, 540 F.3d at 355-56. "[T]he reservation must, at a minimum, be specific enough to put 'creditors on notice of any claim [the debtor] wishes to pursue after confirmation.'" *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013). "[C]ourts may consult the disclosure statement in addition to the plan to determine whether a post-confirmation debtor has standing." *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 551 (5th Cir. 2011). The reservation language does not need to specifically itemize each and every claim; courts have permitted categorical reservation of claims to be sufficient under the "specific and unequivocal" standard. *See Id.* at 552 (recognizing that a plan's categorical reservation of

"preference claims" was sufficiently specific, and need not itemize individual transfers that may be preferential).

36. In *SI Restructuring*, the confirmed liquidating plan provided that the debtors retained:

> "the exclusive right to enforce any claims, rights and causes of action that the Debtors or the Estates may hold against any entity, including without limitation, any claims, rights, or causes action arising under Chapter 5 of the Bankruptcy Code or any similar provision of state law, or ay other statute or legal theory."

*SI Restructuring*, 714 F.3d at 860. The *SI Restructuring* liquidating plan defined "causes of action" broadly to include:

> "[a]ny and all claims, causes of action or rights to legal or equitable remedies, whether known or unknown, reduced to judgment or not, liquidated, or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise, including Avoidance Actions."

*Id.* at 865. "Avoidance Actions" in turn, is defined in the liquidating plan as "[a]ny and all rights, claims and causes of action arising under any provision of Chapter 5 of the Bankruptcy Code…" *Id*.

37. Certain creditors filed a motion seeking derivative standing to pursue claims for "breach of fiduciary duty by the Outsider Directors and Haynes & Boone occurring before the bankruptcy was filed… " *Id.* Thus, the issue of post-confirmation standing was raised in the context of a motion seeking derivative standing. The bankruptcy court denied the motion holding that the post-confirmation plan administrator lacked standing to bring the claims because the claims were not preserved under the plan and therefore there is no derivative standing that could be granted to the creditor. The Fifth Circuit affirmed. The Fifth Circuit found that

'[n]either the Plan nor the disclosure statement references specific state law claims of fraud, breach of fiduciary duty, or any other particular cause action. Instead, the Plan simply refers to all causes of action, known or unknown." The Fifth Circuit concluded that that "such a blanket reservation is not sufficient to put creditors on notice" and agreed with the bankruptcy court that "the plan utterly fails to retain, with any specificity, these types of [common law] claims." *Id.*

38. BM318's Plan contains generic, blanket retention language very similar to that found to be insufficient in *SI Restructuring.* Section 8.01 of the Plan (as modified by the First Modification) addresses retention of causes of action and contains two parts. The first is a reservation of claims in general (the "General Clause"). The second is a specific reservation of claims, but only as against Dixon (the "Dixon Clause"). Section 8.01 of the Plan provides as follows:

> **8.01 The Debtor's Causes of Action**. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.
>
> **Reservation of causes of action against Dixon Water Foundation.** The Debtor has causes of action against Dixon Water Foundation ("Dixon") related to a deed in lieu of foreclosure recorded by Dixon on or about July 2, 2020, pursuant to which Dixon took title to approximately 1,531.75 acres

> of land owned by the Debtor in Parker County, Texas. The Debtor's causes of action against Dixon related to this transaction are for preferential transfer under 11 U.S.C. Section 547, fraudulent transfer under 11 U.S.C. Section 548, recovery of avoidable transfers under 11 U.S.C. Section 550, and disallowance of claims under 11 U.S.C. Section 502. It is possible the Debtor has other causes of action against Dixon related to the same transaction. Without limiting the general reservation of all causes of action by the Debtor in the foregoing paragraph, the Debtor hereby specifically reserves and retains the aforementioned causes of action against Dixon. The Debtor intends to file an adversary complaint against Dixon based on these causes of action.

39. The Dixon Clause is limited to reserving claims specifically as to Dixon and, on its face, does not reserve the Common Law Claims as against any other person. The General Clause specifically reserves claims under "Section 550 of the Bankruptcy Code" (but without disclosing the persons against whom such claims are asserted or the avoidable transactions in which such claims are based). However, the remainder of the provision includes only a generic reservation of "all Claims." The defined term "Claim" is defined under the Plan as having "the meaning set forth in Bankruptcy Code § 101(5)."[6]

40. Congress intended in § 101(5) to adopt "the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78 (1991). The Fifth Circuit has also noted "[t]he House and Senate Reports state that 'by this broadest possible definition [of the term 'claim'] … the bill contemplates that all legal obligations of the debtor *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311 (5th Cir. 1996) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 22 (1978)).

---

[6] *See* Amended Plan, p. 4.

41. A generic, non-specific reservation of "all Claims" in the Plan is the antithesis of the "specific and unequivocal" standard required under *United Operating*, 540 F.3d at 355. BM318's Plan, like the liquidating plan in *SI Restructuring*, contains only generic, blanket language preserving all possible claims. There is no mention, either in section 8.01 of the Plan or elsewhere of the preservation of any of the Common Law Claims asserted in the Amended Complaint.

42. Similarly, the Disclosure Statement does not address the retention of causes of action. Rather, causes of action of the estate are generally referred to in section 8.01 under Article IX of the Disclosure Statement which provides as follows:

> **ARTICLE IX**
> **<u>FEASIBILITY OF PLAN</u>**
>
> **8.01** The Debtor asserts that its Plan is feasible based on **Exhibits "B" and "C"**. The funds necessary to fund the Plan will come from the ongoing sale of developed lots. All causes of action shall remain fully vested in the Reorganized Debtor. The failure to identify a claim or cause of action is not specifically a waiver of such claim or cause of action. To the extent of any recovery on claims and causes of action that belong to the Reorganized Debtor as disclosed herein, if any, such funds will be contributed by the Reorganized Debtor (less costs and expenses associated with any litigation) to pay the Class 7 creditors with allowed claims.

43. The generic reservation in the Disclosure Statement is no more specific than the language contained in the General Clause in the Plan, and likewise fails to provide the required specific and unequivocable retention of the Common Law Claims required by *United Operating.*

44. Based upon the foregoing, Lumar respectfully requests that the Court deny the Motion for Leave to assert the Common Law Claims based on a lack of standing of BM318.

## IV.
## PRYAER FOR RELIEF

WHEREFORE, for the foregoing reasons, Lumar respectfully request that the Court deny the Motion of Leave to the extent of the Common Law Claims on the basis that BM318 is judicially estopped, and/or lacks standing to pursue those claims, and for such other and such other and further relief to which Lumar may be justly entitled

Respectfully submitted,

*/s/ Kimberly P. Harris*
KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**- And -**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 31, 2022, a true and correct copy of the foregoing *Objection* was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, including both the Debtor-Plaintiff BM318 and Dixon, through counsel.

*/s/ Joshua L. Shepherd*
Joshua L. Shepherd