Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

***Attorneys for The Dixon Water Foundation***

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re:<br><br>BM318, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 20-42789-mxm-11<br><br>CHAPTER 11 |
| BM318, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE DIXON WATER FOUNDATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | ADVERSARY NO. 21-04051 |
| LUMAR LAND & CATTLE, LLC,<br><br>Plaintiff-in-Intervention<br><br>v.<br><br>BM318, LLC,<br><br>Defendant-in-Intervention | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |

**DEFENDANT THE DIXON WATER FOUNDATION'S OBJECTION TO BM318, LLC'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, The Dixon Water Foundation, a Texas non-profit corporation and the defendant in this adversary proceeding ("Dixon"), and files this, its Objection (the "Objection") to *BM318, LLC's Motion for Leave to File Amended Complaint* [Docket No. 50] (the "Motion for Leave"), which has been filed by Plaintiff BM318, LLC ("BM318," "Plaintiff" or "Debtor"), and in support of this Objection would respectfully show the Court as follows:

## I. PRELIMINARY STATEMENT

1. The Court should deny all of the relief requested in the Motion for Leave as it pertains to the addition of any allegations, claims and causes of action against Dixon, Robert Potts, the members of Dixon's Board and other parties such as Lumar, and the other parties sought to be joined. All of the claims proposed to be added are barred by binding Fifth Circuit case law as BM318 has no standing to bring such claims because they were not unequivocally and specifically reserved under the confirmed Plan. The proposed addition of claims against Dixon as well as adding Mr. Potts and the Dixon Board as defendants is nothing more than a transparent litigation tactic being used by BM318 to try to assert leverage on Dixon, and BM318 has unduly delayed in attempting to bring such claims.

2. Dixon is a not-for-profit foundation who accepted back its seller-financed property via a Deed in Escrow Agreement negotiated at arms-length with BM318 following BM318's undisputed defaults. BM318 now seeks to unwind such arms-length transaction even though the evidence will clearly show that it received reasonably equivalent value. Now, BM318 improperly seeks to join the officers and directors of Dixon, as well as other parties at this late date, through claims that are clearly barred by the terms of the Plan. Further, even if they were not barred by

binding Fifth Circuit precedent, the new claims asserted against Dixon, Mr. Potts and the Dixon Board would not survive a motion to dismiss and are futile. Applicable Texas law has long invalidated such transparent litigation tactics under the well-established doctrine of *respondeat superior*. Accordingly, for the foregoing reasons and the reasons set forth in this Objection, the Motion for Leave should be denied.

## II. BACKGROUND

### A. Pertinent Pre-petition Background

3. Prior to the Petition Date, on or about November 26, 2018, Dixon, a not for profit foundation whose mission statement is the promotion of healthy watersheds through sustainable land management to ensure that future generations have the water resources they need, entered into a financed purchase and sale agreement with Plaintiff for Dixon's sale to Plaintiff of over two thousand fifty five (2055.7) acres of real property located in Parker County, Texas and known as the Bear Creek Ranch.

4. In connection with this purchase, Plaintiff granted to Dixon a promissory note in the original principal amount of $32,946,900, which was secured by the Property (with the exception of a 118.34 acre tract) pursuant to a Deed of Trust recorded under document number 2025-262749 in the official records of Parker County, Texas.

5. By February 2020, Plaintiff was by its own admission in material default of its obligations owed to Dixon, its secured lender. Accordingly, on or about February 27, 2020, Dixon and the Debtor entered into that certain Deed in Escrow Agreement (the "Deed in Escrow Agreement") with American Escrow Company as escrow agent (the "Escrow Agent").

6. Pursuant to the Deed in Escrow Agreement, the Debtor promised Dixon, *inter alia* that if Dixon would forbear from enforcing its legal and equitable rights and remedies, the Debtor would not permit or cause any further default of its obligations to Dixon, and would pay off its

obligations in full, by July 1, 2020. Deed in Escrow Agreement, at §§ 1, 3. In support of these assurances, the Plaintiff granted to Dixon a Special Warranty Deed incorporated as Exhibit "B" into the Deed in Escrow Agreement and serving as a deed in lieu of foreclosure placed in escrow by the parties with the Escrow Agent (the "Deed in Lieu"). The property that was the subject of the Deed in Escrow Agreement was comprised of the then remaining, approximately 1,531.75 acres of the Bear Creek Ranch (the "Property").

7. Under this well-established commercial arrangement, the Plaintiff agreed that if it defaulted on its obligations under the Deed in Escrow Agreement, then pursuant to Dixon's corresponding instructions to the Escrow Agent, the Escrow Agent was directed to record the Deed in Lieu, transmit documentation of the recorded Deed in Lieu to Dixon, and deliver to Dixon the Debtor's Release of Lender ("Release of Dixon"). Deed in Escrow Agreement, at § 3.

8. The Plaintiff expressly acknowledged, represented and agreed that Dixon's forbearance provided valuable consideration to and for the Plaintiff in exchange for the Deed in Escrow Agreement granted by the Plaintiff, and that such Deed in Escrow Agreement is enforceable, including by specific performance:

> The provisions of this Agreement shall be enforceable by any means available at law or equity, including (without limitation) an action for specific performance.
>
> ****
>
> LENDER HAS AGREED TO FOREBEAR FROM EXERCISING CERTAIN APPLICABLE REMEDIES (INCLUDING, WITHOUT LIMITATION, FORECLOSURE OF THE PROPERTY) IN CONNECTION WITH THE SPECIFIED DEFAULT, AND SUCH FORBEARANCE BY LENDER IS VALUABLE AND MEANINGFUL CONSIDERATION TO BORROWER IN EXCHANGE FOR BORROWER'S EXECUTION OF THIS AGREEMENT AND COMPLIANCE WITH THE TERMS OF THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, DELIVERY OF THE ESCROWED DOCUMENTS AND CONDITIONAL AUTHORIZATION TO RELEASE THE ESCROWED DOCUMENTS AS PROVIDED HEREIN).

Deed in Escrow Agreement, at §§ 8, 10.d.

9. After the Plaintiff defaulted on its modified obligations to Dixon, on July 2, 2020, the Escrow Agent recorded the Deed in Lieu and then transmitted the recorded deed, as well as the Release of Dixon, to Dixon. *See, e.g.,* Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer [Docket No. 1], at ¶ 15.

10. On or about June 26, 2020, Dixon, as Seller, and JMJ Development, LLC, a Texas limited liability company, as Purchaser ("JMJ"), entered into a Real Estate Sale Agreement for the purchase of the Property with a purchase price of $27,500,658.00. The JMJ Real Estate Sale Agreement is referred to in the Plaintiff's Proposed Amended Complaint as the "First BuyBack Contract" and in the Original Complaint as the "BuyBack Contract." In both its Original Complaint, as defined below, and its Proposed Amended Complaint, as defined below, Plaintiff admits that the First BuyBack Contract was between Dixon and JMJ. The Plaintiff was not a party to the First BuyBack Contract.

**B. Bankruptcy Background**

11. On September 1, 2020, the Debtor filed with this Court its voluntary petition under Chapter 11 of Title 11 of the United States Code, §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), thereby initiating its above-captioned bankruptcy case ("Bankruptcy Case").

12. Beginning on November 13, 2020, through January 4, 2021, the Debtor filed an original and amended proposed chapter 11 plan, as well as four (4) successive Disclosure Statement iterations and inserts. *See* Bankruptcy Case Docket Nos. 36, 37, 39, 40, 52, 56.

13. The first few of these plan and disclosure statement documents do not mention Dixon at all, but at all times the iterations of the Debtor's proposed plan consistently provided for payment in full with interest, of all allowed claims. *See, e.g.*, Bankruptcy Case Docket No. 36, at Art.V.B.

14. Although the Debtor's Amended Disclosure Statements filed on December 28, 2020 [Bankruptcy Case Docket No. 52] and January 4, 2021 [Bankruptcy Case Docket No. 56] do mention Dixon (each in 3 places), they do not discuss in any respect any potentially avoidable or otherwise disputed transfer to Dixon. *See* Bankruptcy Case Docket No. 56, at §§ 3.05, 4.03 (n. 3) 15.01. In fact, the Debtor's foregoing discussion is limited to contending that it properly disclosed to other parties the prior release of any debt owed to Dixon when the Debtor deeded the Property back to Dixon as the original seller.

15. On May 5, 2021, the Debtor filed its *First Modification to the Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 79] and disclosed for the first time, that it asserts corresponding claims against Dixon (*see* pp. 4-5). This operative language is specifically set forth hereinbelow.

16. On May 10, 2021, the Debtor filed its <u>Second</u> Amended Schedules of Assets and Liabilities [Docket No. 82], which amendments for the first time included the following alleged possible claims and causes of action against Dixon: "[p]ossible cause of action against Dixon Water Foundation for preferential transfer under 11 U.S.C. Section 547, fraudulent transfer under 11 U.S.C. Section 548, recovery of avoidable transfers under 11 U.S.C. Section 550, and disallowance of claims under 11 U.S.C. Section 502." The Debtor did not disclose such alleged possible claims and causes of action in its Original Schedules of Assets and Liabilities filed on September 22, 2020 [Docket No. 20] or in its First Amended Schedules of Assets and Liabilities filed on January 4, 2021 [Docket No. 54]. Nowhere in either the Second Amended Schedules of Assets and Liabilities or the Third Amended Schedules of Assets of Liabilities [Docket No. 93] did the Debtor list any other alleged claims against Dixon. Nor, in any of the iterations of the

Schedules of Assets and Liabilities did BM318 ever include any claims whatsoever against Mr. Potts or the Dixon Board.

17. Nowhere in its Original, First Amended Schedules, Second Amended Schedules or in any version of its Disclosure Statement or Plan did the Debtor ever disclose any of the state law tort based claims and causes of action that it now seeks leave to assert against Dixon, Robert Potts and the members of Dixon's Board. *See* Bankruptcy Case Docket Nos. 20, 54, 82 and 93.

18. On August 2, 2021, this Court entered its *Order Confirming the Debtor's Second Amended Plan of Reorganization, Dated November 19, 2020* [Bankruptcy Case Docket No. 106] (the "Confirmation Order").

**C. Background of the Adversary Proceeding**

19. On August 10, 2021, BM318 filed its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* [Docket No. 1] (the "Original Complaint"), commencing this adversary proceeding.

20. After Dixon filed its Answer and Counterclaims in response to the Original Complaint on September 30, 2021, on October 27, 2021, the Debtor filed a *Notice of Lis Pendens* in the official public records of Parker County on and over the entirety of the Bear Creek Ranch originally sold by Dixon to the Debtor, including but not limited to the Property (the "Lis Pendens").

21. In violation of law, the Debtor has not at any time provided notice to Dixon of the recording of the Lis Pendens. *See* Texas Property Code - PROP § 12.007(d) ("Not later than the third day after the date a person files a notice for record under this section, the person must serve a copy of the notice on each party to the action who has an interest in the real property affected by the notice.").

22. On January 14, 2022, Lumar Land & Cattle, LLC ("Lumar") filed its Motion to Intervene, seeking to intervene, asserting that it also never received proper notice of the Lis Pendens and seeking leave to intervene to seek a determination from this Court that Lumar is a good faith transferee and bona fide purchaser for value under section 550, and accordingly entitled to expunge the Lis Pendens on the Lumar Property. Motion to Intervene, at ¶¶ 6-9, 14.

23. On February 10, 2022, the Court granted Lumar's Motion to Intervene.

24. On February 16, 2022, Lumar filed its Complaint in Intervention.

25. On March 21, 2022, BM318 filed its Answer to the Complaint in Intervention and Counterclaim against Lumar.

26. On April 11, 2022, Lumar filed its Answer to BM318's Counterclaim.

27. On May 9, 2022, BM318 filed its Motion for Leave. Attached to the Motion for Leave as Exhibit A is a proposed *Plaintiff's First Amended Complaint* (the "Proposed Amended Complaint").[1]

28. On May 31, 2022, Lumar filed its *Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Objection to BM318's Motion for Leave to File Amended Complaint* [Docket No. 53] (the "Lumar Objection to Motion for Leave").

## III. RESPONSES AND ARGUMENTS IN SUPPORT

### A. Leave to Amend Should Be Denied Because it is Futile

29. The relief requested in the Motion for Leave should be denied because it is futile. The Fifth Circuit has held that leave to amend is "by no means automatic." *Addington v. Farmer's Elevator Mut. Ins. Co.,* 650 F.2d 663, 666 (5th Cir. 1981). "The decision to grant or deny a motion to amend is in the sound discretion of the trial court." *Avatar Exploration v. Chevron U.S.A.,* 933

[1] Dixon itemizes BM318's proposed amended claims as they relate to Dixon, Mr. Potts and the Dixon Board hereinbelow.

F.3d 314, 320 (5th Cir. 1991). "When determining whether to grant leave to amend, 'the court may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [and] futility of the amendment."'" *Sigaran v. United States Bank Nat'l Ass'n,* 560 Fed. Appx. 410, 412 (5th Cir. 2014). The Fifth Circuit "affirm[s] denials of motions to amend when amendment would be futile." *Avatar Exploration,* 933 F.3d at 321.

30. "Clearly, if the complaint as amended would still be subject to dismissal, no abuse of discretion occurs when amendment is denied." *Addington,* 650 F.2d at 667 (affirming trial court's denial of motion for leave to amend, finding amendment to be futile and finding that "the plaintiff was not prejudiced by the denial of the motion, because the plaintiff could not have defeated the defendant's motion for summary judgment on the basis of the amended complaint, if allowed"); *Pan-Islamic Trade Corp. v. Exxon Corp*., 632 F.2d 539, 546 (5th Cir. 1980) (trial court did not abuse its discretion in denying leave to amend when the bulk of the proposed amended count was clearly subject to dismissal for failure to allege facts indicating standing to sue); *Sigaran,* 560 Fed. Appx at 416 (affirming denial of leave to amend where plaintiffs' claims are "either foreclosed by precedent, time-barred or waived" the amendment would be futile as it could not survive a motion to dismiss). *See also Deloach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968); *Byrne v. Kysar*, 347 F.2d 734 (7th Cir. 1965), *cert. denied*, 383 U.S. 913, 86 S.Ct. 902, 15 L.Ed. 2d 668 (1966); *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

31. "When futility is advanced as the reason for denying an amendment to a complaint, the district court has usually denied leave to amend because the theory of recovery presented in

the amendment lacks legal foundation or because the theory has been adequately presented in a prior version of the complaint." *Webb. v. Havins*, 1994 U.S. App. LEXIS 41095* 1,7 (5th Cir. 1994) (affirming the denial of leave to amend for some claims newly asserted in the defendants' individual capacity and reversing the denial of leave to amend with regard to one claim). The Fifth Circuit has affirmed denial of leave to amend when the trial court found that the claims lacked substance and the addition of new parties would not alter such a result. *Emory v. Texas State Bd. of Medical Examiners*, 748 F.2d 1023, 1027 (5th Circ. 1984).

32. As set forth herein, BM318's Motion for Leave must be denied as futile because it lacks standing to bring claims against Robert Potts and the Dixon Board and the additional claims it asserts against Dixon because such claims were not specifically and unequivocally reserved in BM318's confirmed Plan as required under binding Fifth Circuit precedent.

**B. BM318 Does Not Have Standing to Bring the New Claims it Asserts**

33. BM318 has no standing to assert the new claims in the Proposed Amended Complaint, therefore, leave to amend must be denied. Standing is a jurisdictional matter that courts are obligated to ensure is satisfied. *Dynasty Oil & Gas, LLC v. Citizens Bank* (*In re United Operating, LLC*), 540 F.3d 351, 354 (5th Cir. 2008).

34. Section 1123(b)(3)(B) of the Bankruptcy Code provides in pertinent part that, "a plan may provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any claim or interest;…." 11 U.S.C. § 1123(b)(3)(B). In the Fifth Circuit, in order for the debtor to retain standing to bring a claim "the plan <u>must</u> expressly retain the right to pursue such actions and "[t]he reservation <u>must</u> be specific and unequivocal." *United Operating*, 540 F.3d at 355 (emphasis added). As expressly stated by the Fifth Circuit in the *United Operating* case, "[i]n some cases the Code allows a reorganized debtor to bring a post-confirmation action on a 'claim or interest belonging to the debtor or to the

estate.' A debtor may preserve its standing to bring such a claim (e.g., for fraud or breach of fiduciary duty, or to avoid a preferential transfer but only if the plan of reorganization expressly provides for the claim's retention and enforcement by the debtor." *Id*. at 355 (emphasis added).

35. "After confirmation of a plan, the ability of the [debtor] to enforce a claim once held by the estate is limited to that which has been retained in the plan." *Id*. For a claim to be preserved, the plan must "expressly retain" it and the reservation must be "specific and unequivocal." *Id*. (emphasis added). "If a debtor has not made an effective reservation, the debtor has no standing to pursue a claim that the estate owned before it was dissolved." *Id*.

36. The Fifth Circuit found that Dynasty's reservation in the *United Operating* case was insufficient "to preserve the common-law claims Dynasty now brings for *inter alia*, fraud, breach of fiduciary duty, and negligence." *Id* at 356. ("Neither the Plan's blanket reservation of 'any and all claims' arising under the Code, nor its specific reservation of other types of claims under various Code provisions are sufficient to preserve the common-law claims Dynasty now brings for, *inter alia*, fraud, breach of fiduciary duty, and negligence.").

37. In 2013, the Fifth Circuit reiterated its holding in *United Operating* stating, "A debtor can preserve its standing to bring a post-confirmation action on a claim that once belonged to the estate only if the confirmed plan 'expressly provides for the claim's "retention and enforcement by the debtor."'" (emphasis added) (internal citations omitted). The debtor's ability to enforce a claim once held by the estate is limited to that which has been retained in the plan (citation omitted). Without an effective reservation, the 'debtor has no standing to pursue a claim that the estate owned before it was dissolved.'" *Wooley v. Haynes & Boone, L.L.P. (In re SI Restructuring, Inc.)*, 714 F.3d 860, 864 (5th Cir. 2013).

38. In *SI Restructuring*, Section 7.7 of the confirmed *Final Plan of Liquidation of SI Restructuring, Inc. and its Affiliated Debtors* (the "SI Restructuring Plan") titled "Preservation of Rights of Action" provided in pertinent part as follows:

> 7.7. Preservation of Rights of Action: Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and shall have the exclusive right to enforce any claims, rights and causes of action that the Debtors or the Estates may hold against any entity, including, without limitation, any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provisions of state law, or any other statute or legal theory, provided however, the Plan does not preclude the rights, if any, of creditors or shareholders to seek authority from the Bankruptcy Court to bring claims of the estates if not pursued by the Committee, the Debtors or the Plan Administrator by ten (10) days before the deadline for joining additional parties in Adversary Proceeding Number 05-5055 or forty-five (45) days prior to the expiration of the statute of limitations for such cause of action.

SI Restructuring Plan, § 7.7.

39. In *SI Restructuring*, the Wooleys, creditors in the bankruptcy case, sought approval to bring derivative actions on behalf of the bankruptcy estate. *SI Restructuring*, 714 F.3d at 863. The bankruptcy court denied the motion finding that the Wooleys did not have standing to bring such claims because the plan did not specifically reserve such causes of action. *Id.* The district court affirmed the bankruptcy court. *Id.* The Fifth Circuit affirmed. As noted by the Fifth Circuit, in order "[f]or a reservation to be effective, it 'must be specific and unequivocal' – blanket reservations of 'any and all claims' are insufficient." *Id*. at 864.

40. The Fifth Circuit found that the plan and disclosure statement lacked the "specificity necessary to retain the state law claims" proposed to be asserted. *Id.* As set forth by the Court, "[t]he claims reserved in Section 7.7 [of the Plan] can be broken down into two categories, one general and one specific: (1) 'any claims, rights and causes of action that the Debtors or the Estate may hold against any entity,' and (2) 'including … any claims, rights or causes of action arising under Chapter 5 of the Bankruptcy Code or any similar provisions of state

law or any other statute or legal theory.'" *Id*. at 865. While the Court found the reservation to be unequivocal, it was not specific. *Id*. ("Here, the Plan is specific as to avoidance actions, but the Wooleys do not seek to bring a claim under Chapter 5 of the Bankruptcy Code.").

41. In *SI Restructuring*, the Wooleys sought to assert claims for breach of fiduciary duty. *Wooley v. Haynes & Boone, L.L.P.* (*In re SI Restructuring, Inc.*) 714 F.3d 860, 865 (5th Cir. 2013). The Court found that, "neither the Plan nor the disclosure statement references specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action. Instead, the Plan simply refers to all causes of action, known or unknown. As noted, such a blanket reservation is not sufficient…." *Id.* Accordingly, the Fifth Circuit affirmed the lower courts' holding that the Wooleys lacked standing to assert such claims.

42. Similarly, BM318 failed to reserve the claims in the Plan that it now seeks to assert. Section 8.01 of the confirmed Plan provides as follows:

> The Debtor's Causes of Action. Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or Reorganized Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Reorganized Debtor for the benefit of the Creditors subsequent to the Effective Date. This Plan shall not estop the Debtor or Reorganized Debtor from asserting any claim or cause of action whether disclosed or not.
>
> Reservation of causes of action against Dixon Water Foundation. The Debtor has causes of action against Dixon Water Foundation ("Dixon") related to a deed in lieu of foreclosure recorded by Dixon on or about July 2, 2020, pursuant to which Dixon took title to approximately 1,531.75 acres of land owned by the Debtor in Parker County, Texas. The Debtor's causes of action against Dixon related to this transaction are for preferential transfer under 11 U.S.C. Section 547, fraudulent transfer under 11 U.S.C. Section 548, recovery of avoidable transfers under 11 U.S.C. Section 550, and disallowance of claims under 11 U.S.C. Section 502. It is possible the Debtor has other causes of action against Dixon related to the same transaction. Without limiting the general reservation of all causes of action by the Debtor in the foregoing paragraph, the Debtor hereby specifically reserves and

retains the aforementioned causes of action against Dixon. The Debtor intends to file an adversary complaint against Dixon based on these causes of action.[2]

43. Section 8.01 of the confirmed Plan is precisely the type of general reservation of claims and causes of action that is insufficient under *United Operating* and its progeny to reserve the state law claims and causes of action that Plaintiff now seeks to bring that were never specifically identified and reserved. At the absolute most, this clause specifically and unequivocally preserves only avoidance claims (and a claim objection under section 502) against Dixon.

44. In its Original Complaint, Plaintiff asserted the following claims against Dixon: (i) avoidance of alleged preferential transfer under 11 U.S.C. § 547, (ii) avoidance of alleged fraudulent conveyance under 11 U.S.C. § 548(a)(1)(B), (iii) recovery of avoided transfers under 11 U.S.C. § 550, and (iv) disallowance of all claims under 11 U.S.C. §502(d) and (j).

45. Now, Plaintiff seeks leave to add numerous state law tort claims against numerous new parties that were clearly not reserved in the Plan and which the Plaintiff does not have standing to bring. Nine months after Plaintiff commenced the Adversary Proceeding, it seeks leave to assert the following claims against Robert Potts: (i) tortious interference with a contract, (ii) tortious interference with a prospective contract, (iii) aiding and abetting and/or knowing participation-breach of fiduciary duties, (iv) conspiracy to commit fraud and/or fraud in real estate; constructive fraud, conversion, tortious interference (contract and prospective contract), and/or breach of fiduciary duties, and (v) piercing the corporate veil. Plaintiff also seeks to assert the claims listed as (iii), (iv), and (v) above against the Dixon Board and Dixon. Further, Plaintiff is also seeking to bring tort claims against numerous other parties.

[2] "Claim" is defined in the Plan to have the meaning set forth in Bankruptcy Code § 101(5).

46. Plaintiff clearly lacks standing to assert any of the new claims in its Proposed Amended Complaint. Plaintiff clearly knew how to specifically and unequivocally reserve claims as it did with regard to the claims under §§ 547, 548, 550 and 502 that it asserted against Dixon in its Original Complaint. These are all avoidance actions and causes of action under the Bankruptcy Code. With regard to Dixon, the only claims reserved were ones specifically under Chapter 5 of the Bankruptcy Code and not the claims Plaintiff seeks to assert nine months after the Original Complaint was filed, for aiding and abetting, conspiracy, and piercing the corporate veil. Plaintiff did not specifically and unequivocally reserve the state law tort claims it now seeks to bring in its Proposed Amended Complaint against Dixon, the Dixon Board, Robert Potts, and the other proposed defendants. In its confirmed Plan, Plaintiff failed to identify any specific tort claims that it was reserving against any party, including Dixon, and failed to identify any party as a litigation target specifically other than Dixon in the Plan. Fifth Circuit precedent is clear that Plaintiff lacks standing to bring the new claims asserted in the Proposed Amended Complaint, therefore, the Motion for Leave must be denied.

**C. Alternatively, Leave to Amend Should be Denied Because Plaintiff Unduly Delayed in Bringing These Claims**

47. Another basis for denial of a motion for leave to amend is that the party seeking leave to amend has unduly delayed in bringing such claims. *Barrett v. Independent Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (holding that the trial judge did not abuse its discretion in denying a proposed amendment that sought to add new parties and additional counts that was filed ten months after the original complaint when "there would appear to be no matters that appellant proposed to add which could not have been raised initially.")

48. BM318's assertion that no undue prejudice may be argued by other parties to the Adversary Proceeding because such parties agreed to a deadline in a scheduling order for seeking

leave to amend is unfounded. Dixon did not waive the right to oppose a motion for leave to amend filed by BM318. "[T]he fact that an amendment is filed before any potentially applicable scheduling deadline does not by itself make a claim timely." *SMH Enters. v. Krispy Krunchy Foods,* 2022 U.S.Dist. LEXIS 32183, 1, 12 (E.D.La. 2022)(finding motion for leave to amend untimely filed when party had fourteen months "to assert that membership in an LLC renders its members liable"). A trial court is not bound to permit all amendments sought before a deadline to seek leave to amend. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 141 (5th Cir. 1993) (finding no abuse of discretion by district court for denying motion for leave to amend eight months before the deadline to seek leave to amend).

49. In its Motion for Leave, Plaintiff admits that it had knowledge of the proposed alleged claims it now seeks to add to its Original Complaint when it filed its Original Complaint. Motion for Leave ¶1 ("The original Complaint was a limited action aiming only to claw back certain property due to a fraudulent transfer of the same. Although BM318 also had related claims for damages as a result of the fraudulent transfer, it believed that such claims were more appropriate for litigation outside of the bankruptcy court." (emphasis added)). This provides grounds for denial of Plaintiff's Motion for Leave. *Wimm v. Jack Eckerd Corp.,* 3 F.3d 137, 139 (5th Cir. 1993) (affirming district court's denial of leave to amend finding that the plaintiffs knew of the facts underlying the claim they were seeking to add before they commenced the action concluding that the district court's finding of bad faith and dilatory motive was supported by the record); *Barrett v. Independent Order of Foresters,* 625 F.3d 73, 75 (5th Cir. 1980) (affirming district court's denial of motion for leave to amend when "there would appear to be no matters that appellant proposed to add which could not have been raised initially.").

50. "[W]hether a litigant should be permitted belatedly to tender an entirely new issue, never even suggested before, lies in the sound discretion of the trial court." *Layfield v. Bill Heard Chevrolet Co.,* 607 F.2d 1097, 1099 (5th Cir. 1979) (affirming trial court's denial of motion for leave to amend finding that "all of the facts relevant to the proposed amendment were known to the appellant at the time she filed her original complaint."). "A litigant's failure to assert a claim as soon as it could have done so, …, is properly a factor to consider in deciding whether to grant leave to amend. As courts have recognized at some point, plaintiff's delay can be procedurally fatal. In that case, plaintiff must establish that the delay 'was due to oversight, inadvertence or excusable neglect." *SMH Enters*., 2022 U.S. Dist. LEXIS 32183 at *12-13.

51. As admitted by Plaintiff in its Motion for Leave, it knew of these claims when it filed its Original Complaint but purposely chose not to assert them in its Original Complaint, and therefore, it cannot establish that the failure to bring them was due to oversight, inadvertence or excusable neglect.

**D. Alternatively, the Motion for Leave Should be Denied Because it is Being Brought to Gain a Tactical Advantage**

52. It is "improper to amend solely to gain a tactical advantage." *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.,* 690 F.2d 1157 (5th Cir. 1982). As described by the Eastern District of Louisiana, bad faith exists for "amendments that are abusive, designed to secure a tactical advantage, include allegations that are specious and insufficient to state a claim. Likewise, when a party is aware of facts and failure [sic] to include them in the complaint, that can give rise to the inference that the party was engaging in tactical maneuvers to force the court to consider various theories seriatim." *SMH Enters. v. Krispy Krunchy Foods*, 340 F.R.D. 554, 2022 U.S. Dist. LEXIS 32183, at *14-15 (E.D. La. 2022). In *SMH Enters*., the plaintiff sought leave to amend its complaint to add five former members of defendant and one new member as defendants.

*Id.* at *9. The *SMH* court concluded by stating: "[g]iven the apparent futility of the proposed amendments … the proposed amendment appears to have been sought in a bad faith effort to obtain a tactical advantage." *Id*. Accordingly, the Motion for Leave should be denied.

**E. Alternatively, Plaintiff's Motion for Leave Should be Denied as Futile Because its Newly Asserted Claims Against Dixon, Robert Potts and the Dixon Board Cannot Survive Dismissal.**

53. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Id*. "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Cirillo v. Valley Baptist Health Sys. (In re Cirillo),* Nos. 09-10324, 13-01002, 2014 Bankr. LEXIS 1353, at *22 (Bankr. S.D. Tex. April 3, 2014) (citing *Twombly*, 550 U.S. at 556). While detailed factual allegations are not required, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Naked assertions devoid of further factual enhancement" that are "merely consistent with a defendant's liability" are not sufficient to survive a motion to dismiss. *Shipley Garcia Enters., LLC v. Harley-Davison Motor Co. (In re Shipley Garcia Enters. LLC)*, Nos. 11-20016, 13-02012, 2014 Bankr. LEXIS 1296, at *15 (Bankr. S.D. Tex. Mar. 28, 2014) (quoting *Twombly*, 550 U.S. at 557). Moreover, a plaintiff's conclusory allegations are "not entitled to the assumption of truth," and therefore a court may look past such conclusory allegations in order to examine the pleaded facts and determine their adequacy. *Id.* (quoting *Iqbal*, 556 U.S. at 678-79).

54. As previously set forth herein, the Motion for Leave should be denied because it is futile given that BM318 does not have standing to bring the claims in its Proposed Amended

Complaint. In addition, a review of the allegations in the Proposed Amended Complaint also reveals that such allegations would not withstand a motion to dismiss for failure to state a claim which is an alternative basis for denial based on futility.[3]

**1. BM318 Cannot State a Claim for Tortious Interference With Contractual Advantage**

55. In Count V of the Proposed Amended Complaint, BM318 attempts to assert a claim for tortious interference with the First Buyback Contract against Robert Potts, Lumar, Railhead, Aledo, Martin, Hughes and Hazlewood. However, on its face, BM318 cannot satisfy the elements of such claim.

56. "To prevail on a claim for tortious interference with contractual relations, Plaintiff must show that: (1) a binding contract existed between <u>Plaintiff</u> and [a third party]; (2) [defendant] acted willfully and intentionally to interfere with that contract; (3) the intentional act(s) of [defendant] proximately caused harm to Plaintiff; and (4) Plaintiff suffered actual damages or loss as a result of those act(s)." *Dutta v. Pistenmaa*, No. 3:01-CV-2053-M, 2002 U.S. Dist. LEXIS 25123, at *11 (N.D. Tex. Nov. 8, 2002) (citing *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993)).

57. As admitted by BM318 in its Original Complaint and in its Proposed Amended Complaint, BM318 was not a party to the First Buyback Contract which BM318 admits was between Dixon and JMJ.

58. In its Original Complaint BM318 states as follows:

> "On June 26, 2020, in anticipation of Defendant recording the Deed, Defendant and JMJ Development, LLC ("JMJ"), an entity related to Plaintiff, entered into a "Real Estate Sales Agreement" ("Buyback Contract") for the purchase of the Remaining

[3] Should the Court grant the Motion for Leave, Dixon reserves all rights to seek dismissal of such claims on any basis, does not waive any bases, and does not limit itself to the bases set forth herein for purposes of the futility analysis.

> Land from Defendant for the purchase price of $27,500,658.00 which was to close on August 31, 2020." Original Complaint ¶ 14.

In its proposed amended complaint BM318 states as follows:

> "On June 26, 2020, in anticipation of Defendant Dixon recording the Deed, Dixon and JMJ Development, LLC ("JMJ"), an entity related to Plaintiff, entered into a "Real Estate Sales Agreement" ("First Buyback Contract") for the purchase of the Remaining Land from Dixon for the purchase price of $27,500,658.00 which was to close on August 31, 2020." Proposed Amended Complaint ¶ 26.

59. Accordingly, BM318 cannot satisfy at least one element of a claim for tortious interference with contractual advantage, therefore, the Motion for Leave with regard to this claim should be denied as futile.

**2. BM318 Cannot State a Claim for Tortious Interference With Prospective Contractual Advantage Against Robert Potts**

60. In considering a claim for tortious interference with prospective contractual advantage, the Texas Supreme Court, in *Morgan Stanley & Co. v. Texas Oil Co.*, 958 S.W.2d 178 (Tex. 1997), applied the standards utilized in *Holloway v. Skinner*, 898 S.W.2d 793 (Tex. 1995) in connection with a claim for tortious interference with contractual advantage. In *Morgan Stanley*, Texas Oil sought to hold Morgan Stanley liable for alleged interference with prospective contractual advantage in connection with contract negotiations that Texas Oil had engaged in with Tenneco Oil Company. 958 S.W.2d 178 (Tex. 1997). Tenneco had hired Morgan Stanley to sell one of Tenneco's wholly owned subsidiaries. *Id*.

61. Tenneco sold the subsidiary to Seagull Energy Corporation and Texas Oil sued Tenneco, Morgan Stanley and Seagull for various causes of action including: breach of contract, tortious interference, negligent misrepresentation, fraud, conversion and conspiracy. The district court granted summary judgment for all defendants. Texas Oil appealed, but ultimately dismissed its appeal as to Tenneco. The court of appeals affirmed summary judgment in favor of Seagull and in favor of Morgan Stanley except with regard to the tortious interference claim against

Morgan Stanley which it remanded. Morgan Stanley applied to the Texas Supreme Court for writ of error.

62. The Texas Supreme Court reversed the court of appeals insofar as it reversed the judgment of the district court and rendered judgment that Texas Oil take nothing against Morgan Stanley. In reaching this conclusion, the Court applied the following rule it had previously adopted in *Holloway*, namely that "for an agent to be liable for tortious interference with its principal's contract, one prerequisite is that a 'plaintiff must prove that the [agent] acted willfully or intentionally to serve the [agent's] personal interests at the expense of the principal's.'" *Morgan Stanley*, 958 S.W.2d 178 (citing *Holloway v. Skinner*, 898 S.W.2d at 798).

63. The Texas Supreme Court further clearly stated in *Morgan* that, "[w]hile a principal's complaint is not conclusive of whether its agent has acted in its best interest, <u>absent any complaint an agent cannot be said to have acted contrary to its principal's best interests</u>." *Morgan*, 958 S.W.2d at 182 (emphasis added). There is no assertion in the Proposed Amended Complaint that Dixon has complained that Robert Potts did not act in the best interest of Dixon nor can there be. Further, Plaintiff's conclusory allegation that Mr. Potts acted to serve his own personal interest is conclusory and insufficient to state a claim. Therefore, Plaintiff's Motion for Leave with regard to its claim for tortious interference with prospective contractual advantage should be denied as futile.

**3. Plaintiff's Conspiracy Claim Should be Dismissed as Futile**

64. In its Proposed Amended Complaint, BM318 attempts to assert a claim for conspiracy against all proposed defendants, including Dixon, Robert Potts and the Dixon Board. In order "to prove a cause of action for civil conspiracy under Texas law, a plaintiff must establish the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages

as the proximate result." *Apani Southwest, Inc. v. Coca-Cola Enters*., 300 F.3d 620, 635 (5th Cir. 2002) (*citing Massey v. Armco Steel Co*., 652 S.W.2d 932, 934 (Tex. 1983)).

65. "The 'meeting of the minds' element is to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *Wu v. Tang*, 2011 U.S. Dist. LEXIS 4489, 1*27 (*citing Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 278 (Tex. 1995)). "There must be a preconceived plan and unity of design and purpose." *Wu*, 2011 U.S. Dist. LEXIS 4489 at *27. In *Wu*, the District Court for the Northern District of Texas granted the defendant's motion to dismiss a conspiracy claim finding that the plaintiffs failed to state the elements of the cause of action. *Wu*, 2011 U.S. Dist. LEXIS 4489 at *28. "Nowhere in the Complaint do they plead facts showing a meeting of the minds between any of the Movants and other parties." *Id*. ("Plaintiffs' Complaint states only that '[t]he defendants and the non-parties conspired with each other to commit the above described wrongful acts. Each defendant is liable for the wrongful actions of the other defendants and are jointly and severally liable for the damages suffered by the plaintiffs.")

66. Similarly, in the Proposed Amended Complaint, the Plaintiff does not allege facts sufficient to state a claim for conspiracy. There are no facts alleged to show a meeting of the minds between Robert Potts, any of the Board Defendants, or Dixon. In the count, Plaintiff alleges as follows:

> On information an [sic] belief, Defendant Martin conspired with Defendants Dixon, Potts each of the Board Defendants, Lumar, Hazlewood, Aledo, Hughes, Railhead, and/or GH Lumar to commit fraud and/or fraud in a real estate transaction, to commit constructive fraud, to convert Plaintiff's Work Product, to tortiously interfere with the First Buyback Contract, to tortiously interfere with the Second Buyback Contract, and to breach the fiduciary duties that were owed to Plaintiff by Martin as previously described in the foregoing counts in order to further the Lumar Transactions causing Plaintiff to be damaged.
>
> On information and belief, one or more and/or all of the Defendants acted in concert with Martin for the common purpose furthering the Lumar Transactions, and intent to, defraud the Plaintiff by assisting in or participating in the Lumar Transaction.

67. This is insufficient to state a claim for conspiracy and incorporating allegations in the preceding paragraphs by reference also does not incorporate facts sufficient to state a claim for conspiracy. Accordingly, the Motion for Leave should be denied with regard to the conspiracy claim.

**4. The Piercing the Corporate Veil Claim Asserted Against Dixon, Robert Potts and the Board Defendants is Futile**

68. In Count XVI of the Proposed Amended Complaint, the Plaintiff asserts, "[t]he court should pierce the veil of certain Defendant entities to hold certain individual Defendants liable as follows:…4. Dixon to hold Potts and the other Board Defendants liable." Prop. Am. Comp. ¶127.

69. A conclusory allegation like the foregoing is clearly insufficient to state a claim for piercing the corporate veil and therefore the Motion for Leave with regard to this claim should be denied.

70. In addition, the Fifth Circuit, in affirming the decision of the trial court in *Ledford v. Keen*, 9 F.4th 335, 341 n.10 (5th Cir. 2021), found that "whether veil-piercing may operate against a non-profit corporation, [is] an open question under Texas law." The lower court specifically noted as follows, "[i]t is reasonable to believe that the Legislature intended that Chapter 21 veil piercing had limited application to entities governed by Chapter 21 (*i.e.*, for-profit corporations) and could not be applied to entities governed by other Chapters unless specifically authorized in those other chapters. Texas courts have not applied the principles of veil piercing to a nonprofit corporation." *Ledford v. Kosse Roping Club,* 2020 U.S.Dist. LEXIS 69263 *1, 14 (W.D.Tex. 2020). Accordingly, the foregoing provides another basis for this court to deny the Motion for Leave with regard to the veil-piercing claim.

**5. The Aiding and Abetting Claim Asserted Against Dixon, Robert Potts and the Board Defendants is Futile**

71. Plaintiff rests its claim for aiding and abetting breach of fiduciary duty on a multitude of outdated case law, starting with a 1942 Texas Supreme Court decision. *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509 (Tex. 1942). While some courts in the years following interpreted the decision as "aiding and abetting" liability, those words are not once used by the *Kinzbach* court.

72. Both the Texas Supreme Court and the Fifth Circuit have made clear in recent years that aiding and abetting does not exist as a cause of action under Texas law. *First United Pentecostal Church of Belmont v. Parker*, 514 S.W.3d 214, 225 (Tex. 2017); *Christopher v. DePuy Orthopaedics, Inc.*, 888 F.3d 753, 781-82 (5th Cir. 2018). In fact, the Fifth Circuit addressed *Kinzbach Tool* specifically in *DePuy*, noting that it did not create liability under a theory of aiding and abetting. *DePuy*, 888 F.3d at 782. In the words of the *DePuy* court, "no such claim exists in Texas." *Id.*

73. In so holding, the Fifth Circuit admonished the district court by stating it had "exceeded its circumscribed institutional role" when it "expanded Texas law beyond its presently existing boundary." *Id.* (internal citations omitted). If a state's law is to be changed, it is up to the state's legislature or the "Supreme Court of [that state] and not [a federal] court to change . . . substantive law." *Cargill, Inc. v. Offshore Logistics, Inc.*, 615 F.2d 212, 215 (5th Cir. 1980).

74. The District Court for the Northern District of Texas elaborated on *Depuy*, stating that it was not limited to aiding and abetting in strict liability cases – instead looking to the Fifth Circuit's reaffirmation that "aiding and abetting does not exist as a distinct cause of action in Texas." *Taylor v. Rothstein Kass & Co., PLLC*, 2020 U.S. Dist. LEXIS 17435 (N.D. Tex. 2020). Notably, in the years since *DePuy* and *First United* were decided, Texas courts uniformly deny

aiding and abetting as a cause of action. *See e.g. Ahmed v. Bank of Whittier*, 2022 Tex. App. LEXIS 2987 (Tex. App.—Dallas 2022, no pet.); *Slack v. Preuss*, 2022 Tex. App. LEXIS 621 (Tex. App.—Texarkana 2022, pet. denied).

75. The authority that Plaintiff cites to support the elements of an aiding and abetting cause of action is not only contradicted by the above authorities, but also inapplicable in the instant case. *Darocy v. Abildtrup*, 345 S.W.3d 129, 137-38 (Tex. App.—Dallas 2011, no pet.). *Darocy* dealt with an aiding and abetting breach of fiduciary duty claim under the Texas Securities Act. The TSA, unlike Texas common law, expressly provides a cause of action for aiding and abetting in Section 33(F). TEX. GOV'T CODE § 4008.055. As such, because Plaintiff fails to propose a legitimate cause of action, leave to amend to add Count XIII should be denied.

76. Assuming, in the alternative, the proposed count can be construed as a claim for joint tortfeasor liability which Dixon disputes it can be, the claim likewise fails. Applying Texas law, the Fifth Circuit has stated in order to establish joint tortfeasor liability for breach of fiduciary duty, the plaintiff must show: (1) the existence of a fiduciary relationship; (2) that the third party knew of the fiduciary relationship; and (3) that the third party was aware that it was participating in the breach of that fiduciary relationship. *D'Onofrio v. Vacation Publs., Inc.*, 888 F.3d 197, 216 (5th Cir. 2018).

77. In the Proposed Amended Complaint, Plaintiff fails to allege, beyond conclusory restatements of the elements of the claim, facts to support that Dixon, Mr. Potts or the Dixon Board actively or knowingly participated in the alleged breach. Plaintiff's proposed Count XIII makes only an allegation that Dixon's directors, in selling the property, "were aware of their participation in the breach of Martin's duties." Proposed Amended Complaint, ¶ 115.

78. The Proposed Amended Complaint is devoid of any facts that support any inference that Mr. Potts, the Dixon Board or Dixon knew that the sale would be a breach of any alleged fiduciary duty. The proposed Complaint likewise fails to allege that Dixon or its directors actually participated in the alleged breach. The breaches alleged in Count VII outline duties not to use or disclose confidential information, use of confidential information for personal gain, and duties of loyalty, honesty, good faith and fair dealing – none of which Plaintiff alleges Dixon was engaged in. Proposed Amended Complaint, ¶¶ 84-86. Plaintiff conflates being a counterparty to a sale with active participation in alleged tortious conduct. For the reasons stated above, leave to amend the Complaint to add Count XIII should be denied.

## IV. INCORPORATION BY REFERENCE AND RESERVATION OF RIGHTS

79. Dixon incorporates the arguments made by Lumar with regard to judicial estoppel as if fully set forth herein. Dixon reserves the right to amend or supplement this Objection and to raise additional arguments at the hearing on the Motion for Leave.

WHEREFORE, PREMISES CONSIDERED, Defendant The Dixon Water Foundation, a not for profit corporation, respectfully prays that this Court deny the Motion for Leave, find that the claims are barred by the terms of the Plan and that BM318 lacks standing to bring them, and that the Court grant any other relief that it deems just and proper.

Dated: June 3, 2022

/s/ *Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

*Attorneys for The Dixon Water Foundation*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 3rd day of June, 2022, a true and correct copy of the foregoing document was served via ECF notification on all parties entitled to ECF notification in this Bankruptcy Case.

/s/ *Deborah M. Perry*
Deborah M. Perry