IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS (FORT WORTH)

| | |
|---|---|
| IN RE: | Case No. 20-42789-MXM-11 |
| BM318, LLC, | Eldon B. Mahon U.S. Courthouse<br>501 West 10th Street |
| Debtor. | Fort Worth, Texas 76102 |
| BM318, LLC, *et al.*, | Adv. No. 21-04051-MXM-11 |
| Plaintiffs, | |
| v. | |
| THE DIXON WATER FOUNDATION, *et al.*, | |
| Defendants. | Wednesday, June 15, 2022<br>2:32 P.M. |

TRANSCRIPT OF HEARING ON MOTION FOR LEAVE TO FILE AMENDED COMPLAINT FILED BY COUNTER-DEFENDANT BM318, LLC, COUNTER-CLAIMANT BM318, LLC, PLAINTIFF BM318, LLC (50)

**BEFORE THE HONORABLE MARK X. MULLIN**
**UNITED STATES BANKRUPTCY COURT JUDGE**

ECRO: Jeanette Almaraz

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**LIBERTY TRANSCRIPTS**
**7306 Danwood Drive**
**Austin, Texas 78759**
**E-mail: DBPATEL1180@GMAIL.COM**
**(847) 848-4907**

APPEARANCES:

| | |
|---|---|
| For The Dixon Water Foundation: | Munsch Hardt Kopf & Harr, P.C.<br>BY: DEBORAH M. PERRY, ESQ.<br>3800 Lincoln Plaza<br>500 North Akard Street<br>Dallas, Texas 75201 |
| For Lumar Land & Cattle, LLC: | Forshey & Prostok, LLP<br>BY: J. ROBERT FORSHEY, ESQ.<br>EMILY CHOU, ESQ.<br>777 Main Street, Suite 1550<br>Fort Worth, Texas 76102 |

APPEARANCES VIA WEBEX:

| | |
|---|---|
| For BM318,LLC: | Joyce W. Lindauer Attorney, PLLC<br>BY: JOYCE W. LINDAUER, ESQ.<br>1412 Main Street, Suite 500<br>Dallas, Texas 75202 |
| For Lumar Land & Cattle, LLC: | Quilling, Selander, Lownds, Winslett & Moser<br>BY: JOSHUA LEE SHEPHERD, ESQ.<br>2001 Bryan Street, Suite 1800<br>Dallas, Texas 75201 |

**I N D E X**


| | Page |
|---|---|
| Case called | 4 |
| Court's Ruling on Motion for Leave to File Amended Complaint | |
| Matter Taken Under Advisement | 91 |
| End of Proceedings | 93 |
| Certification of Transcriber | 93 |

# I N D E X

Page

WITNESSES:

FOR THE DEBTOR:

(None)

FOR THE LUMAR LAND & CATTLE, LLC:

(None)

FOR THE DIXON WATER FOUNDATION:

(None)

| EXHIBITS: | ID | EVD |
|---|---|---|
| FOR THE DEBTOR: | | |
| 2 - First Amended Plan Dated 11/19/20 | -- | 34 |
| 3 - First Modification to Plan | -- | 36 |
| 4 - Second Modification to Plan | -- | 37 |
| 5 - Third Modification to Plan | -- | 37 |
| 6 - Confirmation Order | -- | 38 |
| 7 - Debtor's schedules | -- | 38 |
| FOR THE LUMAR LAND & CATTLE, LLC: | | |
| 2 - Amended Schedules dated 1/4/2021 | -- | 39 |
| 3 - Debtor's Amended Schedules | -- | 39 |
| 4 - Debtor's Amended Schedules | -- | 40 |
| 6 - Second Amended Disclosure Statement | -- | 52 |
| 7 - Second Amended Disclosure Statement | -- | 52 |
| FOR THE DIXON WATER FOUNDATION: | | |
| E - Final Application of SI Restructuring | 53 | 53 |

(Proceedings commenced at 2:32 p.m.)

THE COURT: With that, the Court will now move to the 2:30 docket which it's 2:32, so almost perfect timing.

So those of you who are on WebEx, you're certainly more than welcome to stay and observe. But we do have other parties that join WebEx ready for the next matter, which I'll go ahead and call right now, and that is the BM318, LLC v. The Dixon Water Foundation.

We do have a couple of counsel here in the courtroom, so I'll ask them to make appearances first. And then if you'd like me to recognize you, turn your video on and I'll then take appearances on WebEx.

Good afternoon. How are you?

MS. PERRY: Good afternoon, Your Honor. Deborah Perry on behalf of The Dixon Water Foundation, a non-profit corporation.

THE COURT: All right. Thank you, Ms. Perry.

And we have Mr. Forshey is visibly unpacking which is fine. Take your time. No rush.

MR. FORSHEY: Thank you, Your Honor.

Bobby Forshey, Emily Chou here on behalf of Lumar and a number of other potential defendants. And Ms. Chou wanted me to ask you something. She ran off and forgot her coat.

THE COURT: She's coming? She --

MR. FORSHEY: No. May she attend? It was really hot

and she walked off with that. May she attend?

THE COURT: Of course. What I will do, Ms. Chou, I'm going to allow you but I'm going to require that you get Mr. Forshey's next paycheck.

(Laughter)

THE COURT: No. That's fine. It happens.

MS. CHOU: It's actually on its way, Your Honor.

THE COURT: Not to worry. You shouldn't have had to worry about that. I totally understand.

All right. That's all the appearances we have here in the courtroom, so now we'll go to those on video. And I see we have first Ms. Lindauer. How are you this afternoon?

MS. LINDAUER: Good, Your Honor. Joyce Lindauer here on behalf of the debtor, BM318, LLC, also the plaintiff and the defendant in intervention.

THE COURT: All right. Thank you.

And Mr. Shepherd, good afternoon to you.

MR. SHEPHERD: Good afternoon, Your Honor. Josh Shepherd also with co-counsel Mr. Forshey and Ms. Chou on behalf of Lumar Land & Cattle. Just off screen because he's also not wearing a jacket, we have one of our law clerks with us getting some Zoom experience, Mr. Braden Reed.

THE COURT: All right. Welcome to you, as well, sir.

Give me one minute to change my -- pull up this case.

(Pause)

THE COURT: All right. So how would we like to proceed? We have -- Ms. Lindauer, it's your motion for leave to file amended complaint. How would you like to proceed?

MS. LINDAUER: Your Honor, we're prepared to proceed at this time. We do have a motion on file. We did file a response to the objections that were filed. We did file an exhibit and witness list.

While I think it's primarily exhibits, we do have -- to the extent the Court wants any testimony or feels that testimony is appropriate, we do have a witness also prepared to testify in connection with this particular hearing.

So that being said, Your Honor, we're ready to proceed at this time.

THE COURT: Okay. Would you like to make an opening statement or do you prefer going straight to evidence? And I'll, of course, ask the same question for counsel that's appearing on video and here in the courtroom.

MS. LINDAUER: Your Honor, a brief opening statement --

THE COURT: All right. Yes, please.

MS. LINDAUER: -- would be appropriate.

THE COURT: Okay. And you may proceed.

MS. LINDAUER: Okay. Thank you, Your Honor.

The motion itself for leave to file amended complaint appears on the Court's docket as Docket Number 50. And it's

related to, as you mentioned, an adversary proceeding that's been pending. It's an adversary under 21-04051. The original parties to that adversary were BM318 and the defendant The Dixon Water Foundation.

As the Court may recall, Lumar Land & Cattle filed a petition in intervention. We did object to their intervening in this proceeding, and the Court granted them leave to intervene at which time we responded to their petition in intervention.

The parties then moved forward with some scheduling in connection with this adversary proceeding. And one of the deadlines that the parties agreed to was that on or before May 9th, any amended complaints request to add parties would be filed. So that was an agreed upon deadline in the scheduling order the parties agreed to would serve as the deadline for those events to occur.

That being said, on May 9th, the debtor or BM318 did file leave to file an amended complaint. Attached to the motion itself is a copy of the debtor's/plaintiff's first amended complaint. And that was included, obviously, as required by the rules to give notice of the various persons that the debtor would seek to include in connection with these proceedings.

Part of the problem, Your Honor, is that the original case involving Dixon Water was fairly straightforward, involved

some claims of fraudulent transfer, avoidance actions, and related questions about good faith transferee and those types of issues and was fairly self-contained.

The problem comes in when Lumar becomes a party to this action. At least it's our position that that expanded to a large extent the issues now that do exist in connection with this proceeding, which is the reason for asking for leave to amend.

Your Honor, the operable provisions are 15(a)(2) of the Federal Rules of Civil Procedure dealing with the question of amendment. The parties that we seek to add and the claims we seek to add revolve in large part around the transaction between Dixon Water and Lumar that became part of this action when Lumar joined in to the action.

The actual counts that are now at issue -- and those appear at Page 14 of 38, starting on that, of the amended complaint, and the amended complaint again is appended to the motion for leave at Docket 50.

The original claims number 1 is avoidance of preferential transfer, that was already an existing claim; avoidance of fraudulent transfer, these are all against Dixon Water, that's an existing claim; and recovery of avoided transfers against Dixon, that was an existing claim; disallowance of any claims, I believe that was an existing claim.

The new claims start at Count 5 on Page 17 which is tortuous interference, tardiest interference with prospective contract, some breach of fiduciary duty claims, fraud claims, aversion claims, fraudulent real estate transaction, constructive fraud, negligent misrepresentation, aiding and abetting, conspiracy to defraud, vicarious liability, and then some related alter ego claims. So the issues between the parties have expanded exponentially. And it would be, in our position, in large part due to the relationship between Dixon and Lumar.

And so, Your Honor, our position is very similar to what your position was on the question of intervention. Your Honor, our position is that this is -- these are valid claims, that this is the appropriate forum to bring them in, and that the debtor should be given the opportunity to amend its complaint, and to include these claims as well as the persons involved in those claims.

And then we did file a pretty detailed response, but I'm not going to bring that up in the opening. I'll save that I think primarily for closing. And with that, Your Honor, we're prepared to proceed to put on some evidence.

THE COURT: All right. Thank you. Who would like to go first on --

MS. LINDAUER: Thank you, Your Honor.

THE COURT: -- Respondent? Ms. Perry?

MS. PERRY: Good afternoon, Your Honor. Deborah Perry on behalf of the Dixon Water Foundation. I intend in my opening to address the issues that were raised by BM318 in their reply. And with respect to evidence, while I have no objection to any of the exhibits that BM318 has designated, or to the exhibits that Lumar has designated, I don't think testimony would be appropriate given the issues before the Court today given that this is a motion for leave to amend, and all of the issues really relate to as a matter of law, should this motion for leave to amend be granted. So if the Court is inclined to take testimony, we'd like to be heard further on whether that should go forward after opening.

THE COURT: All right.

MS. PERRY: Thank you, Your Honor. So to start out, I know Your Honor has read our response which was fairly lengthy. And so I wanted to, we rely on everything that we stated in that response, and all of the bases in that response for our assertion that the motion for leave should be denied. However, I wanted to focus on a couple of specific things that were raised in the reply, that BM318 raised.

So the two cases that BM318 cites for the proposition that United Operating does not apply with respect to non-creditors. And by that I mean that the specific and unequivocal requirement under United Operating does not apply to non-creditors. Those two cases are out of the Southern

District of Texas, Judge Bohm, and the Eastern District of Louisiana.

And we have looked long and hard. And they appear to simply be outliers, and they do not appear to be in line with Fifth Circuit precedent, as we will demonstrate. Fifth Circuit precedent is binding, and makes no distinction between estate claims against creditors versus non-creditors. And for that reason, we think as a threshold matter, none of these claims that are asserted to be amended and added should be allowed to move forward.

And the issue relates to standing, as Your Honor knows. Standing is a jurisdictional requirement. A party either has standing or it does not. Whether the party that seeks to sue is a creditor of the bankruptcy estate has no bearing on standing.

And to start with the plain language of Section 1123(b)(3)(B) which says a plan may provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such person of any such claim or interest. Any such claim or interest. It doesn't say a claim against a creditor. There's no distinction there. The language talks about claims of the estate, not claims of the estate against creditors versus non-creditors.

Then we turn to United Operating. There is no requirement in United Operating that a debtor must reserve

claims against creditors but not non-creditors, which is essentially what BM318 is arguing. In looking at the facts in United Operating, the debtor filed claims against four parties: Citizens Bank who the case says was a creditor; Wildcat who was a post-petition operator of the debtor's oil and gas wells; Roger Becker, Wildcat's principal; and Charles Spradlin, a loan officer with Citizens.

And while the record is silent, it seems unlikely that Wildcat, Becker, and Spradlin were creditors of the bankruptcy estate. For Charles Spradlin, it was a loan officer with a creditor. There's nothing in there that -- in the case that says that those three individuals or entities were creditors. So as a personal matter, it doesn't appear from the facts itself that United Operating was only dealing with claims against creditors.

BM318 misreads United Operating. The point of United Operating's language about a reservation putting creditors on notice is to put creditors on notice as to what assets may be available to pay creditors so that creditors can decide on the feasibility of the plan and whether to vote for the plan.

The United Operating Court cited to the Harstad case. And the notice point that the Harstad Court made was we use Section 1123(b)(3) as at least in part a notice provision. Creditors have the right to know of any potential causes of

action that, and this is the crucial language, might enlarge the estate, and that could be used to increase payment to the creditors.

So when United Operating talks about creditors, they're talking about creditors being able to see what are the assets that are going to be available so that creditors can determine whether it's feasible, what the likelihood of a distribution is. And the Harstad Court further noted compliance with Section 1123(b)(3) gives notice of the intent. And what they were referring to was the intent to pursue preferences in post-confirmation actions.

Only then are creditors in a position to seek a share of any such recoveries, contingent though they may be, and to have the mechanics of the preference-sharing spelled out in the plan. Creditors are in no position to do so if they are not on notice that the debtor retains the power to pursue recovery.

The United Operating Court quite simply did not hold that a plan must adequately disclose and describe any reserve claims it may have only in its creditors. There's nothing in that case that says that. And in fact, as stated at the beginning, it appears that three of the four defendants were likely non-creditors in that case.

Further, BM318 cites to Gulf Coast for this proposition that they're arguing. This is essentially an exception to United Operating that is not in United Operating.

Interestingly, the Fifth Circuit, on appeal in that specific case found that in United Operating, it did not recognize the exception that BM318 now asks this Court to adopt.

Now, it's an unpublished opinion. It's 614 Fed.Appx. 714. The Court said that Gulf Coast argued that the blanket reservation in the plan was sufficient to retain claims against -- sorry. Gulf Coast argued that the blanket reservation in the plan was sufficient to retain claims against a defendant if the defendant is a non-creditor, basically saying the blanket reservation would be insufficient against creditors, but sufficient against non-creditors.

And while the Fifth Circuit found in that case that it did not have occasion to consider whether such an exception exists because it was not properly raised below, it did clearly and unequivocally state that this proposed exception is one that the court has not previously recognized, making it clear that United Operating did not recognize that. Therefore, BM318's position that United Operating stands for that proposition is incorrect.

Further, in National Benevolent Association of the Christian Church vs. Weil, Gotshal & Manges, the Fifth Circuit stated in In re United Operating, we considered the question what happens to a debtor and its claims upon entering and concluding reorganization under Chapter 11. We concluded that a debtor's claim can survive reorganization as a reorganized

debtor's claim only if the plaintiff reorganization expressly provides for the close retention and enforcement by the debtor. Otherwise, the reorganized debtor has no standing to pursue the debtor's claims in federal court, and the federal court will be deprived of subject matter jurisdiction over these claims.

Quoting United Operating, for a debtor to preserve a claim, the plan must expressly retain the right to pursue such actions. The reservation must be specific and unequivocal. There is no reference in this, again, Fifth Circuit case that this only applies to claims against creditors. It simply says the debtor's claims.

Moreover, we went into detail about the case at SI Restructuring. In SI Restructuring, and in a more recent opinion in 2015, Rossco Holdings vs. McConnell, unpublished but at 613 Fed.Appx. 302, the Fifth Circuit considered whether a reservation and a plan was sufficient to reserve claims against debtor's counsel.

Clearly, debtor's counsel could have no pre-petition claims against the debtor because that would have rendered them not disinterested, and they would not have been retained. And clearly, debtor's counsel would not have the right to vote on a plan. Therefore, if the governing law in the Fifth Circuit were that claims do not have to be reserved against non-creditors, then those cases would have, no doubt, been decided differently.

In addition, while it was vacated on other grounds, namely that on reconsideration the Court determined that the claims in question were not property of the estate or whether property of other parties, the District Court for the Eastern District of Texas addressed the two cases cited to by BM318 for the proposition that United Operating limits its reservation of claims standard only to claims asserted against creditors.

The Court found the argument that the defendant could not challenge the debtor's standing because it was not a creditor in the bankruptcy case unpersuasive. More specifically, the argument is unpersuasive. It is fundamental that there is no just (indiscernible) case or controversy over which a court may exercise its judicial power without standing to sue. This is the case of Gilmour vs. Blue Cross and Blue Shield of Alabama, 2020 U.S. District LEXIS 93771.

The Court went on to specifically state as follows: Fifth Circuit precedent does not obviously support the proposition that non-creditors are therefore barred from challenging standing to bring a claim that may not have survived a bankruptcy proceeding. Instead, the Fifth Circuit seems to articulate a broader view of claim preservation in a reorganization plan.

To facilitate a timely, comprehensive resolution of an estate, a debtor must put its creditors on notice that any claim it wishes to pursue after confirmation, not just claims

against creditors. And this Court, the Eastern District of Texas went on to state, and this Court is unaware of any Fifth Circuit case drawing the creditors/non-creditor distinction in this context. For these reasons, unless and until the Fifth Circuit adopts the distinction, this Court declines to do so.

Accordingly, the cases cited by BM318 support its argument that reservations of claims against non-creditors need not be specific an unequivocal are wrongly decided and not binding precedent on this Court, while the Fifth Circuit precedent expressly does not recognize the exception put forth by BM318 and is binding.

It's Dixon's position that given the lack of a specific an unequivocal reservation in the plan that the inquiry with regard to Dixon, additional claims against Dixon, claims against Mr. Robert Potts, the President and CEO of Dixon, and the Board of Directors of Dixon should not be allowed to be added. This amended complaint, leave to amend should be denied with regard to all of them.

Alternatively, as Your Honor saw in our objection, we also went into some of the claims that were asserted. And because the assertion was made that some of our arguments were specious, I feel the need to address these briefly here.

The case law is clear that trial courts have broad discretion to decide whether to deny or grant leave to amend. And that the ground of futility is a recognized basis for

denying leave to amend.

Now, as we've been talking about the lack of standing, that falls into the futility bucket. But the cases also say that if on its face claims that are being sought to be brought in an amended complaint could not survive a motion to dismiss, the trial court is well within its discretion to deny leave to amend.

And in part, some of the concerns there are not only for the cost and expense to the litigants, but also judicial economy. If -- and the importance of judicial resources because if these are claims where there is no way for them to proceed, then the amendment should not be allowed. And I'd like to just touch on a few of these.

We of course start our inquiry, and I recognize that this is not a hearing on a motion to dismiss. But we start our inquiry because we're looking at futility. And the courts look at this standard under a motion to dismiss with two cases that I'm sure Your Honor is very familiar with, the U.S. Supreme Court cases of Twombly and Iqbal. So we start there.

As we know, factual allegations must be enough to raise a right to relief above the speculative level. The pleading must --

MS. LINDAUER: Your Honor, if I might? Your Honor, I don't normally do this but I thought this was supposed to be opening statement, which is why I didn't go into every issue

that Ms. Perry has now raised. So I guess I'm a little confused about the procedure here.

I assumed that we were doing brief openings and then you were going to take up the question of evidence. And then everyone would have an opportunity at the end to present any closing argument. And my sense is that Ms. Perry is putting on her entire case now.

So I guess I'm just trying to get some feel for how we're proceeding this afternoon in connection with this matter. I don't normally cut lawyers off, but we've been going for a half hour primarily on Ms. Perry's position. So I guess I'm just asking for a little guidance from the Court as to how we're proceeding this afternoon.

THE COURT: All right. We are proceeding with opening argument. Ms. Lindauer, you were given that opportunity. And you said with respect to your response you were going to reserve your comments to closing. And that was your right.

Now it's up to Ms. Perry to make her opening argument that she deems is appropriate. I'll give Mr. Forshey or Ms. Chou the same courtesy. Then we'll open up the evidentiary record. Then you can each have your closing. But Ms. Perry certainly has a right to make her --

MS. LINDAUER: Okay. But --

THE COURT: -- make her opening statement as she so

desires. All right. You may proceed.

MS. PERRY: Thank you, Your Honor.

MS. LINDAUER: I understand. Thank you.

MS. PERRY: So moving back to Twombly and Iqbal, the pleading must contain more than a statement of facts that merely creates a suspicion of a legally cognizable right of action. In Twombly, the plaintiffs had not nudged their claims from conceivable to plausible. Therefore, dismissal was appropriate.

With regard to BM318's assertion that the Court should allow the motion for leave and notwithstanding the deficiencies, I realize they don't recognize that these are deficiencies, but if there are deficiencies, that they can simply seek leave to amend again if a motion to dismiss is filed or granted in part, or obtain more facts in discovery, that is not a basis to grant the motion for leave.

In Iqbal, the Supreme Court noted that Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. In Twombly, the Supreme Court noted that when the allegations in the complaint could not raise a claim or a title to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by parties and the Court.

Dixon disputes that any discovery would support the new proposed claims against Dixon, Mr. Potts, and the Dixon

Board. And in Twombly, the Supreme Court addressed this by stating it is no answer to say that a claim just shy of the plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through careful case management.

So let's turn to the claims. First, tortuous interference with contractual advantage. BM318 seeks to bring this claim against Robert Potts, the President and CEO of Dixon. However, as admitted by BM318 in both its original complaint and the amended complaint, the contract with which it alleges Mr. Potts tortuously interfered was between Dixon and JMJ Development.

BM318 was never a party to such contract. It is settled law in Texas that to state a claim for tortuous interference with contractual advantage there has to be a contract between the plaintiff, in this case BM318, and a third party. It is undisputed that this si not the case as admitted by BM318 in Paragraph 14 of its original complaint, and Paragraph 26 of its proposed amended complaint. Therefore, BM318 should not be allowed to amend its complaint to add such cause of action, as it would be futile and a waste of judicial resources.

Two, tortuous interference with prospective contractual advantage. In considering a claim for tortuous interference with prospective contractual advantage, the Texas

Supreme Court in Morgan Stanley and Company vs. Texas Oil Company applied the standards set forth in Holloway vs. Skinner that for an agent to be liable for tortuous interference with its principal's contract, one prerequisite is that a plaintiff must prove that the agent acted wilfully or intentionally to serve the agent's personal interest at the expense of the principal's best interest.

The Texas Supreme Court went on to state as follows: while a principal's complaint is not conclusive of whether its agent acted in its best interest, absent any complaint, an agent cannot be said to have acted contrary to its principal's best interest. There is no allegation in the proposed amended complaint that Dixon has complained that Mr. Potts acted contrary to Dixon's best interests. Therefore, BM318 should not be allowed to amend its complaint to add this cause of action.

Three, conspiracy. BM318 alleges a conspiracy involving Dixon, Mr. Potts, and the Dixon Board. In its reply, BM318 argues that it is sufficient at this stage to allege a conspiracy simply by stating that the directors acted in concert with proposed defendant Jim Martin to achieve an alleged improper purpose.

However, this type of conclusory statement from the proposed amended complaint, without factual information to support it, is exactly what the U.S. Supreme Court warned about

in Iqbal and Twombly. The Supreme Court in Twombly specifically stated that a complaint has to contain more than labels and conclusions, and a formulated recitation of the elements of a cause of action will not do.

Further, in Iqbal, the Supreme Court stated that plaintiffs conclusory allegations are not entitled to the assumption of truth, and the Court may pass conclusory allegations in order to examine the pleaded facts and determine their adequacy. Interestingly, the Supreme Court in Twombly was actually considering assertions of conspiracy in connection with a Sherman Act claim, and specifically stated that a conclusory allegation of agreement at some unidentified point does not supply facts sufficient to show illegality.

A naked assertion of conspiracy, which is what we have in the proposed amended complaint, without further factual enhancement, stopped short of the lines between possibility and plausibility of entitlement to relief. In fact, the District Court for the Northern District of Texas in Wu vs. Todd (phonetic) granted a defendant's motion to dismiss a conspiracy claim finding that the complaint did not plead facts showing a meeting of the minds.

Specifically, plaintiff's complaint states only that the defendants and the non-parties conspired with each other to commit the above-described wrongful acts. Each defendant is liable for the wrongful actions of the other defendants, and

are jointly and severally liable for the damages suffered by the plaintiffs.

The statement in the amended proposed complaint that the directors acted in concert is similar to the lack of factual assertions in Wu where the district court properly dismissed the claim. For those reasons, this claim also should not be allowed to be added.

Four, the piercing the corporate veil claim against Dixon, Robert Potts, and the Board defendants fails on its face as a matter of law. First, under Twombly and Iqbal, the conclusory allegation in the proposed amended complaint is as follows, and this is all. The Court should pierce the veil of certain defendant entities to hold certain individual defendants liable as follows. Dixon holds Potts and the other Board defendants liable.

This is insufficient, and is futile. In addition, in 2021, the Fifth Circuit in Ledford vs. Keen, found that whether veil piercing may operate against a nonprofit corporation, which Dixon is, is an open question under Texas law. The lower court in the Ledford case noted it is reasonable to believe that the legislature intended that Chapter 21 veil piercing had limited application to entities governed by Chapter 21, i.e. nonprofit corporations, and could not be applied to entities governed by other chapters specifically authorised in those other chapters.

Texas courts have not applied the principles of veil piercing to a nonprofit corporation. Accordingly, on that claim, leave to amend should also be denied.

And lastly, with respect to the aiding and abetting claim that BM318 now seeks to bring against Dixon, Mr. Potts, and the Board defendants. Both the Texas Supreme Court and the Fifth Circuit have made clear in recent years that aiding and abetting does not exist as a cause of action under Texas law. Therefore, this claim is futile and the amendment should not be allowed.

If the Court were to take the step to construe this poorly pled claim as one of joint tort fees or liability, which Dixon would argue it should not, the claim also fails. In the proposed amended complaint, BM318 fails to allege beyond conclusory restatements of the claim facts to support that Dixon, Mr. Potts, and/or the Dixon Board actively or knowingly participated in the alleged breach.

Plaintiff's proposed count makes an allegation that Dixon's directors, in selling the property, were aware of their participation in the breach of Martin's duties without more. The proposed amended complaint is devoid of any facts that support any inference that Dixon, Mr. Potts, or the Dixon Board knew that the sale would be a breach of any alleged fiduciary duty, and the proposed amended complaint fails to allege that Dixon or its directors actually participated in the alleged

breach. Therefore, under Twombly and Iqbal, this count fails, as well.

So we go back to where we sort of started with respect to this section. This Court clearly has the discretion to deny the motion for leave. The Fifth Circuit, as we cited multiple cases in our objection, has time and time again found that no abuse of discretion occurs when a trial court denies a motion for leave to amend if the complaint is amended would still be subject to dismissal.

And this is precisely why futility is a recognized basis by the Fifth Circuit. Accordingly, Your Honor, what we would ask today is that with respect to Dixon, the Board defendants, and Mr. Robert Potts, that the Court not grant the motion for leave. There are two bases for that.

One, BM318 lacks standing to bring these claims as is made clear from the plain language of the plan and the governing Fifth Circuit case law. Secondly, as we've walked through, even if the Court found that these claims were somehow adequately reserved, the claims are also futile under the governing case law. And we would ask Your Honor today to deny the motion for leave to amend.

THE COURT: Thank you, Ms. Perry.

MS. PERRY: Thank you, Your Honor.

THE COURT: All right. Mr. Forshey?

MR. FORSHEY: Thank you, Your Honor. First of all,

we're only going to argue the basis of the United Operator's non-reservation. We're not going to argue judicial estoppel. And the reason for that is I can't sit here and take it in good faith from the pleadings that you can absolutely say those are pre-petition causes of action. So I don't think that's something that's appropriate to be presented in this type of a context.

We are going to assert that we're not waiving it. We will assert it if you give them leave to amend as an affirmative defense. But the only objection we're making today to the amendment is they did not properly preserve their claims under United Operating. So on that basis, we would oppose any evidence other than the exhibits. And we've also marked the same exhibits. I don't think any of them are really controversial.

I'd like to make four points to you, and I brought later on some copies of some of the cases, so it will be helpful that as opposed to just giving you a citation, we actually can give you a copy for you and your clerk to read after the hearing.

But the first point is in Paragraph 2 of BM318's response they filed last night, Paragraph 2, it says United Operating, the Fifth Circuit ruled that a plan of reorganization must adequately disclose and describe any reserve claims it may have against any of its creditors or be

barred from pursuing these claims post-confirmation.

And we want to show the Court the words on the page, it doesn't say that. It simply says you must adequately reserve all claims that you have and disclose those to your creditors. It never says that. And Ms. Chou and I went back last night and we re-reviewed the language in there. And then we went and we looked at the Woolley case. And none of those say that. They are very clear that you must have a very clear and definite reservation.

And you've got to disclose that to your creditors. But it never makes a distinction that you don't disclose claims against non-creditors. It just says you have to disclose claims, period. And this is based on what Ms. Perry was saying. You're disclosing what your assets are and what your universe of assets are. And in that basis, it makes perfect sense to talk about that.

The second thing is going to be that point about claims against non-creditors. One of the cases that I think the Court needs to take notice of is the Woolley case against Haynes & Boone as the creditors for the reorganization, the current court not being involved, obviously.

THE COURT: Well aware of the case. Not personally involved.

MR. FORSHEY: Yeah.

THE COURT: And as of noon, I had Schlotzsky's for

dinner about two nights ago.

(Laughter)

THE COURT: Go ahead.

MR. FORSHEY: Anyway, if you look in there, the people they were suing, Haynes & Boone and the Directors were clearly not pre-petition creditors entitled to vote on the plan. The Court never makes that distinction in the opinion.

Then third, I want to look at the cases that had been cited to you, the Southern District and the case from Louisiana. And I want to show you, I mean, I think you've only gotten about half of the story on the Louisiana case. You're going to see this guy took a case to the district court and he lost in terms of he didn't properly preserve his claims.

Then he went back to the bankruptcy court and filed a motion for interpretation of construction of the plan. And the bankruptcy judge turned it around listing different people. So then it ends up in front of the Fifth Circuit. And the Fifth Circuit in an unpublished opinion, and we brought you a copy, says well, I'm going to breach the issue about creditor/non-creditor because you didn't present that to the district court.

THE COURT: And that's what Ms. Perry went through in her opening.

MR. FORSHEY: Exactly.

THE COURT: Understood.

MR. FORSHEY: And we got you a copy of that.

But in there is a very clear statement that the Fifth Circuit has never recognized that exception. And she pointed you to a case, and I'll bring you there, it's called Gilmour vs. Blue Cross & Blue Shield. District Judge of the Eastern District says the Fifth Circuit hasn't recognized that and neither do I.

And then the last thing, fourth point is that the Fifth Circuit rule is that one panel cannot overrule another. In order to overrule United Operating, you would have to have either one, an en banc decision by the Fifth Circuit or the U.S. Supreme Court. And they said what does it have to do with (indiscernible). And that's the point, Judge, is that if you're going to change United Operating, then that's going to have to be something before the Fifth Circuit en banc, or the Supreme Court is going to have to do.

And I'm going to show you a case that I brought today that I was in. It's called (indiscernible). I don't know if you ever remember that. It's a Barbara Houser opinion. And what Judge Houser said there is there were two groups of clients. One were some basically avoidance claims, and the other were not employed with the state law claims.

And she didn't like it. And what she said was on the first ones, the avoidance claims, you guys have reserved it, and I'm going to overrule the motion to dismiss. The second group she says it's a bright line test and I don't like it, and

I think it's a hardship, and I think it's wrong here. But, guys, I'm stuck with it and if the Fifth Circuit's going to change it, it's up to them, not me.

And so she granted the motion to dismiss. And I don't figure there's any argument that Barbara Houser was one of the more independently-minded judges that has probably sat throughout the entire nation. But she recognized it's a bright line test. The Fifth Circuit said it, and only they can change it.

And that's the point I think here. The two cases that are cited, the Louisiana Case and Judge Bohm, with all respect, are wrongfully decided. And on Judge Bohm's, it's even dicta. It's a motion to reopen a bankruptcy case. He gave a very nice discussion explaining how the guys didn't have standing to reopen it. Having said that, then he goes into merits of what he would have said if they did have standing to reopen it. So it's dicta.

So we would submit, Your Honor, just looking on the face of the plan, they didn't come close to complying with United Operators. And if that rule's going to be changed, with all respect it has to go to the Fifth Circuit. It should not be done by a trial court. Thank you.

THE COURT: All right. Thank you, Mr. Forshey. All right, Ms. Lindauer, now it's back to you. How would you like to proceed?

MS. LINDAUER: Your Honor, first of all, I'd like to go through the documentary evidence that I don't think should be substantially in dispute. And then we do have one witness. And I understand there's a question about the issue regarding taking testimony. But I do have one witness also to call. But first of all, I'd like to go through the documentary evidence that we would like to present.

THE COURT: You may proceed.

MS. LINDAUER: Thank you, Your Honor. Your Honor, an exhibit and witness list was filed in connection with this proceeding. It does appear on this Court's docket.

THE COURT: Docket 58.

MS. LINDAUER: I don't know the docket number.

THE COURT: 58.

MS. LINDAUER: Very good. Thank you, Your Honor. Appreciate that. All right. Your Honor, first of all, I'd like to turn to, if I might, Exhibit 2. And I'm going to ask my associate to pull up some of these documents and share them with the Court if we might.

THE COURT: Of course.

MS. LINDAUER: Sidney (phonetic)? Oh, thank you.

Okay. And if you scroll down, this is the debtor's debtor's first amended plan dated November 19th, 2020. What's significant here, Your Honor, is -- well, first of all, let me go ahead and offer this, Your Honor. I'd like to go ahead and

offer it. It's part of the Court's docket. The amended Chapter 11 plan dated November 19th, 2020, Exhibit Number 2.

THE COURT: Let me ask a housekeeping issue first. We can go through one at a time if that's what you prefer, and that's fine with me. Are you intending to try to offer most of the exhibits that you included in your witness and exhibit list?

MS. LINDAUER: I am, Your Honor. But I was going to sort of walk you through them too as we're offering them just to --

THE COURT: Oh, that's fine.

MS. LINDAUER: -- avoid having to go back.

THE COURT: That's fine. We'll --

MS. LINDAUER: So --

THE COURT: That's fine. Any objection to Debtor's Exhibit Number 2?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, sir.

THE COURT: All right. Debtor Exhibit Number 2 is admitted. And again, that can be found at Docket Number 58.

(Debtor's Exhibit Number 2 admitted into evidence)

THE COURT: Give me one minute. It might even be --

MS. LINDAUER: Your Honor --

THE COURT: It's -- give me one minute. And it's actually 58-2.

MS. LINDAUER: Thank you, Your Honor. What is significant with regard to this particular document I think are a couple of timing issues. First of all, the plan was filed on November 19th, 2020. Of course we're now in 2022, so we're a bit down the road.

Also, you can pick up if you turn to part of this that the petition date for the original case is also reflected in the plan if we turn to Page 5 of 16. And, Your Honor, the petition date is referenced as September 1st of 2020. And, Your Honor, if we turn to Page 11 of 16, this starts on Article 7. And this section deals with treatment of executory contracts and unexpired leases. And then if we jump to the next page, Section 8, this talks about debtor's causes of action.

And essentially, Your Honor, I would just note this section for the Court. This is a really detailed section regarding certain causes of action the debtor may have of whatever character, and the request to reserve those. This was the original reservation in the plan.

And as the Court will note, down towards a little bit that the debtor was asserting claims against Southern Star Capital related to a state court case. So those claims were specifically mentioned. And there was a specific reservation as to Southern Star Capital and Citizens National Bank regarding improper handling of the account failure provided in

accounting. So that was the original reservation in the plan itself.

Then if we look at Exhibit Number 3. Your Honor, at this time I would offer Exhibit Number 3 which is the first modification to the debtor's plan.

THE COURT: Any objection?

MS. PERRY: No, Judge.

MR. FORSHEY: No, sir.

THE COURT: All right. Debtor's Exhibit 3 is also admitted. And that can be found at -- I just lost it. Give me one minute. Docket 58-3.

(Debtor's Exhibit Number 3 admitted into evidence)

THE COURT: You may proceed.

MS. LINDAUER: Thank you, Your Honor. Your Honor, turning to Page 4 of 6 of that document, there's a Section 8.01 called debtor's causes of action. It specifically says all claims against third parties on account of indebtedness or other claims again a general reservation in this modification. And then there is a specific reservation against Dixon Water Foundation in claims to be brought against Dixon. So that was included in that modification.

If we look at Exhibit Number 4, and I will tell you that Exhibit Number 4 which is the second modification was subsequently withdrawn and overridden by the third modification that we'll take a look at. But just to clear the record up,

Your Honor, at this time I would offer Exhibit 4.

THE COURT: Any objection?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, Your Honor.

THE COURT: Debtor's Exhibit 4 which can be found at Docket 58-4 is admitted.

(Debtor's Exhibit Number 4 admitted into evidence)

MS. LINDAUER: And then, Your Honor, with regard to Exhibit 5 which is the third modification to the debtor's plan, at this time, Your Honor, I'd offer Exhibit Number 5.

THE COURT: Any objection?

MS. PERRY: No.

MR. FORSHEY: No, Your Honor.

THE COURT: Debtor's Exhibit Number 5 which can be found at Docket 58-5 is admitted.

(Debtor's Exhibit Number 5 admitted into evidence)

MS. LINDAUER: Okay. And, Your Honor, there's an inclusion in this modification, if we drop down a little bit, Sidney, called contingent claims of Dixon Water Foundation, and a discussion of the Dixon Water Foundation claims, affirmative defenses, counterclaims that they may seek to assert as part of any litigation to be brought against Dixon Water Foundation.

Your Honor, those are the -- and then let's go to Exhibit 6 which is the order confirming the plan. Your Honor, at this time I would offer Exhibit 6.

THE COURT: Any objection?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, Your Honor.

THE COURT: Debtor's Exhibit Number 6 which can be found at 58-6 is admitted.

(Debtor's Exhibit Number 6 admitted into evidence)

MS. LINDAUER: Okay. And just for the record, Your Honor, the order of confirmation references the first amended plan which we looked at, Docket Number 39, the first modification, Docket Number 79, and then the third modification, Docket Number 100. And as I pointed out previously, the second modification was then superceded by the third modification. So it was not included as part of the plan that was confirmed in this particular case.

Your Honor, then turning to Exhibit Number 7, that's a copy of the debtor's schedules filed in this bankruptcy case.

THE COURT: Any objection?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, Your Honor.

THE COURT: All right. Debtor's Exhibit Number 7 which can be found at 58-7 is admitted.

(Debtor's Exhibit Number 7 admitted into evidence)

MS. LINDAUER: Your Honor, and I'm going to ask to switch to, because I think it will just flow better, I'm going to switch to the exhibits designated by I believe this is Lumar

Cattle. That's Docket Number 56.

At this time, Your Honor, I'd offer Exhibit Number 2 which is the amended schedules of BM318 dated January 4th, 2021.

THE COURT: Any objection?

MR. FORSHEY: No, Your Honor.

THE COURT: All right. For purposes of the record, the Lumar Exhibit Number 2 which can be found at Docket Number 56 is admitted.

(Lumar's Exhibit Number 2 admitted into evidence)

MS. LINDAUER: Your Honor, at this time I would look at Exhibit 3 of the Lumar exhibits. This is a set of amended schedules of BM318. And I believe those would be marked as Exhibit 3. They also appear at Docket Number 82 of the Lumar schedules. I'm sorry, of the Lumar exhibits.

THE COURT: Any objection?

MR. FORSHEY: No, Your Honor.

MS. PERRY: No, Your Honor.

THE COURT: All right. Lumar Exhibit Number 3 which can be found at Docket 56 is admitted.

(Lumar's Exhibit Number 3 admitted into evidence)

MS. LINDAUER: In particular, I call the Court's attention on that exhibit to Page 6 of 16. And on item number 74, there is a possible causes of action against Dixon Water for preferential transfer, fraudulent transfer, recovery of

avoidable transfers, disallowance of claims itemized at $27 million. So we call the Court's attention to that.

Then if we look at Exhibit Number 4 also of the Lumar exhibits. And I would offer Lumar Exhibit Number 4 which is a further amendment of the schedules.

THE COURT: Any objection?

MR. FORSHEY: No, Your Honor.

THE COURT: All right. Lumar Exhibit Number 4 which can be found at Docket 56 is admitted.

(Lumar's Exhibit Number 4 admitted into evidence)

MS. LINDAUER: Okay. Your Honor, Lumar Exhibit 4, Page 6 of 9. And listed here, and the yellow highlighting is appearing on their exhibits, but under causes of action, possible cause of action against Dixon Water, possible cause of action against a gentleman named Tim Green (phonetic), possible causes of action against a gentleman named Chuck Stark (phonetic), and possible cause of action against a gentleman named Jim Martin.

And in particular, you'll notice on the Jim Martin claims tortuous interference, breach of contract, misrepresentation, fraud, breach of fiduciary duty, all related claims and causes of action. Amount shown is unknown. Again, these were filed in May of 2021, I believe. Just double checking the date on those.

And then, Your Honor, and at this point I'm not going

to necessarily offer these, Your Honor. But I'm going to go ahead and ask if you could take notice, if you would, of some various pleadings that do appear in adversary number 21-04051 which is the adversary BM318 vs. Dixon Water Foundation. First of all, at Docket Number 8 which is Dixon Water Foundation's answer and affirmative defenses to complaint.

THE COURT: All right. Any objection to the Court taking judicial notice of Docket Number 8 in this adversary proceeding?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, Your Honor.

THE COURT: All right. Court shall take judicial notice of Docket Number 8 in this adversary proceeding.

MS. LINDAUER: Thank you, Your Honor. Also at this time if we could take notice of Docket Number 9 which is answer filed. There's going to be a series of these. But --

THE COURT: Hold on.

MS. LINDAUER: -- as opposed to offering them as exhibits --

THE COURT: Hold on. Let me make sure I get the right thing here.

MS. LINDAUER: Okay.

THE COURT: So yeah, we did -- either I misheard or you misstated. So these are the docket items in this adversary, 21-4051. Is that correct?

MS. LINDAUER: That's correct.

THE COURT: Okay. Okay. I just wanted to make sure. Thank you. You may proceed.

MS. LINDAUER: Okay. So 8 is the Dixon Water Foundation answer and affirmative defenses. Your Honor, Docket Number 9 in the adversary proceeding is the answer to the counterclaim. I ask that you take notice of that document.

THE COURT: Any objection?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, Your Honor.

THE COURT: All right. The Court will take judicial notice of Docket Number 9 in this adversary proceeding.

MS. LINDAUER: Okay. If you would take notice of exhibit, it's actually Docket 33 in the adversary proceeding. It's the plaintiff and interventions original complaint for declaratory judgment.

THE COURT: Any objection?

MS. PERRY: No, Your Honor.

MR. FORSHEY: No, Your Honor.

THE COURT: All right. The Court will take judicial notice of Docket Number 33 filed in this adversary proceeding.

MS. LINDAUER: All right. Your Honor, with regard to likewise this adversary proceeding Docket Number 40 which is the answer, the plaintiff's answer to the intervention complaint filed by Lumar Cattle Company.

THE COURT: Any objection?

MR. FORSHEY: No, Your Honor.

MS. PERRY: No, Your Honor.

THE COURT: All right. The Court will take judicial notice of Docket Number 40 in this adversary proceeding.

MS. LINDAUER: And then if you look at Docket Number 42, it's a plaintiff and intervention's answer to the counterclaims.

THE COURT: Any objection to the Court taking judicial notice?

MS. PERRY: No, Your Honor.

THE COURT: All right. The Court will take judicial notice of Docket Number 42 in this adversary proceeding.

MS. LINDAUER: Your Honor, I believe that that -- and then obviously the other issue, Your Honor, is we would ask the Court to take notice also as to the motion for leave to amend which is Docket -- appears in connection with this proceeding, Docket Number 50. And then of course the first amended complaint which is attached to the motion for leave. I ask the Court to take notice of those filings, as well.

THE COURT: Any objection?

MR. FORSHEY: No, sir.

MS. PERRY: No.

THE COURT: All right. The Court takes judicial notice of Docket Number 50 as well as the exhibit attacked to

Docket Number 50 in this adversary proceeding.

MS. LINDAUER: Your Honor, those would be the documentary exhibits that we have for the Court this afternoon. And then the only other evidence we would have would be some brief testimony of a witness, Larry Martin. And just to give you a purview, it would primarily go to the timing more than anything of the claims that are being asserted in the amended complaint, and why we think those are relevant to the Court's consideration.

So those are the main. And then I guess just the basis somewhat I guess of the claims themselves, but more importantly, when these claims would have arisen as they relate to Dixon, the individuals that have been named as well as Lumar Cattle and Mr. Martin. So, Your Honor, that would be the purpose of that testimony.

THE COURT: All right. Okay. You might have an objection, Ms. Perry?

MS. PERRY: Yes. Your Honor, I think, you know, the case law is pretty clear. We're dealing with motions to dismiss from failure to state a claim. And I realize that's not what's before the Court today, but that we don't take evidence in connection with a motion to dismiss.

If we don't take evidence, because otherwise it would turn into a motion for summary judgment which is not what we're here on today. And if we don't, if the case law says that we

don't take evidence in connection with a motion to dismiss, a 12(b)(6) motion, I think you could extrapolate from that that we also don't take evidence in connection with a motion for leave to amend because a motion for leave to amend relates to this proposed amended complaint.

The proposed amended complaint, it says what it says. And those are the allegations that, you know, the Court has to kind of consider when determining whether leave to amend is appropriate. And so regardless of when the claims arose or not, or information regarding the claims, the proposed amended complaint is sort of what the Court should be looking at in our opinion.

So we would object to any testimony before the Court today.

THE COURT: All right. Thank you, Ms. Perry.

Mr. Forshey?

MR. FORSHEY: Same thing. The other question would be, I mean, it's a motion to amend saying that these are claims that basically are related to the bankruptcy case. I mean, it's packaged up. These are claims that come through the bankruptcy case. If a claim didn't mature until post-confirmation, then I'm not sure it relates to the bankruptcy court and I'm not sure what jurisdiction you have to hear it.

And we would object to it. I mean, they packaged this up that these are claims that come through the bankruptcy

case, that came through the bankruptcy estate. They relate to this estate. There's specific allegations in the complaint that they propose to file. And they shouldn't be able now to try to get in to argue different timing of this.

I mean, it's just a question based upon the pleadings that are filed, the plan, and the disclosure statement. Did they properly preserve those?

THE COURT: All right. Thank you, sir. Any response?

MS. LINDAUER: Yes, Your Honor. Your Honor, there are two buckets of claims here. There are the bucket of claims that were clearly disclosed on the debtor's schedules that arise prior to the filing of the case. And those were disclosed in schedules that were filed with the Court. They were disclosed in a modification to the plan at the request of Dixon who participated in the confirmation process. And the Court's aware of that.

THE COURT: Okay. What does that --

MS. LINDAUER: That's one bucket.

THE COURT: What does that bucket have to do with what's before the Court today which is to amend against new defendants?

MS. LINDAUER: Okay. So, Your Honor, there is what I call the pre-petition bucket of claims. Okay? And most of those have already been asserted, which are the claims against

Dixon Water. And we didn't assert a claim against Jim Martin yet, but we have the right to. I think we preserved that claim. And we have the right to assert that claim at this point.

So the problem, the practical problem, Your Honor, is Lumar intervened in this case. The Court permitted them to intervene. I understand the Court's ruling on that. The Lumar transaction occurred post-bankruptcy, post-petition. It is not a pre-petition transaction. It occurred post-petition during the pendency of the Chapter 11 prior to confirmation of the plan. Right?

It is not a claim that existed pre-petition. Lumar acquired its interest in the property made the subject of this adversary after the case was filed, and then asked to intervene in this proceeding to argue its position in connection with this case.

So, Your Honor, that's why Mr. Forshey did not argue judicial estoppel on those claims because the second bucket of claims, which are the basis of the amended complaint, those are all the claims that now are arising as a result of the relationship between Dixon and Lumar over the property that we seek to recover. Those are the bad acts of the persons involved in the Lumar transaction.

If you actually read each of the claims that we are asking to add, they are very specific to the transaction

involving Dixon and Lumar, and the members and individuals involved in that transaction. Those are not claims that needed to be scheduled in this bankruptcy case. They did not exist because Lumar did not acquire its interest in the property until after the bankruptcy case was filed.

THE COURT: But I want to make sure --

MS. LINDAUER: Your Honor, I do have --

THE COURT: -- I understand. I want to make sure I understand.

MS. LINDAUER: Sure.

THE COURT: The alleged claims occurred during the Chapter 11. Is that correct?

MS. LINDAUER: Right. Unbeknownst to the debtor, they occurred during --

THE COURT: So --

MS. LINDAUER: -- the Chapter 11.

THE COURT: So because the claims had appeared, cleared, whatever term you want to use, during the Chapter 11, why wouldn't those claims also be property of the estate under Section 541(a)(7) which states the property estate includes, quote, any interest in the property that the estate acquires after the commencement of the case? So let's -- what's the difference of the distinction you're trying to make?

MS. LINDAUER: Look, Your Honor, I'm not saying they're not property of the estate. I'm saying that they arose

post-petition and they aren't subject to having to be disclosed as part of a planned disclosure modification when we don't know about them until Lumar intervenes in our case in 2021. They came in, I'm sorry, 2022.

They came into this case just in the last couple of months and said here we are. We happen to own a chunk of the land that you are seeking to recover. And we're saying that's great except now we think there are bad acts that went on between Lumar and Dixon that occurred when Lumar acquired that property.

These are not claims we had any knowledge of until Lumar came into this case and asserted their right to participate. They are not claims that had to be scheduled. First of all, we didn't know they even existed. And second of all, they're not pre-petition subject to being placed on bankruptcy schedules.

So, Your Honor, I don't think that they can legitimately -- but again, we're getting off topic. The question is do we get to call a witness. And the only reason I wanted to call Mr. Martin was to make it very clear to the Court that there are two buckets of claims here. There are Jim Martin claims which we believe were well preserved in our pre-petition claims as well as post-petition claims. We believe he's on both sides of the line, but primarily post-petition.

And then there are the Lumar and related party claims which implicate Dixon Water and its board and related entities. And these all arise out of the same nucleus of transactions which is the relationship between Lumar and Dixon that is now before this Court as part of this adversary. So I think it would be entirely inappropriate for the Court to parse out on these claims when one, we didn't even know about them, but two, they're not subject to being put on bankruptcy schedules and disclosed as part of do they arise post-petition or are they property of this estate.

We are saying that they are property of the estate. That's why we're bringing them in this court and we're asserting them in this court. Could I have filed them somewhere else? Possibly I could have. But then --

THE COURT: All right.

MS. LINDAUER: -- I would run the challenge of somebody removing it to your court and making these same arguments. So we're putting it here first. But the question is the purpose of Mr. Martin's testimony is to get focus, Your Honor, on the timing of the claims, what the debtor's representatives knew at the time that these claims arose, and how they affect, if any, what's going on with regard to this pending adversary.

I don't know anything in the rules that says that I can't call a witness on a motion to amend. I understand

Twombly. I understand motions to dismiss. But we aren't there yet, Your Honor. The only question is should the Court allow us to amend the complaint. And then if they want to assert motions to dismiss or whatever they want to file after that, they're welcome to do that. The Court has a process for that.

We're talking about not allowing me to even bring the claim. So, Your Honor, I would like to call Mr. Martin, ask him a few questions. He was the person representing the debtor at the time that these claims would have arisen. And I think he can testify as to the timing issues if it's not clear from the pleadings themselves, which obviously it's not. So, Your Honor, I would like the right to call a witness at this time.

THE COURT: Any further response, reply, Mr. Forshey?

MR. FORSHEY: One thing I would like to ask the Court to focus on is if you will look at the opinion in United Operators, they were suing the operator that the bank brought in post-petition for post-petition acts. And there's a statement. If Dynasty had wanted to bring a post-confirmation action for mal-administration of property during the bankruptcy, it was required to state as much clearly in the plan. And that's it.

If they had claims that they thought accrued before they came out of bankruptcy effective date, they had to reserve them. And if they're saying this stuff that happened after they got out of the bankruptcy, it's hard to see how it relates

to this case. There's just no reason for this testimony.

THE COURT: I've got it. And the Court tends to agree with both the arguments and objections raised by Ms. Perry and Mr. Forshey. I don't see where the testimony is relevant to the motion that's before the Court today. So the Court will sustain each objection. And we can forego the testimony of Mr. Martin at this time.

Any other evidence you would like to present?

MS. LINDAUER: No further evidence, Your Honor.

THE COURT: All right. Any other evidence from either of the objecting parties?

MR. SHEPHERD: This is Josh Shepherd on behalf of Lumar.

Mr. Forshey may have picked up on this, but just as a matter of housekeeping. I think we've got everything else admitted other than Lumar's Exhibit 6 and 7 which is the second amended disclosure statement and the order approving the second amended disclosure statement which are both at Docket 56-6 and 7. We'd ask both to be admitted.

THE COURT: All right. Any objection to Lumar's Exhibits 6 and 7?

MS. PERRY: No, Your Honor.

MS. LINDAUER: No objection, Your Honor.

THE COURT: All right. Lumar's Exhibits 6 and 7 are both admitted. Thank you, Mr. Shepherd.

(Lumar's Exhibit Numbers 6 and 7 admitted into evidence)

MS. PERRY: No, Your Honor.

MS. LINDAUER: No objection, Your Honor.

THE COURT: All right. Lumar's Exhibits 6 and 7 are both admitted.

Thank you, Mr. Shepherd.

Ms. Perry.

MS. PERRY: And Your Honor, I believe four of my exhibits have already been admitted. But our final exhibit, Exhibit E, is the final application of SR Restructuring, Inc. And so we would ask for that to be admitted. You can see the, you know, PACER file stamp at the top. This was simply pulled off of the docket for the Western District of Texas. So we'd ask for that to be admitted.

THE COURT: And I apologize. I was scrolling through to find your exhibits. Which exhibit was that? E?

MS. PERRY: It's Exhibit E.

THE COURT: All right.

Any objection to Exhibit E, Dixon Exhibit E, which we find at Docket Number 57?

MS. LINDAUER: No, Your Honor.

THE COURT: All right. Then Dixon Exhibit E, again at Docket 57, is also admitted.

(Dixon's Exhibit Number E admitted into evidence.)

Any other evidence before we close evidence?

(No audible response)

THE COURT: Hearing none --

MR. FORSHEY: No, Your Honor.

THE COURT: All right. We can go to closing arguments, Ms. Lindauer?

MS. LINDAUER: (No audible response)

THE COURT: Ms. Lindauer?

MS. LINDAUER: Sorry, Your Honor. I guess I'm in the position of I think getting to go first since it's my motion. Is that right?

THE COURT: Yes. That's why I just called you and you may proceed with your closing argument.

MS. LINDAUER: I didn't catch that. I'm sorry.

THE COURT: That's okay.

MS. LINDAUER: Your Honor, so first of all, I'm going to ask you to go back and take a look if you could at a few things that you did take notice of, because I do think it's helpful to the Court. First of all, if we could, let's pull up Exhibit -- it's actually Docket Number 33. We marked as an Exhibit 10, which is the original complaint and intervention filed by Lumar Land and Cattle, LLC.

And Your Honor if we turn to factual background, paragraph 3 of that particular complaint, and in particular paragraph 7. On February 18, 2020, BM318 executed a special warranty deed conveying to Dixon Water Foundation. And then

there's a description of some property. Right.

So Your Honor, if you'll recall, I mentioned that the debtor filed for bankruptcy on September 1st of 2020. And so this transaction, if you look, the -- actually says filed on July 2nd. It's actually the filing date for the special warranty deed. That was within a couple of months prior to the debtor actually filing for bankruptcy.

Right. And if we drop down to paragraph 8 of that document, it says on April 23rd, 2021, that would be -- the bankruptcy was filed September, so April 23rd, 2021, Dixon executed a special warranty deed conveying to Lumar 204.5 acres out of the original property transferred from BM318. Right.

So April 23rd of 2021, at that point in this bankruptcy case, if you take a look at the order approving debtor's disclosure statement that appears on the Court's docket, and it was introduced as Exhibit 7, order approving the disclosure statement on January 5th, 2021. About four months before Dixon executed a special warranty deed granting Lumar an interest in property.

Okay, so the disclosure statement had been approved. Plan confirmation was being set and Dixon conveys a track of land that had been put on the schedules as in dispute to Lumar. Debtor, there's no evidence in this record that the debtor had any knowledge of that special warranty deed or that transaction occurring on April 23rd, 2021. And if you look at paragraph 9

of the complaint, drop down Sydney, in fact Lumar, wait Lumar says at the time Lumar purchased the Lumar property, no adversary proceeding had been filed, no lis pendens had been filed, MBM38 made no claims to Lumar or to Dixon or to Lumar's knowledge for possession of or title to the Lumar property.

So at the point that this transaction occurred, no ne gave notice, no one was on notice that this transaction had in fact even occurred. Okay. Next paragraph.

Paragraph 10, on August 10th 2021 BM318 files its complaint, it's lawsuit to commence this adversary proceeding. The order confirming the plan, Exhibit Number 10, says that the plan was confirmed on August 2nd 2021. About a week before the complaint against Dixon was filed. No, nothing in this Court's record shows Lumar had ever participate in the bankruptcy, had made a notice of appearance, had asserted any rights to any assets that were being claimed by the debtor, or had made any complaint to the debtor regarding any property that would come into play.

And in fact, if you look, October 27, paragraph 12 of this complaint the debtor filed in connection with the adversary a lis pendens. And the lis pendens included the Lumar property because it was part of the original tract, the 2,000 5570 acres that Dixon Water and the debtor were having a dispute over. And they said in paragraph 12, again this is Lumar, that at the time six months past since Lumar's purchase

of the Lumar property and Lumar had begun development of the property and then they claimed they didn't receive any notice of the lis pendens.

That timing, Your Honor, I think becomes very important to what's happening in this case. But Lumar then files, once it becomes aware of the bankruptcy proceedings and it files to participate in this adversary proceeding to assert whatever claims and rights that it would like to assert. And if you look at Exhibit 11, and that's actually a document I asked you to take notice of. Sydney if you'll drop to that, it's document 40.

And this is the original answer to the complaint filed by Lumar. And I will represent to the Court no one has disputed this answer yet. No one's filed a motion to dismiss it. No one's filed a motion for summary judgment, no one's asked to strike this particular answer.

If you'll look at paragraph 9 of the answer, it describes in detail what was going on with the Lumar transaction as we understood it. A 204.5 acres. And also it mentions the claims against Jim Martin. And the reason Jim Martin becomes important now is Martin is the managing member of Lumar. And if you remember, Mr. Martin had been listed in the schedules as a person we might have repetition claims against.

Well now, Martin, who is the manager of Lumar, is now

implicated, we believe, Your Honor, by the fact that Lumar has elected to participate in these proceedings. And so now we've raised questions in our answer regarding the involvement of Martin. Mr. Martin even becomes more complicated because Mr. Martin, as we were told in this pleading, Mr. Martin represented, consulted to, and served as a real estate agent for the plaintiff. Including with regard to the transaction giving rise to the plaintiff's adversary. That's the dispute between 318 and Dixon.

So that's how Martin gets involved and why there were claims listed against Mr. Martin. But now Mr. Martin is even further involved because he has a relationship with Lumar.

If you look at the counterclaims, starting on page 11 of this document, claims for relief.

Count 1, tortuous interference with a contract. On information and belief, Lumar, acting through Martin interfered with plaintiff's first buyback agreement, so on and so forth.

Count 2, on page 13 of this document, tortuous interference perspective contract. These claims should start looking familiar to the Court because a lot of these are in the answer and counterclaims that's been brought in connection with Lumar's plaintiff's and intervention brought back on March 21st, as part of the answer.

The only thing the amended complaint does, is it takes a number of these claims, now based on discovery, and

includes the other persons we believe, that are implicated in connection with these claims.

Let's look at Count III, breach of fiduciary duty. And this is a claim against Lumar. But if you read it, Lumar was owned and operated by Martin. Again, claims being brought against Mr. Martin related to his fiduciary duties, again part of the amended complaint.

Count IV, on page 17, the claim for fraud. Count V, on page 19,a claim for conversion. Count VI, on page 20, fraud in a real estate transaction.

Count VII on page 21, conspiracy. And lastly Count VIII, on page 22, declaratory judgment.

Why am I going through these is to show you, Judge, that these claims, in large part already exist as part of this adversary proceeding. They are part of the answer that was asserted by BM318 against Lumar. The amended complaint merely picks up a number of these claims that have already been asserted and asked to join them against other persons, including Dixon Water and others who participated in what we contend was the wrongdoing of Mr. Martin and Lumar.

Right. So Your Honor, the claims are already here. All we've done in the amended complaint is ask that we be given the opportunity to name the persons now and the similar claims in the form of an amended complaint. I think if you look at Exhibit 12, which is docket 42, the answer of Lumar to the

counter claims, they properly joined an answer. They went through and answered each of the allegations. Admit/deny, whatever position they're taking.

And then they asserted on page 11 after their answers a series of affirmative defenses. Failure to state a claim, estoppel waiver, unclean hands and set, ratification, preclusion, collateral estoppel. Things of that nature.

Nowhere do you see an affirmative defense asserted right now in this answer saying, oh, and by the way, these things were not scheduled in the debtor's schedules. They were not disclosed in the disclosure statement and they're barred by confirmation in the sand. And the reason they don't say those things is because the timing does not fit with them making those claims.

The relief that they seek in this Court to which we are joining the premises is relief that arises after the case was filed. In large part after the disclosure statement was approved. And I already showed you the timing on that and why that becomes important.

Your Honor, we'll take a look at --

THE COURT: If I an ask a question just to clarify. On the plaintiff's original answer and counterclaim, at Docket Number 40, is Mr. Martin --

MS. LINDAUER: Yes, Your Honor.

THE COURT: -- is Mr. Martin a party to this

adversary proceeding? Or is he --is he brought into this adversary proceeding before this time?

MS. LINDAUER: He is not a party yet. He is brought in in the amended complaint. That's where he comes in.

THE COURT: So contemplating --

MS. LINDAUER: He's not a party.

THE COURT: So as far as the counterclaim goes, at this point he is not a party. Okay. I just wanted to make sure I understood.

MS. LINDAUER: He was not a party, correct.

THE COURT: Okay. Go ahead.

MS. LINDAUER: He was not a party onto the counterclaim. And just to be clear, Your Honor, the counterclaim was filed April 11th. And I don't want the Court to forget, the parties agreed by agreement that every party in this case would have an opportunity to amend their pleadings and add parties.

So we all agreed that there would be a deadline to do that, which was May 9th. So no one -- and you're going to see both Lumar and Dixon have filed and requested leave to amend their pleadings. We just haven't had that hearing yet.

THE COURT: Okay, so --

MS. LINDAUER: Yeah, so they're asking --

THE COURT: Okay, I just wanted to make clear -- I'm processing some of the evidence, so some of the evidence that

you put forward, you pointed out, you put in the amended schedules, which you could have alleged claims against Mr. Martin. Is that right?

MS. LINDAUER: I did.

THE COURT: Okay.

MS. LINDAUER: I did.

THE COURT: Where in the plan was your understanding, was there a preservation of claims against Mr. Martin? Since clearly the debtor clearly knew about alleged claims against Mr. Martin at that time.

So, Your Honor, that's the claims against Mr. Martin. The only preservation language would be the language that I identified for you, which says at 8.01, it says that as otherwise provided as are tolerable, all claims against third parties on account, all other claims, are in favor of the debtor to the extent not compromised or released are preserved and retained for enforcement by the organized debtor for the benefit of creditor subsequent to the effective date.

This plan shall not estop the debtor or the organized debtor from asserting claim or cause of action, whether disposed or not.

So Your Honor, our position is that that was a disclosed claim in the debtor's schedules and therefore it was preserved as a cause of action under 8.01 of the debtor's plan and as a disclosed claim. Just as Dixon was. Dixon was a

disclosed claim that was preserved under Section 8.01 of the debtor's plan. So Your Honor, that was the language.

And then we went on and did modifications, as the Court's aware, specifically with regard to Dixon, because they showed up and wanted additional language included. But Your Honor, our position is, is that the cause of action and claims were put in the debtor's schedules and made public record, as long as the plan preserved those claims that should be sufficient to preserve the claim against Mr. Martin.

There are actually two sets of claims against Mr. Martin. There's claims that would have arisen and scheduled pre-petition. But there are also the claims with his involvement with Lumar, which arose post-petition. So there's actually two sets of claims. And you can discern that from the actual amended complaint.

So there are actually two buckets of claims involving Mr. Martin. We'll mention the first bucket in the answer we filed to the intervener's complaint. The amended complaint goes into I think more detail about the involvement of Mr. Martin now that we've done a little -- and again, you know, hindsight is 20-20 in a way. But, you know, a lot of this is coming out of discovery. There has been discovery done in the adversary proceeding that has led to the allegations that are now being set forth in the complaint.

So laying of the case started very simply with a

claim against Dixon Water. Lumar intervened. And now we're asking to include all of the participants primarily in the Lumar piece of the transaction.

Your Honor, what I was going to look at -- have you look at is, we looked at their answer to the counterclaim issues, or Lumar's response. What I was going to turn next to is actually the amended complaint itself. Because I think that all of the parties have asked the Court to look at the amended complaint. So I think we ought to spend a minute doing that.

It appears as Docket 50. It's marked as Exhibit 13. And Sydney if you can pull that up for me. Let's start off by under the nature of the case. That's on page 2 of 38. Do you have the right document, Sydney? It's page 2 of 38, the first amended complaint. I think you're on the motion. If you go to the attachment. It's Exhibit A.

Sydney are you following along? It's Exhibit A to the document that you have up, which is marked as Exhibit 13. Might have to get Sydney to figure this out. There we go. All right. We're in the right document. Now let's go to Exhibit A. All right. This is the first amended complaint. And nature of the case.

So first of all the first paragraph describes the original complaint, which was 547, 548 and 550. And those were the original claims against Dixon Water Foundation. Second -- the third paragraph, the adversary is also commenced against

intervener Lumar Land Dixon Water. And these are the additional persons that are sought to be included. And then it also describes the additional claims that are being asserted.

So they're all covered in the nature of the case revision. We listed all the parties that are sought to be added. And then we go to paragraph 7 of 38. That's the history, the facts behind the relationship of the various parties I want to focus the Court on some time periods. So remember the bankruptcy case was filed on September 1st 2020.

Paragraph 34 and this is under the fact section. All right. On or about March 18, 2020, Martin served as real estate agent on a contract. It goes on and talks about that. So that's a period before the bankruptcy case was filed. We're talking about Mr. Martin. All right.

And then if you go to paragraph 35, it talks about plaintiff was unable to close and there was a buy back contract. The debtor has a right to buy back the property under that contract. Paragraph 36 in December 2020 --

MS. PERRY: Your Honor, I'm going to have to object. I object. That's actually not what the proposed amended complaint says. The first buy back contract between J&J and Dixon. Not between the debtor and Dixon. And I realize this is argument and not evidence, but I do object to the mischaracterization of the facts in fact, even in their own complaint.

THE COURT: All right. Thank you. You may proceed.

MS. LINDAUER: Thank you, Your Honor. Your Honor, I'm just reading what's in the complaint. I'm not trying to embellish it. So all I'm trying to do is lay out the time line of what was going on. In paragraph 36, December of 2020, that's three or four months after the bankruptcy case was filed, the debtor began working with Ag American Lending to refinance the remaining portion of the loan with Dixon.

THE COURT: Ms. Lindauer, let me -- let me ask a question because I think Ms. Perry does raise a good point. These are allegations and it's not in evidence before me now. The question is should you be able to file this document.

MS. LINDAUER: Right.

THE COURT: And it can contain anything it wants to that's not in evidence. And so just simply relating what's in this document doesn't really help me with what's before the Court today. So why don't we stick to what's before the Court today.

MS. LINDAUER: Your Honor.

THE COURT: And the evidence that the Court --

MS. LINDAUER: The only reason, Your Honor --

THE COURT: Yeah, go ahead.

MS. LINDAUER: Right. No the only reason Your Honor is -- is because Ms. Perry took task with a lot of the allegations in the complaint itself in her argument, if you

remember. So all I'm trying to point out to the Court is that the operative time line that's involved in the amended complaint, which we seek to add back is time periods, especially starting on page 14, that all fall post-petition. And many of them also fall post-confirmation. So they start post-petition and then they go post-confirmation. For example, on April 23rd, Dixon provided financing to Lumar. That's after the plan was --

THE COURT: Again there's no evidence of that. And I know that's the contention of the --

MS. LINDAUER: Well, I tried to put on the --

THE COURT: And why is that relevant -- but why is that relevant to the issue of whether or not you should be able to file an amended complaint?

MS. LINDAUER: It's relevant because they're trying to argue that we are barred by a plan and confirmation order and schedules, from being able to assert this claims.

THE COURT: Against --

MS. LINDAUER: And so, Your Honor, they're not --

THE COURT: Yeah, go ahead. I didn't mean to cut you off.

MS. LINDAUER: -- against the debtor. No, no, but I mean all of their argument, Judge, they're relying on a collateral estoppel type argument that we are estopped from asserting these claims because they weren't raised as part of

the bankruptcy.

And my concern, Your Honor, is that's just not accurate because the claims did not exist to be raised. They now exist because Lumar has joined themselves into this adversary. Now these claims become necessary in order for us to be able to defend ourselves on the Lumar issues. And that's why I showed you the counterclaims and answers to the counterclaims. These issues are already here. And the timing is important because the timing shows that all of this transpired during the Chapter 11 and after the Chapter 11. Dixon knew that we were going to be seeking to recover this property back as part of this bankruptcy. And they transferred part of it away.

And they did so with the aid of our real estate agent and Lumar, who is owned by our real estate agent. So we -- you know, look --

THE COURT: And that's Mr. Martin --

MS. LINDAUER: And that is the --

THE COURT: And that's Mr. Martin, correct?

MS. LINDAUER: That's Mr. Martin.

THE COURT: And those are allegations that you raised, or at least you put them in schedules to show that the estate may or may not have claims against Mr. Martin, correct?

MS. LINDAUER: No.

THE COURT: And the only --

MS. LINDAUER: And again, there's two sets of claims, Your Honor. There's the claims prior to and the claims after.

THE COURT: Okay.

MS. LINDAUER: These are not just claims prior to.

THE COURT: Okay. And you're aware, but then you're all really pointing to the part of the plan which is Section 1801 as the reservation --

MS. LINDAUER: Right.

THE COURT: -- or preservation of claims. And so even though that reservation is sufficient, or the reservation is not. And that's an issue I'm going to have to rule upon. And --

MS. LINDAUER: Well, it's -- it would only be claims that were subject to being scheduled or part of the bankruptcy. I think everybody is missing -- maybe I'm missing, but I think we're missing the point. The point is, is that this debtor has claims both prior to the filing of the case and after the filing of the case. If your ruling is, well, Ms. Lindauer, your amended complaint includes claims that came into effect after the case and they just simply aren't part of this bankruptcy, you can go pursue those in some other forum.

THE COURT: Again --

MS. LINDAUER: Not, you know, all --

THE COURT: Don't misstate what I said. Don't misstate. Don't misstate what you previously said. The

claims, even if they arose post-petition doesn't mean they're not property of the estate. And I think you agreed with it. I think it's pretty clear. I don't think you could.

MS. LINDAUER: Right.

THE COURT: So to the extent there are claims that arose post-confirmation that may or may not be a different issue.

MS. LINDAUER: Right.

THE COURT: But the question is claims that arose pre-confirmation, not pre-petition. Pre-confirmation. Where they appropriately preserved for reorganization? Yes or no. And to me it's a matter of law. You know, I mean I interpret the instant authority and view the plan --

MS. LINDAUER: Right.

THE COURT: -- and the disclosure statement and confirmation order to see if those class claims were properly preserved. Either they were or they were not.

And what matters --

MS. LINDAUER: Let's go back --

THE COURT: Here's the question I need to ask for my --

MS. LINDAUER: Okay, so let's go back. So Lumar can sue me and I can't sue them back? I've already done that. I've already sued them back. So those claims clearly -- so are they -- is Lumar going to come in and say well you can't sue me

back because you didn't put in your plan and in your schedules and in your disclosure statement that you had affirmative claims against Lumar.

How could I have put that in there, when one a transaction didn't even exist, and two, we didn't know anything about it. So again I have to believe that you have to know something about the claims in order to be somehow barred down the road. Right. I mean that just seems fundamentally unfair that they can sue us and I can't sue them back. Most of the claims that are being asserted in the amended complaint arise out of a Lumar transaction.

That's what I keep trying to understand is, is if they can sue me, I can sue them back. And I can sue them back and I can include the people who are involved in that transaction. When we let Lumar become part of this fight, then I think the debtor got the opportunity to fight back. Whether I put that in the plan or not, I got the ability to fight back. And that's what I'm doing. Is I'm saying if you're going to let Lumar be part of this case, I have defenses against them and I have people who participated in that bad transaction that need to be included in this case. And that's all it is. If you read the amended complaint carefully, it ties 99 percent of the time to the Lumar transaction.

That's what we're complaining about. We're complaining about the participation of people in that

transaction.

THE COURT: Is there a distinction between affirmative defenses versus affirmative claims against their parties?

MS. LINDAUER: I think they all rely -- I mean if these are necessary participants in this lawsuit, then you're barring the debtor from including necessary participants in claims that would, as you pointed out, potentially belong to this estate. So again that's relief that belongs to this estate that's being -- but again -- and I'd be happy, if you don't think we properly cited the cases, I'm happy to go through and look at the cases they've cited to you.

And I think most of those I can distinguish simply on the facts. These facts are not common facts in the cases that you're seeing. So Your Honor, we have an unusual situation here. But -- and I guess what I'm partly frustrated about is I would ask you not to rule on this until you read the amendments that they're asking for in their claims.

So again this is not a one-way street. Dixon has asked to amend their pleadings. Lumar has asked to amend their pleadings. So it's not -- we just happen to be the first to set a hearing on this. So you've got other people also asking. But at the end of the day I think that you can distinguish our situation here from the cases that they're relying on through the simple procedure that -- the time periods and facts don't

match up. And I'm not going to sit here and read you the amended complaint. I understand that.

But what I did want you to be aware of is that these causes of action that are set forth in this amended complaint mirror the causes of action in a large part that are already brought in and the answer, the counterclaim answer that the debtor has already filed in the Lumar action against Lumar. And all we're doing is tying in the additional people here.

So Your Honor, that's really all I have to say. I hope -- I think amendment -- the rules on amendment are so clear that, I mean Rule 15 is very clear on what's supposed to happen is the rules say that a party may amend it's pleading with opposing party's written consent or the Court's leave. The Court's should freely give leave when justice so requires.

I hear Ms. Perry's arguments about Twombly. Those are motions to dismiss cases. I understand that. And I understand you can give me leave to amend, she may file a motion to dismiss. But I don't think that that's a reason to not allow me leave to amend. I understand her argument about futility. I don't think there's futility here.

But again, I want to preserve whatever claims we have that will benefit this estate, will benefit the creditors of this estate. And so Your Honor, that's why we're here asking to amend our complaint. Thank you.

THE COURT: All right. Thank you.

All right. Who would like to go first in response? And I do have a question. I think what I hear is the primary argument that Ms. Lindauer was making is that if the estate didn't know the existence of the claims against these new parties except for perhaps Mr. Martin -- we'll set it aside -- therefore, how could they have disclosed it in the disclosure statement or in the plan when they didn't know the claims even existed?

What's your response to that?

MS. PERRY: So a couple of points, Your Honor. Number one, I don't think there's any evidence before the Court that they didn't know. And also --

THE COURT: -- cases that you're aware of.

MS. PERRY: I am not aware of the distinction in the cases. If the Court would like us to submit some type of post-hearing briefing we would certainly, you know, be open to doing that. I have not looked at that specific issue. What I would also say is that I believe the Court can infer, at least with respect to my clients that the debtor did know about these claims before confirmation, and this is why.

The transfer to Lumar was on April 23rd, 2021. Prior to that the debtor had never scheduled any claims against Dixon Water Foundation. And recall, that the deed in lien transaction happened pre-petition. The debtor filed original schedules and amended schedules. And nowhere in there did they

say they had a claim against Dixon.

I did not file a notice of appearance in the case, the Court can take judicial notice of the matrix and certificates of service and so on. We weren't served with notice of the bankruptcy case. We didn't receive anything until the debtor decided to file a first modification on May 5th, 2021. So within ten days or so of Lumar transfer. And all of a sudden the debtor is now asserting claims against Dixon.

Those claims against Dixon, I think it's important to point out were under 547, 548,550 and under 502. That's it. None of these other claims that they're now trying to seek to bring. Then on May 10th, 2021, you know within two weeks of the Lumar transfer, they filed second amended schedules on the eve of confirmation for the first time listing as possible claims and causes of action against Dixon.

I think the Court can infer from the pleadings that the debtor was aware of the Lumar transaction. And in the main case, I believe the Court -- I would ask the Court to take judicial notice of Ms. Lindauer's fee application in the main case. I don't have it here and I don't want to misspeak, but my recollection is that pre-confirmation, Ms. Lindauer was having someone in her office already start drafting the complaint for the adversary proceeding that was ultimately filed in aug.

So I believe that the Court can infer from when the debtor suddenly, on the eve of confirmation decided to raise these issues with respect to Dixon, and claims that it was the timing would suggest that the Lumar transaction might have been the impetus for that.

And certainly, you know, until that time, my client was not aware of, you know, the fact that the debtor was going to bring these claims. I'd like to address a couple other points.

One, Dixon has not filed a motion for leave to amend its pleadings. So we haven't filed one. I'm not saying I won't in the future, but I -- as we sit here, we haven't, and we don't intend to.

Number two, if we just look at 8.01, it's clear that the only claims that were specifically reserved against Dixon are 547, 548, 550 and 502. We have not asserted that those were properly reserved, but we do assert that these additional claims against Dixon were not properly reserved. And also against the Dixon board and Mr. Potts.

Also, with respect to this new argument about the counterclaims that BM318 asserted against Lumar, in those counterclaims, there's no claims asserted against -- additional claims asserted against Dixon, Mr. Potts or the Dixon board. It's not in there. We were not listed as part of the conspiracy that they've claimed in those counterclaims.

Now they're trying to draw us into that at this kind of late, late date here. And as Mr. Forshey pointed out, United Operating, those were post-petition claims. And so even if some of these claims arose post-petition, they still have to be properly preserved. I'm not seeing -- there's no distinction that I'm aware of, between pre-petition claims versus post-petition, pre-confirmation claims. And in addition, you know, the confirmation order wasn't entered until I think August 2nd. And the original complaint was filed on August 10th.

So you know there was even a lot of time before -- between when the Court confirmed the plan at the hearing and then entered the order.

And 8.01 is exactly the kind of general reservation that United Operating, you know, frankly frowns upon. And so we think that the record is simply very clear here. That if the debtor wanted to reserve claims, these claims that they now seek to bring, these state law claims, against Dixon, they should have done that in connection with the reservation they did against Dixon under 547, 548, 550, 502.

They wanted to bring claims, pre-confirmation claims against a Dixon board and Mr. Potts, then they should have expressly set those forth, specifically and unequivocally.

THE COURT: Can you point in the record where the plaintiff, debtor, was aware of these claims? I hear Ms.

Lindauer saying that the debtor was not aware of the claims until post-confirmation when the Court allowed the intervention of Mr. Forshey's client. Is there anything in the record to show that the debtor admitted such claims existed to preserve. I think it's the same question I had to start with.

MS. PERRY: You have-huh.

THE COURT: Except but now it's a factual issue.

MS. PERRY: Right.

THE COURT: Based on where in just the record itself. You know, clearly the Fifth Circuit Court is really clear when you've got to preserve it and it's got to be specific reservation. That I reserve something that I don't know exists, unless you think that Ms. Lindauer's argument is not persuasive enough, or that they existed.

Where in -- where is the evidence of that and where is the inference the Court can use to determine that of course the debtor knew that these alleged claims potentially existed and the extent that they were willing to preserve them, should I specifically preserve them.

MS. PERRY: Can I just browse --

THE COURT: Of course.

MS. PERRY: So going back to the record, I think the Court can look at the timing because the Court is agreeing that Lumar -- this Lumar transfer happened on April 23rd, 2020. The Court can look at the timing of the first modification. The

timing of the second amended schedules of assets and liabilities.

And infer from that the debtor had knowledge of these claims. Now when we look at that second -- the second amended schedules, which were Lumar's Exhibit 4, and we go to page 6 of 9.

(Undistinguishable conversation on finding place in document)

THE COURT: There's 154 pages in the email.

MS. PERRY: Yeah, because it's been marked over.

THE COURT: Yeah, and 154 pages in the PDF and trying to find the second one.

MS. PERRY: I apologize, Your Honor.

THE COURT: No, no, no, that's fine. I'll adjust through taking the time to do this.

Do you know where they are Ms. Chou or Mr. Forshey, it's in your exhibits where the second amended --

MS. PERRY: Schedules.

THE COURT: -- schedules. It's Exhibit number --

MR. FORSHEY: Yes, ma'am.

MS. PERRY: It's Exhibit Number 4 and it's -- I don't --

THE COURT: Let him look at the document. If he wants to look -- I'll send this --

MS. PERRY: I just -- I don't know -- I can't --

THE COURT: It's document 23.

MS. PERRY: I should have just looked at that, Your Honor. Yes, apologies.

THE COURT: No, no, that's fine. Let's see.

MS. PERRY: Look at the exhibit list.

THE COURT: Well, it's not on the exhibit locate list.

MS. PERRY: Right.

MR. FORSHEY: Okay. It's our Exhibit Number 4, Your Honor?

THE COURT: Yeah, do you know the PDF number? If not, I --

MS. PERRY: Oh.

MR. FORSHEY: Hold on. Let me -- I think I can tell you. It's 93 in the main case, Your Honor.

THE COURT: That's fine. Yeah, that's what I'm trying to get --

MS. PERRY: Your Honor, it would be 56-4 in the adversary.

THE COURT: That's all right. Let me go to the underlying bankruptcy. I've got way too many documents open on my computer here.

Okay. I'm going to get rid of that one.

Okay. Main case, it's Docket Number 94, correct, or 93?

MS. PERRY: 93.

THE COURT: 93. Okay. Let me get to 93.

Okay. Amended schedules, there we go.

There we go, okay. Now I'm with you.

MS. PERRY: Okay. So Page 6 of 9.

And I'd like to just direct the Court and I -- this has been mentioned before. So we see the causes of action against Dixon for preferential transfer, et cetera. And then as we go down, we see a possible cause of action against Jim Martin for claims including but not limited to tortuous interference, breach of contract, misrepresentation, fraud, breach of fiduciary duty and all related claims and causes of action.

Those look suspiciously like the claims that the BM318 is now seeking to assert in the amended complaint against Mr. Martin and the other proposed defendants. Now I recognize that it doesn't say a specific transaction. It doesn't say pre-petition; it doesn't say post-petition.

But tortuous interference, misrep, fraud, breach of fiduciary duties, those are all the same claims that Ms. Lindauer's client is now seeking to bring against my client, the present CEO of my client, and the board of directors of my client. If she thought she had -- if BM318 thought they had these claims, they should have included them when they -- in the reservation against my client. And they didn't. And it's

not included in 8.01.

So I do believe that the Court can infer that the debtor had knowledge of these claims, based on the schedules that were filed pre-confirmation.

THE COURT: All right. Thank you.

MS. PERRY: And to the extent that the Court finds that the plan did not adequately preserve these claims that BM318 is now seeking to bring, we would ask the Court and we did ask for this in our request for relief, to make an exclusive finding in any order that says that. As opposed to simply denying the motion. We would want an affirmative finding if the Court agrees with our position that these claims were not properly preserved and the debtor does not have standing.

THE COURT: All right. Thank you.

All right, Mr. Forshey.

MR. FORSHEY: Thank you, Your Honor.

The first thing I'd like to point out to the Court is that if you review the motion to amend, and if you review the response that was filed last night, at 3:00 p.m., or yesterday afternoon at 3:00 p.m., there is no claim anywhere in there that they didn't know about these claims. Search it. It doesn't ever say that.

Today is the first time that's been said. So I have to admit I'm answering this on the fly, but it just doesn't say

that. What it does say is our judicial estoppel arguments, they said a bunch of that happened post-petition.

And I said why they're arguing, because they're probably arguing so they have a record about what happened pre and post. I get that. But in terms of arguing I didn't know about it --

THE COURT: Fill in the blanks there. What do you mean by that? You mean if they're saying cause of action and it occurred post-petition, it's post-decree petition?

MR. FORSHEY: Yes.

THE COURT: Are you saying that under the Fifth Circuit authority and a cause of action occurs post-petition, and pre-confirmation, in order to preserve that claim, you don't have to --

MR. FORSHEY: Oh, no, I'm talking about -- no, not for the standing argument. I'm talking about the judicial estoppel argument.

THE COURT: I understand. Okay. Okay.

MR. FORSHEY: No. And that's why I didn't want to bring it up today because it muddies the water. I mean I think Ms. Lindauer is right on that, that there's been at least some type of a record about what arose pre-petition.

THE COURT: That's what I understood you saying way back two hours ago --

MR. FORSHEY: Right.

THE COURT: -- when you said you weren't going to argue --

MR. FORSHEY: Right.

THE COURT: -- the equitable -- the judicial estoppel argument.

MR. FORSHEY: Right. So --

THE COURT: But on the standing issue.

MR. FORSHEY: United Operating is clear. If you're going to assert something that is pre-effective date, pre-confirmation of the plan, you've got to preserve it.

And I wanted to point out a couple of things to you. If you look in our exhibit, the Exhibit Number 4, the one you were just looking at, and it's the amendment to the schedules, and that amendment of the schedules was filed on May the 12th of 2021.

And in there you're going to see they talked about all these claims against Tim Green, Chuck Stark, and Jim Martin for tortuous interference, breach of contract, misrepresentation, fraud, breach of fiduciary duty, and all claims and causes of action. They clearly by May 12, 2021 had some inkling that something was up because they put this in their schedules and they raised it.

I would also want to point out to Your Honor that the confirmation order was entered on August 2, 2021. And if you look at the pleading that they are asking to file, and it's

their Exhibit 13, and if you start at Page 7 of 38 just --

THE COURT: Let me catch up to you.

MR. FORSHEY: Okay. I'm sorry.

THE COURT: No, it's fine. It looks like I've got too many documents open, so I got to find it.

MR. FORSHEY: I understand the Court's a clicker and not a turner. Judge Morris is a turner, not a clicker.

THE COURT: I used to be a turner and not a clicker, but the new Judge Everett when he was with me converted me.

MR. FORSHEY: Converted.

THE COURT: So you can blame Judge Everett for me becoming a clicker as opposed to a turner.

Okay. So I'm looking at what exhibit now?

MR. FORSHEY: Okay. Exhibit 13 is the complaint they want to file. Page 7 of 38 is the fact section. If you will look beginning at Paragraph 21 and going all the way back to Paragraph 43, there is a recitation of facts, all of which occurred before the confirmation was entered most of them by several -- by a long time.

The only thing that happened they allege after that is there was some deed on October 4, 2021. The conduct that they're clearly alleging here are things that occurred before August the 2nd, 2021. Now if you look at their schedules and what they said when they amended in May of 2021, they clearly understood that something was up.

Ms. Lindauer also referred to the idea that Lumar sued me. And I'd like you to go look at Exhibit 10 in the plaintiff's exhibits, and that is a copy of the complaint and intervention that Lumar filed.

THE COURT: Okay.

MR. FORSHEY: All it says is a claim that under 550(b) Lumar is a good-faith transferee. And the problem is their lis pendens clouds our land, and we want to come in to fight that. And it's all we did. It doesn't have anything to do with these transactions. I mean we're here, we're going to get summary judgments eventually, that the avoidance actions that underlie that are no good, so lis pendens no good.

But that's all that we did here. I mean it wasn't like we came in and said, well, we're suing you on these transactions. It's not at all what that is.

And then, finally, I'd like to give you a couple of -- I brought a copy of the Gilmour case, and I've read it --

THE COURT: Of course.

MR. FORSHEY: And I want to bring you up a copy too of the HayBoo (phonetic) case. May I?

THE COURT: You may. Is that the SI Restructuring case?

MR. FORSHEY: Yes.

THE COURT: Thank you.

MR. FORSHEY: And I want to point out to you in that

case if you'll look at Page 5 of 6 where they've got the Note 13, they talk about the facts the Wooleys are claimants (indiscernible) and, therefore, you know, you're putting an impossible burden on us to disclose this by the time the plan was confirmed.

And if you'll look then on the next page at the end of the opinion, Your Honor, it's clear. They say:

> "That the Wooleys later discovered an additional basis of the claims does not change the fact that they could have and should have advocated for the reservation of causes of action they now wish to assert. Allowing the Wooleys to assert these claims simply because some of the underlying facts were unknown at the time the plan was confirmed would be inconsistent with the nature of the bankruptcy which is designed to primarily secure prompt, effective administration and settlement of all debtors' assets and liabilities within a limited time."

And they got the plan confirmed. Very shortly after that, they filed the avoidance action trying to set it aside. They (indiscernible) about that avoidance action because they jumped on it immediately. And prior to this, they (indiscernible) to schedule Jim Martin and all these other people that they thought they had claims against them that appear to be exactly what they're asserting now.

And then if you'd look at the pleading, they want to assert everything they've got in there happened generally months before the confirmation order. I mean this is a situation of what they were trying to remedy by United Operators [sic]. And (indiscernible) like it, but she said what she said and we're stuck with it.

And that is that you've got to very clearly and unequivocally retain the causes of action, and they didn't do that. And for that reason, they should be denied leave to amend.

THE COURT: All right. Thank you, sir.

All right. Ms. Lindauer, a reply?

MS. LINDAUER: Your Honor, if I can have the last word. I'm looking at the amended complaint, which I'm sure you'll read, and the timings that are set forth in the amended complaint. But I take some issue with what Ms. Perry said.

Your Honor, if you look at Docket 87, Dixon Water objected to the first amended plan. Let me pull it up for you. That's the first pleading they filed in the case, May 11th, 2021. Nowhere in that document does Dixon ever disclose that it conveyed any of the property to Lumar, never mentions it. That transaction with Lumar occurred in April of 2021, a month before this pleading was filed.

They go in in detail complaining about what they want included in the plan confirmation. They even discuss the

reservation of causes of action provision. And if you read, reservation of causes of action against Dixon Water Foundation on Page 3 of 6. And it talks about 8.01 of the plan, and it specifically -- it's possible the debtor has other causes of action against Dixon related to the same transaction without the general reservation of all causes of action. The debtor hereby specifically reserves and retains causes of action against Dixon, intends to file an adversary complaint.

Dixon of all the parties was on notice. There is just absolutely no way. And they did not tell us. And I take issue with them saying you can imply that the debtor had knowledge. Did Dixon tell us about Lumar? No.

Your Honor, I did offer a witness on these issues, and I was not allowed to put on evidence from my witness. So we are stuck with what's in the record. And what's in the record does not show that the debtor knew anything about Lumar until they surfaced almost a year later in connection with this adversary proceeding.

Dixon didn't tell us about them. Dixon never mentioned Lumar, never told us it was an issue. So I'm having a lot of heartburn when I read a pleading filed with this Court back on May 11th of 2021 prior to confirmation discussing in detail reservations of claims, reservations of rights, reservations of causes of action, Lumar -- Dixon participated in this process. There is no way that I should not be able to

amend my claims against Dixon now that we've done some discovery and we know what they've been involved in.

So at the end of the day, I think the motion to amend should be granted. And, look, if these guys have motions to dismiss or whatever they want to file next, you're there. They can file them. But look at Pleading 87 and tell me a month after they transferred to Lumar why they never told us about any of that. They could have. They could have said, oh by the way, we transferred part of this property away that you're talking about suing us.

They knew we were going to sue them. They knew what the claims were. And I can't understand how we didn't reserve our claims against Dixon. I couldn't reserve claims against Lumar because I didn't -- the only evidence you have, Your Honor, is void that we knew anything about Lumar. And you can look at their pleadings, which I asked you to take notice of, and you're not going to see any mention that Lumar told us anything at the time all the plan things were being done.

I don't think it's appropriate to bar us from asserting claims we didn't know about. I mean that puts an unfair burden on a debtor. Debtor has to go out and do extensive discovery to determine all of its claims and causes of action against potential third parties before it confirms a plan when the people that knew about the claims didn't bother to mention them?

So, Your Honor, I think the motion for leave should be granted and for all the reasons we have stated on the record. And if the Court does want additional briefing on some of these issues, I'm happy to go find you some cases that talk about when you have claims and causes of action that haven't been disclosed or discovered how you can be barred. That's just -- to me, that's just, you know, unconstitutional, basically. If you don't know about it, how can you reserve it.

So, again, Your Honor, I would ask you to amend or allow us to amend our complaint.

I'm sorry, Ms. Perry, if I mentioned you asked to amend yours. I thought you had. I know Lumar had.

And so, Your Honor, I'm sorry, I should be corrected on that one. But I think based on this record -- and, Your Honor, if you're going to deny me, I think I should have a right to put on evidence and I didn't have that opportunity other than pleadings and argument. So I do think I should have the right to have called Mr. Martin to clarify some of these points that are being made now.

So I want to reserve my right on that, Your Honor, regarding evidence in this matter. Thank you.

THE COURT: I understand. All right.

The Court will take this under advisement. I've got some things to review. And I will -- one of the notes I made to myself as I'm going back through the evidence that was

admitted as well as the arguments of counsel and the record, I'll just put the parties on notice now I may re-open the hearing to allow Ms. Lindauer to put on her witness. I'm just reserving her right to do that. I may not. I may be happy with my ruling, but once I go through the documents, I may give her that opportunity if the Court finds that it is necessary.

All right. So with that, the Court will take it under advisement. And if the Court decides to re-open the case, the parties will be made aware of that so that the matter could be reset on a convenient time for Ms. Lindauer to put on the evidence, put on her witness Mr. Martin. And it will be from Mr. Martin since -- isn't he the only party that was going to be testifying today?

MS. LINDAUER: Yes, Your Honor.

THE COURT: All right.

MS. LINDAUER: He's our only witness.

THE COURT: All right. So with that, it's under advisement, and I'll try to get a ruling out as quickly as I can. If I determine that it would help the Court in finalizing a ruling that perhaps it should hear testimony from Mr. Martin, the Court will let the parties know fairly soon if that's the case. And I'll leave it up to the parties to reset as quickly as we can get that on the docket. All right?

MS. LINDAUER: Thank you, Your Honor.

THE COURT: All right. Thank you all. And with

that, the hearing is adjourned. And I did get a note from my courtroom deputy, Ms. Lindauer, that apparently you're involved in another case going on in Dallas. The request has been made that once you're down here, if you can just log in and let them know where --

MS. LINDAUER: Okay.

THE COURT: -- things are. All right?

Thank you.

(Proceedings concluded at 4:51 p.m.)

* * * * *

**C E R T I F I C A T I O N**

I, DIPTI PATEL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

/s/ Dipti Patel

DIPTI PATEL, CET-997

LIBERTY TRANSCRIPTS DATE: June 17, 2022