Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor/Plaintiff

Khudabuksh K. Walji
State Bar No. 20691500
Law Office of K. Walji
10701 Corporate Drive, Suite 350
Stafford, Texas 77477
Telephone: (281) 401-9672
Co-Counsel for Debtor/Plaintiff

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **BM318, LLC,** | § | |
| | § | |
| **Debtor.** | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **BM318, LLC,** | § | **ADVERSARY NO. 21-04051** |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **THE DIXON WATER FOUNDATION,** | § | |
| | § | |
| **Defendant.** | § | |

| | |
|---|---|
| **LUMAR LAND & CATTLE, LLC,** | § |
| | § |
| **Plaintiff-in-Intervention,** | § |
| | § |
| **v.** | § |
| | § |
| **BM318, LLC,** | § |
| | § |
| **Defendant-in-Intervention** | § |

**BM318, LLC'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

---

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Pursuant to Fed. R. Civ. Pro. 15, BM318, LLC, Plaintiff in the above-styled and numbered cause, files this its *Motion for Leave to File Amended Complaint and Brief in Support*, and would respectfully show the Court as follows:

**RELEVANT FACTS**

1. BM318, LLC ("BM318") filed its original Complaint herein against Dixon Water Foundation ("Dixon") on August 10, 2021 (Doc. No. 1). The original Complaint was a limited action only aiming to claw back certain property due to a fraudulent transfer of the same. Although BM318 also had related claims for damages as a result of the fraudulent transfer, it believed that such claims were more appropriate for litigation outside of the bankruptcy court.

2. On September 30, 2021, Dixon filed its Answer and Counterclaim (Doc. No. 8).

3. On February 16, 2022, Lumar Land & Cattle, LLC ("Lumar"), after entry of an order granting leave to file, filed its Complaint-in-Intervention against BM318 (Doc. No. 33). Lumar alleged that it was a bona fide purchaser of a certain portion of the fraudulently-conveyed property. BM318 disagrees with this assessment. It is BM318's firm position that Lumar, in conspiracy with Dixon and others, abused its position as an agent of Plaintiff in order to willfully and wrongfully defraud BM318 of the property.

4. BM318 filed its Answer and Counterclaim on March 21, 2022. (Doc. 40). As a result of Lumar's intervention, BM318 was forced to bring additional tort-based claims that it had originally intended to litigate outside of the bankruptcy court at the conclusion of this case as these claims were now necessary claims.

5. Also, as a result of Lumar's intervention and BM318's subsequent counterclaims alleging fraud-based torts, BM318 has identified certain necessary parties to the newly-expanded proceedings. Once again, BM318 had hoped to litigate these claims outside of the bankruptcy court after this case had concluded.

6. By this Motion BM318 seeks leave of Court to file an amended complaint, attached hereto and incorporated by reference herein as **Exhibit A** (the "Amended Complaint"), against new Defendants GH Lumar, LLC; Aledo West, LLC; Railhead Realty LLC; Robert J. Potts; Jimmy Ray Martin; Ronald Hughes; Gary Hazlewood; Clinton W. Josey, Jr.; Kathy Smyth; Jerry Addison; Hugh Aljoe; Walt Davis; Leslie C. Rauscher; and Laura Whiting. BM318 also seeks to incorporate its existing claims against Dixon and counterclaims against Lumar Land & Cattle, LLC in the Amended Complaint.

## ARGUMENT

7. Rule 15(a)(2) of the Federal Rules of Civil Procedure states: "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have liberally construed Rule 15(a)(2) in favor of amendment. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981). The decision to grant leave is within the sound discretion of the court, with the caveat that the court must entertain "a bias in favor of leave to amend." *Stripling v. Jordan Prod. Co.*, LLC, 234 F.3d 863, 872 (5th Cir.2000). "If the district court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial." *Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985) (citation omitted). "Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Forman v. Davis*, 371 U.S. 178, 182 (1962). Given the liberal standard under Rule 15(a), "the burden is on the party opposing the amendment

to show prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.,* 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007). The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay. *Dussouy*, 660 F.2s at 598. In fact, delay alone is an insufficient ground to deny leave to amend. *Mayeaux v. Louisiana Health Service and Indemnity Co.*, 376 F.3d 420 (5th Cir. 2004).

8. Here, allowing BM318 to file the Amended Complaint to add additional necessary parties would serve justice and promote judicial efficiency. Further, there would be no substantial or undue prejudice, bad faith, undue delay, or futility.

9. Through the Amended Complaint, BM318 seeks to add GH Lumar, LLC; Aledo West, LLC; Railhead Realty LLC; Robert J. Potts; Jimmy Ray Martin; Ronald Hughes; Gary Hazlewood; Clinton W. Josey, Jr.; Kathy Smyth; Jerry Addison; Hugh Aljoe; Walt Davis; Leslie C. Rauscher; and Laura Whiting as new defendants. Each of these defendants has been rendered a required party pursuant to Federal Rule of Civil Procedure 21, which states in relevant part:

> (1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

When analyzing whether a party is required, courts consider "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties," "whether a

judgment rendered in the person's absence would be adequate," and "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." Fed. R. Civ. P. 19.

10. Here, the parties are necessary because, under the theories of *res judicata* and claim preclusion, should the Plaintiff receive a judgment with regard to its fraud and other tort claims against the existing parties, such claims would likely be forever precluded in other forums against the excluded tortfeasors. Consequently, as a result of Lumar's intervention, this forum is now the *only* forum where BM318 can have all of its claims heard. Denial of the Motion would thus severely prejudice Plaintiff's ability to fully recover from the torts committed against it.

11. Even if the Court deems the parties unnecessary pursuant to Rule 19, the Court should still grant this Motion pursuant to the permissive joinder standard espoused in Rule 20, which states in relevant part:

(a) Persons Who May Join or Be Joined. …

> (2) *Defendants*. Persons--as well as a vessel, cargo, or other property subject to admiralty process in rem--may be joined in one action as defendants if:
>
> > (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (B) any question of law or fact common to all defendants will arise in the action.

12. There is no question here that the claims and parties Plaintiff seeks to add all arise out of the same transaction or occurrence – namely, the fraudulent conveyance of a parcel of property that rightfully belongs to BM318. Indeed, certain of the claims contained within the Amended Complaint are alleged against all parties as joint tortfeasors for the same injury. Accordingly, the Motion for Leave should be granted.

13. Additionally, there has been no undue delay in bringing this Motion. Lumar was only added to this case on February 18, 2022. Indeed, BM318 only filed its Answer and

Case 21-04051-mxm Doc 65-12 Filed 07/26/22 Entered 07/26/22 17:32:55 Desc

Counterclaim (Doc. 40) on March 21, 2022. Moreover, the existing parties have met and agreed to an amended scheduling order (Doc. 48) that accommodates the addition of new claims and parties until May 9, 2022. No undue prejudice can thus be genuinely argued by any existing party to this suit.

WHEREFORE, PREMISES CONSIDERED, BM318 requests the Court to enter an order granting it leave to file the Amended Complaint and granting such other and further relief as is just.

Dated: May 9, 2022

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
sydney@joycelindauer.com
Attorneys for Debtor/Plaintiff

Khudabuksh K. Walji
State Bar No. 20691500
Law Office of K. Walji
10701 Corporate Drive, Suite 350
Stafford, Texas 77477
Telephone: (281) 401-9672
Co-Counsel for Debtor/Plaintiff

Case 21-04051-mxm Doc 5 Filed 05/09/22 Entered 05/09/22 13:20:00 Page 7 of 45

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 9, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case listed below.

J. Robert Forshey on behalf of Intervenor-Plaintiff Lumar Land & Cattle, LLC
bforshey@forsheyprostok.com,
calendar@forsheyprostok.com;jgonzalez@forsheyprostok.com;bforshey@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com

Kimberly Paige Harris on behalf of Intervenor-Plaintiff Lumar Land & Cattle, LLC
kharris@qslwm.com, kvargas@qslwm.com

Joyce W. Lindauer on behalf of Plaintiff BM318, LLC
joyce@joycelindauer.com,
dian@joycelindauer.com;deann@joycelindauer.com;12113@notices.nextchapterbk.com

Jay Ong on behalf of Defendant The Dixon Water Foundation
jong@munsch.com, amays@munsch.com;jay-ong-4326@ecf.pacerpro.com

Deborah M. Perry on behalf of Counter-Claimant The Dixon Water Foundation
dperry@munsch.com

Deborah M. Perry on behalf of Defendant The Dixon Water Foundation
dperry@munsch.com

Joshua Lee Shepherd on behalf of Intervenor-Plaintiff Lumar Land & Cattle, LLC
jshepherd@qslwm.com, dcruz@qslwm.com

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR/PLAINTIFF

Khudabuksh Walji
Law Office of K. Walji
10701 Corporate Drive, Suite 350
Stafford, Texas 77477
Telephone: (281) 401-9672
CO-COUNSEL FOR DEBTOR/PLAINTIFF

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br><br>**BM318, LLC,**<br>**Debtor.** | §<br>§<br>§<br>§ | **CASE NO. 20-42789-mxm-11**<br><br><br>**CHAPTER 11** |
| **BM318, LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**THE DIXON WATER FOUNDATION, LUMAR LAND & CATTLE, LLC, GH LUMAR, LLC, GH LUMAR JV, ALEDO WEST, LLC, ROBERT J. POTTS, RAILHEAD REALTY LLC, JIMMY RAY MARTIN, RONALD HUGHES, GARY HAZLEWOOD, CLINTON W. JOSEY, JR, KATHY SMYTH, JERRY ADDISON, HUGH ALJOE, LESLIE C. RAUSCHER, DR. RICHARD TEAGUE**<br>**Defendants.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **ADVERSARY NO. 21-04051** |

**EXHIBIT "A"**

| | |
|---|---|
| **LUMAR LAND & CATTLE, LLC,** | § |
| **Plaintiff-in-Intervention,** | § |
| | § |
| **v.** | § |
| | § |
| **BM318, LLC,** | § |
| **Defendant-in-Intervention** | § |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COMES NOW BM318, LLC, Debtor and Plaintiff in the above-styled and numbered cause, and files this its *First Amended Complaint*, and would respectfully show the Court as follows:

### I. NATURE OF THE CASE

1. Debtor filed its voluntary petition commencing its Chapter 11 bankruptcy case on September 1, 2020.

2. This adversary proceeding is commenced pursuant to sections 547, 548 and 550 of chapter 11 of title 11 of the United States Code ("Bankruptcy Code") to avoid and recover from Defendant Dixon Water Foundation, or from any other person or entity for whose benefit the transfer was made, preferential and/or fraudulent transfers of property made by Debtor that occurred during the 90-day or two-year period, respectively, prior to the commencement of the Debtor's bankruptcy case.

3. This adversary proceeding is also commenced against Intervenor and Defendant Lumar Land & Cattle, LLC and Defendants The Dixon Water Foundation; GH Lumar, LLC; GH Lumar, JV, Aledo West, LLC; Railhead Realty LLC; Robert J. Potts; Jimmy Ray Martin; Ronald Hughes; Gary Hazlewood, and the named board members herein of The Dixon Water Foundation

to prosecute on or more of the following claims against each Defendant: tortious interference with a contract, tortious interference with a prospective contract, breach of fiduciary duty, fraud, fraud in a real estate transaction, constructive fraud, conversion, negligent misrepresentation, aiding and abetting/knowing participation ( as to Martin's breach of fiduciary duties), conspiracy to commit the foregoing claims, and other related claims.

## II. JURISDICTION AND VENUE

4. This Court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and is related to the above-captioned Chapter 11 Case pending in the United States Bankruptcy Court for the Northern District of Texas ("Court"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

5. The allegations against Dixon Water Foundation in this adversary proceeding are "core" proceedings to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2). The allegations against Martin in this adversary proceeding are "related to" proceedings to be heard and determined by this Court pursuant to 28 U.S.C. § 157(c).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

7. The statutory and legal predicates for the relief sought herein are sections 547, 548 and 550 of the Bankruptcy Code, Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Canons of Professional Ethics and Conduct of the Texas Real Estate Commission, Texas Business and Commerce Code Section 27.01, and the common law of the State of Texas.

8. Pursuant to Bankruptcy Rule 7008, Plaintiff consents to entry of final orders or judgments by this Court.

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:55 Desc

## III. PARTIES

9. Plaintiff is a limited liability company organized under the laws of the state of Texas.

10. Defendant The Dixon Water Foundation ("Dixon") is a non-profit corporation organized under the laws of the state of Texas, with offices located at 4528 County Road 398, Decatur, Texas 76234 and at P.O. Box 177, Marfa, Texas 79843. Dixon may also be served with process by first class U.S. mail at the address of its registered agent, David M. Rosenberg, 1722 Routh Street, Suite 1500, Dallas, Texas 75201 or at the offices of the Defendant's President, Robert Potts, at either of the aforementioned addresses in Decatur and Marfa, Texas. Dixon has been previously served with process in this case.

11. Defendant / Plaintiff-in-Intervention Lumar Land & Cattle, LLC ("Lumar") is a limited liability company organized under the laws of the state of Texas. As an intervenor, Lumar need not be served with process in this case.

12. Defendant GH Lumar, LLC ("GH Lumar") is a limited liability company organized under the laws of the state of Texas. GH Lumar may be served with process through its registered agent, Jimmy Ray Martin, at 5189 E. Interstate 20 Service Road N. #106, Willow Park, Parker County, Texas 76087.

13. Defendant Aledo West, LLC ("Aledo") is a limited liability company organized under the laws of the state of Texas. Aledo operates in joint venture with Defendant GH Lumar as "GH Lumar JV." Aledo may be served with process through its registered agent, Gary Hazlewood, at 1000 Texas Trail Suite 200, Grapevine, Tarrant County, Texas 76051 or at its office located at 5189 E. Interstate 20 Service Road N. #106, Willow Park, Texas 76087.

14. Defendant GH Lumar JV ("GH JV") is an unregistered joint venture between Aledo West, LLC and GH Lumar, LLC which is also a registered assumed name of both Defendants GH Lumar, LLC and Aledo West, LLC, and GH JV may be served with process through either such Defendant as provided above.

15. Defendant Railhead Realty LLC ("Railhead") is a limited liability company organized under the laws of the state of Texas which is a business entity real estate broker licensed under the laws of the state of Texas whose manager is Ronald Hughes . Railhead is the sponsoring broker entity for Jimmy Ray Martin. Railhead may be served with process at 5189 E. Interstate 20 Service Road N. #106, Willow Park, Parker County, Texas 76087 or through its registered agent, Ronald Hughes, at the same address.

16. Defendant Robert J. Potts ("Potts") is a resident of Texas and is the President and CEO of Defendant Dixon. Potts may be served with process at his place of work, The Dixon Water Foundation, 4528 County Road 398, Decatur, Wise County, Texas 76234 or wherever else he may be found.

17. Defendant Jimmy Ray Martin ("Martin") is a resident of Texas who is the owner, manger, principal, and/or president of Defendants Lumar, GH Lumar, and GH JV and who is also a licensed real estate agent under the laws of the state of Texas that is employed by Defendant Railhead. Martin may be served with process at his place of work, Railhead Realty, LLC, 5189 E. Interstate 20 Service Road N. #106, Willow Park, Texas 76087 or wherever else he may be found.

18. Defendant Ronald Hughes ("Hughes") is a resident of Texas who is a manager of Railhead and is a licensed real estate broker under the laws of the state of Texas. Hughes is Martin's supervising and/or sponsoring broker. Hughes may be served with process at his place

Case 21-04051-mxm Doc 50 Filed 06/17/22 Entered 06/17/22 ... Page 13 of 45

of work, Railhead Realty, LLC ("Railhead"), 5189 E. Interstate 20 Service Road N. #106, Willow Park, Texas 76087 or wherever else he may be found.

19. Defendant Gary Hazlewood ("Hazlewood") is a resident of Texas who may be served with process at his places of work, 1000 Texas Trail Suite 200, Grapevine, Texas 76051 or LLC, 5189 E. Interstate 20 Service Road N. #106, Willow Park, Texas 76087 or wherever else he may be found.

20. The following individual members of the Dixon Water Foundation board of directors (collectively, "Board Defendants"):

a. On information and belief, Clinton W. Josey, Jr ("Josey") is an individual resident of the state of Texas who may be served with process at the offices of The Dixon Water Foundation at at 4528 County Road 398, Decatur, Texas 76234 or at P.O. Box 177, Marfa, Texas 79843 or whever else such person may be found.

b. On information and belief, Kathy Smyth ("Smyth") is an individual resident of the state of Texas who may be served with process at the offices of The Dixon Water Foundation at at 4528 County Road 398, Decatur, Texas 76234 or at P.O. Box 177, Marfa, Texas 79843 or whever else such person may be found.

c. On information and belief, Jerry Addison ("Addison") is an individual resident of the state of Texas who may be served with process at the offices of The Dixon Water Foundation at at 4528 County Road 398, Decatur, Texas 76234 or at P.O. Box 177, Marfa, Texas 79843 or whever else such person may be found.

d. On information and belief, Hugh Aljoe ("Aljoe") is an individual resident of the state of Texas who may be served with process at the offices of The Dixon Water

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:26:00 Page 14 of 45

Foundation at at 4528 County Road 398, Decatur, Texas 76234 or at P.O. Box 177, Marfa, Texas 79843 or whever else such person may be found.

e. On information and belief, Leslie C. Rauscher ("Rauscher") is an individual resident of the state of Texas who may be served with process at the offices of The Dixon Water Foundation at at 4528 County Road 398, Decatur, Texas 76234 or at P.O. Box 177, Marfa, Texas 79843 or whever else such person may be found.

f. On information and belief, Dr. Richard Teague ("Teague") is an individual resident of the state of Texas who may be served with process at the offices of The Dixon Water Foundation at at 4528 County Road 398, Decatur, Texas 76234 or at P.O. Box 177, Marfa, Texas 79843 or whever else such person may be found.

**IV. FACTS**

21. On September 25, 2018, Defendant Potts, on behalf of Defendant Dixon, and a non-party (an entity related to Plaintiff) executed a contract (the "Farm and Ranch Contract") to sell 2055.70 acres of unimproved real property in Parker County, Texas known as Bear Creek Ranch (the "Original Property") for $35,461,480.00 to the non-party JMJ Acquisitions, LLC which r assigned the Farm and Ranch Contract to Plaintiff prior to closing.

22. Since 2018, Defendant Martin, a Texas-licensed real estate agent (License No. 190058), has served as the exclusive real estate agent for Plaintiff and its related entities through his broker, Railhead including Hughes, including for the purpose of identifying potential real estate acquisitions in Parker County and the surrounding areas, negotiating and contracting to acquire such properties, and in certain instances working to sell such properties after acquisition. Through Defendant Railhead, Defendant Martin was designated as the real estate agent and Defendant

Hughes was designated as the broker on the Farm and Ranch Contract for Plaintiff and its related entities.

23. On November 26, 2018, Plaintiff closed on the Farm and Ranch Contract by purchasing the Original Property. Plaintiff paid approximately $2,000,000.00 cash at closing and Dixon financed the remaining $32,946,900.00 over five years pursuant to a loan agreement (the "Loan") and promissory note (the "Note") maturing on November 26, 2023. The Note was secured by a Deed of Trust, Security Agreement and Financing Statement (the "Deed of Trust") on the 2055.70 acres save and except a 118.34 acre tract (which remained unencumbered) recorded under document number 2025-262749 in the real property records of Parker County, Texas.

24. During the term of the Note, Plaintiff was required to make quarterly interest payments based on annual rate of 5.5% along with a principal reduction payment of $6,494,000.00 on May 25, 2019. Between July 26, 2019 and February 27, 2020, Plaintiff and Defendant Dixon entered into a series of Loan modification agreements under which certain payment deadlines were extended and under which Plaintiff was to sell certain parcels of land from 1,937.36 acres that were encumbered by the Deed of Trust from which payments were made to Dixon on the accrued interest and/or principal as follows:

a. On or about July 26, 2019, Plaintiff contracted to sell 381.66 acres to Lumar which Lumar assigned to GH JV prior to closing which occurred on September 11, 20219 with $7,081,004 being paid to Dixon, consisting of $6,494,000 in principal and $587,004 in interest. Contemporaneously with this contract, the same parties executed a buyback contract under which Plaintiff could buy back the 381.66 acres. Through Defendant Railhead, Defendant Martin was designated as the real estate agent and Defendant Hughes was designated as the broker on both contracts for

both buyers and sellers. These contracts further disclosed: "Jim Martin, a licensed Realtor with Railhead Realty, LLC is a business partner of [Lumar]."

b. On January 30, 2020, Plaintiff sold 23.95 acres to GH JV with $407,150 of accrued interest being paid to Defendant Dixon leaving Plaintiff with 1,531.75 acres encumbered by the Deed of Trust ("Remaining Land").

25. The last modification of the Loan occurred on February 27, 2020 which included a Deed in Escrow Agreement which extended the deadline to remit the accrued interest and principal balance to July 1, 2020. The Plaintiff executed a special warranty deed to Remaining Land (the "Deed in Lieu") that was to be held in escrow unless and until Plaintiff defaulted upon which Defendant Dixon would be permitted to record the Deed in Lieu in satisfaction of Plaintiff's obligations to Dixon.

26. On June 26, 2020, in anticipation of Defendant Dixon recording the Deed, Dixon and JMJ Development, LLC ("JMJ"), an entity related to Plaintiff, entered into a "Real Estate Sales Agreement" ("First Buyback Contract") for the purchase of the Remaining Land from Dixon for the purchase price of $27,500,658.00 which was to close on August 31, 2020. JMJ had three options to extend the Closing Date by thirty days each in exchange for depositing $50,000 with the title company for each option. Under the First Buyback Contract, JMJ was to provide secondary financing at closing equal to $7,500,000 under a five-year promissory note at 12% interest for pre-development, development, and other business purposes.

27. On July 1, 2020, Plaintiff was unable to pay off the Note and amounts owed equal to $27,500,658.00 as modified and on July 2, 2020, Defendant Dixon recorded the Deed in Lieu pursuant to the Deed in Escrow Agreement, thus transferring the Remaining Land to Defendant.

28. During the period following Plaintiff's acquisition of the Original Property through the recording of the Deed in Lieu on the Remaining Property, Martin physically managed the Remaining Land along with all property owned by Plaintiff's related entities in Parker County and nearby areas, including controlling access and managing hunting and grazing leases. Martin assisted with certain predevelopment work on the Remaining Land and all properties owned by Plaintiff's related entities in Parker County and nearby areas such as surveying, platting, permitting, budgeting, and land planning. Martin was also tasked with securing proposals from builders to purchase lots once developed on the Remaining Land. Martin was further involved with Plaintiff's efforts to modify the Loan with Dixon and refinance the Loan with potential third-party lenders.

29. Martin worked on behalf of Plaintiff to obtain a municipal utility district ("MUD") on the Property, which was approved by Parker County on February 25, 2019 and enacted by the state legislature on or about May 16, 2019. For instance on June 3, 2020, Martin through his company sent an invoice to Plaintiff for certain claimed services related to the MUD for (i) South Central Water Company for $17,050; (ii) consulting environmental engineers for $9,430; (iii) travel to Austin for $1,500; and (iv) 420 "staff hours" for work Martin allegedly performed totaling $42,000. The invoice also included a line item described as "Railhead Realty loan w/ accrued interest" for $44,194.33. On December 8, 2020, Martin further obtained an opinion from the law firm of Coats Rose regarding the status of the MUD and necessary action to correct the failure to obtain approval from the city of Weatherford as required.

30. Martin worked with and/or retained Chris Chevreaux ("Chevreaux") of Chevreaux & Associates to obtain appraisals on multiple tracts within the Original Property on Plaintiff's behalf, including (i) 46 lots on 118.34 acres on April 15, 2019; (ii) 118.34 acres on May 26, 2019;

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:55 Page 18 of 45

(iii) 381.66 acres on May 30, 2019; (iv) 405.61 acres on May 29, 2020. Similarly, Martin worked through or with his broker, Defendant Hughes at Defendant Railhead, to provide a broker's opinion of value on (i) June 4, 2019 for 118.34 acres including development of two acre lots on such property and (ii) August 22, 2020 for the Remaining Property which was who valued the property at $51,633,001 (an average of $33,708.50 per acre). From around September 11, 2020 through January of 2021 Martin and Hughes worked Chevreaux to obtain additional appraisals on the Remaining Tracts for Plaintiff.

31. Prior to the end of May 2019, Martin represented Plaintiff as its real estate agent in attempts to negotiate the purchase of 95 acres which was adjacent to the Original Property. However, the parties were unable to agree on terms.

32. After exercising one of the options to extend the Closing under the First Buyback Contract, Dixon asserted a default and terminated the First Buyback Contract on or about October 15, 2020. Shortly thereafter, Dixon sold a portion of the Remaining Land to Defendant Lumar, an entity owned, managed, and controlled by Defendant Martin, despite Martin having represented Plaintiff as its real estate agent under the original purchase agreement to acquire the Original Property from Dixon.

33. On July 26, 2019, Plaintiff entered into a contract to sell 381.66 acres of the Original Property to Lumar. Martin was designated as the real estate agent for both the buyer and seller. On the same date, Plaintiff and Lumar executed a contract under which Plaintiff would buy back the 381.66 acres. Martin was also designated as the real estate agent for both the buyer and seller for this transaction. Martin, on behalf of Lumar, assigned such agreement to GH Lumar JV, a Texas joint venture and general partnership between Lumar and Defendant Aledo which is an assumed name of both Lumar and Aledo according to separate assumed name certificates filed with the

Texas Secretary of State on September 11, 2019. On or about September 1, 2019, the 381.66 acres was conveyed to GH Lumar JV.[1] The Plaintiff and Dixon had amended the terms of the Loan under which the sale proceeds would be paid to Dixon. Given that the sale proceeds were to be paid to the lender, Lumar was actually a party to the "Tri-Party Agreement" related to the first amendment on the loan from Dixon, which also included the deed in lieu of foreclosure. Similarly on or about January 31, 2020, Plaintiff sold 23.95 acres to GH Lumar JV, the proceeds of which were paid to Dixon as part of a modification of the Loan.

34. On or about March 18, 2020 Martin served as the real estate agent on a contract to sell 118.34 acres to "Gary Hazlewood and/or assigns" which did not close. Defendant Hazlewood and Martin are both managers and/or owners of GH JV and GH Lumar and through such entities including AC Aledo and Lumar are jointly developing 381.66 acres, 23 acres, and certain portions of the Remaining Land as acquired by Lumar, Martin, and GH Lumar as further described herein.

35. Although Plaintiff executed one or more extensions, Plaintiff did not close on the First Buyback Contract. However, Defendant Potts, CEO and President of Dixon, had informed Plaintiff that Dixon would still execute and close on a new buy back agreement based on similar terms including paying off the amount remaining under the Loan once Plaintiff had secured the necessary financing ("Second Buyback Contract**"**) – thus Plaintiff was essentially receiving credit for the prior loan payments.

36. In December 2020, Plaintiff began working with AgAmerica Lending to refinance the remaining portion of the Loan with Dixon. Martin was involved in communications and/or participated in discussions with AgAmerica in order to assist Plaintiff including by working to get

[1] Not to be confused with GH Lumar, LLC which was formed on June 5, 2020 by Lumar and Aledo as a separate entity from GH Lumar JV because there is no plan of conversion filed and no record of GH Lumar JV being converted into GH Lumar, LLC.

the necessary appraisal(s) on the Remaining Property for AgAmerica to provide the requested financing.

37. Between January 18, 2021 and January 21, 2021, Martin and Hughes negotiated to purchase 118.34 acres from Plaintiff and appeared to have agreed to final terms including purchase price on behalf of the buyer, "Jim Martin and/or his assigns." At the last minute, however, Martin did not execute the agreement.

38. Around the same period that AgAmerica had completed its due diligence and expressed its desire to finance the Second Buyback Contract, Plaintiff was negotiating with Potts the final terms of the agreement. Martin participated in and/or was copied on communications between Plaintiff and Dixon about these negotiations. On January 21, 2021 Plaintiff and Potts had seemingly agreed to the final terms of the Second Buyback Contract, but such agreement was subject to final approval from the Dixon board of directors at a meeting that was scheduled to be held on January 23, 2021.

39. On information and belief, Defendant Potts and the Board Defendants had knowledge of Martin's role as Plaintiff's real estate agent and the fiduciary duties owed the Plaintiff and knowledge of his relationship and interest in Lumar, GH Lumar, and GH JV including because they had reviewed and approved multiple purchase and sale agreements where Dixon was a party or where the proceeds of the sale would be delivered to Dixon under which Martin's agency relationship to Plaintiff was defined and/or Martin's relationship to GH Lumar, Lumar, and/or GH JV was disclosed in such contracts.

40. Despite Defendant Potts' and the Board Defendants' apparent knowledge (i) that Martin was Planitiff's real estate agent who owed fiduciary duties to Plaintiff and (ii) Martin's interests in Lumar and in acquiring and developing certain portions of the Remaining Property,

Potts and the Board Defendants approved Dixon entering into one or more contracts with Martin including on behalf of Lumar on January 23, 2021 without the knowledge of Plaintiff which included (i) the sale of 204.50 acres from the Remaining Property by Lumar, (ii) 6.15 acres of the Remainig Property to Martin, and (iii) an option and/or right of first refusal ("ROFR") to Martin and/or Lumar purchase the remaining portion of the Remaining Property. As a result and on information and belief, Potts and the Board Defendants approved such contracts with Martin including Lumar in bad faith which further resulted in them deciding not to formally execute and proceed with the Plaintiff's Second Buyback Contract on the Remaining Property.

41. On January 27, 2021, Dixon deeded 6.15 acres of the Remaining Property to Martin which was in addition to the 204.5 acre parcel under contract to Lumar.

42. On April 23, 2021 Dixon provided financing to Lumar for the purchase of the 204.5-acre tract and deeded the 204.5 acres to Lumar and recorded a Memorandum of Option Agreement to Martin on the remaining portion of the Remaining Property ("Option").

43. On October 4, 2021 Martin deeded to Defendant GH Lumar 5.48 acres apparently from the 6.15 acres he had acquired.

## V. CLAIMS FOR RELIEF

### COUNT I
### Avoidance of Preferential Transfer – 11 U.S.C. § 547
### *as to Defendant Dixon*

44. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

45. During the 90-day period prior to the filing of the Plaintiff's bankruptcy case (the "Preference Period"), pursuant to the Deed the Debtor transferred to Dixon the Property (the "Transfer"), which had an approximate value of $27.5 million or more.

46. The Transfer constituted a transfer of an interest in property of Plaintiff.

47. During the Preference Period, Dixon was a creditor at the time of the Transfer by virtue of the Loan and Note, for which Plaintiff was obligated to pay.

48. The Transfer was to or for the benefit of a creditor within the meaning of Section 547(b)(1) of the Bankruptcy Code, because the Transfer either reduced or fully satisfied a debt or debts then owed by the Plaintiff.

49. The Transfer was made for, or on account of, an antecedent debt owed by the Plaintiff to Dixon before such Transfer was made, as asserted by Dixon and memorialized in the Deed in Escrow Agreement, which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Dixon prior to being paid by the Plaintiff.

50. The Transfer was made while the Plaintiff was insolvent. Plaintiff is entitled to the presumption of insolvency for the Transfer made during the Preference Period pursuant to Section 547(f) of the Bankruptcy Code.

51. The Transfer was made during the Preference Period.

52. As a result of the Transfer, Dixon received more than Dixon would have received if: (i) the Plaintiff's bankruptcy case was under chapter 7 of the Bankruptcy Code; (ii) the Transfer had not been made; and (iii) Dixon received payments of its debts under the provisions of the Bankruptcy Code.

53. In accordance with the foregoing, the Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

54. Dixon was the initial transferee of the Transfer.

55. Based upon the foregoing, Plaintiff is entitled to an order and judgment against Dixon: (i) avoiding the Transfer under section 547(b) of the Bankruptcy Code; and (ii) entitling

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:20:09 Page 23 of 45

Plaintiff to recover the Transfer or the value of the Transfer from Dixon under Section 550(a) of the Bankruptcy Code, together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

**COUNT II**
**Avoidance of Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(B)**
***as to Defendant Dixon***

56. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

57. To the extent that the Transfer was not on account of an antecedent debt, the Plaintiff did not receive reasonably equivalent value in exchange for such transfer ("Potentially Fraudulent Transfer"); and

a. Plaintiff was insolvent on the date that the Transfer(s) was made or became insolvent as a result of the Transfer(s);

b. Plaintiff was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Plaintiff was an unreasonably small capital; or

c. Plaintiff intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

58. The Potentially Fraudulent Transfer is avoidable pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT III**
**Recovery of Avoided Transfers – 11 U.S.C. § 550**
***as to Defendant Dixon***

59. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

60. Plaintiff is entitled to avoid the Transfer and any Potentially Fraudulent Transfer pursuant to Sections 547 and 548 of the Bankruptcy Code (collectively, "Avoided Transfer").

61. Dixon was the initial transferee of the Avoided Transfer or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoided Transfer was made.

62. Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover the Avoided Transfer from Dixon, plus the costs of this action.

**COUNT IV**
**Disallowance of All Claims – 11 U.S.C. § 502(d) and (j)**
***as to Defendant Dixon***

63. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

64. Dixon is an entity from which property is recoverable under Section 550 of the Bankruptcy Code.

65. Dixon is a transferee of the Avoided Transfer avoidable under Sections 547 and/or 548 of the Bankruptcy Code.

66. Dixon has not turned over the Property or paid the value of the Avoided Transfer, for which Defendant is liable under Section 550 of the Bankruptcy Code.

67. Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of Dixon against the Plaintiff's chapter 11 estate must be disallowed until such time as Dixon turns over the Property to the Plaintiff or pays to Plaintiff an amount equal to the value of the Avoided Transfer, plus interest thereon and costs.

**COUNT V**
**Tortious Interference with a Contract**
***as to Defendants Lumar, Railhead, Aledo, Potts, Martin, Hughes, and Hazlewood***

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:55 Page 25 of 45

68. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

69. On information and belief, Potts, Martin, acting with and through Lumar and Railhead, Hughes, acting through Railhead, and Hazlewood, acting through Aledo, (collectively, "Count VII Defendants") interfered with Plaintiff's First Buyback Contract when they assisted, negotiated, and closed on the acquisition of 6.15 acres out of the Remaining Property. Given that the standard periods to perform due diligence and to close on a real estate purchase contract, Martin apparently began negotiating and/or entered into the contract to purchase the 6.15 acres out of the Remaining Contract while Plaintiff had an agreement to buy back the Remaining Property under the First Buyback Contract which Martin was aware of. On information and belief, Potts on behalf of Dixon and Martin, acting with and through Lumar and Railhead, Hughes, acting through Railhead, and Hazlewood, acting through Aledo, also began negotiating the purchase of the 204.5 acre property and/or other agreements related to the Remaining Property.

70. Texas law protects existing contracts from interference. *See Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*., 793 S.W.2d 660, 665-66 (Tex. 1990). Thus, a party to a contract has a cause of action for tortious interference against any nonparty to the contract who wrongly induces another contracting party to breach the contract. *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995). The elements of the cause of action for tortious interference are: (1) the existence of a contract subject to interference, (2) willful and intentional interference (3) that proximately causes damage, and (4) actual damage or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 647 n.7 (Tex. App.—Fort Worth 2003, pet. Denied). *All Am. Tel., Inc. v. USLD Communs., Inc.*, 291 S.W.3d 518, 531 (Tex. App.—Fort Worth 2009).

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:20:55 Page 26 of 45

71. Plaintiff and Dixon had negotiated and agreed to execute the contract referred to as First Buyback Contract. Defendants willfully and intentionally interfered with the First Buyback Contract. Martin, through and with Lumar, with knowledge of the history and negotiations between Plaintiff and Dixon, negotiated to purchase the 6.14 acres of the Remaining Property at the same time Plaintiff and Dixon were negotiating the execution of the First Buyback Contract. If not for Defendants' interference, Plaintiff would have been able to execute the First Buyback Contract and prevent the loss of property. Plaintiff suffered an actual loss of 6.14 acres of the Remaining Property as well as damages for money and time spent negotiating with Dixon.

72. As a result of such actions, Count VII Defendants interfered with the parties' performance under such contract including further negotiations related to such contract. Plaintiff requests that Martin be ordered to cause Lumar to return the property, and that Plaintiff be awarded damages.

## COUNT VI
## Tortious Interference with a Prospective Contract
***as to Defendants Lumar, Railhead, Aledo, Potts, Martin, Hughes, and Hazlewood***

73. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

74. On information and belief, Martin acting with and through Lumar GH Lumar, and/or GH JV together with Hughes acting through Railhead, and Hazlewood, acting through Aledo, (collectively, "Count VIII Defendants") interfered with Plaintiff's Second Buyback Contract when they assisted, negotiated and closed on the acquisition of (i) the Option to Martin on the Remaining Land and (ii) 6.15 acres out of the Remaining Property to Martin out of which he apparently conveyed 5.48 acres to GH Lumar. The closing of the 6.15 acres occurred only 4 days after the board of directors for Dixon decided not to proceed with the Second Buyback

Contract. Given the short time period, Count V Defendants had apparently been assisting, negotiating, and/or entered into a contract for the 6.15 acres around the time Plaintiff had negotiated and seemingly agreed with Potts on the Second Buyback Agreement.

75. Likewise, Dixon decided not to proceed with the Second Buyback Contract because Dixon instead chose to sell 204.5 acres to Lumar and Martin along with granting an option and a right of first refusal on the remaining portion of the Remaining Property. Lumar and Martin had obviously made an offer to purchase the 204.5 acres and obtain an option and/or ROFR on remaining portion of the Remaining Property prior to Dixon's board of directors deciding not to proceed with the Second Buyback Contract. At no time did Lumar and Martin disclose to Plaintiff that that they were negotiating or had entered into any agreement related to any of the Remaining Property.

76. The elements of tortious interference with prospective contract are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 417 (5th Cir. 2015) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). *Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 U.S. Dist. LEXIS 98041, at *22-23 (N.D. Tex. 2017).

77. There was a reasonable probability that Plaintiff and Dixon would have entered into a contract under the Second Buyback Contract. Dixon was willing to agree to the terms of the

Second Buyback Contract as indicated by Robert Potts, president and CEO of Dixon. Martin, through and with Lumar, acted with a conscious desire to prevent the contract or at least knew the interference was certain or substantially certain to occur as a result of Count V Defendants' conduct. Defendants Martin, Potts, Hughes, and Hazlewood's personal knowledge of the relationship between Plaintiff and Dixon allowed Martin and Lumar to usurp any potential deal between Plaintiff and Dixon for its own personal gain. Defendants' conduct was independently tortious or unlawful in that it used insider information to create a negative result for Plaintiff. If not for Count V Defendants' interference, Plaintiff and Dixon would have completed their contract. Plaintiff suffered actual damage and loss in that Count V Defendants deprived Plaintiff the ability to preserve its right in property.

78. As a result of Count VIII Defendants' actions as related to the Second Buyback Contract, 204.5 acres and the ROFR/Option, Dixon chose not to proceed with the Second Buyback Contract causing Plaintiff to suffer damages. Plaintiff requests that Martin be ordered to cause Lumar to return the property, and that Plaintiff be awarded damages.

**COUNT VII**
**Breach of Fiduciary Duties**
***as to Martin, Hughes, GH Lumar, Lumar, and Railhead***

79. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

80. Martin, Hughes, GH Lumar, Lumar, and Railhead (collectively, the "Count IX Defendants") owed certain formal and informal fiduciary duties to Plaintiff which were breached. Under the rules enacted and promulgated by the Texas Real Estate Commission ("TREC"), Martin as the licensed real estate agent and Hughes and Railhead as the licensed real estate broker representing Plaintiff, owed the highest fiduciary obligations to Plaintiff such as the duties of

loyalty, care, honesty, good faith and fair dealing, and to maintain confidentiality, including that they represent the interests of Plaintiff, be faithful and observant to the trust placed by Plaintiff, place no personal interest above that of Plaintiff, exercise integrity, deal honestly and fairly with all parties, and convey all known information that could affect decisions of the Plaintiff related to a property.[2]

81. Not only did Martin owe formal fiduciary duties to Plaintiff, but he also owed the same fiduciary duties on an informal basis because of the special relationship that existed between Plaintiff (including its related entities) and Martin. Fiduciary duties can arise from informal relationships between the parties such as moral, social, domestic, or purely personal relationships. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Whether such a fiduciary relationship exists is determined from the actualities of the relationship between the persons involved and evidence of the justifiable trust and confidence that is necessary to create a fiduciary relationship. *Id*.

82. As previously described, Martin not only served as the real estate agent for Plaintiff, but Martin also physically managed the Original Property along with all property owned by Plaintiff's related entities in Parker County and nearby areas including controlling access, maintenance, and managing hunting and grazing leases. Martin also advised Plaintiff and assisted Plaintiff on predevelopment issues such as access to utilities, platting, surveying, lot layouts including obtaining the MUD on the Original Property and performing certain predevelopment work on the Remaining Land and other properties owned by Plaintiff's related entities such as surveying, platting, permitting, budgeting, and land planning. Martin had also been tasked with securing proposals from builders to purchase lots once Plaintiff developed the Remaining Property. Additionally, Martin was involved with Plaintiff's efforts to modify the Loan with Dixon and

[2] See §§ 531.1, 531.2, 535.2, 535.156 in Chapter 531 Canons of Professional Ethics and Conduct in the TREC Rules

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:55 Page 30 of 45

refinance the Loan with potential third-party lenders including a part of the Second Buyback Contract. Additionally, Plaintiff relied on Martin's physical knowledge of the Original Property, knowledge of the area including the real estate market, and land development knowledge and experience. As a result, Plaintiff developed a special relationship of trust and confidence with Martin over several years which gave rise to Martin owing informal fiduciary duties including duties of loyalty, care, confidentiality, and good faith and fair dealing to Plaintiff. Martin including through his use of Lumar breached their fiduciary obligations as a result of the allegations described above including as related to Martin and Lumar's contract and acquisition of the 6.15 acres by Martin from which Martin apparently conveyed 5.48 acres to GH Lumar, the 204.5 acres by Lumar, along with the Option by Martin and the ROFR by Lumar on the remaining portion of the Remaining Property (collectively, "Lumar Acquisitions") and their efforts to develop such property (collectively, "Lumar Transactions") which conflicted with the known interests of Plaintiff to acquire such property which Martin, GH Lumar, and Lumar benefited from and which damaged Plaintiff.

83. Moreover, Martin along with GH Lumar and Lumar through Martin's actions breached their duty of confidentiality to Plaintiff when they utilized and benefited from Plaintiff's confidential information that Martin acquired from Plaintiff during the course of Martin's representation and relationship with Plaintiff which he utilized in the performance of the Lumar Transactions. For instance, the terms and status under which Plaintiff was going to buy back the Remaining Property and the valuations Martin had obtained on the Remaining Property were obvious considerations underlying and giving rise to the Lumar Transactions.

84. As a result, Count VII Defendants breached their fiduciary duties including obligations to maintain confidentiality and not use or disclose Plaintiff's confidential information

for his own purposes. Hughes and Railhead as the broker over Martin is liable for Martin's breach of his fiduciary obligations to Plaintiff.

85. Furthermore,Hughes and Railhead as the broker to Plaintiff further breached their fiduciary obligations to Plaintiff including their failure to disclose to Plaintiff the actions of Martin in his participation in the Lumar Transactions and breaching their duties of loyalty, honesty, good faith and fair dealing when they permitted Martin to participate in the Lumar Transactions without Plaintiff's consent and/or participated in or assisted Martin with the Lumar Transactions.

86. Plaintiff requests that Count IX Defendants be ordered to cause them to (i) return to Plaintiff such portions of the Remaining Property acquired by them or rescind the Lumar Transactions, (ii) terminate the Option and ROFR, and (iii) pay damages to Plaintiff.

**COUNT VIII**
**Fraud**
***as to Martin, Lumar, GH Lumar***

87. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

88. On information an belief, Martin including GH Lumar and Lumar through Martin's actions committed fraud including when Martin falsely represented to Plaintiff that he was there to do what he could and to help Plaintiff and its principal, Tim Barton, as related to the Original Property including to refinance, purchase the Remaining Property back from Dixon, and develop the Remaining Property. Instead, Martin and Lumar utilized such misrepresentations and their relationship of trust and confidence to obtain confidential and proprietary information which he used for his and Lumar's benefit without the knowledge or consent of Plaintiff in furtherance of the Lumar Transactions, and which was in direct conflict with Plaintiff's efforts to buy back the Remaining Property.

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:55 Desc

89. Under Texas law, the elements of fraud are (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. Lawrence v. Fed. Home Loan Mortg. Corp., 808 F.3d 670, 674 (5th Cir. 2015).

90. Martin made false representations that he would help Plaintiff in relation to the Original Property and the Remaining Property. This was a material fact as Martin used the information obtained through this process to cause harm to Plaintiff. Martin intended to defraud Plaintiff, as evidenced by the eventual sale of property from Dixon to Lumar and Martin Plaintiff relied on Martin as he was Plaintiff's real estate agent. The false statements proximately caused the injury. The information Martin obtained would not have been available if not for Plaintiff's reliance on the false statements.

91. Plaintiff requests that Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions, terminate the Option and ROFR, and that Plaintiff be awarded actual and punitive damages.

**COUNT IX**
**Conversion**
***as to Martin, Lumar, GH Lumar***

92. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

93. On information and belief, Through Martin's work with and representation of Plaintiff, Martin including through GH Lumar and Lumar possessed certain intellectual property and work product of Plaintiff related to the acquisition and development of the Original Property

and Remaining Property including as related to the MUD, land planning, surveys, valuations, costs, platting, permitting, and land planning. (collectively, "Work Product"). On information and belief, Martin and Lumar have utilized such Work Product for their own purposes as related to the Lumar Transactions without consent of Plaintiff resulting in Martin and Lumar's conversion of Plaintiff's Work Product and Plaintiff being damaged.

94. There are four elements to a conversion claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) Defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property. *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex.. App. 1997).

95. Plaintiff had negotiated with Dixon for an agreement to repurchase, giving Plaintiff entitlement to possession of the property. Martin, through Lumar, used Work Product of Plaintiff to sour the agreement and cause Dixon to pursue an alternative agreement with Lumar. Plaintiff has made demand for the property. Lumar, through the efforts of Martin, now as a part owner of the Property has not returned the portion of the property it obtained from Dixon. Martin, through Lumar, thus has converted property of the Plaintiff to his own use and enjoyment.

96. Plaintiff requests that Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions, terminate the Option and ROFR, and that Plaintiff be awarded damages.

**COUNT X**
**Fraud in Real Estate Transaction (Tex. Bus. Comm. Code §27.01)**
***as to Martin, Lumar, GH Lumar***

97. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:53 Desc

98. In addition to the foregoing causes of action and on information and belief, Martin including through Lumar and GH Lumar committed statutory fraud in a real estate transaction (Tex. Bus. Comm. Code §27.01) including through the fraudulent conduct described in the preceding paragraphs that he utilized in furtherance of the Lumar Transactions to acquire all or part of the Remaining Property which Plaintiffs seek to recover.

99. Fraud in a transaction involving real estate consists of a false representation of a past or existing material fact, when the false representation is (A) made to the person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract. Tex. Bus. & Com. Code. Ann. § 27.01(a) (West 2009).

100. Martin, including through GH Lumar and Lumar, made false representations to Plaintiff that he would help in negotiating with Dixon, falsely represented to Plaintiff that he was there to do what he could and to help Plaintiff and its principal, Tim Barton, as related to the Original Property including to assist Plaintiff with its efforts to refinance and/or purchase the Remaining Property back from Dixon and to develop the Remaining Property. Instead, Martin, Lumar, GH Lumar had competing interests and sought to acquire and develop the Remaining Property for themselves. Plaintiff relied on Martin's representations and negotiated a contract with Dixon under Martin's advisement. Martin caused the negotiations to ultimately fail, causing harm to Plaintiff.

101. Plaintiff requests that Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions, terminate the Option and ROFR, and that Plaintiff be awarded actual and punitive damages.

**COUNT XI**
**Constructive Fraud**
***as to Martin, Lumar, GH Lumar***

102. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

103. On information and belief Martin including through Lumar and GH Lumar committed constructive fraud.

> Fraud may be classified as actual or constructive. Actual fraud involves dishonesty of purpose or intent to deceive. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964). Constructive fraud is the breach of some legal or equitable duty that the law declares fraudulent because it tends to deceive others, violate confidences, or injure public interests. Id. The actor's intent is irrelevant. *Id*. Constructive fraud is most frequently found in a breach of a fiduciary or confidential relationship. 37 C.J.S. Fraud 2(c)(2) (1943).

*Vickery v. Vickery*, 999 S.W.2d 342, 376 (Tex. 1999).

104. By breaching his fiduciaries duties to Plaintiff, Martin including through GH Lumar and Lumar resulting from Martin's actions committed constructive fraud by participating in the Lumar Transactions and acquiring the Lumar Acquisitions and related rights without disclosing to Plaintiff and obtaining Plaintiff's consent which deceived Plaintiff and breached Plaintiff's confidence resulting in injury to Plaintiff.

105. Plaintiff requests that Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions, terminate the Option and ROFR, and that Plaintiff be awarded actual and punitive damages.

**COUNT XII**
**Negligent Misrepresentation**
***as to Martin, Lumar, and GH Lumar***

106. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

107. To prevail on its claim of negligent misrepresentation, Plaintiff must show that (1) the defendant made a representation in the course of its business, or in a transaction in which it

Case 21-04051-mxm Doc 50 Filed 02/26/22 Entered 02/26/22 20:27:55 Page 36 of 45

had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation." *Lennar Corp. v. Great Am. Ins. Co.,* No. 14-02-00860-CV, 2005 WL 1324833, at *30 (Tex.App.-Houston [14 Dist.] June 2, 2005, no pet. h.) (citing *Roof Sys., Inc. v. Johns Manville Corp*., 130 S.W.3d 430, 438 (Tex.App.– Houston [14th Dist.] 2004, no pet.)).

108. On information and belief, Martin including though Lumar and GH Lumar were negligent when then made certain misrepresentations including when Martin falsely represented to Plaintiff that he was there to do what he could and to help Plaintiff and its principal, Tim Barton, as related to the Original Property including to assist Plaintiff with its efforts to refinance and/or purchase the Remaining Property back from Dixon and to develop the Remaining Property. Instead, Martin, Lumar, GH Lumar had competing interests and sought to acquire and develop the Remaining Property for themselves. Instead of assisting Plaintiff, they failed to disclose their interests or intent as related to the Remaining Property and took such action as necessary to acquire the Remaining Property for their own benefit resulting in pecuniary loss to Plaintiff resulting from its justifiable reliance on such misrepresentations.

109. Plaintiff requests that Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions, terminate the Option and ROFR, and that Plaintiff be awarded actual and punitive damages.

**COUNT XIII**
**Aiding and Abetting and/or Knowing Participation - Breach of Fiduciary Duties**
***as to Lumar, GH Lumar, GH JV, Hazlewood, Aledo, Hughes, Railhead, Potts, Dixon, and Board Defendants***

110. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

111. On information and belief, Lumar GH Lumar, GJ JV, Hazlewood, Hughes, Railhead, Potts, and Dixon all aided and abetted and/or knowingly participated in Martin's breach of his fiduciary duties that he owed to Plaintiff.

112. "Where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Hendricks v. Thornton*, 973 S.W.2d 348 (Tex. App. – Beaumont 1998), *Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 514 (1942); *Kline v. O'Quinn*, 874 S.W.2d 776, 786 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Horton v. Robinson,* 776 S.W.2d 260, 266 (Tex.App.—El Paso 1989, no writ); *Herider Farms-El Paso, Inc. v. Criswel*l, 519 S.W.2d 473, 477 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.). Aiding and abetting a breach of fiduciaries duties arises upon: (1) a breach of fiduciary duty by a third party; (2) the aider's knowledge of the fiduciary relationship between the fiduciary and the third party; and (3) the aider's awareness of his participation in the third party's breach of its duty. *Darocy v. Abildtrup*, 345 S.W.3d 129, 137-38 (Tex. App.—Dallas 2011, no pet.) Likewise, the general elements for a knowing-participation claim are: 1) the existence of a fiduciary relationship; 2) the third party knew of the fiduciary relationship; and 3) the third party was aware it was participating in the breach of that fiduciary relationship. *Meadows v. Harford Life Ins. Co.*, 492 F.3d 634, 639 (5th Cir. 2007); See *Cox Tex. Newspapers, L.P. v. Wootten*, 59 S.W.3d 717, 721-22 (Tex.App.2001.

113. Because Martin owned and/or controlled Lumar, GH Lumar, and GH JV, such Defendants aided and abetted and/or knowingly participated in Maritn's breach of his fiduciarty duties because they knew of Martin's fiduciary relationship and were aware of their participation in the breach of such duties as related to the Lumar Transactions.

114. On information and belief, Hughes and Railhead aided and abetted and/or knowingly participated in Martin's breach of his fiduciary duties because they were Martin's broker. Thus, they knew of Martin's fiduciary obligations to Plaintiff and were aware of their participation in such breach because of their knowledge and/or participation in the Lumar Transactions.

115. On information and belief, Potts and the Board Defendants including on behalf of Dixon also aided and abetted and/or knowingly participated in Martin's breach of his fiduciary duties to Plaintiff because each one also knew of (i) Martin's fiduciary relationship with Plaintiff including by way of prior contracts and proposed contracts to which Potts was a signatory to on behalf of Dixon related to the Original Property which identified Martin as the real estate agent of Plaintiff and (ii) that allowing or causing Dixon to enter into and conduct the Lumar Transaction each of them including Dixon were aware of their participation in the breach of Martin's duties.

116. Finally on information and belief, Hazlewood and Aledo (resulting from Hazlewood's knowledge and actions) aided and abetted and/or knowingly participated in Martin's breach of his fiduciary duties to Plaintiff because they knew of the fiduciary relationship between Martin and Plaintiff. Hazlewood and Aledo had knowledge that Martin served as the real estate agent to Plaintiff and Railhead was the broker to Plaintiff (including Hughes) because Hazlewood had executed an memorandum of understanding with Plaintiff which outlined certain proposed terms under which Hazlewood would purchase the 118 acres of property out of the 2055 acre tract which provided a commission to be paid to Martin and because on or about March 18, 2020, a contract was executed for the sale of such property by Plaintiff to Hazlewood which defines Martin as the agent and Railhead as the broker (with Hughes as the supervisor) for both Hazlewood and Plaintiff although the contract did not close. Furthermore, Hazlewood and Aledo were aware of

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:09:55 Page 39 of 45

their participation in the breach resulting from their interests in the Lumar Transactions and/or joint development of such property under the Lumar Transactions from which they would benefit.

117. Plaintiff requests that (i) Dixon be ordered to return the Remaining Property, (ii) Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions and terminate the Option and ROFR, and (iii) that Plaintiff be awarded actual and punitive damages.

**COUNT XIV**
**Conspiracy to Commit Fraud and/or Fraud in Real Estate; Constructive Fraud, Conversion, Tortious Interference (Contract and Prospective Contract), and/or Breach of Fiduciary Duties**
***as to all Defendants***

118. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

119. On information an belief, Defendant Martin conspired with Defendants Dixon, Potts, each of the Board Defendants, Lumar, Hazlewood, Aledo, Hughes, Railhead, and/or GH Lumar to commit fraud and/or fraud in a real estate transaction, to commit constructive fraud, to convert Plaintiff's Work Product, to tortiously interfere with the First Buyback Contract, to tortiously interfere with the Second Buyback Contract, and to breach the fiduciary duties that were owed to Plaintiff by Martin as previously described in the foregoing counts in order to further the Lumar Transactions causing Plaintiff to be damaged.

120. "A conspiracy to defraud involves (1) two or more persons; (2) with a common purpose; (3) undertaking a common action to defraud; (4) where each person possesses intent to defraud; and (5) each person understands that the other conspirators share the common purpose." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017); *Durrschmidt v. Frost Nat'l Bank (In re R&K Fabricating, Inc.)*, Nos. 10-33878, 12-03177, 2013

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:12:20 Page 40 of 45

Bankr. LEXIS 1192, at *17 (Bankr. S.D. Tex. 2013) (citing *Bayou Terrace Investment Corp. et al. v. Lyles*, 881 S.W. 2d 810, 815 (Tex. App.—Hous. [1st Dist.] 1994)).

121. On information and belief, one or more and/or all of the Defendants acted in concert with Martin for the common purpose furthering the Lumar Transactions, and intent to, defraud the Plaintiff by assisting in or participating in the Lumar Transactions.

122. Plaintiff requests that the court order (i) Dixon be return the Remaining Property; (ii) Martin, GH Lumar, and Lumar be ordered to return to the Lumar Acquisitions and terminate the Option and ROFR, and (iii) damages be paid to Plaintiff.

**COUNT XV**
**Vicarious Liability / Respondeat Superior**
***as* to Hughes *and Railhead***

123. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

124. Hughes and Railhead are vicariously liable for the claims asserted by Plaintiff against Martin including those resulting from Martin's breach of fiduciary duties, fraud, fraud in real estate, negligent misrepresentation, constructive fraud, conversion, tortious interference with a contract, tortious interference with prospective contract because they are Martin's supervising and sponsoring broker.

> "A licensed broker is liable to the commission, the public, and the broker's clients for any conduct engaged in under this chapter by the broker or by a salesperson associated with or acting for the broker." Tex. Occ. Code Ann. § 1101.803 (Vernon 2004). Under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an employee acting within the scope of his employment. St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 541-42 (Tex. 2002). Lim v. Lomeli, No. 04-06-00389-CV (Tex. App. 8/29/2007) (Tex. App. 2007)

*Stroup v. MRM Mgmt., Inc*. No.03-17-00534-CV at *5-6 (Tex. App. – Austin 2018).

125. As a result, Plaintiffs request that the Court hold Hughes and Railhead liable for the claims asserted against Martin and resulting damages to Plaintiff as described above.

**COUNT XVI**
**Alter-Ego / Piercing the Corporate Veil / Reverse Piercing the Corporate Veil**

126. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

127. The court should pierce the veil of certain Defendant entities to hold certain individual Defendants liable as follows:

1. Pierce GH Lumar and Lumar to hold Martin liable;
2. Pierce Railhead to hold Hughes liable; and/or
3. Pierce Aledo to hold Hazlewood liable.
4. Dixon to hold Potts and the other Board Defendants liable.

128. Similarly, the court should utilize revserse veil-piercing principals to hold the following Defendant entities liable for the action of their members and owners:

1. GH Lumar and Lumar liable for the actions of Martin;
2. Pierce Railhead liable for the actions of Hughes to hold Hughes liable; and/or
3. Aledo liable for the actions of Hazlewood.

129. Notwithstanding the above, Aledo and Lumar are each general partners as joint ventures in GH JV, and as a result, each should be held jointly and severally liable for the claims asserted against GH JV.

130. Section 21.223 of the Texas Business Organizations Code states that the limitation of liability in that section "does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or

affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate."

131. "Under the alter ego theory, courts disregard the corporate entity when there exists such unity between the corporation and individual that the corporation ceases to be separate and when holding only the corporation liable would promote injustice." *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex. 1990), citing *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). In addition to the alter ego theory, the liability protection of the Defendant entities may be pierced (1) when the fiction is used as a means of perpetrating fraud; (2) where a corporation is organized and operated as a mere tool or business conduit of another corporation [alter ego]; (3) where the corporate fiction is resorted to as a means of evading an existing legal obligation; (4) where the corporate fiction is employed to achieve or perpetrate monopoly; (5) where the corporate fiction is used to circumvent a statute; and (6) where the corporate fiction is relied upon as a protection of crime or to justify wrong. Castleberry v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986). There is a basis to pierce the corporate veil if "recognizing the separate corporate existence would bring about an inequitable result." *Id*. at 272. Furthermore, to prove there has been a sham to perpetrate a fraud, Plaintiff needs to only show constructive fraud including "the breach of some legal or equitable duty which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive others, to violate confidence, or to injure public interests." Id. at 273. As a result and based on the aforementioned claims asserted by Plaintiff including but not limited to constructive fraud, fraud, fraud in real estate, aiding and abetting / knowing participation in the breach of Martin's fiduciary duties to Plaintiffs the court should pierce the veil and hold the aforementioned individual Defendants liable.

132. Furthermore, the court should hold Martin liable as the alter ego of Lumar, GH Lumar, and GH JV and likewise each Lumar, GH Lumar, and GH JV (collectively, "Lumar Entities") as the alter egos of one another. Martin is the alter-ego of the Lumar Entities and each Lumar Entity is the alter ego of the other Lumar Entities becasue Martin has a financial interest in, ownership of, or control of the Lumar Entities; there is unity between Martin and the Lumar Entities and unity between all Lumar Entities; it would be an injustice to hold one or even more of the Lumar Entities liable without holding Martin liable or without holding the other Lumar Entities liable as well; Martin used one or more of the Lumar Entities to perpetuate a fraud and commit other torts as previously described which was for Martin's benefit and in turn each Lumar Eneity was used for the benefit of teh other Lumar Entities. See Tex. Bus. Orgs. Code § 21.223(b); Mancorp., Inc. v. Culpepper, 802 S.W.2d 226, 228 (Tex. 1990); Stewart & Stevenson Servs., Inc. v. Serv-Tech, Inc., 879 S.W.2d 89, 108 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

133. Similarly, Lumar, GH Lumar, and GH JV should each be held liable for the claims asserted against Martin such as fraud, constructive fraud, fraud in real estate, breach of fiduciary duties, conversion, tortious interference with a contract and prospective contracts including because Martin used the Lumar Entities for the purpose of shielding certain assets including the Lumar Acquisitions that he acquired as a result of his conduct that has given rise to the claims herein.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the Court to grant relief and enter a judgment against Defendants as follows:

**A. Requested relief against Dixon**

- That the Avoided Transfer avoidable under Sections 547 and/or 548 of the Bankruptcy Code be avoided;
- That the Avoided Transfer, to the extent that it is avoided pursuant to Sections 547 and/or 548 of the Bankruptcy Code, be recovered by Plaintiff pursuant to Section 550 of the Bankruptcy Code;
- That all claims held by Dixon be disallowed in accordance with Section 502(d) of the Bankruptcy Code until Dixon satisfies the judgment; and
- That Dixon be required to turn over the Property and such other relief as the Court may grant/ in favor of Plaintiff.

**B. Requested relief against Martin, GH Lumar, Lumar JV, and Lumar:**

- That Martin, GH Lumar, Lumar JV, and Lumar be ordered return the Lumar Acquisitions and terminate any and all related rights including the ROFR and Options as received from Dixon to the Plaintiff;

**C. Requested relief against all Defendants:**

- That Defendants are found liable for actual damages;
- That Defendants are found liable for punitive damages;
- That pre-judgment interest be awarded at the maximum legal rate running from the date of filing of the Complaint to the date of judgment herein;
- That post-judgment interest be awarded at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;
- That the Plaintiff be granted such other and further relief as the Court deems just and proper.

Case 21-04051-mxm Doc 50 Filed 05/09/22 Entered 05/09/22 20:07:55 Desc

Dated: May 9, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
sydney@joycelindauer.com
Attorneys for Debtor/Plaintiff

Khudabuksh K. Walji
State Bar No. 20691500
Law Office of K. Walji
10701 Corporate Drive, Suite 350
Stafford, Texas 77477
Telephone: (281) 401-9672
Co-Counsel for Debtor/Plaintiff