Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MX |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

# MOTION OF PLAINTIFF-IN-INTERVENTION LUMAR LAND & CATTLE, LLC FOR LEAVE TO AMEND (1) ITS ORIGINAL COMPLAINT IN INTERVENTION FOR DECLARATORY JUDGMENT, AND (2) ITS ORIGINAL ANSWER TO COUNTERCLAIMS

Plaintiff-in-Intervention Lumar Land & Cattle, LLC ("Lumar") files this *Motion for Leave to Amend (1) Its Original Complaint in Intervention for Declaratory Judgment, and (2) Its Original Answer to Counterclaims* (the "Motion") and respectfully shows the Court the following:

**I.**
**PROPOSED AMENDED COMPLAINT IN INTERVENTION FOR DECLARATORY JUDGMENT AND PROPOSED AMENDED ANSWER**

1. A copy of Lumar's proposed *Plaintiff-In-Intervention Lumar Land & Cattle, LLC's Amended Complaint in Intervention for Declaratory Judgment* (the "Amended Complaint") is attached hereto as **Exhibit A**. A copy of Lumar's proposed *Plaintiff-in-Intervention's Amended Answer to Plaintiff's Counterclaims* (the "Amended Answer") is attached hereto as **Exhibit B**.

**II.**
**RELIEF REQUESTED**

2. By this Motion, Lumar seeks leave pursuant to Rule 15 of the Federal Rules of Civil Procedure to amend (1) its *Plaintiff-In-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment* [Adv. Dkt. No. 33] (the "Intervenor Complaint") with the Amended Complaint, and (2) its *Plaintiff-in-Intervention's Answer to Plaintiff's Counterclaims* [Adv. Dkt. No. 42] (the "Original Answer to Counterclaims") with the Amended Answer.

**II.**
**PROCEDURAL BACKGROUND**

3. BM318, LLC ("BM318") filed the *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* [Adv. Dkt. No. 1] ("BM318 Original Complaint") against Dixon Water Foundation ("Dixon") on August 10, 2021,

commencing this adversary proceeding. The BM318 Original Complaint seeks to avoid and recover an alleged prepetition transfer of real property from BM318 to Dixon pursuant to 11 U.S.C. §§ 547, 548, and 550.

4. On September 30, 2021, Dixon filed its *Answer and Affirmative Defenses to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 and Counterclaim* [Adv. Dkt. No. 8].

5. On January 14, 2022, Lumar filed its *Motion to Intervene and Brief in Support* [Adv. Dkt. No. 14]. On February 14, 2022, the Court entered its *Order Granting Lumar Land & Cattle LLC's Motion to Intervene* [Adv. Dkt. No. 32]. On February 16, 2022, Lumar filed the Intervenor Complaint. In the Intervenor Complaint, Lumar asserts a single count for declaratory relief – requesting a finding that Lumar is a good faith transferee under 11 U.S.C. § 550(b).

6. On March 21, 2022, BM318 filed its *Plaintiff's Original Answer to Plaintiff-in-Intervention Lumar Land and Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment and Counterclaims Against Intervenor* [Adv. Dkt. No. 40] ("BM318 Answer and Counterclaims").

7. On April 11, 2022, Lumar filed the Original Answer to Counterclaims

8. On April 26, 2022, the Court entered the *Third Amended Agreed Scheduling Orde*r [Adv. Dkt. No. 48] (the "Scheduling Order"). Among other things, the Scheduling Order sets May 9, 2022, as the deadline for Dixon and BM318, and June 6, 2022, as the deadline for Lumar, to file a motion to seek leave to amend pleadings and/or add new parties.

9. On May 9, 2022, BM318 filed the *BM318, LLC's Motion for Leave to File Amended Complaint* [Adv. Dkt. No. 50] ("BM318 Motion for Leave") seeking leave to amend the BM318 Original Complaint to add new defendants and add state law causes of action. On

May 31, 2022, Lumar filed the *Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Objection to BM318's Motion for Leave to File Amended Complaint* [Adv. Dkt. No. 53] (the "Lumar Objection") objecting to the BM318 Motion for Leave.

10. By this Motion, Lumar is seeking leave to amend the Intervenor Complaint with the Amended Complaint that contains additional requests for declaratory relief as follows:

> Count I – Declaratory Relief – The Lis Pendens Must be Expunged Because BM318 Failed to Comply With Texas Property code § 12.007
>
> Count II – Declaratory Relief – The Lis Pendens Should be Expunged In Relation to BM318's Preference Claims Because Such Claims Fail And Have No Merit
>
> Count III – Declaratory Relief – The Lis Pendens Should Be Expunged As to BM318's Fraudulent Transfer Claims Because Such Claims Fail and Have No Merit
>
> Count IV – Declaratory Relief – The Lis Pendens Should be Expunged As to The Section 550 Claim
>
> Count V Declaratory Relief – The Lis Pendens Should be Expunged As To The Remaining Claims
>
> Count VI – Declaratory Relief – The Transfer Caused No Diminution of Value of BM318's Bankruptcy Estate
>
> Count VII – Declaratory Relief – Lumar is a Good Faith Transferee Under Bankruptcy Code § 550(b) – *this was the single count in the Intervenor Complaint.*

11. By this Motion, Lumar is also seeking leave to amend its Original Answer to Counterclaims with the Amended Answer to clarify its affirmative defense of estoppel.

## III.
## BASIS FOR RELIEF REQUESTED

12. Federal Rules of Bankruptcy Procedure 7015 makes Rule 15 of the Federal Rules of Civil Procedure ("Rule 15") applicable in adversary proceedings. The Fifth Circuit recognizes that, under Rule 15, leave to amend should be freely granted when justice so requires. *Wimm v.*

*Jack Eckard Corp*., 3 F.3d 137, 139 (5th Cir. 1993). This "evinces a bias in favor of granting leave." *Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985)(citations omitted). The policy of the federal rules is to permit liberal pleading and amendment, thus facilitating adjudication on the merits while avoiding an excessive formalism. *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Ci. 1981) (citing *Foman v. Davis*, 371 U.S. 178 (1962); *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). If the court lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial." *Id*. Among the grounds for denying leave are: (1) undue delay; (2) bad faith; (3) dilatory motive; (4) repeated failure to cure deficiencies by prior amendment; (5) undue prejudice to the opposing party; and (6) the futility of the amendment. *Jamieson v. Shaw*, 772 F.2d at 1208. Even if substantial reason to deny leave exists, the court should consider prejudice to the movant, as well as judicial economy, in determining whether justice requires granting leave. *Id.* The Fifth Circuit also expressly recognizes that District Courts often afford the plaintiff at least one opportunity to amend a complaint and a single motion to amend is preferable over multiple motions for leave. *See, In re Saenz*, 515 B.R. 521, 531 (N.D. Tex. 2014) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).

13. By the Amended Complaint, Lumar is seeking to prove that the Lis Pendens was filed without supporting legal basis and thus must be expunged and vacated so the cloud on title to the Lumar Property can be removed. Lumar has fundamental rights as a real property owner to protect its property rights. As such, equity and justice support granting leave for Lumar to file the Amended Complaint.

14. By the Amended Answer, Lumar is seeking to clarify its defense of estoppel to specifically enumerate the affirmative defense of judicial estoppel.

15. Lumar submits that no grounds exist for denying leave to amend. First, there has been no undue delay as Lumar's Motion is timely filed under the Scheduling Order. Second, there is no bad faith or dilatory motive as Lumar is the party being harmed by the improperly filed Lis Pendens and is only seeking to protect its property rights and clarify its affirmative defenses against BM318's counterclaims. Third, this is Lumar's first time seeking leave to amend. Fourth, there is no undue prejudice to BM318 as Lumar will show the Court that BM318's avoidance claims against Dixon must fail as a matter of law. Lastly, the amendment would not be futile as Lumar is entitled to protect its rights against improper interference with its right of quiet enjoyment of ownership in real property and against baseless claims.

16. For the foregoing reasons, Lumar submits that no grounds exist to deny leave to amend and Lumar requests that the Court grant leave to amend the Intervenor Complaint with the Amended Complaint and amend the Original Answer to Counterclaims with the Amended Answer.

## IV.
## PRAYER

WHEREFORE, for the reasons set forth above, Lumar respectfully requests that the Court enter an order granting leave for Lumar to file the Amended Complaint and the Amended Answer and for such other and further relief the Court may deem just and proper.

**[*Remainder of page left intentionally blank*]**

Respectfully submitted,

*/s/ Kimberly P. Harris*

KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**- And -**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 3, 2022, a true and correct copy of the foregoing was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, including both the Debtor-Plaintiff BM318 and Dixon, through counsel.

*/s/ Kimberly P. Harris*
Kimberly P. Harris

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| | § | |
| Debtor | § | |
| | § | |
| BM318, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| | § | |
| THE DIXON WATER FOUNDATION, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| | § | |
| Plaintiff-in-Intervention | § | |

**PLAINTIFF-IN-INTERVENTION LUMAR LAND & CATTLE, LLC'S**
**<u>AMENDED COMPLAINT IN INTERVENTION FOR DECLARATORY JUDGMENT</u>**



EXHIBIT
A

Plaintiff-in-Intervention Lumar Land & Cattle, LLC ("Lumar"), pursuant to 28 U.S.C., § 2201(a) and Fed. R. Civ. P. 57, files this *Amended Complaint in Intervention for Declaratory Judgment* and respectfully shows the Court the matters set forth below:

## I.
## PARTIES

1. Lumar is domestic limited liability company organized under the laws of the State of Texas.

2. The Plaintiff/Debtor BM318, LLC ("BM318") is a limited liability company organized under the laws of the State of Texas.

3. Defendant The Dixon Water Foundation ("Dixon") is a is a non-profit corporation organized under the laws of the State of Texas. Dixon has previously appeared in this action.

## II.
## JURISDICTION AND VENUE

4. This Court has jurisdiction of this adversary proceeding ("Adversary Proceeding"), which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 case pending in the United States Bankruptcy Court for the Northern District of Texas, pursuant to 28 U.S.C., §§ 157 and 1334(b). This Adversary Proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C., § 157(b)(2).

5. The Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C., § 2201. An actual and substantial controversy exists between the parties based on a notice of lis pendens relating to this lawsuit which clouds the title to the land owned by Lumar. By this action Lumar seeks a declaration that BM318 improperly filed the lis pendens as to the property owned by Lumar thereby improperly clouding Lumar's title to the land.

6. Venue is proper in this district pursuant to 28 U.S.C., § 1409.

7. Lumar consents to the entry of final orders or judgments by this Court if it is determined that consent of the parties is required by this Court to enter final orders or judgments consistent with Article III of the United States Constitution.

## II.
## FACTUAL BACKGROUND

### A. The transfer of the Remaining Property by BM318 to Dixon.

8. On November 26, 2018, BM318 purchased 2055.709 acres of unimproved real property in Parker County, Texas known as Bear Creek Ranch.[1] The purchase price was $35,461,480.00.[2] Dixon financed $32,946,900 of the purchase price (the "Loan") and BM318 executed the Promissory Note dated November 26, 2018 (as amended or modified, the "Note") payable to the order of Dixon in the original principal amount of $32,946,900. To secure the Note, BM318 executed a Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 (the "DOT") on the 2055.70 acres save and except a 118.34 acre tract (the "Original Property"). The DOT was recorded in the real property records of Parker County, Texas, under document number 201829927.[3]

9. The Note and the DOT were subsequently modified several times with the last of the modifications being the Deed in Escrow Agreement dated February 27, 2020, executed by BM318, Dixon, and American Escrow Company (the "Deed in Escrow Agreement").[4] Part and parcel to the Deed in Escrow Agreement was a Special Warranty Deed executed by BM318 dated February 18, 2020 ("Special Warranty Deed"), a copy of which is attached as Exhibit A to the

[1] *See Plaintiff's First Amended Complaint*, Adv. Docket No. 1 ("Amended Complaint"), ¶¶ 21, 23.
[2] *Id.* at ¶ 21.
[3] *Id. See also* documents produced by BM318 in discovery, bates numbers BM318_000192 to BM318_000214.
[4] *Id.* at ¶ 25. *See also* BM318-000104 to BM318-000147.

Deed in Escrow Agreement. The Special Warranty Deed was executed by BM318 and held in escrow by American Escrow Company to be released upon a default by BM318.[5]

10. The Deed in Escrow Agreement states, in relevant parts, as follows:

**DEED IN ESCROW AGREEMENT**

THIS DEED IN ESCROW AGREEMENT (this **"Agreement"**) is made as of February 27th, 2020 (the **"Effective Date"**), by and among BM3 1 8, LLC, a Texas limited liability company (**"Borrower"**), and THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (**"Lender"**), and AMERICAN ESCROW COMP ANY (**"Escrow Agent"**).

**RECITALS:**

A. Borrower owes certain indebtedness, liabilities and obligations to Lender pursuant to that certain Promissory Note (as amended or modified, the **"Note"**), dated November 26, 2018, executed by, Borrower payable to the order of Lender in the original principal amount of $32,946,900.00 (the **"Loan"**), which Note is secured by that certain property located in Parker County, Texas pursuant to that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas (the **"Deed of Trust"**; together with the Note, the First Modification (hereinafter defined), the Second Modification (hereinafter defined), the Third Modification (hereinafter defined), the Fourth Modification (hereinafter defined), the Fifth Modification (hereinafter defined) and any other document executed in connection with the Loan, the **"Loan Documents"**)

Deed in Escrow Agreement, p. 1.

3. Release of Escrowed Documents in the Event of Default. If another Event of Default under the Loan Documents occurs (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020), or if Lender (or the Escrow Agent) does not receive the Final Payoff (hereinafter defined) in full by no later than 5:00 PM Central Time on July 1, 2020 (**"Escrow Agreement Deadline"**), Lender may send notice to Escrow Agent of such Event of Default or failure, and Escrow Agent shall remove the Escrowed Documents from Escrow, date the effective date of all such documents to be the date stipulated as the "Closing Date" in such notice letter (the "**Closing Date**") and deliver the same as follows:

Deed in Escrow Agreement, p. 2.

Event of Default, the Release of Borrower will be returned to Lender with the other Escrowed Documents and will not be effective or available for Borrower. For purposes herein, the defined term **"Final Payoff"** shall mean an amount equal to $27,500,658.00 in principal and accrued interest, plus any and all costs and expenses of Lender as of the date of such payment. Lender will need to confirm the Final Payoff amount

Deed in Escrow Agreement p. 3.

[5] *See Third Modification to Debtor's First Amended Plan of Reorganization* [Main Case Dkt. No. 100].

11. As stated in the Deed in Escrow Agreement, BM318 was indebted to Dixon under the Note in an amount of not less than $27,500,658 as of February 2020, and Note was secured by the DOT covering the Original Property.

12. BM318 admitted that it failed to pay the Note in full by July 1, 2020, as required by paragraph 3 of the Deed in Escrow Agreement.[6]

13. As a result of the failure by BM318 to pay the Note in full by July 1, 2020, the Special Warranty Deed was released from the escrow for recording. On **July 2, 2020**, the Special Warranty Deed was recorded in the real property records of Parker County. The Special Warranty Deed covers approximately 1,531.75 acres (the "Remaining Property") of the Original Property described as follows:

> BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:
>
> **SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.
>
> **SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

---

[6] *See* BM318's Amended Complaint, ¶ 27.

## SAVE AND EXCEPT

> BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

The release from escrow and recordation of the Special Warranty Deed appears to be the "Transfer" which BM318 seeks to avoid.

14. On **September 1, 2020** ("Petition Date"), BM318 filed a voluntary petition commencing its chapter 11 case.

15. On **April 23, 2021**, Dixon executed a Special Warranty Deed with Vendor's Lien (filed April 28, 2021) conveying to Lumar 204.50 acres out of the Remaining Property transferred from BM318 to Dixon pursuant to the Special Warranty Deed. This 204.50 acre tract ("Lumar Property") is described as follows:

> BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

Lumar continues to be the owner of the Lumar Property.

16. At the time Lumar purchased the Lumar Property, this Adversary Proceeding had not been filed, no lis pendens had been filed, and BM318 made no claims to Lumar (or to Dixon, to Lumar's knowledge) for possession of or title to the Lumar Property.

17. On **August 10, 2021**, BM318 initiated this Adversary Proceeding by filing its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* seeking, among other things, to avoid the transfer of the Remaining Property from BM318 to Dixon.

18. On **September 30, 2021**, Dixon filed its *Answer and Affirmative Defenses and Counterclaim to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550* [Adv. Dkt. No. 8] (the "Counterclaim").

19. On **October 27, 2021**, BM318 filed its Notice of Lis Pendens ("Lis Pendens") in the Parker County Official Public Records under filing number 202142097 in relation to the 2055.70 acres. This includes the Lumar Property making the Lis Pendens a cloud on Lumar's title to the land. At that time, six months had passed since Lumar's purchase of the Lumar Property and Lumar had begun development of the Lumar Property. Lumar did not receive any notice of the Notice of Lis Pendens as required by Texas Property Code § 12.007.

20. **At the end of December 2021**, Lumar became aware of the Lis Pendens while contracting to sell a portion of the Lumar Property to a third party. The sale transaction fell through because of the Lis Pendens.

21. BM318's improperly filed Lis Pendens constitutes a cloud on the title to the Lumar Property.

22. Lumar asserts that the Lis Pendens was improperly filed, and should be expunged and vacated as to the Lumar Property because: (1) BM318 failed to follow the procedure as required under Texas Property Code to properly record a Lis Pendens; (2) BM318's claim against Dixon pursuant to 11 U.S.C. § 547 fails as a matter of law and therefore cannot serve as a basis for the Lis Pendens; (3) BM318's claim against Dixon pursuant to 11 U.S.C. § 548(a)(1)(B) also fails as a matter of law and therefore cannot serve as a basis for the Lis Pendens; (4) BM318's claims for relief under 11 U.S.C. § 550 also fail as a matter of law and cannot serve as a basis for the Lis Pendens; (5) the transfer and conveyance of the Remaining Property by BM318 to Dixon pursuant to the Special Warranty Deed did not result in any

diminution of value to BM318's bankruptcy estate and thus the transfer is not subject to avoidance under the Bankruptcy Code, consequently, there is no legal basis to support the Lis Pendens; (6) the Remaining Claims (as defined below) do not relate to title to the Remaining Property and, therefore, cannot support the Lis Pendens as to the Lumar Property, and BM318 is judicially estopped and precluded from asserting the Remaining Claims as a basis to support the Lis Pendens; and (7) Lumar is a good faith transferee and bona fide purchaser for value of the Lumar Property and, therefore, BM318 may not recover the Lumar Property or obtain any other relief against Lumar.

**B. BM318's Schedules, Disclosure Statement, and Plan of Reorganization.**

23. BM318's bankruptcy schedules (collectively, the "Schedules") reflect it to be a solvent debtor with total assets of $4,419,636 and total liabilities of $3,204,850.63.[7] The *Monthly Operating Report* (MOR) for the period ended April 30, 2021 [Docket no. 103] at page 2 of 3 is consistent with the Schedules and reflects BM318 to be solvent by approximately $1.2 million. BM318's *Second Amended Disclosure Statement* [Docket no. 56] at page 11 of 67 offers the following picture of BM318's finances consistent with the Schedules, and reflects that BM318 was solvent on the Petition Date, which was only 60 days after the Transfer pursuant to the Special Warranty Deed:

> **ARTICLE III**
> **FINANCIAL PICTURE OF THE DEBTOR**
>
> **Financial History and Background of the Debtor**
>
> **3.01** The Debtor owns 118 acres of unimproved land located in Parker County, Texas, near the City of Aledo (the "Property"). The Debtor intends to divide and develop the Property into residential lots for sale to homebuilders or others for profit.

[7] Docket no. 20, p. 17 of 18, Docket no. 82, p. 13 of 16.

> **3.02** In the Schedules of Assets and Liabilities filed in the bankruptcy case, the Debtor lists assets with an aggregate value of $4,419,636.00 as of the Petition Date. This amount consists of real property in the amount of $4,250,000.00 and a certificate of deposit in the amount in the amount of $169,636.00.
>
> In the Schedules of Assets and Liabilities, the Debtor lists aggregate liabilities in the amount of $3,204,850.63 as of the Petition Date. The claim of Southern Star Capital, LLC as a fully secured claimant in the amount of $1,831,500.00. For a complete listing and explanation of the Debtor's liabilities as of the Petition Date, parties should refer to the Schedules of Assets and Liabilities and any amendments thereto filed in this bankruptcy case.

24. The Disclosure Statement was approved pursuant to an *Order Approving Debtor's Second Amended Disclosure Statement* ("Disclosure Statement Order") [Docket no. 57].

25. BM318 is bound by the sworn statements contained in its Schedules, MORs and the terms of its Disclosure Statements approved by the Court in the Disclosure Statement Order. BM318 is judicially estopped based on the Schedules, MORs and Disclosure Statement Order from asserting that the Debtor was insolvent as of the Petition Date. Based on this, BM318 cannot carry its burden to demonstrate that it was insolvent on the date of the Transfer which occurred shortly before the Petition Date.

26. BM318 proposed a *First Amended Plan of Reorganization Dated November 19, 2020* [Docket no. 39], as modified by a *First Modification to Debtor's First Amended Plan of Reorganization* ("First Modification") [Docket no. 79], and the *Third Modification to Debtor's First Amended Plan of Reorganization* ("Third Modification", and collectively, with the *First Modification*, the "Plan")[Docket no. 100]. The Plan was confirmed pursuant to an *Order Confirming Debtor's First Amended Plan of Reorganization Dated November 19, 2020, As Modified* ("Confirmation Order") [Docket no. 106].

27. The Third Modification addresses the potential impact if the Transfer of the Property pursuant to the Special Warranty Deed is avoided or set aside. These provisions read as follows:

> On or about February 27, 2020, The Dixon Water Foundation f/k/a The Dixon Foundation, a Texas non-profit corporation ("Dixon"), in its capacity as Lender, the Debtor, in its capacity as Borrower and American Escrow Company as escrow agent entered into that certain Deed in Escrow Agreement (the "Deed in Escrow Agreement"). The property the subject of the Deed in Escrow Agreement is defined as follows: approximately 1,531.75 acres located in Parker County, Texas, as more particularly described in Exhibit A attached to the Special Warranty Deed between the Debtor as Grantor and Dixon as Grantee (the "Special Warranty Deed"), filed under Document Number 202019524 with the Official Public Records of Parker County, Texas (the "Property"). The following is described as the "Transfer."
>
> If the Transfer of the Property from the Debtor to Dixon is voided, avoided, or set aside for any reason whatsoever, in whole, or in part, then (a) all of the liens and security interests (the "Liens") that evidenced or secured the payment of the indebtedness owned and held by Dixon, said indebtedness being described in Exhibit C attached to the Special Warranty Deed (the "Indebtedness"), including without implied limitation, (i) the liens and security interests described in Exhibit C attached to the Special Warranty Deed, and (ii) other liens and security interests related thereto, shall be automatically revived and reinstated as part of such action; (b) Dixon shall have the right to exercise all of its rights and remedies under the Loan Documents; (c) as determined by a court of competent jurisdiction, the Property shall be subject to the legal, equitable and contractual rights and claims of Dixon pursuant to the Loan Documents between the Debtor and Dixon; and (d) all costs incurred by Dixon in connection with enforcement of the Liens may be deemed to be a part of the Indebtedness secured by the Liens.
>
> Nothing in the Debtor's First Amended Plan of Reorganization dated November 19, 2020, as amended or modified (the "Plan") or in the order confirming the Plan shall operate to nullify, strip, remove, cancel or otherwise release any lien, claim, interest or encumbrance that Dixon may possess should the Debtor

or any assignee of the Debtor avoid the Transfer of the Property, in whole or in part.

28. The above provisions confirm that, if the Transfer to Dixon is avoided, Dixon's Liens against the Remaining Property will automatically be revived and reinstated along with Dixon's right to exercise all rights and remedies in connection with the Loan pursuant to the Loan Documents. Based on the Confirmation Order, BM318 is judicially estopped to take any other position in this litigation.

**C. <u>BM318's First Amended Complaint.</u>**

29. BM318 has filed a proposed *Amended Complaint* [Adv. Docket no. 50, pp. 9 of 45 through 45 of 45]. BM318 asserts three causes of action which might support the Lis Pendens:

a. Count I – Avoidance of Preferential Transfer – 11 U.S.C. § 547 – as to Dixon, paragraphs 44 through 55 of the Amended Complaint (the "<u>Preference Claim</u>");

b. Count II – Avoidance of Fraudulent Conveyance – 11 U.S.C. § 548(a)(1)(B) – as to Dixon, paragraphs 56 through 58 of the Amended Complaint (the "<u>Fraudulent Transfer Claim</u>"); and

c. Count III – Recovery of Avoided Transfers – 11 U.S.C. § 550 – as to Dixon, paragraphs 59 through 62 of the Amended Complaint (the "<u>Section 550 Claim</u>").

The Preference Claim, Fraudulent Transfer Claim, and the Section 550 Claim are sometimes collectively referred to as the "<u>Lis Pendens Claims</u>".

30. The remaining claims (collectively, the "<u>Remaining Claims</u>") asserted by BM318 in the Amended Complaint include the following:

a. Count IV – Disallowance of All Claims – 11 U.S.C. § 502(d) and (j) – as to

Dixon, paragraphs 63 though 67 of the Amended Complaint;

b. Count V – Tortious Interference with a Contract – as to Lumar, Railhead, Aledo, Potts, Martin, Hughes and Hazelwood, paragraphs 68 through 72 of the Amended Complaint;

c. Count VI – Tortious Interference with a Prospective Contract - as to Lumar, Railhead, Aledo, Potts, Martin, Hughes and Hazelwood, paragraphs 73 through 78 of the Amended Complaint;

d. Count VII – Breach of Fiduciary Duties - as to Lumar, Railhead, Aledo, Potts, Martin, Hughes and Hazelwood, paragraphs 79 through 86 of the Amended Complaint;

e. Count VIII – Fraud – as to Martin, Lumar, and GH Lumar, paragraphs 87 through 91 of the Amended Complaint;

f. Count IX – Conversion – as to Martin, Lumar, and GH Lumar, paragraphs 92 through 96 of the Amended Complaint;

g. Count X - Fraud in a Real Estate Transaction – Tex. Bus. Comm. Code § 27.01 – as to Martin, Lumar, and GH Lumar, paragraphs 97 through 101 of the Amended Complaint;

h. Count XI – Constructive Fraud – as to Martin, Lumar, and GH Lumar, paragraphs 102 through 105 of the Amended Complaint;

i. Count XII – Negligent Misrepresentation – as to Martin, Lumar, and GH Lumar, paragraphs 106 through 109 of the Amended Complaint;

j. Count XIII – Aiding and Abetting and/or Knowing Participation – Breach of Fiduciary Duties – as to Lumar, GH Lumar, GH 3V, Hazelwood, Aledo, Hughes,

Railhead, Potts, Dixon and Board Defendants, paragraphs 110 through 117 of the Amended Complaint;

k. Count XIV – Conspiracy to Commit Fraud and/or Fraud in Real Estate; Constructive Fraud, Conversion, Tortious Interference (Contract and Prospective Contract), and/or Breach of Fiduciary Duties, as to all Defendants, paragraphs 118 through 122 of the Amended Complaint;

l. Count XV – Vicarious Liability/Respondent Superior - as to Hughes and Railhead, paragraphs 123 through 125 of the Amended Complaint; and

m. Count XVI – Alter-Ego/Piercing the Corporate Veil/Reverse Piercing the Corporate Veil, paragraphs 126 through 133 of the Amended Complaint.

## COUNT I
## DECLARATORY RELIEF – THE LIS PENDENS MUST BE EXPUNGED BECAUSE BM318 FAILED TO COMPLY WITH TEXAS PROPERTY CODE § 12.007

31. Lumar incorporates by reference the allegations stated in paragraphs 1 to 30 above.

32. The procedure for filing a Lis Pendens is set forth under Texas Property Code § 12.007.

33. Section 12.007(d) of the Texas Property Code requires "[n]o later than the third day after the date a person files a notice for record… the person must serve a copy of the notice on each party to the action who has an interest in the real property affected by the notice."[8]

34. Lumar never received a notice from BM318 of the filing of the Lis Pendens. Lumar became aware of the Lis Pendens months after it was recorded when Lumar entered into a

[8] Tex. Prop. Code Ann. § 12.007.

Case 21-04051-mxm Doc 54-16 Filed 06/03/22 Entered 06/03/22 17:49:37 Desc

contract to sell a portion of the Lumar Property to a third party. The contract fell through because of the Lis Pendens clouding title.

35. Because BM318 failed to comply with the procedure for the filing of a lis pendens under Texas Property Code, Lumar seeks a declaratory judgment by this Court finding that (i) the Lis Pendens to be improperly filed; and, accordingly, (ii) expunging the Lis Pendens as to the Lumar Property.

**COUNT II**
**DECLARATORY RELIEF – THE LIS PENDENS**
**SHOULD BE EXPUNGED IN RELATION TO BM318'S PREFEREMCE CLAIMS**
**BECAUSE SUCH CLAIMS FAIL AND HAVE NO MERIT**

36. Lumar incorporates by reference the allegations stated in paragraphs 1 to 35 above.

37. In order to avoid a transfer under § 547 of the Bankruptcy Code, BM318 must satisfy the elements of § 547(b) as follows:

(i) that the transfer was made to or for the benefit of the creditor;

(ii) that the transfer was made for or on account of an antecedent debt owed by the debtor before such transfer was made;

(iii) that the transfer was made while the debtor was insolvent;

(iv) that the transfer was made, with respect to non-insiders, on or within 90 days before the date of filing of the petition; and,

(v) the transfer enables the creditor to receive more than the creditor would receive if: the case were a chapter 7, the transfer had not been made and the creditor received payment of such debt to the extent provided by the provisions of the title.

38. The only transfer which took place within the 90-day period before the Petition Date was the Transfer based on the release from escrow and recording of the Special Warranty Deed. BM318 cannot satisfy the elements of § 547(b) as to the Transfer, including (a) the third element that requires proof that BM318 was insolvent on the date the Transfer was made, and (b) the fifth element that requires proof that the conveyance of the Remining Property based on the recording of the Special Warranty Deed resulted in Dixon receiving more than it would have if BM318's bankruptcy case were a chapter 7 case.

39. BM318's Schedules, MORs and the Disclosure Statement reflect that it was solvent on the Petition Date. BM318 is bound by, and judicially estopped to deny, the sworn statements made in its Schedules, MORs and the terms of the Disclosure Statement which was approved by the Court in the Disclosure Statement Order. This precludes BM318 from establishing the third element of insolvency on the date the Transfer was made which was only 60 days before the Petition Date.

40. By BM318's own admission, it was indebted to Dixon under the Note in an amount no less than $27,500,658. BM318 also admitted that the Note was secured by the DOT. When BM318 defaulted on the Deed in Escrow Agreement by failing to make payment by July 1, 2020, the release of the Special Warranty Deed from escrow for recording allowed Dixon to take title to the collateral securing the Note by deed rather than through a foreclosure under the DOT. Acknowledging this, the Amended Complaint refers to the Special Warranty Deed as the "Deed in Lieu." It is established law that "a creditor who recovers his own collateral is not deemed to have recovered a greater percentage than he would have in bankruptcy."[9]

41. BM318 admits that the Remaining Property "had an approximate value of $27.5

[9] *Krafsur v. Scurlock Permian Corp. (In re El Paso Refinery L.P.)*, 171 F.3d 249, 254 (5th Cir. 1999).

million" as compared to a debt secured by the property of not less than $27,500,658.[10] Had the Transfer not been made, interest would have continued to accrue on the Loan after the Petition Date, and would further encumber the Remaining Property pursuant to § 506(c) of the Bankruptcy Code to the extent of any post-petition equity in the Remaining Property. This would allow for the accrual of interest at a rate of not less than 5.5% from the date of the Transfer until the present, a period which will reach or exceed two years by the time of trial. Accordingly, if the recordation of the Special Warranty Deed is avoided pursuant to § 547, based on the Third Modification, the Remaining Property will be fully encumbered by Dixon's Liens. All that Dixon received was its own collateral. For that reason, BM318 cannot satisfy the fifth element (Dixon received more than in a Chapter 7 case) to avoid the alleged Transfer to Dixon based on the release from escrow and recording of the Special Warranty Deed.

42. By seeking this declaratory relief, Lumar does not waive or relinquish the right to require BM318 to establish each element of its Preference Claim in accordance with § 547. Lumar's contention in bringing this count for declaratory relief is that BM318 cannot satisfy its burden to demonstrate all elements of its Preference Claim as required by § 547(b), including the third and fifth elements discussed above, so that the Preference Claim does not support the Lis Pendens.

43. Based upon the foregoing, Lumar seeks a declaratory judgment by this Court finding that (i) Preference Claim fails as a matter of law and that BM318 cannot meet its burden to avoid the Transfer pursuant to § 547, (ii) the Preference Claim does not support the recording of the Lis Pendens as to the Lumar Property because such claim fails and has no merit; and,

---

[10] *See* proposed *Amended Complaint*, ¶ 45 (Adv. Docket no. 50).

accordingly, (iii) the Lis Pendens be expunged as to the Lumar Property in relation to the Preference Claim and the other Lis Pendens Claims.

**COUNT III**
**DECLARATORY RELIEF – THE LIS PENDENS SHOULD BE EXPUNGED AS TO BM318'S FRAUDULENT TRANSFER CLAIMS BECAUSE SUCH CLAIMS FAIL AND HAVE NO MERIT**

44. Lumar incorporates by reference the allegations stated in paragraphs 1 to 43 above.

45. Section 548(a)(1)(B) provides as follows:

> (1) The trustee may avoid ay transfer… if the debtor voluntarily or involuntarily --
>
> …
>
> (B)(i) received less than reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii) (I) was insolvent on the date that such transfer was made, or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B).

46. BM318's Fraudulent Transfer Claim under § 548(a)(1)(B) of the Bankruptcy Code fails as a matter of law because BM318 received reasonably equivalent value for the

Transfer of the Remaining Property to Dixon and cannot demonstrate that BM318 was insolvent on the date of the Transfer.

47. Plaintiff alleges in paragraph 57 of the Amended Complaint that,"[t]o the extent that the Transfer was not on account of an antecedent debt, Plaintiffs did not receive reasonably equivalent value for such transfer…." However, the Transfer was clearly and conclusively made in satisfaction of an antecedent debt. Indeed, in the *First Modification to First Amended Disclosure Statement* [Docket no. 52] at page 3, BM318 states, "Following this, approximately 1534 acres were deeded back to the original seller to satisfy certain debt owed on the property as a part of seller financing that was obtained when the 2055 acres was acquired." Indeed, at paragraph 25 of the Amended Complaint, BM318 admits that the Transfer was made on account of an antecedent debt, "The Plaintiff [BM318] executed a special warranty deed to the Remaining Land [the Deed in Lieu] that was to be held in escrow unless and until the Plaintiff defaulted upon [sic] which Defendant Dixon would be permitted to record the Deed in Lieu in satisfaction of Plaintiff's obligation to Dixon."

48. Section 548(d)(2)(A) defines "value" to include "satisfaction or securing of a … antecedent debt." The Transfer of the Remaining Property to Dixon pursuant to the Deed in Escrow Agreement and the Special Warranty Deed served to satisfy the antecedent debt owed by BM318 to Dixon based on the Loan. This is confirmed by the fact that the Schedules filed by BM318 do not reflect any claim by Dixon. As set forth in the Deed Escrow Agreement, the balance owed on the Note was no less than $27,500,658. The Debtor stated in the Amended Complaint that it believed the value of the Remaining Property was "approximately $27.5 million." Even if the value of the Remaining Property were higher than $27.5 million, it is

established law that "the debtor need not collect dollar for dollar equivalent to receive reasonably equivalent value."[11]

49. The Special Warranty Deed was not released from escrow for recording until July 2020. There was ample time for BM318 to market and sell the Remaining Property or refinance to generate funds to pay the Note off. The inability of BM318 to close on either a sale or refinancing demonstrates that the value of the Remaining Property was approximately, or no more than, the amount of the debt owed to Dixon. The recording of the Special Warranty Deed allowed BM318 to avoid the cost and risk of additional interest accruing on the loan as well as the cost, risk, and potential delay of selling the 1,531.75 acre Remaining Property. All of these risks were transferred to, and assumed by Dixon, based on the conveyance of the Remaining Property.

50. The representations of solvency contained in BM318's Schedules, MORs and Disclosure Statement bind it and preclude it, including based on judicial estoppel, from asserting that it was insolvent on the day the Transfer was made.

51. By asserting this claim for declaratory judgment, Lumar does not waive or relinquish the right to require BM318 to establish each element of its Fraudulent Transfer Claim in accordance with § 548. Lumar's contention in bringing this count for declaratory relief is that BM318 cannot establish the elements of the Fraudulent Transfer Claim so that the claim fails and does not support the Lis Pendens.

52. Based on the foregoing, Lumar seeks a declaratory judgment by this Court finding that (i) BM318's Fraudulent Transfer Claim fails as a matter of law and that BM318 cannot satisfy its burden to so avoid the Transfer, (ii) the Fraudulent Transfer Claim cannot support the

---

[11] *Butler Aviation Int'l v. Whyte (In re Fairchild Aircraft Corp.)*, 6 F.3d 1119, 1125 (5th Cir. 1993).

Lis Pendens; and accordingly, (iii) expunging the Lis Pendens as to the Lumar Property based on the Fraudulent Transfer Claim and the other Lis Pendens Claims.

**COUNT IV**
**DECLARATORY RELIEF – THE LIS PENDENS SHOULD BE EXPUNGED AS TO THE SECTION 550 CLAIM**

53. Lumar incorporates by reference the allegations stated in paragraphs 1 through 52 above.

54. Section 550 only comes into play if the Transfer is avoided under other provisions of the Bankruptcy Code, including § 547 and § 548. Based on the failure of the Preference Claim and the Fraudulent Transfer Claim, the Section 550 Claim also fails as a matter of law.

55. Lumar seeks a declaratory judgment by this Court finding that (i) the Section 550 Claim fails as a matter of law, (ii) that the Section 550 Claim do not support the Lis Pendens, and, accordingly, (iii) expunging the Lis Pendens as to Lumar based on the Section 550 Claim and the other Lis Pendens Claims.

**COUNT V**
**DECLARATORY RELIEF – THE LIS PENDENS SHOULD BE EXPUNGED AS TO THE REMAINING CLAIMS**

56. Lumar incorporates by reference the allegations stated in paragraph 1 through 55 above.

57. The Remaining Claims do not relate to title to the Remaining Property and, therefore, cannot support the Lis Pendens as to the Lumar Property.

58. The Remaining Claims, to the extent that they might constitute a claim against the Lumar Property, and therefore potentially support the Lis Pendens, are not disclosed in BM318's Schedules and are not expressly retained and described in either the Plan or the Disclosure Statement. BM318 is precluded by judicial estoppel and res judicata

from asserting any of such undisclosed unretained causes of action as a basis for the Lis Penden against the Lumar Property.

59. Lumar seeks declaratory judgment by this Court finding that (i) the Remaining Claims cannot support the Lis Pendens, and, accordingly, (ii) expunging the Lis Pendens as to the Lumar Property.

**COUNT VI**
**DECLARATORY RELIEF – THE TRANSFER CAUSED**
**NO DIMINUTION OF VALUE OF BM318'S BANKRUPTCY ESTATE**

60. Lumar incorporates by reference the allegations stated in paragraphs 1 through 59 above.

61. In order to avoid a transfer under chapter 5 of the Bankruptcy Code, the transfer "must have depleted the estate."[12] Absent such depletion of the bankruptcy estate, there is no reason or basis to avoid a transfer which did not deplete the estate or reduce the amount available to pay the holders of allowed unsecured claims.

62. Here, the Transfer of the Remaining Property by BM318 to Dixon did not result in diminution of BM318's bankruptcy estate. The Third Modification provides that, if the Transfer as to the Remaining Property is avoided, Dixon's Liens against the Remaining Property will be automatically revived and reinstated and will still fully encumber the Remaining Property to pay the debt owed by BM318 to Dixon based on the Loan. Dixon will be entitled to post-petition interest under § 506(c) until all equity in the property is exhausted. Consequently, if the conveyance based on the recordation of the Special Warranty Deed is avoided, and the Remaining Property is returned to BM318's bankruptcy estate, the Remaining Property will remain burdened by the Liens in favor of Dixon along with Dixon's rights and remedies under

[12] *Moser v. JP Morgan Chase Bank, N.A. (In re Brown)*, 375 B.R. 348, 353 (Bankr. E.D. Tex. 2007).

the loan documents in relation to the Loan. There would be no equity remaining for the estate after the payment of accrued interest, Dixon's costs and attorney's fees and costs of sale.

63. As discussed above, the Deed in Escrow Agreement was executed by BM318 and Dixon in February 2020 wherein BM318 agreed that the amount owed to Dixon was no less than $27,500,658. In the five months between the execution of the Deed in Escrow Agreement and the filing of the Special Warranty Deed in July 2020, BM318 was unable to obtain refinancing or find a buyer for the Remaining Property. The failure of BM318 to do either demonstrates that the value of the Remaining Property was approximately, or less than, the amount of the debt owed to Dixon. In addition, interest has continued to accrue on the $27.5 million debt at a rate of not less than 5.5% per annum. For this reason, the Transfer of the Remaining Property to Dixon in exchange for eliminating the debt owed by BM318 to Dixon did not result in a diminution of value of BM318's bankruptcy estate because the Remaining Property, if brought back into the estate, would be fully encumbered by Dixon's Liens.

64. Based upon the foregoing, Lumar seeks a declaratory judgment by this Court finding that (i) the Transfer of the Remaining Property to Dixon did not result in any diminution of BM318's bankruptcy estate and thus all the Lis Pendens Claims must fail as a matter of law, (ii) that such failed claims cannot support the Lis Pendens, and, accordingly, (iii) expunging the Lis Pendens as to the Lumar Property.

## COUNT VII
## DECLARATORY RELIEF – LUMAR IS A GOOD FAITH TRANSFEREE UNDER BANKRUPTCY CODE § 550(b)

65. Lumar incorporates by reference the allegations stated in paragraphs 1 through 64 above.

66. As discussed above, Lumar purchased the Lumar Property from Dixon over three months before the Adversary Proceeding was filed and over six months before the Lis Pendens was filed. The Lumar Property is affected by the Adversary Proceeding and Lis Pendens. MB318's improper claims constitute a cloud on the Lumar Property.

67. Lumar is a good faith transferee for value and bona fide purchaser of the Lumar Property, without knowledge of the voidability of the Transfer based on the recordation of the Special Warranty Deed. At the time Lumar purchased the Lumar Property, the Adversary Proceeding had not been filed, no lis pendens had been filed, and BM318 made no claims for possession of or title to the Lumar Property to Lumar.

68. Moreover, Lumar was never sent the Notice of Lis Pendens as required by Texas Property Code § 12.007. Further, a lis pendens as against a good faith transferee/bona fide purchaser for value is improper and merits expunction under Texas Property Code § 12.0071.

69. Section 550(b) of the Bankruptcy Code provides that BM318 may not recover from a good faith transferee:

> **(b)** The trustee may not recover under section (a)(2) of this section from--
> **(1)** a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> **(2)** any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b).

70. Therefore, Lumar seeks a declaratory judgment by this Court finding that (i) Lumar is a good faith transferee under § 550(b) of the Bankruptcy Code and a bona fide purchaser for value of the Lumar Property; and, accordingly, (ii) expunging the Lis Pendens as to the Lumar Property.

## VIII
## PRAYER

WHEREFORE, for the foregoing reasons, Lumar respectfully requests entry of declaratory judgment against Plaintiff/Debtor BM318 as follows:

1. A declaration that BM318 failed to comply with the procedures under Texas Property Code § 12.0071 and expunging the Lis Pendens;

2. A declaration that BM318's Preference Claim against Dixon pursuant to § 547 fails as a matter of law, does not support the Lis Pendens, and that the Lis Pendens is expunged from the Lumar Land as to such claim;

3. A declaration that BM318's Fraudulent Transfer Claim against Dixon pursuant to § 548(a)(1)(B) fails as a matter of law, does not support the Lis Pendens, and the Lis Pendens is expunged from the Lumar Land as to such claim;

4. A declaration that BM318's Section 550 Claim against Dixon fails as a matter of law, does not support the Lis Pendens and that the Lis Pendens is expunged from the Lumar Land as to such claim;

5. A declaration that the Transfer of the Remaining Property to Dixon did not result in a diminution of value of BM318's bankruptcy estate thus all the Lis Pendens Claims all fail as a matter of law and the Lis Pendens is expunged as to such claims;

6. A declaration that BM318's Remaining Claims do not relate to title of the Remaining Property and thus do not support the Lis Pendens, that BM318 is judicially estopped and precluded from asserting the Remaining Claims as a basis to support to support the Lis Pendens, and the Lis Pendens is expunged from the Lumar Land as to such claims;

7. A declaration that Lumar is a good faith transferee under § 550(b) of the Bankruptcy Code and a bona fide purchaser for value of the Lumar Property;

8. Expunging the Notice of Lis Pendens as to the Lumar Property; and

9. Granting such other and further relief as to which Lumar may show itself justly entitled.

Respectfully submitted,

*/s/Kimberly P. Harris*
KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**- And -**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrptcy)#6323\Pleadings- 20-42789\Amended Complaint in Intervention (BF & EC v) 5.18.22.doc

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:**<br><br>**BM318, LLC,**<br><br>**Debtor.** | §<br>§<br>§<br>§<br>§ | **Case No. 20-42789-mxm11** |
| **BM318, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE DIXON WATER FOUNDATION,**<br><br>**Defendant.**<br><br>**LUMAR LAND & CATTLE, LLC**<br><br>**Plaintiff-in-Intervention.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adv. Pro. No. 21-04051-mxm** |

**PLAINTIFF-IN-INTERVENTION'S FIRST AMENDED ANSWER**
**TO PLAINTIFF'S COUNTERCLAIMS**

**[Relates to Adv. Dkt. No. 40]**

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

EXHIBIT
B

COMES NOW Lumar Land & Cattle, LLC ("Lumar" or "Intervenor"), plaintiff-in-intervention in the above-styled adversary proceeding, and respectfully files this amended answer to BM318, LLC's ("BM318" or "Plaintiff") *Original Answer to Plaintiff-In-Intervention Lumar Land and Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment and Counterclaims Against Intervenor* [Adv. Dkt. No. 40] (the "Counterclaim"):

## I. ANSWERS TO ALLEGATIONS

1. The first allegation arguably requiring a response is found in paragraph 7 of the Counterclaim. Lumar currently lacks sufficient information with which to admit or deny whether any deed "was held in escrow" as alleged in paragraph 7, and therefore Lumar currently denies such allegation. Further, the effective date of any conveyance is a legal conclusion to which no answer is required; however, to the extent an answer is required, Lumar denies the allegation contained in paragraph 7 of the Counterclaim.

2. With respect to paragraph 9 of the Counterclaim, Lumar admits that Jim Martin is a Texas licensed real estate agent, but is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity or perhaps in connection with Railhead Realty, LLC. Therefore, Lumar currently denies such allegations. The remaining statements in paragraph 9, including those attempting to implicate Lumar based on the alleged actions and/or knowledge of Mr. Martin as one of two managing members of Lumar, are either legal conclusions or allegations which Lumar denies.

3. The first sentence of paragraph 13 of the Counterclaim does not require a response. Beginning with the second sentence, paragraph 13 contains legal conclusions to which no answer is required, or otherwise, contains allegations which Lumar denies.

4. While the first sentence of paragraph 16 of the Counterclaim does not require a

response, Lumar denies the allegations contained within the second sentence of paragraph 16.

5. Paragraph 17 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies paragraph 17 of the Counterclaim. Lumar denies the remaining allegations in this paragraph.

6. Lumar denies the factual allegations contained within paragraph 19 of the Counterclaim, and asserts that the remaining statements are legal conclusions to which no answer is required. However, to the extent an answer is required, Lumar denies those allegations as well.

7. Lumar denies the factual allegations contained within paragraph 22 of the Counterclaim, and asserts that the remaining statements are legal conclusions to which no answer is required. However, to the extent an answer is required, Lumar denies those allegations as well.

8. With respect to paragraph 23 of the Counterclaim, Lumar generally admits that Jim Martin, individually, may have had a prior working relationship with the Plaintiff, but Lumar is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

9. Answering paragraph 24 of the Counterclaim, Lumar generally admits the allegations contained while further answering that the referenced contract and loan documentation, if and when authenticated, shall speak for themselves. Lumar is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

10. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 25 of the Counterclaim with respect to what Mr. Martin may have

done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

11. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 26 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

12. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 27 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

13. With respect to the first and third sentences of paragraph 28 of the Complaint, Lumar generally admits the allegations contained while further answering that the referenced contract, if and when authenticated, shall speak for itself. Lumar is without sufficient information with which to admit or deny the remaining allegations contained within paragraph 28 of the Counterclaim, and therefore, Lumar currently denies such allegations. Further answering paragraph 28 of the Counterclaim, Lumar answers that the documents referenced in paragraph 28, if and when authenticated, shall speak for themselves.

14. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 29 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced Deed in Lieu, if and when authenticated, shall speak for itself.

15. Lumar is without sufficient information with which to admit or deny the allegations contained within the first sentence of paragraph 30 of the Counterclaim, and therefore, Lumar

currently denies such allegations. Lumar further answers that the referenced contract, if and when authenticated, shall speak for itself. Lumar denies the allegations in the second sentence of paragraph 30 of the Counterclaim.

16. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 31 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced "First Buy Back Agreement", if and when authenticated, shall speak for itself.

17. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 32 of the Counterclaim.

18. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 33 of the Counterclaim, and therefore Lumar currently denies such allegations. Lumar further answers that the referenced "Second Buy Back Agreement", if and when authenticated, shall speak for itself.

19. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 34 of the Counterclaim as to Plaintiff's actions and with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

20. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 35 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations. Lumar further answers that the agreement referenced, if and when authenticated, shall speak for itself.

21. Lumar is without sufficient information with which to admit or deny the allegations

contained within paragraph 36 of the Counterclaim, and therefore Lumar currently denies such allegations. Lumar further answers that the referenced communications, if in writing, and if and when authenticated, shall speak for themselves.

22. While Lumar denies the "in lieu of" allegation and any associated connotations, Lumar generally admits the remaining allegations contained in paragraph 37 of the Counterclaim.

23. Lumar denies the allegations contained in paragraph 38 of the Counterclaim.

24. Lumar is without sufficient information with which to admit or deny the allegation contained within paragraph 39 of the Counterclaim with respect to what Defendant Dixon Water Foundation ("Dixon") – or Mr. Martin, in his individual capacity – may have done, or not done, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegation.

25. Paragraph 40 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar generally admits the allegations contained in paragraph 40 of the Counterclaim. Lumar further answers that the referenced "Memorandum of Option Agreement", if and when authenticated, shall speak for itself.

26. Lumar is without sufficient information with which to admit or deny the allegation contained within paragraph 41 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegation.

27. Lumar denies the factual allegations contained within paragraph 42 of the Counterclaim. The remaining portions of paragraph 42 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

28. Paragraph 43 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

paragraph 43 of the Counterclaim.

29. Lumar denies the factual allegations contained within paragraph 44 of the Counterclaim. The remaining portions of paragraph 44 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

30. Lumar denies the factual allegations contained within paragraph 45 of the Counterclaim. The remaining portions of paragraph 45 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well

31. Answering paragraph 46 of the Counterclaim, Lumar incorporates its responses to each of the respective paragraphs necessitating a response, as they are stated above.

32. Lumar denies the allegations contained in paragraph 47 of the Counterclaim.

33. Lumar admits that it purchased the 204.50 acres from Dixon. Lumar denies the remaining allegations contained within paragraph 48 of the Counterclaim, including those pertaining to Dixon's motivations or decisions, which Lumar is without sufficient information with which to admit or deny, and thus denies.

34. Paragraph 49 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 49 of the Counterclaim.

35. Lumar denies the factual allegations contained within paragraph 50 of the Counterclaim. The remaining portions of paragraph 50 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

36. Lumar denies the allegations contained within paragraph 51 of the Counterclaim, including those pertaining to Dixon's motivations or decisions, which Lumar is without sufficient information with which to admit or deny, and thus denies.

Case 21-00051-mxm Doc 54-18 Filed 06/27/22 Entered 06/27/22 Page 8 of 13

37. Lumar denies the factual allegations contained within paragraph 52 of the Counterclaim. The remaining allegations in Paragraph 52 of the Counterclaim are legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 52 of the Counterclaim.

38. Lumar denies the factual allegations contained within paragraph 53 of the Counterclaim. Paragraph 53 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 53 of the Counterclaim.

39. Paragraph 54 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 54 of the Counterclaim.

40. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 55 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity or what BM318 may, or may not, have relied upon, as it is pled by the Plaintiff. Lumar further answers that paragraph 55 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 54 of the Counterclaim.

41. Lumar denies the allegations contained in paragraph 56 of the Counterclaim.

42. Paragraph 57 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 57 of the Counterclaim.

43. Paragraph 58 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

Case 21-00051-mxm Doc 54-18 Filed 06/27/22 Entered 06/27/22 14:04 Page 9 of 13

paragraph 58 of the Counterclaim.

44. Paragraph 59 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 59 of the Counterclaim.

45. Paragraph 60 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 60 of the Counterclaim.

46. Lumar denies the factual allegations contained within paragraph 61 of the Counterclaim. Paragraph 61 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 61 of the Counterclaim.

47. Lumar denies the requests contained in paragraph 62 of the Counterclaim.

48. Lumar denies the factual allegations contained within paragraph 63 of the Counterclaim. The remaining portions of paragraph 63 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

49. Paragraph 64 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 64 of the Counterclaim.

50. Lumar denies the factual allegations contained within paragraph 65 of the Counterclaim. The remaining portions of paragraph 65 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

51. Lumar denies the requests contained in paragraph 66 of the Counterclaim.

52. Paragraph 67 of the Counterclaim contains legal conclusions to which no answer is

required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 67 of the Counterclaim.

53. Paragraph 68 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 68 of the Counterclaim.

54. Lumar denies the allegations contained in paragraph 69 of the Counterclaim.

55. Lumar denies the factual allegations contained within paragraph 70 of the Counterclaim. Paragraph 70 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 70 of the Counterclaim.

56. Lumar denies the requests contained in paragraph 71 of the Counterclaim.

57. Paragraph 72 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 72 of the Counterclaim.

58. Paragraph 73 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 73 of the Counterclaim.

59. Paragraph 74 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 74 of the Counterclaim.

60. Lumar denies the requests contained in paragraph 75 of the Counterclaim.

61. Paragraph 76 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

paragraph 76 of the Counterclaim.

62. Lumar denies the allegations contained in paragraph 77 of the Counterclaim.

63. Paragraph 78 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 78 of the Counterclaim.

64. Lumar denies the requests contained in paragraph 79 of the Counterclaim.

65. Lumar denies that BM318 is entitled to any judgment, damages, or other relief as requested by BM318, including but not limited to that sought in BM318's prayer for relief in the Counterclaim.

## II. AFFRIMATIVE DEFENSES

1. Failure to State a Claim. The Counterclaim fails to state a claim against Lumar upon which relief can be granted because Plaintiff cannot establish a prima facia case on any of Plaintiff's asserted Claims for Relief, especially a prima facia case against Lumar.

2. Estoppel. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of estoppel.

3. Waiver. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of waiver.

4. Laches. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of laches.

5. Unclean Hands. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of unclean hands.

6. Consent. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of consent.

7. Ratification. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of ratification.

8. Preclusion. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the principles of preclusion, collateral estoppel, law of the case, and/or *res judicata.*

9. Judicial Estoppel. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of judicial estoppel.

**WHEREFORE, PREMISES CONSIDERED**, Lumar respectfully prays that the Court enter an order and judgment denying BM318 all relief requested in the Counterclaim, entering a judgment for Lumar as requested in *Plaintiff-In-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment* [Adv. Dkt. No. 33], and granting Lumar all other relief as is just and proper.

Dated: _______________, 2022,

Respectfully submitted,

___________________________

KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**- And -**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on _______________, 2022, a true and correct copy of the foregoing was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, including both the Debtor-Plaintiff BM318 and Dixon, through counsel.

____________________________________
Kimberly P. Harris

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BM318, LLC | § | Case No. 20-42789-mxm |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| BM318 | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Adv. Proc. No. 21-04051-mxm |
| THE DIXON WATER FOUNDATION, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| | § | |
| Plaintiff-In-Intervention. | § | |

**<u>ORDER GRANTING LEAVE TO AMEND</u>**

Came on for consideration the *Motion for Leave to Amend (1) Its Original Complaint in Intervention for Declaratory Judgment, and (2) Its Original Answer to Counterclaims* [Adv. Dkt. No. __] (the "Motion") filed by Lumar Land & Cattle, LLC ("Lumar"). The Court, having considered the Motion, and after due deliberation and sufficient cause appearing threrefor, hereby is of the opinion that justice requires that leave to amend be GRANTED. It is hereby,

ORDERED, ADJUDGED AND DECREED that

1. The Motion shall be and is hereby GRANTED.

2. Lumar is hereby authorized to file the Amended Complaint and the Amended Answer attached to the Motion.

# # # END OF ORDER # # #