Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

***Attorneys for The Dixon Water Foundation***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re:<br><br>BM318, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Case No. 20-42789-mxm11<br>Chapter 11 |
| BM318, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE DIXON WATER FOUNDATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. No. 21-04051 |

**THE DIXON WATER FOUNDATION'S EXPEDITED MOTION TO COMPEL WRITTEN DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS**

TO THE HONORABLE MARK X. MULLIN, UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, The Dixon Water Foundation, a Texas non-profit corporation and the defendant in this adversary proceeding ("Dixon"), and files this, its *Expedited Motion to Compel Written Discovery Responses and Production of Documents* (the "Motion") against plaintiff

BM318, LLC (the "Plaintiff," "BM318" or the "Debtor"), and in support of this Motion would respectfully show the Court as follows:

## I. INTRODUCTION

1. The Debtor sued Dixon to unwind an approximately $27.5 million real property transaction. This is not a small or insignificant case where limited discovery will suffice. Dixon served the Debtor with interrogatories and requests for production almost eight months ago. The Debtor responded with every conceivable objection and grossly insufficient document production. After numerous unsuccessful attempts to convince the Debtor to fulfill its discovery obligations, Dixon must unfortunately seek this Court's aid. The Debtor refuses to produce fulsome discovery about the property's value and its own solvency. The Debtor continues to hide behind invalid objections such as "vague and ambiguous" without explanation. The Debtor refuses to produce electronically stored information in native format. The unmeritorious objections go on and on. The Court should overrule those objections and enter an order compelling the Debtor to provide complete answers to Dixon's interrogatories and to produce documents responsive to Dixon's requests.

## II. BACKGROUND[1]

### A. Background Before Debtor's Bankruptcy Case.

2. Dixon is a nonprofit foundation dedicated to promoting healthy watersheds through sustainable land management in order to ensure that future generations have adequate water resources. On November 26, 2018, before the Debtor filed its bankruptcy case, Dixon and the Debtor entered into a financed purchase and sale agreement. Under this agreement, Dixon sold to

[1] Concurrently herewith, Dixon is filing its *Appendix in Support of The Dixon Water Foundation's Expedited Motion to Compel Written Discovery Responses and Production of Documents* (the "Appendix"), which is incorporated herein by reference. Citations to the Appendix take the following form: Appx. #.

the Debtor – almost entirely on credit – over two thousand fifty-five (2055.7) acres of real property in Parker County, Texas known as the Bear Creek Ranch.

3. The Debtor granted Dixon a promissory note in the original principal amount of $32,946,900, secured by the foregoing property pursuant to a Deed of Trust recorded under document number 2025-262749 in the official records of Parker County, Texas. By February 2020, however, the Debtor admittedly had materially defaulted under its obligations to Dixon. Accordingly, on February 27, 2020, Dixon and the Debtor entered into that certain Deed in Escrow Agreement (the "Deed in Escrow Agreement") with American Escrow Company as escrow agent (the "Escrow Agent").

4. Under the Deed in Escrow Agreement, the Debtor promised Dixon, *inter alia*, that if Dixon would forbear from enforcing its legal and equitable rights and remedies, then the Debtor would not permit or cause any further default and would pay off its obligations in full by no later than July 1, 2020. Appx. 2–3 (Deed in Escrow Agreement, at §§ 1, 3). In support of these assurances, the Debtor granted to Dixon a Special Warranty Deed in lieu of foreclosure (the "Deed in Lieu"), which the parties placed in escrow with the escrow agent under the Deed in Escrow Agreement ("Escrow Agent"). The property that was the subject of the Deed in Escrow Agreement was comprised of the then remaining, approximately 1,531.75 acres of the Bear Creek Ranch (the "Property").

5. Under this well-established commercial arrangement, the Debtor agreed that if it defaulted under the Deed in Escrow Agreement, then pursuant to Dixon's corresponding instructions to the Escrow Agent, the Escrow Agent would record the Deed in Lieu, transmit documentation of the recorded Deed in Lieu to Dixon, and deliver to Dixon the Debtor's Release of Lender ("Release of Dixon"). Appx. 2–3 (Deed in Escrow Agreement, at § 3).

6. The Debtor expressly acknowledged, represented and agreed that Dixon's forbearance provided valuable consideration to and for the Debtor in exchange for the Deed in Escrow Agreement granted by the Debtor, and that such Deed in Escrow Agreement is enforceable, including by specific performance:

> The provisions of this Agreement shall be enforceable by any means available at law or equity, including (without limitation) an action for specific performance.
>
> * * *
>
> LENDER HAS AGREED TO FOREBEAR FROM EXERCISING CERTAIN APPLICABLE REMEDIES (INCLUDING, WITHOUT LIMITATION, FORECLOSURE OF THE PROPERTY) IN CONNECTION WITH THE SPECIFIED DEFAULT, AND SUCH FORBEARANCE BY LENDER IS VALUABLE AND MEANINGFUL CONSIDERATION TO BORROWER IN EXCHANGE FOR BORROWER'S EXECUTION OF THIS AGREEMENT AND COMPLIANCE WITH THE TERMS OF THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, DELIVERY OF THE ESCROWED DOCUMENTS AND CONDITIONAL AUTHORIZATION TO RELEASE THE ESCROWED DOCUMENTS AS PROVIDED HEREIN).

Appx. 4, 6–7 (Deed in Escrow Agreement, at §§ 8, 10.d).

7. On July 2, 2020, after the Debtor once again defaulted on its obligations to Dixon, the Escrow Agent recorded the Deed in Lieu and then transmitted the recorded deed, as well as the Release of Dixon, to Dixon. *See, e.g.,* Appx. 45–49 (Recorded Deed in Lieu); Appx. 62 (Complaint ¶ 15).

8. On June 26, 2020, Dixon, as Seller, and JMJ Development, LLC, a Texas limited liability company, as Purchaser ("<u>JMJ</u>"), entered into a Real Estate Sale Agreement for the purchase of the Property with a purchase price of $27,500,658.00. The JMJ Real Estate Sale Agreement is referred to in the Debtor's Original Complaint as the "BuyBack Contract." In its Complaint, the Debtor admits that the First BuyBack Contract was between Dixon and JMJ. Appx. 62 (Complaint ¶ 14). Thus, the Debtor was not a party to the First BuyBack Contract.

**B. Background of the Bankruptcy Case and Adversary Proceeding.**

9. On September 1, 2020, the Debtor filed with this Court its voluntary petition under Chapter 11 of Title 11 of the United States Code, §§ 101 *et seq.* (as amended, the "Bankruptcy Code"), thereby initiating its above-captioned bankruptcy case ("Bankruptcy Case"). On August 2, 2021, this Court entered its *Order Confirming the Debtor's Second Amended Plan of Reorganization, Dated November 19, 2020* [Bankruptcy Case Docket No. 106] (the "Confirmation Order").

10. On August 10, 2021, the Debtor filed its *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* [Docket No. 1] (the "Complaint"), commencing this adversary proceeding. Appx. 59. The Debtor seeks to avoid the Deed in Lieu as an alleged preferential and/or fraudulent transfer. Dixon filed its Answer and Counterclaims in response to the Complaint on September 30, 2021, and promptly thereafter begin coordinating discovery efforts with the Plaintiff. Appx. 68.

11. On January 14, 2022, Lumar Land & Cattle, LLC ("Lumar") filed its Motion to Intervene, seeking, *inter alia*, a determination from this Court that Lumar is a good faith transferee and bona fide purchaser for value under 11 U.S.C. § 550. Appx. 90–91, 93 (Motion to Intervene, at ¶¶ 6–9, 14). On February 10, 2022, the Court granted Lumar's Motion to Intervene. On February 16, 2022, Lumar filed its Complaint in Intervention. Appx. 103. On March 21, 2022, the Debtor filed its Answer to the Complaint in Intervention and Counterclaim against Lumar. Appx. 111. On April 11, 2022, Lumar filed its Answer to the Debtor's Counterclaim. Appx. 135.

**C. Background of the Discovery Dispute.**

12. On November 23, 2021, Dixon served its *Defendant The Dixon Water Foundation's First Set of Interrogatories to Plaintiff BM318, LLC* ("Interrogatories") and its *Defendant The Dixon Water Foundation's First Requests for Production of Documents and Other*

*Items to Plaintiff BM318, LLC* ("RFPs"). Appx. 161–170. After Dixon agreed to extend the Debtor's response deadline, Appx. 210, the Debtor served its *BM318, LLC's Objections and Responses to Defendant The Dixon Water Foundation's (1) First Set of Interrogatories and (2) First Requests for Production of Documents and Other Items* ("Responses") on January 7, 2022. Appx. 184.

13. An objective review of the Plaintiff's Responses reveals an obvious attempt to resist discovery rather than a good faith effort to comply with the Plaintiff's disclosure obligations. Merely by way of example and as further addressed herein, the Responses, *inter alia*: (i) fail to include any verification of interrogatory responses; (ii) refuse to disclose relationships between the Plaintiff and its own affiliate expressly pled in the Complaint; (iii) withhold the disclosure of appraisal and valuation documents that are in the Plaintiff's possession in this action asserting constructive fraud and preferential transfer claims based on the value of the Property; (iv) object to a well-established obligation to produce responsive electronically stored information in native format; and (v) assert multiple additional grounds for refusing disclosure that have long been invalidated under the Federal Rules of Civil Procedures and applicable law, such as but not limited to, information allegedly in Dixon's possession, and refusing to answer interrogatories that the Plaintiff falsely contends seek legal conclusions.

14. Given the Responses' numerous deficiencies, Dixon transmitted a detailed letter to the Debtor on January 21, 2022, outlining many obvious, improper objections and other facial deficiencies. Appx. 210. The Debtor responded on February 3, 2022. Appx. 227. However, the vast majority of these deficiencies remained, and which have now continued, unresolved, for months. Accordingly, Dixon transmitted a second, follow up letter to the Debtor on June 24, 2022, requesting a response by July 1, 2022. Appx. 238. The Debtor unilaterally extended that deadline

twice. Appx. 244–45. On July 15, 2022, only after Dixon reached out to confer on expending this motion, the Debtor finally responded and refused to cure any of its discovery deficiencies, Appx. 246, leaving Dixon with no alternative but to seek this Court's intervention.

## III. ARGUMENTS AND AUTHORITIES

15. Federal Rule of Civil Procedure 37, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7037, provides in relevant part as follows:

> (a) MOTION FOR AN ORDER COMPELLING DISCLOSURE OR DISCOVERY.
>
> (1) *In General*. On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> * * *
>
> (3) *Specific Motions*.
>
> * * *
>
> (B) *To Compel a Discovery Response*. A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if:
>
> * * *
>
> (iii) a party fails to answer an interrogatory submitted under Rule 33; or
>
> (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34.
>
> * * *
>
> (4) *Evasive or Incomplete Disclosure, Answer, or Response*. For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

Fed. R. Civ. P. 37 (a)(1)-(4).

**A. The Debtor Must Produce Documents and Answer Interrogatories Regarding the Value of the "Remaining Land"**

16. Interrogatory No. 8 asks what the Debtor contends is the value of the Remaining Land "at the time of execution of the Deed in Escrow Agreement," while Interrogatory No. 9 asks what the Debtor contends is the value of the Remaining Land "at the time that Dixon recorded the Special Warranty Deed." These are two different dates:

a. "The last modification of the Loan occurred on February 27, 2020 which included a Deed in Escrow Agreement." *See* Appx. 62 (Complaint ¶ 13).

b. "[O]n July 2, 2020, the Defendant recorded the Deed pursuant to the Deed in Escrow Agreement . . . ." *See* Appx. 62 (Complaint ¶ 15).

17. These requests are plainly appropriate to evaluate the value of the Property at relevant times, and the Plaintiff does not dispute their propriety, but the Debtor's Responses nevertheless remain inadequate in at least three ways. First, the Responses indicate that the Debtor "intends to supplement such documents with certain documents that have recently been discovered." Appx. 232. But more than five months have passed since the Debtor served the Responses, and the Debtor still has not supplemented its Responses as promised. The Plaintiff's intentional withholding and delaying the disclosure of valuation evidence in this adversary proceeding involving constructive fraud and preferential transfer claims should not be countenanced.

18. Second, the Responses fail to respond substantively to the Interrogatories, which seek a discrete dollar value of the "Remaining Land" at specified times:

> Plaintiff contends that the valuation of the Remaining Land exceeds any remaining amounts owed to Plaintiff [sic] (including principal, interests, and costs) at the time of the execution of such Agreement to the extent the documents produced (including as may be supplemented) regarding valuation and appraisal of the Remaining Land exceed such amounts owed. Plaintiff further refers Dixon to Documents both in Dixon's possession and produced herewith reflecting appraisal values.

But the Debtor must disclose what it believes the value of the "Remaining Land" was at the specific time requested. *See* Fed. R. Civ. P. 33(a)(2) (an interrogatory is "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact"); Fed. R. Civ. P. 37 (a)(1)-(4) ("an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond").

19. Third, in response to Interrogatories 8 and 9 the Debtor directs Dixon generally to documents it has or will produce but does not identify which documents those are or what information those documents provide. To the extent the Debtor believes the requested information is in a document that it has or will produce, it must identify the specific document with the requested information. *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.").

20. Accordingly, the Court should compel the Debtor to provide complete answers to Interrogatories 8 and 9.

## B. The Debtor Must Provide Discovery Regarding its Relationship with JMJ

21. Interrogatory No. 15 asks the Debtor to describe in detail its relationship with JMJ. Appx. 168. In response, the Debtor objects that the Interrogatory is not relevant and states only that "there is no direct ownership interest." Appx. 190–91. This constitutes a bad faith response.

The Debtor is not entitled to pick and choose what disclosures it makes nor to determine for Dixon what Dixon needs or does not need to know.

22. The nature of the relationship between the Debtor and JMJ was relevant enough to include in the Debtor's Complaint. *See* Appx. 62 (Complaint ¶ 14) (disclosing that JMJ is "an entity related to" the Debtor, which entered into a buyback contract for the purchase of the Remaining Land from Dixon). The Debtor decided to expressly plead JMJ into its Complaint, so it cannot now legitimately refuse to disclose the relationship of JMJ to the parties, including its own affiliate. Discovery regarding the relationship between the Debtor and JMJ plainly may lead to the discovery of admissible evidence and is otherwise proportional to the needs of the case, and reciting details regarding the relationship between the Debtor and JMJ requires minimal effort. The Debtor's response to Interrogatory No. 15 is insufficient as it does not address any of the aspects of the relationship listed in the Interrogatory: "any affiliate relation, insider relation (as the term 'insider' is defined in the Bankruptcy Code), ownership relation, common affiliates, common officers and/or directors, and any and all business conducted between you and JMJ."

23. Accordingly, the Court should compel the Debtor to provide a complete response to Interrogatory No. 15.

**C. The Debtor Must Product Documents in Native Format**

24. In the Requests, Dixon instructed the Debtor to produce documents in native format. Appx. 174. According to the Debtor, however, "that instruction is not mirrored in the federal rules, and is imposed only by [Dixon]." Appx. 228. This is plainly an invalid objection. The Debtor ignores the express language of the Federal Rules, under which requests "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C).

25. Therefore, if a party requests files in native format, the counterparty must comply. *See Sundown Energy, L.P. v. Haller*, No. 10-4354, 2011 U.S. Dist. LEXIS 124145, at *9 (E.D. La. Oct. 26, 2011) (compelling production in native format). It makes no difference whether the Debtor is able to Bates number native files, and incidentally, well-established measures to accomplish bates labeling of electronically stored information are conveniently available to litigants.[2] *See Saliga v. Chemtura Corp.*, No. 3:12cv832(RNC), 2013 U.S. Dist. LEXIS 167019, at *3–7 (D. Conn. Nov. 25, 2013) (overruling objection that native files cannot be Bates numbered). And in any event, there are numerous e-discovery platforms that allow for Bates labeling native-format files.

26. The Debtor also objects that metadata might contain privileged information, a proposition for which there is no evidence. Even if that were true, the Debtor would bear the burden to produce a privilege log instead. One of the principal benefits of e-discovery is the ability to view metadata, which can provide useful information. As for the Debtor's undue-burden objection, the Debtor likewise must demonstrate how the alleged burden outweighs the benefit of fulsome discovery in this $30 million lawsuit. It has never done so. Finally, the Debtor's insinuation that Dixon or its counsel might alter evidence smacks of bad faith. All forms of evidence are subject to manipulation, but that is not a basis to withhold discovery. It should go without saying that Dixon and its counsel will not alter evidence, and any suggestion otherwise has no merit whatsoever.

---

[2] *See, e.g.*, The Federal Trade Commission's Guidance to Production of Native Files in response to Bureau of Competition Requests, located at:

https://www.ftc.gov/advice-guidance/competition-guidance/bc-production-guide/native-files (last visited July 11, 2022)

27. Accordingly, the Court should compel the Debtor to produce all responsive documents in native format. The Plaintiff must not be allowed to intentionally withhold such disclosures based on its argument that it does not technically understand how to comply.

**D. The Debtor May Not Withhold Documents or Information Merely Because Dixon May Already Possess Them**

28. In response to Interrogatory Nos. 3, 4, and 7, the Debtor objects that "Dixon, as the recipient of such information, would have the same information as Plaintiff." Appx. 188–89. Likewise, in response to RFP Nos. 1–9, 11–12, 15–38, and 41–46, the Debtor indicates that, "to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced …." Appx. 192–207. These interrogatories seek basic information such as the first time the Debtor conveyed its belief that the Deed in Lieu constituted a fraudulent transfer and the first time the Debtor conveyed its belief that it received less than reasonable equivalent value. The RFPs likewise seek things like communications with key parties and documents related to the Deed in Escrow Agreement, the Property, forbearance, defaults, financing, appraisals, the Debtor's assets and liabilities, financial statements, etc.[3]

29. But "a party may not simply refuse to respond to a party's discovery request on the grounds that the party already has the information." *Keybank Nat'l Ass'n v. Perkins Rowe Assocs.*, No. 09-497-JJB-SCR, 2011 U.S. Dist. LEXIS 37791, at *7 (M.D. La. Apr. 6, 2011) (citing *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003)). The *Johnson* case on which the Plaintiff relies is inapposite. Appx. 231 (citing *Johnson v. Charps Welding & Fabricating*, No. 14-cv-2081

[3] In its July 15 letter, the Debtor claims it has not withheld documents merely because Dixon may already possess them. According to the Debtor, its objection is limited to re-producing documents it has already produced. Assuming the Debtor makes that same representation to the Court, it may resolve that aspect of this Motion. But given how incomplete the Debtor's production appears to be, the Court should at least require the Debtor to amend its written responses to make that representation.

(RHK/LIB), 2016 U.S. Dist. LEXIS 201538, *12 n.9 (D. Minn. 2016)). The cited discussion deals with the scope of deposition topics under rule 30(b)(6), not interrogatories or document requests.

30. Here, lest it be implied or argued that Dixon's corresponding requests and position are directed to merely requiring the Plaintiff to pointlessly disclose information that is already in Dixon's possession, the underlying concerns are, in fact, substantial. As shown above, the Plaintiff is improperly refusing to produce information to Dixon in native format. Such refusal would enable the Plaintiff, in tandem with its objection to producing documents already in Dixon's possession, to withhold and obscure metadata – such as but not limited to when a document came into the Plaintiff's possession, what prior iterations it may have undergone, and who has edited it, – that is potentially extremely significant. Recently in this adversary proceeding, this Court presided over Plaintiff's request to further amend its claims under which the issue of when the Plaintiff became aware of certain facts was a potentially material if not dispositive issue. Such metadata is also critical to allowing parties and the Court to identify variations in documents and evaluate claims of attorney-client privilege applicable to electronically stored information.

31. The relevant factors under rule 26 are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Based on the Debtor's own allegations, this lawsuit involves property "which had an approximate value of $27.5 million or more." Appx. 63 (Complaint ¶ 18). the Debtor cannot credibly argue its meager production suffices in light of the amount in controversy.

32. Even if this were a valid objection, the Debtor waived it by failing to provide sufficient detail. *See Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, No. 2:18-cv-166-z-

br, 2020 U.S. Dist. LEXIS 19421, at *28 (N.D. Tex. Jan. 13, 2020) ("Without some explanation or support for this objection, the objection fails."). And even if the Debtor preserved the objection, the Debtor still must specify what responsive information it is withholding. *See Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) ("A party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.").

33. Accordingly, the Court should compel the Debtor to provide complete responses to Interrogatory Nos. 3, 4, and 7 and to produce documents in response to RFP Nos. 1–9, 11–12, 15–38, and 41–46**.**

**E. The Debtor Must Answer Interrogatories That Allegedly Call for Legal Conclusions or Speculation**

34. In response to Interrogatory Nos. 3, 10–14, and 16, the Debtor objects that each Interrogatory "calls for a legal conclusion"; the Debtor further objects to Interrogatory Nos. 10–14 and 16 as calling for the Debtor to "speculate." Appx. 188, 190–91. These interrogatories seek information about the Debtor's alleged belief that the Deed in Escrow Agreement is unenforceable, the treatment of Dixon under the Debtor's confirmed plan, Dixon's treatment in a hypothetical chapter 7 case, Dixon's defenses under 11 U.S.C. §§ 548 and 550, and the Debtor's alleged damages.

35. Federal Rule of Civil Procedure 33 expressly provides that an interrogatory is "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2); see *United States Dep't of Labor v. Randolph*

*Cty. Sheltered Workshop*, No. 2:16-CV-78, 2017 U.S. Dist. LEXIS 234397, at *12 (N.D.W. Va. Nov. 17, 2017) (citation omitted) ("Generally, the fact that an interrogatory calls for a legal conclusion is not grounds for an objection."). In fact, in 2007, Rule 33 was amended and reworded specifically in order to make it clear that "[o]pinion and contention interrogatories are used routinely." *Ries v. Ardinger (In re Adkins Supply, Inc.)*, 555 B.R. 579, 591 (Bankr. N.D. Tex. 2016).

36. Furthermore, none of the Interrogatories calls for speculation in the first place. *See Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-cv-202, 2017 U.S. Dist. LEXIS 28325, at *10 (S.D. Ohio Feb. 27, 2017) (finding that question "does not call for speculation" where "it merely asks [respondent] to explain his understanding"). This is exactly the approach employed by Dixon here, and based precisely on this jurisprudence. Asking the Debtor to explain its own understanding of any particular topic does not require speculation.

37. Accordingly, the Court should compel the Debtor to provide complete responses to Interrogatory Nos. 3, 10–14, and 16.

**F. The Court Should Overrule the Debtor's Other Relevance Objections**

38. In Responses to RFP Nos. 10, 13–17, 19–33, 41–45, 49–53, and 56, the Debtor objects that the RFP seeks the production of Documents that are "not relevant"; the Debtor further objects to RFP Nos. 3, 5–10, and 13–15 as "not calculated to lead to the discovery of admissible evidence" because they are either "not described with appropriate specificity" or "not properly limited in scope." But these requests all seek relevant documents:

| **No.** | **Request** |
|---|---|
| 3 | All Documents concerning any of the Loan Documents other than the Deed in Escrow Agreement. |
| 5 | All Documents relating to any alleged or potential default by BM318 of its payment obligations under the Note. |

| No. | Request |
|---|---|
| 6 | All Documents concerning the value of the Real Property or any portion thereof. |
| 7 | All Documents concerning the value of the Remaining Land, or any portion thereof. |
| 8 | All Documents concerning any potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof. |
| 9 | All Documents concerning any proposed development or use of the Remaining Land or any portion thereof. |
| 10 | All Documents concerning Dixon. |
| 13 | All appraisals of the Real Property or any portion thereof. |
| 14 | All appraisals of the Remaining Land or any portion thereof. |
| 15 | All Documents constituting or concerning Communications with American Escrow Company or otherwise concerning American Escrow Company. |
| 16 | All Documents constituting or concerning Communications with JMJ and further concerning the Remaining Land or any portion thereof. |
| 17 | All Documents constituting or concerning Communications with JMJ and further concerning Dixon. |
| 19 | All Documents concerning BM318's aggregate debts, aggregate liabilities, the total value of BM318's assets, or the value of BM318's business at any time from June 1, 2020 through the Petition Date. |
| 20 | All Documents concerning BM318's aggregate debts, aggregate liabilities, the total value of BM318's assets, or the value of BM318's business at any time from January 1, 2020 through the Petition Date. |
| 21 | BM318's most recent financial statement as of July 2, 2020. |
| 22 | BM318's most recent financial statement as of January 1, 2020. |
| 23 | BM318's most recent balance sheet as of July 2, 2020. |
| 24 | BM318's most recent balance sheet as of January 1, 2020. |
| 25 | BM318's general ledger as of July 2, 2020. |
| 26 | BM318's general ledger as of January 1, 2020. |
| 27 | BM318's general ledger as of September 1, 2020. |
| 28 | All Documents concerning any contingent or noncontingent liabilities as of July 2, 2020 which do not appear on BM318's general ledger as of July 2, 2020. |
| 29 | All Documents concerning any contingent or noncontingent liabilities as of January 1, 2020 which do not appear on BM318's general ledger as of January 1, 2020. |
| 30 | All Documents concerning any contingent or noncontingent liabilities as of September 1, 2020 which do not appear on BM318's general ledger as of September 1, 2020. |

| No. | Request |
|---|---|
| 31 | Tax Returns for BM318 for 2019 and 2020. |
| 32 | All listings or schedules of assets generated or maintained by BM318 at any time from June 1, 2020 through the Petition Date. |
| 33 | All listings or schedules of assets generated or maintained by BM318 at any time from January 1, 2020 through the Petition Date. |
| 41 | All Documents constituting or concerning Communications with Jim Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon. |
| 42 | All Documents constituting or concerning Communications with Larry Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon. |
| 43 | All Documents constituting or concerning Communications with Mark Adams (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon. |
| 44 | All Documents constituting or concerning Communications with Chris Chevreaux concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report. |
| 45 | All Documents constituting or concerning Communications with Jim Pruitt concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report. |
| 49 | All Documents concerning the claim in the amount of $627,475.95 You scheduled for Carnegie Development LLC in the Bankruptcy Case on Schedule E/F [Docket No. 83]. |
| 50 | All Documents concerning the claim in the amount of $112,797.00 You scheduled for JMJ in the Bankruptcy Case on Schedule E/F [Docket No. 83]. |
| 51 | All Documents concerning the claim in the amount of $310,000.00 You scheduled for JMJ in the Bankruptcy Case on Schedule E/F [Docket No. 83]. |
| 52 | All Documents concerning the claim in the amount of $61,063.75 You scheduled for Barron Stark Engineers in the Bankruptcy Case on Schedule E/F [Docket No. 83]. |
| 53 | All Documents concerning the claim in the amount of $60,000.00 You scheduled for HR Sterling LLC in the Bankruptcy Case on Schedule E/F [Docket No. 83]. |
| 56 | All Documents concerning the Farm and Ranch Contract with GH Lumar JV and BM318 for the sale of 23.95 acres of land, situated in Parker County, as more particularly described in Exhibit "A" to the Fifth Loan Modification. |

39. The Federal Rules broadly allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A document is "relevant" if "(a) it has any tendency to

make a fact more or less probably than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "That a requested document or information will not be admissible or relevant to the merits of a claim or defense is not a proper objection to discovery of the document or information under the Federal Rules if the discovery request is reasonably calculated to lead to the discovery of admissible evidence." *Heller*, 303 F.R.D. at 489. Indeed, many of these same, allegedly objectionable topics appear in the Debtor's complaint and in the Debtor's own written discovery requests. Appx. 59–67.

40. Documents in the Debtor's possession, custody, or control that are related to each of the Loan Documents (the Note, the Deed of Trust, the Loan Modifications, the Deed in Escrow Agreement, and the Special Warranty Deed), the Real Property, the Remaining Land, the Encumbered Land, Dixon, JMJ, and the Debtor (including the Debtor's financials, assets, and liabilities at relevant times and the Debtor's communications, relationships, and transactions with relevant parties) are all either relevant to a party's claim or defense or could otherwise lead to the discovery of admissible evidence. Financial documents, for example, are relevant to the question of the Debtor's insolvency. Likewise, documents related to the Real Property, the Remaining Land, and the Encumbered Land are relevant to reasonably equivalent value.

41. Accordingly, the Court should compel the Debtor to produce all documents responsive to RFP Nos. 3, 5–10, 13–17, 19–33, 41–45, 49–53, and 56.

**G. The Court should Overrule the Debtor's "Vague and Ambiguous" Objections**

42. In Responses to RFP Nos. 10, 13–17, 37–38, and 42–45, the Debtor objects that the RFP is "vague and ambiguous." Appx. 195–97, 203–06. But as the *Heller* court explained, making such an objection carries with it numerous obligations, none of which the Debtor satisfied:

> "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." "A party objecting on these grounds must explain the specific and particular way in which a request is vague." The responding party

> "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories. If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue."
>
> Further, "[i]f a party believes that the request is vague, that party [should] attempt to obtain clarification prior to objecting on this ground."

*Heller*, 303 F.R.D. at 491–92 (citations omitted).

43. The Debtor's "vague and ambiguous" objections asserted in response to RFP Nos. 10 and 13–15 are improperly raised without any further explanation. None of these RFPs is vague or ambiguous; each seeks the production of all responsive Documents in the Debtor's possession, custody, or control that relates to a discrete, relevant matter. For example, RFP No. 13 seeks "All appraisals of the Real Property or any portion thereof." Likewise, RFP No. 14 seeks "All appraisals of the Remaining Land or any portion thereof." No one can credibly claim not to understand what these requests seek—certainly the Debtor has not explained its alleged confusion. The objections therefore fall far short of the *Heller* standard, resulting in waiver. Even if this objection were not waived, the Debtor would still need to identify those allegedly nonrelevant documents that it has decided to withhold on the basis of the objection.

44. Accordingly, the Court should overrule the Debtor's "vague and ambiguous" objections and compel the Debtor to produce documents responsive to RFP Nos. 10, 13–17, 37–38, and 42–45.

## IV. REQUEST FOR SANCTIONS

45. In addition to the provisions quoted above, Federal Rule of Civil Procedure 37 provides in relevant part as follows:

> (5) *Payment of Expenses; Protective Orders*.
>
> (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing)*. If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court ***must***, after giving an opportunity

> to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
>
> > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> >
> > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> >
> > (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

46. Because Dixon has attempted in good faith to obtain this discovery without involving the Court, and because the Debtor lacks any reasonable justification for its discovery failures, the Court should award Dixon its reasonable attorney's fees incurred in preparing and prosecuting this Motion. Fed. R. Civ. P. 37(a)(5)(A). Should the Court determine at the hearing on the Motion that an award of attorney's fees to Dixon is appropriate, Dixon respectfully requests that the Court set a further hearing on same for Dixon to prove up the amount of such attorney's fees.

## V. PRAYER

WHEREFORE, PREMISES CONSIDERED, Dixon respectfully requests that the Court enter an order granting this Motion and providing Dixon such other and further relief to which it may be justly entitled at law or in equity.

RESPECTFULLY SUBMITTED this 15th day of July, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

/s/ *Julian P. Vasek*

Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

***Attorneys for The Dixon Water Foundation***

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that, based on the correspondence located in the Appendix, Dixon has conferred in good faith without involving the Court, as required by Rule 37(a)(1), but that at this stage there is no other reasonable remedy than to seek the Court's assistance.

/s/ *Julian P. Vasek*
Julian P. Vasek

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 15th day of July, 2022, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Debtor through Joyce Lindauer, Esq., counsel of record.

/s/ *Julian P. Vasek*
Julian P. Vasek