Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

***Attorneys for The Dixon Water Foundation***

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re:<br><br>BM318, LLC,<br><br>Debtor. | §<br>§<br>§<br>§<br>§ | Case No. 20-42789-mxm11<br>Chapter 11 |
| BM318, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE DIXON WATER FOUNDATION,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adv. No. 21-04051 |

**APPENDIX IN SUPPORT OF THE DIXON WATER FOUNDATION'S MOTION TO COMPEL WRITTEN DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

COMES NOW, The Dixon Water Foundation, a Texas non-profit corporation and the defendant in this adversary proceeding and files this, its *Appendix in Support of Motion to Compel Written Discovery Responses and Production of Documents* consisting of the following exhibits:

| No. | Description | Appx. |
|---|---|---|
| 1 | Deed in Escrow Agreement | 1 |
| 2 | Special Warranty Deed | 45 |
| 3 | Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 | 59 |
| 4 | Defendant, The Dixon Water Foundation's Answer and Affirmative Defenses to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 | 68 |
| 5 | Original Answer to Defendant's Counterclaims | 83 |
| 6 | Motion to Intervene and Brief in Support | 88 |
| 7 | Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Relief | 103 |
| 8 | Plaintiff's Original Answer to Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment and Counterclaims Against Intervenor | 111 |
| 9 | Plaintiff-in-Intervention's Answer to Plaintiff's Counterclaims | 135 |
| 10 | Plaintiff-in-Intervention's First Amended Answer to Plaintiff's Counterclaims | 148 |
| 11 | Defendant The Dixon Water Foundation's First Set of Interrogatories to Plaintiff BM318, LLC | 161 |
| 12 | Defendant The Dixon Water Foundation's First Requests for Production of Documents and Other Items to Plaintiff BM318, LLC | 170 |
| 13 | BM318, LLC's Objections and Responses to Defendant The Dixon Water Foundation's (1) First Set of Interrogatories and (2) First Requests for Production of Documents and Other Items | 184 |
| 14 | January 21, 2022 Letter from Deborah Perry to Joyce Lindauer | 210 |
| 15 | February 3, 2022 Letter from Joyce Lindauer to Deborah Perry | 227 |
| 16 | June 24, 2022 Letter from Deborah Perry to Joyce Lindauer | 238 |
| 17 | Email Correspondence Between Joyce W. Lindauer, Attorney, PLLC and Deborah Perry | 244 |
| 18 | July 15, 2022 Letter from Joyce Lindauer to Deborah Perry | 246 |

RESPECTFULLY SUBMITTED this 15th day of July, 2022.

**MUNSCH HARDT KOPF & HARR, P.C.**

/s/ *Julian P. Vasek*

Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

***Attorneys for The Dixon Water Foundation***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that, on this the 15th day of July, 2022, true and correct copies of this document were electronically served by the Court's ECF system on parties entitled to notice thereof, including on the Debtor through Joyce Lindauer, Esq., counsel of record.

/s/ *Julian P. Vasek*

Julian P. Vasek

# DEED IN ESCROW AGREEMENT

THIS DEED IN ESCROW AGREEMENT (this "**Agreement**") is made as of February 27th, 2020 (the "**Effective Date**"), by and among BM3 1 8, LLC, a Texas limited liability company ("**Borrower**"), and THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation ("**Lender**"), and AMERICAN ESCROW COMP ANY ("**Escrow Agent**").

**RECITALS:**

A. Borrower owes certain indebtedness, liabilities and obligations to Lender pursuant to that certain Promissory Note (as amended or modified, the "**Note**"), dated November 26, 2018, executed by, Borrower payable to the order of Lender in the original principal amount of $32,946,900.00 (the "**Loan**"), which Note is secured by that certain property located in Parker County, Texas pursuant to that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas (the "**Deed of Trust**"; together with the Note, the First Modification (hereinafter defined), the Second Modification (hereinafter defined), the Third Modification (hereinafter defined), the Fourth Modification (hereinafter defined), the Fifth Modification (hereinafter defined) and any other document executed in connection with the Loan, the "**Loan Documents**")

B. The Deed of Trust covered certain "Property" more particularly described therein (collectively, the "**Original Property**"). Pursuant to that certain (i) Partial Release of Lien dated September 11, 2019 executed by Lender and recorded in the Official Public Records of Parker County, Texas, Lender released the First Release Tract (as defined in the Deed of Trust) from the encumbrance of the Deed of Trust, and (ii) Partial Release of Lien dated January 31, 2020 executed by Lender and recorded in the Official Public Records of Parker County, Texas, Lender released approximately 23.95 acres from the Original Property (the "**23 Acre Tract**"), from the encumbrance of the Deed of Trust. For purposes herein the defined term "Property" shall mean the Original Property less and except the First Release Tract and the 23 Acre Tract.

C. The Note and Deed of Trust were modified pursuant to (i) that certain Loan Modification and Forbearance Agreement dated July 26, 2019, executed by Borrower and Lender (the "**First Modification**"), (ii) that certain Second Loan Modification Agreement dated October 1, 2019, executed by Borrower and Lender (the "**Second Modification**"), (iii) that certain Third Loan Modification Agreement dated December 17, 2019, executed by Borrower and Lender (the "**Third Modification**"), (iv) that certain Fourth Loan Modification Agreement dated January 8, 2020, executed by Borrower and Lender (the "**Fourth Modification**"), and that certain Fifth Loan Modification Agreement dated January 31, 2020, executed by Borrower and Lender (the "**Fifth Modification**").

D. Borrower is in default under the Loan Documents as a result of (the "**Specified Defaults**") Borrower's failure to pay the installment of interest in the amount of $1,091,181.00 due on January 24, 2020 pursuant to the Fourth Modification, which included amounts due on October 1, 2019 (as extended), January 1, 2020 (as extended) and April 1, 2020 (the "**Payment Default**"). Although Lender is in receipt of certain partial payments in connection with the Partial Release for the 23 Acre Tract, Borrower is still deficient. By letters dated January 27, 2020 and January 30, 2020 (collectively, the "**Default Letters**"), Lender accelerated the entire unpaid principal balance of the Note,

together with all sums due and owing under the Loan Documents and requested such amount ("**Final Payment**") to be paid by no later than 5:00 p.m. Central time on January 31, 2020, as extended to February 7, 2020 (as extended, the "**Deadline**"). In lieu of the payment thereof, Lender also notified Borrower in the Default Letters that it would accept a special warranty deed in lieu of foreclosure (the "**Deed in Lieu**") by no later than the Deadline. Borrower acknowledges (a) the Payment Default has occurred, that no further notice is required under the Loan Documents, (b) that the Payment Default has not been cured and continues to exist under the Loan Documents, (c) that Lender is entitled to exercise any and all of its rights and remedies under the Loan Documents in connection with the Payment Default and any other defaults or Events of Default which presently exist and may be continuing on the date hereof, and (d) that neither the Final Payment, nor the Deed in Lieu were tendered to Lender by the Deadline.

E. Borrower has notified Lender that Borrower is actively pursuing the refinancing of its indebtedness and liabilities to Lender and, in order to provide time for Borrower to pursue the various options for such refinancing, Borrower has requested Lender to forbear from exercising its rights and remedies arising as a result of the Specified Defaults, including (but not limited to) foreclosure.

F. Lender has agreed to such forbearance, subject to the terms and conditions of this Agreement.

**AGREEMENT:**

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, the parties hereto hereby covenant, agree, represent and warrant as follows:

1. Forbearance and Escrowed Documents. Lender hereby agrees to forbear from exercising its rights and remedies arising as a result of the Specified Defaults, including (but not limited to) foreclosure subject to the terms and conditions of this Agreement. Borrower and Lender have executed, acknowledged (where applicable) and delivered into escrow with Escrow Agent the documents identified on **Exhibit A** attached hereto and made a part hereof for all purposes (collectively, the "**Escrowed Documents**").

2. Receipt by Escrow Agent. Escrow Agent hereby acknowledges receipt of the Escrowed Documents, fully-executed and acknowledged (where applicable) by Borrower and Lender and agrees to establish an escrow (the "**Escrow**") and hold the executed and acknowledged Escrowed Documents in such Escrow pursuant to the provisions of this Agreement.

3. Release of Escrowed Documents in the Event of Default. If another Event of Default under the Loan Documents occurs (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020), or if Lender (or the Escrow Agent) does not receive the Final Payoff (hereinafter defined) in full by no later than 5:00 PM Central Time on July 1, 2020 ("**Escrow Agreement Deadline**"), Lender may send notice to Escrow Agent of such Event of Default or failure, and Escrow Agent shall remove the Escrowed Documents from Escrow, date the effective date of all such documents to be the date stipulated as the "Closing Date" in such notice letter (the "**Closing Date**") and deliver the same as follows:

a. The Special Warranty Deed shall be recorded in the Real Property Records of Parker County, Texas and the recorded copy shall be delivered to Lender (the "**Deed**");

b. The Bill of Sale shall be delivered to Lender or its designee;

c. The Non-Foreign Certificate shall be delivered to Lender or its designee;

d. Except as set forth below, the Release of Borrower shall be delivered to Borrower but which may not be recorded until 180 days following the Closing Date; and

e. The Release of Lender shall be delivered to Lender.

If another Event of Default under the Loan Documents occurs (other than (i) the Specified Default, (ii) the failure to make the quarterly installment of interest due April 1, 2020, or (iii) the failure to pay the Final Payoff by the Escrow Agreement Deadline), and Lender sends the notice above to Escrow Agent of such Event of Default, the Release of Borrower will be returned to Lender with the other Escrowed Documents and will not be effective or available for Borrower. For purposes herein, the defined term "**Final Payoff**" shall mean an amount equal to $27,500,658.00 in principal and accrued interest, plus any and all costs and expenses of Lender as of the date of such payment. Lender will need to confirm the Final Payoff amount prior to payment and acceptance. If the Final Payoff is indefeasibly paid in United States Dollars and in immediately available funds to the Lender by Borrower on or before the Escrow Agreement Deadline, Lender will send notice to Escrow Agent of such payment and Escrow Agent shall remove the Escrowed Documents from Escrow and return each of them to Borrower.

4. Closing in the Event of Default. On the Closing Date if (i) the Final Payoff has not been remitted to the Escrow Agent or Lender by the Escrow Agreement Deadline, or (ii) another Event of Default under the Loan Documents has occurred (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020), Borrower, and any other related party or other party in connection with the Loan, shall execute and deliver, or cause to be executed and delivered, to Lender or Lender's designee such further assignments, instruments, affidavits and agreements of further assurance, approvals, consents and other documents, including (without limitation) modifications to the Escrowed Documents (if Lender reasonably determines that the transactions contemplated by this Agreement must be modified, rearranged, or restructured) and endorsements and assignments of checks, deposits and accounts assigned to Lender, as may be reasonably necessary, expedient or proper in the opinion of Lender in order to consummate any and all conveyances, transfers, sales and assignments contemplated by this Agreement, or as may be required to be executed and delivered on the Closing Date pursuant to this Agreement, or as Lender may reasonably require to effect a full and complete transfer to Lender or its designee. Borrower shall be responsible for all of Lender's costs and expenses in connection with this Agreement, including without limitation, attorney's fees and expenses, recording fees and fees from the Escrow Agent. In addition, Borrower shall be responsible for its own costs and expenses in connection with this Agreement, including without limitation, attorney's fees and expenses.

5. Intentionally Omitted.

6. Transfer Absolute. Borrower acknowledges and agrees that at the time the Escrowed Documents and all additional documents and actions contemplated by this Agreement are properly delivered to Lender by the Escrow Agent on the Closing Date pursuant to the provisions of this Agreement, then: (a) (i) such delivery is intended to effect a present and absolute conveyance and unconditional transfer to Lender or its designee pursuant to the Escrowed Documents effective upon the

Closing Date, (ii) such items are not given as a mortgage, trust conveyance, deed of trust, or security instrument of any kind, and (iii) Borrower has no further interest (including rights of redemption) or claims in and to the Property or to the proceeds and profits which may be derived therefrom, of any kind whatsoever; (b) Borrower shall, concurrently with the delivery to Lender of the Escrowed Documents, deliver to Lender, its nominee, designee or assignee possession and enjoyment of the Property and the other property transferred pursuant to the Escrowed Documents, and Lender, its nominee, designee or assignee shall thereafter have the immediate right to occupy, operate, use, sell and transfer the same or any part thereof for its own account, at its sole and absolute discretion; (c) such delivery of the Escrowed Documents and possession of the Property as described in this Section 6 shall be in lieu of remitting the Final Payoff to Lender and shall be in full accord and satisfaction of any and all payment obligations of Borrower and any guarantor under the Loan Documents and this Agreement; (d) Lender, its nominee, designee or assignee shall, as of the Closing Date and thereafter, have the sole and absolute right to record, distribute, assign or take any other action deemed necessary or desirable by Lender, in Lender's sole and absolute discretion, with respect to the Escrowed Documents and any other documents and information delivered or obtained by Lender in connection with this Agreement, and (e) title to the Property shall remain subject to the Deed of Trust to the full extent of the Loan, and delivery of the Deed by Borrower to Lender shall not result in a merger of Lender's interest as lienholder under the Deed of Trust with Lender's interest as title holder pursuant to the Deed.

7. Foreclosure. While Lender, as consideration to Borrower, has agreed to forbear from exercising its remedies in connection with the Specified Default, nothing contained in this Agreement shall preclude Lender from pursuing a foreclosure under the Deed of Trust, after the Closing Date if Escrow Agent has delivered the Escrowed Documents to Lender, and Lender determines that it is in the best interest of Lender to foreclose the liens and security interests created by the Loan Documents in order to clear title of any encumbrances on the Property that are not Permitted Encumbrances (as defined in the Deed). Lender shall have such right to foreclose upon any such liens and security interests; provided, however, that if Lender does not initiate a foreclosure proceeding under this Section 7 within one hundred eighty (180) days after the Closing Date, such right to foreclose shall terminate, unless the one hundred eighty (180) day period ends prior to the expiration of the Cure Period, in which case the one hundred eighty (180) day period will be extended until sixty (60) days after the expiration of the Cure Period. Notwithstanding the foregoing to the contrary, prior to such foreclosure, Lender will provide notice to Borrower of any such encumbrances and of its desire to proceed with foreclosure. Borrower will have thirty (30) days (the "**Cure Period**") after delivery of such notice to remove, to the reasonable satisfaction of Lender, any such encumbrances, at its sole cost and expense, before Lender will proceed with foreclosure.

8. Enforcement. The provisions of this Agreement shall be enforceable by any means available at law or in equity, including (without limitation) an action for specific performance.

9. Provisions Regarding Escrow Agent.

a. In the event that, for any reason in Escrow Agent's good faith and reasonable judgment, there is any dispute or uncertainty concerning any action to be taken hereunder, Escrow Agent shall have the right to take no action until it shall have received instructions in writing concurred to by Borrower and Lender or until directed by a judgment or decree of a court of competent jurisdiction in the State of Texas or in a Federal court in such State, whereupon Escrow Agent shall take such action in accordance with such instructions or such order, irrespective of its finality or being subject to appeal, unless restrained otherwise by Borrower or Lender.

b. Escrow Agent shall not be liable to the other parties hereto or to anyone else for any action taken or omitted by it, in good faith and in the exercise of reasonable judgment, except for acts of willful misconduct or gross negligence.

c. Promptly after the receipt by Escrow Agent of notice of any demand or claim or the commencement of any action, suit or proceeding, Escrow Agent shall, if a claim in respect thereof is to be made against any of the other parties hereto, notify such other parties hereto in writing.

d. From time to time on and after the date hereof, the other parties hereto shall deliver or cause to be delivered to Escrow Agent such further documents and instruments and shall do and cause to be done such further acts as Escrow Agent shall reasonably request (it being understood that Escrow Agent shall have no obligation to make any such request and the parties hereto shall have no obligation to incur any cost or expense or any additional liability with respect to any such request) to carry out more effectively the provisions and purposes of this Agreement, to evidence compliance herewith or to assure itself that it is protected in acting hereunder.

e. Escrow Agent is not a party to, or bound by any agreement which may be deposited under, evidenced by, or which arises out of the foregoing instructions.

f. Escrow Agent acts hereunder as a depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness, or validity of any instrument deposited with it hereunder, or with respect to form or execution of the same, or the identity, authority, or rights of any person executing or depositing the same.

g. Escrow Agent shall not be required to take or be bound by notice of any default of person, or to take action with respect to such default involving any expense or liability, unless notice in writing is given to an officer of Escrow Agent of such default and unless it is indemnified in a manner satisfactory to it against any such expense or liability. These instructions shall not be subject to rescission or modification except upon receipt by Escrow Agent of written instructions of all the parties hereto or their successors in interest, and no such modification shall be effective unless and until consented to in writing by Escrow Agent.

h. Escrow Agent shall be protected in acting upon any notice, request, waiver, consent, receipt, or other paper or document believed by Escrow Agent to be genuine and to be signed by the proper party or parties.

i. Escrow Agent shall not be liable for any error of judgment or for any act done or step taken or omitted by it in good faith, or for any mistake of fact or law, or for anything which it may do or refrain from doing in connection herewith, except its own gross negligence or willful misconduct, and Escrow Agent shall have no duties to anyone except those signing these instructions.

j. For its ordinary services hereunder, Escrow Agent shall be entitled to a fee of $750.00, payable concurrently with its acceptance hereof.

k. Escrow Agent may resign as Escrow Agent hereunder upon giving 20 days prior written notice to that effect to each of the parties to this Agreement. In addition, Lender may, at any time and in its sole and absolute discretion, appoint a successor to act as Escrow Agent under this Agreement. In such event, the successor Escrow Agent shall be a reputable law firm or a nationally recognized title insurance company, selected by Lender and approved by Borrower, which approval shall not be unreasonably withheld or delayed. Such party that will no longer be serving as Escrow Agent shall deliver, against receipt, to such successor Escrow Agent, the Escrowed Documents, if any, held by such party, to be held by such successor Escrow Agent pursuant to the terms and provisions of this Agreement. If no such successor has been designated on or before the effective date of such party's resignation, its obligations as Escrow Agent shall continue until such successor is appointed; provided, however, its sole obligation thereafter shall be to safely keep all documents and instruments then held by it and to deliver the same to the person, firm or corporation designated as its successor. If no successor Escrow Agent is designated and qualified within 10 days after Escrow Agent's resignation is effective, such party that will no longer be serving as Escrow Agent may apply to any court of competent jurisdiction for the appointment of a successor Escrow Agent.

This paragraph is in no way intended to limit Reunion Title's obligation under any policy or commitment of title insurance issued for or on behalf of Lender or to limit Reunion Title's responsibility to act in accordance with any closing instruction letter or other instruction for the delivery of title coverage made for or on behalf of Lender.

**10. ADDITIONAL ACKNOWLEDGMENTS BY BORROWER. BORROWER, AFTER CONSULTING WITH COUNSEL OF THEIR CHOICE AND HAVING BEEN AFFORDED A REASONABLE TIME TO REVIEW AND CONSIDER THIS AGREEMENT AND EACH OF THE MATTERS CONTEMPLATED BY THIS AGREEMENT, HEREBY FURTHER ACKNOWLEDGES AND AGREES AS FOLLOWS:**

**a. DEFAULT HAS OCCURRED UNDER THE LOAN, SUCH DEFAULTS ARE MATERIAL IN NATURE AND HAVE NOT BEEN CURED AS OF THE DATE HEREOF, AND BORROWER IS INCAPABLE OF CURING OR UNWILLING TO CURE (OR BOTH) SUCH DEFAULTS WITHIN A COMMERCIALLY REASONABLE PERIOD OF TIME HEREAFTER.**

**b. AS OF THE EFFECTIVE DATE BORROWER IS NOT CAPABLE OF REPAYING THE INDEBTEDNESS SECURED BY THE DEED OF TRUST.**

**c. THIS AGREEMENT, AND THE DELIVERY OF THE ESCROWED DOCUMENTS AS CONTEMPLATED HEREIN, ARE BEING CARRIED OUT IN CONNECTION WITH A SO-CALLED "WORK-OUT" OF THE LOAN.**

**d. LENDER HAS AGREED TO FOREBEAR FROM EXERCISING CERTAIN APPLICABLE REMEDIES (INCLUDING, WITHOUT LIMITATION, FORECLOSURE OF THE PROPERTY) IN CONNECTION WITH THE SPECIFIED DEFAULT, AND SUCH FORBEARANCE BY LENDER IS VALUABLE AND MEANINGFUL CONSIDERATION TO BORROWER IN EXCHANGE FOR BORROWER'S EXECUTION OF THIS AGREEMENT AND COMPLIANCE WITH THE TERMS OF THIS AGREEMENT (INCLUDING, WITHOUT LIMITATION, DELIVERY OF THE**

**ESCROWED DOCUMENTS AND CONDITIONAL AUTHORIZATION TO RELEASE THE ESCROWED DOCUMENTS AS PROVIDED HEREIN).**

e. **BORROWER OR IS A SOPHISTICATED COMMERCIAL REAL ESTATE BORROWER, INVESTOR AND DEVELOPER, EXPERIENCED IN COMMERCIAL REAL ESTATE TRANSACTIONS OF THIS NATURE, AND IS REPRESENTED BY KNOWLEDGEABLE LEGAL COUNSEL OF THEIR CHOOSING IN CONNECTION WITH THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

f. **WHILE THE EXECUTION OF THIS AGREEMENT IS THE RESULT OF DEFAULTS BY BORROWER IN CONNECTION WITH THE LOAN, AFTER TAKING INTO CONSIDERATION SUCH DEFAULTS, THERE IS NO DISPARITY BETWEEN RELATIVE BARGAINING POWER AND NEGOTIATING STRENGTH OF BORROWER AND LENDER.**

11. Release. So long as no other Event of Default under the Loan Documents occurs (other than the Specified Default or failure to make the quarterly installment of interest due April 1, 2020) and Borrower delivers the Final Payoff on or before to the Escrow Agreement Deadline, then (i) the obligations of Borrower under this Agreement shall terminate, (ii) all obligations (other than any obligations under the Loan Documents that survive repayment thereof) of Borrower under the Loan Documents shall terminate, (iii) the Deed of Trust along with any other security instruments shall be released by Lender, at Borrower's cost and expense, (iv) the Deed, Bill of Sale, and Non-Foreign Certificate shall be released to Borrower, and (v) the Release of Lender shall be delivered to Lender by the Escrow Agent.

12. Miscellaneous.

a. No failure or delay on the part of a party to this Agreement in exercising any power or right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or power preclude any other or further exercise thereof or the exercise of any other right or power hereunder. No waiver of any provision of this Agreement and no consent to any departure by any party from strict compliance with this Agreement shall be effective unless the same shall be in writing and signed by the party against whom such waiver or consent is being sought to be enforced and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on any party to this Agreement in any case shall, of itself, entitle such party to any other or further notice or demand in similar of other circumstances.

b. This Agreement may only be modified, amended, changed, discharged or terminated by an agreement in writing signed by the parties hereto.

c. Each of the parties to this Agreement (and the undersigned representatives of such parties, if any) has the full power, authority and legal right to execute this Agreement and to keep and observe all of the terms, covenants and provisions of this Agreement on such parties' respective parts to be performed or observed.

d. Any notice, request, direction or demand given or made under this Agreement shall be in writing and shall be deemed delivered (i) upon delivery, if delivered in person or by facsimile transmission with receipt acknowledged by the recipient

thereof and confirmed by telephone by sender, (ii) 1 Business Day after having been deposited for overnight delivery with any reputable overnight courier service, or (iii) 2 Business Days after having been deposited in any post office or mail depository regularly maintained by the U. S. Postal Service and sent by registered or certified mail, postage prepaid, return receipt requested, to the addresses listed set forth in the Loan Documents.

e. If any term, covenant or provision of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such term, covenant or provision.

f. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

g. This Agreement may be executed in 1 or more counterparts by some or all of the parties hereto, each of which counterparts shall be an original and all of which together shall constitute one and the same agreement, even though all of the parties hereto may not have executed the same counterpart of this Agreement.

h. If any party to this Agreement commences any legal action to enforce its rights or another party's obligations under this Agreement, the prevailing party in any such action shall be entitled to recover its attorneys' fees and expenses incurred in prosecuting and/or defending against any such action from the nonprevailing party.

[Remainder of page left intentionally blank]

IN WITNESS WHEREOF, Borrower, Lender and Escrow Agent have caused this Agreement to be executed effective as of the date first written above.

**BORROWER:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________
Tim Barton, President

Address:

13901 Midway Road
Suite 102
Farmers Branch, Texas 75244
Attention: Mark Adams
Email: MAdams@jmjdevelopment.net

IN WITNESS WHEREOF, Borrower, Lender and Escrow Agent have caused this Agreement to be executed effective as of the date first written above.

**LENDER:**

THE DIXON WATER FOUNDATION
F/K/A THE DIXON FOUNDATION, a
Texas non-profit corporation

By: [signature]
Name: Robert J. Potts
Title: President & CEO

Address:

P.O. Box 177
Marfa, Texas 79843
Attention: Robert Potts
Email: rpotts@dixonwater.org

Case 21-04051-mxm Doc 84-1 Filed 07/26/22 Entered 07/26/22 15:09:10 Page 14 of 255

IN WITNESS WHEREOF, Borrower, Lender and Escrow Agent have caused this Agreement to be executed effective as of the date first written above.

**ESCROW AGENT:**

AMERICAN ESCROW COMPANY

By: William A. Kramer
Name: William A. Kramer
Title: Executive Chairman

Address:

American Escrow Company
2626 Howell Street, 10th Floor
Dallas, TX 75204
Attn: Shauna Dawson
Phone: 214-754-7768
Email: sdawson@republictitle.com

With copy to:

American Escrow Company
2626 Howell Street, 10th Floor
Dallas, TX 75204
Attn: Bill Kramer
Phone: 214-855-8850
Email: bkramer@republictitle.com

**EXHIBITS**

| | |
|---|---|
| EXHIBIT A | Escrowed Documents |
| EXHIBIT B | Special Warranty Deed |
| EXHIBIT C | Bill of Sale |
| EXHIBIT D | Non-Foreign Certificate |
| EXHIBIT E | Release of Borrower |
| EXHIBIT F | Release of Lender |

# EXHIBIT A

## ESCROWED DOCUMENTS

1. Special Warranty Deed in the form of **Exhibit B** attached hereto and incorporated into the Agreement by this reference (the "**Deed**").

2. Bill of Sale in the form of **Exhibit C** attached hereto and incorporated into the Agreement by this reference (the "**Bill of Sale**").

3. The IRC Section 1445 Non-Foreign Certificate in the form of **Exhibit D** attached hereto and incorporated into the Agreement by this reference (the "**Non-Foreign Certificate**").

4. The Release of Borrower in the form of **Exhibit E** attached hereto and incorporated into the Agreement by this reference ("**Release of Borrower**").

5. The Release of Lender in the form of **Exhibit F** attached hereto and incorporated into the Agreement by this reference ("**Release of Lender**").

**EXHIBIT B**

**SPECIAL WARRANTY DEED**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF PARKER | § | |

THAT BM318, LLC, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor, cash in hand paid by Grantee, herein below named, the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (herein the "**Grantee**"), all of the following ("**Property**"):

(a) the real property (the "**Land**") located in Parker County, Texas and more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes;

(b) all buildings and other improvements of every type or character situated upon, under, through or within the Land, as well as all appurtenances, betterments and additions thereto;

(c) all of Grantor's right, title and interest in and to all strips, gores and rights-of-way abutting, adjacent, contiguous or adjoining the Land; and

(d) all and singular, the benefits, privileges, easements, tenements, hereditaments, and appurtenances to the Land, or in anywise appertaining to the Land, and any and all right, title, and interest of Grantor in and to adjacent roads, and rights-of-way.

TO HAVE AND TO HOLD the Property, together with all and singular any other rights and appurtenances thereto in anywise belonging unto Grantee, and its successors and assigns, FOREVER; and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND, all and singular, the Property, subject to the permitted encumbrances set forth in Exhibit "B" attached hereto and made a part hereof for all purposes ("**Permitted Encumbrances**") and the Indebtedness (as defined below), unto Grantee, and its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

BUT IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED that:

A. This Special Warranty Deed, and the conveyances being made hereby, are being executed, delivered and accepted and shall be interpreted and construed as an absolute conveyance to Grantee of all of the right, title and interest of Grantor in and to the Property, including specifically but without limitation, any equity or rights of redemption of Grantor therein or thereto; the conveyances being made hereby are not intended as a mortgage, trust conveyance, deed of trust, or security instrument of any kind whatsoever; and Grantor shall have no further interest (including rights of redemption) or claims in and to the Property or to the rents, issues, proceeds and profits that may be derived thereof, of any kind whatsoever;

B. Notwithstanding the above provisions hereof, all of the liens and security interests (hereinafter collectively called the "**Liens**") that evidence or secure the payment of the indebtedness owned and held by Grantee, said indebtedness being described in Exhibit "C" attached hereto (the "**Indebtedness**"), including, without implied limitation, (i) the liens and security interests described in Exhibit C attached hereto, and (ii) other liens and security interests related to the foregoing, are NOT RELEASED or RELINQUISHED in any manner or respect whatsoever, which Liens shall remain valid and continuous and in full force and effect, until the earlier to occur of (a) the release of the Liens by written instrument (the "**Release**") executed by Grantee, or its successors and assigns, and recorded in the applicable real estate records, which Release may be made as, if and when Grantee, or its successors and assigns, shall determine in the exercise of its sole discretion; or (b) the expiration of one hundred eighty (180) days following the date hereof if, during such one hundred eighty (180) days, Grantee has not initiated any foreclosure proceedings related to such Liens or Indebtedness; provided, if such one hundred eighty (180) day period ends prior to the expiration of the thirty (30) day contractual cure period agreed upon by Grantee and Grantor for the benefit of Grantor, then the one hundred eighty (180) day period will be extended until sixty (60) days after the expiration of such cure period.

C. Neither Grantor nor Grantee intend that there be, and there shall not in any event be, a merger of any of the Liens with the title or other interest of Grantee by virtue of this conveyance and the parties expressly provide that each such interest in the Liens on one hand and title on the other be, and remain at all times, SEPARATE and DISTINCT;

D. The title and other interest of Grantee in the Property acquired under this Special Warranty Deed will not merge with the liens and security interests of Grantee in the Property under the Liens and for purposes of priority as between (i) intervening or inferior liens, claims or encumbrances on or against the Property, and (ii) the Liens, any and all rights of Grantee to exercise its remedies of foreclosure by private power of sale pursuant to nonjudicial foreclosure or by judicial foreclosure of any of the Liens or any other remedies to enforce the Liens are expressly preserved hereby and for purposes of limitations and any other applicable time bar defenses, the same are hereby expressly extended;

E. The priority of the Liens is intended to be and shall remain in full force and effect and nothing herein or in any instruments executed in connection herewith shall be construed to subordinate the priority of the Liens to any other liens or encumbrances whatsoever;

F. If the conveyance of the Property from Grantor to Grantee is voided, avoided, or set aside for any reason whatsoever, then (i) if the Liens shall have been previously released in whole or in part, the same shall be automatically revived and reinstated; (ii) Grantee shall have the right to foreclose the Liens and take such other action as is permitted thereby or pursuant to the other documents evidencing the Liens to enforce the Liens; and (iii) all costs incurred by Grantee in connection with this Special Warranty Deed and any other cost of enforcement of the Liens shall be deemed a part of the Indebtedness secured by the Liens and shall be due and payable by Grantor upon demand of Grantee.

G. Grantor hereby acknowledges that, after the recording of conveyance hereunder, among other changes of ownership named therein, Grantor shall have no further interest or claim with respect to the Property including, without limitation, the rights to the following:

1. the rights to manage the Property;

2. the right to occupy or use the Property in any manner;

3. the right to receive any revenues from the Property;

4. the right to receive any proceeds from the sale, transfer, financing or operation of the Property; or

5. the right to repurchase, redeem or regain any right, title or interest in the Property or any portion thereof.

H. Grantor is duly authorized to execute and deliver this Special Warranty Deed and any and all other related documents and instruments, and to consummate the transactions and perform the obligations contemplated hereby and thereby.

I. This Special Warranty Deed constitutes the legal, valid and binding obligation of Grantor enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws or by legal or equitable principles relating to or limiting rights of creditors generally. Neither the execution and delivery of this Special Warranty Deed, nor the consummation of the transactions contemplated hereby will (a) violate any judgment, order, ruling, injunction, decree or award of any court, administrative agency or governmental body against, or binding upon, Grantor; or (b) to Grantor's knowledge, constitute a violation by Grantor of any law or regulation of any jurisdiction as such law or regulation relates to or affects Grantor or its properties or businesses.

J. All representations, warranties, covenants and agreements of the parties made in this Special Warranty Deed shall survive the execution and delivery hereof.

K. Grantor agrees not to take any action, or cause any action to be taken, to attempt to modify, rescind, revoke, avoid or otherwise invalidate this Special Warranty Deed or the transfer of any property or other consideration received by Grantee hereunder or provided for herein. It is expressly agreed and understood and the parties intend that all payments, property and other consideration paid or conveyed to Grantee by Grantor hereunder shall be final and forever.

L. This Special Warranty Deed and all documents and instruments to be executed and delivered in connection herewith and therewith and all information furnished to Grantee, is made and furnished in good faith, for value and valuable consideration, and have not been made under or induced by any fraud, duress, or undue influence exercised by Grantee or any other person.

M. If any provision of this Special Warranty Deed is held to be illegal, invalid, or unenforceable, such provision shall be fully severed from this Special Warranty Deed. This Special Warranty Deed shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof, and the remaining provisions shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Special Warranty Deed. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically, as a part of this Special Warranty Deed, a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

N. This Special Warranty Deed shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, and assigns.

[Signatures on following pages.]

EXECUTED as of the ____ day of __________________, 2020.

**GRANTOR:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________________
Tim Barton, President

STATE OF ____________ §
§
COUNTY OF __________ §

The foregoing instrument was ACKNOWLEDGED before me this _____ day of ____________, 2020, by Tim Barton, President of TRWF, LLC, a Texas limited liability company, the managing member of BM318, LLC, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]

______________________________
Notary Public, State of Texas

My Commission Expires:

____________________

______________________________
Printed Name of Notary Public

Notary No.: __________________________

Attachments:

Exhibit A - Land
Exhibit B - Permitted Encumbrances
Exhibit C - Liens and Indebtedness

**EXHIBIT A**
The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;

S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;
N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel

fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

# EXHIBIT B

Permitted Encumbrances

1. Easement granted by Aleene, Princess of Liechtenstein to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 418, Real Property Records, Parker County, Texas.

2. Easement granted by Jane McFarland Dixon to James P. Dunigan, Inc., filed 12/08/1976, recorded in Volume 657, Page 421, Real Property Records, Parker County, Texas.

3. Easement granted by Aleene McFarland Liechtenstein, et al to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 437, Real Property Records, Parker County, Texas.

4. Easement granted by Aleene McFarland Liechtenstein to Southwestern Gas Pipeline, Inc., filed 05/03/1978, recorded in Volume 723, Page 630, Real Property Records, Parker County, Texas.

5. Easement granted by R. McFarland Dixon to Tri-County Electric Cooperative, Inc., filed 01/26/1997, recorded in Volume 1720, Page 479, Real Property Records, Parker County, Texas.

6. Easement granted by R. McFarland Dixon to Devon Gas Services, LP, filed 04/04/2003, recorded in Volume 2094, Page 1408, Real Property Records, Parker County, Texas.

7. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 11/22/2004, recorded in Volume 2276, Page 466, Real Property Records, Parker County, Texas.

8. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 02/13/2005, recorded in Volume 2299, Page 938, Real Property Records, Parker County, Texas.

9. Easement granted by Estate of R. McFarland Dixon to Eagle Mountain Pipeline Company, LP, filed 04/21/2005, recorded in Volume 2319, Page 1469, Real Property Records, Parker County, Texas.

10. Easement granted by Estate of R.M. Dixon to Southwestern Gas Pipeline, Inc., filed 05/18/2005, recorded in Volume 2328, Page 1493, Real Property Records, Parker County, Texas.

11. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 07/19/2006, recorded in Volume 2454, Page 601, Real Property Records, Parker County, Texas.

12. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 240, Real Property Records, Parker County, Texas.

13. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 246, Real Property Records, Parker County, Texas.

14. Easement granted by The Dixon Water Foundation to Tri-County Electric Cooperative, Inc., filed 05/19/2008, recorded in Volume 2635, Page 862, Real Property Records, Parker County, Texas.

15. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 07/28/2008, recorded in Volume 2651, Page 405, Real Property Records, Parker County, Texas.

16. Easement rights as awarded to Brazos Electric Power Cooperative, Inc., in Cause #CIV 08-0739, certified copy filed 01/07/2009, recorded in Volume 2684, Page 531, Real Property Records, Parker County, Texas.

Modification of Easement filed 08/25/2009, recorded in Volume 2734, Page 1161, Real Property Records, Parker County, Texas.

17. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1266, Real Property Records, Parker County, Texas.

18. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1275, Real Property Records, Parker County, Texas.

19. Easement granted by Dixon Water Foundation to Crosstex North Texas Gathering, LP, filed 02/11/2011, recorded in Volume 2829, Page 14, Real Property Records, Parker County, Texas.

20. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8660, Real Property Records, Parker County, Texas.

21. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8659, Real Property Records, Parker County, Texas.

    Amendment, filed 01/22/2019, recorded in cc#2019-1501, Real Property Records, Parker County, Texas.

22. Overhead electric lines and power poles along the Northerly portion of property, as shown on survey by Charles F. Stark, RPLS #5084, dated 11/13/2018.

23. Easement rights as granted to GH Lumar JV, in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

Case 21-04051-mxm Doc 84-1 Filed 07/26/22 Entered 07/26/22 16:11:01 Page 28 of 255

**EXHIBIT C**

Liens and Indebtedness

Promissory Note (the "**Note**"), dated November 26, 2018, executed by, BM318, LLC, a Texas limited liability company payable to the order of THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation in the original principal amount of $32,946,900.00, which Note is secured by that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas of which $27,500,658.00 in principal and accrued interest is owed as of February 17, 2020, plus any and all costs and expenses of Lender as of the date of such payment.

**EXHIBIT C**

**BILL OF SALE**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF PARKER | § | |

THIS BILL OF SALE (this "**Bill of Sale**") is made and entered into as of the __ day of __________ 2020, by **BM318, LLC**, a Texas limited liability company ("**Seller**") to **THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION**, a Texas non-profit corporation ("**Buyer**").

A. Seller, by Special Warranty Deed (the "**Deed**") of even date herewith, has conveyed to Buyer the land described in Exhibit A attached hereto ("**Land**"), together with all improvements located thereon ("**Improvements**");

B. Seller and Buyer intend that Seller also convey to Buyer all of Seller's right, title, and interest in and to all matters affecting or appurtenant to the Land and Improvements.

NOW, THEREFORE, Seller, for and in consideration of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and confessed, hereby agrees as follows:

24. Seller has BARGAINED, SOLD, TRANSFERRED, ASSIGNED and CONVEYED, and by these present does hereby BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY to Buyer all of Seller's right, title, and interest in and to all of the following ("**Property**"):

(a) All the fixtures, equipment, compressors, engines, electrical systems, plumbing fixtures, systems and equipment, maintenance equipment, tools, appliances, furniture, landscaping equipment, utility lines and systems, infrastructure and all other machinery, supplies, building materials, replacement parts, and other personal property whatsoever owned by Seller or in which Seller has any interest which relates to and is used in connection with the Land or the Improvements;

(b) all easements, agreements, permits, licenses, and rights whether or not of record, appurtenant to the Land or the Improvements and the use of all strips and rights-of-way abutting, adjacent, contiguous, or adjoining the Land, which are not conveyed by the Deed;

(c) all licenses, permits, certificates of occupancy, approvals, franchises and other rights and privileges issued by any federal, state, county or municipal authority relating to the use, maintenance, or operation of the Land or the Improvements, running to, or in favor of Seller;

(d) all service, supply, and maintenance contracts, and equipment leases;

(e) all instruments, documents, chattel paper and general intangible personal property now owned or hereafter acquired by the Seller in connection with the development, disposition, ownership, leasing, and operation of the Land, the Improvements and all personal property located thereon or otherwise used in connection with the Land or the Improvements, including trademarks, patents, copyrights and other similar rights, franchises or agreements applicable thereto (including any trade styles and trade names, contract rights, brochures, manuals, lists of prospective occupants, advertising material, utility contracts, and telephone numbers);

(f) all utility deposits made (and any refunds thereof) and any and all other funds deposited as security or in escrow for the fulfillment of any of the obligations of Seller in connection with the Land or the Improvements (including all tax and insurance premiums or other escrow accounts);

(g) all plans and specifications, contracts, subcontracts and agreements, working drawings, site, elevation and as-built surveys, and reports, studies and tests of any kind, character, or description prepared for use in connection with the Land or the Improvements;

(h) all warranties and/or guarantees of manufacturers, vendors, contractors, and subcontractors relating to the construction, development or work performed or to be performed in connection with the Land or the Improvements;

(i) all claims, demands or causes of action Seller has or may have arising out of or relating to or caused by any defects in the design or construction of the Improvements against any contractors, architects or any subcontractors, suppliers, materialmen, or vendors, or of any other matters relating to the Land or the Improvements or operations thereof (but not related liabilities, none of which are assumed by Buyer);

(j) all accounts receivable, prepaid amounts, cash and deposits which belong to Seller and/or otherwise relate to the Land or the Improvements and the operation thereof, including all cash on hand and all cash and deposits in all bank accounts, all operating accounts, all reserve accounts, all lockbox accounts, all debt service reserves, all replacement reserves, all interest reserves, all deferred maintenance reserves, and all cash which remains after payment of the expenses of the Property;

(k) all accounting and financial records, correspondence, records, bills, invoices, lease files, credit reports and other documents relating to the Land or the Improvements and the operations thereof; and

(l) all unpaid awards or proceeds, including condemnation awards or insurance proceeds relating to the Land or the Improvements, and all rights to any tax refunds for taxes paid for the Land and the Improvements;

(m) and all products and proceeds of the foregoing.

25. This Bill of Sale shall be binding on Seller, its successors and assigns, and shall inure to the benefit of Buyer, its successors and assigns.

26. This Bill of Sale may be executed in one or more counterparts, each of which when so executed shall be deemed to be an original, but all of which when taken together shall constitute one and the same instrument. Delivery of an executed counterpart of this Bill of Sale by facsimile, PDF format or other electronic means shall be equally as effective as delivery of an executed original counterpart.

[Signatures on following pages.]

Case 21-04051-mxm Doc 84-1 Filed 07/26/22 Entered 07/26/22 13:01 Desc

EXECUTED as of the date first above written.

**SELLER:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________________
Tim Barton, President

**BUYER:**

THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation

By: ______________________________
Name: ______________________________
Title: ______________________________

**EXHIBIT A**
The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;
S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;
N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel

fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

Case 21-04051-mxm Doc 84-1 Filed 07/26/22 Entered 07/26/22 13:39:01 Desc

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

# EXHIBIT D

## IRC SECTION 1445 CERTIFICATION

| | |
|---|---|
| SUBJECT PROPERTY: | That certain tract of land ("**Land**"), situated in the County of Parker, Texas described by metes and bounds in Exhibit A attached hereto. |
| SELLER: | BM318, LLC, a Texas limited liability company |
| BUYER: | The Dixon Water Foundation f/k/a The Dixon Foundation, a Texas non-profit corporation |

To inform Buyer that the withholding of tax is not required upon the disposition of a U.S. real property interest by Seller, the undersigned hereby certifies the following:

1. Seller is not a foreign corporation, foreign partnership, foreign trust or foreign estate (as those terms are defined in the Internal Revenue Code and Income Tax Regulations);

2. Seller's U.S. employer identification number is _____________; and

3. Seller's office address 13901 Midway Road, Suite 102, Farmers Branch, Texas 75244; and

4. Seller is not a disregarded entity as defined in Section 1.445-2(b)(2)(iii) of the Internal Revenue Code and Income Tax Regulations.

Seller understands that this certification may be disclosed to the Internal Revenue Service by Buyer and that any false statement contained herein could be punished by fine, imprisonment, or both.

Under penalties of perjury, the undersigned declares that it has examined this certification and to the best of its knowledge and belief, it is true, correct and complete.

[Signature on following page.]

EXECUTED this ___ day of ____________________, 2020.

**SELLER**:

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________________
Tim Barton, President

**EXHIBIT A**
The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;

S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;
N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel

fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;

THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;

THENCE along the approximate centerline of said Bear Creek, as follows:

N 61°36'37" W, a distance of 807.44 feet to a point;

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

**EXHIBIT E**

**RELEASE OF BORROWER**

THIS RELEASE OF BORROWER (this "**Release of Borrower**") is made as of ____________________, 2020 by THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation ("**Lender**"). For value received, Lender hereby releases all obligations of BM318, LLC, ("**Borrower**") a Texas limited liability company, along with any and all related parties as set forth in and as related to the following:

> Promissory Note (the "**Note**"), dated November 26, 2018, executed by, BM318, LLC, ("**Borrower**") a Texas limited liability company payable to the order of THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION , a Texas non-profit corporation in the original principal amount of $32,946,900.00, which Note was secured by that certain Deed of Trust, Security Agreement and Financing Statement ("**Deed of Trust**") dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas of which $27,500,658.00 in principal and accrued interest is owed as of February 17, 2020 including as modified therein.
>
> Notwithstanding anything herein to the contrary, this Release of Borrower is not intended to be a release of, and Lender does not release Borrower from its obligations under the Deed in Escrow Agreement dated February __, 2020, executed by and among Borrower, Lender and American Escrow Company, nor does this release Borrower from any of its obligations under the Loan Documents that survive repayment thereof.

[Signature Page to Follow.]

EXECUTED this ___ day of ____________________, 2020.

**LENDER:**

THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation

By: ______________________________
Name: ______________________________
Title: ______________________________

STATE OF ____________ §
§
COUNTY OF __________ §

The foregoing Release was ACKNOWLEDGED before me this _____ day of ____________, 2020, by Robert Potts, President of the Dixon Water Foundation F/K/A The Dixon Foundation, a Texas non-profit corporation, on behalf of said corporation.

[S E A L]

______________________________
Notary Public, State of Texas

My Commission Expires:

______________________

______________________________
Printed Name of Notary Public

Notary No.: ________________________

**EXHIBIT F**

**RELEASE OF LENDER**

Reference is hereby made to that certain Deed in Escrow Agreement dated on or about February __, 2020 (the "**Agreement**"). Capitalized terms not otherwise defined herein have the meanings ascribed to such terms in the Agreement.

BM318, LLC, ("**Borrower**"), on its own behalf and on behalf of its representatives, officers, directors, agents, employees, shareholders, members, subsidiary and related companies, members, successors, and assigns (collectively, the "**Borrower Parties**"), for and in consideration of the sum of Ten and No/ 100 Dollars ($10.00) in hand paid, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and confessed, does hereby voluntarily and knowingly release and discharge THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (the "**Lender**"), and its representatives, officers, directors, agents, employees, shareholders, members, subsidiary and related companies, heirs, successors, assigns, attorneys, accountants, assets, and properties, as the case may be (all of whom are expressly made third party beneficiaries of this Release of Lender) (collectively the "**Lender Parties**"), from any and all claims, causes of action, demands, damages, causes of action, expenses, liabilities or suits whatsoever, known or unknown, anticipated or unanticipated, suspected or unsuspected, fixed, contingent, or conditional, at law or in equity, which any Borrower Party may now or hereafter have against the Lender Parties and their assets, and properties, as the case may be, if any, and irrespective of whether any such claims arise out of contract, tort, violation of law or regulations, or otherwise, that arise from any of the obligations, the exercise of any rights and remedies under the Loan Documents, or the operation of the Property, and negotiation for and execution of this Release of Lender, and any other act, omission, event or circumstance that occurred prior to the date of this Release of Lender. Notwithstanding anything herein to the contrary, this release is not intended to be a release of, and none of the Borrower Parties releases the Lender Parties from their obligations under the Agreement.

[Signature Page to Follow.]

EXECUTED this ___ day of ____________________, 2020.

**BORROWER**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By:______________________________
Tim Barton, President

STATE OF _____________ §
§
COUNTY OF ___________ §

The foregoing instrument was ACKNOWLEDGED before me this _____ day of ____________, 2020, by Tim Barton, President of TRWF, LLC, a Texas limited liability company, the managing member of BM318, LLC, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]

_______________________________________
Notary Public, State of Texas

My Commission Expires:

_______________________________________
Printed Name of Notary Public

_____________________

Notary No.: __________________________

# SPECIAL WARRANTY DEED

THE STATE OF TEXAS §

§ KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF PARKER §

THAT BM318, LLC, a Texas limited liability company ("**Grantor**"), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor, cash in hand paid by Grantee, herein below named, the receipt and sufficiency of which are hereby acknowledged and confessed, has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation (herein the "**Grantee**"), all of the following ("**Property**"):

(a) the real property (the "**Land**") located in Parker County, Texas and more particularly described in Exhibit "A" attached hereto and made a part hereof for all purposes;

(b) all buildings and other improvements of every type or character situated upon, under, through or within the Land, as well as all appurtenances, betterments and additions thereto;

(c) all of Grantor's right, title and interest in and to all strips, gores and rights-of-way abutting, adjacent, contiguous or adjoining the Land; and

(d) all and singular, the benefits, privileges, easements, tenements, hereditaments, and appurtenances to the Land, or in anywise appertaining to the Land, and any and all right, title, and interest of Grantor in and to adjacent roads, and rights-of-way.

TO HAVE AND TO HOLD the Property, together with all and singular any other rights and appurtenances thereto in anywise belonging unto Grantee, and its successors and assigns, FOREVER; and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND, all and singular, the Property, subject to the permitted encumbrances set forth in Exhibit "B" attached hereto and made a part hereof for all purposes ("**Permitted Encumbrances**") and the Indebtedness (as defined below), unto Grantee, and its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

BUT IT IS HEREBY EXPRESSLY ACKNOWLEDGED AND AGREED that:

A. This Special Warranty Deed, and the conveyances being made hereby, are being executed, delivered and accepted and shall be interpreted and construed as an absolute conveyance to Grantee of all of the right, title and interest of Grantor in and to the Property, including specifically but without limitation, any equity or rights of redemption of Grantor therein or thereto; the conveyances being made hereby are not intended as a mortgage, trust conveyance, deed of

trust, or security instrument of any kind whatsoever; and Grantor shall have no further interest (including rights of redemption) or claims in and to the Property or to the rents, issues, proceeds and profits that may be derived thereof, of any kind whatsoever;

B. Notwithstanding the above provisions hereof, all of the liens and security interests (hereinafter collectively called the "**Liens**") that evidence or secure the payment of the indebtedness owned and held by Grantee, said indebtedness being described in Exhibit "C" attached hereto (the "**Indebtedness**"), including, without implied limitation, (i) the liens and security interests described in Exhibit C attached hereto, and (ii) other liens and security interests related to the foregoing, are NOT RELEASED or RELINQUISHED in any manner or respect whatsoever, which Liens shall remain valid and continuous and in full force and effect, until the earlier to occur of (a) the release of the Liens by written instrument (the "**Release**") executed by Grantee, or its successors and assigns, and recorded in the applicable real estate records, which Release may be made as, if and when Grantee, or its successors and assigns, shall determine in the exercise of its sole discretion; or (b) the expiration of one hundred eighty (180) days following the date hereof if, during such one hundred eighty (180) days, Grantee has not initiated any foreclosure proceedings related to such Liens or Indebtedness; provided, if such one hundred eighty (180) day period ends prior to the expiration of the thirty (30) day contractual cure period agreed upon by Grantee and Grantor for the benefit of Grantor, then the one hundred eighty (180) day period will be extended until sixty (60) days after the expiration of such cure period.

C. Neither Grantor nor Grantee intend that there be, and there shall not in any event be, a merger of any of the Liens with the title or other interest of Grantee by virtue of this conveyance and the parties expressly provide that each such interest in the Liens on one hand and title on the other be, and remain at all times, SEPARATE and DISTINCT;

D. The title and other interest of Grantee in the Property acquired under this Special Warranty Deed will not merge with the liens and security interests of Grantee in the Property under the Liens and for purposes of priority as between (i) intervening or inferior liens, claims or encumbrances on or against the Property, and (ii) the Liens, any and all rights of Grantee to exercise its remedies of foreclosure by private power of sale pursuant to nonjudicial foreclosure or by judicial foreclosure of any of the Liens or any other remedies to enforce the Liens are expressly preserved hereby and for purposes of limitations and any other applicable time bar defenses, the same are hereby expressly extended;

E. The priority of the Liens is intended to be and shall remain in full force and effect and nothing herein or in any instruments executed in connection herewith shall be construed to subordinate the priority of the Liens to any other liens or encumbrances whatsoever;

F. If the conveyance of the Property from Grantor to Grantee is voided, avoided, or set aside for any reason whatsoever, then (i) if the Liens shall have been previously released in whole or in part, the same shall be automatically revived and reinstated; (ii) Grantee shall have the right to foreclose the Liens and take such other action as is permitted thereby or pursuant to the other documents evidencing the Liens to enforce the Liens; and (iii) all costs incurred by Grantee in connection with this Special Warranty Deed and any other cost of enforcement of the Liens shall be deemed a part of the Indebtedness secured by the Liens and shall be due and payable by Grantor upon demand of Grantee.

G. Grantor hereby acknowledges that, after the recording of conveyance hereunder, among other changes of ownership named therein, Grantor shall have no further interest or claim with respect to the Property including, without limitation, the rights to the following:

1. the rights to manage the Property;

2. the right to occupy or use the Property in any manner;

3. the right to receive any revenues from the Property;

4. the right to receive any proceeds from the sale, transfer, financing or operation of the Property; or

5. the right to repurchase, redeem or regain any right, title or interest in the Property or any portion thereof.

H. Grantor is duly authorized to execute and deliver this Special Warranty Deed and any and all other related documents and instruments, and to consummate the transactions and perform the obligations contemplated hereby and thereby.

I. This Special Warranty Deed constitutes the legal, valid and binding obligation of Grantor enforceable in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws or by legal or equitable principles relating to or limiting rights of creditors generally. Neither the execution and delivery of this Special Warranty Deed, nor the consummation of the transactions contemplated hereby will (a) violate any judgment, order, ruling, injunction, decree or award of any court, administrative agency or governmental body against, or binding upon, Grantor; or (b) to Grantor's knowledge, constitute a violation by Grantor of any law or regulation of any jurisdiction as such law or regulation relates to or affects Grantor or its properties or businesses.

J. All representations, warranties, covenants and agreements of the parties made in this Special Warranty Deed shall survive the execution and delivery hereof.

K. Grantor agrees not to take any action, or cause any action to be taken, to attempt to modify, rescind, revoke, avoid or otherwise invalidate this Special Warranty Deed or the transfer of any property or other consideration received by Grantee hereunder or provided for herein. It is expressly agreed and understood and the parties intend that all payments, property and other consideration paid or conveyed to Grantee by Grantor hereunder shall be final and forever.

L. This Special Warranty Deed and all documents and instruments to be executed and delivered in connection herewith and therewith and all information furnished to Grantee, is made and furnished in good faith, for value and valuable consideration, and have not been made under or induced by any fraud, duress, or undue influence exercised by Grantee or any other person.

M. If any provision of this Special Warranty Deed is held to be illegal, invalid, or unenforceable, such provision shall be fully severed from this Special Warranty Deed. This Special Warranty Deed shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part hereof, and the remaining provisions shall remain in full

force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Special Warranty Deed. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically, as a part of this Special Warranty Deed, a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

N. This Special Warranty Deed shall be binding upon and shall inure to the benefit of the parties hereto and their respective heirs, successors, and assigns.

[Signatures on following pages.]

EXECUTED as of the 2nd day of July, 2020.

**GRANTOR:**

BM318, LLC,
a Texas limited liability company

By: TRWF, LLC
a Texas limited liability company
its managing member

By: ______________________
Tim Barton, President

STATE OF TEXAS §
§
COUNTY OF DALLAS §

The foregoing instrument was ACKNOWLEDGED before me this 18 day of February, 2020, by Tim Barton, President of TRWF, LLC, a Texas limited liability company, the managing member of BM318, LLC, a Texas limited liability company, on behalf of said limited liability company.

[S E A L]

______________________
Notary Public, State of Texas

My Commission Expires:
09/24/2022

BELLA D KHUSAL
Printed Name of Notary Public

Notary No.: 131734480

NOTARY PUBLIC STATE OF TEXAS
Bella D Khusal
My Commission Expires
09/24/2022
ID No. 131734480

Attachments:

Exhibit A - Land
Exhibit B - Permitted Encumbrances
Exhibit C - Liens and Indebtedness

AFTER RECORDING RETURN TO:
The Dixon Water Foundation f/k/a/ The Dixon Foundation
Attention: Robert Potts
P. O. Box 177
Marfa, Texas 79843

## EXHIBIT A

The Land

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;
S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;

N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

**BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:**

**BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel**

**fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;**

**THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;**

**THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";**

**THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;**

**THENCE along the approximate centerline of said Bear Creek, as follows:**

**N 61°36'37" W, a distance of 807.44 feet to a point;**

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

**EXHIBIT B**
Permitted Encumbrances

1. Easement granted by Aleene, Princess of Liechtenstein to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 418, Real Property Records, Parker County, Texas.

2. Easement granted by Jane McFarland Dixon to James P. Dunigan, Inc., filed 12/08/1976, recorded in Volume 657, Page 421, Real Property Records, Parker County, Texas.

3. Easement granted by Aleene McFarland Liechtenstein, et al to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 437, Real Property Records, Parker County, Texas.

4. Easement granted by Aleene McFarland Liechtenstein to Southwestern Gas Pipeline, Inc., filed 05/03/1978, recorded in Volume 723, Page 630, Real Property Records, Parker County, Texas.

5. Easement granted by R. McFarland Dixon to Tri-County Electric Cooperative, Inc., filed 01/26/1997, recorded in Volume 1720, Page 479, Real Property Records, Parker County, Texas.

6. Easement granted by R. McFarland Dixon to Devon Gas Services, LP, filed 04/04/2003, recorded in Volume 2094, Page 1408, Real Property Records, Parker County, Texas.

7. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 11/22/2004, recorded in Volume 2276, Page 466, Real Property Records, Parker County, Texas.

8. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 02/13/2005, recorded in Volume 2299, Page 938, Real Property Records, Parker County, Texas.

9. Easement granted by Estate of R. McFarland Dixon to Eagle Mountain Pipeline Company, LP, filed 04/21/2005, recorded in Volume 2319, Page 1469, Real Property Records, Parker County, Texas.

10. Easement granted by Estate of R.M. Dixon to Southwestern Gas Pipeline, Inc., filed 05/18/2005, recorded in Volume 2328, Page 1493, Real Property Records, Parker County, Texas.

11. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 07/19/2006, recorded in Volume 2454, Page 601, Real Property Records, Parker County, Texas.

12. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 240, Real Property Records, Parker County, Texas.

13. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 246, Real Property Records, Parker County, Texas.

14. Easement granted by The Dixon Water Foundation to Tri-County Electric Cooperative, Inc., filed 05/19/2008, recorded in Volume 2635, Page 862, Real Property Records, Parker County, Texas.

15. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 07/28/2008, recorded in Volume 2651, Page 405, Real Property Records, Parker County, Texas.

16. Easement rights as awarded to Brazos Electric Power Cooperative, Inc., in Cause #CIV 08-0739, certified copy filed 01/07/2009, recorded in Volume 2684, Page 531, Real Property Records, Parker County, Texas.

    Modification of Easement filed 08/25/2009, recorded in Volume 2734, Page 1161, Real Property Records, Parker County, Texas.

17. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1266, Real Property Records, Parker County, Texas.

18. Easement granted by The Dixon Water Foundation to Oneok Arbuckle Pipeline, LLC, filed 04/06/2009, recorded in Volume 2703, Page 1275, Real Property Records, Parker County, Texas.

19. Easement granted by Dixon Water Foundation to Crosstex North Texas Gathering, LP, filed 02/11/2011, recorded in Volume 2829, Page 14, Real Property Records, Parker County, Texas.

20. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8660, Real Property Records, Parker County, Texas.

21. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8659, Real Property Records, Parker County, Texas.

    Amendment, filed 01/22/2019, recorded in cc#2019-1501, Real Property Records, Parker County, Texas.

22. Overhead electric lines and power poles along the Northerly portion of property, as shown on survey by Charles F. Stark, RPLS #5084, dated 11/13/2018.

23. Easement rights as granted to GH Lumar JV, in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

# EXHIBIT C

Liens and Indebtedness

Promissory Note (the "**Note**"), dated November 26, 2018, executed by, BM318, LLC, a Texas limited liability company payable to the order of THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION, a Texas non-profit corporation in the original principal amount of $32,946,900.00, which Note is secured by that certain Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas of which $27,500,658.00 in principal and accrued interest is owed as of February 17, 2020, plus any and all costs and expenses of Lender as of the date of such payment.

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

Lila Deakle

**202019524**
**07/02/2020 10:55:20 AM**
**Fee: $74.00**
**Lila Deakle, County Clerk**
**Parker County, Texas**
**DEED**

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |
| **BM318, LLC,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **ADVERSARY PROCEEDING** |
| **THE DIXON WATER FOUNDATION,** | § | **NO. ____________________** |
| **Defendant.** | § | |

**COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND/OR FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548 AND 550**

Comes now BM318, LLC, debtor and plaintiff herein ("Plaintiff") and files this its Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer, and would show as follows:

## I. NATURE OF THE CASE

1. The Debtor filed its voluntary petition commencing its Chapter 11 bankruptcy case on September 1, 2020.

2. This adversary proceeding is commenced pursuant to sections 547, 548 and 550 of chapter 11 of title 11 of the United States Code ("Bankruptcy Code") to avoid and recover from

Defendant, or from any other person or entity for whose benefit the transfer was made, preferential and/or fraudulent transfers of property made by Debtor that occurred during the 90-day or two-year period, respectively, prior to the commencement of the Debtor's bankruptcy case.

## II. JURISDICTION AND VENUE

3. This Court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 Case pending in the United States Bankruptcy Court for the Northern District of Texas ("Court"), pursuant to 28 U.S.C. §§ 157 and 1334(b).

4. This adversary proceeding is a "core" proceeding to be heard and determined by this Court, pursuant to 28 U.S.C. § 157(b)(2).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

6. The statutory and legal predicates for the relief sought herein are sections 547, 548 and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

7. Pursuant to Bankruptcy Rule 7008, the Plaintiff consents to entry of final orders or judgments by this Court.

## III. PARTIES

8. The Plaintiff is a limited liability company organized under the laws of the State of Texas.

9. The Defendant is a non-profit corporation organized under the laws of the State of Texas, with offices located at 4528 County Road 398, Decatur, Texas 76234 and at P.O. Box 177, Marfa, Texas 79843. The Defendant may also be served with process by first class U.S. mail at the address of its registered agent, David M. Rosenberg, 1722 Routh Street, Suite 1500, Dallas,

Texas 75201 or at the offices of the Defendant's President, Robert Potts, at either of the aforementioned addresses in Decatur and Marfa, Texas.

## IV. FACTS

10. On November 26, 2018, the Plaintiff, pursuant to a Farm and Ranch Contract, purchased from the Defendant 2055.70 acres of unimproved real property in Parker County, Texas for $35,461,480.00 known as Bear Creek Ranch. The Plaintiff paid $2,100,000.00 cash at closing and Defendant financed the remaining $32,946,900.00 over five years pursuant to a loan agreement (the "Loan") and promissory note (the "Note") maturing on November 26, 2023 which was secured by a Deed of Trust, Security Agreement and Financing Statement (the "Deed of Trust") on the 2055.70 acres save and except a 118.34 acre tract (which remained unencumbered) recorded under document number 2025-262749 in the real property records of Parker County, Texas.

11. During the term of the Note, Plaintiff was required to make quarterly interest payments based on annual rate of 5.5% along with a principal reduction payment of $6,494,000.00 on May 25, 2019.

12. Between July 26, 2019 and February 27, 2020, Plaintiff and Defendant entered into a series of Loan modification agreements under which certain payment deadlines were extended and under which Plaintiff was to sell certain parcels of land from 1,937.36 acres that were encumbered by the Deed of Trust from which payments were made to Defendant on the accrued interest and/or principal as follows:

a. On September 11, 2019, 381.66 acres were sold with $7,081,004 being paid to Defendant consisting of $6,494,000 in principal and $587,004 in interest.

b. January 30, 2020, 23.95 acres were sold with $407,150 of accrued interest being paid to Defendant leaving Plaintiff with 1,531.75 acres encumbered by the Deed of Trust ("Remaining Land").

13. The last modification of the Loan occurred on February 27, 2020 which included a Deed in Escrow Agreement (the "Loan Amendment") which extended the deadline to remit the accrued interest and principal balance to July 1, 2020. The Plaintiff executed a special warranty deed to Remaining Land (the "Deed") that was to be held in escrow unless and until Plaintiff defaulted upon which the Defendant would be permitted to record the deed in satisfaction of Plaintiff's obligations to Defendant.

14. On June 26, 2020, in anticipation of Defendant recording the Deed, Defendant and JMJ Development, LLC ("JMJ"), an entity related to Plaintiff, entered into a "Real Estate Sales Agreement" ("Buyback Contract") for the purchase of the Remaining Land from Defendant for the purchase price of $27,500,658.00 which was to close on August 31, 2020. Plaintiff had 3 options to extend the Closing Date by thirty (30) days each in exchange for depositing $50,000 with the title company for each option. Under the Buyback Contract, Seller was to provide secondary financing at closing equal to $7,500,000 under a five year promissory note at 12% interest for pre-development, development, and other business purposes.

15. On July 1, 2020, Plaintiff was unable to payoff the Note and amounts owed equal to $27,500,658.00 as modified and on July 2, 2020, the Defendant recorded the Deed pursuant to the Deed in Escrow Agreement, thus transferring the Property to the Defendant.

16. After exercising one of the options to extend the Closing under the Buyback Contract, Defendant asserted a default and terminated the Buyback Contract on or about October 15, 2020. Shortly thereafter, Defendant sold a portion of the Encumbered Land to the

broker (or a related person or entity) who had represented Plaintiff under the original purchase agreement to acquire the 2055 acres from Defendant.

## V. CLAIMS FOR RELIEF

### COUNT I

### (Avoidance of Preferential Transfer – 11 U.S.C. § 547)

17. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

18. During the 90-day period prior to the filing of the Plaintiff's bankruptcy case (the "Preference Period"), pursuant to the Deed the Debtor transferred to the Defendant the Property (the "Transfer"), which had an approximate value of $27.5 million or more.

19. The Transfer constituted a transfer of an interest in property of the Debtor.

20. During the Preference Period, Defendant was a creditor at the time of the Transfer by virtue of the Loan and Note, for which the Plaintiff was obligated to pay.

21. The Transfer was to or for the benefit of a creditor within the meaning of Section 547(b)(1) of the Bankruptcy Code, because the Transfer either reduced or fully satisfied a debt or debts then owed by the Plaintiff.

22. The Transfer was made for, or on account of, an antecedent debt owed by the Plaintiff to Defendant before such Transfer was made, as asserted by Defendant and memorialized in the Deed in Escrow Agreement, which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the Plaintiff.

23. The Transfer was made while the Plaintiff was insolvent. Plaintiff is entitled to the presumption of insolvency for the Transfer made during the Preference Period pursuant to Section 547(f) of the Bankruptcy Code.

24. The Transfer was made during the Preference Period.

25. As a result of the Transfer, Defendant received more than Defendant would have received if: (i) the Plaintiff's bankruptcy case was under chapter 7 of the Bankruptcy Code; (ii) the Transfer had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code.

26. In accordance with the foregoing, the Transfer is avoidable pursuant to Section 547(b) of the Bankruptcy Code.

27. Defendant was the initial transferee of the Transfer.

28. Based upon the foregoing, Plaintiff is entitled to an order and judgment against Defendant: (i) avoiding the Transfer under section 547(b) of the Bankruptcy Code; and (ii) entitling Plaintiff to recover the Transfer or the value of the Transfer from Defendant under Section 550(a) of the Bankruptcy Code, together with the award of pre- and post-judgment interest thereon from the date of demand to the date of payment or other satisfaction of such order and judgment and the costs of this action.

**COUNT II**

**(Avoidance of Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(B))**

29. Plaintiff hereby incorporates all previous allegations as though fully set forth herein.

30. To the extent that the Transfer was not on account of an antecedent debt, the Plaintiff did not receive reasonably equivalent value in exchange for such transfer ("Potentially Fraudulent Transfer"); and

a. The Plaintiff was insolvent on the date that the Transfer(s) was made or became insolvent as a result of the Transfer(s);

b. The Plaintiff was engaged in a business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Plaintiff was an unreasonably small capital; or

c. The Plaintiff intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as such debts matured.

31. The Potentially Fraudulent Transfer is avoidable pursuant to Section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT III**

**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

32. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

33. Plaintiff is entitled to avoid the Transfer and any Potentially Fraudulent Transfer pursuant to Sections 547 and 548 of the Bankruptcy Code (collectively, "Avoided Transfer").

34. Defendant was the initial transferee of the Avoided Transfer or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoided Transfer was made.

35. Pursuant to Section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover the Avoided Transfer from Defendant, plus the costs of this action.

**COUNT IV**

**(Disallowance of All Claims – 11 U.S.C. § 502(d) and (j))**

36. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein.

37. Defendant is an entity from which property is recoverable under Section 550 of the Bankruptcy Code.

38. Defendant is a transferee of the Avoided Transfer avoidable under Sections 547 and/or 548 of the Bankruptcy Code.

39. Defendant has not turned over the Property or paid the value of the Avoided Transfer, for which Defendant is liable under Section 550 of the Bankruptcy Code.

40. Pursuant to Section 502(d) of the Bankruptcy Code, any and all claims of Defendant against the Plaintiff's chapter 11 estate must be disallowed until such time as Defendant turns over the Property to the Plaintiff or pays to Plaintiff an amount equal to the value of the Avoided Transfer, plus interest thereon and costs.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant relief and enter a judgment against Defendant as follows:

A. that the Avoided Transfer avoidable under Sections 547 and/or 548 of the Bankruptcy Code, be avoided;

B. that the Avoided Transfer, to the extent that it is avoided pursuant to Sections 547 and/or 548 of the Bankruptcy Code, be recovered by Plaintiff pursuant to Section 550 of the Bankruptcy Code;

C. that any and all claims held by Defendant be disallowed in accordance with Section 502(d) of the Bankruptcy Code until Defendant satisfies the judgment;

D. that pre-judgment interest be awarded at the maximum legal rate running from the date of filing of the Complaint to the date of judgment herein;

E. that post-judgment interest be awarded at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

F. that Defendant be required to turn over the Property and/or pay forthwith the judgment amount awarded in favor of Plaintiff; and

G. that the Plaintiff be granted such other and further relief as the Court deems just and proper.

Dated: August 10, 2021.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com

ATTORNEYS FOR BM318, LLC, PLAINTIFF AND DEBTOR

Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

**ATTORNEYS FOR THE DIXON WATER FOUNDATION**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor. | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |

**DEFENDANT, THE DIXON WATER FOUNDATION'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND/OR FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548 AND 550 AND COUNTERCLAIM**

TO THE HONORABLE MARK X. MULLIN, U.S. BANKRUPTCY JUDGE:

COMES NOW Defendant, The Dixon Water Foundation, a Texas non-profit corporation ("Dixon"), by and through its undersigned counsel, and hereby files its *Answer and Affirmative*

*Defenses and Counterclaim* (the "Answer") to the *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550* [Docket No. 1] (the "Complaint") filed by BM318, LLC ("BM318," the "Debtor," or the "Plaintiff"), and answers as follows in correspondingly titled and numbered paragraphs[1]:

**I. NATURE OF THE CASE**

1. The allegations set forth in paragraph 1 of the Complaint are admitted.

2. The allegations set forth in paragraph 2 of the Complaint constitute BM318's summary of the Complaint, which Complaint speaks for itself. To the extent that a response is required, Dixon denies the allegations set forth in paragraph 2 of the Complaint, denies that BM318 is entitled to any of the relief requested in the Complaint and restates and reincorporates paragraphs 1 and 3 – 63 of its Answer as if fully set forth herein.

**II. JURISDICTION AND VENUE**

3. The allegations set forth in paragraph 3 of the Complaint are admitted.

4. The allegations set forth in paragraph 4 of the Complaint are admitted.

5. The allegations set forth in paragraph 5 of the Complaint are admitted.

6. The allegations set forth in paragraph 6 of the Complaint set forth what BM318 purports are the statutory and legal predicates for the relief requested in the Complaint, therefore, no response is necessary. To the extent that a response is required, Dixon denies the allegations set forth in paragraph 6 of the Complaint and denies that BM318 is entitled to any of the relief requested in the Complaint.

7. The allegations set forth in paragraph 7 of the Complaint require no response as they constitute BM318's consent and, therefore, cannot be admitted or denied. To the extent that

[1] Dixon incorporates the Complaint's headings solely for ease of reference. Dixon expressly denies all factual and legal contentions within all headings and sub-headings of the Complaint.

a response is required, Dixon denies the allegations set forth in paragraph 7. Pursuant to Bankruptcy Rule 7008, Dixon consents to the entry of final orders or judgments by the Bankruptcy Court.

## III. PARTIES

8. The allegations set forth in paragraph 8 of the Complaint are admitted.

9. The allegations set forth in paragraph 9 of the Complaint are admitted.

## IV. FACTS

10. Answering paragraph 10 of the Complaint, the documents speak for themselves. Otherwise, paragraph 10 is denied to the extent the allegations seek to paraphrase or characterize the contents of such documents inconsistent with such documents.

11. Answering paragraph 11 of the Complaint, the documents speak for themselves. Otherwise, paragraph 11 is denied to the extent the allegations seek to paraphrase or characterize the contents of the written documents inconsistent with such documents.

12. Answering paragraph 12 of the Complaint including subparts a. and b. of paragraph 12 of the Complaint the documents speak for themselves. Otherwise, paragraph 12 including subparts a. and b. of paragraph 12 of the Complaint is denied to the extent the allegations seek to paraphrase or characterize the contents of the written documents inconsistent with such documents.

13. Answering paragraph 13 of the Complaint, the documents speak for themselves. Otherwise, paragraph 13 is denied to the extent the allegations seek to paraphrase or characterize the contents of the written documents inconsistent with such documents.

14. Answering paragraph 14 of the Complaint, the documents speak for themselves. Otherwise, paragraph 14 is denied to the extent the allegations seek to paraphrase or characterize the contents of the written documents inconsistent with such documents.

15. Answering paragraph 15 of the Complaint, the documents speak for themselves. Otherwise, paragraph 15 is denied to the extent the allegations seek to paraphrase or characterize the contents of the written documents inconsistent with such documents.

16. Answering paragraph 16 of the Complaint, the documents speak for themselves. Otherwise, paragraph 16 is denied to the extent the allegations seek to paraphrase or characterize the contents of the written documents inconsistent with such documents.

## V. CLAIMS FOR RELIEF

### COUNT I

### (Avoidance of Preferential Transfer – 11 U.S.C. § 547)

17. With regard to the allegations set forth in paragraph 17 of the Complaint, Dixon restates and reincorporates paragraphs 1-16 of its Answer as if fully set forth herein.

18. Paragraph 18 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 18 of the Complaint.

19. Paragraph 19 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 19 of the Complaint.

20. Paragraph 20 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 20 of the Complaint.

21. Paragraph 21 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 21 of the Complaint.

22. Paragraph 22 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 22 of the Complaint.

23. Paragraph 23 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 23 of the Complaint.

24. Paragraph 24 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 24 of the Complaint.

25. The allegations set forth in paragraph 25 of the Complaint are denied.

26. The allegations set forth in paragraph 26 of the Complaint are denied.

27. Paragraph 27 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 27 of the Complaint.

28. The allegations set forth in paragraph 28 of the Complaint are denied.

**COUNT II**

**(Avoidance of Fraudulent Conveyance – 11 U.S.C. §§ 548(a)(1)(B))**

29. With regard to the allegations set forth in paragraph 29 of the Complaint, Dixon restates and reincorporates paragraphs 1-28 of its Answer as if fully set forth herein.

30. The allegations set forth in the introductory paragraph 30 of the Complaint are denied.

a. Paragraph 30.a. of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 30.a. of the Complaint.

b. Notwithstanding a reasonable investigation, Dixon lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 30.b. of the Complaint, and therefore, denied.

c. Notwithstanding a reasonable investigation, Dixon lacks sufficient knowledge or information to form a belief as to the truth of the allegations set forth in paragraph 30.c. of the Complaint, and therefore, denied.

31. The allegations set forth in paragraph 31 of the Complaint are denied.

**COUNT III**

**(Recovery of Avoided Transfers – 11 U.S.C. §§ 550)**

32. With regard to the allegations set forth in paragraph 32 of the Complaint, Dixon restates and reincorporates paragraphs 1-31 of its Answer as if fully set forth herein.

33. The allegations set forth in paragraph 33 of the Complaint are denied.

34. Paragraph 34 of the Complaint states legal conclusions that do not require a response. To the extent a response is required, Dixon denies the allegations in paragraph 34 of the Complaint.

35. The allegations set forth in paragraph 35 of the Complaint are denied.

**COUNT IV**

**(Disallowance of All Claims – 11 U.S.C. § 502(d) and (j))**

36. With regard to the allegations set forth in paragraph 36 of the Complaint, Dixon restates and reincorporates paragraphs 1-35 of its Answer as if fully set forth herein.

37. The allegations set forth in paragraph 37 of the Complaint are denied.

38. The allegations set forth in paragraph 38 of the Complaint are denied.

39. The allegations set forth in paragraph 39 of the Complaint are denied.

40. The allegations set forth in paragraph 40 of the Complaint are denied.

## VI. PRAYER FOR RELIEF

41. Dixon denies the allegations and all subparts (A-G) contained in the wherefore clause of the Complaint, denies that Plaintiff is otherwise entitled to relief as against Dixon, and strict proof is demanded thereof.

## VII. AFFIRMATIVE DEFENSES

Dixon asserts the following affirmative defenses listed below. Dixon reserves the right to amend its Answer, including asserting additional defenses and counterclaims consistent with the facts discovered in the case. All of the following affirmative defenses are made subject to and without waiving any prior answers or defenses and without altering the burden of proof in this matter.

42. Failure to State a Claim. The Complaint fails to state a claim against Dixon upon which relief can be granted because BM318 cannot establish a prima facie case under 11 U.S.C. §§ 547, 548, 550, 502(d) and/or 502(j).

43. Contemporaneous Exchange for New Value. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by 11 U.S.C. § 547(c)(1).

44. Ordinary Course. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by 11 U.S.C. § 547(c)(2).

45. Setoff/Recoupment. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrines of setoff and/or recoupment, including but not limited to setoff rights of Dixon under 11 U.S.C. § 553.

46. Estoppel. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrine of estoppel.

47. Waiver / Release. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrines of waiver and/or release.

48. Limitations / Laches. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrines of limitations and/or laches.

49. Unclean Hands. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrine of unclean hands.

50. Preclusion. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by principles of preclusion, collateral estoppel, law of the case, and/or *res judicata*.

51. Ratification. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrine of ratification.

52. Single Satisfaction. BM318 may only receive a single satisfaction under 11 U.S.C. § 550(d).

53. Consent. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the doctrine of consent.

54. Reasonably Equivalent Value. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, because BM318 received reasonably equivalent value in exchange for the transfer.

55. Accord and Satisfaction. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by the affirmative defense of accord and satisfaction.

56. For Value and in Good Faith. BM318's causes of action and requests for relief set forth in the Complaint are barred, in whole or in part, by 11 U.S.C. § 548(c).

57. BM318 is estopped from asserting the claims in the Complaint because the transactions complained of benefitted BM318 and were affirmed and completed with BM318's knowledge and its agreement and acquiescence.

58. To the extent that the transfer is avoided, in whole or in part, Dixon possesses a lien on the property pursuant to its Loan Documents, as such term is defined below, and the *Debtor's First Amended Plan of Reorganization Dated November 19, 2020* [Bankruptcy Case Docket No. 39], as modified by the *First Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 79] and the *Third Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 100] (collectively, the "Plan"), as confirmed by the *Order Confirming Debtor's First Amended Plan of Reorganization Dated November 19, 2020, as Modified* [Bankruptcy Case Docket No. 106] (the "Confirmation Order"). BM318 is bound by the Plan and Confirmation Order pursuant to the doctrines of res judicata, collateral estoppel, law of the case, judicial estoppel, or other doctrines of preclusion.

59. To the extent the Court determines that BM318 is entitled to avoid the transfer of the property, Dixon is entitled to a corresponding order deeming Dixon to be the holder of an allowed claim pursuant to 11 U.S.C. § 502(h).

60. Pursuant to 11 U.S.C. § 548(c), to the extent that the transfer is avoided, in whole or in part, Dixon has a lien on or may retain any interest transferred or may enforce any obligation incurred to the extent that Dixon gave value to BM318 in exchange for such transfer or obligation.

61. To the extent that the transfer is avoided, in whole or in part, Dixon has a lien on the property pursuant to 11 U.S.C. § 550(e).

62. BM318 has not established any right, and has not pled any statutory or factual basis for, the recovery of interest, costs or fees. In fact, the confirmed Plan, as modified by the *Debtor's Third Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 100], and the parties' underlying Loan Documents (as defined in the Plan, and further defined below), expressly provide that Defendant is entitled to a corresponding lien securing its recovery of all fees, costs and expenses of enforcement of its rights under the Loan Documents in the event of any recovery by the Plaintiff, and Defendant expressly counterclaims for such fees and costs herein and expended in defense of the Complaint and/or this litigation.

63. BM318's cause of action for the avoidance and recovery of an allegedly fraudulent transfer is barred by virtue of the binding and enforceable Deed in Escrow Agreement (as defined herein), which establishes that any transfer alleged by the Debtor was made in the performance of the Debtor's binding and enforceable contractual and legal obligations arising under the Deed in Escrow Agreement, and therefore, the Debtor received equivalent value constituted by the discharge of those obligations, as a matter of law.

## VII. COUNTERCLAIM

Dixon hereby asserts the following counterclaim against BM318:

### A. Parties

1. Dixon is a Texas non-profit corporation.

2. BM318 has already appeared before this Court by virtue of the filing of the Complaint and may be served by serving its counsel of record in this Adversary Proceeding, Joyce W. Lindauer, Kerry S. Alleyne, and Guy H. Holman, Joyce W. Lindauer Attorney, PLLC, 1412 Main Street, Suite 500, Dallas, Texas 75202.

**B. Jurisdiction and Venue**

3. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

**C. Facts**

5. Prior to the Petition Date, BM318, as borrower, was by its own admission in material default of its obligations owed to Dixon, its secured lender. At that time, in order to induce Dixon not to enforce its rights and remedies, including but not limited to foreclosure upon the Property, BM318 requested and proposed that Dixon agree to forbear from exercising its rights and remedies.

6. On or about February 27, 2020, Dixon, in its capacity as Lender, and the Debtor in its capacity as Borrower, entered into their certain Deed in Escrow Agreement (the "Deed in Escrow Agreement") with American Escrow Company as escrow agent. The property the subject of the Deed in Escrow Agreement is defined as follows: approximately 1,531.75 acres located in Parker County, Texas, as more particularly described in Exhibit A attached to the Special Warranty Deed between the Debtor as Grantor and Dixon as Grantee (the "Special Warranty Deed"), filed under Document Number 202019524 with the Official Public Records of Parker County, Texas (the "Property").

7. The Debtor intentionally induced Dixon to forebear from enforcing its rights expressly by acknowledging, representing and agreeing that Dixon's forbearance provided

valuable consideration to and for the Debtor in exchange for the Deed in Escrow Agreement granted by the Debtor, and that such Deed in Escrow Agreement is enforceable, including by specific performance.

8. "Loan Documents" are defined to include that certain (i) Promissory Note (as amended or modified, the "Note"), dated November 26, 2018, executed by the Debtor payable to the order of Dixon in the original principal amount of $32,946,900.00 (the "Loan"), (ii) Deed of Trust, Security Agreement and Financing Statement dated as of November 26, 2018 and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas (the "Deed of Trust"), (iii) Loan Modification and Forbearance Agreement dated July 26, 2019, executed by the Debtor and Dixon (the "First Modification"), (iv) Second Loan Modification Agreement dated October 1, 2019, executed by the Debtor and Dixon (the "Second Modification"), (v) Third Loan Modification Agreement dated December 17, 2019, executed by the Debtor and Dixon (the "Third Modification"), (vi) Fourth Loan Modification Agreement dated January 8, 2020, executed by the Debtor and Dixon (the "Fourth Modification"), (vii) Fifth Loan Modification Agreement dated January 31, 2020, executed by the Debtor and Dixon (the "Fifth Modification"), (viii) Deed in Escrow Agreement dated February 27, 2020, executed by the Debtor, Dixon and American Escrow Company (the "Deed in Escrow Agreement"), and (ix) Special Warranty Deed filed under Document Number 202019524 with the Official Public Records of Parker County, Texas (the "Special Warranty Deed").

9. On August 2, 2021, the Court entered the Confirmation Order.

10. The *Third Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 100] provides in pertinent part as follows:

> If the Transfer of the Property from the Debtor to Dixon is voided, avoided, or set aside for any reason whatsoever, in whole, or in part, then (a) all of the liens and security interests

(the "Liens") that evidenced or secured the payment of the indebtedness owned and held by Dixon, said indebtedness being described in Exhibit C attached to the Special Warranty Deed (the "Indebtedness"), including, without implied limitation, (i) the liens and security interests described in Exhibit C attached to the Special Warranty Deed, and (ii) other liens and security interests related thereto, shall be automatically revived and reinstated as part of such action; (b) Dixon shall have the right to exercise all of its rights and remedies under the Loan Documents; (c) as determined by a court of competent jurisdiction, the Property shall be subject to the legal, equitable and contractual rights and claims of Dixon pursuant to the Loan Documents between the Debtor and Dixon; and (d) all costs incurred by Dixon in connection with enforcement of the Liens may be deemed part of the Indebtedness secured by the Liens.

11. Pursuant to the Plan and Confirmation Order, to the extent the transfer of the Property is avoided, in whole or in part, then (a) all of the liens and security interests (the "Liens") that evidenced or secured the payment of the indebtedness owned and held by Dixon, said indebtedness being described in Exhibit C attached to the Special Warranty Deed (the "Indebtedness"), including, without implied limitation, (i) the liens and security interests described in Exhibit C attached to the Special Warranty Deed, and (ii) other liens and security interests related thereto, shall be automatically revived and reinstated as part of such action.

**D. Causes of Action**

**Count 1: Section 548(c)**

12. Dixon hereby incorporates the preceding paragraphs as if fully set forth herein.

13. Dixon took the Property for value and in good faith.

14. Dixon gave value to BM318 in exchange for the transfer of the property.

15. To the extent that the Court determines that the transfer of the property is avoidable, Dixon requests that the Court find that Dixon has a lien on the property or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that Dixon gave value to BM318 in exchange for such transfer or obligation.

16. Dixon also holds such corresponding lien and claim rights under the above-cited terms of the Plan and hereby makes its corresponding defensive counterclaim for any and all such rights and claims, including but not limited to its attorney's fees, fees and costs of enforcing and defending any and all Loan Documents.

**Count 2: Section 550(e)**

17. Dixon hereby incorporates the preceding paragraphs as if fully set forth herein.

18. Dixon is a good faith transferee.

19. To the extent that the Court determines that BM318 may recover from Dixon under section 550(a) of the Bankruptcy Code, Dixon requests that the Court find that Dixon has a lien on the property recovered to secure the lesser of: (a) the cost to Dixon of any improvement made after the transfer, less the amount of any profit realized by or accruing to Dixon from such property; and (b) any increase in the value of such property as a result of such improvement, of the property transferred.

WHEREFORE, PREMISES CONSIDERED, Dixon respectfully requests that (i) the Complaint be dismissed in its entirety with prejudice; (ii) judgment be entered in Dixon's favor; (iii) BM318 take nothing by virtue of the Complaint, (iv) to the extent the transfer is avoided that Dixon be granted liens on the Property, including, but not limited to pursuant to 11 U.S.C. §§ 548(c) and 550(e), (vi) to the extent the transfer is avoided that Dixon be granted an allowed claim pursuant to 11 U.S.C. § 502(h), (vi) damages, costs and reasonable attorney's fees be awarded to Dixon; (vii) prejudgment and postjudgment interest be awarded to Dixon, and (viii) Dixon be granted such other and further relief to which it may be justly entitled at law or in equity.

Dated: September 30, 2021

/s/ *Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

*Attorneys for The Dixon Water Foundation*

Joyce W. Lindauer
State Bar No. 21555700
Kerry S. Alleyne
State Bar No. 24066090
Guy H. Holman
State Bar No. 24095171
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR/PLAINTIFF

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |
| **BM318, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 21-04051** |
| | § | |
| **DIXON WATER FOUNDATION,** | § | |
| **Defendant.** | § | |

## ORIGINAL ANSWER TO DEFENDANT'S COUNTERCLAIMS

Comes now BM318, LLC, debtor and plaintiff herein ("Plaintiff") and files this its Original Answer to Defendant's Counterclaims as asserted in the document DEFENDANT, THE DIXON WATER FOUNDATION'S ANSWER AND AFFIRMATIVE DEFENSES TO COMPLAINT TO AVOID AND RECOVER PREFERENTIAL AND/OR FRAUDULENT TRANSFER PURSUANT TO 11 U.S.C. §§ 548 AND 550 AND COUNTERCLAIM [Dkt No. 8] ("Counterclaim") (where such counterclaims begin at Section VII therein) as filed by Dixon Water Foundation ("Dixon" or "Defendant") and would show as follows:

## I. RESPONSE TO "VII COUNTERCLAIM"

**A. Parties**

1. Plaintiff admits the allegation in Paragraph 1 of the Counterclaim.

2. Plaintiff admits the allegation in Paragraph 2 of the Counterclaim.

**B. Jurisdiction**

3. Plaintiff admits the allegation in Paragraph 3 of the Counterclaim.

4. Plaintiff admits the allegation in Paragraph 4 of the Counterclaim.

**C. Facts**

5. Plaintiff admits the allegation in Paragraph 5 of the Counterclaim.

6. Plaintiff admits the allegation in Paragraph 6 of the Counterclaim.

7. Plaintiff denies the allegation in Paragraph 7 of the Counterclaim.

8. Plaintiff admits the allegations in Paragraph 8 to the extent such documents so provide.

9. Plaintiff admits the allegation in Paragraph 9 of the Counterclaim.

10. Plaintiff admits the allegation in Paragraph 10 of the Counterclaim to the extent that is a is an accurate restatement of the quote from the court filing referenced therein.

11. Plaintiff denies the allegation in Paragraph 11 of the Counterclaim.

**D. Causes of Action**

**a) Count 1: Section 548(c)**

12. Paragraph 12 incorporates the preceding paragraphs of the Counterclaim and thus Plaintiff neither admits or denies such paragraph as no facts, claims, or allegations are specifically stated but likewise would incorporate Plaintiff's responses above in response to the paragraphs which Defendant incorporates into Paragraph 12.

13. Plaintiff can neither admit nor deny Dixon's state of mind as to whether it "Dixon took the Property for value and in good faith" but otherwise denies the allegations in Paragraph 13.

14. Plaintiff denies the allegations in Paragraph 14 that "Dixon gave value to BM318 in exchange for the transfer of the property."

15. Paragraph 15 is a request of Dixon that in the event the court determines that the transfer of the property is avoidable "that the Court find that Dixon has a lien on the property or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that Dixon gave value to BM3 l 8 in exchange for such transfer or obligation" and thus Plaintiff admits that Dixon makes such a request but denies that Dixon should have the right to have such request granted by the Court.

16. Plaintiff admits the allegations in Paragraph 16 to the extent such statement that "Dixon also holds such corresponding lien and claim rights under the above-cited terms of the Plan" is an accurate reflection of the Plan and Plaintiff admits Dixon "makes its corresponding defense counterclaims" but denies its asserted right to prevail and receive the relief requested.

**b) Count 2: Section 550(e)**

17. Paragraph 17 incorporates the preceding paragraphs of the Counterclaim and thus Plaintiff neither admits or denies such paragraph as no facts, claims, or allegations are specifically stated but likewise would incorporate Plaintiff's responses above in response to the paragraphs which Defendant incorporates into Paragraph 17.

18. Plaintiff denies the allegations in Paragraph 18 that "Dixon is a good faith transferee."

19. Paragraph 19 is a request of Dixon that in the event the court determines that Plaintiff "may recover from Dixon under section 550(a) of the Bankruptcy Code" that the Court

find "that Dixon has a lien on the property recovered to secure the lesser of: (a) the cost to Dixon of any improvement made after the transfer, less the amount of any profit realized by or accruing to Dixon from such property; and (b) any increase in the value of such property as a result of such improvement" and thus Plaintiff admits that Dixon makes such a request but denies that Dixon should have the right to have such request granted by the Court and further denies any inference, assumption, or claim that any improvements have been constructed or placed on the property by Dixon during the applicable time period.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court find in favor of Plaintiff on Dixon's counterclaims and grant Plaintiff any and all relief Plaintiff is entitled to including but not limited to its costs and reasonable attorneys' fees.

Dated: October 22, 2021

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Guy H. Holman
State Bar No. 24095171
Kerry S. Alleyne
State Bar No. 24066090
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
guy@joycelindauer.com
kerry@joycelindauer.com

ATTORNEYS FOR BM318, LLC,
DEBTOR AND PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 22, 2021, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
**Attorneys for Intervenor Lumar Land & Cattle, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |

## MOTION TO INTERVENE AND BRIEF IN SUPPORT

Pursuant to Federal Rule of Civil Procedure 24, Intervenor Lumar Land & Cattle, LLC ("Lumar") files this Motion to Intervene and Brief in Support because it is a good faith transferee and bona fide purchaser for value of a portion of the land made the basis of Debtor/Plaintiff BM318, LLC's ("BM318") Complaint to Avoid and Recover Preferential and/or Fraudulent

Transfer Pursuant to 11 U.S.C. §§548 and 550 [Adv. Dkt. No. 1] (the "Complaint"). Lumar Land respectfully shows the Court as follows:

## I. BACKGROUND/INTRODUCTION

1. On **February 18, 2020**, BM318 executed a Special Warranty Deed (filed on **July 2, 2020**) conveying to The Dixon Water Foundation f/k/a The Dixon Foundation ("Dixon"):

> BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:
>
> **SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.
>
> **SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:
>
> **SAVE AND EXCEPT**
>
> **BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:**

2. On **April 23, 2021**, Dixon executed a Special Warranty Deed with Vendor's Lien (filed April 28, 2021) conveying to Lumar 204.50 acres out of the original property transferred from BM318:

> BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

The 204.50 acres purchased by Lumar from Dixon will hereinafter be referred to as the "Lumar Property."

3. At the time Lumar purchased the Lumar Property, no adversary proceeding had been filed, no lis pendens had been filed, and BM318 made no claims to Lumar (or to Dixon, to Lumar's knowledge) for possession of or title to the Lumar Property.

4. On **August 10, 2021**, BM318 filed its Complaint against Dixon seeking, among other things, to avoid the transfer of the 2055.70 acres from BM318 to Dixon (the "Adversary Proceeding").

5. On **September 30, 2021**, Dixon filed its Answer and Affirmative Defenses and Counterclaim to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550 [Adv. Dkt. No. 8] (the "Counterclaim").

6. On **October 27, 2021**, BM318 filed its Notice of Lis Pendens in the Parker County Official Public Records on the 2055.70 acres (which included the Lumar Property) (the "Lis Pendens"). At that time, it had been six months from Lumar's purchase of the Lumar Property and Lumar had begun development of the Lumar Property. Lumar did not receive any notice of the Notice of Lis Pendens as required by Texas Property Code §12.007. Lumar was not added as a party to the Adversary Proceeding.

7. **At the end of December 2021**, Lumar became aware of the Lis Pendens while contracting to sell a portion of the Lumar Property to a third party.

8. Lumar is a good faith transferee under section 550(b) of the Bankruptcy Code (11 U.S.C. §§ 101, *et seq.*) and bona fide purchaser of the Lumar Property. At the time Lumar purchased the Lumar Property, the Adversary Proceeding had not been filed, no lis pendens had been filed, and BM318 made no claims for possession of or title to the Lumar Property to Lumar.

BM318's improperly filed Lis Pendens constitutes a cloud on the Lumar Property. Lumar seeks to file its complaint for declaratory relief in the Adversary Proceeding seeking a declaratory judgment by this Court (i) finding that Lumar is a good faith transferee under section 550(b) of the Bankruptcy Code and a bona fide purchaser for value of the Lumar Property; and, accordingly, (ii) expunging the Lis Pendens as to the Lumar Property.

## II.
## RELIEF REQUESTED AND BRIEF IN SUPPORT

### A. Intervention As Of Right

9. Pursuant to Rule 24 of the Federal Rules of Civil Procedure, a party is entitled to intervene as of right, as follows:

> **(a) Intervention of Right.** On timely motion, the court must permit anyone to intervene who:
>
> > **(1)** is given an unconditional right to intervene by a federal statute; or
> >
> > **(2)** claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24. Rule 24 is to be construed liberally with all doubts resolved in favor of the proposed intervener because intervention allows a court to resolve related disputes in a single action. *In Re Lease Oil Antitrust Litigation*, 570 F.3d 244, 248 (5th Cir. 2009). A proposed intervener must satisfy three criteria in order to intervene of right under Rule 24(a):

1. The movant must have an interest in the subject matter of the litigation;
2. Absent intervention, the movant's interest will be impaired or impeded; and
3. The existing parties to the action inadequately represent the movant's interest.

*Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996)(e*n banc*). Lumar satisfies all of these criteria.

10. First, Lumar clearly has an interest in the subject matter of the litigation. Because the Lumar Property is within the original property transferred from BM318 to Dixon, which transfer BM318 only now seeks to avoid, Lumar has an interest in protecting the Lumar Property and its status as a good faith transferee and bona fide purchaser for value of the Lumar Property.

11. Second, if Lumar is not permitted to intervene in this case, its interest will be impaired or impeded as it will not be able to participate in the determination of the avoidance issue. An adverse finding against Dixon could potentially be harmful to Lumar. Lumar should be permitted to participate in the determination of the avoidance issue and assert its status as a good faith transferee and bona fide purchaser of the Lumar Property.

12. Finally, with respect to the third prong, the Supreme Court has characterized the movant's burden as "minimal" and noted that the "[r]ule is satisfied if the applicant shows that the representation of his [or her] interest 'may be' inadequate." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 (1972). While Lumar believes that counsel for Dixon will vigorously assert arguments on the avoidance issue relating to its interest, Lumar should not be denied an opportunity weigh in on those issues as well and assert its own interest and good faith status as related to the Lumar Property. In addition, Lumar has additional corollary issues for the Court to consider that will not be presented by Dixon: namely, its status as a good faith transferee and bona fide purchaser for value of the Lumar Property and thereafter its subsequent request to expunge the Lis Pendens as to the Lumar Property.

13. Accordingly, Lumar respectfully submits that it is entitled to intervene as of right. Allowing Lumar to intervene will promote judicial economy. Lumar filed this motion as soon as possible upon learning of the Lis Pendens.

**B. Permissive Intervention**

14. If, for any reason, the Court is inclined to deny Lumar's request for intervention as of right, Lumar respectfully requests that the Court alternatively grant it permissive intervention pursuant to Rule 24(b) of the Federal Rules of Civil Procedure. Rule 24(b) states, in relevant part, "[o]n timely motion, the court may permit anyone to intervene who: . . . (2) has a claim or defense that share with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). As set forth above, Lumar's claims relate to the same factual circumstances and issues as those raised in BM318's Complaint and Dixon's Counterclaim. Accordingly, permissive intervention would be proper in this case.

WHEREFORE, PREMISES CONSIDERED, Intervenor Lumar Land & Cattle, LLC respectfully requests the Court grant its Motion to Intervene as a Plaintiff-in-Intervention in this action, and grant leave to file the proposed Complaint in Intervention, attached hereto as Exhibit A.

Respectfully submitted,

*/s/Kimberly P. Harris*

KIMBELRY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**ATTORNEYS FOR LUMAR LAND & CATTLE, LLC**

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that prior to filing this Motion, I communicated with counsel for both BM318 and Dixon to request both parties' position on the relief requested herein. Ms. Lindauer, counsel for BM318, indicated that her client is opposed to the requested relief. Ms. Perry, counsel for Dixon, indicated that her client is unopposed to the relief requested in the Motion

*/s/ Joshua L. Shepherd*
Joshua L. Shepherd

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 14, 2022, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this bankruptcy case, including both the Debtor-Plaintiff BM318 and Dixon, through counsel.

*/s/ Kimberly P. Harris*
Kimberly P. Harris

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
**Attorneys for Intervenor Lumar Land & Cattle, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

# PLAINTIFF-IN-INTERVENTION LUMAR LAND & CATTLE, LLC'S <u>ORIGINAL COMPLAINT IN INTERVENTION FOR DECLARATORY JUDGMENT</u>

EXHIBIT
A

Plaintiff-in-Intervention Lumar Land & Cattle, LLC ("Lumar") pursuant to 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57, files this Original Complaint in Intervention for Declaratory Judgment and respectfully shows the Court the matters set forth below:

## I.
## PARTIES

1. Plaintiff-in-Intervention Lumar is domestic limited liability company organized under the laws of the State of Texas.

2. Plaintiff/Debtor BM318, LLC ("BM318") is a limited liability company organized under the laws of the State of Texas.

3. Defendant The Dixon Water Foundation ("Dixon") is a is a non-profit corporation organized under the laws of the State of Texas. Dixon has previously appeared in this action.

## II.
## JURISDICTION AND VENUE

4. This Court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 case pending in the United States Bankruptcy Court for the Northern District of Texas, pursuant to 28 U.S.C. §§ 157 and 1334(b). This adversary proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2).

5. The Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. An actual and substantial controversy exists between the parties. By this action Lumar seeks a declaration that it is a good faith transferee and bona fide purchaser for value of a portion of the land at issue in the adversary action.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## III.
## FACTUAL BACKGROUND

7. On **February 18, 2020**, BM318 executed a Special Warranty Deed (filed on **July 2, 2020**) conveying to The Dixon Water Foundation f/k/a The Dixon Foundation ("Dixon"):

> BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:
>
> **SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.
>
> **SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:
>
> **SAVE AND EXCEPT**
>
> **BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:**

8. On **April 23, 2021**, Dixon executed a Special Warranty Deed with Vendor's Lien (filed April 28, 2021) conveying to Lumar 204.50 acres out of the original property transferred from BM318:

> BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

The 204.50 acres purchased by Lumar from Dixon will hereinafter be referred to as the "Lumar Property."

9. At the time Lumar purchased the Lumar Property, no adversary proceeding had been filed, no lis pendens had been filed, and BM318 made no claims to Lumar (or to Dixon, to Lumar's knowledge) for possession of or title to the Lumar Property.

10. On **August 10, 2021**, BM318 filed its Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§548 and 550 seeking, among other things, to avoid the transfer of the 2055.70 acres from BM318 to Dixon (the "Adversary Proceeding").

11. On **September 30, 2021**, Dixon filed its Answer and Affirmative Defenses and Counterclaim to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550 [Adv. Dkt. No. 8] (the "Counterclaim").

12. On **October 27, 2021**, BM318 filed its Notice of Lis Pendens in the Parker County Official Public Records on the 2055.70 acres (which included the Lumar Property) (the "Lis Pendens"). At that time, six months had passed since Lumar's purchase of the Lumar Property and Lumar had begun development of the Lumar Property. Lumar did not receive any notice of the Notice of Lis Pendens as required by Texas Property Code § 12.007.

13. **At the end of December 2021**, Lumar became aware of the Lis Pendens while contracting to sell a portion of the Lumar Property to a third party.

14. BM318's improperly filed Lis Pendens constitutes a cloud on the Lumar Property and Lumar requests that this Court declare that Lumar is a good faith transferee and bona fide purchaser for value of the Lumar Property and thereafter expunge the lis pendens as to the Lumar Property.

## IV.
## DECLARATORY RELIEF – LUMAR IS A GOOD FAITH TRANSFEREE UNDER BANKRUPTCY CODE §550(b)

15. Lumar incorporates by reference the allegations stated above.

16. As discussed above, Lumar purchased the Lumar Property from Dixon over three months before the Adversary Proceeding was filed and over six months before the Lis Pendens was filed. The Lumar Property is affected by the Adversary Proceeding and Lis Pendens. These improper claims constitute a cloud on the Lumar Property.

17. Lumar is a good faith transferee and bona fide purchaser of the Lumar Property. At the time Lumar purchased the Lumar Property, the Adversary Proceeding had not been filed, no lis pendens had been filed, and BM318 made no claims for possession of or title to the Lumar Property to Lumar.

18. Moreover, Lumar was never sent the Notice of Lis Pendens as required by Texas Property Code § 12.007. Further, a lis pendens as against a good faith transferee/bona fide purchaser for value is improper and merits expunction under Texas Property Code § 12.0071.

19. Section 550(b) of the Bankruptcy Code provides that BM318 may not recover from a good faith transferee:

> **(b)** The trustee may not recover under section (a)(2) of this section from--
> **(1)** a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> **(2)** any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b).

20. Therefore, Lumar seeks a declaratory judgment by this Court (i) finding that Lumar is a good faith transferee under §550(b) of the Bankruptcy Code and a bona fide

purchaser for value of the Lumar Property; and, accordingly, (ii) expunging the Lis Pendens as to the Lumar Property.

**V.**
**PRAYER**

WHEREFORE, for the foregoing reasons, Lumar respectfully requests judgment against Plaintiff/Debtor BM318 as follows:

1. A declaration that Lumar is a good faith transferee under §550(b) of the Bankruptcy Code and a bona fide purchaser for value of the Lumar Property;

2. Expunging the Notice of Lis Pendens as to the Lumar Property; and

3. Granting such other and further relief as to which Lumar may show itself justly entitled.

Respectfully submitted,

*/s/Kimberly P. Harris*

KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**ATTORNEYS FOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| **BM318, LLC,** | § | **Case No. 20-42789-MXM** |
| **Debtor** | § | |
| **BM318, LLC,** | § | |
| **Plaintiff,** | § | |
| **v.** | § | **Adv. Pro. No. 21-04051-MXM** |
| **THE DIXON WATER FOUNDATION,** | § | |
| **Defendant.** | § | |

**ORDER GRANTING LUMAR LAND & CATTLE, LLC'S MOTION TO INTERVENE**

Came on for consideration the *Motion to Intervene and Brief in Support* (the "Motion to Intervene") filed by Lumar Land & Cattle, LLC in the above-styled adversary proceeding, which

was commenced by the filing of Debtor/Plaintiff BM318, LLC's *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§548 and 550*. The Court, having considered the Motion to Intervene, any responses to the Motion, and noting that proper notice of the Motion was given to proper parties, hereby finds that the Motion should be GRANTED.

IT IS THEREFORE, ORDERED, that Lumar Land & Cattle, LLC's Motion to Intervene is in all things GRANTED.

Accordingly, IT IS ORDERED that Lumar Land & Cattle, LLC may intervene in this adversary proceeding by filing its Complaint in Intervention for Declaratory Judgment.

**### END OF ORDER ###**

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111
**Attorneys for Intervenor Lumar Land & Cattle, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

**PLAINTIFF-IN-INTERVENTION LUMAR LAND & CATTLE, LLC'S**
**<u>ORIGINAL COMPLAINT IN INTERVENTION FOR DECLARATORY JUDGMENT</u>**

Plaintiff-in-Intervention Lumar Land & Cattle, LLC ("Lumar") pursuant to 28 U.S.C. § 2201(a) and Fed. R. Civ. P. 57, files this Original Complaint in Intervention for Declaratory Judgment and respectfully shows the Court the matters set forth below:

## I.
## PARTIES

1. Plaintiff-in-Intervention Lumar is domestic limited liability company organized under the laws of the State of Texas.

2. Plaintiff/Debtor BM318, LLC ("BM318") is a limited liability company organized under the laws of the State of Texas.

3. Defendant The Dixon Water Foundation ("Dixon") is a is a non-profit corporation organized under the laws of the State of Texas. Dixon has previously appeared in this action.

## II.
## JURISDICTION AND VENUE

4. This Court has jurisdiction of this adversary proceeding, which arises under the Bankruptcy Code and relates to the above-captioned Chapter 11 case pending in the United States Bankruptcy Court for the Northern District of Texas, pursuant to 28 U.S.C. §§ 157 and 1334(b). This adversary proceeding is a "core" proceeding to be heard and determined by this Court pursuant to 28 U.S.C. § 157(b)(2).

5. The Court also has jurisdiction over this declaratory judgment action pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201. An actual and substantial controversy exists between the parties. By this action Lumar seeks a declaration that it is a good faith transferee and bona fide purchaser for value of a portion of the land at issue in the adversary action.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1409.

## III.
## FACTUAL BACKGROUND

7. On **February 18, 2020**, BM318 executed a Special Warranty Deed (filed on **July 2, 2020**) conveying to The Dixon Water Foundation f/k/a The Dixon Foundation ("Dixon"):

> BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:
>
> **SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.
>
> **SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:
>
> **SAVE AND EXCEPT**
>
> **BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows:**

8. On **April 23, 2021**, Dixon executed a Special Warranty Deed with Vendor's Lien (filed April 28, 2021) conveying to Lumar 204.50 acres out of the original property transferred from BM318:

> BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

The 204.50 acres purchased by Lumar from Dixon will hereinafter be referred to as the "Lumar Property."

9. At the time Lumar purchased the Lumar Property, no adversary proceeding had been filed, no lis pendens had been filed, and BM318 made no claims to Lumar (or to Dixon, to Lumar's knowledge) for possession of or title to the Lumar Property.

10. On **August 10, 2021**, BM318 filed its Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§548 and 550 seeking, among other things, to avoid the transfer of the 2055.70 acres from BM318 to Dixon (the "Adversary Proceeding").

11. On **September 30, 2021**, Dixon filed its Answer and Affirmative Defenses and Counterclaim to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548 and 550 [Adv. Dkt. No. 8] (the "Counterclaim").

12. On **October 27, 2021**, BM318 filed its Notice of Lis Pendens in the Parker County Official Public Records on the 2055.70 acres (which included the Lumar Property) (the "Lis Pendens"). At that time, six months had passed since Lumar's purchase of the Lumar Property and Lumar had begun development of the Lumar Property. Lumar did not receive any notice of the Notice of Lis Pendens as required by Texas Property Code § 12.007.

13. **At the end of December 2021**, Lumar became aware of the Lis Pendens while contracting to sell a portion of the Lumar Property to a third party.

14. BM318's improperly filed Lis Pendens constitutes a cloud on the Lumar Property and Lumar requests that this Court declare that Lumar is a good faith transferee and bona fide purchaser for value of the Lumar Property and thereafter expunge the lis pendens as to the Lumar Property.

**IV.**
**DECLARATORY RELIEF – LUMAR IS A GOOD FAITH TRANSFEREE UNDER BANKRUPTCY CODE §550(b)**

15. Lumar incorporates by reference the allegations stated above.

16. As discussed above, Lumar purchased the Lumar Property from Dixon over three months before the Adversary Proceeding was filed and over six months before the Lis Pendens was filed. The Lumar Property is affected by the Adversary Proceeding and Lis Pendens. These improper claims constitute a cloud on the Lumar Property.

17. Lumar is a good faith transferee and bona fide purchaser of the Lumar Property. At the time Lumar purchased the Lumar Property, the Adversary Proceeding had not been filed, no lis pendens had been filed, and BM318 made no claims for possession of or title to the Lumar Property to Lumar.

18. Moreover, Lumar was never sent the Notice of Lis Pendens as required by Texas Property Code § 12.007. Further, a lis pendens as against a good faith transferee/bona fide purchaser for value is improper and merits expunction under Texas Property Code § 12.0071.

19. Section 550(b) of the Bankruptcy Code provides that BM318 may not recover from a good faith transferee:

> **(b)** The trustee may not recover under section (a)(2) of this section from--
> **(1)** a transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided; or
> **(2)** any immediate or mediate good faith transferee of such transferee.

11 U.S.C. § 550(b).

20. Therefore, Lumar seeks a declaratory judgment by this Court (i) finding that Lumar is a good faith transferee under §550(b) of the Bankruptcy Code and a bona fide

purchaser for value of the Lumar Property; and, accordingly, (ii) expunging the Lis Pendens as to the Lumar Property.

**V.**
**PRAYER**

WHEREFORE, for the foregoing reasons, Lumar respectfully requests judgment against Plaintiff/Debtor BM318 as follows:

1. A declaration that Lumar is a good faith transferee under §550(b) of the Bankruptcy Code and a bona fide purchaser for value of the Lumar Property;

2. Expunging the Notice of Lis Pendens as to the Lumar Property; and

3. Granting such other and further relief as to which Lumar may show itself justly entitled.

Respectfully submitted,

*/s/ Kimberly P. Harris*
KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**ATTORNEYS FOR LUMAR LAND & CATTLE, LLC**

B1040 (FORM 1040) (12/15)

| **ADVERSARY PROCEEDING COVER SHEET** (Instructions on Reverse) | **ADVERSARY PROCEEDING NUMBER** (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>Lumar Land & Cattle, LLC | **DEFENDANTS**<br>BM318, LLC |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Kimberly Harris and Joshua Shepherd (214) 871-2100<br>Quilling, Selander, Lownds, Winslett & Moser, P.C.<br>2001 Bryan Street, Ste. 1800, Dallas, TX 75201 | **ATTORNEYS** (If Known)<br>Joyce Lindauer (972) 503-4033<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main Street, Suite 500, Dallas, Texas 75202 |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☒ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Intervention. Declaration that Lumar Land & Cattle, LLC, as Plaintiff in Intervention, is a good faith transferee pursuant to 11 U.S.C. §550(b) and expunction of Lis Pendens.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☒ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| **BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES** | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>BM318, LLC | | BANKRUPTCY CASE NO.<br>20-42789-mxm | |
| DISTRICT IN WHICH CASE IS PENDING<br>Northern District of Texas | | DIVISION OFFICE<br>Fort Worth | NAME OF JUDGE<br>Mark X. Mullin |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | | |
| PLAINTIFF<br>BM318, LLC | DEFENDANT<br>The Dixon Water Foundation | | ADVERSARY PROCEEDING NO.<br>21-04051-mxm |
| DISTRICT IN WHICH ADVERSARY IS PENDING<br>Northern | | DIVISION OFFICE<br>Fort Worth | NAME OF JUDGE<br>Mark X. Mullin |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>*/s/ Joshua L. Shepherd* | | | |
| DATE<br>February 16, 2022 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Joshua L. Shepherd<br>Quilling, Selander, Lownds, Winslett & Moser, P.C. | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

Joyce W. Lindauer
State Bar No. 21555700
Sydney A. Ollar
State Bar No. 24125932
Austin Y. Taylor
Louisiana Bar No. 37325
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR/PLAINTIFF

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |
| **BM318, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 21-04051** |
| | § | |
| **DIXON WATER FOUNDATION,** | § | |
| **Defendant.** | § | |
| | § | |
| **LUMAR LAND & CATTLE, LLC** | § | |
| **Plaintiff-in-Intervention** | § | |

## PLAINTIFF'S ORIGINAL ANSWER TO PLAINTIFF-IN-INTERVENTION LUMAR LAND AND CATTLE, LLC'S ORIGINAL COMPLAINT IN INTERVENTION FOR DECLARATORY JUDGMENT AND COUNTERCLAIMS AGAINST INTERVENOR

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

COMES NOW BM318, LLC, Plaintiff in the above-styled and numbered cause, and files this its *Original Answer to Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Original Complaint and Counterclaims Against Intervenor* (respectively, "**Lumar**", "**Answer**", "**Complaint**," and "**Counterclaim**"), and would respectfully show the Court as follows:

## I. PARTIES

1. Plaintiff admits the allegation in Paragraph 1 of the Complaint concerning Lumar's status as a Texas limited liability company.

2. Plaintiff admits the allegation in Paragraph 2 of the Complaint concerning Plaintiff's status as a Texas limited liability company

3. Plaintiff admits the allegation in Paragraph 3 of the Complaint concerning The Dixon Water Foundation's ("**Dixon**" or "**Defendant**") status as a Texas non-profit corporation.

## II. JURISDICTION AND VENUE

4. Plaintiff admits the allegations in Paragraph 4 of the Complaint regarding the Court's jurisdiction over this core adversary proceeding.

5. Plaintiff admits the allegation in Paragraph 5 of the Complaint that the Court has jurisdiction over this declaratory judgment action pursuant to the referenced authorities, but denies that declaratory judgment is appropriate in this instance. Plaintiff denies that an actual and substantial controversy exists between the parties because Lumar is unable to qualify as a good faith transferee and bona fide purchaser for value of the real property implicated in this adversary proceeding.

6. Plaintiff admits the allegation in Paragraph 6 of the Complaint that venue is proper in this district.

## III. FACTUAL BACKGROUND

7. Plaintiff admits the allegation in Paragraph 7 of the Complaint concerning Plaintiff's execution of a Special Warranty Deed to Dixon conveying approximately 1,531.75

acres ("**Remaining Property**")[1], which remained out of the 2055,70 ("**Original Property**") acres that had been acquired by Plaintiff from Dixon, that occurred on February 18, 2020, but that such Deed was held in escrow and subsequently filed on the referenced date of July 2, 2020 upon which any conveyance under such deed became effective

8. Plaintiff admits the allegation in Paragraph 8 of the Complaint regarding Dixon's execution of a Special Warranty Deed with Vendor's Lien conveying the referenced 204.50-acre parcel of the aforementioned tract to Lumar on the referenced date to the extent such document is an accurate reflection of such allegation.

9. Plaintiff admits the allegations in Paragraph 9 concerning the facts that no adversary proceeding, lis pendens, or claims for possession of or title to the aforementioned parcel had been filed against Lumar at the time Lumar purchased the parcel. Notably, however, a right to avoid the transfer of the Remaining Property from Plaintiff to Dixon existed at the time of the subsequent transfer of the 204.50 parcel, and Lumar, knew or should have known that Plaintiff had a right to avoid the original transfer. Such claims were identified in the bankruptcy case. Lumar is imputed with the knowledge of Jim Martin ("**Martin**") as its managing member. Martin represented, consulted to, and/or served as the real estate agent to Plaintiff, including with regard to the transaction giving rise to Plaintiff's adversary proceeding and who physically managed the Property including all tracts that had been originally acquired by Plaintiff and subsequently sold. Martin is a Texas licensed real estate agent (License #190058) for Railhead Realty, LLC ("**Railhead**"), whose real estate broker, Ron Hughes ("**Hughes**"), serves as his sponsoring broker. As a licensed real estate agent to Plaintiff, Martin owed certain fiduciary duties to Plaintiff

---

[1] As further described in this Complaint, the 1,531,75 acres making up the Remaining Property was the result of (i) Plaintiff acquiring an unencumbered 118.34 acres free and clear upon acquisition of the Original Property; (ii) conveying 381.66 acres to GH Lumar JV which is related to Lumar; (iii) conveying 23.95 acres also to GH Lumar JV.

including duties of loyalty and care, to maintain confidentiality and not use confidential information for his own purposes, and to disclose any relevant and material information to Plaintiff that was related to the Remaining Property. Martin also worked for Plaintiff to obtain a municipal utility district known as the Bear Creek Ranch Municipal Utility District No. 1 of Parker County ("**MUD**") on the Original Property. Furthermore, Martin, through Railhead, provided Plaintiff with valuations in the form of Broker's Opinions of Value regarding the Remaining Property. In so doing, Martin, on behalf of Plaintiff, corresponded with the attorney who set up the MUD on or about December 4, 2020 to get a status of the MUD in order to include the MUD as part of the valuation of the Remaining Property.

10. Plaintiff admits the allegation in Paragraph 10 of the Complaint concerning Plaintiff's complaint seeking to avoid the preferential and/or fraudulent transfer of the Remaining Property but not the entire 2055.70 acres which were originally acquired by Plaintiff from Defendant.

11. Plaintiff admits the allegation in Paragraph 11 of the Complaint to the extent that Dixon filed its Answer, Affirmative Defenses and Counterclaim to the Plaintiff's complaint on the referenced date, but denies the applicability of the defenses, affirmative defenses, and counterclaims contained therein.

12. Plaintiff admits the allegation in Paragraph 12 of the Complaint concerning Plaintiff's filing of its Notice of Lis Pendens but which was filed against the Remaining Property and not the Original Property and allegations concerning the location and date of said filing. Plaintiff admits that Lumar did not receive Notice of the Lis Pendens to the extent notice is required under section of the Texas Property Code. Plaintiff can neither admit nor deny how much time

passed "since Lumar's purchase of the Lumar Property and Lumar had begun development of the Lumar Property."

13. Plaintiff is unable to admit or deny the allegation in Paragraph 13 of the Complaint as to when Lumar became aware of the Lis Pendens. Despite this, Plaintiff would reiterate that Dixon's transfer of the 204.50-acre parcel out of the Remaining Property to Lumar occurred while Plaintiff had the right to avoid the transfer of the entire tract from Plaintiff to Dixon and that Lumar had knowledge that Plaintiff intended to dispute or assert certain rights and claims related to the Remaining Property prior to Lumar's acquisition of the 204.50-acre parcel. Plaintiff also restates that Lumar, through Martin, either knew or should have known of such encumbrance.

14. Plaintiff denies the allegation in Paragraph 14 of the Complaint that the Lis Pendens was improperly filed or that Lumar is a good faith transferee and bona fide purchaser for value of the 204.50-acre parcel, and as such is not entitled to a declaration of such status by this Court. Plaintiff denies the allegation that the lis pendens should be expunged as to the 204.50-acre parcel for the aforementioned reasons.

15. Plaintiff reasserts its admissions and denials to the allegations in Paragraph 15 of the Complaint as stated *supra*.

16. Plaintiff admits the allegations in Paragraph 16 of the Complaint as to the timing of Lumar's purchase of the 204.50-acre parcel to the extent such purchase occurred as reflected in the documents referenced by Lumar, and that said real property is affected by the Adversary Proceeding and Lis Pendens. For reasons mentioned heretofore, Plaintiff's claims to this real property is not improper despite Lumar's assertion to the contrary.

17. Plaintiff denies the allegations in Paragraph 17 concerning Lumar's status as a good faith transferee and bona fide purchaser since Lumar either knew or should have known of the

aforementioned encumbrance on the real property. Furthermore, Martin used Plaintiff's confidential information and breached his fiduciary duties to Plaintiff when he acquired the Property on behalf of Lumar. Lumar cannot be the beneficiary of such bad acts.

18. Plaintiff admits the allegation in Paragraph 18 to the extent Plaintiff did not send actual written notice of the Lis Pendens to Lumar. Plaintiff denies the assertion that the lis pendens is improper for the reason that it further denies the assertion that Lumar is a good faith transferee and bona fide purchaser for value as previously mentioned.

19. Plaintiff denies the allegation in Paragraph 19 of the Complaint to the extent that 11 U.S.C. § 550(b) is not applicable since Lumar is not a good faith transferee since it either knew or should have known of the aforementioned encumbrance on the real property and because Lumar was the beneficiary of the aforementioned bad acts of its managing member, Martin

20. Plaintiff denies the allegation in Paragraph 20 of the Complaint noting that Lumar is neither a good faith transferee nor a bona fide purchaser of the real property, and that expunging the Lis Pendens as to that real property is inappropriate.

## IV. PLAINTIFF'S COUNTERCLAIMS AGAINST INTERVENOR

21. Plaintiff incorporates by reference the foregoing facts and allegations asserted by Plaintiff and further asserts the following.

22. Lumar is managed by its managing member, Martin, and as such, all actions and conduct of Lumar occur through Martin. Furthermore, Lumar possesses and acts with the knowledge of Martin and is imputed with the actions of Martin.

23. Since 2018, Martin has served as the exclusive real estate agent for Plaintiff and its related entities for the purpose of identifying potential real estate acquisitions in Parker County and the surrounding areas, contracting to acquire such properties, and selling such properties.

During the period following Plaintiff's acquisition of the Original Property through the recording of the Deed in Lieu on the Remaining Property, Martin physically managed the Remaining Property along with all property owned by Plaintiff's related entities in Parker County and nearby areas, including controlling access and managing hunting and grazing leases. Martin assisted with certain predevelopment work on the Remaining Land and all properties owned by Plaintiff's related entities in Parker County and nearby areas such as surveying, platting, permitting, budgeting, and land planning. Martin was also tasked with securing proposals from builders to purchase lots once developed on the Remaining Property. Martin was further involved with Plaintiff's efforts to modify the Loan with Dixon and refinance the Loan with potential third party lenders.

24. On September 25, 2018, Plaintiff entered into the contract to acquire the Original Property from Defendant on which Martin is designated as the real estate agent and Railhead is listed as the broker. Dixon agreed to provide seller financing ("**Loan**") on the acquisition of the Property and secured the Loan with a first lien deed of trust on the Original Property less 118.34 acres which Plaintiff acquired free and clear. Such contract closed on November 27, 2018 upon which Martin was paid a real estate agent fee. Martin has also served as the real estate agent for other related entities of Plaintiff and their principal before and after this date.

25. Martin worked on behalf of Plaintiff to obtain the MUD on the Property which was approved by Parker county on February 25, 2019 and enacted by the state legislature on or about May 16, 2019. On December 8, 2020, Martin further obtained an opinion from the law firm of Coats Rose regarding the status of the MUD and necessary action to correct the failure to obtain approval from the city of Weatherford as required.

26. Martin worked with and/or retained Chris Chevreaux ("**Chevreaux**") of Chevreaux & Associates to obtain appraisals on multiple tracts within the Original Property including (i) 46 lots on 118.34 acres on April 15, 2019; (ii) 118.34 acres on May 26, 2019; (iii) 381.66 acres on May 30, 2019; (iv) 405.61 acres on May 29, 2020. Similarly, Martin worked through or with his broker, Hughes at Railhead, to provide a broker's opinion of value on (i) June 4, 2019 for 118.34 acres including development of two acre lots on such property and (ii) August 22, 2020 for the Remaining Property which was who valued the property at $51,633,001 (an average of $33,708.50 per acre). From around September 11, 2020 through January of 2021 Martin and Hughes, the individual broker at Railhead, were working with Chevreaux to obtain additional appraisals on the Remaining Tracts for Plaintiff.

27. Prior to the end of May 2019, Martin represented Plaintiff as its real estate agent in attempts to negotiate the purchase of 95 acres which was adjacent to the Original Property. However, the parties were unable to agree on terms.

28. On July 26, 2019, Plaintiff entered into a contract to sell 381.66 acres of the Original Property to Lumar. Martin was designated as the real estate agent for both the buyer and seller. On the same date, Plaintiff and Lumar executed a contract under which Plaintiff would buyback the 381.66 acres. Martin was also designated as the real estate agent for both the buyer and seller for this transaction. Martin, on behalf of Lumar, assigned such agreement to GH Lumar JV, a Texas joint venture and general partnership between Lumar and Aledo West, LLC[2] ("**Aledo West**") which is an assumed name of both Lumar and Aledo West according to separate assumed name certificates filed with the Texas Secretary of State on September 11, 2019. On or about

[2] Aledo West LLC is owned and managed by Gary Hazlewood.

September 1, 2019, the 381 acres was conveyed to GH Lumar JV.[3] The Plaintiff and Dixon had amended the terms of the Loan under which the sale proceeds would be paid to Dixon. Given that the sale proceeds were to be paid to the lender, Lumar was actually a party to the "Tri-Party Agreement" related to the first amendment on the loan from Dixon, which also included a deed in lieu of foreclosure. Similarly on or about January 31, 2020, Plaintiff sold 23.95 acres to GH Lumar JV, the proceeds of which were paid to Dixon as part of a modification of the Loan.

29. On or about February 27, 2020 Dixon and Plaintiff further modified the terms of the Loan which included a final payoff that was due on July 1, 2020 and which required a deed conveying the Remaining Property to Dixon to be held in escrow and recorded upon a default by Plaintiff ("**Deed in Lieu**").

30. On or about March 18, 2020 Martin served as the real estate agent on a contract to sell 118.34 acres to "Gary Hazlewood and/or assigns" ("**Hazlewood**"), which did not close. Hazlewood and Martin are both managers and/or owners of GH Lumar JV.

31. On or about June 26, 2020 Plaintiff and Dixon executed an agreement under which Plaintiff could buy back the Remaining Property for an amount equal to the remaining amount owed under the Loan in the event Plaintiff defaulted and Dixon recorded the Deed in Lieu ("**First Buy Back Agreement**"). The closing was scheduled for August 31, 2020 but could be extended up to three times in thirty day increments upon paying a $50,000 extension fee for each extension.

32. On July 1, 2020 Dixon asserted that Plaintiff was in default of the Loan. Dixon recorded the Deed in Lieu on July 2, 2020.

---

[3] Not to be confused with GH Lumar, LLC which was formed on June 5, 2020 by Lumar and Aledo West as a separate entity from GH Lumar JV because there is no plan of conversion filed and no record of GH Lumar JV being converted into GH Lumar, LLC.

33. Although Plaintiff executed one or more extensions, Plaintiff did not close on the First Buy Back Agreement. However, Robert Potts, CEO and President of Dixon, had informed Plaintiff that Dixon would still execute and close on a new buy back agreement based on similar terms including paying off the amount remaining under the Loan once Plaintiff had secured the necessary financing ("**Second Buy Back Agreement"**) – thus Plaintiff was essentially receiving credit for the prior loan payments.

34. In December 2020, Plaintiff began working with AgAmerica Lending to refinance the remaining portion of the Loan with Dixon. Martin was involved in communications and/or participated in discussions with AgAmerica in order to assist Plaintiff including by working to get the necessary appraisal(s) on the Remaining Property for AgAmerica to provide the requested financing.

35. Between January 18, 2021 and January 21, 2021, Martin and Hughes negotiated to purchase 118.34 acres from Plaintiff and appeared to have agreed to final terms including purchase price on behalf of the buyer, "Jim Martin and/or his assigns." At the last minute, however, Martin did not execute the agreement.

36. Around the same period that AgAmerica had completed its due diligence and expressed its desire to finance the Second Buy Back Agreement, Plaintiff was negotiating with Potts the final terms of the agreement. Martin participated in and/or was copied on communications between Plaintiff and Dixon about these negotiations. On January 21, 2021 Plaintiff and Potts had seemingly agreed to the final terms of the Second Buy Back Agreement, but such agreement was subject to final approval from the Dixon board of directors at a meeting that was scheduled to be held on January 23, 2021.

37. Apparently on or about January 23, 2021 in lieu of executing the contract for the purchase of the 118 acres, Martin, on behalf of Lumar and without the knowledge of Plaintiff, contracted with Dixon to purchase 204.50-acre parcel from the Remaining Property. Additionally, Martin obtained an option and/or right of first refusal ("**ROFR**") to purchase the remaining portion of the Remaining Property.

38. As a result of Martin's conduct including on behalf of Lumar, the board of directors decided not to formally execute Plaintiff's buyback agreement on the Remaining Property.

39. On January 27, 2021, Dixon deeded 6.15 acres from the Remaining Property to Martin.

40. On April 23, 2021 Dixon deeded the 204.5 acre tract to Lumar and recorded a Memorandum of Option Agreement to Martin on the remaining portion of the Remaining Property.

41. On October 4, 2021 Martin deeded to GH Lumar, LLC 5.48 acres apparently from the 6.15 acres he had acquired.

## V. <u>CLAIMS FOR RELIEF</u>

### COUNT I

### (Tortious Interference with a Contract)

42. On information and belief, Lumar, acting through Martin, interfered with Plaintiff's First Buyback Agreement when they negotiated and closed on the acquisition of 6.15 acres out of the Remaining Property. Given that the standard periods to perform due diligence and to close on a real estate purchase contract, Lumar apparently began negotiating and/or entered into the contract to purchase the 6.15 acres out of the Remaining Contract while Plaintiff had an agreement to buy back the Remaining Property under the First Buy Back Agreement which Lumar was aware of.

On information and belief, they also began negotiating the purchase of the 204.5 acre property and/or other agreements related to the Remaining Property.

43. Texas law protects existing contracts from interference. *See Juliette Fowler Homes, Inc. v. Welch Assoc., Inc.*., 793 S.W.2d 660, 665-66 (Tex. 1990). Thus, a party to a contract has a cause of action for tortious interference against any nonparty to the contract who wrongly induces another contracting party to breach the contract. *Holloway v. Skinner*, 898 S.W.2d 793, 794-95 (Tex. 1995). The elements of the cause of action for tortious interference are: (1) the existence of a contract subject to interference, (2) willful and intentional interference (3) that proximately causes damage, and (4) actual damage or loss. *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997); *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 647 n.7 (Tex. App.--Fort Worth 2003, pet. denied). *All Am. Tel., Inc. v. USLD Communs., Inc.*, 291 S.W.3d 518, 531 (Tex. App.—Fort Worth 2009).

44. Plaintiff and Dixon had negotiated and agreed to execute the contract referred to as First Buyback Agreement. Lumar, through Martin, willfully and intentionally interfered with the First Buyback Agreement. Lumar, with knowledge of the history and negotiations between Plaintiff and Dixon, negotiated to purchase the 6.14 acres of the Remaining Property at the same time Plaintiff and Dixon were negotiating the execution of the First Buyback Agreement. If not for Lumar's interference, Plaintiff would have been able to execute the First Buyback Agreement and prevent the loss of property. Plaintiff suffered an actual loss of 6.14 acres of the Remaining Property as well as damages for money and time spent negotiating with Dixon.

45. As a result of such actions, Lumar interfered with the parties' performance under such contract including further negotiations related to such contract. Plaintiff requests that Lumar's

Complaint be denied, and that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT II**

**(Tortious Interference – Prospective Contract)**

46. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein.

47. On information and belief, Lumar, acting through Martin, interfered with Plaintiff's Second Buyback Agreement when they negotiated and closed on the acquisition of 6.15 acres out of the Remaining Property. The closing of the 6.15 acres occurred only 4 days after the board of directors for Dixon decided not to proceed with the Second Buyback Contract. Given the short time period, Martin and Lumar had apparently been negotiating and/or entered into a contract for the 6.15 acres around the time Plaintiff had negotiated and seemingly agreed with Potts on the Second Buyback Agreement.

48. Likewise, Dixon decided not to proceed with the Second Buyback Agreement because Dixon instead chose to sell the 204.5 acres to Lumar and Martin along with granting an option and ROFR on the remaining portion of the Remaining Property. Lumar and Martin had obviously made an offer to purchase the 204.5 acres and obtain an option and/or ROFR on remaining portion of the Remaining Property prior to Dixon's board of directors deciding not to proceed with the Second Buyback Agreement. At no time did Lumar and Martin disclose to Plaintiff that that they were negotiating or had entered into any agreement related to any of the Remaining Property.

49. The elements of tortious interference with prospective contract are: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third

party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Gil Ramirez Grp., L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 417 (5th Cir. 2015) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). *Santander Consumer USA, Inc. v. Zeigler Chrysler Dodge Jeep-Downers Grove, LLC*, No. 3:16-CV-3310-B, 2017 U.S. Dist. LEXIS 98041, at *22-23 (N.D. Tex. 2017).

50. There was a reasonable probability that Plaintiff and Dixon would have entered into a contract under the Second Buyback Agreement. Dixon was willing to agree to the terms of the Second Buyback Agreement as indicated by Robert Potts, president and CEO of Dixon. Lumar acted with a conscious desire to prevent the contract or at least knew the interference was certain or substantially certain to occur as a result of Lumar's conduct. Lumar's personal knowledge of the relationship between Plaintiff and Dixon allowed it to usurp any potential deal between Plaintiff and Dixon for its own personal gain. Lumar's conduct was independently tortious or unlawful in that it used insider information to create a negative result for Plaintiff. If not for Lumar's interference, Plaintiff and Dixon would have completed their contract. Plaintiff suffered actual damage and loss in that Lumar deprived Plaintiff the ability to preserve its right in property.

51. As a result of Martin and Lumar's action as related to the 204.5 acres and the ROFR/Option, Dixon chose not to proceed with the Second Buyback Agreement causing Plaintiff to suffer damages. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT III**

**(Breach of Fiduciary Duties)**

52. Lumar was owned and operated by Martin. Lumar along with Martin owed certain formal and informal fiduciary duties to Plaintiff which were breached. Under the rules enacted and promulgated by the Texas Real Estate Commission ("**TREC**"), Martin as the licensed real estate agent for Plaintiff, owed the highest fiduciary obligations to Plaintiff such as the duties of loyalty, care, honesty, good faith and fair dealing, and maintain confidentiality including that they represent the interests of Plaintiff, be faithful and observant to the trust placed by Plaintiff, place no personal interest above that of Plaintiff, exercise integrity, deal honestly and fairly with all parties, and convey all known information that could affect decisions of the Plaintiff related to a property.[4]

53. Furthermore, Lumar should be held liable for Martin's actions because an alter ego relationship existed between Martin and Lumar. The alter-ego doctrine and veil piercing principles may be applied in reverse including under §21.223 of the Texas Business Organizations Code to hold a company such as Lumar liable for the for the liabilities of the individual member(s) such as Martin on the basis that the company is the alter-ego of the members or on the basis of fraud or other similar theories such as the breach of fiduciary duties described herein. *Clement v. Blackwood*, 2018 WL 826856 *11 (Tex. App.—Eastland 2018, pet. denied). This alter ego relationship is evidenced by the fact that Martin owns and operated Lumar. Holding only Martin liable would result in injustice. Martin had personal, insider knowledge of the relationship between Plaintiff and Dixon. Martin used Lumar as a veil to hide from his fiduciary duty.

---

[4] See §§ 531.1, 531.2, 535.2, 535.156 in Chapter 531 Canons of Professional Ethics and Conduct in the TREC Rules

54. Not only did Martin and Lumar owe formal fiduciary duties to Plaintiff, but they also owed the same fiduciary duties on an informal basis because of the special relationship that existed between Plaintiff (including its related entities) and Martin (including Lumar). Fiduciary duties can arise from informal relationships between the parties such as moral, social, domestic, or purely personal relationships. *Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex. 1962). Whether such a fiduciary relationship exists is determined from the actualities of the relationship between the persons involved and evidence of the justifiable trust and confidence that is necessary to create a fiduciary relationship. *Id*.

55. As previously described, Martin not only served as the real estate agent for Plaintiff, but Martin also physically managed the Original Property along with all property owned by Plaintiff's related entities in Parker County and nearby areas including controlling access, managing hunting and grazing leases. Martin also advised Plaintiff and assisted Plaintiff with obtaining the MUD on the Original Property and performing certain predevelopment work on the Remaining Land and other properties owned by Plaintiff's related entities such as surveying, platting, permitting, budgeting, and land planning. Martin had also been tasked with securing proposals from builders to purchase lots once Plaintiff developed the Remaining Property. Additionally, Martin was involved with Plaintiff's efforts to modify the Loan with Dixon and refinance the Loan with potential third party lenders including a part of the Second Buyback Agreement. Additionally, Plaintiff relied on Martin's physical knowledge of the Original Property, knowledge of the area including the real estate market, and land development knowledge and experience. As a result, Plaintiff developed a special relationship of trust and confidence with Martin which gave rise to Martin and Lumar owing informal fiduciary duties including duties of loyalty, care, and good faith and fair dealing to Plaintiff. Lumar and Martin failed to adhere to their

fiduciary obligations as a result of the allegations described above including as related to their contract and acquisition of the 6.15 acres, the 204.5 acres, and the option/ROFR on the remaining portion of the Remaining Property and their efforts to develop such property (collectively, "**Lumar Transactions**") which he and Lumar benefited from and which damaged Plaintiff.

56. Moreover, they also utilized and benefited from Plaintiff's confidential information that they acquired from Plaintiff during the course of Martins' representation and relationship with Plaintiff which they utilized in the performance of the Lumar Transactions.

57. As a result, Martin and Lumar breached their fiduciary duty and obligation to maintain confidentiality and not use or disclose Plaintiff's confidential information for their own purposes. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT IV**

**(Fraud)**

58. Martin and Lumar committed fraud including when Martin falsely represented to Plaintiff that he was there to do what he could and to help Plaintiff and its principal, Tim Barton, as related to the Original Property including to refinance, purchase the Remaining Property back from Dixon, and develop the Remaining Property. Instead, Martin and Lumar utilized such misrepresentations and their relationship of trust and confidence to obtain confidential and proprietary information which he used for his and Lumar's benefit without the knowledge or consent of Plaintiff in furtherance of the Lumar Transactions, and which was in direct conflict with Plaintiff's efforts to buy back the Remaining Property.

59. The elements of fraud include: 1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury. *Cyrak v. Lemon*, 919 F.2d 320 (5th Cir. 1990).

60. Lumar, through its owner and operator Martin, made a misstatement that it would help Plaintiff in relation to the Original Property and the Remaining Property. This was a material fact as Lumar used the information obtained through this process to cause harm to Plaintiff. Lumar intended to defraud Plaintiff, as evidenced by the eventual sale of property from Dixon to Lumar. Plaintiff relied on Lumar's owner and operator, Martin, as he was Plaintiff's real estate agent. The misstatement proximately caused the injury. The information Lumar obtained would not have been available if not for Plaintiff's reliance on the misstatements.

61. Furthermore, Lumar should be held liable because an alter ego relationship existed between Martin and Lumar. This alter ego relationship is evidenced by the fact that Martin owns and operates Lumar. Holding only Martin liable would result in injustice. Martin had personal, insider knowledge of the relationship between Plaintiff and Dixon. Martin used Lumar as a veil to perpetrate a fraud. The alter-ego doctrine and veil piercing principles may be applied in reverse including under §21.223 of the Texas Business Organizations Code to hold a company such as Lumar liable for the for the liabilities of the individual member(s) such as Martin on the basis that the company is the alter-ego of the members or on the basis of fraud. *Clement v. Blackwood*, 2018 WL 826856 at *11.

62. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT V**

**(Conversion)**

63. Through Martin's work with and representation of Plaintiff, Martin and Lumar possessed certain intellectual property and work product of Plaintiff related to the acquisition and development of the Original Property and Remaining Property including as related to the MUD, land planning, surveys, valuations, costs, platting, permitting, and land planning. (collectively, "**Work Produc**t") Martin and Lumar have utilized such Work Product for their own purposes as related to the Lumar Transactions without consent of Plaintiff resulting in Martin and Lumar's conversion of Plaintiff's Work Product and Plaintiff being damaged.

64. There are four elements to a conversion claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) Defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property. *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899.

65. Plaintiff had negotiated with Dixon for an agreement to repurchase, giving Plaintiff entitlement to possession of the property. Lumar used Work Product of Plaintiff to sour the agreement and cause Dixon to pursue an alternative agreement with Lumar. Plaintiff has made demand for the property. Lumar now as a part owner of the Property has not returned the portion of the property it obtained from Dixon. Lumar thus has converted property of the Plaintiff to its own use and enjoyment.

66. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT VI**

**(Fraud in Real Estate Transaction (Tex. Bus. Comm. Code §27.01))**

67. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein. In addition to the foregoing causes of action, Lumar through Martin's actions committed statutory fraud in a real estate transaction (Tex. Bus. Comm. Code §27.01) including through the fraudulent conduct described in the preceding paragraphs that they utilized in furtherance of the Lumar Transactions to acquire all or part of the Remaining Property which Plaintiffs seek to recover.

68. Fraud in a transaction involving real estate consists of a (1) false representation of a past or existing material fact, when the false representation is (A)made to the person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract . . . Tex. Bus. & Com. Code. Ann. § 27.01(a) (West 2009).

69. Lumar, through its owner and operator Martin, made false representations to Plaintiff that it would help in negotiating with Dixon. Lumar instead made a personal deal with Dixon for the purchase of the property in lieu of Dixon negotiating with Plaintiff. Plaintiff relied on Lumar's representations and negotiated a contract with Dixon under Martin's advisement. Lumar caused the negotiations to ultimately fail, causing harm to Plaintiff.

70. Furthermore, Lumar should be held liable because an alter ego relationship existed between Martin and Lumar. This alter ego relationship is evidenced by the fact that Martin owns and operates Lumar. Holding only Martin liable would result in injustice. Martin had personal, insider knowledge of the relationship between Plaintiff and Dixon. Martin used Lumar as a veil to perpetrate a fraud. The alter-ego doctrine and veil piercing principles may be applied in reverse including under §21.223 of the Texas Business Organizations Code to hold a company such as

Lumar liable for the for the liabilities of the individual member(s) such as Martin on the basis that the company is the alter-ego of the members or on the basis of fraud or other similar theories. *Clement v. Blackwood*, 2018 WL 826856 at *11.

71. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT VII**

**(Conspiracy)**

72. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein. Lumar conspired with Martin; Hazlewood; Aledo West, Hughes; Railhead; GH Lumar JV; and/or GH Lumar, LLC to commit fraud including fraud in a real estate transaction , converted Plaintiff's Work Product, tortiously interfered with the First Buyback Agreement, tortiously interfered with the Second Buyback Agreement, and breached the fiduciary duties that were owed to Plaintiff as previously described in the foregoing counts in order to further the Lumar Transactions causing Plaintiff to be damaged.

73. "A conspiracy to defraud involves (1) two or more persons; (2) with a common purpose; (3) undertaking a common action to defraud; (4) where each person possesses intent to defraud; and (5) each person understands that the other conspirators share the common purpose." *Durrschmidt v. Frost Nat'l Bank (In re R&K Fabricating, Inc.)*, Nos. 10-33878, 12-03177, 2013 Bankr. LEXIS 1192, at *17 (Bankr. S.D. Tex. 2013) (citing *Bayou Terrace Investment Corp. et al. v. Lyles*, 881 S.W. 2d 810, 815 (Tex. App.—Hous. [1st Dist.] 1994)).

74. Here, Martin along with Lumar acted in common with the several aforementioned persons for the purpose of, and intent to, defraud the Plaintiff.

75. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

**COUNT VIII**

**Declaratory Judgment**

76. Plaintiff incorporates the allegations in the preceding paragraphs as if fully set forth herein. Plaintiff seeks a declaratory judgment that Lumar is not a bona fide purchaser related to the Lumar Transactions. A bona fide purchaser is one who acquires property in good faith, for value, and without notice, constructive or actual, of any third party claim or interest. *Madison v. Gordon,* 39 S.W.3d 604, 606 (Tex. 2001); *Houston Oil Co. v. Hayden*, 135 S.W. 1149, 1152 (Tex. 1911); *Carter v. Converse*, 550 S.W.2d 322, 329 (Tex. Civ. App.--Tyler 1977, writ ref'd n.r.e.). Notice may be constructive or actual. *Madison,* 39 S.W.3d at 606. *Flack v. First Nat'l Bank*, 226 S.W.2d 628, 631 (Tex. 1950); *American Surety Co. v. Bache*, 82 S.W.2d 181, 183 (Tex. Civ. App.--Fort Worth 1935, writ ref'd). Actual notice rests on personal information or knowledge. *Madison,* 39 S.W.3d at 606 Constructive notice is notice the law imputes to a person not having personal information or knowledge. *Id*.

77. Given Lumar's notice of the claims and interest of Plaintiff in the Remaining Property, Lumar had constructive and/or actual knowledge of Plaintiff's claims to the Property. Furthermore, Lumar did not acquire any of the Remaining Property including the ROFR or Option in good faith based on the preceding allegations.

78. Either because of Lumar's knowledge of Plaintiff's claims or because of Lumar's lack of good faith, it was not a bona fide purchaser of any of the Remaining Property, the ROFR, or the Option.

79. Plaintiff requests that Lumar's Complaint be denied, that Lumar be ordered to return the property, and that Plaintiff be awarded damages.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that this Court deny relief requested in Lumar Land & Cattle, LLC's Complaint for the reasons that it is (i) not a good faith transferee pursuant to the provisions of 11 U.S.C. § 550(b); (ii) not a bona fide purchaser for value of the subject real property; and that (iii) expunging the Notice of Lis Pendens as to the subject real property is inappropriate for lack of status as a good faith transferee and bona fide purchaser. Finally, Plaintiff seeks return of the Property acquired by Lumar from Dixon as well as damages against Lumar, including costs and fees and further requests that the Court grant such other and further relief to which it may show itself justly entitled.

DATED: March 21, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Sydney A. Ollar
State Bar No. 24125932
Austin Y. Taylor
Louisiana Bar No. 37325
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
austin@joycelindauer.com
sydney@joycelindauer.com
ATTORNEYS FOR DEBTOR/PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 21, 2022, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties receiving electronic notice in this case.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:**<br><br>**BM318, LLC,**<br><br>**Debtor.** | §<br>§<br>§<br>§<br>§ | **Case No. 20-42789-mxm11** |
| **BM318, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE DIXON WATER FOUNDATION,**<br><br>**Defendant.**<br><br>**LUMAR LAND & CATTLE, LLC**<br><br>**Plaintiff-in-Intervention.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adv. Pro. No. 21-04051-mxm** |

**PLAINTIFF-IN-INTERVENTION'S ANSWER
<u>TO PLAINTIFF'S COUNTERCLAIMS</u>**

**[Relates to Adv. Dkt. No. 40]**

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Lumar Land & Cattle, LLC ("<u>Lumar</u>" or "<u>Intervenor</u>"), plaintiff-in-

intervention in the above-styled adversary proceeding, and respectfully answers BM318, LLC's ("BM318" or "Plaintiff") *Original Answer to Plaintiff-In-Intervention Lumar Land and Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment and Counterclaims Against Intervenor* [Adv. Dkt. No. 40] (the "Counterclaim"):

## I. ANSWERS TO ALLEGATIONS

1. The first allegation arguably requiring a response is found in paragraph 7 of the Counterclaim. Lumar currently lacks sufficient information with which to admit or deny whether any deed "was held in escrow" as alleged in paragraph 7, and therefore Lumar currently denies such allegation. Further, the effective date of any conveyance is a legal conclusion to which no answer is required; however, to the extent an answer is required, Lumar denies the allegation contained in paragraph 7 of the Counterclaim.

2. With respect to paragraph 9 of the Counterclaim, Lumar admits that Jim Martin is a Texas licensed real estate agent, but is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity or perhaps in connection with Railhead Realty, LLC. Therefore, Lumar currently denies such allegations. The remaining statements in paragraph 9, including those attempting to implicate Lumar based on the alleged actions and/or knowledge of Mr. Martin as one of two managing members of Lumar, are either legal conclusions or allegations which Lumar denies.

3. The first sentence of paragraph 13 of the Counterclaim does not require a response. Beginning with the second sentence, paragraph 13 contains legal conclusions to which no answer is required, or otherwise, contains allegations which Lumar denies.

4. While the first sentence of paragraph 16 of the Counterclaim does not require a response, Lumar denies the allegations contained within the second sentence of paragraph 16.

5. Paragraph 17 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies paragraph 17 of the Counterclaim. Lumar denies the remaining allegations in this paragraph.

6. Lumar denies the factual allegations contained within paragraph 19 of the Counterclaim, and asserts that the remaining statements are legal conclusions to which no answer is required. However, to the extent an answer is required, Lumar denies those allegations as well.

7. Lumar denies the factual allegations contained within paragraph 22 of the Counterclaim, and asserts that the remaining statements are legal conclusions to which no answer is required. However, to the extent an answer is required, Lumar denies those allegations as well.

8. With respect to paragraph 23 of the Counterclaim, Lumar generally admits that Jim Martin, individually, may have had a prior working relationship with the Plaintiff, but Lumar is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

9. Answering paragraph 24 of the Counterclaim, Lumar generally admits the allegations contained while further answering that the referenced contract and loan documentation, if and when authenticated, shall speak for themselves. Lumar is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

10. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 25 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar

currently denies such allegations.

11. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 26 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

12. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 27 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

13. With respect to the first and third sentences of paragraph 28 of the Complaint, Lumar generally admits the allegations contained while further answering that the referenced contract, if and when authenticated, shall speak for itself. Lumar is without sufficient information with which to admit or deny the remaining allegations contained within paragraph 28 of the Counterclaim, and therefore, Lumar currently denies such allegations. Further answering paragraph 28 of the Counterclaim, Lumar answers that the documents referenced in paragraph 28, if and when authenticated, shall speak for themselves.

14. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 29 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced Deed in Lieu, if and when authenticated, shall speak for itself.

15. Lumar is without sufficient information with which to admit or deny the allegations contained within the first sentence of paragraph 30 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced contract, if and when

authenticated, shall speak for itself. Lumar denies the allegations in the second sentence of paragraph 30 of the Counterclaim.

16. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 31 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced "First Buy Back Agreement", if and when authenticated, shall speak for itself.

17. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 32 of the Counterclaim.

18. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 33 of the Counterclaim, and therefore Lumar currently denies such allegations. Lumar further answers that the referenced "Second Buy Back Agreement", if and when authenticated, shall speak for itself.

19. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 34 of the Counterclaim as to Plaintiff's actions and with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

20. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 35 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations. Lumar further answers that the agreement referenced, if and when authenticated, shall speak for itself.

21. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 36 of the Counterclaim, and therefore Lumar currently denies such

allegations. Lumar further answers that the referenced communications, if in writing, and if and when authenticated, shall speak for themselves.

22. While Lumar denies the "in lieu of" allegation and any associated connotations, Lumar generally admits the remaining allegations contained in paragraph 37 of the Counterclaim.

23. Lumar denies the allegations contained in paragraph 38 of the Counterclaim.

24. Lumar is without sufficient information with which to admit or deny the allegation contained within paragraph 39 of the Counterclaim with respect to what Defendant Dixon Water Foundation ("Dixon") – or Mr. Martin, in his individual capacity – may have done, or not done, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegation.

25. Paragraph 40 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar generally admits the allegations contained in paragraph 40 of the Counterclaim. Lumar further answers that the referenced "Memorandum of Option Agreement", if and when authenticated, shall speak for itself.

26. Lumar is without sufficient information with which to admit or deny the allegation contained within paragraph 41 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegation.

27. Lumar denies the factual allegations contained within paragraph 42 of the Counterclaim. The remaining portions of paragraph 42 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

28. Paragraph 43 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 43 of the Counterclaim.

29. Lumar denies the factual allegations contained within paragraph 44 of the Counterclaim. The remaining portions of paragraph 44 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

30. Lumar denies the factual allegations contained within paragraph 45 of the Counterclaim. The remaining portions of paragraph 45 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well

31. Answering paragraph 46 of the Counterclaim, Lumar incorporates its responses to each of the respective paragraphs necessitating a response, as they are stated above.

32. Lumar denies the allegations contained in paragraph 47 of the Counterclaim.

33. Lumar admits that it purchased the 204.50 acres from Dixon. Lumar denies the remaining allegations contained within paragraph 48 of the Counterclaim, including those pertaining to Dixon's motivations or decisions, which Lumar is without sufficient information with which to admit or deny, and thus denies.

34. Paragraph 49 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 49 of the Counterclaim.

35. Lumar denies the factual allegations contained within paragraph 50 of the Counterclaim. The remaining portions of paragraph 50 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

36. Lumar denies the allegations contained within paragraph 51 of the Counterclaim, including those pertaining to Dixon's motivations or decisions, which Lumar is without sufficient information with which to admit or deny, and thus denies.

37. Lumar denies the factual allegations contained within paragraph 52 of the

Counterclaim. The remaining allegations in Paragraph 52 of the Counterclaim are legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 52 of the Counterclaim.

38. Lumar denies the factual allegations contained within paragraph 53 of the Counterclaim. Paragraph 53 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 53 of the Counterclaim.

39. Paragraph 54 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 54 of the Counterclaim.

40. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 55 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity or what BM318 may, or may not, have relied upon, as it is pled by the Plaintiff. Lumar further answers that paragraph 55 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 54 of the Counterclaim.

41. Lumar denies the allegations contained in paragraph 56 of the Counterclaim.

42. Paragraph 57 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 57 of the Counterclaim.

43. Paragraph 58 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 58 of the Counterclaim.

44. Paragraph 59 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 59 of the Counterclaim.

45. Paragraph 60 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 60 of the Counterclaim.

46. Lumar denies the factual allegations contained within paragraph 61 of the Counterclaim. Paragraph 61 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 61 of the Counterclaim.

47. Lumar denies the requests contained in paragraph 62 of the Counterclaim.

48. Lumar denies the factual allegations contained within paragraph 63 of the Counterclaim. The remaining portions of paragraph 63 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

49. Paragraph 64 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 64 of the Counterclaim.

50. Lumar denies the factual allegations contained within paragraph 65 of the Counterclaim. The remaining portions of paragraph 65 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

51. Lumar denies the requests contained in paragraph 66 of the Counterclaim.

52. Paragraph 67 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

paragraph 67 of the Counterclaim.

53. Paragraph 68 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 68 of the Counterclaim.

54. Lumar denies the allegations contained in paragraph 69 of the Counterclaim.

55. Lumar denies the factual allegations contained within paragraph 70 of the Counterclaim. Paragraph 70 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 70 of the Counterclaim.

56. Lumar denies the requests contained in paragraph 71 of the Counterclaim.

57. Paragraph 72 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 72 of the Counterclaim.

58. Paragraph 73 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 73 of the Counterclaim.

59. Paragraph 74 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 74 of the Counterclaim.

60. Lumar denies the requests contained in paragraph 75 of the Counterclaim.

61. Paragraph 76 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 76 of the Counterclaim.

62. Lumar denies the allegations contained in paragraph 77 of the Counterclaim.

63. Paragraph 78 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 78 of the Counterclaim.

64. Lumar denies the requests contained in paragraph 79 of the Counterclaim.

65. Lumar denies that BM318 is entitled to any judgment, damages, or other relief as requested by BM318, including but not limited to that sought in BM318's prayer for relief in the Counterclaim.

## II. AFFRIMATIVE DEFENSES

1. Failure to State a Claim. The Counterclaim fails to state a claim against Lumar upon which relief can be granted because Plaintiff cannot establish a prima facia case on any of Plaintiff's asserted Claims for Relief, especially a prima facia case against Lumar.

2. Estoppel. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of estoppel.

3. Waiver. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of waiver.

4. Laches. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of laches.

5. Unclean Hands. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of unclean hands.

6. Consent. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of consent.

7. Ratification. Plaintiff's Claims for Relief as set forth in the Counterclaim are

barred, in whole or in part, by the doctrine of ratification.

8. Preclusion. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the principles of preclusion, collateral estoppel, law of the case, and/or *res judicata*.

**WHEREFORE, PREMISES CONSIDERED**, Lumar respectfully prays that the Court enter an order and judgment denying BM318 all relief requested in the Counterclaim, entering a judgment for Lumar as requested in *Plaintiff-In-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment* [Adv. Dkt. No. 33], and granting Lumar all other relief as is just and proper.

Dated: April 11, 2022,

Respectfully submitted,

*/s/ Joshua L. Shepherd*
KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**COUNSEL FOR LUMAR LAND & CATTLE, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 11, 2022, a true and correct copy of the foregoing *Answer* was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, including both the Debtor-Plaintiff BM318 and Dixon, through counsel.

*/s/ Joshua L. Shepherd*
Joshua L. Shepherd

Kimberly P. Harris
Texas Bar No. 24002234
kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
jshepherd@qslwm.com
QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, PC
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **In re:**<br><br>**BM318, LLC,**<br><br>**Debtor.** | §<br>§<br>§<br>§<br>§ | **Case No. 20-42789-mxm11** |
| **BM318, LLC,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE DIXON WATER FOUNDATION,**<br><br>**Defendant.**<br><br>**LUMAR LAND & CATTLE, LLC**<br><br>**Plaintiff-in-Intervention.** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Adv. Pro. No. 21-04051-mxm** |

# PLAINTIFF-IN-INTERVENTION'S FIRST AMENDED ANSWER TO PLAINTIFF'S COUNTERCLAIMS

**[Relates to Adv. Dkt. No. 40]**

TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUPTCY JUDGE:

COMES NOW Lumar Land & Cattle, LLC ("Lumar" or "Intervenor"), plaintiff-in-intervention in the above-styled adversary proceeding, and respectfully files this amended answer to BM318, LLC's ("BM318" or "Plaintiff") *Original Answer to Plaintiff-In-Intervention Lumar Land and Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment and Counterclaims Against Intervenor* [Adv. Dkt. No. 40] (the "Counterclaim"):

## I. ANSWERS TO ALLEGATIONS

1. The first allegation arguably requiring a response is found in paragraph 7 of the Counterclaim. Lumar currently lacks sufficient information with which to admit or deny whether any deed "was held in escrow" as alleged in paragraph 7, and therefore Lumar currently denies such allegation. Further, the effective date of any conveyance is a legal conclusion to which no answer is required; however, to the extent an answer is required, Lumar denies the allegation contained in paragraph 7 of the Counterclaim.

2. With respect to paragraph 9 of the Counterclaim, Lumar admits that Jim Martin is a Texas licensed real estate agent, but is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity or perhaps in connection with Railhead Realty, LLC. Therefore, Lumar currently denies such allegations. The remaining statements in paragraph 9, including those attempting to implicate Lumar based on the alleged actions and/or knowledge of Mr. Martin as one of two managing members of Lumar, are either legal conclusions or allegations which Lumar denies.

3. The first sentence of paragraph 13 of the Counterclaim does not require a response. Beginning with the second sentence, paragraph 13 contains legal conclusions to which no answer is required, or otherwise, contains allegations which Lumar denies.

4. While the first sentence of paragraph 16 of the Counterclaim does not require a

response, Lumar denies the allegations contained within the second sentence of paragraph 16.

5. Paragraph 17 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies paragraph 17 of the Counterclaim. Lumar denies the remaining allegations in this paragraph.

6. Lumar denies the factual allegations contained within paragraph 19 of the Counterclaim, and asserts that the remaining statements are legal conclusions to which no answer is required. However, to the extent an answer is required, Lumar denies those allegations as well.

7. Lumar denies the factual allegations contained within paragraph 22 of the Counterclaim, and asserts that the remaining statements are legal conclusions to which no answer is required. However, to the extent an answer is required, Lumar denies those allegations as well.

8. With respect to paragraph 23 of the Counterclaim, Lumar generally admits that Jim Martin, individually, may have had a prior working relationship with the Plaintiff, but Lumar is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

9. Answering paragraph 24 of the Counterclaim, Lumar generally admits the allegations contained while further answering that the referenced contract and loan documentation, if and when authenticated, shall speak for themselves. Lumar is without sufficient information with which to admit or deny the allegations with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

10. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 25 of the Counterclaim with respect to what Mr. Martin may have

done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

11. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 26 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

12. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 27 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, or perhaps in connection with Railhead Realty, LLC, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

13. With respect to the first and third sentences of paragraph 28 of the Complaint, Lumar generally admits the allegations contained while further answering that the referenced contract, if and when authenticated, shall speak for itself. Lumar is without sufficient information with which to admit or deny the remaining allegations contained within paragraph 28 of the Counterclaim, and therefore, Lumar currently denies such allegations. Further answering paragraph 28 of the Counterclaim, Lumar answers that the documents referenced in paragraph 28, if and when authenticated, shall speak for themselves.

14. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 29 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced Deed in Lieu, if and when authenticated, shall speak for itself.

15. Lumar is without sufficient information with which to admit or deny the allegations contained within the first sentence of paragraph 30 of the Counterclaim, and therefore, Lumar

currently denies such allegations. Lumar further answers that the referenced contract, if and when authenticated, shall speak for itself. Lumar denies the allegations in the second sentence of paragraph 30 of the Counterclaim.

16. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 31 of the Counterclaim, and therefore, Lumar currently denies such allegations. Lumar further answers that the referenced "First Buy Back Agreement", if and when authenticated, shall speak for itself.

17. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 32 of the Counterclaim.

18. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 33 of the Counterclaim, and therefore Lumar currently denies such allegations. Lumar further answers that the referenced "Second Buy Back Agreement", if and when authenticated, shall speak for itself.

19. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 34 of the Counterclaim as to Plaintiff's actions and with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations.

20. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 35 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegations. Lumar further answers that the agreement referenced, if and when authenticated, shall speak for itself.

21. Lumar is without sufficient information with which to admit or deny the allegations

contained within paragraph 36 of the Counterclaim, and therefore Lumar currently denies such allegations. Lumar further answers that the referenced communications, if in writing, and if and when authenticated, shall speak for themselves.

22. While Lumar denies the "in lieu of" allegation and any associated connotations, Lumar generally admits the remaining allegations contained in paragraph 37 of the Counterclaim.

23. Lumar denies the allegations contained in paragraph 38 of the Counterclaim.

24. Lumar is without sufficient information with which to admit or deny the allegation contained within paragraph 39 of the Counterclaim with respect to what Defendant Dixon Water Foundation ("Dixon") – or Mr. Martin, in his individual capacity – may have done, or not done, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegation.

25. Paragraph 40 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar generally admits the allegations contained in paragraph 40 of the Counterclaim. Lumar further answers that the referenced "Memorandum of Option Agreement", if and when authenticated, shall speak for itself.

26. Lumar is without sufficient information with which to admit or deny the allegation contained within paragraph 41 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity, as it is pled by the Plaintiff. Therefore, Lumar currently denies such allegation.

27. Lumar denies the factual allegations contained within paragraph 42 of the Counterclaim. The remaining portions of paragraph 42 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

28. Paragraph 43 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

paragraph 43 of the Counterclaim.

29. Lumar denies the factual allegations contained within paragraph 44 of the Counterclaim. The remaining portions of paragraph 44 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

30. Lumar denies the factual allegations contained within paragraph 45 of the Counterclaim. The remaining portions of paragraph 45 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well

31. Answering paragraph 46 of the Counterclaim, Lumar incorporates its responses to each of the respective paragraphs necessitating a response, as they are stated above.

32. Lumar denies the allegations contained in paragraph 47 of the Counterclaim.

33. Lumar admits that it purchased the 204.50 acres from Dixon. Lumar denies the remaining allegations contained within paragraph 48 of the Counterclaim, including those pertaining to Dixon's motivations or decisions, which Lumar is without sufficient information with which to admit or deny, and thus denies.

34. Paragraph 49 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 49 of the Counterclaim.

35. Lumar denies the factual allegations contained within paragraph 50 of the Counterclaim. The remaining portions of paragraph 50 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

36. Lumar denies the allegations contained within paragraph 51 of the Counterclaim, including those pertaining to Dixon's motivations or decisions, which Lumar is without sufficient information with which to admit or deny, and thus denies.

37. Lumar denies the factual allegations contained within paragraph 52 of the Counterclaim. The remaining allegations in Paragraph 52 of the Counterclaim are legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 52 of the Counterclaim.

38. Lumar denies the factual allegations contained within paragraph 53 of the Counterclaim. Paragraph 53 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 53 of the Counterclaim.

39. Paragraph 54 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 54 of the Counterclaim.

40. Lumar is without sufficient information with which to admit or deny the allegations contained within paragraph 55 of the Counterclaim with respect to what Mr. Martin may have done, or not done, in his individual capacity or what BM318 may, or may not, have relied upon, as it is pled by the Plaintiff. Lumar further answers that paragraph 55 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 54 of the Counterclaim.

41. Lumar denies the allegations contained in paragraph 56 of the Counterclaim.

42. Paragraph 57 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 57 of the Counterclaim.

43. Paragraph 58 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

paragraph 58 of the Counterclaim.

44. Paragraph 59 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 59 of the Counterclaim.

45. Paragraph 60 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 60 of the Counterclaim.

46. Lumar denies the factual allegations contained within paragraph 61 of the Counterclaim. Paragraph 61 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 61 of the Counterclaim.

47. Lumar denies the requests contained in paragraph 62 of the Counterclaim.

48. Lumar denies the factual allegations contained within paragraph 63 of the Counterclaim. The remaining portions of paragraph 63 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

49. Paragraph 64 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 64 of the Counterclaim.

50. Lumar denies the factual allegations contained within paragraph 65 of the Counterclaim. The remaining portions of paragraph 65 assert legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies those allegations as well.

51. Lumar denies the requests contained in paragraph 66 of the Counterclaim.

52. Paragraph 67 of the Counterclaim contains legal conclusions to which no answer is

required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 67 of the Counterclaim.

53. Paragraph 68 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 68 of the Counterclaim.

54. Lumar denies the allegations contained in paragraph 69 of the Counterclaim.

55. Lumar denies the factual allegations contained within paragraph 70 of the Counterclaim. Paragraph 70 of the Counterclaim also contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 70 of the Counterclaim.

56. Lumar denies the requests contained in paragraph 71 of the Counterclaim.

57. Paragraph 72 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 72 of the Counterclaim.

58. Paragraph 73 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 73 of the Counterclaim.

59. Paragraph 74 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 74 of the Counterclaim.

60. Lumar denies the requests contained in paragraph 75 of the Counterclaim.

61. Paragraph 76 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in

paragraph 76 of the Counterclaim.

62. Lumar denies the allegations contained in paragraph 77 of the Counterclaim.

63. Paragraph 78 of the Counterclaim contains legal conclusions to which no answer is required; however, to the extent an answer is required, Lumar denies the allegations contained in paragraph 78 of the Counterclaim.

64. Lumar denies the requests contained in paragraph 79 of the Counterclaim.

65. Lumar denies that BM318 is entitled to any judgment, damages, or other relief as requested by BM318, including but not limited to that sought in BM318's prayer for relief in the Counterclaim.

## II. AFFRIMATIVE DEFENSES

1. Failure to State a Claim. The Counterclaim fails to state a claim against Lumar upon which relief can be granted because Plaintiff cannot establish a prima facia case on any of Plaintiff's asserted Claims for Relief, especially a prima facia case against Lumar.

2. Estoppel. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of estoppel.

3. Waiver. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of waiver.

4. Laches. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of laches.

5. Unclean Hands. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of unclean hands.

6. Consent. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of consent.

7. Ratification. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of ratification.

8. Preclusion. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the principles of preclusion, collateral estoppel, law of the case, and/or *res judicata.*

9. Judicial Estoppel. Plaintiff's Claims for Relief as set forth in the Counterclaim are barred, in whole or in part, by the doctrine of judicial estoppel.

**WHEREFORE, PREMISES CONSIDERED**, Lumar respectfully prays that the Court enter an order and judgment denying BM318 all relief requested in the Counterclaim, entering a judgment for Lumar as requested in *Plaintiff-In-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment* [Adv. Dkt. No. 33], and granting Lumar all other relief as is just and proper.

Dated: July 7, 2022.

Respectfully submitted,

*/s/ Kimberly P. Harris*

KIMBERLY P. HARRIS
State Bar No. 24002234
kharris@qslwm.com
JOSHUA L. SHEPHERD
State Bar No. 24058104
jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS, WINSLETT & MOSER, P.C.**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

**COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**- And -**

J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**CO-COUNSEL FOR INTERVENOR LUMAR LAND & CATTLE, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 7, 2022, a true and correct copy of the foregoing was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this case, including both the Debtor-Plaintiff BM318 and Dixon, through counsel.

*/s/ Kimberly P. Harris*
Kimberly P. Harris

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor. | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |

**DEFENDANT THE DIXON WATER FOUNDATION'S FIRST**
**SET OF INTERROGATORIES TO PLAINTIFF BM318, LLC**

To: Plaintiff BM318, LLC, by and through its counsel of record, Joyce W. Lindauer, Guy H. Holman, and Kerry S. Alleyne, Joyce W. Lindauer Attorney, PLLC, 1412 Main Street, Suite 500, Dallas, Texas 75202.

Defendant, The Dixon Water Foundation, by and through its undersigned counsel and pursuant to rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP"), as made applicable by rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), hereby serves and propounds upon Plaintiff, BM318, LLC, this *First Set of Interrogatories* (each, an "Interrogatory," and collectively, these "Interrogatories").

## I. DEFINITIONS

For purposes of these Interrogatories, in addition to the defined terms appearing above, the following terms (whether capitalized or un-capitalized) shall have the meanings ascribed to them below:

“**Adversary Proceeding**” means the above-captioned adversary proceeding, styled *BM318, LLC v. The Dixon Water Foundation*, Adv. Pro. No. 21-04051, pending before the Bankruptcy Court.

“**BM318**,” “**Debtor**,” “**Plaintiff**,” “**You**,” and “**Your**” mean BM318, LLC, the Debtor under the Bankruptcy Case and the plaintiff and counter-defendant in the Adversary Proceeding, including its past and present principals, agents, employees, directors, managers, members, officers, owners, representatives, consultants, independent contractors, and other Persons acting or purporting to act under BM318, LLC’s control or on its behalf.

“**Bankruptcy Case**” means the above-captioned chapter 11 case, styled *In re: BM318, LLC*, Case No. 20-42789, pending before the Bankruptcy Court.

“**Bankruptcy Code**” means Title 11 of the United States Code, §§ 101 *et seq*., as amended.

“**Bankruptcy Court**” means the United States Bankruptcy Court for the Northern District of Texas.

“**Chevreaux Appraisal Report**” means the Appraisal Report prepared by Chris Chevreaux concerning the Remaining Property, transmitted to Jim Pruitt as Chief Appraiser for AgAmerica Lending LLC, by letter dated September 28, 2020, and with an effective date of June 1, 2021.

“**Complaint**” means the *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* [Adversary Proceeding Docket No. 1].

“**Confirmation Order**” means that certain *Order Confirming Debtor’s First Amended Plan of Reorganization Dated November 19, 2020, as Modified* [Bankruptcy Case Docket No. 106].

“**Communication(s)**” means any written, oral, visual, mechanical or electronic transmission or conveyance of information (in the form of facts, ideas, inquiries, information, opinions, thoughts or otherwise), including, but not limited to, email transmissions and text messages.

“**Concerning**” means relating to in any manner, referring to, describing, evidencing, analyzing, containing, correlating, discussing, embodying, evaluating, reflecting, regarding, respecting, stating and supporting.

“**Counterclaim**” means the *Defendant, The Dixon Water Foundation’s Answer and Affirmative Defenses to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 and Counterclaim* [Adversary Proceeding Docket No. 8].

“**Deed of Trust**” means that certain *Deed of Trust, Security Agreement and Financing Statement*, dated as of November 26, 2018, and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas.

"**<u>Deed in Escrow Agreement</u>**" means that certain *Deed in Escrow Agreement*, dated February 27, 2020, executed by BM318, Dixon, and American Escrow Company.

"**<u>Dixon</u>**" means The Dixon Water Foundation, the named defendant and counter-plaintiff in the Adversary Proceeding, as well as its officers, directors, employees, agents, representatives, of other Persons acting or purporting to act under its control or on its behalf.

"**<u>Document</u>**" has the broadest meaning cognizable under the FRCP, including any: (a) handwritten, typed, copied, and/or printed Communication or matter of any kind, including, without limitation, agreements, contracts, correspondence, forecasts, memoranda, notes, jottings, speeches, press releases, ledgers, journals, examinations, statistics, letters, facsimiles, telegrams, minutes, time records, payroll records, expense records, reports, studies, training manuals, canceled checks, statements, receipts, delivery tickets, returns, summaries, work orders, purchase orders, pamphlets, books, prospectuses, statements of operation, offers, notations or written memorializations of any conversations, telephone calls, meetings, or other Communications, bulletins, printed matter, computer printouts, teletypes, invoices, and worksheets, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing, and shall include the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise; (b) graphic or aural memorializations, records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures; and (c) electronically stored, mechanical or electric records or representations of any kind, including, without limitation, metadata, e-mails, text messages, tapes, cassettes, disks, recordings, and transcriptions of the foregoing.

"**<u>JMJ</u>**" means JMJ Development, LLC, including its past and present principals, agents, employees, directors, managers, members, officers, owners, representatives, consultants, independent contractors, and other Persons acting or purporting to act under JMJ Development, LLC's control or on its behalf.

"**<u>Loan</u>**" means Dixon's financing to BM318 in the original principal amount of $32,946,900.00, and which is memorialized by the Note and other Loan Documents.

"**<u>Loan Documents</u>**" collectively refers to the Note, the Deed of Trust, the Loan Modifications, the Deed in Escrow Agreement, and the Special Warranty Deed.

"**<u>Loan Modifications</u>**" collectively refers to:

a. that certain *Loan Modification and Forbearance Agreement*, dated July 26, 2019, executed by BM318 and Dixon (the "**<u>First Loan Modification</u>**");

b. that certain *Second Loan Modification Agreement*, dated October 1, 2019, executed by BM318 and Dixon (the "**<u>Second Loan Modification</u>**");

c. that certain *Third Loan Modification Agreement*, dated December 17, 2019, executed by BM318 and Dixon (the "**<u>Third Loan Modification</u>**");

d. that certain *Fourth Loan Modification Agreement*, dated January 8, 2020, executed by BM318 and Dixon (the "**<u>Fourth Loan Modification</u>**"); and

e. that certain *Fifth Loan Modification Agreement*, dated January 31, 2020, executed by BM318 and Dixon (the "**Fifth Loan Modification**").

"**Note**" means that certain *Promissory Note* (as amended or modified), dated November 26, 2018, executed by BM318 and payable to the order of Dixon in the original principal amount of $32,946,900.00 for repayment of the Loan.

"**Person**" means any natural person or business, legal or governmental entity, or association. When the referenced person is an entity of any type, the term includes reference to all current or former officers, directors, employees, agents, shareholders, trustees, managers, members and/or representatives in their capacities as such.

"**Petition Date**" means September 1, 2020, the date on which the Bankruptcy Case was commenced before the Bankruptcy Court.

"**Plan**" means the *Debtor's First Amended Plan of Reorganization Dated November 19, 2020* [Bankruptcy Case Docket No. 39], as modified by the *First Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 79] and the *Third Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 100], as confirmed by the Confirmation Order.

"**RFPs**" means *Defendant The Dixon Water Foundation's First Requests for Production of Documents and Other Items to Plaintiff BM318, LLC*, served contemporaneously herewith, and each request contained therein, a "**Request for Production**".

"**Real Property**" refers to the 2055.70 acres of unimproved real property in Parker County, Texas, known as Bear Creek Ranch, as described in Exhibit A to the Note.

"**Remaining Land**" refers to the 1,531.75 acres that remained encumbered by the Deed of Trust as of the date of the Fifth Loan Modification, and which was subject to the Special Warranty Deed, as described in Exhibit A to the Special Warranty Deed.

"**Special Warranty Deed**" means that certain *Special Warranty Deed* filed under Document Number 202019524 with the Official Public Records of Parker County, Texas.

## II. INSTRUCTIONS

1. **Deadline for Responses**. Pursuant to FRCP 33(b)(2), as made applicable by Bankruptcy Rule 7033, You are required to serve Your answers and any objections to the Interrogatories set forth herein on Dixon, by and through its undersigned counsel, by no later than thirty (30) days from the date of service hereof.

2. **Form of Responses**. Pursuant to FRCP 33(b)(3), as made applicable by Bankruptcy Rule 7033, You must answer each of the Interrogatories separately and fully in writing under oath. Pursuant to FRCP 33(b)(1), as made applicable by Bankruptcy Rule 7033, the Interrogatories must be answered by one or more of Your officers or agents, whose capacity must be furnished as part of Your responses, and if answered by more than one or more of Your officers or agents, then a separate verification is required of each Person who responds to any portion of

the Interrogatories, identifying the specific Interrogatories answered by each such Person. Pursuant to FRCP 33(b)(5), as made applicable by Bankruptcy Rule 7033, the Person(s) who make(s) the answers must sign them, and the attorney who objects must sign any objections.

3. **Objections**. Pursuant to FRCP 33(b)(4), as made applicable by Bankruptcy Rule 7033, if You object to any of the Interrogatories, then as to each such Interrogatory that is objected to, You must state the grounds for objection with specificity, and any ground not stated in a timely objection will be deemed waived unless the failure to specify such ground is excused by the Bankruptcy Court for good cause.

4. **Privileged Matters**. If You refuse to answer any Interrogatory or any part thereof on the grounds of privilege, You must provide a privilege log that identifies the basis of the privilege claimed, the general nature and subject matter of the information subject to such privilege, the Interrogatories and/or portions thereof to which the asserted privilege applies, the grounds for objection with sufficient particularity in order to enable Dixon and the Bankruptcy Court to determine the validity of the assertion of privilege, and all persons receiving such asserted, privileged information, regardless of the time at which such information as received.

5. **Singular / Plural Tenses Inclusive**. The singular form of a word includes the plural form of that word and the plural form of a word includes the singular form.

6. "**And**" and "**Or**" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information within the scope of a Request.

7. "**Including**" shall be interpreted in every instance as meaning "including, but not limited to" and shall not be interpreted as having any exclusive meaning.

8. "**Any**" shall be interpreted in every instance as meaning "any and/or all" and shall not be interpreted as having any exclusive meaning.

9. **Interrogatories Continuing**. Pursuant to FRCP 26(e), as made applicable by Bankruptcy Rule 7026, these Interrogatories are hereby expressly made continuing and are subject to timely supplementation and/or correction as required by said rule. If the answer to any part of an Interrogatory is not presently known or cannot be provided, You must answer the Interrogatory as fully as possible, identify such portion that cannot presently be answered along with the reason for your inability to presently answer it, and if and when such information becomes available, You are required to furnish and disclose such information to supplement your answer.

10. **Applicable Period**. Unless otherwise specified, these Interrogatories apply to the time period beginning November 1, 2018, through the present.

## III. INTERROGATORIES

**INTERROGATORY NO. 1:** Describe in detail all of Your reasons for entering into the Deed in Escrow Agreement transaction to Dixon, including without limitation: (i) all tangible and intangible benefits that You intended or expected to receive pursuant to that agreement at the time it was executed; (ii) all other consideration that You intended or expected to receive pursuant to

that agreement at the time it was executed; and (iii) what consideration You intended or expected to provide to Dixon pursuant to that agreement at the time it was executed.

**RESPONSE:**

**INTERROGATORY NO. 2:** Describe in detail all of Your reasons for accepting the consideration received from Dixon under the Deed in Escrow Agreement in exchange for the consideration that You provided to Dixon pursuant to that agreement.

**RESPONSE:**

**INTERROGATORY NO. 3:** Identify all instances prior to the execution of the Deed in Escrow Agreement in which You or any of Your agents or representatives informed or indicated Dixon that you believed the agreement to be unenforceable, or to provide for a fraudulent transfer.

**RESPONSE:**

**INTERROGATORY NO. 4:** Identify all instances prior to the execution of the Deed in Escrow Agreement in which You or any of your agents or representatives informed or indicated to Dixon that you believed that the consideration that you were to receive or could receive pursuant to the agreement was insufficient to support, or was not reasonably equivalent in value to, the consideration that you were obligated to provide, or could be obligated to provide, pursuant to the agreement.

**RESPONSE:**

**INTERROGATORY NO. 5:** Describe in detail all of Your reasons for proposing the Fifth Loan Modification agreement to Dixon, including without limitation: (i) all tangible and intangible benefits that You intended or expected to receive pursuant to that agreement at the time it was executed; (ii) all other consideration that You intended or expected to receive pursuant to that agreement at the time it was executed; and (iii) what consideration you intended or expected to provide to Dixon pursuant to that agreement at the time it was executed.

**RESPONSE:**

**INTERROGATORY NO. 6:** Describe in detail all of Your reasons for accepting the consideration received from Dixon under the Fifth Loan Modification in exchange for the consideration that you provided to Dixon pursuant to that agreement.

**RESPONSE:**

**INTERROGATORY NO. 7:** Describe in detail all instances prior to the execution of the Fifth Loan Modification in which You or any of your agents or representatives informed or indicated to Dixon that you believed that the consideration that you were to receive or could receive pursuant to the agreement was insufficient to support, or was not reasonably equivalent in value

to, the consideration that you were obligated to provide, or could be obligated to provide, pursuant to the agreement.

**RESPONSE:**

**INTERROGATORY NO. 8:** Identify what you contend the value of the Remaining Land to be at the time of execution of the Deed in Escrow Agreement and describe in detail all bases for such valuation.

**RESPONSE:**

**INTERROGATORY NO. 9:** Identify what you contend the value of the Remaining Land to be at the time that Dixon recorded the Special Warranty Deed and describe in detail all bases for such valuation.

**RESPONSE:**

**INTERROGATORY NO. 10:** Describe in detail your understanding of all treatment that Dixon would receive under the confirmed Plan had Dixon not recorded the Special Warranty Deed, but instead received treatment of its pre-petition claims under the Plan.

**RESPONSE:**

**INTERROGATORY NO. 11:** If you contend that Dixon would receive less under chapter 7 of the Bankruptcy Code than it would receive through treatment of the same pre-petition claims under the Plan, describe in detail all reasons for such contention.

**RESPONSE:**

**INTERROGATORY NO. 12:** Describe in detail all factual bases for why you deny that Dixon would be entitled pursuant to the Plan to reassert its pre-petition liens over the Remaining Land in the event that Your claims pursuant to section 548 of the Bankruptcy Code asserted in the Complaint are upheld.

**RESPONSE:**

**INTERROGATORY NO. 13:** Describe in detail all factual bases for why you deny that Dixon would be entitled to assert a lien pursuant to section 548(c) over any recovery awarded on account of Your claims pursuant to section 548 of the Bankruptcy Code asserted in the Complaint.

**RESPONSE:**

**INTERROGATORY NO. 14:** Describe in detail all factual bases for why you deny that Dixon would be entitled to assert a lien pursuant to section 550(e), over any recovery awarded on account of your claims pursuant to section 548 of the Bankruptcy Code asserted in the Complaint, to secure the lesser of: (a) the cost to Dixon of any improvement made after the transfer, less the

amount of any profit realized by or accruing to Dixon from such property; and (b) any increase in the value of such property as a result of such improvement, of the property transferred.

**RESPONSE:**

**INTERROGATORY NO. 15:** Describe in detail all aspects of your relationship with JMJ, including any affiliate relation, insider relation (as the term "insider" is defined in the Bankruptcy Code), ownership relation, common affiliates, common officers and/or directors, and any and all business conducted between you and JMJ.

**RESPONSE:**

**INTERROGATORY NO. 16:** Describe in detail any calculation of damages you allege you are entitled to receive pursuant to the Complaint.

**RESPONSE:**

Dated: November 23, 2021

/s/ *Deborah M. Perry*
Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

*Attorneys for The Dixon Water Foundation*

Case 21-04051-mxm Doc 84-1 Filed 07/26/22 Entered 07/26/22 15:39:13 Page 172 of 255

**VERIFICATION**

STATE OF ______________ §
§
COUNTY OF ____________ §

________________________, being duly sworn, deposes and says that (s)he is the authorized agent to ________________, that (s)he has read the foregoing, and that the responses contained therein are true to the best of her/his knowledge and belief.

______________________________

SUBSCRIBED AND SWORN TO before me, by the said ________________________, this ____ day of _______________________, 2021.

______________________________

Notary Public State of ____________

______________________________
Printed Name of Notary Public

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor. | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |

**DEFENDANT THE DIXON WATER FOUNDATION'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND OTHER ITEMS TO PLAINTIFF BM318, LLC**

To: Plaintiff BM318, LLC, by and through its counsel of record, Joyce W. Lindauer, Guy H. Holman, and Kerry S. Alleyne, Joyce W. Lindauer Attorney, PLLC, 1412 Main Street, Suite 500, Dallas, Texas 75202.

Defendant, The Dixon Water Foundation, by and through its undersigned counsel and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("FRCP"), as made applicable by Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), hereby serves and propounds upon Plaintiff, BM318, LLC, these *First Requests for Production of Documents and Other Items* (each, a "Request," and collectively, these "Requests").

## I. DEFINITIONS

For purposes of these Requests, in addition to the defined terms appearing above, the following terms (whether capitalized or un-capitalized) shall have the meanings ascribed to them below:

"**Adversary Proceeding**" means the above-captioned adversary proceeding, styled *BM318, LLC v. The Dixon Water Foundation*, Adv. Pro. No. 21-04051, pending before the Bankruptcy Court.

"**BM318**," "**Debtor**," "**Plaintiff**," "**You**," and/or "**Your**" mean BM318, LLC, the Debtor in the Bankruptcy Case and the plaintiff and counter-defendant in the Adversary Proceeding, including its past and present principals, agents, employees, directors, managers, members, officers, owners, representatives, consultants, independent contractors, and other Persons acting or purporting to act under BM318 LLC's control or on its behalf.

"**Bankruptcy Case**" means the above-captioned chapter 11 case, styled *In re: BM318, LLC*, Case No. 20-42789, pending before the Bankruptcy Court.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas.

"**Bankruptcy Code**" means Title 11 of the United States Code, §§ 101 *et seq.*, as amended

"**Chevreaux Appraisal Report**" means the Appraisal Report prepared by Chris Chevreaux concerning the Remaining Property, transmitted to Jim Pruitt as Chief Appraiser for AgAmerica Lending LLC, by letter dated September 28, 2020, and with an effective date of June 1, 2021.

"**Complaint**" means the *Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550* [Adversary Proceeding Docket No. 1].

"**Confirmation Order**" means that certain *Order Confirming Debtor's First Amended Plan of Reorganization Dated November 19, 2020, as Modified* [Bankruptcy Case Docket No. 106].

"**Communication(s)**" means any written, oral, visual, mechanical or electronic transmission or conveyance of information (in the form of facts, ideas, inquiries, information, opinions, thoughts or otherwise), including, but not limited to, email transmissions and text messages.

"**Concerning**" means relating to in any manner, referring to, describing, evidencing, analyzing, containing, correlating, discussing, embodying, evaluating, reflecting, regarding, respecting, stating and supporting.

"**Counterclaim**" means the *Defendant, The Dixon Water Foundation's Answer and Affirmative Defenses to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 and Counterclaim* [Adversary Proceeding Docket No. 8].

"**Deed of Trust**" means that certain *Deed of Trust, Security Agreement and Financing Statement*, dated as of November 26, 2018, and filed under Document Number 201829927 with the Official Public Records of Parker County, Texas.

"**Deed in Escrow Agreement**" means that certain *Deed in Escrow Agreement*, dated February 27, 2020, executed by BM318, Dixon, and American Escrow Company.

"**Dixon**" means The Dixon Water Foundation, the named defendant and counter-plaintiff in the Adversary Proceeding, as well as its officers, directors, employees, agents, representatives, or other persons acting or purporting to act under its control or on its behalf.

"**Document**" has the broadest meaning cognizable under the FRCP, including any: (a) handwritten, typed, copied, and/or printed Communication or matter of any kind, including, without limitation, agreements, contracts, correspondence, forecasts, memoranda, notes, jottings, speeches, press releases, ledgers, journals, examinations, statistics, letters, facsimiles, telegrams, minutes, time records, payroll records, expense records, reports, studies, training manuals, canceled checks, statements, receipts, delivery tickets, returns, summaries, work orders, purchase orders, pamphlets, books, prospectuses, statements of operation, offers, notations or written memorializations of any conversations, telephone calls, meetings, or other Communications, bulletins, printed matter, computer printouts, teletypes, invoices, and worksheets, and all drafts, alterations, modifications, changes, and amendments of any of the foregoing, and shall include the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise; (b) graphic or aural memorializations, records or representations of any kind, including, without limitation, photographs, charts, graphs, microfiche, microfilm, videotapes, recordings, and motion pictures; and (c) electronically stored, mechanical or electric records or representations of any kind, including, without limitation, metadata, e-mails, text messages, tapes, cassettes, disks, recordings, and transcriptions of the foregoing.

"**Interrogatories**" means *Defendant The Dixon Water Foundation's First Set of Interrogatories to Plaintiff BM318, LLC*, served contemporaneously herewith, and each request contained therein being an "**Interrogatory**".

"**JMJ**" means JMJ Development, LLC, including its past and present principals, agents, employees, directors, managers, members, officers, owners, representatives, consultants, independent contractors and other Persons acting or purporting to act under JMJ Development, LLC's control or on its behalf.

"**Loan**" means Dixon's financing to BM318 in the original principal amount of $32,946,900.00, and which is memorialized by the Note and other Loan Documents.

"**Loan Documents**" collectively refers to the Note, the Deed of Trust, the Loan Modifications, the Deed in Escrow Agreement, and the Special Warranty Deed.

"**Loan Modifications**" collectively refers to:

a. that certain *Loan Modification and Forbearance Agreement*, dated July 26, 2019, executed by BM318 and Dixon (the "**First Loan Modification**");

b. that certain *Second Loan Modification Agreement*, dated October 1, 2019, executed by BM318 and Dixon (the "**Second Loan Modification**");

c. that certain *Third Loan Modification Agreement*, dated December 17, 2019, executed by BM318 and Dixon (the "**Third Loan Modification**");

d. that certain *Fourth Loan Modification Agreement*, dated January 8, 2020, executed by BM318 and Dixon (the "**Fourth Loan Modification**"); and

e. that certain *Fifth Loan Modification Agreement*, dated January 31, 2020, executed by BM318 and Dixon (the "**Fifth Loan Modification**").

"**Note**" means that certain *Promissory Note* (as amended or modified), dated November 26, 2018, executed by BM318 and payable to the order of Dixon in the original principal amount of $32,946,900.00 for repayment of the Loan.

"**Person**" means any natural person or business, legal or governmental entity, or association. When the referenced person is an entity of any type, the term includes reference to all current or former officers, directors, employees, agents, shareholders, trustees, managers, members and/or representatives in their capacities as such.

"**Petition Date**" means September 1, 2020, the date on which the Bankruptcy Case was commenced before the Bankruptcy Court.

"**Plan**" means the *Debtor's First Amended Plan of Reorganization Dated November 19, 2020* [Bankruptcy Case Docket No. 39], as modified by the *First Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 79] and the *Third Modification to Debtor's First Amended Plan of Reorganization* [Bankruptcy Case Docket No. 100], as confirmed by the Confirmation Order.

"**Real Property**" refers to the 2055.70 acres of unimproved real property in Parker County, Texas, known as Bear Creek Ranch, as described in Exhibit A to the Note.

"**Remaining Land**" refers to the 1,531.75 acres that remained encumbered by the Deed of Trust as of the date of the Fifth Loan Modification, and which was subject to the Special Warranty Deed, as described in Exhibit A to the Special Warranty Deed.

"**Special Warranty Deed**" means that certain *Special Warranty Deed* filed under Document Number 202019524 with the Official Public Records of Parker County, Texas.

## II. INSTRUCTIONS

1. **Deadline for Responses**. Pursuant to FRCP 34(b)(2)(A)–(B), as made applicable by Bankruptcy Rule 7034, You are required to respond in writing to the Requests by no later than thirty (30) days from the date of service hereof. In response to each Request, You must either state that production of responsive Documents will be permitted as requested or state with specificity an objection in compliance with the requirements set out below and in compliance with the FRCPs and the Bankruptcy Rules.

2. **Place of Production**. Unless otherwise agreed in advance by Dixon, all responsive Documents must be produced by no later than **Thursday, December 23, 2021**, at **5:00 p.m. (prevailing Central Time)**, to the following address:

Munsch Hardt Kopf & Harr, P.C.
Attn: Deborah M. Perry
500 N. Akard Street, Suite 3800
Dallas, Texas 75201

3. **Scope of Production**. You must produce all responsive Documents in Your possession, custody, care, or control, regardless of whether such Documents are currently in Your actual, physical possession, or in the possession of any of Your current or former principals, agents, employees, directors, officers, managers, members, owners, companies, licensees, representatives, consultants, independent contractors, investigators, or attorneys, and regardless of the source from which such Documents were obtained or who obtained such Documents on Your behalf. If any portion of a Document is responsive to a Request, then the entire Document must be produced.

4. "**And**" and "**Or**" shall each be individually interpreted in every instance as meaning "and/or" and shall not be interpreted disjunctively to exclude any information within the scope of a Request.

5. "**Including**" shall be interpreted in every instance as meaning "including, but not limited to" and shall not be interpreted as having any exclusive meaning.

6. "**Any**" shall be interpreted in every instance as meaning "any and/or all" and shall not be interpreted as having any exclusive meaning.

7. **Manner of Production**. In accordance with FRCP 34(b)(2)(E), as made applicable by Bankruptcy Rule 7034, You must produce all responsive Documents as they are kept in the usual course of business or must organize and label them to correspond to the Requests. Documents shall be collected in such a manner as to preserve all application metadata naturally embedded within the file and produced with sufficient information to identify the files or repositories in which such responsive Documents are maintained in the normal course of business, including, for example, an index, key, code, or other means of ascertaining the source of the produced Documents. Additionally, in the case of Documents constituting electronically stored information, You must produce such electronically stored information in native format, or in near native format which must be reasonably usable and electronically searchable, as follows: (i) multi-page PDF files and IPRO-ready OPT files; (ii) a Concordance DAT delimited file with boundaries; and (iii) extracted full text, or OCR text for image-only native files, with text files provided on a document level. Files that are not usable in image format, such as documents created in Microsoft Excel format or similar spreadsheet programs shall be produced in native format. All metadata fields associated with each electronically stored responsive Document shall also be produced.

8. **Objections**. If and to the extent that You object to any of the following Requests, You must separately state each objection and the grounds for same in relation to each Request to which You object. In accordance with FRCP 34(b)(2)(C), as made applicable by Bankruptcy Rule 7034, if You object to the production of a part of a Document that is responsive to a Request,

You must specify the part of the Document that is subject to objection and produce the remainder of such Document.

9. **Absence of Responsive Documents**. In the event that no responsive Documents exist in relation to a particular Request, You must specify in Your written response to such Request that no such responsive Documents exist.

10. **Privilege Log**. If You object to the production, in whole or in part, of any Document that is responsive to a Request on the basis of a claimed privilege, You must provide a privilege log that identifies the basis of the privilege claimed, the general nature and subject matter of the information subject to such privilege, the Request(s) and/or portions thereof to which the asserted privilege applies, the grounds for objection with sufficient particularity in order to enable Dixon and the Bankruptcy Court to determine the validity of the assertion of privilege, including without limitation all Persons receiving such asserted privileged information, regardless of the time at which such information was received.

11. **Requests Continuing**. Pursuant to FRCP 26(e), as made applicable by Bankruptcy Rule 7026, these Requests are hereby expressly made continuing and are subject to timely supplementation and/or correction as required by said rule. If subsequent to Your responses, You possess any additional Document or tangible item that renders Your prior response to any Request herein to be incomplete, You must seasonably amend or supplement Your response(s) in order to produce such information to Dixon.

12. **Applicable Period**. Unless otherwise specified, these Requests apply to the time period beginning November 1, 2018, through the present.

## III. REQUESTS

**REQUEST FOR PRODUCTION NO. 1:** All Documents concerning the Deed in Escrow Agreement, or the possibility or the negotiation thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:** All Documents concerning the Fifth Loan Modification, or the possibility or the negotiation thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:** All Documents concerning any of the Loan Documents other than the Deed in Escrow Agreement.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:** All Documents concerning any proposed or potential request by BM318 for Dixon to forbear from exercising its rights under any of the Loan Documents.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 5:** All Documents relating to any alleged or potential default by BM318 of its payment obligations under the Note.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 6:** All Documents concerning the value of the Real Property or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 7:** All Documents concerning the value of the Remaining Land, or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 8:** All Documents concerning any potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:** All Documents concerning any proposed development or use of the Remaining Land or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 10:** All Documents concerning Dixon.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:** All Documents concerning any potential refinancing or restructuring of the Note or any underlying obligations of BM318.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 12:** All Documents discussing or concerning the Chevreaux Appraisal Report or any of its contents.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 13:** All appraisals of the Real Property or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:** All appraisals of the Remaining Land or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:** All Documents constituting or concerning Communications with American Escrow Company or otherwise concerning American Escrow Company.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 16:** All Documents constituting or concerning Communications with JMJ and further concerning the Remaining Land or any portion thereof.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:** All Documents constituting or concerning Communications with JMJ and further concerning Dixon.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:** All Documents constituting or concerning the recording or potential recording of the Special Warranty Deed.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 19:** All Documents concerning BM318's aggregate debts, aggregate liabilities, the total value of BM318's assets, or the value of BM318's business at any time from June 1, 2020 through the Petition Date.

**RESPONSE:**

**<u>REQUEST FOR PRODUCTION NO. 20:</u>** All Documents concerning BM318's aggregate debts, aggregate liabilities, the total value of BM318's assets, or the value of BM318's business at any time from January 1, 2020 through the Petition Date.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 21:</u>** BM318's most recent financial statement as of July 2, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 22:</u>** BM318's most recent financial statement as of January 1, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 23:</u>** BM318's most recent balance sheet as of July 2, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 24:</u>** BM318's most recent balance sheet as of January 1, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 25:</u>** BM318's general ledger as of July 2, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 26:</u>** BM318's general ledger as of January 1, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 27:</u>** BM318's general ledger as of September 1, 2020.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 28:</u>** All Documents concerning any contingent or noncontingent liabilities as of July 2, 2020 which do not appear on BM318's general ledger as of July 2, 2020.

**<u>RESPONSE:</u>**

**REQUEST FOR PRODUCTION NO. 29:** All Documents concerning any contingent or noncontingent liabilities as of January 1, 2020 which do not appear on BM318's general ledger as of January 1, 2020.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 30:** All Documents concerning any contingent or noncontingent liabilities as of September 1, 2020 which do not appear on BM318's general ledger as of September 1, 2020.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 31:** Tax Returns for BM318 for 2019 and 2020.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 32:** All listings or schedules of assets generated or maintained by BM318 at any time from June 1, 2020 through the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 33:** All listings or schedules of assets generated or maintained by BM318 at any time from January 1, 2020 through the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 34:** All Documents concerning any ability or potential exercise by BM318 to extend the closing date of the Buyback Contract, as such term is defined in the Complaint, as alleged in paragraph 14 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 35:** All Documents concerning the Buyback Contract, as such term is defined in Paragraph 14 of the Complaint.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 36:** All Documents concerning any requested or proposed financing from Dixon or to or for BM318, from and after November 1, 2019 until the Petition Date.

**RESPONSE:**

Case 21-04051-mxm Doc 76-1 Filed 07/26/22 Entered 07/26/22 ... Page 182 of 255

**REQUEST FOR PRODUCTION NO. 37:** All Documents concerning BM318's existing or available capital at any time from June 1, 2020 through the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 38:** All Documents concerning BM318's existing or available capital at any time from January 1, 2020 through the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 39:** All Documents concerning any negotiations or discussions with any persons or entities other than Dixon for the potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof, from and after the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 40:** All Documents concerning any negotiations or discussions with any persons or entities other than Dixon for the potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof, before the Petition Date.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 41:** All Documents constituting or concerning Communications with Jim Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 42:** All Documents constituting or concerning Communications with Larry Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 43:** All Documents constituting or concerning Communications with Mark Adams (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 44:** All Documents constituting or concerning Communications with Chris Chevreaux concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 45:** All Documents constituting or concerning Communications with Jim Pruitt concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 46:** All Documents evidencing the members, managers, directors, and officers of BM318 at any time during 2020.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 47:** All Documents supporting Your contention in paragraph 16 of the Complaint that "Defendant sold a portion of the Encumbered Land to the broker (or a related person or entity) who had represented Plaintiff under the original purchase agreement to acquire the 2055 acres from Defendant."

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 48:** All Documents created prior to the date on which Dixon recorded the Special Warranty Deed, discussing, contemplating or relating to any alleged: (i) unenforceability, (ii) lack of consideration, (iii) lack of reasonably equivalent value, or (iv) avoidability; of any of the Fifth Modification, Deed in Escrow Agreement, the Special Warranty Deed, or its recordation.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 49:** All Documents concerning the claim in the amount of $627,475.95 You scheduled for Carnegie Development LLC in the Bankruptcy Case on Schedule E/F [Docket No. 83].

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 50:** All Documents concerning the claim in the amount of $112,797.00 You scheduled for JMJ in the Bankruptcy Case on Schedule E/F [Docket No. 83].

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 51:** All Documents concerning the claim in the amount of $310,000.00 You scheduled for JMJ in the Bankruptcy Case on Schedule E/F [Docket No. 83].

**RESPONSE:**

**<u>REQUEST FOR PRODUCTION NO. 52:</u>** All Documents concerning the claim in the amount of $61,063.75 You scheduled for Barron Stark Engineers in the Bankruptcy Case on Schedule E/F [Docket No. 83].

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 53:</u>** All Documents concerning the claim in the amount of $60,000.00 You scheduled for HR Sterling LLC in the Bankruptcy Case on Schedule E/F [Docket No. 83].

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 54:</u>** All Documents concerning the value of the 118.34 acres of real property situated in the James Bradley Survey, Abstract No. 120, Parker County, Texas as more particularly described in Exhibit "A" to the Deed of Trust filed under Document Number 201911244 in the Official Public Records of Parker County, Texas (the "<u>118.34 Acres</u>").

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 55:</u>** All appraisals of the 118.34 Acres.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 56:</u>** All Documents concerning the Farm and Ranch Contract with GH Lumar JV and BM318 for the sale of 23.95 acres of land, situated in Parker County, as more particularly described in Exhibit "A" to the Fifth Loan Modification.

**<u>RESPONSE:</u>**

**<u>REQUEST FOR PRODUCTION NO. 57:</u>** All Documents referenced in any of your responses to any Interrogatory, or which were reviewed or consulted by any of your agents or representatives, other than legal counsel, in the course of responding to any Interrogatory.

**<u>RESPONSE:</u>**

Case 21-04051-mxm Doc 84-1 Filed 07/26/22 Entered 07/26/22 15:39:18 Page 186 of 255

Dated: November 23, 2021

/s/ *Deborah M. Perry*

Deborah M. Perry
Texas Bar No. 24002755
Jay H. Ong
Texas Bar No. 24028756
Julian P. Vasek
Texas Bar No. 24070790
MUNSCH HARDT KOPF & HARR, P.C.
500 N. Akard Street, Suite 3800
Dallas, TX 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
Email: dperry@munsch.com
Email: jong@munsch.com
Email: jvasek@munsch.com

*Attorneys for The Dixon Water Foundation*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| | § | |
| In re: | § | Chapter 11 |
| | § | |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| | § | |
| Debtor. | § | |
| | § | |
| | § | |
| BM318, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| | § | |
| THE DIXON WATER FOUNDATION, | § | |
| | § | |
| Defendant. | § | |

**BM318, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT THE DIXON WATER FOUNDATION'S (1) FIRST SET OF INTERROGATORIES AND (2) FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND OTHER ITEMS**

TO: The Dixon Water Foundation c/o of its attorney of record Deborah M. Perry, Munsch Hardt Kopf & Harr, P.C., 500 N. Akard Street, Suite 3800, Dallas, TX 75201, dperry@munsch.com

BM318, LLC ("Plaintiff") serves The Dixon Water Foundation ("Dixon" / "Defendant") the following *BM318, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANT THE DIXON WATER FOUNDATION'S (1) FIRST SET OF INTERROGATORIES AND (2) FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND OTHER ITEMS.* All responses and any documents, electronically stored information, and tangible things delivered concurrently with these objections

and responses are produced in accordance with Rules 26 and 34 of the Federal Rules of Civil Procedure, as made applicable herein, by Rules 7026, 7034, and 9014(c) of the Federal Rules of Bankruptcy Procedure.

Dated: January 7, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com
ATTORNEY FOR BM318, LLC

## DEFINITIONS

Plaintiff adopts and incorporates herein the definitions provided by Dixon in its First Set of Interrogatories and First Requests for Production of Documents.

## PRELIMINARY STATEMENT

1. Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing. These responses and objections are made without prejudice to, and are not a waiver of, Plaintiff's right to rely on other facts or documents at trial.

2. By making the accompanying responses and objections to Defendant's requests for documents and interrogatory, Plaintiff does not waive, and hereby expressly reserves, its right to assert any and all objections as to the admissibility of such responses into evidence in this action, or in any other proceedings, on any and all grounds including, but not limited to, competency, relevancy, materiality, and privilege. Further, Plaintiff makes the responses and objections herein without in any way implying that it considers the requests and interrogatory, and responses to the requests and interrogatory, to be relevant or material to the subject matter of this action.

3. Plaintiff will produce responsive documents only to the extent that such documents are in the possession, custody, or control of the Antitrust Division of the U.S. Department of Justice, as set forth in the Federal Rules of Civil Procedure. Plaintiff's possession, custody, or control does not include any constructive possession that may be conferred by Plaintiff's right or power to compel the production of documents or information from third parties or to request their production from other divisions of the Department of Justice or agencies of the United States.

4. A response to a document request or interrogatory stating that objections and/or indicating that documents will be produced shall not be deemed or construed that there are, in fact, responsive documents, that Plaintiff performed any of the acts described in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory, or that Plaintiff acquiesces in the characterization of the conduct or activities contained in the document request, interrogatory, or definitions and/or instructions applicable to the document request or interrogatory.

5. Plaintiff expressly reserves the right to supplement, clarify, revise, or correct any or all of the responses and objections herein, and to assert additional objections or privileges, in one or more subsequent supplemental response(s).

6. Publicly available documents including, but not limited to, newspaper clippings, court papers, and documents available on the internet, will not be produced.

**GENERAL PROVISIONS AND OBJECTIONS**

1. Plaintiff objects to each instruction, definition, document request, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Bankruptcy Procedure and the applicable Rules and Orders of the Court.

2. Plaintiff objects to each instruction, definition, document request, and interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege. Should any such disclosure by Plaintiff occur, it is inadvertent and shall not constitute a waiver of any privilege.

3. Plaintiff objects to each document request and interrogatory that is overly broad, unduly burdensome, not relevant, or not reasonably calculated to lead to the discovery of admissible evidence.

4. Plaintiff objects to each instruction, definition, document request, and interrogatory as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, or from documents or information in Defendant's possession. Responding to such requests and interrogatory would be oppressive, unduly burdensome, and unnecessarily expensive, and the burden of responding to such requests and interrogatory is substantially the same or less for Defendant as for Plaintiff. This objection encompasses, but is not limited to, all correspondence between the Plaintiff and Defendant and all other information provided by Defendant to Plaintiff. All such documents and information will not be produced.

5. Plaintiff objects to each instruction, definition, document request, and interrogatory that seeks or requires the disclosure of any confidential, proprietary, highly sensitive, or trade secret information.

6. Plaintiff objects to each instruction, definition, document request, and interrogatory that calls for the production of documents and information that were produced to the Plaintiff by

other entities and that may contain confidential, proprietary, highly sensitive, or trade secret information.

7. Plaintiff objects to each instruction, definition, document request, and interrogatory that would require Plaintiff to create a document not in existence. A party is not required to produce a document or tangible thing unless it is within the person's possession, custody, or control. A document that does not exist is not within a party's "possession, custody, or control." The only exception to the rule involves the factual observations, testes, or supporting data of a testifying expert.

8. To the extent any of Defendant's document requests or its interrogatory seek documents or answers that include expert material, including but not limited to survey materials, Plaintiff objects to any such requests and interrogatory as premature and expressly reserves the right to supplement, clarify, revise, or correct any or all responses to such requests, and to assert additional objections or privileges, in one or more subsequent supplemental response(s) in accordance with the time period for exchanging expert reports set by the Court.

9. Plaintiff incorporates by reference every general objection set forth above into each specific response set forth below. A specific response may repeat a general objection for emphasis or some other reason. The failure to include any general objection in any specific response does not waive any general objection to that request. Moreover, Plaintiff does not waive its right to amend its responses.

**BM318'S SPECIFIC OBJECTIONS AND RESPONSES TO DIXON'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1:** Describe in detail all of Your reasons for entering into the Deed in Escrow Agreement transaction to Dixon, including without limitation: (i) all tangible and intangible benefits that You intended or expected to receive pursuant to that agreement at the time it was executed; (ii) all other consideration that You intended or expected to receive pursuant to that agreement at the time it was executed; and (iii) what consideration You intended or expected to provide to Dixon pursuant to that agreement at the time it was executed.

**RESPONSE:** Plaintiff entered into the Deed in Escrow Agreement to remedy any alleged default of the Loan. All modifications and consideration as set forth in such agreement, the right to reacquire the land following any recording of the deed held in escrow at the same value, and all additional reasons and consideration are stated in the agreement and related Documents produced herewith that are relevant and responsive to this request, to which Plaintiff refers Dixon.

**INTERROGATORY NO. 2:** Describe in detail all of Your reasons for accepting the consideration received from Dixon under the Deed in Escrow Agreement in exchange for the consideration that You provided to Dixon pursuant to that agreement.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Interrogatory No. 1.

Subject to and without waiving the foregoing objection, Plaintiff refers Dixon to its Response to Interrogatory No.1 as well as the language contained in the Deed in Escrow Agreement and related Documents produced herewith that are relevant and responsive to this request.

**INTERROGATORY NO. 3:** Identify all instances prior to the execution of the Deed in Escrow Agreement in which You or any of Your agents or representatives informed or indicated to Dixon that you believed the agreement to be unenforceable, or to provide for a fraudulent transfer.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that Dixon, as the recipient of such information, would have the same information as Plaintiff. Plaintiff further objects to this Interrogatory to the extent it requires Plaintiff to make a legal conclusion as to unenforceability or fraudulent transfer.

Subject to and without waiving the foregoing objections, Plaintiff refers Dixon to the language contained in the Deed in Escrow Agreement and the related Documents produced herewith that are relevant and responsive to this request.

**INTERROGATORY NO. 4:** Identify all instances prior to the execution of the Deed in Escrow Agreement in which You or any of your agents or representatives informed or indicated to Dixon that you believed that the consideration that you were to receive or could receive pursuant to the agreement was insufficient to support, or was not reasonably equivalent in value to, the consideration that you were obligated to provide, or could be obligated to provide, pursuant to the agreement.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that Dixon, as the recipient of such information, would have the same information as Plaintiff.

Subject to and without waiving the foregoing objection, Plaintiff refers Dixon to the Documents produced herewith that are relevant and responsive to this request.

**INTERROGATORY NO. 5:** Describe in detail all of Your reasons for proposing the Fifth Loan Modification agreement to Dixon, including without limitation: (i) all tangible and intangible benefits that You intended or expected to receive pursuant to that agreement at the time it was executed; (ii) all other consideration that You intended or expected to receive pursuant to that agreement at the time it was executed; and (iii) what consideration you intended or expected to provide to Dixon pursuant to that agreement at the time it was executed.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it characterizes the any term of the Fifth Loan Modification agreement that was drafted by Dixon was proposed by Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff refers Dixon to the Fifth Loan Modification and related Documents produced herewith that are relevant and responsive to this request.

**INTERROGATORY NO. 6:** Describe in detail all of Your reasons for accepting the consideration received from Dixon under the Fifth Loan Modification in exchange for the consideration that you provided to Dixon pursuant to that agreement.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Interrogatory No. 5.

Subject to and without waiving the foregoing objections, Plaintiff refers Dixon to the Fifth Loan Modification and related Documents produced herewith that are relevant and responsive to this request.

**INTERROGATORY NO. 7:** Describe in detail all instances prior to the execution of the Fifth Loan Modification in which You or any of your agents or representatives informed or indicated to Dixon that you believed that the consideration that you were to receive or could receive pursuant to the agreement was insufficient to support, or was not reasonably equivalent in value to, the consideration that you were obligated to provide, or could be obligated to provide, pursuant to the agreement.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that Dixon, as the recipient of such information, would have the same information as Plaintiff.

Subject to and without waiving the foregoing objections, Plaintiff refers Dixon to Documents produced herewith that are relevant and responsive to this request.

**INTERROGATORY NO. 8:** Identify what you contend the value of the Remaining Land to be at the time of execution of the Deed in Escrow Agreement and describe in detail all bases for such valuation.

**RESPONSE:** Plaintiff contends that the valuation of the Remaining Land exceeds any remaining amounts owed to Plaintiff (including principal, interest, and costs) at the time of the execution of such Agreement to the extent the documents produced (including as may be supplemented) regarding valuation and appraisal of the Remaining Land exceed such amounts owed. Plaintiff further refers Dixon to Documents both in Dixon's possession and produced herewith reflecting appraisal values.

**INTERROGATORY NO. 9:** Identify what you contend the value of the Remaining Land to be at the time that Dixon recorded the Special Warranty Deed and describe in detail all bases for such valuation.

**RESPONSE:** Plaintiff contends that the valuation of the Remaining Land exceeds the any remaining amounts owed to Plaintiff (including principal, interest, and costs) at the time of the execution of such Agreement to the extent the documents produced (including as may be supplemented) regarding valuation and appraisal of the Remaining Land exceed such amounts owed. Plaintiff further refers Dixon to Documents both in Dixon's possession and produced herewith reflecting appraisal values.

**INTERROGATORY NO. 10:** Describe in detail your understanding of all treatment that Dixon would receive under the confirmed Plan had Dixon not recorded the Special Warranty Deed, but instead received treatment of its pre-petition claims under the Plan.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion. Plaintiff further objects as it calls for Plaintiff to speculate.

**INTERROGATORY NO. 11:** If you contend that Dixon would receive less under chapter 7 of the Bankruptcy Code than it would receive through treatment of the same pre-petition claims under the Plan, describe in detail all reasons for such contention.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion. Plaintiff further objects as it calls for Plaintiff to speculate.

**INTERROGATORY NO. 12:** Describe in detail all factual bases for why you deny that Dixon would be entitled pursuant to the Plan to reassert its pre-petition liens over the Remaining Land in the event that Your claims pursuant to section 548 of the Bankruptcy Code asserted in the Complaint are upheld.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion. Plaintiff further objects as it calls for Plaintiff to speculate.

**INTERROGATORY NO. 13:** Describe in detail all factual bases for why you deny that Dixon would be entitled to assert a lien pursuant to section 548(c) over any recovery awarded on account of Your claims pursuant to section 548 of the Bankruptcy Code asserted in the Complaint.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion. Plaintiff further objects as it calls for Plaintiff to speculate.

**INTERROGATORY NO. 14:** Describe in detail all factual bases for why you deny that Dixon would be entitled to assert a lien pursuant to section 550(e), over any recovery awarded on account of your claims pursuant to section 548 of the Bankruptcy Code asserted in the Complaint, to secure the lesser of: (a) the cost to Dixon of any improvement made after the transfer, less the amount of any profit realized by or accruing to Dixon from such property; and (b) any increase in the value of such property as a result of such improvement, of the property transferred.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion. Plaintiff further objects as it calls for Plaintiff to speculate

**INTERROGATORY NO. 15:** Describe in detail all aspects of your relationship with JMJ, including any affiliate relation, insider relation (as the term "insider" is defined in the Bankruptcy Code), ownership relation, common affiliates, common officers and/or directors, and any and all business conducted between you and JMJ.

Case 21-04051-mxm Doc 84 Filed 07/26/22 Entered 07/26/22 15:39:39 Page 194 of 255

**RESPONSE:** Plaintiff objects to this interrogatory as this is not relevant to the matter at hand. Subject to and without waiving the foregoing objections, there is no direct ownership interest.

**INTERROGATORY NO. 16:** Describe in detail any calculation of damages you allege you are entitled to receive pursuant to the Complaint.

**RESPONSE:** Plaintiff objects to this interrogatory to the extent that it calls for a legal conclusion. Plaintiff further objects as it calls for Plaintiff to speculate. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the interrogatory is immature. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

*[The remainder of this page intentionally left blank]*

**<u>BM318'S OBJECTIONS AND RESPONSES TO DIXON'S FIRST REQUESTS FOR PRODUCTION OF DOCUMENTS AND OTHER ITEMS</u>**

**<u>REQUEST FOR PRODUCTION NO. 1:</u>** All Documents concerning the Deed in Escrow Agreement, or the possibility or the negotiation thereof.

> **<u>RESPONSE:</u>** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the Deed in Escrow Agreement. Plaintiff does not, and cannot, have *all* Documents concerning the Deed in Escrow Agreement. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.
>
> Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**<u>REQUEST FOR PRODUCTION NO. 2:</u>** All Documents concerning the Fifth Loan Modification, or the possibility or the negotiation thereof.

> **<u>RESPONSE:</u>** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the Fifth Loan Modification. Plaintiff does not, and cannot, have *all* Documents concerning the Fifth Loan Modification. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.
>
> Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**<u>REQUEST FOR PRODUCTION NO. 3:</u>** All Documents concerning any of the Loan Documents other than the Deed in Escrow Agreement.

> **<u>RESPONSE:</u>** Plaintiff objects to this request because it is overly broad and not calculated to lead to the discovery of admissible evidence as it is not described with appropriate specificity. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning any of the Loan Documents other than the Deed in Escrow Agreement. Plaintiff does not, and cannot, have *all* Documents concerning any of the Loan Documents other than the Deed in Escrow Agreement. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 4:** All Documents concerning any proposed or potential request by BM318 for Dixon to forbear from exercising its rights under any of the Loan Documents.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 5:** All Documents relating to any alleged or potential default by BM318 of its payment obligations under the Note.

**RESPONSE:** Plaintiff objects to this request because it is overly broad and not calculated to lead to the discovery of admissible evidence as it is not described with appropriate specificity. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 6:** All Documents concerning the value of the Real Property or any portion thereof.

**RESPONSE:** Plaintiff objects to this request because it is overly broad and not calculated to lead to the discovery of admissible evidence as it is not described with appropriate specificity, considering that the value of the Real Property fluctuates over time. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 7:** All Documents concerning the value of the Remaining Land, or any portion thereof.

**RESPONSE:** Plaintiff objects to this request because it is overly broad and not calculated to lead to the discovery of admissible evidence as it is not described with appropriate specificity, considering that the value of the Real Property fluctuates over time. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 8:** All Documents concerning any potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof.

**RESPONSE:** Plaintiff objects to this request because it is overly broad and not calculated to lead to the discovery of admissible evidence as it is not described with appropriate specificity, considering that the value of the Real Property fluctuates over time. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 9:** All Documents concerning any proposed development or use of the Remaining Land or any portion thereof.

**RESPONSE:** Plaintiff objects to this request because it is overly broad and not calculated to lead to the discovery of admissible evidence as it is not described with appropriate specificity, considering that unknown third-parties may have considered development opportunities on the Remaining Land. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 10:** All Documents concerning Dixon.

**RESPONSE:** Plaintiff objects as such request is overly broad, vague, and ambiguous and seeks the production of Documents that are not relevant and not calculated to lead to the discovery of admissible evidence and is not properly limited in scope. The request seeks literally every document related to Dixon, a non-profit entity, whether related to the matter at hand or not.

Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Indeed, the vast majority of the documents sought in this overbroad request are in Dixon's possession. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

**REQUEST FOR PRODUCTION NO. 11:** All Documents concerning any potential refinancing or restructuring of the Note or any underlying obligations of BM318.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 12:** All Documents discussing or concerning the Chevreaux Appraisal Report or any of its contents.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 6. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 13:** All appraisals of the Real Property or any portion thereof.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request Nos. 6, 7, and 12. Plaintiff objects as such request is overly broad, vague, and ambiguous and seeks the production of Documents that are not relevant and not calculated to lead to the discovery of admissible evidence and is not properly limited in scope. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

**REQUEST FOR PRODUCTION NO. 14:** All appraisals of the Remaining Land or any portion thereof.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request Nos. 6, 7, 12, and 13. Plaintiff objects as such request is overly broad, vague, and ambiguous and seeks the production of Documents that are not relevant and not calculated to lead to the discovery of admissible evidence and is not properly limited in scope. Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

**REQUEST FOR PRODUCTION NO. 15:** All Documents constituting or concerning Communications with American Escrow Company or otherwise concerning American Escrow Company.

**RESPONSE:** Plaintiff objects as such request is overly broad, vague, and ambiguous and seeks the production of Documents that are not relevant and not calculated to lead to the discovery of admissible evidence and is not properly limited in scope. The request seeks literally every document related to third-party American Escrow Company, whether related to the matter at hand or not.

Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 16:** All Documents constituting or concerning Communications with JMJ and further concerning the Remaining Land or any portion thereof.

**RESPONSE:** Plaintiff objects to this request because it overly broad and not properly limited in scope and requests Documents what are not relevant to the Matters before the Court. Plaintiff further objects to this request as vague and ambiguous, as it is unclear

whether Defendant seeks all Communications with JMJ, or only those concerning the Remaining Land or any portion thereof.

Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in the possession of others, including JMJ. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 17:** All Documents constituting or concerning Communications with JMJ and further concerning Dixon.

**RESPONSE:** Plaintiff objects to this request because it overly broad and not properly limited in scope and requests Documents what are not relevant to the Matters before the Court. Plaintiff further objects to this request as vague and ambiguous, as it is unclear whether Defendant seeks all Communications with JMJ, or only those concerning Dixon.

Plaintiff also objects to this request to the extent it calls for Plaintiff to produce documents in the possession of Dixon or others, including JMJ. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 18:** All Documents constituting or concerning the recording or potential recording of the Special Warranty Deed.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 19:** All Documents concerning BM318's aggregate debts, aggregate liabilities, the total value of BM318's assets, or the value of BM318's business at any time from June 1, 2020 through the Petition Date.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff object to the request to the extent that it requires the disclosure of any confidential, proprietary, highly sensitive, or trade secret information. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 20:** All Documents concerning BM318's aggregate debts, aggregate liabilities, the total value of BM318's assets, or the value of BM318's business at any time from January 1, 2020 through the Petition Date.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 19. Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff object to the request to the extent that it requires the disclosure of any confidential, proprietary, highly sensitive, or trade secret information. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 21:** BM318's most recent financial statement as of July 2, 2020.

**RESPONSE:** Plaintiff objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 22:** BM318's most recent financial statement as of January 1, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 21. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 23:** BM318's most recent balance sheet as of July 2, 2020.

**RESPONSE:** Plaintiff objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 24:** BM318's most recent balance sheet as of January 1, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 23. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 25:** BM318's general ledger as of July 2, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 27. Plaintiff objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 26:** BM318's general ledger as of January 1, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request Nos. 25 and 27. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 27:** BM318's general ledger as of September 1, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 25. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 28:** All Documents concerning any contingent or noncontingent liabilities as of July 2, 2020 which do not appear on BM318's general ledger as of July 2, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 30. Plaintiff further objects to this request to the extent that it requests *all* documents

Case 21-04051-mxm Doc 76 Filed 07/26/22 Entered 07/26/22 ... Page 204 of 255

concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 29:** All Documents concerning any contingent or noncontingent liabilities as of January 1, 2020 which do not appear on BM318's general ledger as of January 1, 2020.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request Nos. 28 and 30. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 30:** All Documents concerning any contingent or noncontingent liabilities as of September 1, 2020 which do not appear on BM318's general ledger as of September 1, 2020.

**RESPONSE:** Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 31:** Tax Returns for BM318 for 2019 and 2020.

**RESPONSE:** Plaintiff objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 32:** All listings or schedules of assets generated or maintained by BM318 at any time from June 1, 2020 through the Petition Date.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 33. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 33:** All listings or schedules of assets generated or maintained by BM318 at any time from January 1, 2020 through the Petition Date.

**RESPONSE:** Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff further objects to this request as this is not relevant to the matter at hand. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 34:** All Documents concerning any ability or potential exercise by BM318 to extend the closing date of the Buyback Contract, as such term is defined in the Complaint, as alleged in paragraph 14 of the Complaint.

Case 21-04051-mxm Doc 70-1 Filed 07/26/22 Entered 07/26/22 ... Page 20 of 255

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 35:** All Documents concerning the Buyback Contract, as such term is defined in Paragraph 14 of the Complaint.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 36:** All Documents concerning any requested or proposed financing from Dixon or to or for BM318, from and after November 1, 2019 until the Petition Date.

**RESPONSE:** Plaintiff objects to this request to the extent it calls for Plaintiff to produce documents in Dixon's possession, or in the possession of others. Plaintiff further objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 37:** All Documents concerning BM318's existing or available capital at any time from June 1, 2020 through the Petition Date.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 38. Plaintiff objects to this request as "existing or available capital" is vague and ambiguous and could vary on a daily basis. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 38:** All Documents concerning BM318's existing or available capital at any time from January 1, 2020 through the Petition Date.

**RESPONSE:** Plaintiff objects to this request as "existing or available capital" is vague and ambiguous and could vary on a daily basis. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 39:** All Documents concerning any negotiations or discussions with any persons or entities other than Dixon for the potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof, from and after the Petition Date.

**RESPONSE:** Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, Plaintiff has discovered no Documents in its possession or control that are responsive to this request. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

**REQUEST FOR PRODUCTION NO. 40:** All Documents concerning any negotiations or discussions with any persons or entities other than Dixon for the potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof, before the Petition Date.

**RESPONSE:** Plaintiff further objects to the extent that Plaintiff's investigation and development of all facts and circumstances relating to this action is ongoing, thus the request is immature. Plaintiff reserves its right to amend this response as more information becomes available through the discovery process.

Subject to and without waiving the foregoing objection, Plaintiff has discovered no Documents in its possession or control that are responsive to this request. Plaintiff reserves

Case 21-04051-mxm Doc 70-1 Filed 07/26/22 Entered 07/26/22 ... Page 208 of 255

its right to amend this response as more information becomes available through the discovery process.

**REQUEST FOR PRODUCTION NO. 41:** All Documents constituting or concerning Communications with Jim Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon.

**RESPONSE:** Plaintiff objects as this request is overly broad and seeks Documents that are not relevant to the matters before the Court. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 42:** All Documents constituting or concerning Communications with Larry Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon.

**RESPONSE:** Plaintiff objects to this request because it overly broad and not properly limited in scope and requests Documents what are not relevant to the Matters before the Court. Plaintiff further objects to this request as vague and ambiguous, as it is unclear whether Defendant seeks all Communications with Larry Martin, or only those concerning the Real Property, Remaining Land, or any portion thereof. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 43:** All Documents constituting or concerning Communications with Mark Adams (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon.

**RESPONSE:** Plaintiff objects to this request because it overly broad and not properly limited in scope and requests Documents what are not relevant to the Matters before the Court. Plaintiff further objects to this request as vague and ambiguous, as it is unclear whether Defendant seeks all Communications with Mark Adams, or only those concerning the Real Property, Remaining Land, or any portion thereof. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to this

request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 44:** All Documents constituting or concerning Communications with Chris Chevreaux concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report.

**RESPONSE:** Plaintiff objects to this interrogatory as duplicitous to Request No. 12. Plaintiff objects to this request because it overly broad and not properly limited in scope and requests Documents what are not relevant to the Matters before the Court. Plaintiff further objects to this request as vague and ambiguous, as it is unclear whether Defendant seeks all Communications with Chris Chevreaux, or only those concerning the Remaining Land or the Chevreaux Appraisal Report. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 45:** All Documents constituting or concerning Communications with Jim Pruitt concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report.

**RESPONSE:** Plaintiff objects to this request because it overly broad and not properly limited in scope and requests Documents what are not relevant to the Matters before the Court. Plaintiff further objects to this request as vague and ambiguous, as it is unclear whether Defendant seeks all Communications with Jim Pruitt, or only those concerning the Remaining Land or the Chevreaux Appraisal Report. Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic. Plaintiff also objects to this request to the extent it seeks documents protected by the attorney-client privilege or work product doctrine.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 46:** All Documents evidencing the members, managers, directors, and officers of BM318 at any time during 2020.

Case 21-04051-mxm Doc 76-1 Filed 07/26/22 Entered 07/26/22 09:19:01 Page 210 of 255

**RESPONSE:** Plaintiff objects to this request to the extent that it requests *all* documents concerning the requested topic. Plaintiff does not, and cannot, have *all* Documents concerning such topic.

Subject to and without waiving the foregoing objection, and to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above.

**REQUEST FOR PRODUCTION NO. 47:** All Documents supporting Your contention in paragraph 16 of the Complaint that "Defendant sold a portion of the Encumbered Land to the broker (or a related person or entity) who had represented Plaintiff under the original purchase agreement to acquire the 2055 acres from Defendant."

**RESPONSE:** Plaintiff objects to this request as Dixon is in possession of such Documents and to the extent such Documents are recorded in the real property records of Parker County what are available to Dixon. Otherwise, Plaintiff refers Dixon to the Documents produced in response to request no. 41 and to the extent not included therein, Plaintiff refers Dixon to the produced farm and ranch contract with Dixon for the Real Property in Dixon's possession, the farm and ranch contract for the purchase of the 381+ acres by Lumar Land & Cattle, LLC and other Documents produced herewith that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 48:** All Documents created prior to the date on which Dixon recorded the Special Warranty Deed, discussing, contemplating or relating to any alleged: (i) unenforceability, (ii) lack of consideration, (iii) lack of reasonably equivalent value, or (iv) avoidability; of any of the Fifth Modification, Deed in Escrow Agreement, the Special Warranty Deed, or its recordation.

**RESPONSE:** Plaintiff objects to this request because "the date on which Dixon recorded the Special Warranty Deed" is not defined. Plaintiff further objects to this request as it requires Plaintiff to make legal conclusions about potential Documents in its possession. Otherwise and Subject to and without waiving the foregoing objection, Plaintiff refers Dixon to the Documents produced herewith that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 49:** All Documents concerning the claim in the amount of $627,475.95 You scheduled for Carnegie Development LLC in the Bankruptcy Case on Schedule E/F [Docket No. 83].

**RESPONSE:** Plaintiff objects that this request is overly broad and unduly burdensome. Further, the Plaintiff objects that this request uses the term "all" what as defined therein, if construed strictly, is global and overly broad, such that this Request is not reasonably tailored in scope. Plaintiff further objects to this request as this is not relevant to the matter at hand. Subject to and without waiving the foregoing objections, all discovery is not yet complete and Plaintiff reserves the right to supplement when information becomes available.

**REQUEST FOR PRODUCTION NO. 50:** All Documents concerning the claim in the amount of $112,797.00 You scheduled for JMJ in the Bankruptcy Case on Schedule E/F [Docket No. 83].

> **RESPONSE:** Plaintiff objects that this request is overly broad and unduly burdensome. Further, the Plaintiff objects that this request uses the term "all" what as defined therein, if construed strictly, is global and overly broad, such that this Request is not reasonably tailored in scope. Plaintiff further objects to this request as this is not relevant to the matter at hand. Subject to and without waiving the foregoing objections, all discovery is not yet complete and Plaintiff reserves the right to supplement when information becomes available.

**REQUEST FOR PRODUCTION NO. 51:** All Documents concerning the claim in the amount of $310,000.00 You scheduled for JMJ in the Bankruptcy Case on Schedule E/F [Docket No. 83].

> **RESPONSE:** Plaintiff objects that this request is overly broad and unduly burdensome. Further, the Plaintiff objects that this request uses the term "all" what as defined therein, if construed strictly, is global and overly broad, such that this Request is not reasonably tailored in scope. Plaintiff further objects to this request as this is not relevant to the matter at hand. Subject to and without waiving the foregoing objections, all discovery is not yet complete and Plaintiff reserves the right to supplement when information becomes available.

**REQUEST FOR PRODUCTION NO. 52:** All Documents concerning the claim in the amount of $61,063.75 You scheduled for Barron Stark Engineers in the Bankruptcy Case on Schedule E/F [Docket No. 83].

> **RESPONSE:** Plaintiff objects that this request is overly broad and unduly burdensome. Further, the Plaintiff objects that this request uses the term "all" what as defined therein, if construed strictly, is global and overly broad, such that this Request is not reasonably tailored in scope. Plaintiff further objects to this request as this is not relevant to the matter at hand. Subject to and without waiving the foregoing objections, all discovery is not yet complete and Plaintiff reserves the right to supplement when information becomes available.

**REQUEST FOR PRODUCTION NO. 53:** All Documents concerning the claim in the amount of $60,000.00 You scheduled for HR Sterling LLC in the Bankruptcy Case on Schedule E/F [Docket No. 83].

> **RESPONSE:** Plaintiff objects that this request is overly broad and unduly burdensome. Further, the Plaintiff objects that this request uses the term "all" what as defined therein, if construed strictly, is global and overly broad, such that this Request is not reasonably tailored in scope. Plaintiff further objects to this request as this is not relevant to the matter at hand. Subject to and without waiving the foregoing objections, all discovery is not yet complete and Plaintiff reserves the right to supplement when information becomes available.

**REQUEST FOR PRODUCTION NO. 54:** All Documents concerning the value of the 118.34 acres of real property situated in the James Bradley Survey, Abstract No. 120, Parker County,

Texas as more particularly described in Exhibit "A" to the Deed of Trust filed under Document Number 201911244 in the Official Public Records of Parker County, Texas (the "118.34 Acres").

**RESPONSE:** Plaintiff refers to the Documents produced herewith that are relevant and responsive to this request. in response to requests no. 54 and no. 6 what would overlap and include Documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 55:** All appraisals of the 118.34 Acres.

**RESPONSE:** Plaintiff refers to the Documents produced herewith in response to requests no. 54 and no. 6 what would overlap and include Documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 56:** All Documents concerning the Farm and Ranch Contract with GH Lumar JV and BM318 for the sale of 23.95 acres of land, situated in Parker County, as more particularly described in Exhibit "A" to the Fifth Loan Modification.

**RESPONSE:** Plaintiff objects as this request is overly broad and requests Documents not relevant to the Matters before the Court. Subject to the foregoing, Plaintiff refers Dixon to the relevant Documents produced herewith that are relevant and responsive to this request.

**REQUEST FOR PRODUCTION NO. 57:** All Documents referenced in any of your responses to any Interrogatory, or which were reviewed or consulted by any of your agents or representatives, other than legal counsel, in the course of responding to any Interrogatory.

**RESPONSE:** Plaintiff refers to the relevant Documents produced what are responsive to this request.

MUNSCH HARDT
DALLAS / HOUSTON / AUSTIN

Ross Tower
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214.855.7565
Direct Fax 214.978.5335
dperry@munsch.com

January 21, 2022

***Via Electronic Mail***
Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
joyce@joycelindauer.com

Re: BM318, LLC's Objections and Responses to The Dixon Water Foundation's Interrogatories and Requests for Production

Dear Ms. Lindauer:

On November 23, 2021, The Dixon Water Foundation ("Dixon") served its *First Set of Interrogatories* (the "Interrogatories") and its *First Requests for Production of Documents and Other Items* (the "RFPs") on BM318, LLC ("BM318"). Dixon granted BM318 an extension of the December 23, 2021 deadline to serve its objections and responses to the Interrogatories and RFPs in connection with BM318's agreement to produce the documents responsive to the RFPs and Interrogatories no later than January 7, 2022. On January 7, 2022, BM318 provided its *Objections and Responses* (the "Responses") to the Interrogatories and RFPs and, after business hours on January 10, 2022, BM318 produced certain documents which did not comport with the Parties' agreement. This letter addresses deficiencies in the Responses with the goal of reaching a resolution without the need for court intervention.

Dixon reserves the right to raise additional deficiencies, seek court intervention through a Motion to Compel or otherwise and to seek continuance of deadlines in the Adversary Proceeding.

## I. Signing and Verification

The Responses to the Interrogatories (a) did not identify the officer or agent that provided the answers and (b) were not signed under oath. The Interrogatories must be answered "by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). The Interrogatories must "be answered separately and fully in writing under oath," and "[t]he person who makes the answers must sign them." Fed. R. Civ. P. 33(b)(3), (5). *See also* Interrogatories, Instructions ¶ 1.

Please have the BM318 officer or agent who provided the Responses to the Interrogatories complete the Verification page attached to the Interrogatories. If answers to the Interrogatories were provided by more than one officer or agent, please have each officer or agent complete a separate Verification, identifying the specific Interrogatories answered by each such officer or agent.

## II. Manner of Production

"A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(B)(2)(E)(i); *see also* RFPs, Instructions ¶ 7. The documents produced thus far were neither produced "as they are kept in the usual course of business" nor did BM318 "organize and label them to correspond to the categories in the request." Rather, the documents that were produced on January 10, 2022 consisted of 6,036 pages combined into nine (9) PDF files without any information regarding which Interrogatories or RFPs the documents were produced in response to.

A party serving RFPs "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). Accordingly, the RFPs instructed as follows: "in the case of Documents constituting electronically stored information, You must produce such electronically stored information in native format, or in near native format which must be reasonably usable and electronically searchable." RFPs, Instructions ¶ 7. The documents produced on January 10, 2022 were not in native format nor in a reasonably useable and electronically searchable format. As produced, these documents are neither reasonably usable nor electronically searchable.

Please re-produce the documents—and any supplemental documents—in conformance with the Federal Rules and the RFPs. To reiterate, the Requests sought documents in their native format. Thus, please re-produce the documents in native format (for example, without limitation, Microsoft Word documents should be produced in .doc or .docx format; Excel files should be produced in .xls or .xlsx format; e-mails should be produced in .eml, .mbox, .msg, or .pst format, etc.).

## III. Preliminary Statement

### A. Preliminary Statement #3

In the RFPs, Dixon requests that BM318 "produce all responsive Documents in Your possession, custody, care, or control." ; *see also* Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request . . . to produce . . . items in the responding party's possession, custody, or control.").

BM318's Responses indicate that it "will produce responsive documents only to the extent that such documents are in the possession, custody, or control of the Antitrust Division of the U.S. Department of Justice, as set forth in the Federal Rules of Civil Procedure." BM318 further asserts that the documents in its "possession, custody, and control does not include any constructive possession that may be conferred by Plaintiff's right or power to compel the production of documents or information from third parties or to request their production from other divisions of the Department of Justice or agencies of the United States."

First, as requested in the RFPs and pursuant to the Federal Rules, please produce all responsive documents in the "possession, custody, or control" of BM318.

Second, please confirm that BM318's Responses thus far are not—and that any supplemental responses will not be—limited to documents that are in the possession, custody, or control of the Antitrust

Division of the U.S. Department of Justice or any other divisions of the Department of Justice or agencies of the United States.

Third, if BM318 is aware of responsive documents that are not in its possession, custody, or control, BM318 "must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response.'"[1] In particular, please identify any responsive documents that are in the possession, custody, or control of any other party, including the Antitrust Division of the U.S. Department of Justice or any other divisions of the Department of Justice or agencies of the United States.

**B.** Preliminary Statement #4

BM318 indicates that its Responses "shall not be deemed or construed that there are, in fact, responsive documents."

"'In responding to [Rule 34] discovery requests, a reasonable inquiry must be made, and if no responsive documents or tangible things exist, Fed. R. Civ. P. 26(g)(1), the responding party should so state with sufficient specificity to allow the Court to determine whether the party made a reasonable inquiry and exercised due diligence.'"[2] *See also* RFPs, Instructions ¶ 9.

For each RFP, please indicate whether BM318 is producing any responsive documents and identify the documents being produced. If no documents responsive to an RFP exist, please confirm that BM318 made a reasonable inquiry and determined that no responsive documents exist.

**C.** Preliminary Statement #6

BM318 indicates that it will not produce any "publicly available documents."

The RFPs and the Federal Rules require BM318 to produce all responsive documents in its possession, custody, or control, regardless of whether they are also "publicly available."

Please confirm that BM318's Responses thus far—and that any supplemental responses—include all responsive documents in BM318's possession, custody, or control, including any documents that are also "publicly available." Please also identify any responsive documents that are "publicly available" that BM318 is not producing.

## IV. General Provisions and Objections

The Responses include eight (8) general objections, which BM318 "incorporates by reference" into each Response without further explanation or support.

---

[1] *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D.Tex. 2014) (quoting *Atcherley v. Clark*, No. 1:12cv00225 LJO DLB (PC), 2014 U.S. Dist. LEXIS 131188, at *4 (E.D. Cal. Sept. 17, 2014).

[2] *Heller*, 303 F.R.D. at 485 (quoting *Atcherley*, 2014 U.S. Dist. LEXIS 131188, at *3).

"In short, '[o]bjections to discovery must be made with specificity, and the responding party has the obligation to explain and support its objections.'"[3] *See also* Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B) (requiring that objections to interrogatories and requests for production be stated "with specificity"). Courts have long held that "these general, generic objections violate the Federal Rules and are invalid."[4] Where, as in BM318's Responses, the General Objections are broadly raised without support or explanation, the requesting party is left "wondering if there are any responsive documents being withheld."[5] Indeed, the Responses do not indicate whether any responsive documents are being withheld on the basis of any of the General Objections.

For example, in the Responses, BM318 first "adopts and incorporates . . . the definitions provided by Dixon in its First Set of Interrogatories and First Requests for Production of Documents." BM318 then proceeds to raise General Objections to each of these same definitions, *see* General Objection Nos. 1, 2, 4, 5, 6, 7, leaving Dixon to speculate as to which definitions BM318 is objecting to, what meanings BM318 is attributing to the defined terms in its Responses, and whether all responsive documents are being produced.

To avoid this lack of clarity, the District Court's edict is clear: "Counsel should cease and desist from raising these free-standing and purportedly universally applicable 'general objections' in responding to discovery requests. Deploying these general objections in this manner is . . . inconsistent with the Federal Rules and is not warranted by existing law."[6]

Please withdraw each of the General Objections and produce any responsive documents previously withheld on the basis of the General Objections.

Dixon further addresses certain of the General Objections, which—"even when asserted in response to a specific discovery request and not as part of a general list of generic objections preceding any responses to specific discovery requests—are likewise improper and ineffective."[7]

**A.** General Objection #1

BM318 generally "objects to each instruction, definition, document request, and interrogatory to the extent that it purports to impose any requirement or discovery obligation greater than or different from those under the Federal Rules of Bankruptcy Procedure and the applicable Rules and Orders of the Court."

The District Court specifically notes that this general objection "is an off-the-shelf and decidedly non-specific objection that gains the responding party nothing without tying it to a particular discovery

---

3 *Heller, 303 F.R.D. at 483 (quoting Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 U.S. Dist. LEXIS 17857, at *30 (D. Colo. Feb. 8, 2010).*

4 *Heller*, 303 F.R.D. at 483.

5 *Heller*, 303 F.R.D. at 485.

6 *Heller*, 303 F.R.D. at 484.

7 *Heller*, 303 F.R.D. at 483.

request and explaining precisely how that request exceeds or conflicts with the scope of permissible discovery."[8]

General Objection #1 is improper and should be withdrawn.

**B.** General Objection #2

BM318 generally "objects to each instruction, definition, document request, and interrogatory to the extent that it seeks documents protected from disclosure by the attorney-client privilege, deliberative process privilege, attorney work product doctrine, or any other applicable privilege." BM318 does not, however, provide a privilege log or indicate whether any responsive documents have been withheld as privileged or attorney work product. Further, a cursory review of the documents produced by BM318 reveals that it has redacted numerous emails, including not only the content of such emails but also the information regarding who the parties to the emails are. The identity of the parties to the emails is not privileged, should not be redacted and these emails along with any other documents that BM318 is withholding on the basis of a privilege objection should be included in a privilege log to be promptly produced to Dixon.

"To comply with the requirements to support withholding any responsive document or information as privileged or protected work product, a privilege log or equivalent document complying with Federal Rule of Civil Procedure 26(b)(5)(A)'s requirements must be produced for any documents, communications, or other materials withheld from production on the grounds of attorney-client privilege, work product, or other privilege, immunity, or protection."[9] *See also* Interrogatories, Instructions ¶ 4; RFPs, Instructions ¶ 10.

General Objection #2 is improper and should be withdrawn. For each Interrogatory or RFP where BM318 has withheld information or documents on the basis of any privilege or doctrine, please provide a privilege log that identifies the basis of the privilege claimed, the general nature and subject matter of the information subject to such privilege, the Interrogatory or RFP and/or portions thereof to which the asserted privilege applies, the grounds for objection with sufficient particularity in order to enable Dixon and the Court to determine the validity of the assertion of privilege, including without limitation all persons receiving such asserted privileged information, regardless of the time at which such information was received.

**C.** General Objection #3

BM318 generally "objects to each document request and interrogatory that is overly broad, unduly burdensome, not relevant, or not reasonably calculated to lead to the discovery of admissible evidence." None of these are proper bases for objection without additional support.

---

[8] *Heller*, 303 F.R.D. at 484.

[9] *Heller*, 303 F.R.D. at 486 (citing Fed. R. Civ. P. 26(b)(5)).

"A party resisting discovery must show specifically how each interrogatory or document request is overly broad, unduly burdensome, or oppressive."[10] "This requires the party resisting discovery to show how the requested discovery was overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden"[11]:

- "If a discovery request is overbroad, the responding party must, to comply with Rule 33 or Rule 34, explain the extent to which it is overbroad and answer or respond to the extent that it is not — and explain the scope of what the responding party is answering or responding to."[12]

- "Similarly, if answering or responding to a discovery request would impose an undue burden, the responding party must . . . properly substantiate that assertion . . . ."[13]

- If BM318 asserts that all or part of an Interrogatory or RFP is not relevant or reasonably calculated to lead to the discovery of admissible evidence, BM318 must "make a specific objection explaining how and to what extent the requested documents or information are not relevant and discoverable under the Rule 26(b) standard."[14]

General Objection #3 is improper and should be withdrawn.

**D.** General Objection #4

BM318 generally "objects to each instruction, definition, document request, and interrogatory as overbroad and unduly burdensome to the extent it seeks documents or information that are readily or more accessible to Defendant from Defendant's own files, or from documents or information in Defendant's possession."

The RFPs and the Federal Rules require BM318 to produce all responsive documents in its possession, custody, or control, regardless of whether they are also in the possession of Dixon. "[A] party may not simply refuse to respond to a party's discovery request on the grounds that the party already has the information."[15]

General Objection #4 is improper and should be withdrawn.

---

10 *Heller*, 303 F.R.D. at 490 (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

11 *Heller*, 303 F.R.D. at 490 (citing *Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005)).

12 *Heller*, 303 F.R.D. at 488 (citing *Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 U.S. Dist. LEXIS 80465, at *6 (S.D. Fla. Sept. 18, 2008)).

13 *Heller*, 303 F.R.D. at 489 (citing *Cartel Asset Mgmt.* CBS, 2010 U.S. Dist. LEXIS 17857, at *43).

14 *Heller*, 303 F.R.D. at 489 (citing *McLeod*, 894 F.2d at 1485).

15 *Keybank Nat'l Ass'n v. Perkins Rowe Assocs.*, No. 09-497-JJB-SCR, 2011 U.S. Dist. LEXIS 37791, at *7 (M.D. La. Apr. 6, 2011) (citing *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003)).

**E.** General Objections #5 and #6

BM318 generally objects that the Interrogatories and RFPs seek the disclosure or production of "confidential, proprietary, highly sensitive, or trade secret information." BM318 does not, however, provide any indication regarding the nature of the information that it seeks to withhold from production.

"A party seeking to protect the disclosure of sensitive information must first establish the confidential nature of the requested discovery. . . . Even so, 'there is no absolute privilege for trade secrets and similar confidential information.'"[16] In any event, the proper mechanism for limiting the disclosure of alleged trade secrets or confidential information is a motion for a protective order. *See* Fed. R. Civ. P. 26(c)(1)(G).

General Objections #5 and #6 are improper and should be withdrawn.

**F.** General Objection #8

BM318 generally objects "[t]o the extent any of Defendant's document requests or its interrogatory seek documents or answers that include expert material . . . as premature." BM318 does not identify any "expert material" that is withheld on the basis of this objection.

As noted above with respect to any responsive documents withheld on the basis of privilege or protected work product, "a privilege log or equivalent document complying with Federal Rule of Civil Procedure 26(b)(5)(A)'s requirements must be produced for any documents, communications, or other materials withheld"[17] on the basis of trial-preparation protection for expert witnesses. Communications with an expert witness are explicitly not protected from disclosure if they "identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(ii). BM318 cannot delay production of documents provided to an expert until "the time period for exchanging expert reports set by the Court" under the guise of trial-preparation protection.

General Objection #8 is improper and should be withdrawn. For each Interrogatory or RFP where BM318 has withheld information or documents on the basis of trial-preparation protection for an expert witness, please provide a privilege log that identifies the basis of the privilege claimed, the general nature and subject matter of the information subject to such privilege, the Interrogatory or RFP and/or portions thereof to which the asserted privilege applies, the grounds for objection with sufficient particularity in order to enable Dixon and the Court to determine the validity of the assertion of privilege, including without limitation all persons receiving such asserted privileged information, regardless of the time at which such information was received.

---

16 *BNSF Ry. Co. v. Panhandle N. R.R., LLC*, No. 4:16-cv-01061-O, 2017 U.S. Dist. LEXIS 222564, at *5 (N.D. Tex. May 25, 2017) (quoting *Fed. Open Mkt. Comm. of Fed. Res. Sys. v. Merrill*, 443 U.S. 340, 362 (1979)).

17 *Heller*, 303 F.R.D. at 486 (citing Fed. R. Civ. P. 26(b)(5)).

### V. BM318's Specific Objections and Responses to Dixon's First Set of Interrogatories

**A.** Responses "subject to and without waiving the foregoing objection(s)"

In Responses to Interrogatory Nos. 2–7 and 15, BM318 asserts objections and then responds to the Interrogatory "subject to and without waiving the foregoing objection(s)."

"A response of this nature, raising an objection and then providing a response 'subject to and without waiving' the objection, without more, 'leaves the requesting party wondering if there are any responsive documents being withheld' under the objection."[18]

For each of these Interrogatories, please either affirmatively explain whether BM318 is withholding any responsive information based on the asserted objection and/or withdraw the objection.

**B.** Responses asserting that Dixon has "the same information as Plaintiff"

In Responses to Interrogatory Nos. 3, 4, and 7, BM318 objects that "Dixon, as the recipient of such information, would have the same information as Plaintiff."

The Interrogatories and the Federal Rules require BM318 to provide all responsive information, regardless of whether Dixon may already have the same information. "[A] party may not simply refuse to respond to a party's discovery request on the grounds that the party already has the information."[19]

For each of these Interrogatories, please withdraw the objection and answer the Interrogatory fully in writing under oath.

**C.** Responses refusing to provide a "legal conclusion" or to "speculate"

In Responses to Interrogatory Nos. 3, 10–14, and 16, BM318 objects that the Interrogatory "calls for a legal conclusion"; BM318 further objects to Interrogatory Nos. 10–14 and 16 as calling for BM318 to "speculate."

These Interrogatories neither ask for a legal opinion nor ask BM318 to speculate; rather the Interrogatories ask BM318 to describe its understanding of and/or provide the factual bases for issues on which BM318 bears the burden of proof: elements related to the causes of action asserted in the Complaint. If BM318 does not have an understanding of or factual bases for these matters, the Responses should so indicate.

Furthermore, even if the Interrogatories asked for a legal opinion, BM318 must nevertheless fully respond. The Federal Rules explicitly provide that an interrogatory "may relate to any matter that may

---

18 *Kunze v. Baylor Scott & White Health*, No. 3:20-CV-01276-N, 2021 U.S. Dist. LEXIS 202938, at *3 (N.D. Tex. Oct. 21, 2021) (citing *Heller*, 303 F.R.D. at 485).

19 *Keybank Nat'l Ass'n v. Perkins Rowe Assocs.*, No. 09-497-JJB-SCR, 2011 U.S. Dist. LEXIS 37791, at *7 (M.D. La. Apr. 6, 2011) (citing *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003)).

be inquired into under Rule 26(b)" and is "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2).

For each of these Interrogatories, please withdraw the objection and answer the Interrogatory fully in writing under oath.

**D.** Objections that an Interrogatory is "duplicitous"

In Responses to Interrogatory Nos. 2 and 6, BM318 objects that the Interrogatory is "duplicitous" to Interrogatory Nos. 1 and 5, respectively.

As an initial matter, the term "duplicitous" may not have the meaning intended by BM318. "The term 'duplicative' is the adjective form of 'duplicate,' which indicates doing the same thing more than once. However, the term 'duplicitous' is defined by Black's Law Dictionary, 7th ed., as 'deceitful, double-dealing.'" *Design Ideas, Ltd. v. Yankee Candle Co.*, No. 10-CV-3217, 2013 U.S. Dist. LEXIS 4447, at *14 n.4 (C.D. Ill. Jan. 11, 2013). Assuming BM318 intended to object that one Interrogatory is "duplicative" of another, the objection is nevertheless improper.

The court has the discretion to limit discovery if it determines that the request is "unreasonably" duplicative. Fed. R. Civ. P. 26(b)(2)(C)(i). That is not the case here. Interrogatory Nos. 1 and 2 and Nos. 5 and 6 are each carefully worded to obtain information about different aspects of the Deed in Escrow Agreement and the Fifth Loan Modification, respectively.

For each of these Interrogatories, please withdraw the objection and supplement the Responses with any information previously withheld on the basis of the objection.

**E.** Value of the "Remaining Land" at specified times

Interrogatory No. 8 asks what BM318 contends is the value of the Remaining Land "at the time of execution of the Deed in Escrow Agreement," while Interrogatory No. 9 asks what BM318 contends is the value of the Remaining Land "at the time that Dixon recorded the Special Warranty Deed." These are two different dates:

- "The last modification of the Loan occurred on February 27, 2020 which included a Deed in Escrow Agreement." *See* Complaint ¶ 13.

- "[O]n July 2, 2020, the Defendant recorded the Deed pursuant to the Deed in Escrow Agreement . . . ." *See* Complaint ¶ 15.

For Interrogatory Nos. 8 and 9, please supplement the Responses based on these dates, as alleged by BM318 in the Complaint.

**F.** Relationship between BM318 and JMJ

Interrogatory No. 15 asks BM318 to describe in detail its relationship with JMJ. In its Response, BM318 objects that the Interrogatory is not relevant and states only that "there is no direct ownership interest."

The nature of the relationship between BM318 and JMJ was relevant enough to include in BM318's Complaint. *See* Complaint ¶ 14 (disclosing that JMJ is "an entity related to" BM318, which entered into a buyback contract for the purchase of the Remaining Land from Dixon). Discovery regarding the relationship between BM318 and JMJ may lead to the discovery of admissible evidence and is otherwise proportional to the needs of the case: reciting details regarding the relationship between BM318 and JMJ requires minimal effort.

BM318's Response to Interrogatory No. 15 is insufficient as it does not address any of the aspects of the relationship listed in the Interrogatory: "any affiliate relation, insider relation (as the term 'insider' is defined in the Bankruptcy Code), ownership relation, common affiliates, common officers and/or directors, and any and all business conducted between you and JMJ."

For Interrogatory No. 15, please withdraw the objection and answer the Interrogatory fully in writing under oath.

**G.** Damages calculation

Interrogatory No. 16 asks BM318 to "detail any calculation of damages you allege you are entitled to receive pursuant to the Complaint." In its Response, BM318 objects that the "investigation and development of all facts and circumstances relating to this action is ongoing, thus the interrogatory is immature." Assuming BM318 intended to object to Interrogatory No. 16 as being "premature" rather than "immature," the objection is nevertheless improper and the Response incomplete.

Subject to BM318's ongoing duty to supplement its Responses, *see* Fed. R. Civ. P. 26(e), the Interrogatory requests any detail that BM318 currently has regarding how it will calculate the damages it asserts in the Complaint. If BM318 filed its Complaint without an understanding of how it would calculate damages, the Response should so indicate. Otherwise, please supplement the Response to Interrogatory No. 16 to provide as much detail as BM318 currently has regarding its damages calculation.

**VI. BM318's Objections and Responses to Dixon's First Requests for Production of Documents and Other Items**

**A.** Objections to producing "documents in Dixon's possession" or the "possession of others"

In Reponses to RFP Nos. 1–15, 17–20, 34–36, and 47, BM318 objects to producing documents that are in Dixon's possession; BM318 further objects to RFP Nos. 7–20 and 34–36 as requiring the production of documents "in the possession of others."

The RFPs and the Federal Rules require BM318 to produce all responsive documents in its possession, custody, or control, regardless of whether they are also in the possession of Dixon or a third party. "[A] party may not simply refuse to respond to a party's discovery request on the grounds that the party already has the information."[20] Furthermore, if BM318 is aware of any responsive documents that it is not producing because they are not in its possession, custody, or control, BM318 "must so state with sufficient specificity to allow the Court (1) to conclude that the responses were made after a case-specific evaluation and (2) to evaluate the merit of that response.'"[21]

For each of these RFPs, please withdraw the objection and produce all responsive documents in BM318's possession, custody, or control.

**B.** Objections to producing "*all*" Documents

In Responses to RFP Nos. 1–20, 28–30, 32–38, and 41–46, BM318 objects, to the extent that the RFP "requests *all* documents concerning" a particular topic, that "Plaintiff does not, and cannot have *all* Documents" concerning such topic. This objection is improper.

Of course BM318 cannot produce documents that are not in its possession, custody, or control, and the RFPs and the Federal Rules do not so require. The RFPs and the Federal Rules do require, however, that BM318 produce all responsive documents in its possession, custody, or control.

For each of these RFPs, please withdraw the objection and produce all responsive documents in BM318's possession, custody, or control, including any documents that BM318 withheld on the basis of this objection.

**C.** Producing documents "to the extent Plaintiff is in possession" of a responsive document that has "not already been produced" and is "not protected by the privileges listed above"

In Responses to RFP Nos. 1–9, 11–12, 15–38, and 41–46, BM318 indicates that, "to the extent Plaintiff is in possession of any Document responsive to this request, Plaintiff will produce the documents responsive to this request that have not already been produced and are not protected by the privileges listed above"; BM318 further objects to RFP Nos. 1–5 and 42–45 to the extent they seek "documents protected by the attorney-client privilege or work product doctrine."

First, the RFPs and the Federal Rules require BM318 to produce all responsive documents in its possession, custody, or control; not just those responsive documents in BM318's "possession." For each of these RFPs, please provide a supplemental Response that confirms that BM318 has produced all responsive documents in its "possession, custody, or control."

---

[20] *Keybank Nat'l Ass'n v. Perkins Rowe Assocs.*, No. 09-497-JJB-SCR, 2011 U.S. Dist. LEXIS 37791, at *7 (M.D. La. Apr. 6, 2011) (citing *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003)).

[21] *Heller*, 303 F.R.D. at 485 (quoting *Atcherley v. Clark*, No. 1:12cv00225 LJO DLB (PC), 2014 U.S. Dist. LEXIS 131188, at *4 (E.D. Cal. Sept. 17, 2014).

Second, when BM318 provided its Responses, no documents had been produced. Indeed, no documents were produced until three days later. Please confirm that BM318 has not withheld any responsive documents on the belief that the documents had already been produced.

Third, as noted above, if BM318 has withheld any documents on the basis of any privilege or doctrine, please provide a privilege log that identifies the basis of the privilege claimed, the general nature and subject matter of the information subject to such privilege, the RFP and/or portions thereof to which the asserted privilege applies, the grounds for objection with sufficient particularity in order to enable Dixon and the Court to determine the validity of the assertion of privilege, including without limitation all persons receiving such asserted privileged information, regardless of the time at which such information was received.

**D.** Responses "subject to and without waiving the foregoing objection(s)"

In Responses to RFP Nos. 1–9, 11–12, 16–46, 48–53, and 56, BM318 asserts objections and then responds to the RFP "subject to and without waiving the foregoing objection(s)."

"A response of this nature, raising an objection and then providing a response 'subject to and without waiving' the objection, without more, 'leaves the requesting party wondering if there are any responsive documents being withheld' under the objection."[22]

For each of these RFPs, please either affirmatively explain whether BM318 is withholding any responsive documents based on the asserted objection or withdraw the objection.

**E.** Objections that an RFP is "overly broad"

In Responses to RFP Nos. 3, 5–10, 13–17, 41–45, 49–53, and 56, BM318 objects that the RFP is "overly broad."

None of the RFPs are "overly broad" because they are limited to only those documents in the possession, custody, or control of BM318. The RFPs are further limited to "the time period beginning November 1, 2018, through the present." *See* RFPs, Instructions ¶ 12. Indeed, BM318, as the plaintiff that commenced this lawsuit, likely has already gathered many of the responsive Documents as part of its own due diligence.

"If a discovery request is overbroad, the responding party must, to comply with Rule 33 . . . , explain the extent to which it is overbroad and answer or respond to the extent that it is not — and explain the scope of what the responding party is answering or responding to."[23] BM318 would still need to

---

[22] *Kunze v. Baylor Scott & White Health*, No. 3:20-CV-01276-N, 2021 U.S. Dist. LEXIS 202938, at *3 (N.D. Tex. Oct. 21, 2021) (citing *Heller*, 303 F.R.D. at 485).

[23] *Heller*, 303 F.R.D. at 488 (citing *Consumer Elecs. Ass'n v. Compras & Buys Magazine, Inc.*, No. 08-21085-CIV, 2008 U.S. Dist. LEXIS 80465, at *6 (S.D. Fla. Sept. 18, 2008)).

produce all Documents in its possession, custody, or control that are responsive to the portion of the RFP that is not "overly broad."

For each of these RFPs, please (1) describe the documents that are being withheld on the basis of the objection; and produce responsive documents to the extent the RFP is not overbroad, or (2) withdraw the objection and produce all responsive documents in BM318's possession, custody, or control.

**F.** Objections that an RFP "seeks the production of Documents that are not relevant" or "not calculated to lead to the discovery of admissible evidence"

In Responses to RFP Nos. 10, 13–17, 19–33, 41–45, 49–53, and 56, BM318 objects that the RFP seeks the production of Documents that are "not relevant"; BM318 further objects to RFP Nos. 3, 5–10, and 13–15 as "not calculated to lead to the discovery of admissible evidence" because they are either "not described with appropriate specificity" or "not properly limited in scope."

The Federal Rules broadly allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Documents in BM318's possession, custody, or control that are related to each of the Loan Documents (the Note, the Deed of Trust, the Loan Modifications, the Deed in Escrow Agreement, and the Special Warranty Deed), the Real Property, the Remaining Land, the Encumbered Land, Dixon, JMJ, and BM318 (including BM318's financials, assets, and liabilities at relevant times and BM318's communications, relationships, and transactions with relevant parties) are all either relevant to a party's claim or defense or could otherwise lead to the discovery of admissible evidence.

If BM318 nevertheless asserts that all or part of an RFP is not relevant or reasonably calculated to lead to the discovery of admissible evidence, BM318 must "make a specific objection explaining how and to what extent the requested documents or information are not relevant and discoverable under the Rule 26(b) standard" and specifically describe the portion of the RFP to which BM318 is producing documents.[24] Otherwise, BM318 should withdraw the objections and produce all responsive documents in its possession, custody, and control.

**G.** Objections that "the value of the Real Property fluctuates over time"

In Responses to RFP Nos. 6,7 and 8, BM318 objects that the RFPs are "not described with appropriate specificity, considering that the value of the Real Property fluctuates over time." This objection is improper. Indeed, the value of the Real Property at various relevant times is at center of this dispute.

In response to these RFPs, please produce all responsive Documents regarding the value of the Real Property and the Remaining Land, or any portions thereof, and all responsive Documents concerning "any potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any

---

24 *Heller*, 303 F.R.D. at 489 (citing *McLeod*, 894 F.2d at 1485).

portion thereof, including any responsive Documents that reflect the fluctuating value of the Real Property over time.

**H.** Appraisals of the Real Property and Remaining Land

RFP Nos. 13 and 14 request production of all appraisals of the Real Property and of the Remaining Land, which are essential and at the core of BM318's claims. Please produce all such appraisals in BM318's possession, custody, or control or indicate that no such appraisals exist.

**I.** Documents and Communications with American Escrow Company

RFP No. 15 requests all Documents and Communications with or concerning American Escrow Company. Dixon agrees that this RFP should be limited to relevant topics.

In response to RFP No. 15, please produce all Documents and Communications with or concerning American Escrow Company that relate to Dixon, the Deed in Escrow Agreement, and any funds held pursuant to the Deed in Escrow Agreement.

**J.** Objections that an RFP is "vague and ambiguous"

In Responses to RFP Nos. 10, 13–17, 37–38, and 42–45, BM318 objects that the RFP is "vague and ambiguous."

"'The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.' 'A party objecting on these grounds must explain the specific and particular way in which a request is vague.'"[25] The "vague and ambiguous" objections asserted in response to RFP Nos. 10 and 13–15 are improperly raised without any further explanation. None of these RFPs are vague or ambiguous; each seeks the production of all responsive Documents in BM318's possession, custody, or control that relates to a discrete, relevant matter. Please produce all such responsive Documents.

For the remaining interrogatories, the below table lists the RFPs for which BM318 provided at least some explanation for its "vague and ambiguous" objection. In order to efficiently resolve any dispute, Dixon provides the following clarifications:

| **RFP No.** | **"vague and ambiguous" objection** | **clarification** |
|---|---|---|
| 16. All Documents constituting or concerning Communications with JMJ and further concerning the Remaining Land or any portion thereof. | unclear whether Defendant seeks all Communications with JMJ, or only those concerning the Remaining Land or any portion thereof. | Please produce all Communications with JMJ, including those concerning the Remaining Land or any portion thereof. |

[25] *Heller*, 303 F.R.D. at 491 (citations omitted).

| **RFP No.** | **"vague and ambiguous" objection** | **clarification** |
|---|---|---|
| 17. All Documents constituting or concerning Communications with JMJ and further concerning Dixon. | unclear whether Defendant seeks all Communications with JMJ, or only those concerning Dixon | Please produce all Communications with JMJ, including those concerning Dixon. |
| 37. All Documents concerning BM318's existing or available capital at any time from June 1, 2020 through the Petition Date. | "existing or available capital" is vague and ambiguous and could vary on a daily basis | Please produce all Documents concerning BM318's existing or available capital, including any that demonstrate the variability on a daily basis. |
| 38. All Documents concerning BM318's existing or available capital at any time from January 1, 2020 through the Petition Date. | "existing or available capital" is vague and ambiguous and could vary on a daily basis | Please produce all Documents concerning BM318's existing or available capital, including any that demonstrate the variability on a daily basis. |
| 42. All Documents constituting or concerning Communications with Larry Martin (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon. | unclear whether Defendant seeks all Communications with Larry Martin, or only those concerning the Real Property, Remaining Land, or any portion thereof | Please produce all Communications with Larry Martin concerning the Real Property, Remaining Land, any portion thereof, or Dixon. |
| 43. All Documents constituting or concerning Communications with Mark Adams (identified in Plaintiff's Initial Disclosures) and further concerning the Real Property, Remaining Land, any portion thereof, or Dixon. | unclear whether Defendant seeks all Communications with Mark Adams, or only those concerning the Real Property, Remaining Land, or any portion thereof | Please produce all Communications with Mark Adams concerning the Real Property, Remaining Land, any portion thereof, or Dixon. |
| 44. All Documents constituting or concerning Communications with Chris Chevreaux concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report. | unclear whether Defendant seeks all Communications with Chris Chevreaux, or only those concerning the Remaining Land or the Chevreaux Appraisal Report | Please produce all Communications with Chris Chevreaux concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report. |
| 45. All Documents constituting or concerning Communications with Jim Pruitt concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report. | unclear whether Defendant seeks all Communications with Jim Pruitt, or only those concerning the Remaining Land or the Chevreaux Appraisal Report | Please produce all Communications with Jim Pruitt concerning the Remaining Land, any portion thereof, and/or the Chevreaux Appraisal Report. |

**K.** Objections that an RFP is "immature"

In Responses to RFP Nos. 19–33 and 37–40, BM318 objects that the RFP is "immature" because BM318's "investigation and development of all facts and circumstances relating to this action is ongoing." Assuming BM318 intended to object to these RFPs as being "premature" rather than "immature," the objection is nevertheless improper.

RFP Nos. 19–33 and 37–38 request the production of historical financial documents. Please either produce the requested documents or indicate that—after reasonable inquiry—they do not exist.

RFP Nos. 39 and 40 request production of Documents concerning any negotiations or discussions (with any persons or entities other than Dixon) "for the potential or proposed sale, conveyance, transfer, or disposition of the Remaining Land, or any portion thereof." Subject to BM318's ongoing duty to supplement its Responses, *see* Fed. R. Civ. P. 26(e), please identify any responsive Documents or Communications are being produced or confirm that no such documents exist.

**L.** Objections that an RFP is "duplicitous"

In Responses to RFP Nos. 12–14, 20, 22, 24, 25–29, 32, 37, and 44, BM318 objects that the RFP is "duplicitous" to other RFPs.

As an initial matter, the term "duplicitous" may not have the meaning intended by BM318. "The term 'duplicative' is the adjective form of 'duplicate,' which indicates doing the same thing more than once. However, the term 'duplicitous' is defined by Black's Law Dictionary, 7th ed., as 'deceitful, double-dealing.'" *Design Ideas, Ltd. v. Yankee Candle Co.*, No. 10-CV-3217, 2013 U.S. Dist. LEXIS 4447, at *14 n.4 (C.D. Ill. Jan. 11, 2013). Assuming BM318 intended to object that one RFP is "duplicative" of another, the objection is nevertheless improper.

The court has the discretion to limit discovery if it determines that the request is "unreasonably" duplicative. Fed. R. Civ. P. 26(b)(2)(C)(i). That is not the case here. The RFPs are carefully worded to ensure that all responsive documents about the requested topic are produced. Even if the RFPs are determined to be "duplicative," they are not "unreasonably" duplicative. BM318 has provided no evidence of any burden imposed by the "duplicative" RFPs. Indeed, "all [BM318] must do is reference the corresponding response to answer the request."[26]

For each of these RFPs, please withdraw the objection and supplement the Responses with any responsive documents previously withheld on the basis of the objection.

---

26 *StoneEagle Servs. v. Gillman*, No. 3:11-cv-2408-P, 2013 U.S. Dist. LEXIS 194350, at *16 (N.D. Tex. Dec. 23, 2013).

**M.** Documents created prior to "the date on which Dixon recorded the Special Warranty Deed"

RFP No. 48 seeks the production of certain "Documents created prior to the date on which Dixon recorded the Special Warranty Deed." In its Response, BM318 objects that "'the date on which Dixon recorded the Special Warranty Deed' is not defined." This objection is disingenuous.

In the Complaint, BM318 alleges: "on July 2, 2020, the Defendant recorded the Deed pursuant to the Deed in Escrow Agreement . . . ." See Complaint ¶ 15.

For RFP No. 48, please withdraw the objection and produce all responsive Documents created prior to "the date on which Dixon recorded the Special Warranty Deed," as such date is alleged by BM318 in the Complaint.

**N.** Documents concerning scheduled claims

RFP Nos. 49–53 request Documents concerning claims scheduled by BM318. As above, the RFP requests the production of "all" responsive Documents, which is, pursuant to the RFPs and the Federal Rules, limited to those responsive Documents in the possession, custody, and control of BM318. The scheduled claims are relevant as to the elements of BM318's claims asserted in the Complaint. Please produce all responsive Documents regarding these scheduled claims.

Sincerely,

MUNSCH HARDT KOPF & HARR, P.C.



By:____________________________
Deborah M. Perry

cc: Jay H. Ong

**JOYCE W. LINDAUER ATTORNEY, PLLC**
Attorney & Mediator
1412 Main Street, Suite 500
Dallas, Texas 75202
Email: joyce@joycelindauer.com

Telephone No.
(972) 503-4033

Facsimile No.
(972) 503-4034

February 3, 2022

Via Email
Deborah M. Perry
Munsch Hardt Kopf & Harr, PC
500 North Akard Street, Suite 3800
Dallas, Texas 75201
Email: dperry@munsch.com

**RE: BM318, LLC's Objections and Responses to Defendant The Dixon Water Foundation's (1) First Set of Interrogatories and (2) First Requests for Production of Documents and Other Items (collectively, "Discovery Requests"**

Dear Ms. Perry:

In response to your letter dated January 21, 2022, in which you identified and/or alleged certain deficiencies concerning its Objections and Responses, BM318, LLC ("BM318," "Debtor," or "Plaintiff," as appropriate) would reply as follows, generally noting that its Objections and Responses (the "Responses") were actually provided in accordance with the Parties' agreement, with exceptions as noted *infra*, despite your assertion to the contrary. The following responses are subject to and shall not be in waiver of any of the objections made by Debtor in response to Defendant's Discovery Requests.

## I. Signing and Verification

Debtor admits the allegation in the first paragraph Section I concerning the requirements outlined in Fed. R. Civ. P. 33(b)(1)(B), 33(b)(3) and 33(b)(5). Debtor would note that it must provide a signed verification of the agent(s) or officer(s) of the Debtor to fully comport with these Rules. As such, Debtor will cure this discrepancy by tendering such Verification Statement or Statements in a timely manner.

## II. Manner of Production

Debtor admits that Fed. R. Civ. P 34(b)(2)(E)(i), states that documents (i) must be produced as kept in the usual course of business or (ii) must be organized and labelled corresponding to categories in the request, but denies that it has in any way violated this rule regarding their manner of production. Notably, the Rule permits production in one of two ways. While the documents were indeed not labeled according to the Request to which they are responsive, the files have been produced to you in the way they are kept in the ordinary course of business which is primarily in

chronological order. The Debtor simply combined the 6,036 pages (found in hundreds if not thousands of files) into the consolidated nine (9) PDF files, facilitating transmission and required Bates-stamping which is necessary to simplify identification and reference. The application software used by my law firm to perform this function converts the files to PDF format. This is a standard practice. As for your instructions to provide all documents in native format or near native format, that instruction is not mirrored in the federal rules, and is imposed only by you. Despite this, the allegation that the "documents are neither reasonably usable nor electronically searchable," as a result of them not being in native (or near native) format is untrue. I have personally been able to electronically search the documents myself for specific text. As such, all documents produced have been in conformity with both the Federal Rules and the RFPs as written. Further, they have been produced in the only manner that allows such documents to be Bates-stamped, and are produced in a format that precludes their manipulation or alteration.

Given that Debtor has objected to certain requests contained in Plaintiff's Discovery Requests, including the expansive and overlapping scope and that such requests were overly broad, unduly burdensome, irrelevant, or not reasonably calculated to lead to the discovery of admissible evidence, any requirement to "organize and label them to correspond to the categories in the request" would be overly burdensome and cause unnecessary and additional costs and would result in many duplicate documents having to be produced dramatically increasing the number of total documents produced. Thus, Debtor is not required to be additionally unnecessarily burdened and incur such additional costs to comply with such request unless and until the Court has first ruled on Debtor's objections.

## III. Preliminary Statement

### A. Preliminary Statement #3

Plaintiff acknowledges the concerns of Defendant as to the content of this Preliminary Statement concerning possession, custody and control of documents responsive to the Defendant's Requests for Production. The language in Preliminary Statement #3 of which the Defendant complains was not intended to be included in that section. As such, Plaintiff waives this objection. Plaintiff asserts that production relating to specific requests has been performed as stated in each individual response. Plaintiff also asserts that its production will not be, and has not been, limited to documents in the possession, custody, or control of the Antitrust Division of the U.S. Department of Justice or other agencies of the United States government. Finally, Plaintiff asserts that it is unaware of any documents outside the sphere of its possession, custody, or control in the possession of any other party, person, entity that may be responsive to any of the Defendant's production requests.

### B. Preliminary Statement #4

Plaintiff has asserted specific objections to certain Requests for Production. For such objectionable requests, documents will be produced to the extent that they do not waive any such objection. For those for which documents have been produced, or will be produced, the Responses to such clearly identify which Requests those are. For those requests for which documents have been produced and are thus already in the possession, custody, or control of your client pursuant to

earlier production, such documents will not necessarily be produced yet again. For those Requests that are duplicative of other Requests, no additional (i.e. duplicative) production will be provided since duplicate production is not required and is overly burdensome to Debtor. In those instances where Plaintiff had not yet completed its search for responsive documents, or has discovered or discovers in the future additional responsive documents, Plaintiff indicated that it would supplement production of documents when such were available (i.e. located). Debtor has not indicated in any response that it was not able to locate any documents.

### C. Preliminary Statement #6

Plaintiff has objected to the demand for production of documents that are "publicly available" for the simple reason that Defendant Dixon Water Foundation has equal if not better access to such documents. Fed. R. Civ. P. 26(b)(1) is clear as to the factors on which the scope of discovery is dependent. Those factors include the "parties' relative access to relevant information." Defendant's demand that Plaintiff produce documentation to which it too has access clearly exceeds the scope of discovery permitted by the aforementioned Rule. Here, if information is publicly available, the Defendant's access is the same, relatively speaking, as that of the Plaintiff. As such, Plaintiff is not required to produce documents to which Defendant has equal if not better access. Thus, these documents will not be produced.

## IV. General Provisions and Objections

The purpose of providing the enumerated list of General Provisions and Objections was to highlight and summarize to the Defendant that each and every one of its Interrogatories and Requests for Production was deficient for the specific reasons contained therein. However, a careful reading of the individual discovery requests will reveal that each of these objections was further referenced in the discovery requests that succeeded the general objections. Where discovery requests:

a. exceeded the scope of the Federal Rules of Civil Procedure;
b. demanded documents violative of the attorney-client privilege and the work product doctrine;
c. posed questions and demanded documents in a manner that was overly broad, unduly burdensome, irrelevant, or not reasonably calculated to lead to the discovery of admissible evidence;
d. sought documents already in the possession, custody, or control of the Defendant (i.e. emails between the Plaintiff and Defendant and documents already provided by the Plaintiff to the Defendant);
e. required disclosure of confidential, proprietary, highly sensitive, or trade secret information whether by the Plaintiff or regardless of if already produced by a third-party;
f. required creation and production of non-existent documents;
g. required documents or responses that would contain information to be provided by an expert;

such requests would indeed be objectionable.

As for the assertion that the Responses do not indicate whether any responsive documents are being withheld on the basis of any general objection, each Response specifically identified with particularity the reason for which a Response was not offered, or a document was not provided as applicable. Where a general objection was applicable, such objection was noted. Where it is not, no mention of it was made. There is no confusion or ambiguity as to the grounds for objection to any particular Interrogatory or Request for Production as it was clearly included in the individual responses. To be clear, where the specific response indicated that an objection (general and/or specific) exists, but notwithstanding such objection the documents will be produced, such documents have been or will be produced. Where the specific response indicated that an objection (general and/or specific) exists and either fails to state such documents will be produced or states that documents will not be produced, such documents will not be produced.

Since the general objections were reiterated in the specific responses where appropriate, the requirement of specificity of an objection as to each individual Interrogatory or Request for Production is met.

To cure this issue, the Plaintiff proposes to remove the section in its *Objections and Responses to the Dixon Water Foundation's Interrogatories and Requests for Production* titled "General Provisions and Objections" and would refer the Defendant to its specific objections in the body of its responses.

**V. BM318's Specific Objections and Responses to Dixon's First Set of Interrogatories**

A. Responses "subject to and without waiving the foregoing objection(s)"

In response to Interrogatory Nos. 2-7 and 15, wherein the Plaintiff used the language that its responses were "subject to and without waiving the foregoing objection[s]," Plaintiff acknowledges the Defendant's concern as to whether or not "there are any responsive documents being withheld under the objection." [1] To alleviate the Defendant's concern, Plaintiff would note that it is not intentionally withholding any documents responsive to these Interrogatories, and to its knowledge, has produced all documents in its custody, care, and control that are responsive to these Interrogatories. The Plaintiff does not withdraw its objections on any of the enumerated Interrogatories.

B. Responses asserting that Dixon has "the same information as Plaintiff"

Interrogatory Nos. 3, 4, and 7 request information from the Plaintiff that the Defendant already has in its possession since it demands information Plaintiff already provided to the Defendant in past communications. As mentioned *supra*, "in establishing the scope of discovery to which parties are entitled, Rule 26(b)(1) expressly requires courts to take into consideration the parties' relative access to relevant information [while]… Rule 26(b)(2)(C) authorizes courts to limit the extent of discovery if they determine that discovery sought by a party is available from some

[1] *Kunze v. Baylor Scott & White Health*, No. 3:20-CV-01276-N, 2021 U.S. Dist. LEXIS 202938, at *3 (N.D. Tex. Oct. 21, 2021) (citing *Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014)).

other source that is more convenient.[2] Courts have also found that to require a party to provide discovery concerning information that is already available to the requesting party is unduly burdensome.[3] Here it is clear that the access to the desired information may be obtained by both parties equally as easily. Further, since the Defendant has complete access to the information already, it would be more convenient for the Defendant to obtain such information without unduly burdening the Plaintiff to search for the same information in its own files.

C. Responses refusing to provide a "legal conclusion" or to "speculate"

Plaintiff admits that Interrogatory Nos. 3, 10-14, and 16 object on the basis that the Interrogatory "calls for a legal conclusion while Interrogatories 10-14 and 16 call for the Plaintiff to "speculate." From the way these Interrogatories are worded, the only conclusion that Plaintiff can make is that Defendant desires the Plaintiff to provide information as to the enforceability of and agreement, whether or not such agreement provides for a fraudulent transfer, and what might have happened had certain actions been (or will be) taken, or had certain events occurred (or will occur), or if particular sections of the Bankruptcy Code might be applied to the Plaintiff's claims. Where an interrogatory calls for a legal conclusion, such "requests are clearly improper subjects for discovery."[4] As for the speculative nature of the aforementioned discovery requests, "Rule 26(b) [which provides limits on the scope of discovery] 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition'"[5] by forcing a party to answer questions of law to be determined by the Court, or by providing answers to questions that ponder "What if?"

D. Objections that an Interrogatory is "duplicitous"

Plaintiff admits that it used the improper adjective "duplicitous" when it intended to use that of "duplicate" or "duplicative." Correcting the objection for the proper descriptor, the objection is proper, despite the Defendant's assertion to the contrary. Pursuant to Fed. R. Civ. P. 26, "a court must limit discovery if … the discovery sought is unreasonable cumulative or duplicative."[6] While Interrogatory No. 2 focuses on Plaintiff's reasons for accepting the consideration received from Defendant under the Deed in Escrow Agreement, Interrogatory No. 1 asks what reasons Plaintiff entered into that Agreement, including the tangible and intangible benefits to be received, including the consideration to be received. Clearly, Interrogatory No. 2 is incorporated into Interrogatory No. 1. Any response to Interrogatory No.1 would suffice for that to Interrogatory No. 2. Since the Plaintiff responded to Interrogatory No. 1 and, for Interrogatory No. 2 referred Defendant to Plaintiff's previous response to Interrogatory No. 1, the Plaintiff has fully and adequately responded to both Interrogatories. The same is true for Interrogatory Nos. 5 and 6, which simply replace the term "Deed in Escrow Agreement" with "Fifth Loan Modification Agreement." Despite the Defendant's assertion that the Interrogatories are "carefully worded to

---

[2] *Johnson v. Charps Welding & Fabricating*, No. 14-cv-2081 (RHK/LIB), 2016 U.S. Dist. LEXIS 201538, at *12 n.9 (D. Minn. 2016). See also *Kasper v. Aac Holdings*, No. 3:15-cv-00923, 2017 U.S. Dist. LEXIS 231826, at *19 (M.D. Tenn. 2017).

[3] *Johnson* at *12 n.9.

[4] *Walls v. Kahoe*, No. 5:06-CV-188-DCB-MTP, 2008 U.S. Dist. LEXIS 114704, at *2 (S.D. Miss. 2008).

[5] *Crosby v. La. Health Serv. & Indem. Co*., 647 F.3d 258, 264 (5th Cir. 2011).

[6] *In re Flambeaux Gas & Elec. Lights, LLC*, No. 18-11979 SECTION "A", 2019 Bankr. LEXIS 1737, at *11 (Bankr. E.D. La. 2019).

obtain information about different aspects of the Deed in Escrow Agreement and the Fifth Loan Modification Agreement," that is not the case. The Plaintiff does not intend to duplicate responses to multiple Interrogatories. Further, despite the implication that Plaintiff has withheld information from its responses based on its objections, Plaintiff denies such and states unequivocally that it has responded in full to both Interrogatories. Since the Plaintiff continues to object to duplicative Interrogatories (which have been answered), Plaintiff will not withdraw its objection, nor will it supplement its Responses as requested since no supplement is required.

E. Value of the "Remaining Land" at specified times

In response to Interrogatory Nos. 8 and 9, the Plaintiff has noted that it has provided Defendant with the documents it has in its possession containing the appraisal value of the "Remaining Land" and intends to supplement such documents with certain documents that have recently been discovered in response to such interrogatories and related requests. A party is not required to create documents in the specific form desired by the opposing party when information satisfying the discovery requirement has been provided.[7] Fed. R. Civ. P. 34 which governs discovery, provides for the request for and production of documents that "are in the possession, custody or control of the party upon whom the request is served[,]" which essentially means that a party is only required to produce documents already in existence.[8] A party is not required "to prepare, or cause to be prepared new documents solely for their production.[9] Since the Plaintiff has provided the documents containing the desired information, and has referred Defendant to such information, Defendant will not supplement its responses to these Interrogatories except as provided above, nor will it create documents that would permit it to do so.

F. Relationship between BM318 and JMJ

With respect to the relationship between Plaintiff and JMJ Development, LLC ("JMJ"), the Plaintiff only offered in the Complaint at paragraph 14 that the two were related to ensure full transparency that the relationship exists, and to indicate that the Defendant was aware of said relationship between the two prior to the Defendant and JMJ entering into a "Real Estate Sales Agreement for the purchase of the Remaining Land from the Defendant for the referenced amount on the referenced closing date. Because the Defendant is (and was) fully aware of that relationship and the nature thereof, and particularly that neither JMJ nor the Plaintiff have an ownership interest in the other, the Plaintiff's objection on the grounds of relevancy still stands. No supplemental response will be prepared.

G. Damages calculation

With respect to the calculation of damages, the Plaintiff admits that the better adjective to have used to describe such calculation would be that of "premature" as opposed to "immature." Regardless of the Plaintiff's choice of adjective describing the aforementioned calculation, asking

[7] *America v. Tyson Foods*, No. 1:08-CV-00017-JAJ-TJS, 2011 U.S. Dist. LEXIS 160833, at *17 (S.D. Iowa 2011)
[8] *Gipson Mech. Contractors, Inc. v. U.A. Local 572 of the United Assoc. of Journeyman & Apprentices*, No. 3:18-cv-00768, 2020 U.S. Dist. LEXIS 252588, at *10 (M.D. Tenn. 2020).
[9] *Id*. citing *Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co*., 576 F. Supp. 511, 511 (W.D. Pa. 1983).

the Plaintiff to provide a number quantifying that calculation, or a methodology of how such calculation will be performed, before either has been determined, such a request cannot be answered with specificity at this time. Only after that calculation has been made, or when that methodology has been developed, will the Plaintiff supplement its response and not before.

## VI. BM318's Objections and Responses to Dixon's First Requests for Production of Documents and Other Items

### A. Objection to producing documents in Dixon's possession" or the "possession of others"

As mentioned *supra*, Rule 26(b)(1) clearly defines the scope of discovery and limits said scope based on six considerations, including "the parties' relative access to relevant information."[10] Your statement that the RFPs and the Federal Rules require BM318 to produce all responsive documents in its possession, custody, or control regardless of whether they are also in the possession of Dixon or a third party overstates the scope of discovery outlined in Rule 26(b)(1) and attempts to substitute the demand for production in the RFP as some form of legal authority as to this matter. It is not. Further, Rule 26 clearly states that for documentation to be disclosable, it must be in the possession, custody, or control of the disclosing party. No third parties are implicated in this provision. As such, Plaintiff is not required to hunt down documents not in its possession, custody, or control, and it does not intend to do so.

### B. Objections to producing "all" Documents.

The responses to the referenced RFPs indicated that Plaintiff objected to the requirement to produce all documents concerning the particular matters noted therein because the Plaintiff did not, and could not, have all documents. It is gratifying to note that the Defendant specifically mentioned that Plaintiff could not produce documents not in its possession, despite earlier demands mentioned *supra* to do just that. Until Defendant rewords its Request that Plaintiff provide only applicable documents in its possession, custody, and control, the Plaintiff's objection stands and will not be withdrawn. To the extent that any document responsive to the Defendant's request is in the possession, custody and control of the Plaintiff, such documents will be (or have been) produced. No documents responsive to these RFPs in the possession, custody, or control of the Plaintiff have been withheld from production.

### C. Producing documents "to the extent Plaintiff is in possession" of a responsive document that has "not already been produced" and is "not protected by the privileges listed above"

For purposes of the responses to the referenced RFPs, the Plaintiff asserts that it used the term "possession" as being interchangeable with "possession, custody, and control." As such all documents responsive to those RFPs in its possession custody and control have been provided.

[10] *Johnson* at *12 n.9. See also *Kasper* at *19.

For purposes of these Responses, the documents provided three days after its Responses were all the documents in its possession, custody and control that were responsive to those referenced RFPs. No other responsive documents have been withheld.

For the purposes of the Responses to which the attorney-client or other privilege replies, a privilege log prepared in accordance with the provisions of Fed. R. Civ. P. 26(b)(5) will be produced and served on the Defendant's counsel.

D. Responses "subject to and without waiving the foregoing objection(s)"

For each of the referenced RFPs, Plaintiff asserts that it is not withholding any documents responsive to said RFPs which are not otherwise protected by the attorney-client or other privilege.

E. Objections that an RFP is "overly broad"

Although the Defendant provided some limitation as to the topic of the referenced RFPs, each of them used the term "all" and "any" with reference to the documents. For the same reasons listed above in Section VI.B., the Plaintiff continues to assert that said RFPs are overbroad as written. Since the objection stands, it will not be withdrawn. Despite this, documents responsive to these RFPs in the possession, custody and control of the Plaintiff have been produced. No documents have been withheld on the basis of this objection.

F. Objections that an RFP "seeks the production of Documents that are not relevant" or "not calculated to lead to the discovery of admissible evidence"

Defendant's Response to the Plaintiff's Objection is oversimplified. The way the referenced RFPs were worded creates such a broad scope of what may be produced that they necessarily seek information that would be outside the scope of these proceedings, thus making them irrelevant. As for objections to specific RFPs that relate to relevancy, please note as follows:

RFP 10 – "All documents concerning Dixon" fails to limit the scope of such documents to those in the possession, custody and control only of the Plaintiff, and further fails to identify the topic to which such documents would be related.

RFPs 15-17 – These RFPs seek both communications and documents that "concern" such communications. How such documents may "concern" these communications is undefined and is left to the imagination of the respondent to interpret. Further, all documents about American Escrow Company, JMJ, and Dixon fails to limit the scope of those documents to those in the "possession, custody and control only of the Plaintiff, and further fails to identify the topic or context of the desired documents. Additionally, as JMJ is not implicated in these proceedings, such communications as to that entity are similarly irrelevant.

RFPs 19-33 – These RFPs seek documents concerning Plaintiff's its total debts and liabilities (which are essentially the same); assets; and the value of its business; its "financial statement" (presumed to be its income statement); balance sheet; and general ledger; documents about contingent and non-contingent liabilities; and schedules of assets (all at two points in time);

and its 2019 and 2020 tax returns. None of these are related to the Plaintiff's claim against Defendant. As such, they are not relevant.

RFPs 41-45 – These RFPs seek "all" communications with five (5) named individuals including some that may have some relevance, but most of which do not. Defendant is not entitled to communications with these persons that are not relevant to these proceedings. For this reason, Plaintiff objects to the requirement to produce all those communications that are not relevant to these proceedings.

RFPs 49-53 – These RFPs seek all documents concerning claims of four (4) named entities with claims against Plaintiff. Their claims have no relationship to the claims of Plaintiff against Defendant. As such they are not relevant to these proceedings.

RFP 56 – This RFP seeks documents related to the referenced land sale contract which requests documents outside the scope of these proceedings which makes them irrelevant to such. As such Defendant is not entitled to such irrelevant documents.

Since these demanded documents do not relate to the instant proceedings, their enumerated objections still stand and will not be withdrawn. Further, since these documents are irrelevant to these proceedings, they will not be produced.

G. Objections that "the value of the Real Property fluctuates over time"

The assertion that this objection as to RFPs 6-8 is somehow improper is incorrect. The Request demands the documents showing value of the Real Property and the Remaining Land, but fails to establish for what time period. As has been previously established, Plaintiff is not required to create documents solely for the purpose of producing them, in this instance, as such would relate to valuation of the referenced property at undefined points in time. Despite this objection, all documents relating to valuation that the Plaintiff had or has in its possession, custody and control, and that were responsive to this Request, have been produced except for certain documents recently discovered that will be produced as a supplement to the previous response as described above.

H. Appraisals of the Real Property and Remaining Land

You have demanded that all appraisals responsive to RFPs 13 and 14 be produced. A cursory review of the files already provided to Defendant as production will reveal the requested appraisals that Plaintiff has in its possession, custody and control. Except for certain documents recently discovered that will be produced as a supplement to the previous response as described above, no other documents responsive to these RFPs exist in the Plaintiff's possession, custody or control.

I. Documents and Communications with American Escrow Company

You have demanded the production of all documents and communications concerning American Escrow Company. All such documents in the possession, custody and control of Plaintiff have been produced as indicated in its response to RFP 15.

J. Objections that an RFP is "vague and ambiguous"

In response to your assertion that RFPs 10 and 13-15 require further explanation as to why such RFP's are vague and ambiguous, Plaintiff would argue that, as to RFP 10 your demand for "all documents concerning Dixon" is vague and ambiguous on its face since no topic or context concerning such documents is provided and such request results in the production of mostly non-relevant documents. Further, there is no delineation of the person or entity in whose possession, custody, and control such documents exist and whether Defendant expects the Plaintiff to search for said documents that are not in Plaintiff's possession, custody, or control. RFPs 13 and 14 dealing with appraisals fail to similarly provide context in the form of a particular time during which any appraisal may have been produced and for what purpose. Notably, however, all appraisals in the possession, custody, and control of the Plaintiff have already been produced or will be supplemented as stated above, and the Plaintiff will not be creating any new appraisals to meet Defendants desired information requirements since it is not required to do so. RFP 15 is vague and ambiguous to the extent that, as before, no context or topical scope has been provided as to the information sought about the Plaintiff's communications, documents concerning communications, or otherwise concerning American Escrow Company, which could also encompass documents and communications about matters not implicated in these proceedings.

As for the vague and ambiguous language "clarified" in the table referencing RFP Nos. 16, 17, 37, 38, 42, 43, 44, and 45, Plaintiff would note that at the time the responses thereto were prepared, they indicate that documents responsive to those requests had either been produced or would be produced. Subsequent production has satisfied or will satisfy each of these requirements.

K. Objections that an RFP is "immature"

Plaintiff admits that it used the improper adjective "immature" when it should have used that of "premature." Correcting the objection for the proper descriptor, the objection is proper, despite the Defendant's assertion to the contrary. At the time the responses to RFPs 19-33 and 37-40 were developed, Plaintiff was actively engaged in investigating and developing the facts and identifying the circumstances relating to its cause of action against the Defendant. Despite this objection, the Plaintiff clearly articulated in each response that either the documents responsive to these requests (i) have been produced, (ii) would be produced, or (iii) do not exist. Documents located to date that were provided to the Defendant subsequent to service of its responses to discovery, coupled with those provided earlier, have completed the Plaintiff's production obligation. In the event the Plaintiff locates additional documents responsive to these RFPs, the Plaintiff is fully aware that it must supplement its responses and production pursuant to Fed. R. Civ. P. 26(e)(1). Plaintiff is under no obligation to supplement its response or production unless and until such supplemental response is required or additional responsive documents are actually located, and it will not do so until that time.

L. Objections that an RFP is "duplicitous"

Section V.D. above dealt with this same issue as to Interrogatories. The same arguments and responses as applied to those Interrogatories are reasserted here as to the referenced RFPs. As

Case 21-04051-mxm Doc 76-1 Filed 07/26/22 Entered 07/26/22 Page 240 of 255

such, the objection is proper despite the Defendant's responses to the contrary. Further, at the time the responses were prepared, they clearly indicated that documents responsive to the referenced RFP's had been or would be produced despite the aforementioned objection. When the Plaintiff produced such documents subsequent to serving its responses to discovery, its production requirement was met. Since the referenced RFPs were duplicative of others as noted in the text of the response, notwithstanding the assertion of "careful wording" by the Defendant, the Plaintiff's objection on this basis still stands. As such, the objection as to duplication of production requirements in RFPs 12-14, 20, 22, 24, 25-29, 32, 37 and 44 will not be withdrawn. To be clear, no documents have been withheld on the basis of this objection.

M. Documents created prior to "the date on which Dixon recorded the Special Warranty Deed"

In RFP No. 48, Plaintiff objected to the phrase "that date on which Dixon recorded the Special Warranty Deed," stating that it had not been defined. Plaintiff did indeed identify that date in its Complaint against the Defendant at paragraph 15. Plaintiff withdraws this objection since such date had been earlier defined by Plaintiff in its Complaint. Plaintiff would note, however, that the response to RFP 48 clearly states that documents responsive to the request were produced.

N. Documents concerning scheduled claims

In RFP Nos. 49-53, the Defendant seeks production of all documents related to the scheduled claims of four (4) entities that are creditors of the Plaintiff. Defendant states that the documents are relevant to the elements of BM318's claims but has provided no context for how such documents are related to the instant proceedings. Upon clarification of such context indicating relevance, Plaintiff shall supplement its production when such documents are located and if they do not cause Plaintiff to waive its other objections as to these requests.

If you have any issues, questions, or concerns regarding these responses to your allegations of deficient responses to the Defendant's discovery requests, please do not hesitate to call me at (972) 503-4033 or contact me by email at joyce@joycelindauer.com.

Sincerely,

*/s/ Joyce Lindauer*
Joyce W. Lindauer
Attorney-at-Law

Copy to: *Client*

MUNSCH HARDT
DALLAS / HOUSTON / AUSTIN

Ross Tower
500 N. Akard Street, Suite 3800
Dallas, Texas 75201-6659
Main 214.855.7500
Fax 214.855.7584
munsch.com

Direct Dial 214.855.7565
Direct Fax 214.978.5335
dperry@munsch.com

June 24, 2022

***Via Electronic Mail***
Joyce W. Lindauer
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
joyce@joycelindauer.com

Re: BM318, LLC's Objections and Responses to The Dixon Water Foundation's Interrogatories and Requests for Production

Dear Ms. Lindauer:

On November 23, 2021, The Dixon Water Foundation ("Dixon") served its *First Set of Interrogatories* (the "Interrogatories") and its *First Requests for Production of Documents and Other Items* (the "RFPs") on BM318, LLC ("BM318"). On January 7, 2022, BM318 provided its *Objections and Responses* (the "Responses") to the Interrogatories and RFPs and later produced certain documents. I wrote you on January 21, 2022 to address various deficiencies in BM318's Responses and document production. You wrote back on February 3, 2022. Unfortunately, BM318's Responses and document production remain deficient.

## I. Manner of Production

You wrote, "[a]s for your instructions to provide all documents in native format or near native format, that instruction is not mirrored in the federal rules, and is imposed only by you." But this statement ignores the 2007 amendments to the Federal Rules, under which requests "may specify the form or forms in which electronically stored information is to be produced." Fed. R. Civ. P. 34(b)(1)(C). If a party requests files in native format, the counterparty must comply. *See Sundown Energy, L.P. v. Haller*, No. 10-4354, 2011 U.S. Dist. LEXIS 124145, at *9 (E.D. La. Oct. 26, 2011) (compelling production in native format). It makes no difference whether BM318 is able to Bates number native files. *See Saliga v. Chemtura Corp.*, No. 3:12cv832(RNC), 2013 U.S. Dist. LEXIS 167019, at *3–7 (D. Conn. Nov. 25, 2013) (overruling objection that native files cannot be Bates numbered).

Accordingly, Dixon once again requests that BM318 produce all documents in native format. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## II. Documents Allegedly in Dixon's Possession

BM318 continues to claim it need not answer interrogatories or produce documents to the extent Dixon already possesses responsive information. But "a party may not simply refuse to respond to a party's discovery request on the grounds that the party already has the information." *Keybank Nat'l Ass'n*

*v. Perkins Rowe Assocs.*, No. 09-497-JJB-SCR, 2011 U.S. Dist. LEXIS 37791, at *7 (M.D. La. Apr. 6, 2011) (citing *Davidson v. Goord*, 215 F.R.D. 73, 77 (W.D.N.Y. 2003)). The *Johnson* case you cited in your letter is inapposite. The cited discussion deals with the scope of deposition topics under rule 30(b)(6), not interrogatories or document requests.

The relevant factors under rule 26 are "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Based on BM318's own allegations, this lawsuit involves property "which had an approximate value of $27.5 million or more." Complaint ¶ 18. BM318 cannot credibly argue its meager production suffices in light of the amount in controversy.

Even if this were a valid objection, BM318 waived it by failing to provide sufficient detail. *See Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, No. 2:18-cv-166-z-br, 2020 U.S. Dist. LEXIS 19421, at *28 (N.D. Tex. Jan. 13, 2020) ("Without some explanation or support for this objection, the objection fails."). And even if BM318 preserved the objection, BM318 still must specify what responsive information it is withholding. *See Heller v. City of Dallas*, 303 F.R.D. 466, 485 (N.D. Tex. 2014) ("A party served with written discovery must fully answer each interrogatory or document request to the full extent that it is not objectionable and affirmatively explain what portion of an interrogatory or document request is objectionable and why, affirmatively explain what portion of the interrogatory or document request is not objectionable and the subject of the answer or response, and affirmatively explain whether any responsive information or documents have been withheld.").

Accordingly, Dixon once again requests that BM318 produce all responsive documents and answer all Interrogatories, regardless of its unsubstantiated boilerplate objection that Dixon already possesses certain information. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## III. Interrogatories Allegedly Calling for Legal Conclusions or Speculation

BM318 also continues to assert it need not answer certain Interrogatories because they allegedly call for a legal conclusion or speculation. But the rule expressly provides that an interrogatory is "not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2); *see United States Dep't of Labor v. Randolph Cty. Sheltered Workshop*, No. 2:16-CV-78, 2017 U.S. Dist. LEXIS 234397, at *12 (N.D.W. Va. Nov. 17, 2017) (citation omitted) ("Generally, the fact that an interrogatory calls for a legal conclusion is not grounds for an objection."). The 2007 amendment reworded the rule to make it clear that "[o]pinion and contention interrogatories are used routinely." *Ries v. Ardinger (In re Adkins Supply, Inc.)*, 555 B.R. 579, 591 (Bankr. N.D. Tex. 2016).

Furthermore, none of the Interrogatories calls for speculation in the first place. *See Fletcher v. Honeywell Int'l, Inc.*, No. 3:16-cv-202, 2017 U.S. Dist. LEXIS 28325, at *10 (S.D. Ohio Feb. 27, 2017) (finding that question "does not call for speculation" where "it merely asks [respondent] to explain his understanding"). Dixon therefore requests that BM318 withdraw these objections and provide

complete answers to the Interrogatories. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## IV. Value of the "Remaining Land" at Specified Times

With respect to the value of the "Remaining Land" at various specified times, BM318's Responses remain inadequate in at least three ways. First, the Responses indicate that BM318 "intends to supplement such documents with certain documents that have recently been discovered." But more than five months have passed since BM318 served the Responses, and BM318 still has not supplemented as promised. Second, the Responses fail to respond substantively to the Interrogatories, which seek a discrete dollar value of the "Remaining Land" at specified times. BM318 must disclose what it believes the value of the "Remaining Land" was at those times. Third, BM318 directs Dixon generally to documents it has or will produce but does not identify which documents those are or what information those documents provide. To the extent BM318 believes the requested information is in a document that it has or will produce, it must identify the specific document with the requested information. *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.").

Dixon therefore requests that BM318 supplement the Responses to provide the requested information. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## V. Relationship Between BM318 and JMJ

BM318's relevance objection to describing the relationship between it and JMJ remains improper. JMJ and Dixon are parties to a real estate sales agreement for a portion of the land at issue in this case. Information regarding the relationship between JMJ and BM318 may lead to the discovery of admissible evidence and is otherwise proportional to the needs of the case, which by BM318's own admission involves land with "an approximate value of $27.5 million or more." Complaint ¶ 18. Reciting details regarding the relationship between BM318 and JMJ, on the other hand, requires minimal effort. There is no basis for BM318 to claim irrelevance when BM318 considered the relationship relevant enough to plead.

Dixon therefore requests that BM318 supplement the Responses to provide the requested information. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## VI. Objections that an RFP "seeks the production of Documents that are not relevant" or "not calculated to lead to the discovery of admissible evidence"

BM318's other relevance objections are also improper. The Federal Rules broadly allow parties to obtain discovery regarding any matter that is relevant to a party's claim or defense or could otherwise

lead to the discovery of admissible evidence. "That a requested document or information will not be admissible or relevant to the merits of a claim or defense is not a proper objection to discovery of the document or information under the Federal Rules if the discovery request is reasonably calculated to lead to the discovery of admissible evidence." *Heller*, 303 F.R.D. at 489. Indeed, many of these same, allegedly objectionable topics appear in BM318's complaint and in BM318's own written discovery requests.

Furthermore, BM318 fails to identify whether any responsive documents are being withheld. For each of the relevance objections BM318 raises to specific RFPs, BM318 must identify whether any documents are being withheld on the basis of the relevance objection. *See Heller*, 303 F.R.D. at 485. In particular:

- RFP 10: Please indicate whether BM318 has any documents concerning Dixon that it is not producing because it believes they are not relevant, and if so, please identify the documents that are being withheld.

- RFP 15–17: Please indicate whether BM318 has any documents or communications with American Escrow Company, JMJ, or Dixon that it is not producing because it believes they are not relevant, and if so, please identify the documents that are being withheld.

- RFPs 19–33: Please indicate whether BM318 has any documents concerning BM318's total debts and liabilities; assets; and the value of its business; its "financial statement"; balance sheet; and general ledger; documents about contingent and non-contingent liabilities; and schedules of assets; and its 2019 and 2020 tax returns that it is not producing because it believes they are not relevant, and if so, please identify the documents that are being withheld.

- RFPs 41–45: Please indicate whether BM318 has any communications with the five (5) named individuals regarding the listed topics that it is not producing because it believes they are not relevant, and if so, please identify the documents that are being withheld.

- RFPs 49–53: Please indicate whether BM318 has any documents concerning the four (4) named entities with claims against BM318 that it is not producing because it believes they are not relevant, and if so, please identify the documents that are being withheld.

- RFP 56: Please indicate whether BM318 has any documents related to the referenced Farm and Ranch Contract that it is not producing because it believes they are not relevant, and if so, please identify the documents that are being withheld.

Dixon requests that BM318 supplement the Responses to provide the requested information. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## VII. Objections that an RFP is "vague and ambiguous"

BM318's "vague and ambiguous" objections have no merit. As the *Heller* court explained, making such an objection carries with it numerous obligations, none of which BM318 satisfied:

> "The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity." "A party objecting on these grounds must explain the specific and particular way in which a request is vague." The responding party "should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in interrogatories. If necessary to clarify its answers, the responding party may include any reasonable definition of the term or phrase at issue."
>
> Further, "[i]f a party believes that the request is vague, that party [should] attempt to obtain clarification prior to objecting on this ground."

*Heller*, 303 F.R.D. at 491–92 (citations omitted).

BM318 asserts in its reply, for example, that RFP 10 "is vague and ambiguous on its face since no topic or context concerning such documents is provided and such request results in the production of mostly nonrelevant documents." Likewise, BM318 asserts that RFP 15 is "vague and ambiguous" because it "could also encompass documents and communications about matters not implicated in these proceedings." But these objections fall far short of the *Heller* standard, resulting in waiver. Even if this objection were not waived, BM318 would still need to identify those allegedly nonrelevant documents that it has decided to withhold on the basis of the objection.

Dixon therefore requests that BM318 supplement the Responses to provide the requested information. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## VIII. Documents Concerning Scheduled Claims

BM318's refusal to produce responsive documents until Dixon explains the "context for how such documents are related to the instant proceedings" constitutes improper burden shifting. *Heller* counsels that the onus is the responding party to "make a specific objection explaining how and to what extent the requested documents or information are not relevant." *Heller*, 303 F.R.D. at 489. BM318 has failed to do so here. Where BM318 alleges that it was insolvent when the Transfer described in the Complaint was made, documents related to claims of BM318's creditors are plainly relevant.

Dixon therefore requests that BM318 supplement the Responses to provide the requested information. Dixon will file a motion to compel unless BM318 complies by July 1, 2022.

## IX. Privilege Log

In its February 3 Letter, BM318 stated that it would produce a privilege log. To date, no privilege log has been produced. Please produce the privilege log.

The foregoing is not meant to be inclusive of all of the deficiencies in BM318's Responses and Dixon specifically reserves the right to raise additional deficiencies and does not waive such rights.

Sincerely,

MUNSCH HARDT KOPF & HARR, P.C.

By: ______________________________
Deborah M. Perry

**From:** Perry, Deborah
**To:** Vasek, Julian
**Subject:** Fwd: BM318
**Date:** Wednesday, July 6, 2022 7:07:35 PM
**Attachments:** image001.png

---

[redacted]

-----

Begin forwarded message:

> **From:** Laurance Boyd <larry@joycelindauer.com>
> **Date:** July 6, 2022 at 7:00:20 PM CDT
> **To:** "Perry, Deborah" <dperry@munsch.com>
> **Cc:** Joyce Lindauer <joyce@joycelindauer.com>
> **Subject: FW: BM318**
>
> Ms. Perry:
>
> Ms. Lindauer has been involved in an ongoing hearing involving all the persons copied below. As such, this has delayed our ability to respond to your June 24, 2022 letter regarding your concerns about our Feb 3, 2022 response related to our earlier discovery responses and objections. Ms. Lindauer indicates that we will send you our response on Friday, July 8, 2022.
>
> If you have any questions or issues with this, please let me or Ms. Lindauer know.
>
> Sincerely,
>
> **Laurance C. Boyd, J.D., M.I.M., M.B.A.**
> - ***Law Clerk***
>
> *Joyce W. Lindauer, Attorney, P.L.L.C.*
> *1412 Main Street, Suite 500*
> *Dallas, TX 75201*
> *Tel: (972) 503-4033*
> *Fax: (972) 503-4034*
> *clerk1@joycelindauer.com*
>
> JOYCE LINDAUER
> Attorney at Law
> And Mediator

*This electronic mail transmission contains information which is confidential or privileged. The information is intended to be for the use of the individual or entity to whom it is addressed. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is prohibited and may be punishable by law. If you have received this electronic mail in error, please notify the sender and delete the electronic mail from your computer immediately.*

---

**From:** Joyce Lindauer <joyce@joycelindauer.com>
**Sent:** Friday, July 1, 2022 5:55 PM
**To:** Perry, Deborah <dperry@munsch.com>
**Cc:** Tim Barton <tbarton@jmjdevelopment.com>; Khudabuksh K. Walji Esq. <k.walji@waljilaw.com>; larry.martin1948@gmail.com; Dian Gwinnup <dian@joycelindauer.com>; Laurance Boyd <larry@joycelindauer.com>
**Subject:** BM318

Deborah we are working on the letter you sent to us on June 24, 2022. Given the holiday weekend my responsible persons to complete the responses
Are not available today to address your deadline. We should have a response to you by July 6, 2022. Thank you very much.

**PLEASE NOTE OUR NEW ADDRESS IN DOWNTOWN DALLAS**

JOYCE LINDAUER
Attorney at Law
And Mediator

*Joyce Lindauer*

Joyce W. Lindauer Attorney, PLLC
1412 Main Street
Suite 500
Dallas, TX 75202
PH 972-503-4033
FAX 972-503-4034
CEL 214-957-8039

**JOYCE W. LINDAUER ATTORNEY, PLLC**
Attorney & Mediator
1412 Main Street, Suite 500
Dallas, Texas 75202
Email: joyce@joycelindauer.com

Telephone No. (972) 503-4033

Facsimile No. (972) 503-4034

July 15, 2022

Via Email
Deborah M. Perry
Munsch Hardt Kopf & Harr, PC
500 North Akard Street, Suite 3800
Dallas, Texas 75201
Email: dperry@munsch.com

**RE: BM318, LLC's Objections and Responses to Defendant The Dixon Water Foundation's (1) First Set of Interrogatories and (2) First Requests for Production of Documents and Other Items (collectively, "Discovery Requests"**

Dear Ms. Perry:

In response to your letter dated June 24, 2022, in which you identified and/or alleged certain continuing deficiencies concerning its Objections and Responses, BM318, LLC ("BM318," "Debtor," or "Plaintiff," as appropriate) would reply as follows, generally noting that its Objections and Responses (the "Responses") were actually provided in accordance with the Parties' agreement, with exceptions as noted *infra*, despite your assertion to the contrary. The following responses are subject to and shall not be in waiver of any of the objections made by Debtor in response to Defendant's Discovery Requests.

## I. Manner of Production

Concerning your demand to provide all documents in native format or near native format, wherein you state that referenced case law dictates compliance with such demand, the Plaintiff asserts that your reading or interpretation of such case law is erroneous. The case you cite actually states that native format files are to be produced *unless* the producing party can show a compelling reason why it may not produce the information in the requested format.[1] Here, the articulated reason for producing in non-native format is two-fold. First, the files have been produced in the only manner that allows such documents to be Bates-stamped that is the only way for both parties to reference specific pages of production. Second, producing in the provided .pdf format is the only way to preclude their manipulation or alteration by the receiving party. Plaintiff will not produce documents that can be manipulated in native format. Additionally, the production of native documents would include all metadata potentially allowing the non-producing party to recover sensitive metadata which is not relevant nor calculated to lead to any admissible evidence and

[1] *Saliga v. Chemtura Corp*., No. 3:12cv832(RNC), 2013 U.S. Dist. LEXIS 167019 (D. Conn. 2013).

potentially allow the non-producing party to recover prior versions of a document or other hidden information and comments which may have been included in prior draft versions that were not delivered to anyone and/or which may have included actual or potential questions or comments intended for counsel which would be privileged. All such metadata including any prior versions that are included within such data would have to be converted into a readable format so it could be reviewed by BM318 prior to production which would be overly burdensome and costly and not reasonably calculated to lead to any discoverable evidence. Furthermore, emails and text messages are not typically stored as separate individual files but rather are stored within a software or web browser application or mobile device (for text messages) in a format proprietary to that application or device and which does not save such communications in a separate native file that is accessible or readable by the recipient outside of the application. In order to review and produce email and text messages, such communications must be converted from the native, proprietary format from within the application or device and exported into a separate file (which is not "native") that is in a format that is accessible and able to be read by the recipient such as a .pdf file which, in this case, is what BM318 has done. Furthermore, pdf files are readily convertible into an optical character recognition format, if not already in such format, which is a native function within Adobe Acrobat, that permits the user to easily search, categorize, and sort the information contained therein.

## II. Documents allegedly in Dixon's possession.

Your assertion that BM318 has claimed that it "need not answer interrogatories or produce documents to the extent that Dixon already possesses responsive information" is a mischaracterization of Plaintiff's responses to discovery requests. Plaintiff is not refusing to respond to Defendants discovery requests "because it already has the information," but is doing so rather because Plaintiff has already provided the information to Defendant. Plaintiff stated that for those requests for which documents have been produced and are thus already in the possession, custody, or control of your client pursuant to earlier production, such documents will not necessarily be produced yet again. For those Requests that are duplicative of other Requests, no additional (i.e. duplicative) production will be provided since duplicate production is not required and is overly burdensome to Debtor.

The Plaintiff clearly articulated in each response that either the documents responsive to Defendant's requests (i) have been produced, (ii) would be produced, or (iii) do not exist. Documents located to date that were provided to the Defendant subsequent to service of its responses to discovery, coupled with those provided earlier, have completed the Plaintiff's production obligation. The detail provided as to responses to production is the only detail the Plaintiff is able to provide since it constitutes the entirety of such in its possession. Plaintiff is not knowingly withholding any responsive information, despite the Defendant's implication to the contrary.

## III. Interrogatories Calling for Legal Conclusion or Speculation

Plaintiff was clear on how it interpreted the language of certain discovery request that it believes constitute a demand to provide a legal conclusion and speculation. Plaintiff referred specifically to Interrogatory Nos. 3, 10-14, and 16 wherein it objected on the basis that the Interrogatory "calls for a legal conclusion while Interrogatories 10-14 and 16 call for the Plaintiff to

"speculate." From the way these Interrogatories are worded, the Plaintiff concludes that that Defendant desires the Plaintiff to provide information as to the enforceability of an agreement, whether or not such agreement provides for a fraudulent transfer, and what might have happened had certain actions been (or will be) taken, or had certain events occurred (or will occur), or if particular sections of the Bankruptcy Code might be applied to the Plaintiff's claims. Where an interrogatory calls for a legal conclusion, such "requests are clearly improper subjects for discovery."[2] As for the speculative nature of the aforementioned discovery requests, "Rule 26(b) [which provides limits on the scope of discovery] 'has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition'"[3] by forcing a party to answer questions of law to be determined by the Court, or by providing answers to questions that ponder "What if?"

## IV. Value of the "Remaining Land" at specified times

Concerning Interrogatory Nos. 8 and 9, the Plaintiff has noted that it has provided Defendant with the documents it has in its possession containing the appraisal value of the "Remaining Land" and intends to supplement such documents with additional documents that may respond to such interrogatories and related requests. To address valuation concerns, Plaintiff would direct Defendant to any and all appraisals produced to date. As mentioned in its previous response concerning Defendant's reply to the Plaintiff's objections and responses to discovery requests, a party is not required to create documents in the specific form desired by the opposing party when information satisfying the discovery requirement has been provided.[4] Fed. R. Civ. P. 34 which governs discovery, provides for the request for and production of documents that "are in the possession, custody or control of the party upon whom the request is served[,]" which essentially means that a party is only required to produce documents already in existence.[5] A party is not required "to prepare, or cause to be prepared new documents solely for their production.[6] Since the Plaintiff has provided the documents containing the desired information, and has referred Defendant to such information, Defendant will not supplement its responses to these Interrogatories except as provided above, nor will it create documents that would permit it to do so. Any new discovered additional documents will be produced.

## V. Relationship between BM318 and JMJ

With respect to the relationship between Plaintiff and JMJ Development, LLC ("JMJ"), the Plaintiff has already noted in the Complaint at paragraph 14 that the two were related to ensure that the Court is aware that a relationship (rooted in common control) exists, and to indicate that the Defendant was aware of said relationship between the two prior to the Defendant and JMJ entering into a "Real Estate Sales Agreement for the purchase of the Remaining Land from the Defendant for the referenced amount on the referenced closing date. Whether or not the amount of effort required to provide detail as to the nature, scope and breadth of the relationship between Plaintiff and JMJ would be minimal is of no importance. Because the Defendant is (and was) fully aware of that

---

[2] *Walls v. Kahoe*, No. 5:06-CV-188-DCB-MTP, 2008 U.S. Dist. LEXIS 114704, at *2 (S.D. Miss. 2008).
[3] *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011).
[4] *America v. Tyson Foods*, No. 1:08-CV-00017-JAJ-TJS, 2011 U.S. Dist. LEXIS 160833, at *17 (S.D. Iowa 2011)
[5] *Gipson Mech. Contractors, Inc. v. U.A. Local 572 of the United Assoc. of Journeyman & Apprentices*, No. 3:18-cv-00768, 2020 U.S. Dist. LEXIS 252588, at *10 (M.D. Tenn. 2020).
[6] *Id*. citing *Rockwell Int'l Corp. v. H. Wolfe Iron & Metal Co.*, 576 F. Supp. 511, 511 (W.D. Pa. 1983).

relationship and the nature thereof (which is), and particularly that neither JMJ nor the Plaintiff have an ownership interest in the other, and since the relationship was of no import at the time JMJ and Defendant entered into the aforementioned Real Estate Sales Agreement," the Plaintiff reiterates its objection on the grounds of relevancy. No supplemental response will be prepared.

## VI. Objections that an RFP "seeks the production of Documents that are not relevant" or "not calculated to lead to the discovery of admissible evidence"

Plaintiff rejects the assertion that its other relevance objections are improper. Plaintiff specifically articulated in its letter dated February 3, 2022 the reasons for its objections as to the enumerated Requests for Production. Those objections still stand as follows:

RFP 10 – "All documents concerning Dixon" fails to limit the scope of such documents to those in the possession, custody and control only of the Plaintiff, and further fails to identify the topic to which such documents would be related. Further, this request is not limited to the production of documents relating to matters that are the subject of the adversary proceeding.

RFPs 15-17 – These RFPs seek both communications and documents that "concern" such communications. How such documents may "concern" these communications is undefined and is left to the imagination of the respondent to interpret. Further, all documents about American Escrow Company, JMJ, and Dixon fails to limit the scope of those documents to those in the "possession, custody and control only of the Plaintiff, and further fails to identify the topic or context of the desired documents. Additionally, as JMJ is not implicated in these proceedings, such communications as to that entity are similarly irrelevant. Further, this request is not limited to the production of documents relating to matters that are the subject of the adversary proceeding.

RFPs 19-33 – These RFPs seek documents concerning Plaintiff's total debts and liabilities (which are essentially the same); assets; and the value of its business; its "financial statement" (presumed to be its income statement); balance sheet; and general ledger; documents about contingent and non-contingent liabilities; and schedules of assets (all at two points in time); and its 2019 and 2020 tax returns. None of these are related to the Plaintiff's claim against Defendant. As such, they are not relevant. To the extent that documents already produced may contain the same or similar information, Plaintiff would refer Defendant to such documents. Furthermore, a request for such financial documents is not a proper production request to the extent it requires Plaintiff to generate and create such reports out of any accounting software in which any financial data has been input, and furthermore Plaintiff would have to generate and create such documents as of the specific dates requested by Defendant which is additionally burdensome and to which Plaintiff objects.

RFPs 41-45 – These RFPs seek "all" communications with five (5) named individuals including some that may have some relevance, but most of which do not. Defendant is not entitled to communications with these persons that are not relevant to these proceedings. For this reason, Plaintiff objects to the requirement to produce all those communications that are not relevant to these proceedings, and as a result and subject to such objection, Plaintiff produced documents that were relevant to these proceedings which were in its possession or control.

RFPs 49-53 – These RFPs seek all documents concerning claims of four (4) named entities with claims against Plaintiff. Their claims have no relationship to the claims of Plaintiff against Defendant. As such they are not relevant to these proceedings. Furthermore, documents concerning and/or related to the claims of those named entities would be in the possession and control of same thereby making those entities the appropriate party to which requests for those documents should be served.

RFP 56 – This RFP seeks documents related to the referenced land sale contract which requests documents outside the scope of these proceedings which makes them irrelevant to such. As such Defendant is not entitled to such irrelevant documents and subject to such objection, Plaintiff produced all relevant documents responsive to this request. .

As mentioned in the Plaintiff's February 3, 2022 letter, "Since these demanded documents do not relate to the instant proceedings, their enumerated objections still stand and will not be withdrawn. Further, since these documents are irrelevant to these proceedings, they will not be produced."

As for the assertion that "BM318 fails to identify whether any responsive documents are being withheld, a reading of that letter will reveal that "where the specific response indicated that an objection (general and/or specific) exists, but notwithstanding such objection the documents will be produced, such documents have been or will be produced. Where the specific response indicated that an objection (general and/or specific) exists and either fails to state such documents will be produced or states that documents will not be produced, such documents will not be produced." Further, where a concern was articulated regarding the withholding of documents relating to a specific request for production, Plaintiff would note that in no instance documents were withheld except as articulated *supra*. Plaintiff would refer Defendant to review its responses in the following paragraphs of its February 3, 2022 letter.

- V. A.
- V. D.
- VI. B.
- VI. C.
- VI. E.
- VI. L.

To identify responsive documents which are not relevant and which would be overly burdensome to produce defeats the purpose of the objection because identifying such documents would essentially require Plaintiff to perform the burdensome action that the objection seeks to avoid namely searching for and reviewing documents outside the scope of the current matters (i.e. searching outside the relevant date range, or searching using key words that are not related to this matter and that were not used as part of the initial document search).

**VII. Objections that an RFP is "vague and ambiguous"**

Despite Defendant's assertion to the contrary, Plaintiff's objection on the grounds that they are "vague and ambiguous" do have merit for the reasons articulated with specificity as to particular

Requests for Production. Those objections are as follows:

- RFP 10 – The demand for "all documents concerning Dixon" is vague and ambiguous on its face since no topic or context concerning such documents is provided and such request results in the production of mostly non-relevant documents. Further, there is no delineation of the person or entity in whose possession, custody, and control such documents exist and whether Defendant expects the Plaintiff to search for said documents that are not in Plaintiff's possession, custody, or control.
- RFPs 13 and 14 - These RFPs dealing with appraisals fail to similarly provide context in the form of a particular time during which any appraisal may have been produced and for what purpose. Notably, however, all appraisals in the possession, custody, and control of the Plaintiff have already been produced or will be supplemented as stated above, and the Plaintiff will not be creating any new appraisals to meet Defendants desired information requirements since it is not required to do so.
- RFP 15 – Such RFP is vague and ambiguous to the extent that, as before, no context or topical scope has been provided as to the information sought about the Plaintiff's communications, documents concerning communications, or otherwise concerning American Escrow Company, which could also encompass documents and communications about matters not implicated in these proceedings.
- As for the vague and ambiguous language "clarified" in the table in your letter dated January 21, 2022 referencing RFP Nos. 16, 17, 37, 38, 42, 43, 44, and 45, Plaintiff would note that at the time the responses thereto were prepared, they indicate that documents responsive to those requests had either been produced or would be produced.

Although Plaintiff did not obtain clarification on the grounds of vagueness and ambiguity prior to objecting on this ground as recommended (but not required) by the referenced case law, and despite the foregoing objections, Defendant has made no effort between the date of service of Plaintiff's February 3, 2022 letter and the present, a span of almost five (5) months, to clarify any vagueness or ambiguity as to any of the aforementioned Requests for Production.[7] The intent of that letter was to elicit such clarification. None was ever provided. Plaintiff is unsure if any documents have been withheld as to these specific objections since the Requests for Production to which they correspond force the Plaintiff to guess as to what documents the Defendant is searching. The Plaintiff will not do so.

**VIII. Documents concerning scheduled claims**

As mentioned in its previous letter, RFP Nos. 49-53 seek to have Defendant produce all documents related to the scheduled claims of four (4) entities that are creditors of the Plaintiff. Defendant states that the documents are relevant to the elements of BM318's claims but has provided no context for how such documents are related to the instant proceedings. Plaintiff believes that such request is not relevant to these proceedings and that providing "all documents"

---

[7] *Heller v. City of Dallas*, 303 F.R.D. 466, 492 (N.D. Tex 2014).

relating to the aforementioned claims of creditors is exceptionally broad in scope, constituting a fishing expedition by the Defendant. Defendant has had five (5) months to clarify how the demanded documents are relevant and fall within the proper scope of discovery, but has failed to do so. If and when such clarification is provided, Plaintiff has agreed to supplement its production when such documents are located, and if they do not cause Plaintiff to waive its other objections as to these requests. Furthermore, documents concerning and/or related to the claims of those named entities would be in the possession and control of same thereby making those entities the appropriate party to which requests for those documents should be served.

**IX. Privilege Log**

Plaintiff will produce a privilege log in accordance with the provisions of Fed. R. Civ. P. 26(b)(5). Please be aware that doing so will take some time due to the need to review all files for privileged content.

If you have any issues, questions, or concerns regarding these responses to your allegations of deficient responses to the Defendant's discovery requests, please do not hesitate to call me at (972) 503-4033 or contact me by email at joyce@joycelindauer.com.

Sincerely,

*/s/ Joyce Lindauer*
Joyce W. Lindauer
Attorney-at-Law

Copy to: *Client*