Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEY FOR DEBTOR/PLAINTIFF

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **BM318, LLC,** | § | **CASE NO. 20-42789-mxm-11** |
| | § | |
| **DEBTOR.** | § | **CHAPTER 11** |

| | | |
|---|---|---|
| **BM318, LLC,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **ADVERSARY NO. 21-04051** |
| | § | |
| **DIXON WATER FOUNDATION,** | § | |
| **Defendant.** | § | |

| | | |
|---|---|---|
| **LUMAR LAND & CATTLE, LLC,** | § | |
| **Plaintiff-in-Intervention,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **BM318, LLC,** | § | |
| **Defendant-in-Intervention.** | § | |

**BM318, LLC'S STATUS REPORT AND BRIEF ON DISCOVERY DISPUTES**

TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:

Comes now BM318LLC, Plaintiff and Defendant-in-Intervention in the above-captioned adversary proceeding ("BM318") and files this Status Report and Brief on Discovery Disputes, and would respectfully show the Court as follows:

1. On July 15, 2022, Defendant Dixon Water Foundation ("Dixon") filed an *Expedited Motion to Compel Written Discovery Responses and Production of Documents* (Doc. No. 76, the "Motion"). The Debtor responded on July 26, 2022 with its *Response and Objection to Dixon Water Foundation's Expedited Motion to Compel Written Discovery Responses and Production of Documents* (Doc. 85, the "Response"). The matter is set for hearing for a continued hearing before this Court on August 1, 2022 at 1:00 p.m.

2. **Interrogatory responses.** On July 29, 2022, the parties met in an attempt to resolve their discovery disputes. Prior to the meeting, the Debtor served Dixon with its *First Amended Objections and Responses to Defendant the Dixon Water Foundation's (1) First Set of Interrogatories and (2) First Requests for Production of Documents and Other Items* ("Amended Responses"). The Debtor believes the Amended Responses are fully responsive to Dixon's interrogatory requests, although counsel for Dixon is still in the process of reviewing the Amended Responses. The Amended Responses set forth in detail the basis for a number of issues raised by Dixon.

3. **Document request responses.** Regarding production of documents, the Debtor has likewise amended its responses to remove many of its original objections to production and has agreed to gather and provide additional documents within its possession, custody or control within one week after the August 1st hearing. Specifically, the Debtor will produce documents that exist that are responsive to Requests for Production Nos. 19, 20, 33 37, 38 and 49 – 53. As explained to Dixon's counsel there are certain documents that do not exist in these categories. In response to Request for Production No. 42, the Debtor maintains its objection based on attorney-client privilege but will create and produce a log of privileged documents and will produce any non-

privileged documents responsive to the request. The Debtor also agreed to provide its list of search terms it used to locate documents responsive to the Requests.

4. **Native format documents.** The parties continue to disagree about the Debtor's responsibility to produce documents in "native format" containing embedded "metadata" such as time of creation of the document, its author, and tracked revisions to the document. The Debtor has agreed to produce such documents already in its possession, custody or control but continues to object to Dixon's request to the extent it would require the Debtor to have to retain an expert to locate "native format" or "near native format" documents when it's employees and contractors have not typically created nor stored such documents in such a manner in the past. Some documents originally created in native format have been lost to the Debtor because they were created or stored on the personal computers of departed employees of affiliated entities working on the Debtor's projects. Other such documents conceivably might be producible but only with the assistance of an information technologies consultant with forensic capabilities, which the Debtor and its affiliates have not employed and could charge significant fees for this type of work.

5. **Authorities on production of documents in native format.** Contrary to Dixon's assertions, a party is not necessarily obligated to produce documents in native format simply because another party has requested them in discovery. Federal Rule of Civil Procedure 30 provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E)(i). However, a party is not required to produce electronically stored information in the form in which it is ordinarily maintained as long as it is produced in a reasonably usable form. Fed. R. Civ. P. 30 Advisory Committee Notes, 2006 Amendment ("If the form of production is not specified by party agreement or court order, the responding party must produce electronically

stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable.").

6. Courts have ordered production of ESI in its native format, including metadata, when the information may be of particular significance to a party's claims or defenses. See *White v. Graceland Coll. Ctr. for Prof'l Dev. & Lifelong Learning, Inc.,* No. 07-2319-CM, 2009 U.S. Dist. LEXIS 22068, 2009 WL 722056, at *4-5 (D. Kan. Mar. 18, 2009) (court ordered defendant to reproduce e-mails and attachments in native format where parties disputed creation date of documents); *Williams v. Spring/United Mgmt. Co.,* 230 F.R.D. 640, 653-657 (D. Kan. 2005) (in age discrimination case, court ordered production of Microsoft Excel spreadsheets in native format where metadata could be relevant to plaintiff's claims that defendant reworked pools of employees to improve distribution to pass adverse impact analysis).

7. Further, unfounded suspicions of wrongdoing are not enough to compel the production of metadata. In *ADT Security Serv., Inc. v. Swenson*, 2009 U.S. Dist. LEXIS 146085, 2009 WL 10690407 at *1-2 (D. Minn. July 23, 2009), the court denied a discovery request for emails in their native format with metadata intact. Although the requesting parties stated they wanted to see the metadata in order to determine if ADT had tampered with the emails, the requesters had no concrete facts upon which to conclude ADT had tampered with the ESI. *Id.* The court refused to require production of metadata based on mere speculation of possible wrongdoing. *Id.*

8. Several cases have noted an emerging presumption against requiring the production of metadata absent a compelling reason for production of such information. *See, e.g.*, *Copperhead Agric. Prods., Ltd. Liab. Co. v. KB AG Corp., Ltd. Liab. Co.,* No. 4:18-CV-04127-LLP, 2019 U.S. Dist. LEXIS 215212, at *26-29 (D.S.D. 2019) ("Decisions from other jurisdictions tend to

establish the rule that a party must show special need for metadata before being entitled to it."); *Wyeth v. Impax Laboratories, Inc.,* 248 F.R.D. 169, 171 (D. Del. 2006) (plaintiff was denied access to metadata because local rule established a presumption against receipt of metadata in ESI and because the plaintiff had not articulated a particularized need for metadata in its motion to compel); *Lindsay v. Clear Wireless LLC,* No. 13-834 DSD/AJB, 2014 U.S. Dist. LEXIS 29068, at *9 (D. Minn. 2014); *ADT Security Serv., Inc. v. Swenson,* 2009 U.S. Dist. LEXIS 146085, 2009 WL 10690407 at *2; *Williams v. Sprint/United Mgmt. Co.,* 230 F.R.D. 640, 645-47 (D. Kan. 2005).

9. In this case, Dixon has provided no basis to support such a request. There have been no allegations regarding the authenticity or origination of documents, or of any tampering with documents. No rationale at all has been provided for why Dixon should be warranted in requesting the production of metadata.

10. It is also established that where the production of files in native format would require the responding party to incur additional expenses, the requesting party must pay those expenses. For instance, in *Torres v. State Farm Lloyds,* No. 7:14-CV-421, 2015 U.S. Dist. LEXIS 197229 (S.D. Tex. 2015), the court stated:

> The information Plaintiffs request from the native format does not fall within the appropriate scope of discovery. While there is ostensibly a benefit to Plaintiffs in knowing the formulas in an Excel sheet or the list of authors on a document, that information is not relevant at all to the issues at hand, even the extra-contractual issues. Therefore, <u>any</u> burden incurred by Defendants in producing the information in "native" or "near native" format is too much. According to the Committee Notes to the Rule 34 2006 Amendment, production in a minimally searchable form may be authorized even though more easily searched forms might be available at equal or less cost to the responding party. Plaintiffs can gain all of the necessary information to litigate this issue from the claim file routinely produced from ECS.

*Id.* at *35-36. *See also, Best Buy Stores, L.P. v. Developers Diversified Realty Corp.,* No. 05-2310 (DCD/JJG), 2007 U.S. Dist. LEXIS 7580, at *2, 2007 WL 333987, at *1 (D. Min.. Feb. 1, 2007) (affirming magistrate judge's decision that ESI sought by plaintiff was not "reasonably accessible"

because of undue burden and cost); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y. 2003) (If production of such data is found to be warranted, shifting the cost of production to the requesting party has been considered appropriate).

9. The Debtor requests the Court to consider the above authorities in reaching a decision whether to compel the production of documents in native format with corresponding metadata, and ultimately to rule that production in such format is unwarranted in this case. Should the Court determine that production of metadata is warranted, the Debtor requests that Dixon be ordered to pay the additional costs associated with such production since such production is well beyond the scope of what the Debtor maintains in its files.

Dated: August 1, 2022.

Respectfully submitted,

*/s/ Joyce W. Lindauer*

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main St., Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Email: joyce@joycelindauer.com

ATTORNEY FOR DEBTOR/PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 1, 2022, a true and correct copy of the foregoing document was served by electronic transmission via the Court's CM/ECF system upon all parties registered to receive electronic notice in this bankruptcy case, including counsel for Lumar Land & Cattle, LLC and Dixon Water Foundation.

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer