UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BM318, LLC, et al., | . | Case No. 21-04051-mxm |
| Plaintiff, | . | Eldon B. Mahon U.S. Courthouse<br>501 W. 10th St. |
| v. | . | Fort Worth, TX 76102-3643 |
| Dixon Water Foundation, et al., | . | July 27, 2022 |
| Defendant. | . | 1:31 p.m. |

. . . . . . . . . . . . . . . . .

PARTIAL TRANSCRIPT - RULING
BEFORE THE HONORABLE JUDGE MARK X. MULLIN
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

| | |
|---|---|
| For the Plaintiff BM318, LLC: | JOYCE W. LINDAUER, ESQ.<br>Joyce W. Lindauer Attorney, PLLC<br>1412 Main Street, Suite 500<br>Dallas, Texas 75202 |
| For the Defendant Dixon Water Foundation: | DEBORAH M. PERRY, ESQ.<br>JULIAN PRESTON VASEK, ESQ.<br>Munsch Hardt Kopf & Harr P.C.<br>500 North Akard Street<br>Dallas, Texas 75201 |
| For the Intervener-Plaintiff Lumar Land & Cattle, LLC: | KIMBERLY PAIGE HARRIS<br>Quilling, Selander, Lownds, et al.<br>2001 Bryan Street, Suite 1800<br>Dallas, Texas 75202 |
| Transcribed by: | KELLI RAY, CET-349<br>Lawrence Court Transcription & Video<br>P.O. Box 530790<br>DeBary, FL 32753 |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

FORT WORTH, TEXAS - JULY 27, 2022 - 1:31 P.M.

THE COURT DEPUTY: All rise.

THE COURT: Good afternoon. Please be seated. We are here this afternoon for the Court's 1:30 docket. We have two matters in the BM318, LLC case. We'll go ahead and take appearances here in the courtroom and then we'll go to the video.

Good afternoon.

MR. VASEK: Good afternoon, Your Honor. Julian Vasek and Deborah Perry from Munsch Hardt Kopf & Harr for the defendant, The Dixon Water Foundation.

THE COURT: Perfect. Thank you. All right.

And, Ms. Lindauer, it's to you. Good afternoon to you.

MS. LINDAUER: Good afternoon, Your Honor. Joyce Lindauer here on behalf of BM318, the debtor in the underlying bankruptcy case and the plaintiff in the pending adversary proceeding.

THE COURT: All right. Any other counsel that would like to make an appearance?

MS. HARRIS: Judge, this is Kimberly Harris here on behalf of Lumar Land. I do not -- I'm having a hard time getting my video to start up, but I am Josh Shepherd today.

THE COURT: All right. Well, good afternoon to you, Ms. Harris. Welcome.

MS. HARRIS: Thank you. Welcome.

THE COURT: Anyone else? Okay. I think what the Court will do, I'm -- there we go.

Ms. Harris, I'm going to go ahead and mute your line. We're getting some feedback. And there we go. So if you need to speak, go ahead and unmute yourself. Otherwise, I just -- I just muted your line, because we were getting feedback.

All right. I think the first thing we -- the Court will do, we have the two matters. One is the Court's going to render its ruling. Prepared to do so a week or so ago, but thought it best just to wait until we were all here together and not cause Counsel to have to put another thing on their calendar. So this will be the Court's oral ruling regarding Motion for Leave to File an Amended Complaint, which is in Document Number 50. This oral ruling constitutes the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure as incorporated in Bankruptcy Rules 7052 and 9014.

Before the Court is BM318, LLC's Motion for Leave to File an Amended Complaint, which is located in Adversary ECF Number 50, which I'll refer to throughout this ruling as the Motion to Amend. The Dixon Water Foundation, which I'll refer to as Dixon and Lumar Land & Cattle, LLC, which I'll refer to as Lumar, have each filed objections to the Motion to Amend. Dixon's objection is at Adversary ECF Number 55 and Lumar's

objection is at Adversary ECF Number 53. BM318 filed its response and a supplemental response to these objections, and those could be found at Adversary ECF Numbers 59 and 66, respectively. By the Motion to Amend, BM318 requests the Court to grant leave to file an amended complaint in this adversary proceeding. The amended complaint seeks in part to add 11 new counts, which are Counts 5 through 16, which I'll refer to as the new causes of action.

The new causes of action are based on various common-law theories against the following potential 16 new defendants: GH Lumar, LLC; Aledo West, LLC; GH Lumar, JV; Railhead Realty, LLC; Mr. Robert J. Potts; Mr. Jimmy Ray Martin; Mr. Ronald Hughes; Mr. Gary Hazlewood; Mr. Clinton W. Josey, Jr.; Ms. Kate Smyth -- excuse me, Ms. Kathy Smyth -- Mr. Jerry Addison; Mr. Hugh Aljoe; Mr. Walt Davis; Leslie C. Rauscher; Dr. Richard Teague; and Ms. Laura Whiting.

As an aside, the Court recognizes that Ms. -- Mr. Davis and Ms. Whiting are included in the Motion to Amend, but were not in the proposed amended complaint, which was attached as Exhibit A to the motion. These two potential defendants inclusion in the Motion to Amend and absences from the amended complaint does not affect the Court's ultimate disposition of this matter. The Court is including Mr. Davis and Ms. Whiting in this ruling. The amended complaint also states to add the following new claims and causes of action against Dixon: Count

13, aiding and abetting and/or knowingly participation for breach of fiduciary duties; Count 14, conspiracy to commit fraud and/or fraud in real estate; constructive fraud, conversion, tortious interference with a contract or prospective contract and/or breach of fiduciary duties; and Count 16, alter-ego piercing the corporate veil, reverse piercing the corporate veil. Finally, the amended complaint seeks to end the following new causes of action against Lumar: Count 11, constructive fraud; Count 12, negligent representation; Count 13, aiding and abetting and/or knowing participation in breach of fiduciary duties; Count 14, conspiracy to commit fraud and/or fraud in real estate, constructive fraud, conversion, tortious interference in the contact or prospective contract and/or breach of fiduciary duties; and Count 16, alter-ego piercing the corporate veil, reverse piercing the corporate veil.

The Court has reviewed and considered the Motion to Amend, the objections filed by Dixon and Lumar, the response and supplemental response filed by BM318, the testimony of Mr. Larry Martin, the exhibits admitted in Evidence and the arguments of Counsel. For the reasons detailed below, the Court orders that the Motion to Amend is denied. First, some background facts. On November 16th, 2018, BM318 purchased 2,055.7 acres of rural property in Parker County, Texas, for $35,461,480 from Dixon. BM318 paid $2.1 million in cash

closing and Dixon financed the remaining amount pursuant to a loan agreement and promissory note, which was secured by a deed of trust. After various sales, BM318 was left with 1,531.75 acres of property, encumbered by Dixon's deed of trust. On February 27th, 2020, BM318 and Dixon modified the loan agreement, extending the due date to July 1, 2020. In addition, BM318 executed a deed in lieu of foreclosure to Dixon for the 1,531.75 acres to be held in escrow in the event that BM318 defaulted on a promissory note.

On June 26, 2020, in anticipation of Dixon recording the deed in lieu of foreclosure, JMJ Development, an entity related to BM318, and Dixon entered into a real estate sales agreement, or buyback contract, for the purchase of the 1,531.75 acres of land from Dixon in the event that the deed of trust that -- excuse me. In the event that the deed in lieu of foreclosure was recorded by Dixon. The purchase price under the buyout contract was $27,500,658, which was set to close on August 31st, 2020. Under the buyback contract, JMJ Development had three options to extend the buyback contract's closing date by 30 days in exchange for depositing $50,000 with the title company for each option.

On July 1, 2020, BM318 was unable to satisfy its obligations on -- to Dixon. The following day, on July 2nd, 2020, Dixon recorded the deed the lieu of foreclosure transferring title of the property to Dixon. JMJ Development

exercised one option to extend the August 31st, 2020 closing date under the buyback contract. On September 9, 2020, BM318 filed a Chapter 11 bankruptcy petition. On September 22nd, 2020, BM318 filed its original bankruptcy schedules, which can be found in ECF Number 22. BM318 did not list any alleged causes of action as assets owned by the estate in its original schedules. JMJ Development defaulted on its option under the buyback contract, and Dixon terminated the buyback contract on October 15, 2020.

On November 13, 2020, BM318 filed its disclosure statement, which can be found at ECF Number 37, and its Chapter 11 plan, ECF Number 36. And on November 19, 2020, BM318 filed its first amended disclosure statement at ECF Number 40 and first amended Chapter 11 plan at ECF Number 39. BM318 did not list any alleged causes of action as assets owned by the estate in either of the -- of the disclosure statements or Chapter 11 plans. On December 28th, 2020, BM318 filed a first modification to the first amended disclosure statement, which can be found at ECF Number 52.

Again, the first modification did not list any alleged causes of actions as assets owned by the estate. On January 4, 2021, BM318 filed its first amended schedules at ECF Number 54. Again, BM318 did not list any alleged causes of action as assets owned by the estate. On January 4, 2021, BM318 filed its second amended disclosure statement at ECF

Number 56. Although the second amended disclosure statement specifically referenced the causes of action that BM318 asserted against Dixon in the original complaint in this adversary proceeding, at Adversary ECF Number 1, the second amended disclosure statement made no mention of the alleged new causes of action that BM318 now seeks to assert by its Motion to Amend. On January 28th, 2021, Mr. Robert Potts, president and CEO of Dixon, sent to Mr. Larry Martin an email stating, Larry, this is to confirm that Dixon Water Foundation has a contract to sell to Jim Martin 204 acres of our Bear Creek Ranch.

We plan on closing the sale in the next 90 days. At the closing of the 204 acre tract, Jim will obtain an option right of first refusal to acquire the remaining part of the Bear Creek Ranch, approximately 1,320 acres. If JMJ is interested in a cash acquisition on some of all of this remaining 1,320 acres, then Jim and I would be willing to discuss it with you. I'm available next week to get on a phone call with you, Tim Barton and Jim Martin to discuss it. And again, that's Lumar Exhibit Number 19 as well as Dixon Exhibit Number F.

Pursuant to the special warranty deed with vendor's lien dated April 23rd, 2021, which can be found at Dixon Exhibit G, Dixon transferred 204.5 of the 1,531 acres that it had acquired by the deed in lieu of foreclosure. On May 5,

2021, BM318 filed its first modification to its amended Chapter 11 plan, which can be found at ECF Number 79, and its first modification to the second amended disclosure statement, which can be found at ECF Number 80. Section 8.01 of the modified plan specifically identified BM318's alleged causes of action against Dixon related to the deed in lieu of foreclosure, which were, one, preferential transfers under Section 547, two, fraudulent transfers under Section 548, and three, recovery of avoidable transfers under Section 550 of the Bankruptcy Code.

Nowhere in any of BM318's disclosure statements or Chapter 11 plans did BM318 specifically identify any of the alleged new causes of action it now seeks to pursue by its Motion to Amend. On May 10, 2021, BM 318 filed its second amended schedules at ECF Number 82, which included, for the first time, its alleged causes of action against Dixon for preferential transfers under Section 547, fraudulent transfers under Section 548, and recovery of avoidable transfers under Section 550. On May 11th, 2021, Dixon filed its objection to BM318's Chapter 11 plan which can be found at ECF Number 87.

On a side note, BM318 points out that Dixon did not address or reveal in its objection that, on April 23rd, 2021, it had conveyed the 204.5 acres to Lumar. In response, Dixon contends that it had no reason or obligation to reference the sale to Lumar in its objection to BM318's Chapter 11 plan. The Court agrees with Dixon on this point.

On May 12, 2021, BM318 filed its third amended schedules at ECF Number 93 wherein BM318 listed for the first time its alleged new causes of action against Mr. Tim Green, Mr. Chuck Stark, and Mr. Jim Martin for tortious interference, breach of contract, misrepresentations, fraud, and breaches of fiduciary duty. BM318 did not, however, specifically reference or identify these alleged new causes of action in any of its disclosure statements or plans of reorganization, which constitute the pertinent and relevant documents to adequately preserve and transfer such causes of action in a plan.

On May 25th, 2021, BM318 filed its third modification to its first amended Chapter 11 plan at ECF Number 100. On August 2, 2021, the Court confirmed BM318's modified plan, which was entered on -- at Document Number 106. The plan’s effective date was September 1, 2021. On August 10, 2021, BM318 filed its original complaint in this adversary proceeding, again, Adversary ECF Number 1 against Dixon alleging the following four counts, each of which was specifically identified in BM318's modified plan and disclosure statement.

And those, again, are ECF Numbers 79 and 80, respectively. And those four counts were: Count 1, preferential transfer under Section 547; Count 2, constructive fraudulent transfer under Section 548(a)(1)(B); Count 3, recovery of avoidable transfers under Section 550; and Count 4,

disallowance of Dixon's proof of claim pursuant to Section 502(d) and (j). On October 27th, 2021, BM318 filed its notice of lis pendens in the Parker County Official Public Records on the entire 2,055.7 acres of land, which included the 204.5 acres of land that Dixon transferred to Lumar on April 23, 2021. Lumar filed a Motion to Intervene in this adversary proceeding on January 14, 2022. That's in Adversary ECF Number 14, which the Court granted on February 14th, 2022 at Adversary ECF Number 32.

Two days later, on February 16, 2022, Lumar filed its complaint against BM318, and that can be found at Adversary ECF Number 33. To which, on March 21st, 2022, BM318 filed its answer and counterclaims against Lumar for tortious interference with the contract, tortious interference with a prospective contract, breach of fiduciary duties, fraud, conversion, fraud in real estate transaction, conspiracy, and declaratory judgment. And that can be found at Adversary ECF Number 40. On May 9, 2022, BM318 filed the Motion to Amend that is currently before the Court.

Dixon and Lumar present both similar and unique positions for objecting to the Motion to Amend. Dixon contends that the Courts deny the Motion to Amend because, one, allowing the amended complaint is futile given that A, BM318 does not have standing to pursue the causes of action, and B, the amended complaint could not survive a Motion to Dismiss for

Failure to State a Claim. Two, BM318 had duly delayed in bringing these claims, and three, the Motion to Amend is being brought to gain a tactical advantage. Lumar contends that the Court should deny the Motion to Amend because one, BM318 lacks standing to pursue these new causes of action and two, BM318 is judicially stopped from pursuing these new causes of action. First, the standard to allow for the amended complaint. Federal Rule of Civil Procedure 15(a)(2) provides that, "A party may amend its pleading only with the party's -- opposing party's written consent or the Court's leave."

That's from Rule 15(a)(2), which further provides that the Court "should freely give leave where justice so requires." Quoting again, "This standard evidence is a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment." And that's the Fifth Circuit decision in *Caroll v. Fort James Corp.* at 470 F.3d 1171, 1175 (5th Cir. 2006). Trial courts are "entrusted with the discretion to grant or deny motions to amend and may consider a variety of factors, including undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment.'

That's the Fifth Circuit decision in *Marucci*, —A-R-U-C-C-I, *Sports, LLC, v. NCAA*, 751 F.3d 368, 378 (5th Cir. 2014).

Futility; an amendment is considered futile if the amended pleading would be subject to a Motion to Dismiss for lack of standing. See *Official Comm. of Unsecured Creditors v. Pardee in re Stanwich Fin. Servs. Corp.*, 371 B.R. 224, 226 - 227 (Bankr. D. Conn. 2004). Standing; a reorganized debtor may preserve its standing to prosecute alleged claims and causes of action previously owned by the debtor-in-possession and its bankruptcy estate, but only if the plan of reorganization is "specific and unequivocal" for the "retention and enforcement by the debtor" of the claims the reorganized debtor wishes to pursue.

I'll refer the parties to Section 11(23)(b)(3)(B) as well as *In re SI Restructuring*, 714 F.3d 860, 864, (5th Cir. 2008), as well as *In re United Operating, LLC*, 540 F.3d 351, 355 - 356 (5th Cir. 2008). BM318 argues that it did not know until after its Chapter 11 plan was confirmed on August 2, 2021, that the alleged new claims and causes of action that BM318 now seeks to pursue even existed. Therefore, according to BM318, it was not possible for BM318 to specifically and unequivocally identify such unknown claims of -- causes of action in the plan or the disclosure statement.

To support this position, BM318 called Mr. Larry Martin as a witness. Mr. Larry Martin testified that he is an attorney and that he was the advisor to BM318 related -- relating to the buyback contract and events thereafter. Mr.

Larry Martin testified that he personally did not learn of the existence of the new causes of action BM318 now seeks to prosecute until the first quarter of 2022, more than six months after BM318's Chapter 11 plan was confirmed. The Court found that Mr. Larry Martin’s testimony was extremely guarded. But even if the Court what Mr. Larry Martin’s testimony as credible, his testimony is limited to what he personally knew. His testimony did not establish when BM318 and others associated with BM318 such as Mr. Tim Barton may have known of the existence of such claims.

Mr. Larry Martin was the only witness called by BM318. Although Mr. Larry Martin testified that he “was the primary individual that was working on” the BM318 and Dixon matter and that he did not learn of the relevant facts at issue until -- here until the first part of 2022. The following substantial and credible evidence challenges Mr. Martin’s contention that BM318 did not know about the facts that gave rise to the alleged new causes of action that BM318 seeks to prosecute in a Motion to Amend.

First, BM318 filed its second amended schedules, at ECF Number 82, 16 days after Dixon transferred the 204.5 acres to Lumar, which revealed for the first time that BM318 held alleged claims and causes of action against Dixon. Additionally, the amended schedules were signed by Mr. Tim Barton, president of BM318, not Mr. Martin. And, of course,

Mr. Tim Barton was not called as a witness by BM318. Second, BM318 filed its third amended schedules at ECF Number 93, which included, for the first time, the alleged claims and causes of action against Mr. Tim Green, Mr. Chuck Stark, and Mr. Jim Martin, Lumar's principal. Again, the third amended schedules were signed by Mr. Tim Barton, president of BM318 as opposed to BM318's only witness, Mr. Larry Martin. And again, Mr. Tim Barton never testified.

Third, the complaint itself, filed eight days after the claim confirmation order was entered suggests that BM318 new, prior to plan confirmation, that Dixon had transferred the 204.5 acres to Lumar. Specifically the complaint states that after the buyback contract failed to close on August 31, 2022 -- and I insert Dixon, I assume -- "[Dixon] sold a portion of the [1531.75 acres of land] to the broker or related person or entity who I represented [BM318] under the original purchase agreement to acquire the 2,055.7 acres from [Dixon]."

In his testimony, Mr. Larry Martin conceded on cross examination that he was not aware of any person other than Mr. Jim Martin, Lumar's principal, who had been the broker for BM318, acting through JMJ Development, when it entered into the buyback contract with Dixon. Fourth, Lumar Exhibit F is an email dated January 28, 2021, from Mr. Potts to Mr. Larry Martin providing Mr. Larry Martin notice that Dixon intended to sell 204 acres of land from the disputed land to Mr. Jim

Martin. The email specifically states, and I -- I won't repeat it now, because I've repeated it -- I already stated it previously in my ruling. But in addition, Mr. Potts offered to discuss the matter with Mr. Larry Martin and Mr. Tim Barton, which again suggests that Mr. Tim Barton, the president of BM318, had notice of that sale. And again, Mr. Tim Barton did not testify. Finally, the Motion to Amend itself supports that BM318 knew about the new causes of action it now wishes to add to the lawsuit.

The first paragraph of the Motion to Amend states, "Although BM318 also had related claims for damages as a result of the fraudulent transfer, he believed that such claims were more appropriate for litigation outside of the bankruptcy court." In the fourth paragraph of the Motion to Amend, BM318 states, "As a result of Lumar's intervention, BM318 was forced to bring additional tort-based claims that it had originally intended to litigate outside of the bankruptcy court at the conclusion of this case as these claims were not necessary claims."

Again, these contentions suggest that BM318 knew of the existence of these new causes of action prior to obtaining confirmation of BM318's plan and the filing of this adversary proceeding. The Court finds that the credible evidence suggests that BM318 was aware of the facts giving rise to the additional alleged claims and new causes of action that BM318

now seeks to add to its proposed amended complaint and knew of those claims in sufficient time for BM318 to have specifically and unequivocally described such claims in BM318's disclosure statements and confirmed plan. That would have adequately preserved and transferred such claims to the reorganized debtor, BM318, but BM318 failed to do so. The burden was on BM318 to specifically and unequivocally describe the alleged new causes of action in BM318's disclosure statement and confirmed plan to adequately preserve and transfer such claims.

*In re MPF Holdings US LLC*, 701 F.3d 449, 455 (5th Cir. 2021); *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 552 (5th Cir. 2011). Although BM318's approved disclosure statement and confirmed plan adequately preserved and transferred the avoidance actions against Dixon, "an explicit reservation of avoidance actions is insufficient to reserve a debtor's standing to pursue common-law claims." *In re Gulf States Long Term Acute Care of Covington, LLC*, 614 F. App'x 714, 719 (5th Cir. 2015). A plan's blanket reservation of "any and all claims" arising under the Code, or a plans's specific reservation of other types of claims under various Code provisions are insufficient to preserve common-law claims like fraud, breach of fiduciary duty, and negligence. *In re United Operating, LLC*, 540 F.3d 351, 356 (5th Cir. 2008).

"In determining whether a proper reservation has been made, courts may consult the disclosure statement in addition

to the plan to determine whether a post-confirmation debtor has standing." *In re SI Restructuring Inc*, 714 F.3d 860, 864 (5th Cir. 2013), quoting *In re Texas Wyoming Drilling, Inc.*, 647 F.3d 547, 551 (5th Cir. 2011). In this case, the disclosure statements and plan's general retention language is insufficient to retain the new causes of action BM318 now seeks permission to prosecute by its Motion to Amend. As such, the general retention language in the approved disclosure statement and confirmed plan did not confer standing on BM318 as the reorganized debtor to pursue the proposed new causes of action.

Like *SI Restructuring*, the Court finds and concludes that "neither the plan nor the disclosure statement references specific state law claims for fraud, breach of fiduciary duty, or any other particular cause of action." Again, *In re SI Restructuring, Inc.*, 714 F.3d 860, 865 (5th Cir. 2013). Because the plan's language in the reservation of causes of action fails to specifically and unequivocally identify the new causes of action that BM318 now seeks to prosecute, the Court finds and concludes that BM318 does not have standing to prosecute such claims.

Therefore, granting BM318 leave to file the amended complaint would be futile. Lastly, because the Court finds that BM318 did not have standing to pursue these new causes of action, meaning that granting BM318 leave to amend its complaint would be futile, the Court does not need to address

whether the amended complaint could survive a Motion to Dismiss for failure to state a claim, whether BM318 unduly delayed in bringing these claims, or whether the Motion to Amend is being brought to gain a tactical advantage. Based on the Court's oral findings of fact and conclusions of law was stated here on the record, the Motion to Amend at ECF Number 50 is denied. The Court reserves the right to make additional findings of fact and conclusions of law. That concludes the Court's oral ruling.

I was going to ask, I don't see anyone from Mr. Forshey's firm on the phone. So it appears, Ms. Perry, that you may have drawn the lucky bean. If you would be so kind as to prepare the Order denying the motion, and you can simply feel free to take what the Court stated and recorded in open court as finders of fact, conclusions of law pursuant to Rule 52, incorporated by 7052 and 9014, and they're adopted therein based upon the Court's rule of findings and conclusions of law, the motion's denied. Or you can detail. I'll leave that to your discretion; all right?

MS. PERRY: Thank -- thank you, Your Honor. We'll prepare that.

(The proceeding concluded at 2:02 p.m.)

* * * * *

**C E R T I F I C A T I O N**

I, Kelli Ray, court approved transcriber, certify that the foregoing pages is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.

Kelli Ray
______________________

KELLI RAY, CER-349, CET-349

DATE: AUGUST 3, 2022