FILED
OCT 1 2024
CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:**<br>**BM318, LLC,**<br>**Debtor.** | §<br>§<br>§ | **Case No. 20-42789-mxm11**<br>**Chapter 11** |
| **TIMOTHY BARTON,**<br>**Guarantor and Appellant,**<br><br>**v.**<br><br>**DIXON WATER FOUNDATION,**<br>**Defendant.** | §<br>§<br>§<br>§<br>§<br>§<br>§ | **Adversary No. 21-04051** |
| **LUMAR LAND & CATTLE, LLC,**<br>**Plaintiff-in-Intervention,**<br><br>**v.**<br><br>**BM318, LLC,**<br>**Defendant-in-Intervention** | §<br>§<br>§<br>§<br>§<br>§<br>§ | |

## DESIGNATION OF RECORD ON APPEAL AND STATEMENT OF ISSUES

**NOW COMES** Timothy Barton, Guarantor and Appellant in the above-captioned case, and pursuant to Fed. R. Bankr. P. 8009(a)(1) and Fed. R. App. P. 6(b)(2)(B) submits this its Designation of Record on Appeal and Statement of Issues to be raised before the U.S. District Court for the Northern District of Texas. In support of same, Appellant hereby designates the following items for inclusion in the record on appeal. Such designation of pleadings and matters of record include all exhibits attached or referred to in the pleadings or matters of record:

| Filing Date | Docket No. | Docket Text |
|---|---|---|
| September 10, 2024 | 147 | Amended Notice of Appeal |
| August 26, 2024 | 142 | Final Agreed Judgment Dismissing the Adversary Proceeding |

| | | |
|---|---|---|
| | | Docket Sheet as of September 27, 2024 |
| August 10, 2021 | 1 | Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 |
| September 30, 2021 | 8 | Defendant, the Dixon Water Foundation's Answer and Affirmative Defenses to Complaint to Avoid and Recover Preferential and/or Fraudulent Transfer Pursuant to 11 U.S.C. §§ 548 and 550 and Counterclaim |
| February 16, 2022 | 33 | Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment |
| March 21, 2022 | 40 | Plaintiff's Original Answer to Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Original Complaint in Intervention for Declaratory Judgment and Counterclaims Against Intervenor |
| April 11, 2022 | 42 | Plaintiff-in-Intervention's Answer to Plaintiff's Counterclaims |
| July 7, 2022 | 71 | Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Amended Complaint in Intervention for Declaratory Judgment |
| July 7, 2022 | 72 | Plaintiff-in-Intervention's First Amended Answer to Plaintiff's Counterclaims |
| July 22, 2022 | 83 | Response to Plaintiff-in-Intervention Lumar Land & Cattle, LLC's Amended Complaint in Intervention for Declaratory Judgment |
| **DOCUMENTS FROM BANKRUPTCY CASE NO. 20-42789** | | |
| April 25, 2024 | 147 | Joint Motion of BM318, LLC and the Dixon Water Foundation for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051 |
| April 25, 2024 | 149 | Joint Motion of BM318, LLC and Lumar Land & Cattle, LLC for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051 |

| | | |
|---|---|---|
| May 8, 2024 | 151 | Brief by Lumar Land & Cattle, LLC in Support of Joint Motion for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051 |
| May 16, 2024 | 153 | Objection to (I) Joint Motion of BM318, LLC and the Dixon Water Foundation for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051 (Docket No. 147) and (II) Objection to Joint Motion of BM318, LLC and Lumar Land & Cattle, LLC for Approval of Compromise and Settlement of Adversary Proceeding No. 21-04051 (Docket No. 149) |
| May 28, 2024 | 163 | Order Approving Compromise and Settlement Between BM318, LLC and the Dixon Water Foundation |
| May 28, 2024 | 164 | Order Approving Compromise and Settlement Between BM318, LLC and Lumar Land & Cattle, LLC |

**Statement of issues on Appeal**

1. Whether the Court erred in dismissing the adversary proceeding with prejudice.

2. Whether the Court erred in ordering that the lis pendens filed by BM318 and recorded under Instrument No. 202142097 in the official real property records of Parker County, Texas be dissolved upon entry of the judgment.

3. Whether the Court erred in approving Dixon's form of Release of Lis Pendens attached as Exhibit 1 to the judgment and thereby rendering the release legally effective.

4. Whether the Court erred in approving Lumar's form of Release of Lis Pendens attached as Exhibit 2 to the judgment and thereby rendering the release legally effective.

Dated: October 1, 2024.

Respectfully submitted,

Timothy Barton
P.O. Box 117625
Carrollton, Texas 75007
Telephone: (214) 673-8714
Email: timothy.barton@proton.me
PRO SE

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October _____, 2024, a true and correct copy of the foregoing document was served via email pursuant to the Court's ECF system upon the parties listed below.

J. Robert Forshey on behalf of Counter-Defendant Lumar Land & Cattle, LLC
bforshey@forsheyprostok.com, calendar@forsheyprostok.com; jgonzalez@forsheyprostok.com;bforshey@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com; forsheyprostokllp@jubileebk.net

J. Robert Forshey on behalf of Intervenor-Plaintiff Lumar Land & Cattle, LLC
bforshey@forsheyprostok.com, calendar@forsheyprostok.com; jgonzalez@forsheyprostok.com;bforshey@ecf.courtdrive.com;calendar_0573@ecf.courtdrive.com; forsheyprostokllp@jubileebk.net

Kimberly Paige Harris on behalf of Intervenor-Plaintiff Lumar Land & Cattle, LLC
kharris@qslwm.com, kdepasquale@qslwm.com

Charlene Cantrell Koonce on behalf of Attorney Cortney C. Thomas
charlene@brownfoxlaw.com, rmelissa@brownfoxlaw.com

Joyce W. Lindauer on behalf of Plaintiff BM318, LLC
joyce@joycelindauer.com, dian@joycelindauer.com

Jay Ong on behalf of Defendant The Dixon Water Foundation
jong@munsch.com, amays@munsch.com;jay-ong-4326@ecf.pacerpro.com

Deborah M. Perry on behalf of Counter-Claimant The Dixon Water Foundation
dperry@munsch.com

Deborah M. Perry on behalf of Defendant The Dixon Water Foundation
dperry@munsch.com

Joshua Lee Shepherd on behalf of Intervenor-Plaintiff Lumar Land & Cattle, LLC
jshepherd@qslwm.com, dcruz@qslwm.com

Julian Preston Vasek on behalf of Counter-Claimant The Dixon Water Foundation
jvasek@munsch.com, CourtMail@munsch.com

Julian Preston Vasek on behalf of Defendant The Dixon Water Foundation
jvasek@munsch.com, CourtMail@munsch.com

Timothy Barton

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TIMOTHY LYNCH BARTON<br>CARNEGIE DEVELOPMENT, LLC<br>WALL007, LLC<br>WALL009, LLC<br>WALL010, LLC<br>WALL011, LLC<br>WALL012, LLC<br>WALL016, LLC<br>WALL017, LLC<br>WALL019, LLC<br>HAOQIANG FU (a/k/a MICHAEL FU)<br>STEPHEN T. WALL**<br><br>*Defendants,*<br><br>**DJD LAND PARTNERS, LLC<br>LDG001, LLC**<br><br>*Relief Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **No. 3:22-CV-2118-X** |

**<u>DEFENDANT TIMOTHY LYNCH BARTON'S NOTICE OF APPEAL</u>**

PLEASE TAKE NOTICE that Defendant Timothy Lynch Barton, by counsel, hereby appeals to the United States Court of Appeals for the Fifth Circuit the Court's following orders:

1. Order filed on July 25, 2024 approving the sale of the Amerigold Suites and authorizing the Receiver to sell and to convey title to the Amerigold Suites free and clear of mortgages, liens, claims and encumbrances, after paying all secured

lienholders in accordance with contractual terms (ECF No. 537) and any oral orders made in the July 23, 2024 hearing thereon (ECF No. 536);

2. Order filed on July 25, 2024 approving the sale of the Hall Street Property and authorizing the Receiver to sell and to convey title to the Hall Street Property free and clear of mortgages, liens, claims and encumbrances, after paying all secured lienholders in accordance with contractual terms (ECF No. 538) and any oral orders made in the July 23, 2024 hearing thereon (ECF No. 536);
3. Order filed on August 14, 2024 granting Receiver's Motion to Ratify Settlement Agreement with Tamamoi, LLC and 3820 Illinois, LLC (ECF No. 549); and
4. Order filed on August 14, 2024 granting Receiver's Motion to Ratify BM318, LLC's Settlement Agreements with The Dixon Water Foundation and Lumar Land & Cattle, LLC (ECF No. 550).

Dated: August 21, 2024

Respectfully submitted,

By: */s/ Michael J. Edney*
Michael J. Edney
Virginia Bar No. 48253
DC Bar No. 492024 (*admitted to N.D. Tex.)*
medney@huntonak.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Washington, DC 20037
Phone: (202) 955-1500
Facsimile: (202) 778-2201

**COUNSEL FOR TIMOTHY LYNCH BARTON**

**CERTIFICATE OF SERVICE**

On August 21, 2024 I filed the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas. I hereby certify that I have served the document on all counsel and/or pro se parties of record by a manner authorized by Federal Rules of Civil Procedure 5(b)(2).

*/s/ Michael J. Edney*
Michael J. Edney

**No. 23-11237**
**consolidated with**
**No. 24-10004**

# In the
# United States Court of Appeals for the Fifth Circuit

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff-Appellee,*

v.

TIMOTHY BARTON,

*Defendant-Appellant,*

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:22-CV-2118-X

# BRIEF FOR APPELLANT

Michael J. Edney
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, D.C. 20037
(202) 955-1500
medney@huntonak.com

*Counsel for Appellant*
*Timothy Barton*

# CERTIFICATE OF INTERESTED PERSONS

**No. 23-11237**
**consolidated with**
**No. 24-10004**

SECURITIES AND EXCHANGE COMMISSION,
*Plaintiff-Appellee,*
v.
TIMOTHY BARTON,
*Defendant-Appellant,*

The undersigned counsel of record certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1. **Parties**

   a. **Defendant-Appellant**: Timothy Barton

   b. **Plaintiff-Appellee**: Securities and Exchange Commission

   c. **Intervenors**:

      i. United States of America

      ii. Gillespie Villas LLC

      iii. Venus59 LLC

      iv. TRTX Properties LLC

      v. MXBA LLC

      vi. Titan Investments LLC

vii. HNGH Turtle Creek, LLC

d. **Other Personal Defendants** (entity defendants included below)

i. Haoqiang Fu *also known as* Michael Fu

ii. Stephen T. Wall

**2. Attorneys**

a. **For Appellant**: Hunton Andrews Kurth LLP: Michael J. Edney

b. **For Appellee**: Keefe M. Bernstein, James E. Etri, David B. Reece

c. **For Defendant Stephen T. Wall**: Johnson Vaughn & Heiskell: Michael P. Heiskell

d. **For Interested Party HNGH Turtle Creek**: Kirkland & Ellis LLP: Erin Angela Nealy Cox; Kane Russell Coleman & Logan PC: John Joseph Kane

e. **For Interested Party Maximilien Barton**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

f. **For Intervenors Gillespie Villas LLC, Venus59 LLC, TRTX Properties LLC, MXBA LLC, and Titan Investments LLC**: Norton Rose Fulbright US LLP: Nathan Benjamin Baum, Christopher Ryan Cooke

g. **For Interested Party David Dhiraj Ramolia**: Chandler & Shavin PLLC: Eliot Dana Shavin, Daniel Rasoul Alexander, Corinna Pia Chandler

h. **For Interested Party Palisades-TC, LLC**: Tillotson Law: Jeffrey Tillotson, Jonathan Patton

i. **For Interested Party Southern Star Capital LLC**: Robert W Bucholz PC: Robert Bucholz

j. **For Interested Party Circle H Contractors, LP**: Capps and Associates PLLC: Aaron Capps

k. **For Interested Party MFO Venus Development LLC**: Moss and Associates: Ian Fullington

l. **For Interested Party Tamamoi LLC**: Spector & Cox PLLC: Howard Spector

m. **For Interested Party 3820 Illinois LLC**: Spector & Cox PLLC: Howard Spector

n. **For Interested Party Vertical Street Ventures LLC**: Winstead PC: Matthias Kleinsasser, Joseph Wielebinski

o. **For Interested Party McCormick 101, LLC**: Bell Nunnally & Martin: Kasheem Thomas

p. **For Interested Party Serena Badgley**: Cain & Skarnulis PLLC: Ryan Chapple

q. **For Interested Party Pioneer Finance, Inc.**: Baker Botts LLP: Tina Nguyen, Lindsay Buchanan

r. **For Interested Party The Dixon Water Foundation**: Munsch Hardt Kopf & Harr PC: Deborah Perry

s. **For Interested Party Truist Bank**: Johnston Clem Gifford PLLC: Gordon Green

**3. Other**

**a. 159 Other Entities Seized**

| | | |
|---|---|---|
| Carnegie Development, LLC (Defendant) | WALL007, LLC (Defendant) | WALL009, LLC (Defendant) |
| WALL010, LLC (Defendant) | WALL011, LLC (Defendant) | WALL012, LLC (Defendant) |

| | | |
|---|---|---|
| WALL016, LLC (Defendant) | WALL017, LLC (Defendant) | WALL018, LLC (Defendant) |
| WALL019, LLC (Defendant) | DJD Land Partners, LLC (Relief Defendant) | LDG001, LLC (Relief Defendant) |
| BM318 LLC | D4DS LLC | D4FR LLC |
| D4KL LLC | Enoch Investments LLC | FHC Acquisition LLC |
| Goldmark Hospitality LLC | JMJ Acquisitions LLC | JMJ Development LLC |
| JMJAV LLC | JMR100 LLC | Lajolla Construction Management LLC |
| Mansions Apartment Homes at Marine Creek LLC | MO 2999TC, LLC | Orchard Farms Village LLC |
| Villita Towers LLC | 126 Villita LLC | AVEG WW, LLC |

| | | |
|---|---|---|
| AVG West, LLC fka JMJ Acquisitions, LLC | Barton Texas Water District, LLC | Barton Water District, LLC |
| BC Acquisitions, LLC | BEE2019, LLC | Broadview Holdings, LLC |
| Broadview Holdings Trust | BSJ Trading, LLC | BUILD VIOLET, LLC |
| Carnegie Development, Inc. | D4AT, LLC | D4AVEG, LLC |
| D4BM, LLC | D4BR, LLC | D4IN, LLC |
| D4MC, LLC | D4OP, LLC | D4OPM, LLC |
| D4SMC, LLC | D4WP, LLC | Dallas Real Estate Investors, LLC |
| Dallas Real Estate Lenders, LLC | Dallas Real Estate Management, LLC | Five Star GM, LLC |
| Five Star MM, LLC | FIVE STAR MM, LLC | Five Star TC, LLC |
| Glenwood (18340) Property, LLC | HR Sterling, LLC | Illuminate Dallas, LLC |

| | | |
|---|---|---|
| JB Special Asset, LLC | JMJ Acquisitions Mgmt, LLC | JMJ Aviation, LLC |
| JMJ BLUES TX, LLC | JMJ Centre, LLC | JMJ Development Brasil, LTDA |
| JMJ Development, Inc | JMJ Development Fund | JMJ Development Fund, Inc |
| JMJ EB5 Fund, LP | JMJ EB5 Fund GP, LLC | JMJ Holdings, LLC |
| JMJ Holdings US LLC | JMJ Holdings USA, Inc. | JMJ Home Building Inc. |
| JMJ Hospitality, LLC | JMJ Hospitality General Trading FZE | JMJ Hospitality UAE |
| JMJ Investments Limited | JMJ Land Acquisition, Inc | JMJ Land Development, Inc |
| JMJ Land Venture, LLC | JMJ MF Development, LLC | JMJ Mezzanine, Inc |
| JMJ Multifamily, Inc | JMJ Offshore, LTD | JMJ Regional Center, LLC |

| | | |
|---|---|---|
| JMJ Residential, LLC | JMJ Valley Center, LLC | JMJ VC Management, LLC |
| JMJ148, LLC | JMJAV, LLC | JMJD4, LLC |
| JMJD4Allensville LLC | JMJDWG, LLC | JMJKH, LLC |
| LC Aledo TX, LLC | Lynco Ventures, LLC | Lynn Investments, LLC |
| Lynco Ventures, LLC | Mansion Apartment Homes at Marine Creek, LLC | MCFW, LLC |
| MCRS2019, LLC | Middlebury Trust | MMCYN, LLC |
| MXBA Managed, LLC | MXBA Services, LLC | Myra Park 635, LLC |
| Northstar 114, LLC | Northstar PM, LLC | One Agent, LLC |
| One Agent Texas, LLC | ONE FHC, LLC | One MFD4, LLC |
| One Pass Investments, LLC | One RL Trust | ONE SF Residential, LLC |

| | | |
|---|---|---|
| Residential MF Assets, LLC | Ridgeview Addition, LLC | Riverwalk Invesco, LLC |
| Riverwalk Opportunity Management, LLC | Riverwalk OZFM, LLC | Riverwalk OZFV, LLC |
| Riverwalk QOZBJ, LLC | Riverwalk QOZBM, LLC | Riverwalk QOZBV, LLC |
| Seagoville Farms, LLC | SF Rock Creek, LLC | SK Carnegie, LLC |
| STL Park, LLC | The MXBA Trust | The Timothy L. Barton Irrevocable Life Insurance Trust |
| TLB 2018 Trust | TLB 2019 Trust | TLB 2020 Trust |
| TRWF, LLC | TRWF LODGE, LLC | VenusBK195, LLC |
| VenusPark201, LLC | WRL2019, LLC | 126 Villita Towers, LLC |
| 2999 Acquisitions, LLC | 2999 Middlebury, LLC | 2999 Roxbury, LLC |

| | | |
|---|---|---|
| 2999TC Acquisitions, LLC fka 2999TC, LLC | 2999TC Acquisitions MZ, LLC fka MO 2999TC MZ, LLC | 2999TC Founders, LLC |
| 2999TC JMJ, LLC | 2999TC JMJ, LLC | 2999TC JMJ CMGR, LLC |
| 2999TC JMJ Equity, LLC | 2999TC LP, LLC | 2999TC JMJ MGR, LLC |
| 2999TC MZ, LLC | 2999TC MM, LLC | TC Hall, LLC |
| Titan 2022 Investment, LLC | Marine Creek SP, LLC | Aledo TX, LLC |

**b. Interested Parties**

i. Bank of America, N.A. (Respondent)

ii. Maximilien Barton

iii. Palisades-TC, LLC

iv. Circle H Contractors, LP

v. MFO Venus Development, LLC

**c. Receiver & Amicus**

i. Cortney Thomas

*/s/ Michael J. Edney*
Michael J. Edney
*Counsel for Appellant*
*Timothy Barton*

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Timothy Barton respectfully requests oral argument. This case presents important questions of law concerning the legal test for seizing a defendant's property and handing over its administration to a receiver before any adjudication of liability. The district court held that Government allegations of wrongdoing are enough to impose a prejudgment receiver over all a defendant's property, without any meaningful analysis of whether the receivership is necessary. Addressing factual, procedural, and legal nuances in this case will be aided by the ability to question counsel in person.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES .......... i

STATEMENT REGARDING ORAL ARGUMENT .......... xii

TABLE OF CONTENTS .......... xiii

TABLE OF AUTHORITIES .......... xvi

JURISDICTIONAL STATEMENT .......... 1

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 4

I. The Commission Brings a Contentious Merits Case, Attempting to Convert Defaults on Loan Agreements for a Narrow Purpose into Federal Securities Fraud.. .......... 4

II. The Commission Launches a Slow-Rolling, Two-Year Investigation, Followed by the Snap Government Filing of Civil and Criminal Charges.. .......... 8

SUMMARY OF THE ARGUMENT .......... 14

STANDARD OF REVIEW .......... 17

ARGUMENT AND AUTHORITIES .......... 18

I. The District Court Erred By Seizing Entities and Their Assets That Are Not the Subject Matter of the Litigation.. .......... 18

A. A Receivership Is A Remedy Against Property, Not the Person, and May Extend No Further Than the Property That Is the Subject Matter of the Litigation .......... 19

B. The District Court Made Eight Legal Errors in Determining the Scope of the Receivership .......... 21

1. The District Court Erred in Determining That It Was Sufficient That a Company Benefitted from Lender Funds to Seize It .......... 21

2. The District Court Erred in Determining That Receipt of a Small Amount of Lender Funds Was Sufficient To Seize a Whole Company .......... 25

3. The District Court Erred by Holding That, Once a Company Received Some Assets Traced to Lender Funds, Everything That Company Spent Thereafter Was Lender Funds.....27

4. The District Court Erred By Finding That Temporary Receipt of Alleged Lender Funds Sufficed to Seize an Entire Company and All Its Assets.....30

5. The District Court Erred by Not Demanding That the Commission Use the Wall and Other Entities' Accounting Records, Which Documented the Sources and Uses of the Lender Funds.....32

6. The District Court Erred by Not Requiring Competent Expert Testimony on the Apparently Complex Accounting Issue of Tracing Lender Funds Through Multiple Business Entities.....35

7. The District Court Erred by Accepting Purported Tracing Evidence from the Receiver, Whose Appointment and Seizure of Records Was Illegal.....38

8. The District Court Ultimately Did Not Exercise Any Discretion Over What Assets Should Be Included in the Receivership.....40

C. The District Court's Errors Combined to Improperly Seize Several Significant Entities.....42

D. This Court Should Vacate the Receivership Order with Immediate Effect as to All But the Wall Entities and Those Companies Holding Designated Replacement Projects.....51

II. The District Court Erred By Imposing a New Receivership.....52

A. The District Court Erred in Determining That the Receivership Was Clearly Necessary to Protect an Interest inProperty.....54

B. "Less Drastic Equitable Remedies" Than a Receivership Were Available and Adequate.....61

C. The Benefits of Receivership Have Not Outweighed the Burdens on Affected Parties.....63

III. The District Court Erred by Misinterpreting the Standards for Preliminary Injunction.....65

A. The District Court Misinterpreted and Misapplied the Legal Standard for Ordering a Preliminary Injunction ........................65

B. The District Court Erred in Ordering a Preliminary Injunction Over Assets Not Shown to Be Lender Funds ............................69

IV. The District Court Erred in Failing to Rule on Whether the Loans Are Securities and this Case is Within the Commission's Jurisdiction ........................................................................70

V. The District Court Made Several Errors in Implementing The Receivership ........................................................................77

A. The District Court Should Have Permitted Use of Receivership Estate Resources for the Appellant's Defense ..........................77

B. The District Court Erred by "Blessing" Certain Vacated Receivership Sale Orders and Authorizing the New Receiver to Sell Property ........................................................................79

C. The District Court Erred in Authorizing the Receivership to Sell Assets Instead of Preserving them Pending Resolution of Litigation........................................................................80

D. Each Order Authorizing the Sale Property Was Not in the Interests of the Receivership Estate ......................................80

E. The District Court Erred by Authorizing the Receiver to Spend Estate Resources to Assist the Commission's Investigation .... .....82

VI. This Case Should be Reassigned to a New Judge on Remand.. ....83

CONCLUSION ........................................................................85

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Alicea v. Comm'r of Soc. Sec.*,
855 F. App'x 494 (11th Cir. 2021) ..... 79

*Arruda v. Curves Int'l, Inc.*,
861 F. App'x 831 (5th Cir. 2021) ..... 67

*Atchafalaya Basinkeeper v. U.S. Army Corps of Engineers*,
894 F.3d 692 (5th Cir. 2018) ..... 18

*CFTC v. C & R Fin., Inc.*,
No. 10-CV-706, 2010 U.S. Dist. LEXIS 165291 (S.D. Tex. May 12, 2010) ..... 67

*Cochrane v. W.F. Potts Son & Co.*,
47 F.2d 1026 (5th Cir. 1931) ..... 25

*Cooper Tire & Rubber Co. v. Farese*,
248 F. App'x 555 (5th Cir. 2007) ..... 84

*De Beers Consolidated Mines Ltd. v. United States*,
325 U.S. 212 (1945) ..... 69

*Direct Biologics, LLC. v. McQueen*,
63 F.4th 1015 (5th Cir. 2023) ..... 68

*Federal Sav. & Loan Ins. Corp. v. Dixon*,
835 F.2d 554 (5th Cir. 1987) ..... 78

*SEC v. First Financial Group of Texas*,
645 F.2d 429 (5th Cir. 1981) ..... 65, 67

*GBJ Corp. v. Sequa Corp.*,
804 F. Supp. 564 (S.D.N.Y. 1992) ..... 70

*In re DaimlerChrysler Corp.*,
294 F.3d 697 (5th Cir. 2002) .......... 83, 84

*In re Fredeman Litig.*,
843 F.2d. 821 (5th Cir. 1988) .......... 24, 69, 70

*In re Living Benefits Asset Mgmt., LLC*,
916 F.3d 528 (5th Cir. 2019) .......... 76

*In re Nat'l Gypsum Co.*,
208 F.3d 498 (5th Cir. 2000) .......... 60

*In re Recile*,
496 F.2d 675 (5th Cir. 1974) .......... 79

*In re TikTok, Inc.*,
85 F.4th 352 (5th Cir. 2023) .......... 17

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .......... 17, 18

*Janvey v. Adams*,
588 F.3d 831 (5th Cir. 2009) .......... 50

*Johnson v. Sawyer*,
120 F.3d 1307 (5th Cir. 1997) .......... 83

*Kagan v. New Orleans*,
753 F.3d 560 (5th Cir. 2014) .......... 26

*Kirschner v. JP Morgan Chase Bank, N.A.*,
79 F.4th 290 (2d Cir. 2023) .......... 71, 72, 73, 75

*Local 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
810 F.3d 951 (5th Cir. 2016) .......... 66

*Los Angeles Tr. Deed & Mortg. Exch. v. SEC*,
285 F.2d 162 (9th Cir. 1960) .......... 80

*Matthews v. Stolier*,
207 F. Supp. 3d 678 (E.D. La. 2016) .......... 73, 74

*Miller v. Sam Houston State Univ.*,
986 F.3d 880 (5th Cir. 2021) .......... 84

*Mishkin v. Peat, Marwick, Mitchell & Co.*,
744 F. Supp. 531 (S.D.N.Y. 1990) .......... 70

*Netsphere, Inc. v. Baron*,
703 F.3d 296 (5th Cir. 2012) .......... *passim*

*Perez v. San Antonio*,
98 F.4th 586 (5th Cir. 2024) .......... 61

*Pickett v. Texas Tech Univ. Health Scis. Ctr.*,
37 F.4th 1013 (5th Cir. 2022) .......... 1

*Pulse Network, LLC v. Visa, Inc.*,
30 F.4th 480 (5th Cir. 2022) .......... 84, 85

*Reves v. Ernst & Young*,
494 U.S. 56 (1990) .......... 71, 72, 73, 74

*Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*,
140 S. Ct. 696 (2020) .......... 1

*SEC v. AmeriFirst Funding, Inc., Civil Action*,
2007 U.S. Dist. LEXIS 55479 (N.D. Tex. July 31, 2007) .......... 67

*SEC v. Barton*,
79 F.4th 573 (5th Cir. 2023) .......... *passim*

*SEC v. Cont'l Commodities Corp.*,
497 F.2d 516 (5th Cir. 1974) .......... 76

*SEC v. Current Fin. Servs., Inc.*,
783 F. Supp. 1441 (D.D.C. 1992) .......... 80

*SEC v. Savoy Industries, Inc.*,
587 F.2d 1149 (D.C. Cir. 1978) .......... 67

*SEC v. Spence & Green Chem. Co.*,
612 F.2d 896 (5th Cir. 1980) .......... 58

*SEC v. Stanford Int'l Bank, Ltd.*,
927 F.3d 830 (5th Cir. 2019) .......... 54

*SEC v. Zale Corp.*,
650 F.2d 718 (5th Cir. 1981) .......... 67

*Shiny Investments, LLC v. Zeoli*,
No. 1-20-1353, 2021 WL 5906043 (Ill. Ct. App. Dec. 14, 2021) .......... 73

*Teague v. Attala Cnty.*,
17 F.3d 796 (5th Cir. 1994) .......... 34

*United Housing Foundation, Inc. v. Forman*,
421 U.S. 837 (1975) .......... 77

*United States v. "A" Mfg. Co.*,
541 F.2d 504 (5th Cir. 1976) .......... 1

*United States v. Davis*,
53 F.4th 833 (5th Cir. 2022) .......... 36

*United States v. Jennings*,
724 F.2d 436 (5th Cir. 1984) .......... 37

*United States v. Khan*,
997 F.3d 242 (5th Cir. 2021) .......... 83, 85

*United States v. Lee*,
248 F.3d 449 (5th Cir. 2011) .......... 50

*United States v. Michelle's Lounge*,
126 F.3d 1006 (7th Cir. 1997) .......... 78

*United States v. Robinson*,
741 F.3d 588 (5th Cir. 2014) .......... 41

*United States v. Runyan*,
275 F.3d 449 (5th Cir. 2001) .......... 39

*United States v. Yanez Sosa*,
513 F.3d 194 (5th Cir. 2008) .......... 35

*Watkins v. Telsmith, Inc.*,
121 F.3d 984 (5th Cir. 1997) .......... 37

*Wolf Designs, Inc. v. Donald McEvoy Ltd., Inc.*,
341 F. Supp. 2d 639 (N.D. Tex. 2004) .......... 62, 63

*Wolfe v. Bellos, No. 3:11-CV-0*,
2015-L, 2012 WL 652090 (N.D. Tex. Feb. 28, 2012) .......... 77

*Wu v. Passive Wealth Builders, LLC*,
2024 WL 1445101 (W.D. Tenn. Apr. 3, 2024) .......... 72

**Statutes**

28 U.S.C. § 1292 .......... 1

15 U.S.C. § 77a .......... 71

15 U.S.C. § 78a .......... 71

## JURISDICTIONAL STATEMENT

This Court has immediate appellate jurisdiction over the District Court's order appointing a receiver and ordering a preliminary injunction. 28 U.S.C. § 1292(a)(1) & (2). This Court also has jurisdiction over the Court's orders purporting to bless a series of actions by the previous illegally appointed receiver and authorizing the receiver to sell property. *Roman Cath. Archdiocese of San Juan v. Acevedo Feliciano*, 140 S. Ct. 696, 700–01 (2020); *United States v. "A" Mfg. Co.*, 541 F.2d 504, 506 (5th Cir. 1976). In addition, the orders under appeal are inextricably intertwined with the District Court's orders appointing a receiver and issuing a preliminary injunction, such that this Court may exercise pendent jurisdiction them. *See Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022).

## STATEMENT OF THE ISSUES

1. Did the District Court err in employing several flawed legal principles to determine the scope of receivership and to justify the seizure of whole companies as representing property that is the subject matter of the litigation?
2. Did the District Court err in concluding a sweeping receivership was necessary, that no less drastic measures were adequate, and that its benefits outweighed its serious harms?
3. Did the District Court err by issuing a preliminary injunction freezing assets that were not identified as lender funds?
4. Did the District Court err by completely failing to address whether the loans at issue in this matter are securities over which the Commission has jurisdiction?
5. In the event this Court upholds all or a portion of the receivership order, which it should not:
   a. Did the District Court err in not making funds available from the receivership estate to pay for the Appellant's civil and criminal defense?

b. Did the District Court err in determining that it could ratify the actions and orders authorizing sale by the first receiver in this matter, whose appointment this Court vacated?

c. Did the District Court err in repeatedly authorizing the Receiver to permanently change the status quo of real property assets, including the Appellant's only home, through sale rather than preserving them in place pending final judgment?

d. Did the District Court err in determining several property sales were in the best interest of the receivership estate?

e. Did the District Court err by orienting the Receiver towards spending estate funds on assisting the Commission in investigating the Defendant, rather than preserving and advancing the real estate assets?

6. Should this Court replace the District Judge on remand, given his dogged unwillingness to apply the appropriate legal standards?

## STATEMENT OF THE CASE

This Court reversed the District Court's order accepting the Government's prior request for a receivership over all Mr. Barton's assets. On remand, the Commission (and remarkably, the Receiver seeking to perpetuate his lucrative engagement) effectively sought the same thing. The District Court made numerous legal errors in granting that request.

### I. The Commission Brings a Contentious Merits Case, Attempting to Convert Defaults on Loan Agreements for a Narrow Purpose into Federal Securities Fraud.

Appellant Timothy Barton founded JMJ Development in 1990, focused on transforming underutilized land into single family homes, apartments, and hotels. Well before and after receipt by certain companies of the loans at issue in this case, JMJ Development was engaged in major, revenue-producing projects. *See, e.g.* **ROA.11672-76**.

In 2017, co-defendants Stephen Wall and Haoqiang Fu approached Mr. Barton and asked him to undertake the development work for several pieces of land. For each tract, a special purpose entity, named after Mr. Wall, was established. The Commission calls these the Wall Entities. **ROA.62-63**.

Through his company, Mr. Fu agreed to loan each project a certain amount of money to do just that. Mr. Fu then split each master loan between several Chinese nationals with whom he had worked with in the past.

In exchange for lending the funds, the co-lenders were entitled to a fixed rate of interest, with that interest and the principal to be paid back within one to two years. **ROA.452 at 8-14**. That schedule matched the purpose of the loan: To fund property acquisition and development to the point where construction financing for the homes and infrastructure would repay the loan. **ROA.453 at 1-5**.

With respect to each project identified and the particular short-term loan associated with it, the corporate entity in question took substantial steps to advance that project. In some cases, the projects succeeded: The property proved feasible for residential development, key government approvals were obtained, and the Wall Entity executed on the contracted option to buy the land and to progress it further in the development process. In other cases, despite the Wall Entity having invested significant sums in attempting to obtain approvals or to

engineer the property for residential housing, the project encountered insurmountable difficulties, including homeowner objections and zoning issues. **ROA.454 at 18-25**. In nearly every case, the primary lender, Mr. Fu's company, did not deliver the amount budgeted for completing the project to construction financing. **ROA.11594 at 1-13**.

When projects encountered difficulties, the Wall corporate entity in question consulted with Mr. Fu, whose corporate entity was the designated agent of each co-lender. **ROA.11664**. It offered to return the funds in question. But Mr. Fu insisted that the funds be put to work in replacement development projects in the United States, rather than returned to the China-based accounts from which much of the loans were funded. **ROA.11595-96**. When alternative projects and uses were pursued, the Wall Entities loaned the money to their managing member—Carnegie Development, LLC—which in turn loaned funds to entities pursuing the alternative projects. **ROA.445 at 13-21**. These intercompany loans were contemporaneously documented in the books and records of the Wall Entities and Carnegie Development. **ROA.10248; ROA.11610; ROA.11611, 11635**.

Initially, the Wall Entities made some of the annual interest payments back to the accounts in China from which the loans were funded. Later, Mr. Fu rejected payments to those China-based accounts. *Id.* Instead, Mr. Fu demanded the payments be made to U.S.-based accounts of his choosing and under his control. This demand set off anti-money laundering compliance alarm bells. JMJ Development in real time hired a firm to report Mr. Fu's demands to redirect the funds to U.S. law enforcement.

Principal and interest repayments ceased, given Mr. Fu's problematic demands. Mr. Fu's company sued the Wall Entities and JMJ Development and, for some of them, sought to drive them into involuntary bankruptcy proceedings, complaining about the failure to repay the loans to the destinations Mr. Fu desired. The civil courts all entered judgments against the claims of Mr. Fu's company. Most notably, one court gave the Chinese-national lenders a lengthy opportunity to appear in the proceedings, as a party or as witness, to document their wishes for use of the funds. None of them did. And to this day, the Government has not brought a single one of the Chinese

national lenders to bear in the case, either as a declarant, a witness, or otherwise.

## II. The Commission Launches a Slow-Rolling, Two-Year Investigation, Followed by the Snap Government Filing of Civil and Criminal Charges.

The Commission opened an investigation into the Chinese loans on October 8, 2020. **ROA.631**. In the course of that investigation, Mr. Barton voluntarily sat for two, day-long transcribed interviews with Commission staff. **ROA.11591-605**. Mr. Barton also produced tens of thousands of pages of bank records and business documents demanded by the Commission. And the Commission obtained tens of thousands more by administrative subpoena.

After two years of episodic investigative activities, the Commission secretly coordinated with the U.S. Department of Justice to launch a shock-and-awe parallel civil proceeding and criminal prosecution. On September 23, 2022, the Commission filed a civil suit against Mr. Barton in the U.S. District Court for the Northern District of Texas. **ROA.62**. The suit alleged that Messrs. Barton, Fu, and Wall committed securities fraud in connection with the Wall Entities procuring the short-term loans. **ROA.63-64**. It claimed that the loan proceeds were used in ways

not contemplated by the underlying loan agreements. **ROA.85-86**. The suit did not allege with any specificity that the Defendant did not intend to use the proceeds for the contemplated purpose when the loan agreements were entered into. On the same day the Commission filed suit, the Department of Justice moved to unseal an indictment making identical allegations against Mr. Barton.

The next business day, the Commission moved for the District Court to establish a receivership over any company owned or controlled by Mr. Barton. **ROA.156**. Without a hearing, the District Court granted the Commission's receivership motion ("Initial Receivership Order"). **ROA.642**. The order had the effect of stripping the Defendant of all his assets, including his own home. The Receiver—as his first order of business—put Mr. Barton out on the street, homeless.

This Court reversed the receivership order. *SEC v. Barton*, 79 F.4th 573 (5th Cir. 2023). The Court held that the District Court imposed the receivership without regard for this Court's stringent test for doing so, established in *Netsphere, Inc. v. Baron*, 703 F.3d 296 (5th Cir. 2012). And this Court underscored, as it had in the past, the "drastic" and

"extraordinary" nature of seizing a defendant's assets before discovery, before trial, and before a final judgment of liability. *Id.* at 306; *Barton*, 79 F.4th at 578-79. The Court found an independent error in what the District Court chose to seize, making clear that a necessary precondition to placing any asset into receivership is that it be "the property that is the subject matter of the litigation." *Barton*, 79 F.4th at 580.

On remand, the Commission moved for the District Court to impose a new receivership over most entities previously held in the vacated receivership and to order a preliminary injunction over the others. **ROA10414**. The Commission did little to remedy the shortcomings identified by this Court. Instead, the Commission supplemented the 2022 declaration of its "Staff Accountant," Carol Hahn, later revealed to be not a licensed accountant. **ROA.15388**. That consisted of a chart with a line or two of information purporting to trace lender funds into only around two dozen of the many entities that the Commission sought to seize. **ROA10482-87**.

The District Court also solicited the Receiver to make a submission, in which he strenuously advocated for his continued retention and for

more entities in the new receivership. **ROA.10235-413**. To his submission, the Receiver attached a series of unattributed tracing examples.

Mr. Barton opposed. His opposition included an expert declaration from long-time forensic auditor and Certified Public Accountant, Gregory Ginn, demonstrating that the Commission had not shown that the companies to be seized possessed lender funds and had deviated from well-accepted accounting principles for tracing funds. **ROA.11609**.

On October 11, 2023, the District Court held its only hearing on the Commission's new receivership request. **ROA.15267**. From the beginning, the District Court showed it intended to achieve the same outcome as before, observing "we are back here in a remand posture because I used the wrong legal standard at the outset." **ROA.15274**. The hearing lasted three hours and thirty-eight minutes. **ROA.15267, 15457**.

The Commission presented the testimony of its staff accountant. She was cross-examined on whether her analysis assumed that everything spent by Mr. Barton's operating entity—JMJ Development—

was tainted. **ROA.15394-400**. She would not admit to any methodology for distinguishing funds in JMJ accounts received from sources other than alleged lender funds. ***Id***. She also disclaimed her declaration or testimony being expert testimony. **ROA.15388, ROA.15396**. She affirmed that the Commission did not yet know whether the companies, other than the about 25 into which she had attempted to trace lender funds, possessed any such funds. **ROA.15390-93**. She also conceded that the Commission had in its possession for years access to corporate bank records and had several opportunities to ask the Defendant about them in his voluntary interviews. **ROA.15400-02.**

The Commission also surfaced, for the first time, the name and credentials of an accountant that had been working for the Receiver. **ROA.15355-57.** It was hard to understand why he was there. Far from validating the unattributed "tracing examples" in the Receiver's submission seeking to keep his job, the accountant disclaimed knowledge of any the details, saying he would have to ask his staff. **ROA.15363-64**.

On the day this Court's vacatur of the prior receivership was to take effect, the District Court granted the Commission's full request, almost without exception.

With respect to the scope of the receivership, the District Court repeatedly held that it was under instructions from this Court—once it decided that any receivership was warranted—to include any entity that had received any lender funds or was benefitted in any way by lender funds, no matter the magnitude. **ROA.14778-91.** In so holding, the District Court disclaimed discretion over the receivership's scope.

The District Court excluded from the receivership several entities associated with Mr. Barton. But it did so only because these entities had no assets. **ROA.14790-91**. They instead were corporate formalities, established to act as "the managing member" of or to hold "an ownership interest" or "to hold an ultimate beneficial interest in" entities that held assets. *Id.* Even over these, the District Court draped a preliminary injunction, freezing whatever assets they might have. **ROA.14791**.

Prior to the new receivership order, the old receiver was already measuring for the drapes in his new office and asked the Court to

retroactively "bless" certain of its orders, notwithstanding their being legally and functionally undone by this Court's vacatur order. **ROA.13803-22**. The District Court granted that motion, replacing his prior orders in the illegal receivership *nunc pro tunc*. Worse yet, the District Court retroactively reapproved three orders approving the sales of properties owned and held by Barton-related entities. **ROA.15098-99**; **ROA.15100-03; ROA.13816**; **ROA.14835, ROA.14844**. These included the proposed sales of a hotel, Amerigold Suites, a large mixed-used development property, Frisco Gate, and Mr. Barton's family home. ***Id.***

The District Court reanimated these vacated orders without fully considering new information on why or why not these transactions were beneficial (or harmful) to the receivership estate, including market factors that had shifted significantly since the orders were first approved by the District Court.

## SUMMARY OF THE ARGUMENT

This Court reversed the District Court's prior receivership order seizing all the Defendant's assets. On remand, the District Court effected the same result. Along the way, it erred regarding the content of this

Court's legal standards providing guardrails on the "drastic" receivership remedy, crucial for preventing Government overreach. *Netsphere*, 704 F.3d at 305.

**I.** The District Court made no fewer than eight legal errors that permeated its decision about which companies to include in the receivership estate. Those errors caused absurd results, including the seizure of apartment buildings worth tens of millions of dollars, based on tens of thousands of dollars of temporary transfers erroneously ascribed to lender funds and other soft benefits. The District Court erroneously held it had no discretion to weigh the magnitude of these contributions, allowing small bits of alleged funds to taint large pools of assets. The Receiver and Commission's objective to take everything of value—and to leave the Appellant without resources to defend against the Government's allegations—was accomplished through these errors.

**II.** The District Court also erred in determining that the receivership was necessary and the least restrictive remedy for protecting any property interest here. In doing so, the District Court made legal errors about the required gravity and imminence of a future

threat to property and by bypassing less intrusive remedies that would have monitored sales and expenditures, while allowing the real estate assets to mature.

**III.** The District Court went further, to enter a preliminary injunction freezing assets not identified as lender funds. That is error under this Court's precedents. In doing so, the District Court erroneously did not find that the freeze was necessary to prevent irreparable harm or was in the public interest or consistent with the balance of the equities.

**IV.** The Chinese-national lender loans at issue in this case are not securities, and the District Court erred by not addressing the issue and determining its and the Commission's jurisdiction. The loans are short-term, small business loans—to bridge particular real estate projects from purchase to construction financing—with fixed returns not dependent on the success of the companies. The federal securities law did not nationalize every dispute over a unpaid loan, whether fraud is alleged or not.

**V.** This Court should reverse the receivership order. But if any part of it stands, the District Court made multiple errors in implementing

it. The District Court should have carved out assets for funding the Appellant's civil and criminal defense. It should not have retroactively blessed the actions of the illegally-appointed, vacated receiver or the orders authorizing them. And it should not have authorized the Receiver to permanently change the status quo of real property, prior to final judgment, through sales, among other mistakes.

**VI.** The District Court has now twice made serious errors in the content and the application to fact of this Court's receivership principles, while consistently expressing a distaste for the Defendant. The case has reached the point where this Court should exercise its discretion to remand this matter to another District Judge.

## STANDARD OF REVIEW

This Court reviews a District Court's appointment and actions supervising a receiver for abuse of discretion. *Barton*, 79 F.4th at 577 (citing *Netsphere*, 703 F.3d at 305). But "a court's exercise of its discretion is not unbounded; that is, a court must exercise its discretion within the bounds set by relevant statutes and relevant, binding precedents." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310 (5th Cir. 2008). And the level of this Court's review depends on context. *See In re*

*TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023). Here, the review of the District Court's exercise of discretion is particularly searching, because it ordered the "drastic" remedy of a receivership, reserved only for "extraordinary" circumstances. *Netsphere*, 703 F.3d at 305. A preliminary injunction also is an "extraordinary" remedy, and this Court's review of it is similarly intense to ensure its circumstances meet the high bar for that relief. *See Atchafalaya Basinkeeper v. United States Army Corps of Engineers*, 894 F.3d 692, 696 (5th Cir. 2018).

In any event, under any circumstances, "a district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 310.

## ARGUMENT AND AUTHORITIES

### I. The District Court Erred By Seizing Entities and Their Assets That Are Not the Subject Matter of the Litigation.

The Commission is living the dream of any civil plaintiff. Before proving its allegations of wrongdoing or even subjecting itself to discovery regarding the evidence behind its allegations, it was able to seize all of its opponent's assets. In the normal course of events, this would be both

the beginning and the end of a complex civil case. The Defendant is left with no resources to defend against the allegations. The Plaintiff—in this case, an agency of the United States Government—has a more than $2 billion annual budget to prosecute the case.

One of the only safeguards against that unfair outcome, consistent with the sequence and fundamental principles of our justice system, is this Court's insistence that such pre-judgment seizures—whether through a receivership or otherwise—be limited to the property that is the subject matter of the litigation.

The District Court did not police this safeguard in any meaningful way. As set forth below, the District Court found a way to seize all the Defendant's assets—again. In the course of doing so, the District Court made no fewer than eight legal errors. This Court should reverse.

### A. A Receivership Is A Remedy Against Property, Not the Person, and May Extend No Further Than the Property That Is the Subject Matter of the Litigation.

As this Court has repeatedly made clear, a pre-judgment receivership is not a remedy *in personam*. It is thus not enough to allege that an individual defendant has misbehaved, committed torts, or violated laws and then seize his property prior to judgment. Instead, a

receivership is a remedy *in rem*, against property. Thus, if property is alleged to have been unlawfully acquired—and if a series of serious thresholds are shown (as they also were not, *see infra* Section II)—a receivership may be created over that property.

The questions then become: What is the subject property? Where is it? And what do the answers to those questions mean for the scope of the receivership remedy?

When it first sought a receivership, at the beginning of this case, the Commission did not even try to answer these questions, nor did the District Court demand answers. This Court correctly reversed, given the absence of any inquiry as to what was being seized. *See Barton*, 79 F.4th 581 (5th Cir. 2023).

In the second receivership, the Commission tried to answer these questions, and the District Court purported to require answers. But they got all of these questions wrong, in a manner pervaded by legal error.

In that regard, this Court should not indulge the District Court's suggestion—presumably to be reinforced by the Commission's forthcoming brief—that it was somehow discerning or picky in what

companies to seize. The District Court seized more entities and assets than even the Commission asked for, including the Defendant's only home. To do so, it used the assertions of the original, illegally-appointed receiver to seize 54 entities. It left 28 entities out of the receivership, but largely on grounds that the Receiver alleged and the District Court found the entities were only managing members and did not claim that they owned any assets themselves. **ROA.10302-06**; **ROA.14790-91**.

### B. The District Court Made Eight Legal Errors in Determining the Scope of the Receivership.

#### 1. The District Court Erred in Determining That It Was Sufficient That a Company Benefitted from Lender Funds to Seize It.

Throughout its analysis, the District Court seized entire entities because they allegedly benefitted from lender funds. In many cases, these benefits, if any, were slight. In one example, the District Court embraced a receiver argument to seize an entity responsible for building apartment buildings costing tens of millions drawn from government and third-party financing to build, and worth tens of millions more. The reason: The Defendant's real estate development company, which allegedly received lender funds, paid an employee's salary and provided

him a place to work, and the employee filled out paperwork for the apartment company's third party financing. **ROA.14785**.

The District Court took solace in this Court's decision in the first *Barton* case. There, the Court explained that "the district court abused its discretion by including all Barton-controlled entities in the receivership without first finding that they had received or benefitted from the ill-gotten funds." 79 F.4th at 580. The Court went on to say that "[s]hould the district court decide that a new receivership is justified on remand, it can only extend over [those] entities that received or benefitted from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation." *Id.* at 580-81.

What this Court was describing were the many things that the Commission did not show, and the District Court did not demand, in seizing assets through the receivership. *See, e.g.*, *id.* at 580. In detailing the District Court's complete absence of analysis, this Court was not addressing what connection to lender funds would suffice for placing assets into the receivership.

That question is presented now. And this Court should reject the District Court's legal holding that, once a corporation or other business entity has benefitted in some way from lender funds (even if the entity does not possess those funds), it is subject to seizure in full through a receivership. **ROA.14778**.

The "benefitted from" subject property standard is unknown to the law of receiverships, mentioned for the first time in this Court's description of what the Commission had not shown in this case. To be clear, the concept of having "benefitted" from subject property as a ground for seizure had never before appeared in this Court's cases regarding the assets over which a receivership can be imposed, or in those of any other federal court.

Instead, when analyzing the issue, this Court and others repeatedly have emphasized that receiverships are not for pre-securing consequential damages or for eventual disgorgement of ill-gotten gains. Disgorgement, penalties, and other damages are post-judgment remedies, for potential use *after* the Government has proven liability. This Court has been clear: Receiverships cannot be used to secure "assets

needed to satisfy a future money judgment," as such measures are "beyond the court's jurisdiction." *Netsphere*, 703 F.3d at 307; *In re Fredeman Litig.*, 843 F.2d. 821, 824 (5th Cir. 1988).

By attempting to reach beyond the property at issue—the principal of the lender funds—to seize whole corporate entities the property might have marginally benefitted, the District Court was no longer imposing a remedy on the property. It was frontrunning future Commission claims of disgorgement of profits or other monetary damages, in a manner that likely would dramatically outstrip the implementation of even those remedies at final judgment. That is improper.

The District Court's legal rule—that even a marginal benefit from lender funds is enough to seize a whole corporate entity and all its assets—is a recipe for the Government avoiding any adversarial testing of its allegations of wrongdoing. It is an infinitely flexible standard poised to allow the Government to seize all a defendant's assets, unfairly stripping him of the resources to contest the Government's allegations.

### 2. The District Court Erred in Determining That Receipt of a Small Amount of Lender Funds Was Sufficient To Seize a Whole Company.

The District Court also held that, as a matter of law, receipt of a small amount of lender funds justified seizure of an entire company and all its assets. That legal ruling is error.

This and other courts have been clear that, because a receivership is a remedy *in rem*, it may seize the assets of an entity *only to the extent it possesses the property in question*. *See Netsphere*, 703 F.3d at 310 ("[T]he jurisdictional principle that a court's equitable powers do not extend to property unrelated to the underlying litigation applies with equal force to receiverships."); *Cochrane v. W.F. Potts Son & Co.*, 47 F.2d 1026, 1029 (5th Cir. 1931). That a corporate entity received tens of thousands of dollars that represent lender funds does not allow the Government to seize a company with tens of millions of dollars of net assets. This approach would convert receivership from the limited equitable remedy directed at a defined amount of property into a measure to secure assets beyond that property for use in satisfying a potential future judgment against the entity's owners. That, as this Court has repeatedly held, is forbidden. *See Netsphere*, 703 F.3d at 305.

This limitation on the scope of receiverships dovetails with this Court's mandate that receiverships not be imposed unless "less drastic measures are inadequate" to secure the only property at which a receivership is properly directed. *Netsphere*, 703 F.3d at 305. As explained below, this prong of *Netsphere* echoes the least restrictive means test of strict constitutional scrutiny, which in turn requires the remedy to be "narrowly tailored." *See Kagan v. New Orleans*, 753 F.3d 560, 562 (5th Cir. 2014). Taking an entire company to secure a relatively small amount of subject property is the farthest thing from "narrow tailoring." And securing this quantum of property can be accomplished by numerous less restrictive means, such as by identifying and demanding the funds that should be returned, by filing a lien for that amount, or through a claim if proven and necessary.

The District Court, on numerous occasions, relied on evidence of a relatively small receipt of lender funds—oftentimes, when whether those funds were lender funds was a subject of intense contention—to seize entire businesses. **ROA.14783-86**. Many of these businesses had assets that were purchased before any corporations associated with the

Defendant had received a dime of lender funds. **ROA.14565-66**. Others had substantial sources of third party funding that had absolutely nothing to do with the lender funds at issue. **ROA.14566**.

### 3. The District Court Erred by Holding That, Once a Company Received Some Assets Traced to Lender Funds, Everything That Company Spent Thereafter Was Lender Funds.

One of the most significant drivers of seizing companies below was the following assumption: Once a company had received some lender funds (no matter the amount of those lender funds or their proportion in comparison to the company's other assets), everything that company spent thereafter was considered lender funds. That led the District Court to compound error upon error: Once an operating entity arguably received lender funds, if it made a payment to or to help a third entity or one of its employees spent time helping a third entity, the District Court found that sufficient to seize that third entity.

In so holding, the District Court heartily embraced the "commingling" refrain sung by the Commission from the beginning of this case: That once a little bit of money hit a company's books, it was impossible to distinguish from its other funds, and the Commission was