J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
FORSHEY PROSTOK, LLP
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**Counsel for Lumar Land & Cattle, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

**LUMAR LAND & CATTLE, LLC'S MOTION TO ENFORCE SETTLEMENT AND TO DISSOLVE AND EXPUNGE SECOND LIS PENDENS FILED BY TIMOTHY BARTON**

COMES NOW Lumar Land & Cattle, LLC ("Lumar") and files this *Motion to Enforce Settlement and to Dissolve and Expunge Second Lis Pendens filed by Timothy Barton* ("Motion").[1]

## I. Introduction

[1] This Motion is filed both in the above adversary proceeding and in the main bankruptcy case.

1. The above adversary proceeding arose out of an attempt by the Debtor, BM318, LLC ("BM318"), to avoid a conveyance of land through a deed in lieu of foreclosure. A receiver was appointed for BM318 in a lawsuit filed by the Securities and Exchange Commission (SEC). The receiver then settled the adversary proceeding. An objection to the settlement was filed by Timothy Barton ("Barton") an officer and alleged ultimate equity owner of BM318. The Court overruled Barton's objection. The settlement has been fully consummated and BM318's avoidance action has been dismissed with prejudice. The net effect of the settlement was to preclude and release any potential claim which BM318 might assert against the land which was the subject of the avoidance action.

2. Barton, however, was not content to accept the Court's ruling. Months after the settlement was approved, ignoring the Court's orders dismissing with prejudice BM318's claims to any interest in the land, Barton struck back. Purporting to act on behalf of BM318, Barton filed a second lis pendens against the land based on his appeal of the Dallas district court's order appointing the receiver in the SEC lawsuit.

3. The filing of this lis pendens is directly contrary to, and in violation of, this Court's orders approving and implementing the settlement which, in effect, preclude BM318 from ever asserting any interest in the land.

4. This Motion seeks to enforce this Court's orders and judgment on the settlement to dissolve and expunge the lis pendens filed by Barton.

## II. Factual Background

5. BM318 purchased a tract of land from The Dixon Water Foundation ("Foundation") consisting of approximately 2,055 acres ("Original Tract") located in Parker County, Texas. The sale was owner-financed by the Foundation. BM318 defaulted on the repayment of the debt to the Foundation and eventually conveyed portions of the Original Tract back to the Foundation pursuant to a deed in lieu of foreclosure. Shortly thereafter, BM318 commenced this bankruptcy case on September 1, 2020.

6. The Foundation then sold a 204-acre tract ("Lumar Land") out of the Original Tract to Lumar. A copy of the deed from the Foundation to Lumar, and which describes the Lumar Land, is attached as **Exhibit "A"**.

7. After the 204 acres were sold to Lumar, BM318 commenced the following adversary proceeding against the Foundation: *BM318, LLC v. The Dixon Water Foundation, Adv. No. 21-04051-mxm-11 in the United States Bankruptcy Court for the Northern District of Texas* ("Adversary Proceeding"). In the Adversary Proceeding, BM318 sought to avoid the conveyance of the Original Tract to the Foundation pursuant to the deed in lieu of foreclosure. Based on the Adversary Proceeding, BM318 then filed a Notice of Lis Pendens ("First Lis Pendens") in the real estate records of Parker County, Texas, relating to the Original Tract. BM318's avoidance claims through the Adversary Proceeding represent BM318's only asserted right, title, or interest in either the Original Tract or to the Lumar Tract as a part of the Original Tract.

8. Because the First Lis Pendens also burdened the Lumar Land, Lumar intervened in the Adversary Proceeding to protect its rights in the Lumar Land and to remove the First Lis Pendens.

9. The Securities Exchange Commission (SEC) commenced a lawsuit ("SEC Lawsuit") in federal district court in Dallas against Barton.[2] Through the SEC Lawsuit, Cortney Thomas ("Receiver") was appointed as the receiver for Barton and for certain related entities. One of these related entities is BM318. Barton has appealed the order ("Receiver Order") appointing the Receiver. This appeal is now pending before the Fifth Circuit. However, Barton did not obtain a stay pending appeal of the Receiver Order.

10. Eventually, a settlement of the Adversary Proceeding was reached among BM318 (acting through the Receiver), the Foundation, and Lumar. There were separate settlement

[2] This lawsuit is styled as follows: *Securities and Exchange Commission v. Timothy Barton, et al*., Case No. C.A. No. 3:22-cv-2118 in the United States District Court for the Northern District of Texas, Dallas Division.

agreements between the Receiver and each of Lumar and the Foundation. These settlements were approved by this Court pursuant to two separate orders [BK Docket Nos. 163 and 164] (collectively, the "Settlement Orders") entered on May 28, 2024. The order filed at Docket No. 163 approves the Foundation's settlement, and the order filed at Docket No. 164 approves Lumar's settlement. Both Settlement Orders have long since become final for all purposes. The Court retained jurisdiction to enforce and construe both Settlement Orders.

11. As a part of the settlement, BM318 released the First Lis Pendens and the Adversary Proceeding was dismissed with prejudice. A single Final Agreed Judgment [Adv. Docket No. 142] ("Final Judgment") was entered in the Adversary Proceeding pursuant to the Settlement Orders dismissing with prejudice BM318's avoidance claims against both the Foundation and Lumar. While Barton has filed an appeal as to the Final Judgment,[3] he has neither sought nor obtained a stay pending appeal as to the Final Judgment. A copy of the Final Judgment is attached as **Exhibit "B."** The Final Judgment provides that the First Lis Pendens is dissolved and approves the form of the releases in favor of Lumar ("Lumar Release") and the Foundation. This Court also retained jurisdiction to both enforce and construe the Final Judgment.

12. Based on this settlement, BM318 (through the Receiver) released the First Lis Pendens. A copy of the Lumar Release executed by BM318 (through the Receiver) in favor of Lumar is attached as **Exhibit "C"**. The Lumar Release releases not only the First Lis Pendens but all rights, title, interests, or claims which BM318 has or claims against the Lumar Land. As noted above, the form of the Lumar Release was approved in the Judgment.

13. Based on the settlement, BM318 has no right, title, or interest in either the Original Tract or the Lumar Land as a part thereof. Indeed, the terms of the Settlement Orders and the

---

[3] Although Barton failed to appeal either of the Settlement Orders, both of which have long since become final, Barton has filed an appeal on the Final Judgment in the following case: *Timothy Barton v. Dixon Water Foundation, et a*l., Civ. Act. No.: 4:24-cv-863-P in the United States District Court for the Northern District of Texas, Fort Worth Division.

Final Judgment preclude BM318 from asserting any right, title, or interest in the land.

## III. Barton Strikes Back

14. Barton was the alleged manager/president and indirect equity owner of BM318. Barton appeared through counsel at the hearing to approve the settlements and opposed their approval. Barton's objection was overruled by the Bankruptcy Court pursuant to an oral ruling from the bench on May 22, 2024 [Docket no. 162].

15. Still hoping to strike back against the Foundation and Lumar, on September 10, 2024, Barton, again acting pro se, filed a second lis pendens ("Second Lis Pendens") in the real estate records of Parker County, Texas as Document 202423549. A copy of the Second Lis Pendens is attached as **Exhibit "D."** The Second Lis Pendens purports to cover the Original Tract (of which the Lumar Land is a part) and which was the subject of the Adversary Proceeding. In the Second Lis Pendens, Barton purports to act as a "Manager and President of BM318, LLC on behalf of such entity."

16. The Second Lis Pendens is nothing more than a blatant and improper attempt by Barton to circumvent the Settlement Orders and the Final Judgment. The Second Lis Pendens states that it is based on Barton's challenge to the appointment of the Receiver in the SEC Lawsuit, including the effect of the Receivership Order on BM318. However, the title to the Original Tract (or the Lumar Land as a part of this larger parcel) is not an issue in either the SEC Lawsuit or the appeal to the Fifth Circuit. Whatever the result is of Barton's appeal to the Fifth Circuit, the Settlement Orders and the Final Judgment will be effective to preclude BM318 from ever asserting any interest in the land.

17. However, in executing the Second Lis Pendens, Barton purports to act on behalf of BM318 in a manner inconsistent with the terms of the Settlement Orders, the Final Judgment, and the and Lumar Release. Moreover, under the terms of the Receiver Order, Barton has no power to act on behalf of BM318.

## IV. Motion to Dissolve and Expunge the Second Lis Pendens

### A. The Court has exclusive in rem jurisdiction over the settlement.

18. This Court had exclusive *in rem* jurisdiction over the property of the BM318 estate.[4] Consequently, whatever rights the BM318 estate claimed in the Original Tract or in the Lumar Land, including any rights in the land based upon the avoidance claims asserted by BM318 in the Adversary Proceeding, were all subject to this Court's exclusive *in rem* jurisdiction. The Court appropriately exercised this exclusive *in rem* jurisdiction in entering the Settlement Orders and the Final Judgment.

19. This Court likewise has core jurisdiction to enforce its own orders.[5] This includes both the Settlement Orders and the Final Judgment.

20. Moreover, although Barton purports to act on behalf of BM318 in executing the Second Lis Pendens, under the terms of the Receiver Order, Barton has no authority to act on behalf of BM318.

### B. The Second Lis Pendens Violates this Court's Orders.

21. The Second Lis Pendens is in violation of, and contrary to, the terms of both the Settlement Orders and the Final Judgment. As a part of the settlement, BM318's avoidance claims relating to the Original Tract were dismissed with prejudice, and the First Lis Pendens filed by BM318 was dissolved.

22. The form of the Lumar Release is attached to the Final Judgment and is also deemed to be "confirmed, approved, and legally effective." The Lumar Release provides that, through the Lumar Release, BM318 also released "all rights, title, interests, claims, and causes of

---

[4] 28 U.S.C., § 1334(e); Central*. Va. Comm. College v. Katz*, 546 U.S. 356, 362 (2005) ("Bankruptcy jurisdiction, at its core, is *in rem* jurisdiction"); *Tenn. Stud. Asst. Corp. v. Hood*, 541 U.S. 440, 448 (2004).

[5] *Van Deelen v. Dickson*, 2024 U.S. App. LEXIS 21036 *6 (5th Cir. Aug. 20, 2024), citing *Travelers Idem. Co. v. Bailey*, 557 U.S. 137, 151 (2009)("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own orders"); *QuarterNorth Energy LLC v. Atl. Mar. Servs., LLC* (*In re Fieldwood Energy, LLC*), 687, B.R. 712, 715 (Bankr. S.D. Tex. 2022) ("A bankruptcy court has continuing core jurisdiction to enforce its own orders").

action as against the Lumar Land…"

23. Based on the Final Judgment, and the Lumar Release, BM318 has no, and cannot assert any, right, title, or interest in either the Original Tract or the Lumar Land.

24. Dissolving the Second Lis Pendens is not an invasion of the district court's jurisdiction over the SEC Lawsuit. In Texas, a lis pendens may be filed only with respect to a lawsuit which relates to the title to land.[6] The SEC Lawsuit does not address the title to either the Original Tract or the Lumar Land. The Receiver Order appoints the Receiver as to Barton's assets. The Receiver is vested with control over BM318 as one of Barton's entities. On this basis, the Receiver entered into the settlement on behalf of BM318. While the Receiver Order deals with Barton's power to control BM318, it does not deal with or address the title to the land which is subject to the Second Lis Pendens. Consequently, the result of Barton's appeal of the Receiver Order will have no effect on the title to the land. Whatever the result of that appeal, the status of the title to the land will be as determined based upon this Court's Settlement Orders and the Final Judgment, and BM318 will have no right, title, or interest in the land.

25. Moreover, as explained above, this Court exercised its exclusive jurisdiction over BM318's alleged rights and claims against the land at issue in approving the settlements. The rights in the Original Tract asserted by BM318 through the Adversary Proceeding were property of the BM318 estate and, as such, subject to this Court's exclusive *in rem* jurisdiction. All claims, rights, and issues asserted by BM318 in relation to the Original Tract (and the Lumar Land as a part thereof) are within this Court's exclusive *in rem* jurisdiction.

26. Lumar moves the Court to enforce the Settlement Orders and the Final Judgment and to enter an order dissolving and expunging the Second Lis Pendens.

**C. Barton has no authority to act on behalf of BM318 under the Receiver Order.**

27. The Receiver Order is clear that only the Receiver has the authority to act on behalf of BM318. In relation to the settlement by the Receiver of the Adversary Proceeding,

[6] Section 12.007(a) of the Tex. Prop. Code.

Case 21-40259-mxm11 Doc 1161 Filed 10/28/24 Entered 10/28/24 17:01:33 Desc
Exhibit 1 Page 8 of 120 of 9

Barton never questioned that the Receiver was clothed with the power to act on behalf of BM318. While Barton has appealed the Receiver Order, Barton has not obtained a stay pending appeal and had no power to execute the Second Lis Pendens on behalf of BM318.

**D. The Second Lis Pendens should be dissolved and expunged.**

28. The Second Lis Pendens is contrary to the Court's orders and should be dissolved and expunged. The form of the proposed Order dissolving and expunging the Second Lis Pendens is attached as **Exhibit "E."**

**PRAYER**

WHEREFORE, for the reasons set forth above, Lumar respectfully requests that the Court grant the relief sought above dissolving the Second Lis Pendens and for all such other and further relief as the Court may deem just and proper.

Date: October 24, 2024

Respectfully submitted,

*/s/ J. Robert Forshey*
J. Robert Forshey
Texas Bar No. 07264200
bforshey@forsheyprostok.com
Emily S. Chou
Texas Bar No. 24006997
echou@forsheyprostok.com
**FORSHEY PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, TX 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

**Counsel for Lumar Land & Cattle, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on October 24, 2024, a true and correct copy of the foregoing document was served by electronic transmission via the Court's ECF system upon all parties registered to receive electronic notice, and on parties on the attached service list by U.S. Mail first class postage prepaid, and on the parties indicated below as stated below:

Via U.S. Mail first class postage prepaid, certified mail return receipt requested, and via email on:

Timothy Barton
P.O. Box 117625
Carrollton, Texas 75007
Email: timothy.barton@proton.me

Via U.S. Mail first class postage prepaid and via email on:

Kaitlyn M. Coker
Farmer & Coker PLLC
901 Main Street, Suite 5330
Dallas, Texas 75202
Email: kaitlan@farmercoker.com

*/s/ J. Robert Forshey*_______
J. Robert Forshey

L:\BFORSHEY\LUMAR LAND & CATTLE, LLC (BM318)(NON-BNKRPTCY)#6323\ADVERSARY NO. 21-04051 (BM318)\PLEADINGS\MOTION TO ENFORCE SETTLEMENT & DISSOLVE SECOND LIS PENDENS 10.24.24.DOC

# Exhibit A

(to Motion to Enforce Settlement)

**NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.** 2025-328359

**SPECIAL WARRANTY DEED WITH VENDOR'S LIEN**

THE STATE OF TEXAS §

§ KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF PARKER §

THAT **THE DIXON WATER FOUNDATION F/K/A THE DIXON FOUNDATION**, a Texas non-profit corporation ("**Grantor**"), owner of the Property (as defined herein), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) and other good and valuable consideration to Grantor, cash in hand paid by Grantee, herein below named, the receipt and sufficiency of which are hereby acknowledged and confessed, and for the further consideration of the execution and delivery by the Grantee herein of that certain promissory note of even date herewith in the principal sum of THREE MILLION EIGHT HUNDRED THIRTY THOUSAND SIXTY THREE AND NO/100 DOLLARS ($3,830,063.00) (the "**Note**"), payable to the order of FIRST NATIONAL BANK AND TRUST COMPANY OF WEATHERFORD D/B/A FIRST BANK TEXAS, a Texas bank ("**Lender**"), as therein specified, the payment of which Note is secured by, among other things, the vendor's lien (the "**Vendor's Lien**") herein retained and assigned to Lender, and is additionally secured by a deed of trust of even date herewith to MIKE RHEA, Trustee, for the benefit of Lender (the "**Deed of Trust**"), has GRANTED, BARGAINED, SOLD and CONVEYED, and by these presents does hereby GRANT, BARGAIN, SELL and CONVEY unto **LUMAR LAND & CATTLE, LLC**, a Texas limited liability company (herein the "**Grantee**"), all of the following ("**Property**"):

(a) All that certain lot, tract, or parcel being 204.50 acres situated in the James Bradley Survey, Abstract No. 119 and the J.H. Rean Survey, Abstract No. 1106, Parker County, Texas (the "**Land**") and more particularly described in **Exhibit "A"** attached hereto and fully incorporated herein for all purposes; and

(b) together with: a) all right, title and interest of Grantor in and to improvements and fixtures attached to the real property; b) all access rights and easement rights, claims, and permits in connection with or pertaining to the real property and improvements; c) all rights, title and interest of Grantor in and to all water located beneath and on the surface of the real property, together with all related water rights; d) all privileges and appurtenances pertaining to the real property; e) all right, title and interest of Grantor in and to strips or gores adjoining said real property; and f) Grantor's interest in the water, sand, gravel, limestone, building stone, caliche, surface shale, near-surface lignite, iron, and any other surface materials in, on, or under such real property.

TO HAVE AND TO HOLD the Property, together with all and singular any other rights and appurtenances thereto in anywise belonging unto Grantee, and its successors and assigns, related to the Property, FOREVER; and Grantor does hereby bind itself and its successors and assigns to WARRANT AND FOREVER DEFEND, all and singular, the Property, subject to the permitted encumbrances set forth in Exhibit "B" attached hereto and made a part hereof for all purposes ("**Permitted Encumbrances**"), unto Grantee, and its successors and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof by, through, or under Grantor, but not otherwise.

It is expressly agreed that the Vendor's Lien is retained against the Property until the Note and all interest thereon are fully paid according to the face, tenor, effect, and reading thereof. Grantor hereby expressly reserves and retains for Lender, and Lender's successors and assigns, the Vendor's Lien to secure (i) the payment of the Note, and (ii) the performance and payment by Grantee of the covenants, conditions, obligations, and liabilities under the Deed of Trust. Upon the full and complete payment of the Note and satisfaction and performance of the covenants, conditions, obligations, and liabilities under the Deed of Trust, this conveyance shall become absolute and the Vendor's Lien herein reserved shall be automatically released and discharged. Lender, at the instance and request of Grantee, having advanced and paid to Grantor that portion of the purchase price for the Property as evidenced by the Note, the Vendor's Lien is retained herein for the benefit of Lender, and the same is hereby TRANSFERRED AND ASSIGNED to Lender, its successors and assigns.

[Signature Page Follows.]

EXECUTED as of the 23 day of April, 2021.

**GRANTOR:**

THE DIXON WATER FOUNDATION F/K/A
THE DIXON FOUNDATION,
a Texas non-profit corporation

By: [signature]
Name: Robert Potts
Title: President

STATE OF Texas §
§
COUNTY OF Parker §

The foregoing instrument was ACKNOWLEDGED before me this 23RD day of April, 2021, by Robert Potts, President of The Dixon Water Foundation F/K/A The Dixon Foundation, a Texas non-profit corporation, on behalf of said corporation..

R. CHENAULT
Notary Public
State of Texas
ID # 129431195
Comm. Expires 05/20/2021

[S E A L]

[signature]
Notary Public, State of Texas

My Commission Expires:

5-20-21

Rakisha Chenault
Printed Name of Notary Public

Notary No.: ____________________

Attachments:

Exhibit A - Land
Exhibit B - Permitted Encumbrances

After Recording Return to:
Lumar Land & Cattle, LLC
5189 E I-20 Service RD N, STE 106
Willow Park, Texas 76087
Attention: Jim R. Martin

**EXHIBIT A**

**THE LAND**

BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

COMMENCING at a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the intersection of the southwesterly line of Bear Creek Road with the northwesterly line of Bear Creek Ranch Road (a 60' Dedicated Public Right-of-Way) and being the east corner of Lot 1, Block A, BEAR CREEK RANCH, an Addition to Parker County, Texas, according to the Plat recorded in Cabinet E, Slide 551, Plat Records, Parker County, Texas;

THENCE S 55°31'36" E, along the southwesterly line of said Bear Creek Road, a distance of 60.00 feet to a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the intersection of the southwesterly line of said Bear Creek Road with the southeasterly line of said Bear Creek Ranch Road;

THENCE N 33°46'16" E, a distance of 30.02 feet to a railroad spike found in Bear Creek Road for the POINT OF BEGINNING of the herein described tract, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6914862.12 and EAST: 2237394.23, for reference;

THENCE in and along said Bear Creek Road, as follows:

S 55°59'27" E, a distance of 325.40 feet to a point;

S 71°46'27" E, a distance of 801.00 feet to a point;

S 70°43'19" E, a distance of 221.91 feet to a 5/8" iron rod found;

S 70°45'54" E, a distance of 1742.88 feet to a 1/2" iron rod found at the most north, northeast corner of said Dixon Water Foundation tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, along a northerly east line of said Dixon Water Foundation tract, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 201702400, Official Public Records, Parker County, Texas, continuing along the common line of said Dixon Water Foundation tract and said Reeves tract, passing the north corner of that certain tract of land described in deed to Mike Wright and wife, Jamie Wright, recorded in Instrument Number 202021901, Official Public Records, Parker County, Texas and continuing along the common line of said Dixon Water Foundation tract and said Wright tract, in all, a distance of 1186.42 feet to a 5/8" iron rod found at an interior ell corner of said Dixon Water Foundation tract, being the most west corner of said Wright tract;

THENCE along the common line of said Dixon Water Foundation tract and said Wright tract, as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;

S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;

N 72°21'34" E, a distance of 390.26 feet to a point in a southerly, west line of said Reeves tract, from which a 3" steel pipe fence post found bears N 06°43'26" W, a distance of 1.25 feet, for reference;

THENCE S 00°10' 37" W, along the common line of said Dixon Water Foundation tract and said Reeves tract, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract and being the southeast corner of the herein described tract;

THENCE N 85°12'57" W, across said Dixon Water Foundation tract, a distance of 3373.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084" for the southwest corner of the herein described tract, from which a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the southeast corner of that certain tract of land described in deed to GH Lumar JV, recorded in Instrument Number 201924134, Official Public Records, Parker County, Texas, bears N 89°37'52" W, a distance of 266.86 feet, for reference;

THENCE continuing across said Dixon Water Foundation tract, as follows:

N 03°21'24" E, a distance of 330.89 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

N 01°38'28" E, a distance of 428.44 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

N 00° 12' 47" E, a distance of 95.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084" in the south line of that certain remaining portion tract of land described in deed to GH Lumar JV, recorded in Instrument Number 202024136, Official Public Records, Parker County, Texas;

THENCE S 80°56'20" E, along the south line of said GH Lumar JV tract (Instrument Number 202024136), a distance of 31.26 feet to a 1/2" capped iron rod set stamped "C.F. a the southeast corner of said GH Lumar JV tract (Instrument Number 202024136);

THENCE N 00°31'28" W, along the east line of said GH Lumar JV tract (Instrument Number 202024136), a distance of 655.53 feet to a 1/2" iron rod found;

THENCE N 09°47'14" W, continuing along the east line of said GH Lumar JV tract (Instrument Number 202024136), at a distance of 741.92 feet passing a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the southeast corner of the Bear Creek Ranch Road Dedicated Public Right-of-Way as shown on said BEAR CREEK RANCH Plat, recorded in said Cabinet E, Slide 551, and continuing along the northeasterly line of said Bear Creek Ranch Road, in all, a distance of 797.08 feet to a 1/2" iron rod found;

THENCE along the northeast, east and southeasterly line of said Bear Creek Ranch Road, as follows:

N 32°59' 06" W, a distance of 349.92 feet to a 1/2" iron rod found;

N 09°44'07" E, a distance of 103.49 feet to a 1/2" iron rod found;

N 33°46'16" E, a distance of 811.29 feet to the POINT OF BEGINNING and containing 204.50 acres (8,908,185 square feet) of land, more or less.

# EXHIBIT B

## PERMITTED ENCUMBRANCES

1. All leases, grants, exceptions or reservations of coal, lignite, oil, gas and other minerals, together with all rights, privileges, and immunities relating thereto, appearing in the Public Records of Parker County, Texas.

2. Easement granted by Aleene, Princess of Liechtenstein to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 418, Real Property Records, Parker County, Texas.

3. Easement granted by Jane McFarland Dixon to James P. Dunigan, Inc., filed 12/08/1976, recorded in Volume 657, Page 421, Real Property Records, Parker County, Texas.

4. Easement granted by Aleene McFarland Liechtenstein, et al to James P. Dunigan, filed 12/08/1976, recorded in Volume 657, Page 437, Real Property Records, Parker County, Texas.

5. Easement granted by Aleene McFarland Liechtenstein to Southwestern Gas Pipeline, Inc., filed 05/03/1978, recorded in Volume 723, Page 630, Real Property Records, Parker County, Texas.

6. Easement granted by R. McFarland Dixon to Tri-County Electric Cooperative, Inc., filed 01/26/1997, recorded in Volume 1720, Page 479, Real Property Records, Parker County, Texas.

7. Easement granted by R. McFarland Dixon to Southwestern Gas Pipeline, Inc., filed 02/13/2005, recorded in Volume 2299, Page 938, Real Property Records, Parker County, Texas.

8. Easement granted by The Dixon Foundation to Southwestern Gas Pipeline, Inc., filed 03/13/2007, recorded in Volume 2519, Page 240, Real Property Records, Parker County, Texas.

9. Easement granted by The Dixon Water Foundation to Tri-County Electric Cooperative, Inc., filed 05/19/2008, recorded in Volume 2635, Page 862, Real Property Records, Parker County, Texas.

10. Easement rights as awarded to Brazos Electric Power Cooperative, Inc., in Cause #CIV 08-0739, certified copy filed 01/07/2009, recorded in Volume 2684, Page 531, Real Property Records, Parker County, Texas. Modification of Easement filed 08/25/2009, recorded in Volume 2734, Page 1161, Real Property Records, Parker County, Texas.

11. Easement granted by The Dixon Water Foundation to Targa NGL Pipeline Company, LLC, filed 04/16/2018, recorded in cc#2018-8659, Real Property Records, Parker County, Texas. Amendment, filed 01/22/2019, recorded in cc#2019-1501, Real Property Records, Parker County, Texas.

12. Easement rights as granted to GH Lumar JV, in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

13. Terms, conditions, and easements as set out in Access Easement from GH Lumar JV to Lumar Land & Cattle, LLC, filed 02/06/2020, recorded in cc#2020-3138, Real Property Records, Parker County, Texas.

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

Lila Deakle

202116538
04/28/2021 09:49:41 AM
Fee: $54.00
Lila Deakle, County Clerk
Parker County, Texas
DEED

# Exhibit B

(to Motion to Enforce Settlement)

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed August 26, 2024**

Mark X. Mullin
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| BM318, LLC, | § | Case No. 20-42789-MXM |
| Debtor | § | |
| BM318, LLC, | § | |
| Plaintiff, | § | |
| v. | § | Adv. Pro. No. 21-04051-MXM |
| THE DIXON WATER FOUNDATION, | § | |
| Defendant. | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| Plaintiff-in-Intervention | § | |

**<u>FINAL AGREED JUDGMENT DISMISSING THE ADVERSARY PROCEEDING</u>**

This adversary proceeding was commenced by BM318, LLC ("BM318"), as the plaintiff, against The Dixon Water Foundation ("Dixon"), as the defendant. Thereafter, Lumar Land &

Cattle, LLC ("Lumar") was granted leave to intervene in this adversary proceeding. Cortney C. Thomas ("Receiver") has been appointed as Receiver for BM318 through the following lawsuit ("Receivership Lawsuit"):

> *Securities and Exchange Commission v. Timothy Barton, et al.*, Case 3:22-cv-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

The Receiver (acting on behalf of BM318) and Dixon have entered into a settlement agreement ("Dixon Settlement Agreement") which fully resolves all matters pending between them in this adversary proceeding. Lumar is not a party to the Dixon Settlement Agreement. The Dixon Settlement Agreement has been approved by this Court by Order entered as Docket No. 163 in the above-captioned chapter 11 bankruptcy case, and has been ratified by the district court in the Receivership Lawsuit [District Court Docket No. 550]. Pursuant to the Dixon Settlement Agreement, the Receiver and Dixon have agreed to entry of this Final Agreed Judgment fully and finally settling and dismissing all claims and disputes between them in this adversary proceeding.

The Receiver (acting on behalf of BM318) and Lumar have entered into a separate settlement agreement ("Lumar Settlement Agreement") which fully resolves all claims and disputes pending between them in this adversary proceeding. Dixon is not a party to the Lumar Settlement Agreement. The Lumar Settlement Agreement has been approved by this Court by Order entered as Docket No. 164 in the above-captioned chapter 11 bankruptcy case, and has been ratified by the district court in the Receivership Lawsuit [District Court Docket No. 550]. Pursuant to the Lumar Settlement Agreement, the Receiver and Lumar have agreed to the entry of this Final Agreed Judgment fully and finally settling and dismissing all claims and disputes between them in this adversary proceeding.

The Court's order approving the Dixon Settlement Agreement and Lumar Settlement Agreement is final and was not appealed. The Receivership Lawsuit defendant Timothy Barton filed a notice of interlocutory appeal of the district court's order ratifying the Dixon Settlement Agreement and Lumar Settlement Agreement, but Barton neither sought nor received a stay of the district court's ratification order pending the appeal [District Court Docket No. 554].[1]

ACCORDINGLY, it is hereby ORDERED, ADJUDGED and DECREED that:

1. All claims, causes of action, or other claims for any form of relief asserted in this adversary proceeding by any party are hereby dismissed with prejudice to the refiling of the same. This dismissal with prejudice shall encompass not only the claims actually asserted by any party in this adversary proceeding, but also any claim, cause of action or claim for relief which could have been asserted based upon the transactions or occurrences which form the subject matter of this adversary proceeding.

2. All attorney's fees and costs of court shall be borne by the party initially incurring the same.

3. This judgment is a final judgment fully and finally disposing of all claims, causes of action, or claims for relief asserted by any party in this adversary proceeding.

4. Upon the entry of this judgment, the lis pendens filed by BM318 and recorded under Instrument No. 202142097 in the official real property records of Parker County, Texas is hereby dissolved.

5. Dixon's form of Release of Lis Pendens attached hereto as Exhibit 1 is confirmed, approved, and legally effective.

[1] *See* FED. R. CIV. P. 62(c)(1) (prescribing that "[u]nless the court orders otherwise," an "interlocutory or final judgment in an action for an injunction or receivership" are "not stayed after being entered"). Nor does jurisdiction exist for that interlocutory appeal. *See Netsphere, Inc. v. Baron,* 799 F.3d 327, 331-32 (5th Cir. 2015).

6. Lumar's form of Release of Lis Pendens attached hereto as Exhibit 2 is confirmed, approved, and legally effective.

7. All relief not specifically granted herein is denied.

8. The Court retains jurisdiction to construe and enforce this Final Agreed Judgment.

### END OF ORDER ###

**Approved for Entry**:

_/s/ C. Alan Carrillo_______________________________
Charlene C. Koonce
State Bar No. 11672850
Email: charlene@brownfoxlaw.com
C. Alan Carrillo
State Bar No. 24109693
Email: alan@brownfoxlaw.com
**BROWN FOX PLLC**
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000
Facsimile: (214) 327-5001

**ATTORNEYS FOR CORTNEY C. THOMAS, RECEIVER FOR BM318, LLC, ET AL.**

__/s/ Deborah M. Perry_____________________________
Deborah M. Perry
Texas Bar No. 24002755
Email: dperry@munsch.com
**MUNSCH HARDT KOPF & HARR, P.C.**
500 N. Akard Street, Suite 4000
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR THE DIXON WATER FOUNDATION**



4878-7521-4554v.2

_/s/ J. Robert Forshey_
J. Robert Forshey
Texas Bar No. 07264200
Email: bforshey@forsheyprostok.com
**FORSHEY & PROSTOK, LLP**
777 Main Street, Suite 1550
Fort Worth, Texas 76102
Telephone: (817) 877-8855
Facsimile: (817) 877-4151

and

Kimberly P. Harris
Texas Bar No. 24002234
Email: kharris@qslwm.com
Joshua L. Shepherd
Texas Bar No. 24058104
Email: jshepherd@qslwm.com
**QUILLING, SELANDER, LOWNDS,**
**WINSLETT & MOSER, PC**
2001 Bryan Street, Suite 1800
Dallas, Texas 75201
Telephone: (214) 871-2100
Facsimile: (214) 871-2111

**ATTORNEYS FOR LUMAR LAND AND CATTLE, LLC**

Exhibit 1 to Judgment

**RELEASE OF LIS PENDENS**

| | | |
|---|---|---|
| STATE OF TEXAS | § | |
| | § | |
| COUNTY OF PARKER | § | |

On October 27, 2021, BM318, LLC filed a Notice of Lis Pendens in the real property records of Parker County, Texas, in connection with an adversary proceeding filed in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") as a part of the Chapter 11 Case *In re BM318, LLC,* Case No. 20-42789 (the "Bankruptcy Case") with the adversary proceeding itself being styled *BM318, LLC v. Dixon Water Foundation* and numbered Adversary Proceeding 21-04051-MXM (the "Notice of Lis Pendens").

A. The Notice of Lis Pendens was recorded under Instrument No. 202142097, in the official real property records of Parker County, Texas.

B. The lawsuit described above has been settled, and the approval of the settlement pursuant to Bankruptcy Rule 9019 has been entered on the docket of the Bankruptcy Case by the Bankruptcy Court.

**RELEASE**

NOW, THEREFORE, BM318, LLC, by and through its Receiver Cortney C. Thomas (appointed in the case of *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 3:22-cv-2118-X (N.D. Tex.))[1] cancels and releases the Lis Pendens previously filed upon the property more particularly described as:

> 2055.70 acres of land situated in the JAMES BRADY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAM SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a

[1] A copy of the Order appointing the Receiver is attached hereto as Exhibit B.

Exhibit 1 to Judgment

portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, said 2055.70 acres being more particularly described as Tract 1 on the attached Exhibit A, and the access easement more particularly described as Tract 2 on the attached Exhibit A.

Witness my hand, this ____ day of ________________, 2024.

**BM318, LLC**

____________________________
Its Receiver Courtney C. Thomas

c/o Charlene C. Koonce
charlene@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, Texas 75225
Telephone: (214) 327-5000

**ACKNOWLEDGMENT**

STATE OF TEXAS §
§
COUNTY OF DALLAS §

This instrument was acknowledged before me on the ____ day of ________________, 2024 by Courtney C. Thomas, Receiver for BM318, LLC.

____________________________________

Name: ______________________________

Notary Public, State of Texas

My commission expires: _______________

Seal:

After Recording Return to:

Munsch Hardt Kopf & Harr, P.C.
c/o Deborah M. Perry
500 N. Akard Street, Suite 4000
Dallas, Texas 75201
(214) 855-7500

Exhibit 1 to Judgment

EXHIBIT A

PROPERTY DESCRIPTION

**TRACT 1**

**2055.70 acres of land situated in the JAMES BRADY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAM SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, said 2055.70 acres being more particularly described as follows:**

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as follows:
S 67°36'03" E, a distance of 3869.57 feet to the most northerly northeast corner of said Parcel No. 2;
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point;
S 71°46'27" E, a distance of 801.00 feet to a point;
S 70°43'19" E, a distance of 221.91 feet to a point;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017-02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1186.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;
S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right-of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

Exhibit 1 to Judgment

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point;
S 87°58'20" E, a distance of 852.96 feet to a point;
S 87°37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of 75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point;
N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of 10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'10" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;

THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1 and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Parcel No. 1 and along the called south line of said J.H. REAN SURVEY, a distance of 660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found;
N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;

Exhibit 1 to Judgment

N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found;
N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07" W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. 1, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner of said Parcel No. 1 and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of 728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of 3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

Exhibit 1 to Judgment

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West, 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

## SAVE AND EXCEPT

**BEING 118.34 acres situated in the JAMES BRADLEY SURVEY, ABSTRACT NO. 120, Parker County, Texas, being a portion of that certain tract of land described in deed as Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as *follows*:**

**BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (*Right-of-Way varies*), from which a 2" steel**

**fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;**

**THENCE S 67°36'00" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast corner of the herein described 118.34 acre tract;**

**THENCE S 24°50'49" W, leaving the approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50) foot wide Right-of-Way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at a distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084", and continuing, along the west line of said Fifty (50) foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";**

**THENCE S 04°46'43" W, continuing along the west line of said Fifty (50) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast corner of the herein described 118.34 acre tract;**

**THENCE along the approximate centerline of said Bear Creek, as follows:**

**N 61°36'37" W, a distance of 807.44 feet to a point;**

Exhibit 1 to Judgment

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53" W, a distance of 141.01 feet to a point;

S 82°12'59" W a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86°11'59" W, a distance of 114.28 feet to a point;

N 53°45'49" W a distance of 175.97 feet to a point;

N 47°13'56" W, a distance of 200.18 feet to a point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped iron rod found at the southwest corner of said Parcel No. 2 bears S 01°17'05" E, a distance of 1216.41 feet, for reference;

THENCE N 01°17'05" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land, more or less.

---

**TRACT 2**

TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS.

**EXECUTION COPY**

# RELEASE OF LIS PENDENS

## I. Parties

A. This Release of Lis Pendens, ("Release") is executed by Cortney C. Thomas, in his capacity as Receiver ("Second Receiver") pursuant to the Second Receiver Order entered in the Receiver Lawsuit (as both are defined below), to release the Lis Pendens (as defined below) and all other rights, title, interest, claims, and causes of action which encumber certain land owned by Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

## II. Definitions

B. As used in this Partial Release, the following terms shall have the respective meanings set forth below:

i. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

iii. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the plaintiff in the Adversary Proceeding.

iv. The term "Dixon" shall mean The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding.

v. The term "Lis Pendens" shall mean the Notice of Lis Pendens relating to BM318's claims in the Adversary Proceeding and filed by BM318 on October 27, 2021, as Document No. 202142097 in the Official Records of Parker County, Texas.

vi. The term "Lumar Deed" shall mean the Special Warranty Deed with Vendor's Lien executed by Dixon, as grantor, to Lumar, as grantee, covering the Lumar Land and recorded on April 23, 2021, as Document no. 202116538 in the Official Records of Parker County, Texas.

vii. The term "Lumar Land" shall refer to the 204.50-acre tract located in Parker County, Texas, which is more fully described in the Lumar Deed and in the attached **Exhibit "A."**

viii. The term "Original Tract" shall mean the 2,055.77-acre tract located in Parker County, Texas, which was sold by Dixon to BM318 in 2018.

ix. The term "<u>Receiver Lawsuit</u>" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission v. Timothy Barton, et al.,* Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

x. The term "<u>Second Receiver Order</u>" shall refer to an Order Appointing Receiver entered as Docket no. 417 in the Receiver Lawsuit on November 29, 2023, a true and accurate copy of which is attached hereto as **<u>Exhibit "B"</u>** appointing the Second Receiver.

xi. The term "<u>Remaining Land</u>" shall mean the 1,531.75 acre tract of land located in Parker County, Texas, which is the subject of BM318's claims in the Adversary Proceeding but excluding therefrom the Lumar Land.

xii. The term "<u>Special Warranty Deed</u>" shall mean the deed conveying the Remaining Land from BM318, as grantor, to Dixon, as grantee, and recorded on July 2, 2020 as Document no. 202019524 in the Official Records of Parker County, Texas.

## III. <u>Recitals</u>

C. Dixon sold the Original Tract to BM318 during 2018. The majority of the purchase price for the Original Tract was provided through owner financing by Dixon and secured by a deed of trust against most of the Original Tract. The Remaining Land constitutes a portion of the Original Tract. Dixon asserts that BM318 defaulted in the repayment of this debt. Ultimately, BM318 conveyed the Remaining Land to Dixon pursuant to the Special Warranty Deed which was recorded on July 2, 2020.

D. On September 1, 2020, BM318 commenced the Bankruptcy Case and acted as a debtor-in-possession. The Bankruptcy Court ultimately confirmed a plan of reorganization proposed by BM318 in the Bankruptcy Case which became effective on August 2, 2021.

E. On April 23, 2021, Dixon sold the Lumar Land to Lumar. The land was conveyed to Lumar pursuant to the Lumar Deed. The Lumar Land constitutes a part of the Remaining Land. Lumar financed a portion of the purchase price through loans from a third party lender.

F. On August 10, 2021, BM318 commenced the Adversary Proceeding against Dixon seeking to avoid the transfer of the Remaining Land by BM318 to Dixon pursuant to the Special Warranty Deed as a preferential or fraudulent transfer pursuant to sections 547 and 548 of the Bankruptcy Code. Dixon asserts that these avoidance claims by BM318 are without merit.

G. On October 27, 2021, BM318 filed the Lis Pendens which relates to its claims in the Adversary Proceeding against Dixon in relation to the Remaining Land.

H. Lumar sought to intervene in the Adversary Proceeding based on the Lis Pendens, which burdens the Lumar Tract as a part of the Remaining Land. The Bankruptcy Court granted Lumar leave to intervene in the Adversary Proceeding. In the Adversary Proceeding, Lumar asserts that BM318's avoidance claims as to the Remaining Land are without merit, and further asserts that it is also entitled to the protections of section 550(b)(1) and (2) of the Bankruptcy Code. Lumar further asserts that, in addition to the lack of merit in BM318's avoidance claims,

the lender's rights in the Lumar Land pursuant to its deeds of trust are further protected by section 550(b)(2) of the Bankruptcy Code. BM318 contests Lumar's assertions.

I. On September 23, 2022, the Receiver Lawsuit was filed. Thereafter, the Second Receiver was appointed to serve in such capacity through the Second Receiver Order. Based on the Second Receiver Order, further proceedings in the Adversary Proceeding are stayed.

J. Pursuant to paragraph 1 of the Second Receiver Order, the Second Receiver is appointed as receiver for BM318, as one of the "<u>Receivership Entities,</u>" with exclusive control and possession of the BM318 assets, of whatever kind and wherever located, including all tangible and intangible property, and which are included as part of the "<u>Receivership Property</u>". Paragraph 3 of the Second Receiver Order clothes the Second Receiver with all power, right and authority possessed by the officers, directors, and managers of each of the Receivership Entities, which includes BM318. Paragraph 6 grants the Second Receiver broad powers over the Receivership Property, including the right to take any action which, prior to the entry of the Second Receiver Order, could have been taken by the officers, directors, managers, and agent of any of the Receivership Entities.

K. BM318's claims and rights in relation to the Adversary Proceeding, including in relation to the Lis Pendens, constitute Receivership Assets subject to the Second Receiver's control pursuant to the Second Receiver Order. This allows the Receiver to settle and resolve the Adversary Proceeding and release the Lis Pendens.

L. The Second Receiver has executed this Release based on the provisions of the Second Receiver Order, his control of BM318 as one of the Receivership Entities, and his control of all property of BM318 as part of the Receivership Assets.

M. The Second Receiver (acting on behalf of BM318) has entered into a Settlement and Release Agreement ("<u>Settlement Agreement</u>") with Lumar to settle and resolve all claims among them in the Adversary Proceeding. The Settlement Agreement is subject to the Agreement to Reaffirm and Adopt Settlement and Release Agreement ("<u>Reaffirmation and Adoption Agreement</u>") among the Second Receiver and Lumar. References herein to the Settlement Agreement refer to the Settlement Agreement subject to the Reaffirmation and Adoption Agreement.

N. The District Court has entered an Order on April 15, 2024, as docket no. 486, modifying the litigation stay contained in the Second Receiver Order to allow the Parties to seek approval of the Settlement Agreement and the Reaffirmation and Adoption Agreement. This Settlement Agreement has been approved by the Bankruptcy Court pursuant to an order entered on May 28, 2024, as docket no. 164, and ratified by the Receivership Court pursuant to an order entered on August 18, 2024, as docket no. 550.

O. This Release is executed and delivered by the Second Receiver pursuant to the Settlement Agreement.

## IV. <u>Release of Lis Pendens</u>

FOR VALUE RECEIVED, pursuant to the terms of the Settlement Agreement, acting with regard to the Receivership Assets of BM318 as one of the Receivership Entities subject to the Second Receiver Order, the Second Receiver hereby releases the Lis Pendens as against the Lumar Land. By so releasing the Lis Pendens against the Lumar Land, the Second Receiver

also releases all rights, title, interest, claims, and causes of action against the Lumar Land, including all claims relating to the Lumar Land asserted or which could have been asserted in the Adversary Proceeding.

Any other term hereof notwithstanding, by this Release the Second Receiver does not release, impair or impact any right, title, interest, claims, and causes of action of or by BM318 against any portion of the Remaining Land.

Executed and effective as of this _____________ day of _____________, 2024.

**SECOND RECEIVER**:

________________________________
Cortney C. Thomas, as Second Receiver
Pursuant to the Second Receivership Order

**ACKNOWLEDGMENT**:

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on the _____ day of ________________, 2024, by Cortney C. Thomas, as Receiver for BM318, LLC.

My commission expires: _________________________

_____________________________
Notary Public, State of Texas

**WHEN RECORDED, RETURN TO:**

J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102

# Exhibit A

**EXHIBIT A**

**THE LAND**

BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

COMMENCING at a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the intersection of the southwesterly line of Bear Creek Road with the northwesterly line of Bear Creek Ranch Road (a 60' Dedicated Public Right-of-Way) and being the east corner of Lot 1, Block A, BEAR CREEK RANCH, an Addition to Parker County, Texas, according to the Plat recorded in Cabinet E, Slide 551, Plat Records, Parker County, Texas;

THENCE S 55°31'36" E, along the southwesterly line of said Bear Creek Road, a distance of 60.00 feet to a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the intersection of the southwesterly line of said Bear Creek Road with the southeasterly line of said Bear Creek Ranch Road;

THENCE N 33°46'16" E, a distance of 30.02 feet to a railroad spike found in Bear Creek Road for the POINT OF BEGINNING of the herein described tract, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6914862.12 and EAST: 2237394.23, for reference;

THENCE in and along said Bear Creek Road, as follows:

S 55°59'27" E, a distance of 325.40 feet to a point;

S 71°46'27" E, a distance of 801.00 feet to a point;

S 70°43'19" E, a distance of 221.91 feet to a 5/8" iron rod found;

S 70°45'54" E, a distance of 1742.88 feet to a 1/2" iron rod found at the most north, northeast corner of said Dixon Water Foundation tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, along a northerly east line of said Dixon Water Foundation tract, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 201702400, Official Public Records, Parker County, Texas, continuing along the common line of said Dixon Water Foundation tract and said Reeves tract, passing the north corner of that certain tract of land described in deed to Mike Wright and wife, Jamie Wright, recorded in Instrument Number 202021901, Official Public Records, Parker County, Texas and continuing along the common line of said Dixon Water Foundation tract and said Wright tract, in all, a distance of 1186.42 feet to a 5/8" iron rod found at an interior ell corner of said Dixon Water Foundation tract, being the most west corner of said Wright tract;

THENCE along the common line of said Dixon Water Foundation tract and said Wright tract, as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;

S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;

N 72°21'34" E, a distance of 390.26 feet to a point in a southerly, west line of said Reeves tract, from which a 3" steel pipe fence post found bears N 06°43'26" W, a distance of 1.25 feet, for reference;

THENCE S 00°10' 37" W, along the common line of said Dixon Water Foundation tract and said Reeves tract, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract and being the southeast corner of the herein described tract;

THENCE N 85°12'57" W, across said Dixon Water Foundation tract, a distance of 3373.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084" for the southwest corner of the herein described tract, from which a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the southeast corner of that certain tract of land described in deed to GH Lumar JV, recorded in Instrument Number 201924134, Official Public Records, Parker County, Texas, bears N 89°37'52" W, a distance of 266.86 feet, for reference;

THENCE continuing across said Dixon Water Foundation tract, as follows:

N 03°21'24" E, a distance of 330.89 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

N 01°38'28" E, a distance of 428.44 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

N 00° 12' 47" E, a distance of 95.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084" in the south line of that certain remaining portion tract of land described in deed to GH Lumar JV, recorded in Instrument Number 202024136, Official Public Records, Parker County, Texas;

THENCE S 80°56'20" E, along the south line of said GH Lumar JV tract (Instrument Number 202024136), a distance of 31.26 feet to a 1/2" capped iron rod set stamped "C.F. a the southeast corner of said GH Lumar JV tract (Instrument Number 202024136);

THENCE N 00°31'28" W, along the east line of said GH Lumar JV tract (Instrument Number 202024136), a distance of 655.53 feet to a 1/2" iron rod found;

THENCE N 09°47'14" W, continuing along the east line of said GH Lumar JV tract (Instrument Number 202024136), at a distance of 741.92 feet passing a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the southeast corner of the Bear Creek Ranch Road Dedicated Public Right-of-Way as shown on said BEAR CREEK RANCH Plat, recorded in said Cabinet E, Slide 551, and continuing along the northeasterly line of said Bear Creek Ranch Road, in all, a distance of 797.08 feet to a 1/2" iron rod found;

THENCE along the northeast, east and southeasterly line of said Bear Creek Ranch Road, as follows:

N 32°59' 06" W, a distance of 349.92 feet to a 1/2" iron rod found;

N 09°44'07" E, a distance of 103.49 feet to a 1/2" iron rod found;

N 33°46'16" E, a distance of 811.29 feet to the POINT OF BEGINNING and containing 204.50 acres (8,908,185 square feet) of land, more or less.

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE COMMISSION,

*Plaintiff*,

v.

TIMOTHY BARTON,
CARNEGIE DEVELOPMENT, LLC,
WALL007, LLC,
WALL009, LLC,
WALL010, LLC,
WALL011, LLC,
WALL012, LLC,
WALL016, LLC,
WALL017, LLC,
WALL018, LLC,
WALL019, LLC,
HAOQIANG FU (a/k/a MICHAEL FU),
STEPHEN T. WALL,

*Defendants*,

DJD LAND PARTNERS, LLC, and
LDG001, LLC,

*Relief Defendants*.

§ Civil Action No. 3:22-cv-2118-x

## ORDER APPOINTING RECEIVER

For the reasons set out in a memorandum opinion and order filed today, the Court enters the following order.

**WHEREAS** this matter has come before this Court upon motion of Plaintiff Securities and Exchange Commission ("SEC") to appoint a receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities (defined below);

**WHEREAS** the Court finds that: (a) there is a clear necessity for the receivership to protect defrauded investors' interest in property; (b) legal and less drastic equitable remedies are inadequate; and (c) the benefits of a receivership outweigh the burdens on the affected parties.

**WHEREAS** the Court finds that: (a) a receiver is necessary to manage the Receivership Entities' properties to preserve and protect the value of such properties; (b) Defendant Timothy Barton ("Barton") has misused and mismanaged the Receivership Entities' properties and has, and is likely to continue to, misuse, dissipate and/or conceal investor funds and assets obtained with, or that otherwise benefited from, investor funds; (c) certain Receivership Entities and their assets are subject to liens, lawsuits, and foreclosures that threaten to further diminish their value without the protection of a receiver that would have the power to stay litigation and foreclosures, among other powers; (d) there is a substantial risk that Barton, the Receivership Entities, and other entities that Barton directly or indirectly controls do not hold assets sufficient to satisfy the potential disgorgement of ill-gotten gains for the benefit of investors; (e) absent a receiver to manage, maximize, and protect the value of the Receivership Entities' assets, the investors' interest in these properties is at substantial risk; and (f) these benefits outweigh the burden on Barton.

**WHEREAS** the Court finds that each of the Receivership Entities received or

benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities, and venue properly lies in this district.

**WHEREAS**, the Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following entities, each of which received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation (collectively, "Receivership Entities"):

2. 126 Villita, LLC

3. 2999TC Acquisitions LLC

4. 2999TC JMJ CMGR, LLC (Delaware)

5. AVG West, LLC

6. BEE2019, LLC

7. BM318, LLC
8. Broadview Holdings Trust
9. Carnegie Development, LLC
10. D4DS LLC
11. D4FR LLC
12. D4IN, LLC (Texas)
13. D4KL, LLC
14. D4MC, LLC (Texas)
15. D4OP, LLC
16. DJD Land Partners, LLC
17. Enoch Investments, LLC
18. FHC Acquisition, LLC
19. Gillespie Villas, LLC
20. Goldmark Hospitality, LLC
21. HR Sterling, LLC
22. JMJ Acquisitions, LLC
23. JMJ Development LLC (f/k/a JMJ Development, Inc.)
24. JMJ Hospitality, LLC
25. JMJ VC Management, LLC
26. JMJAV, LLC
27. JMJD4, LLC (Delaware)
28. JMR100, LLC
29. LaJolla Construction Management, LLC

30. LC Aledo TX, LLC
31. LDG001, LLC
32. Lynco Ventures, LLC
33. Mansions Apartment Homes at Marine Creek, LLC
34. Marine Creek SP, LLC
35. MO 2999TC, LLC
36. Northstar PM, LLC (Texas)
37. Orchard Farms Village, LLC
38. Ridgeview Addition, LLC (Texas)
39. Seagoville Farms, LLC
40. SF Rock Creek, LLC
41. TC Hall, LLC
42. Titan Investments, LLC a/k/a Titan 2022 Investments, LLC
43. Venus59, LLC
44. Villita Development, LLC
45. Villita Towers, LLC
46. WALL007, LLC
47. WALL009, LLC
48. WALL010, LLC
49. WALL011, LLC
50. WALL012, LLC
51. WALL016, LLC
52. WALL017, LLC

53. WALL018, LLC

54. WALL019, LLC

55. WRL2019, LLC (Texas)

2. Until further Order of this Court, Cortney C. Thomas is hereby appointed to serve without bond as receiver (the "Receiver") of the Receivership Entities.

3. The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, trustees, managers and general and limited partners of the entity Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Rule 66 of the Federal Rules of Civil Procedure.

## I. GENERAL POWERS AND DUTIES OF RECEIVER

4. The trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operations of the Receivership Entities and shall pursue and preserve all of their claims.

Case 24-40791-mxm11 Doc 14-2 Filed 03/28/24 Entered 03/28/24 15:03:39 Desc
Exhibit 2 Page 46 of 118



5. No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

6. Subject to the specific provisions in Sections II through XII below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B. To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Entities;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

Case 24-40791-mxm11 Doc 42-2 Filed 08/26/24 Entered 08/26/24 14:33:39 Desc Exhibit 2 Page 49 of 140



G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property;

H. Enter into and cancel contracts and purchase insurance as the Receiver deems necessary or advisable;

G. The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I. To bring such legal actions based in law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J. To pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities; and,

K. To take such other action as may be approved by this Court.

## II. ACCESS TO INFORMATION

7. The individual Receivership Entities and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the entity Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

8. Within ten (10) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and

any other agents or contractors of the Receivership Entities; and, (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Entities.

9. Within twenty (20) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2017 to the present:

> A. Of all Receivership Property, wherever located, held by or in the name of the Receivership Entities, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;
>
> B. Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Entities;
>
> C. Identifying all credit, bank, charge, debit, or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve (12) months;
>
> D. Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;
>
> E. Of all funds received by the Receivership Entities, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things,

all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F. Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G. Of all transfers of assets made by any of them.

10. Within thirty (30) days of the entry of this Order, the Receivership Entities shall provide to the Receiver and the SEC copies of the Receivership Entities' federal income tax returns for the years 2017 through 2021 with all relevant and necessary underlying documentation.

11. The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities.

12. The Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

## III. ACCESS TO BOOKS, RECORDS, AND ACCOUNTS

13. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, and all other documents or instruments relating to the Receivership Entities. All persons and entities having

control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

14. The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, email, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

15. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, any of the Receivership Entities that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

A. Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C. Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

## IV. ACCESS TO REAL AND PERSONAL PROPERTY

16. The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

17. The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

18. The Receivership Entities, all persons acting on behalf of any Receivership Defendant, and any person who receives actual or constructive notice of this Order who has or had possession or control over any Receivership Assets, is directed to:

A. Hold and retain any such Receivership Assets that are within his or her control and prohibit any person or entity from assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning,

pledging, selling, spending, transferring, or withdrawing any such Asset except:

1. As directed by further order of the Court; or

2. As directed in writing by the Receiver.

B. Within five (5) business days after being served a copy of this Order, provide the Receiver a sworn statement setting forth:

1. The account number and other identifying information for any such Receivership Asset belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Defendant;

2. The balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is received, and, if the account or other Asset has been closed or removed, or more than $5,000 withdrawn or transferred from it, on or after March 1, 2021, the date of the closure or removal of the funds, the total funds removed or transferred, and the name of the person or entity to whom such account or other Asset was remitted;

3. All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to the business premises, computer servers, networks, or databases, or telecommunications systems or devices;

4. The identification and location of any safe deposit box, commercial mailbox, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity, and if the safe deposit box, storage facility, commercial mailbox, or storage facility has been closed or removed, the date closed or removed;

5. Within five (5) business days of a written request from the Receiver, provide the Receiver copies of all Documents relating to each Receivership Asset, including, but not limited to account applications, statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

19. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

20. The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

21. Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## V. <u>REPATRIATION OF ASSETS AND DOCUMENTS</u>

22. Immediately upon service of this Order, any person or entity with possession or control over any Receivership Assets shall:

> A. Take such steps as are necessary to transfer to the United States all Documents and Assets that are located outside the United States and belong to, are for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity; and
>
> B. Hold and retain all repatriated Assets and prevent the disposition, transfer, or dissipation of such Assets except as required by this Order.

23. Receivership Entities, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from taking any action that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including:

> A. Sending any statement, letter, fax, email or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time as all Assets have been fully repatriated according to Section VIII of this Order; or
>
> B. Notifying any trustee, protector, or other agent of any Defendant or Receivership Entity of the existence of this Order, or of the fact that repatriation is required under a court Order, until such time as all Assets have been fully repatriated according to Section VIII of this Order.

## VI. NOTICE TO THIRD PARTIES

24. Defendants and the Receivership Entities shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, subsidiary, division, and representative of any Defendant or Receivership Defendant. Within ten (10) business days following service of this Order, Defendants and Receivership Entities shall serve on the Receiver a declaration identifying the name, title, address, telephone number, date of service, and manner of service of each person Defendants or Receivership Entities served with a copy of this Order in compliance with this provision.

25. Copies of this Order may be served by the Receiver by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Receiver, by any law enforcement agency, or by process server, upon any person, including financial institutions, that may have possession, custody, or control over any Asset or Document belonging to, for the use or benefit of, under the control of, or subject to access by any Receivership Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall constitute service upon the entire financial institution.

26. The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27. All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government

offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

29. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.

30. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Entities, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

31. Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership

Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII. INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B. Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

D. Create, operate, or exercise any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities; or,

E. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

## VIII. COOPERATION WITH THE RECEIVER

33. Defendants and Receivership Entities, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly and all persons who receive actual notice of this Order, shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities. This cooperation and assistance shall include, but is not limited to:

A. Providing information to the Receiver as directed above or that the Receiver deems necessary to exercise the authority and discharge the responsibilities delegated to the Receiver under this Order;

B. Advising all persons who owe money to the Receivership Entities that all debts should be paid directly to the Receiver; and

C. Transferring funds at the Receiver's direction and producing Documents related to the Assets and sales of the Receivership Entities. The entities obligated to cooperate with the Receiver under this provision include financial institutions and persons that have transacted business with the Receivership Entities. The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## IX. STAY OF LITIGATION

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, parent or affiliated entities, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

36. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## X. <u>MANAGING ASSETS</u>

37. For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

38. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Barton Companies" together with the name of the action.

Case 24-40791-mxm11 Doc 146-2 Filed 08/26/24 Entered 08/26/24 15:03:59 Desc
Exhibit 2 Page 62 of 120



39. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

40. Subject to Paragraph 42 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

41. Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

42. The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

43. The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

## XI. INVESTIGATE AND PROSECUTE CLAIMS

44. The Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

45. Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the SEC before commencing investigations and/or actions.

46. The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Entities.

47. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII. BANKRUPTCY FILING

48. Effective immediately, the Receiver, as sole and exclusive officer, director and managing member of Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, and Wall019, LLC (collectively, "Wall Entities"), shall possess sole and exclusive authority and control over the Wall Entities, as debtors-in-possession, in their respective Chapter 11 cases titled *In re WALL007 LLC, et al.*, No. 22-41049 (Bankr. E.D. Tex.) (the "Bankruptcy Cases") pending in the U.S. Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"). The employment of any and all other officers, directors, managers or other employees of the Wall Entities is and are hereby terminated by the Court. All such persons shall comply with the applicable provisions of this Order.

49. Within thirty (30) days of the entry of this Order, the Receiver shall report to this Court as to whether the Bankruptcy Cases should continue in Chapter 11, or be converted to Chapter 7, dismissed or suspended during the course of the receivership. The Receiver shall file the appropriate pleadings with the Court and the Bankruptcy Court effectuating this Order.

50. The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for other Receivership Entities. If a Receivership Defendant is (or has been) placed in

bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 3 above, the Receiver is vested with management authority for all entity Receivership Entities and may therefore file and manage a Chapter 11 petition.

51. All persons and entities, other than the Receiver, are barred from commencing any bankruptcy proceedings against any of the Receivership Entities.

## XIII. LIABILITY OF RECEIVER

52. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

53. The Receiver and his agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

54. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

55. In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the

resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XIV. RECOMMENDATIONS AND REPORTS

56. The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

57. Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

58. Within thirty (30) days after the end of each subsequent calendar quarter following the date on which the Receiver files his Liquidation Plan, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

59. The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F. A list of all known creditors with their addresses and the amounts of their claims;

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

60. On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

## XV. <u>FEES, EXPENSES, AND ACCOUNTINGS</u>

61. Subject to the paragraphs below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

62. Subject to the paragraph immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any

Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

63. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. Such compensation shall require the prior approval of the Court.

64. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

65. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

66. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

# Exhibit C

(to Motion to Enforce Settlement)

## RELEASE OF LIS PENDENS

### I. Parties

A. This Release of Lis Pendens, ("Release") is executed by Cortney C. Thomas, in his capacity as Receiver ("Second Receiver") pursuant to the Second Receiver Order entered in the Receiver Lawsuit (as both are defined below), to release the Lis Pendens (as defined below) and all other rights, title, interest, claims, and causes of action which encumber certain land owned by Lumar Land & Cattle, LLC ("Lumar"), a Texas limited liability company.

### II. Definitions

B. As used in this Partial Release, the following terms shall have the respective meanings set forth below:

i. The term "Adversary Proceeding" shall refer to the following adversary proceeding commenced by BM318 as a part of the Bankruptcy Case:

> *BM318, LLC, Plaintiff v. The Dixon Water Foundation, Defendant, Lumar Land & Cattle, LLC, Plaintiff-in-intervention*, Adv. No. 21-04051-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

ii. The term "Bankruptcy Case" shall refer to the following bankruptcy case commenced by BM318:

> *In re BM318, LLC*, Case No. 20-4789-mxm, United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division.

iii. The term "BM318" shall mean BM318, LLC, a Texas limited liability company, the debtor in the Bankruptcy Case and the plaintiff in the Adversary Proceeding.

iv. The term "Dixon" shall mean The Dixon Water Foundation, f/k/a The Dixon Foundation, a non-profit foundation, the original defendant in the Adversary Proceeding.

v. The term "Lis Pendens" shall mean the Notice of Lis Pendens relating to BM318's claims in the Adversary Proceeding and filed by BM318 on October 27, 2021, as Document No. 202142097 in the Official Records of Parker County, Texas.

vi. The term "Lumar Deed" shall mean the Special Warranty Deed with Vendor's Lien executed by Dixon, as grantor, to Lumar, as grantee, covering the Lumar Land and recorded on April 23, 2021, as Document no. 202116538 in the Official Records of Parker County, Texas.

vii. The term "Lumar Land" shall refer to the 204.50-acre tract located in Parker County, Texas, which is more fully described in the Lumar Deed and in the attached **Exhibit "A."**

viii. The term "Original Tract" shall mean the 2,055.77-acre tract located in Parker County, Texas, which was sold by Dixon to BM318 in 2018.

ix. The term "Receiver Lawsuit" shall refer to the following lawsuit in which the Receiver was appointed:

> *Securities and Exchange Commission v. Timothy Barton, et al.*, Case 3:22-CV-2118-X, in the United States District Court for the Northern District of Texas, Dallas Division.

x. The term "Second Receiver Order" shall refer to an Order Appointing Receiver entered as Docket no. 417 in the Receiver Lawsuit on November 29, 2023, a true and accurate copy of which is attached hereto as **Exhibit "B"** appointing the Second Receiver.

xi. The term "Remaining Land" shall mean the 1,531.75 acre tract of land located in Parker County, Texas, which is the subject of BM318's claims in the Adversary Proceeding but excluding therefrom the Lumar Land.

xii. The term "Special Warranty Deed" shall mean the deed conveying the Remaining Land from BM318, as grantor, to Dixon, as grantee, and recorded on July 2, 2020 as Document no. 202019524 in the Official Records of Parker County, Texas.

## III. Recitals

C. Dixon sold the Original Tract to BM318 during 2018. The majority of the purchase price for the Original Tract was provided through owner financing by Dixon and secured by a deed of trust against most of the Original Tract. The Remaining Land constitutes a portion of the Original Tract. Dixon asserts that BM318 defaulted in the repayment of this debt. Ultimately, BM318 conveyed the Remaining Land to Dixon pursuant to the Special Warranty Deed which was recorded on July 2, 2020.

D. On September 1, 2020, BM318 commenced the Bankruptcy Case and acted as a debtor-in-possession. The Bankruptcy Court ultimately confirmed a plan of reorganization proposed by BM318 in the Bankruptcy Case which became effective on August 2, 2021.

E. On April 23, 2021, Dixon sold the Lumar Land to Lumar. The land was conveyed to Lumar pursuant to the Lumar Deed. The Lumar Land constitutes a part of the Remaining Land. Lumar financed a portion of the purchase price through loans from a third party lender.

F. On August 10, 2021, BM318 commenced the Adversary Proceeding against Dixon seeking to avoid the transfer of the Remaining Land by BM318 to Dixon pursuant to the Special Warranty Deed as a preferential or fraudulent transfer pursuant to sections 547 and 548 of the Bankruptcy Code. Dixon asserts that these avoidance claims by BM318 are without merit.

G. On October 27, 2021, BM318 filed the Lis Pendens which relates to its claims in the Adversary Proceeding against Dixon in relation to the Remaining Land.

H. Lumar sought to intervene in the Adversary Proceeding based on the Lis Pendens, which burdens the Lumar Tract as a part of the Remaining Land. The Bankruptcy Court granted Lumar leave to intervene in the Adversary Proceeding. In the Adversary Proceeding, Lumar asserts that BM318's avoidance claims as to the Remaining Land are without merit, and further asserts that it is also entitled to the protections of section 550(b)(1) and (2) of the Bankruptcy Code. Lumar further asserts that, in addition to the lack of merit in BM318's avoidance claims,

the lender's rights in the Lumar Land pursuant to its deeds of trust are further protected by section 550(b)(2) of the Bankruptcy Code. BM318 contests Lumar's assertions.

I. On September 23, 2022, the Receiver Lawsuit was filed. Thereafter, the Second Receiver was appointed to serve in such capacity through the Second Receiver Order. Based on the Second Receiver Order, further proceedings in the Adversary Proceeding are stayed.

J. Pursuant to paragraph 1 of the Second Receiver Order, the Second Receiver is appointed as receiver for BM318, as one of the "Receivership Entities," with exclusive control and possession of the BM318 assets, of whatever kind and wherever located, including all tangible and intangible property, and which are included as part of the "Receivership Property". Paragraph 3 of the Second Receiver Order clothes the Second Receiver with all power, right and authority possessed by the officers, directors, and managers of each of the Receivership Entities, which includes BM318. Paragraph 6 grants the Second Receiver broad powers over the Receivership Property, including the right to take any action which, prior to the entry of the Second Receiver Order, could have been taken by the officers, directors, managers, and agent of any of the Receivership Entities.

K. BM318's claims and rights in relation to the Adversary Proceeding, including in relation to the Lis Pendens, constitute Receivership Assets subject to the Second Receiver's control pursuant to the Second Receiver Order. This allows the Receiver to settle and resolve the Adversary Proceeding and release the Lis Pendens.

L. The Second Receiver has executed this Release based on the provisions of the Second Receiver Order, his control of BM318 as one of the Receivership Entities, and his control of all property of BM318 as part of the Receivership Assets.

M. The Second Receiver (acting on behalf of BM318) has entered into a Settlement and Release Agreement ("Settlement Agreement") with Lumar to settle and resolve all claims among them in the Adversary Proceeding. The Settlement Agreement is subject to the Agreement to Reaffirm and Adopt Settlement and Release Agreement ("Reaffirmation and Adoption Agreement") among the Second Receiver and Lumar. References herein to the Settlement Agreement refer to the Settlement Agreement subject to the Reaffirmation and Adoption Agreement.

N. The District Court has entered an Order on April 15, 2024, as docket no. 486, modifying the litigation stay contained in the Second Receiver Order to allow the Parties to seek approval of the Settlement Agreement and the Reaffirmation and Adoption Agreement. This Settlement Agreement has been approved by the Bankruptcy Court pursuant to an order entered on May 28, 2024, as docket no. 164, and ratified by the Receivership Court pursuant to an order entered on August 18, 2024, as docket no. 550.

O. This Release is executed and delivered by the Second Receiver pursuant to the Settlement Agreement.

## IV. Release of Lis Pendens

FOR VALUE RECEIVED, pursuant to the terms of the Settlement Agreement, acting with regard to the Receivership Assets of BM318 as one of the Receivership Entities subject to the Second Receiver Order, the Second Receiver hereby releases the Lis Pendens as against the Lumar Land. By so releasing the Lis Pendens against the Lumar Land, the Second Receiver

also releases all rights, title, interest, claims, and causes of action against the Lumar Land, including all claims relating to the Lumar Land asserted or which could have been asserted in the Adversary Proceeding.

Any other term hereof notwithstanding, by this Release the Second Receiver does not release, impair or impact any right, title, interest, claims, and causes of action of or by BM318 against any portion of the Remaining Land.

Executed and effective as of this 21st day of August, 2024.

**SECOND RECEIVER:**

[signature], Receiver

Cortney C. Thomas, as ~~Second~~ Receiver
Pursuant to the Second Receivership Order

**ACKNOWLEDGMENT:**

STATE OF TEXAS

COUNTY OF DALLAS

This instrument was acknowledged before me on the 21st day of August, 2024, by Cortney C. Thomas, as Receiver for BM318, LLC.

My commission expires: 05-16-2026

[signature]

Notary Public, State of Texas

KIMBERLEY OROURKE
Notary Public, State of Texas
Comm. Expires 05-16-2026
Notary ID 6283194

**WHEN RECORDED, RETURN TO:**

J. Robert Forshey
Forshey & Prostok, LLP
777 Main Street, Suite 1550
Fort Worth, Texas 76102

L:\BFORSHEY\Lumar Land & Cattle, LLC (BM318)(non-bnkrplcy)#6323\Barton - SEC Civil Suit 22-cv-02118 (Receivership)\Release of Lis Pendens (Execution v) 8.20.24.docx

# Exhibit A

**EXHIBIT A**

**THE LAND**

BEING 204.50 acres situated in the JAMES BRADLEY SURVEY, Abstract No. 119 and the J.H. REAN SURVEY, Abstract No. 1106, Parker County, Texas, being a portion of that certain tract of land described in deed to The Dixon Water Foundation, recorded in Instrument Number 202019524, Official Public Records, Parker County, Texas, being more particularly described, as follows:

COMMENCING at a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the intersection of the southwesterly line of Bear Creek Road with the northwesterly line of Bear Creek Ranch Road (a 60' Dedicated Public Right-of-Way) and being the east corner of Lot 1, Block A, BEAR CREEK RANCH, an Addition to Parker County, Texas, according to the Plat recorded in Cabinet E, Slide 551, Plat Records, Parker County, Texas;

THENCE S 55°31'36" E, along the southwesterly line of said Bear Creek Road, a distance of 60.00 feet to a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the intersection of the southwesterly line of said Bear Creek Road with the southeasterly line of said Bear Creek Ranch Road;

THENCE N 33°46'16" E, a distance of 30.02 feet to a railroad spike found in Bear Creek Road for the POINT OF BEGINNING of the herein described tract, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6914862.12 and EAST: 2237394.23, for reference;

THENCE in and along said Bear Creek Road, as follows:

S 55°59'27" E, a distance of 325.40 feet to a point;

S 71°46'27" E, a distance of 801.00 feet to a point;

S 70°43'19" E, a distance of 221.91 feet to a 5/8" iron rod found;

S 70°45'54" E, a distance of 1742.88 feet to a 1/2" iron rod found at the most north, northeast corner of said Dixon Water Foundation tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, along a northerly east line of said Dixon Water Foundation tract, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 201702400, Official Public Records, Parker County, Texas, continuing along the common line of said Dixon Water Foundation tract and said Reeves tract, passing the north corner of that certain tract of land described in deed to Mike Wright and wife, Jamie Wright, recorded in Instrument Number 202021901, Official Public Records, Parker County, Texas and continuing along the common line of said Dixon Water Foundation tract and said Wright tract, in all, a distance of 1186.42 feet to a 5/8" iron rod found at an interior ell corner of said Dixon Water Foundation tract, being the most west corner of said Wright tract;

THENCE along the common line of said Dixon Water Foundation tract and said Wright tract, as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found;

S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;

N 72°21'34" E, a distance of 390.26 feet to a point in a southerly, west line of said Reeves tract, from which a 3" steel pipe fence post found bears N 06°43'26" W, a distance of 1.25 feet, for reference;

THENCE S 00°10' 37" W, along the common line of said Dixon Water Foundation tract and said Reeves tract, a distance of 764.25 feet to a 1/2" iron rod found at the southwest corner of said Reeves tract and being the southeast corner of the herein described tract;

THENCE N 85°12'57" W, across said Dixon Water Foundation tract, a distance of 3373.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084" for the southwest corner of the herein described tract, from which a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the southeast corner of that certain tract of land described in deed to GH Lumar JV, recorded in Instrument Number 201924134, Official Public Records, Parker County, Texas, bears N 89°37'52" W, a distance of 266.86 feet, for reference;

THENCE continuing across said Dixon Water Foundation tract, as follows:

N 03°21'24" E, a distance of 330.89 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

N 01°38'28" E, a distance of 428.44 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";

N 00° 12' 47" E, a distance of 95.78 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084" in the south line of that certain remaining portion tract of land described in deed to GH Lumar JV, recorded in Instrument Number 202024136, Official Public Records, Parker County, Texas;

THENCE S 80°56'20" E, along the south line of said GH Lumar JV tract (Instrument Number 202024136), a distance of 31.26 feet to a 1/2" capped iron rod set stamped "C.F. a the southeast corner of said GH Lumar JV tract (Instrument Number 202024136);

THENCE N 00°31'28" W, along the east line of said GH Lumar JV tract (Instrument Number 202024136), a distance of 655.53 feet to a 1/2" iron rod found;

THENCE N 09°47'14" W, continuing along the east line of said GH Lumar JV tract (Instrument Number 202024136), at a distance of 741.92 feet passing a 1/2" capped iron rod found stamped "C.F. Stark RPLS 5084" at the southeast corner of the Bear Creek Ranch Road Dedicated Public Right-of-Way as shown on said BEAR CREEK RANCH Plat, recorded in said Cabinet E, Slide 551, and continuing along the northeasterly line of said Bear Creek Ranch Road, in all, a distance of 797.08 feet to a 1/2" iron rod found;

THENCE along the northeast, east and southeasterly line of said Bear Creek Ranch Road, as follows:

N 32°59' 06" W, a distance of 349.92 feet to a 1/2" iron rod found;

N 09°44'07" E, a distance of 103.49 feet to a 1/2" iron rod found;

N 33°46'16" E, a distance of 811.29 feet to the POINT OF BEGINNING and containing 204.50 acres (8,908,185 square feet) of land, more or less.

# Exhibit B

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>*Plaintiff,*<br><br>v.<br><br>TIMOTHY BARTON,<br>CARNEGIE DEVELOPMENT, LLC,<br>WALL007, LLC,<br>WALL009, LLC,<br>WALL010, LLC,<br>WALL011, LLC,<br>WALL012, LLC,<br>WALL016, LLC,<br>WALL017, LLC,<br>WALL018, LLC,<br>WALL019, LLC,<br>HAOQIANG FU (a/k/a MICHAEL FU),<br>STEPHEN T. WALL,<br><br>*Defendants,*<br><br>DJD LAND PARTNERS, LLC, and<br>LDG001, LLC,<br><br>*Relief Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:22-CV-2118-X |

**ORDER APPOINTING RECEIVER**

For the reasons set out in a memorandum opinion and order filed today, the Court enters the following order.

**WHEREAS** this matter has come before this Court upon motion of Plaintiff Securities and Exchange Commission ("SEC") to appoint a receiver in the above-captioned action; and,

**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all assets of the Receivership Entities (defined below);

**WHEREAS** the Court finds that: (a) there is a clear necessity for the receivership to protect defrauded investors' interest in property; (b) legal and less drastic equitable remedies are inadequate; and (c) the benefits of a receivership outweigh the burdens on the affected parties.

**WHEREAS** the Court finds that: (a) a receiver is necessary to manage the Receivership Entities' properties to preserve and protect the value of such properties; (b) Defendant Timothy Barton ("Barton") has misused and mismanaged the Receivership Entities' properties and has, and is likely to continue to, misuse, dissipate and/or conceal investor funds and assets obtained with, or that otherwise benefited from, investor funds; (c) certain Receivership Entities and their assets are subject to liens, lawsuits, and foreclosures that threaten to further diminish their value without the protection of a receiver that would have the power to stay litigation and foreclosures, among other powers; (d) there is a substantial risk that Barton, the Receivership Entities, and other entities that Barton directly or indirectly controls do not hold assets sufficient to satisfy the potential disgorgement of ill-gotten gains for the benefit of investors; (e) absent a receiver to manage, maximize, and protect the value of the Receivership Entities' assets, the investors' interest in these properties is at substantial risk; and (f) these benefits outweigh the burden on Barton.

**WHEREAS** the Court finds that each of the Receivership Entities received or

benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation.

**WHEREAS** this Court has subject matter jurisdiction over this action and personal jurisdiction over the Receivership Entities, and venue properly lies in this district.

**WHEREAS**, the Court finds that the SEC has brought this action to enforce the federal securities laws, in furtherance of the SEC's police and regulatory powers, and the relief sought by the SEC and provided in this Order is in the public interest by preserving the illicit proceeds of fraudulent conduct, penalizing past unlawful conduct and deterring future wrongdoing, and is not in furtherance of a pecuniary purpose, and therefore, the Court concludes that the entry of this Order is excepted from the automatic stay pursuant to 11 U.S.C. §362(b)(4).

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Court hereby takes exclusive jurisdiction and possession of the assets, of whatever kind and wherever situated, of the following entities, each of which received or benefited from assets traceable to Barton's alleged fraudulent activities that are the subject of this litigation (collectively, "Receivership Entities"):

2. 126 Villita, LLC
3. 2999TC Acquisitions LLC
4. 2999TC JMJ CMGR, LLC (Delaware)
5. AVG West, LLC
6. BEE2019, LLC

7. BM318, LLC

8. Broadview Holdings Trust

9. Carnegie Development, LLC

10. D4DS LLC

11. D4FR LLC

12. D4IN, LLC (Texas)

13. D4KL, LLC

14. D4MC, LLC (Texas)

15. D4OP, LLC

16. DJD Land Partners, LLC

17. Enoch Investments, LLC

18. FHC Acquisition, LLC

19. Gillespie Villas, LLC

20. Goldmark Hospitality, LLC

21. HR Sterling, LLC

22. JMJ Acquisitions, LLC

23. JMJ Development LLC (f/k/a JMJ Development, Inc.)

24. JMJ Hospitality, LLC

25. JMJ VC Management, LLC

26. JMJAV, LLC

27. JMJD4, LLC (Delaware)

28. JMR100, LLC

29. LaJolla Construction Management, LLC

Case 24-40791-mxm11 Doc 71-6-1 Filed 10/24/24 Entered 10/24/24 15:59:59 Desc Exhibit 1 Page 13 of 28



30. LC Aledo TX, LLC
31. LDG001, LLC
32. Lynco Ventures, LLC
33. Mansions Apartment Homes at Marine Creek, LLC
34. Marine Creek SP, LLC
35. MO 2999TC, LLC
36. Northstar PM, LLC (Texas)
37. Orchard Farms Village, LLC
38. Ridgeview Addition, LLC (Texas)
39. Seagoville Farms, LLC
40. SF Rock Creek, LLC
41. TC Hall, LLC
42. Titan Investments, LLC a/k/a Titan 2022 Investments, LLC
43. Venus59, LLC
44. Villita Development, LLC
45. Villita Towers, LLC
46. WALL007, LLC
47. WALL009, LLC
48. WALL010, LLC
49. WALL011, LLC
50. WALL012, LLC
51. WALL016, LLC
52. WALL017, LLC

53. WALL018, LLC

54. WALL019, LLC

55. WRL2019, LLC (Texas)

2. Until further Order of this Court, Cortney C. Thomas is hereby appointed to serve without bond as receiver (the "Receiver") of the Receivership Entities.

3. The Receiver shall have all powers, authorities, rights, and privileges heretofore possessed by the officers, directors, trustees, managers and general and limited partners of the entity Receivership Entities under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Rule 66 of the Federal Rules of Civil Procedure.

## I. GENERAL POWERS AND DUTIES OF RECEIVER

4. The trustees, directors, officers, managers, employees, investment advisers, accountants, attorneys and other agents of the Receivership Entities are hereby dismissed and the powers of any general partners, directors and/or managers are hereby suspended. Such persons and entities shall have no authority with respect to the Receivership Entities' operations or assets, except to the extent as may hereafter be expressly granted by the Receiver. The Receiver shall assume and control the operations of the Receivership Entities and shall pursue and preserve all of their claims.

5. No person holding or claiming any position of any sort with any of the Receivership Entities shall possess any authority to act by or on behalf of any of the Receivership Entities.

6. Subject to the specific provisions in Sections II through XII below, the Receiver shall have the following general powers and duties:

A. To use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Entities, including, but not limited to, monies, funds, securities, credits, effects, goods, chattels, lands, premises, leases, claims, rights and other assets, together with all rents, profits, dividends, interest or other income attributable thereto, of whatever kind, which the Receivership Entities own, possess, have a beneficial interest in, or control directly or indirectly ("Receivership Property" or, collectively, the "Receivership Estates");

B. To take custody, control, and possession of all Receivership Property and records relevant thereto from the Receivership Entities; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Property and records relevant thereto;

C. To manage, control, operate, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Property, pending further Order of this Court;

D. To use Receivership Property for the benefit of the Receivership Estates, making payments and disbursements and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver;

E. To take any action which, prior to the entry of this Order, could have been taken by the officers, directors, partners, managers, trustees, and agents of the Receivership Entities;

F. To engage and employ persons in his discretion to assist him in carrying out his duties and responsibilities hereunder, including, but not limited to, accountants, attorneys, securities traders, registered representatives, financial or business advisers, liquidating agents, real estate agents, forensic experts, brokers, traders, or auctioneers;

G. To take such action as necessary and appropriate for the preservation of Receivership Property or to prevent the dissipation, concealment, or inequitable distribution of Receivership Property;

H. Enter into and cancel contracts and purchase insurance as the Receiver deems necessary or advisable;

G. The Receiver is authorized to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I. To bring such legal actions based in law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J. To pursue, resist, defend, compromise or otherwise dispose of all suits, actions, claims, and demands which may now be pending or which may be brought by or asserted against the Receivership Entities; and,

K. To take such other action as may be approved by this Court.

## II. ACCESS TO INFORMATION

7. The individual Receivership Entities and the past and/or present officers, directors, agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the entity Receivership Entities, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of, and/or relating to, the Receivership Entities and/or all Receivership Property; such information shall include but not be limited to books, records, documents, accounts, and all other instruments and papers.

8. Within ten (10) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement, listing: (a) the identity, location, and estimated value of all Receivership Property; (b) all employees (and job titles thereof), other personnel, attorneys, accountants, and

Case 24-04091-mxm11 Doc 16-1 Filed 10/24/24 Entered 10/24/24 17:05:39 Desc Exhibit 1 Page 87 of 120



any other agents or contractors of the Receivership Entities; and, (c) the names, addresses, and amounts of claims of all known creditors of the Receivership Entities.

9. Within twenty (20) days of the entry of this Order, the Receivership Entities shall file with the Court and serve upon the Receiver and the SEC a sworn statement and accounting, with complete documentation, covering the period from January 1, 2017 to the present:

A. Of all Receivership Property, wherever located, held by or in the name of the Receivership Entities, or in which any of them, directly or indirectly, has or had any beneficial interest, or over which any of them maintained or maintains and/or exercised or exercises control, including, but not limited to: (a) all securities, investments, funds, real estate, automobiles, jewelry, and other assets, stating the location of each; and (b) any and all accounts, including all funds held in such accounts, with any bank, brokerage, or other financial institution held by, in the name of, or for the benefit of any of them, directly or indirectly, or over which any of them maintained or maintains and/or exercised or exercises any direct or indirect control, or in which any of them had or has a direct or indirect beneficial interest, including the account statements from each bank, brokerage, or other financial institution;

B. Identifying every account at every bank, brokerage, or other financial institution: (a) over which Receivership Entities have signatory authority; and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Entities;

C. Identifying all credit, bank, charge, debit, or other deferred payment card issued to or used by each Receivership Defendant, including but not limited to the issuing institution, the card or account number(s), all persons or entities to which a card was issued and/or with authority to use a card, the balance of each account and/or card as of the most recent billing statement, and all statements for the last twelve (12) months;

D. Of all assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received;

E. Of all funds received by the Receivership Entities, and each of them, in any way related, directly or indirectly, to the conduct alleged in the SEC's Complaint. The submission must clearly identify, among other things,

Case 24-40791-mxm11 Doc 76-1 Filed 10/24/24 Entered 10/24/24 17:51:39 Desc Exhibit 1 Page 19 of 38




all investors, the securities they purchased, the date and amount of their investments, and the current location of such funds;

F. Of all expenditures exceeding $1,000 made by any of them, including those made on their behalf by any person or entity; and

G. Of all transfers of assets made by any of them.

10. Within thirty (30) days of the entry of this Order, the Receivership Entities shall provide to the Receiver and the SEC copies of the Receivership Entities' federal income tax returns for the years 2017 through 2021 with all relevant and necessary underlying documentation.

11. The Receivership Entities and the Receivership Entities' past and/or present officers, directors, agents, attorneys, managers, shareholders, employees, accountants, debtors, creditors, managers and general and limited partners, and other appropriate persons or entities shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business of the Receivership Entities, or any other matter relevant to the operation or administration of the receivership or the collection of funds due to the Receivership Entities.

12. The Receivership Entities are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver.

## III. ACCESS TO BOOKS, RECORDS, AND ACCOUNTS

13. The Receiver is authorized to take immediate possession of all assets, bank accounts or other financial accounts, books and records, and all other documents or instruments relating to the Receivership Entities. All persons and entities having

Case 21-40791-mxm11 Doc 176-1 Filed 10/24/24 Entered 10/24/24 17:51:39 Desc Exhibit 1 202421887 08/22/2024 02:08:24 PM Page 20 of 38



control, custody, or possession of any Receivership Property are hereby directed to turn such property over to the Receiver.

14. The Receivership Entities, as well as their agents, servants, employees, attorneys, any persons acting for or on behalf of the Receivership Entities, and any persons receiving notice of this Order by personal service, email, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Entities are hereby directed to deliver the same to the Receiver, his agents, and/or employees.

15. All banks, brokerage firms, financial institutions, and other persons or entities which have possession, custody, or control of any assets or funds held by, in the name of, or for the benefit of, directly or indirectly, any of the Receivership Entities that receive actual notice of this Order by personal service, email, facsimile transmission, or otherwise shall:

A. Not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, funds, or accounts in the name of or for the benefit of the Receivership Entities except upon instructions from the Receiver;

B. Not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this Court;

C. Within five (5) business days of receipt of that notice, file with the Court and serve on the Receiver and counsel for the SEC a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and,

D. Cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

Case 24-40791-mxm11 Doc 76-1 Filed 10/02/24 Entered 10/02/24 17:59:39 Desc Exhibit 1 Page 21 of 38




## IV. ACCESS TO REAL AND PERSONAL PROPERTY

16. The Receiver is authorized to take immediate possession of all personal property of the Receivership Entities, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage devices, books, papers, data processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures, and other securities and investments, contracts, mortgages, furniture, office supplies, and equipment.

17. The Receiver is authorized to take immediate possession of all real property of the Receivership Entities, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this Order by personal service, email, facsimile transmission or otherwise, all persons other than law enforcement officials acting within the course and scope of their official duties, are (without the express written permission of the Receiver) prohibited from: (a) entering such premises; (b) removing anything from such premises; or, (c) destroying, concealing, or erasing anything on such premises.

18. The Receivership Entities, all persons acting on behalf of any Receivership Defendant, and any person who receives actual or constructive notice of this Order who has or had possession or control over any Receivership Assets, is directed to:

A. Hold and retain any such Receivership Assets that are within his or her control and prohibit any person or entity from assigning, concealing, converting, disbursing, dissipating, encumbering, liquidating, loaning,

pledging, selling, spending, transferring, or withdrawing any such Asset except:

1. As directed by further order of the Court; or

2. As directed in writing by the Receiver.

B. Within five (5) business days after being served a copy of this Order, provide the Receiver a sworn statement setting forth:

1. The account number and other identifying information for any such Receivership Asset belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Defendant;

2. The balance of each such account, or a description of the nature and value of such Asset as of the close of business on the day on which this Order is received, and, if the account or other Asset has been closed or removed, or more than $5,000 withdrawn or transferred from it, on or after March 1, 2021, the date of the closure or removal of the funds, the total funds removed or transferred, and the name of the person or entity to whom such account or other Asset was remitted;

3. All keys, codes, and passwords, entry codes, combinations to locks, and information or devices required to open or gain access to any Asset or Document, including, but not limited to, access to the business premises, computer servers, networks, or databases, or telecommunications systems or devices;

4. The identification and location of any safe deposit box, commercial mailbox, or storage facility belonging to, for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity, and if the safe deposit box, storage facility, commercial mailbox, or storage facility has been closed or removed, the date closed or removed;

5. Within five (5) business days of a written request from the Receiver, provide the Receiver copies of all Documents relating to each Receivership Asset, including, but not limited to account applications, statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs.

Case 2024-01-...1 Doc 171-1 Filed 10/8/24 Entered 10/8/24 17:05:39 Desc
Exhibit 1 Page 23 of 38 202421887 08/22/2024 02:08:24 PM Page 23 of 38



19. In order to execute the express and implied terms of this Order, the Receiver is authorized to change door locks to the premises described above. The Receiver shall have exclusive control of the keys. The Receivership Entities, or any other person acting or purporting to act on their behalf, are ordered not to change the locks in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the receivership.

20. The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Entities, and to inspect all mail opened prior to the entry of this Order, to determine whether items or information therein fall within the mandates of this Order.

21. Upon the request of the Receiver, the United States Marshal Service, in any judicial district, is hereby ordered to assist the Receiver in carrying out his duties to take possession, custody, and control of, or identify the location of, any assets, records, or other materials belonging to the Receivership Estate.

## V. <u>REPATRIATION OF ASSETS AND DOCUMENTS</u>

22. Immediately upon service of this Order, any person or entity with possession or control over any Receivership Assets shall:

A. Take such steps as are necessary to transfer to the United States all Documents and Assets that are located outside the United States and belong to, are for the use or benefit of, under the control of, or subject to access by any Defendant or Receivership Entity; and

B. Hold and retain all repatriated Assets and prevent the disposition, transfer, or dissipation of such Assets except as required by this Order.

23. Receivership Entities, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are preliminarily restrained and enjoined from taking any action that may result in the encumbrance or dissipation of foreign Assets, or in the hindrance of the repatriation required by this Order, including:

A. Sending any statement, letter, fax, email or wire transmission, telephoning, or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement until such time as all Assets have been fully repatriated according to Section VIII of this Order; or

B. Notifying any trustee, protector, or other agent of any Defendant or Receivership Entity of the existence of this Order, or of the fact that repatriation is required under a court Order, until such time as all Assets have been fully repatriated according to Section VIII of this Order.

## VI. NOTICE TO THIRD PARTIES

24. Defendants and the Receivership Entities shall immediately provide a copy of this Order to each affiliate, sales entity, successor, assign, member, officer, director, employee, agent, independent contractor, client, servant, attorney, subsidiary, division, and representative of any Defendant or Receivership Defendant. Within ten (10) business days following service of this Order, Defendants and Receivership Entities shall serve on the Receiver a declaration identifying the name, title, address, telephone number, date of service, and manner of service of each person Defendants or Receivership Entities served with a copy of this Order in compliance with this provision.

25. Copies of this Order may be served by the Receiver by any means, including U.S. first class mail, overnight delivery, facsimile, electronic mail, or personally by agents or employees of the Receiver, by any law enforcement agency, or by process server, upon any person, including financial institutions, that may have possession, custody, or control over any Asset or Document belonging to, for the use or benefit of, under the control of, or subject to access by any Receivership Defendant, or that may otherwise be subject to any provision of this Order. Service upon any branch or office of any financial institution shall constitute service upon the entire financial institution.

26. The Receiver shall promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Entities, as the Receiver deems necessary or advisable to effectuate the operation of the receivership.

27. All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this Court, pay all such obligations in accordance with the terms thereof to the Receiver and its receipt for such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

28. In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with, and/or serve this Order upon, any person, entity, or government office that he deems appropriate to inform them of the status of this matter and/or the financial condition of the Receivership Estates. All government

offices which maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this Order upon the request of the Receiver or the SEC.

29. The Receiver is authorized to instruct the United States Postmaster to hold and/or reroute mail which is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Entities (the "Receiver's Mail"), including all mail addressed to, or for the benefit of, the Receivership Entities.

30. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Entities shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. All personal mail of any individual Receivership Entities, and/or any mail appearing to contain privileged information, and/or any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Entities. The Receivership Entities shall not open a new mailbox, or take any steps or make any arrangements to receive mail in contravention of this Order, whether through the U.S. mail, a private mail depository, or courier service.

31. Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, garbage, or trash removal services to the Receivership

Case 24-40791-mxm11 Doc 16-13 Filed 10/24/24 Entered 10/24/24 17:05:59 Desc
Exhibit 1 Page 27 of 38




Entities shall maintain such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

## VII. INJUNCTION AGAINST INTERFERENCE WITH RECEIVER

32. The Receivership Entities and all persons receiving notice of this Order by personal service, email, facsimile or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

A. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

B. Hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties; such prohibited actions include but are not limited to concealing, destroying, or altering records or information;

C. Dissipate or otherwise diminish the value of any Receivership Property; such prohibited actions include but are not limited to releasing claims or disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Property, enforcing judgments, assessments, or claims against any Receivership Property or any Receivership Defendant, attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or which otherwise affects any Receivership Property;

D. Create, operate, or exercise any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship or corporation, without first providing the Receiver with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, e-mail address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities; or,

E. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates.

## VIII. COOPERATION WITH THE RECEIVER

33. Defendants and Receivership Entities, and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, whether acting directly or indirectly and all persons who receive actual notice of this Order, shall fully cooperate with and assist the Receiver in taking and maintaining possession, custody, or control of the Assets and Documents of the Receivership Entities. This cooperation and assistance shall include, but is not limited to:

A. Providing information to the Receiver as directed above or that the Receiver deems necessary to exercise the authority and discharge the responsibilities delegated to the Receiver under this Order;

B. Advising all persons who owe money to the Receivership Entities that all debts should be paid directly to the Receiver; and

C. Transferring funds at the Receiver's direction and producing Documents related to the Assets and sales of the Receivership Entities. The entities obligated to cooperate with the Receiver under this provision include financial institutions and persons that have transacted business with the Receivership Entities. The Receiver shall promptly notify the Court and SEC counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

## IX. STAY OF LITIGATION

34. As set forth in detail below, the following proceedings, excluding the instant proceeding and all police or regulatory actions and actions of the SEC related to the above-captioned enforcement action, are stayed until further Order of this Court:

Case 24-40791-mxm11 Doc 16-1 Filed 10/24/24 Entered 10/24/24 15:19:39 Desc Exhibit 1 Page 98 of 120




> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever located; (c) any of the Receivership Entities, including subsidiaries and partnerships; or, (d) any of the Receivership Entities' past or present officers, directors, managers, agents, parent or affiliated entities, or general or limited partners sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

35. The parties to any and all Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process.

36. All Ancillary Proceedings are stayed in their entirety, and all Courts having any jurisdiction thereof are enjoined from taking or permitting any action until further Order of this Court. Further, as to a cause of action accrued or accruing in favor of one or more of the Receivership Entities against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

## X. <u>MANAGING ASSETS</u>

37. For each of the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash equivalent Receivership Property (the "Receivership Funds").

38. The Receiver's deposit account shall be entitled "Receiver's Account, Estate of Barton Companies" together with the name of the action.

39. The Receiver may, without further Order of this Court, transfer, compromise, or otherwise dispose of any Receivership Property, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such Receivership Property.

40. Subject to Paragraph 42 immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estate, and with due regard to the realization of the true and proper value of such real property.

41. Upon further Order of this Court, pursuant to such procedures as may be required by this Court and additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell, and transfer clear title to, all real property in the Receivership Estates.

42. The Receiver is authorized to take all actions to manage, maintain, and/or wind-down business operations of the Receivership Estates, including making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others, as appropriate.

43. The Receiver shall take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable "Settlement Fund," within the meaning of Section 468B of the Internal Revenue Code and of the regulations.

**XI. INVESTIGATE AND PROSECUTE CLAIMS**

44. The Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Property.

45. Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Entities were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receiver deems necessary and appropriate; the Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receiver should provide prior notice to Counsel for the SEC before commencing investigations and/or actions.

46. The Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by all entity Receivership Entities.

47. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined below), and the Receivership Estate.

## XII. BANKRUPTCY FILING

48. Effective immediately, the Receiver, as sole and exclusive officer, director and managing member of Wall007, LLC, Wall009, LLC, Wall010, LLC, Wall011, LLC, Wall012, LLC, Wall016, LLC, Wall017, LLC, Wall018, LLC, and Wall019, LLC (collectively, "Wall Entities"), shall possess sole and exclusive authority and control over the Wall Entities, as debtors-in-possession, in their respective Chapter 11 cases titled *In re WALL007 LLC, et al.*, No. 22-41049 (Bankr. E.D. Tex.) (the "Bankruptcy Cases") pending in the U.S. Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"). The employment of any and all other officers, directors, managers or other employees of the Wall Entities is and are hereby terminated by the Court. All such persons shall comply with the applicable provisions of this Order.

49. Within thirty (30) days of the entry of this Order, the Receiver shall report to this Court as to whether the Bankruptcy Cases should continue in Chapter 11, or be converted to Chapter 7, dismissed or suspended during the course of the receivership. The Receiver shall file the appropriate pleadings with the Court and the Bankruptcy Court effectuating this Order.

50. The Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for other Receivership Entities. If a Receivership Defendant is (or has been) placed in

Case 2024-07091 Doc 71 Filed 10/24/24 Entered 10/24/24 10:59:39 Desc Exhibit 1C Page 33 of 38 202421887 08/22/2024 02:08:24 PM Page 33 of 38



bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Pursuant to Paragraph 3 above, the Receiver is vested with management authority for all entity Receivership Entities and may therefore file and manage a Chapter 11 petition.

51. All persons and entities, other than the Receiver, are barred from commencing any bankruptcy proceedings against any of the Receivership Entities.

## XIII. LIABILITY OF RECEIVER

52. Until further Order of this Court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

53. The Receiver and his agents, acting within scope of such agency ("Retained Personnel"), are entitled to rely on all rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

54. This Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

55. In the event the Receiver decides to resign, the Receiver shall first give written notice to the SEC's counsel of record and the Court of its intention, and the

Case 24-40791-mxm11 Doc 166-3 Filed 10/24/24 Entered 10/24/24 17:05:35 Desc Exhibit 1C Page 34 of 38




resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## XIV. RECOMMENDATIONS AND REPORTS

56. The Receiver is authorized, empowered, and directed to develop a plan for the fair, reasonable, and efficient recovery and liquidation of all remaining, recovered, and recoverable Receivership Property (the "Liquidation Plan").

57. Within ninety (90) days of the entry date of this Order, the Receiver shall file the Liquidation Plan in the above-captioned action, with service copies to counsel of record.

58. Within thirty (30) days after the end of each subsequent calendar quarter following the date on which the Receiver files his Liquidation Plan, the Receiver shall file and serve a full report and accounting of each Receivership Estate (the "Quarterly Status Report"), reflecting (to the best of the Receiver's knowledge as of the period covered by the report) the existence, value, and location of all Receivership Property, and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

59. The Quarterly Status Report shall contain the following:

A. A summary of the operations of the Receiver;

B. The amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of unencumbered funds in the estate;

C. A schedule of all the Receiver's receipts and disbursements (attached as Exhibit A to the Quarterly Status Report), with one column for the quarterly period covered and a second column for the entire duration of the receivership;

Case 24-40791-mxm11 Doc 11-1 Filed 10/24/24 Entered 10/24/24 15:13:59 Desc Exhibit 1 Page 35 of 38




D. A description of all known Receivership Property, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets where no disposition is intended;

E. A description of liquidated and unliquidated claims held by the Receivership Estate, including the need for forensic and/or investigatory resources; approximate valuations of claims; and anticipated or proposed methods of enforcing such claims (including likelihood of success in: (i) reducing the claims to judgment; and, (ii) collecting such judgments);

F. A list of all known creditors with their addresses and the amounts of their claims;

G. The status of Creditor Claims Proceedings, after such proceedings have been commenced; and,

H. The Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

60. On the request of the SEC, the Receiver shall provide the SEC with any documentation that the SEC deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further the SEC's mission.

## XV. FEES, EXPENSES, AND ACCOUNTINGS

61. Subject to the paragraphs below, the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state, or local taxes.

62. Subject to the paragraph immediately below, the Receiver is authorized to solicit persons and entities ("Retained Personnel") to assist him in carrying out the duties and responsibilities described in this Order. The Receiver shall not engage any

Retained Personnel without first obtaining an Order of the Court authorizing such engagement.

63. The Receiver and Retained Personnel are entitled to reasonable compensation and expense reimbursement from the Receivership Estates. Such compensation shall require the prior approval of the Court.

64. Within forty-five (45) days after the end of each calendar quarter, the Receiver and Retained Personnel shall apply to the Court for compensation and expense reimbursement from the Receivership Estates (the "Quarterly Fee Applications"). At least thirty (30) days prior to filing each Quarterly Fee Application with the Court, the Receiver will serve upon counsel for the SEC a complete copy of the proposed Application, together with all exhibits and relevant billing information in a format to be provided by SEC staff.

65. All Quarterly Fee Applications will be interim and will be subject to cost benefit and final reviews at the close of the receivership. At the close of the receivership, the Receiver will file a final fee application, describing in detail the costs and benefits associated with all litigation and other actions pursued by the Receiver during the course of the receivership.

66. Quarterly Fee Applications may be subject to a holdback in the amount of 20% of the amount of fees and expenses for each application filed with the Court. The total amounts held back during the course of the receivership will be paid out at the discretion of the Court as part of the final fee application submitted at the close of the receivership.

67. Each Quarterly Fee Application shall:

A. Contain representations that: (i) the fees and expenses included therein were incurred in the best interests of the Receivership Estate; and, (ii) unless previously disclosed to and approved by the Court, the Receiver has not entered into any agreement, written or oral, express or implied, with any person or entity concerning the amount of compensation paid or to be paid from the Receivership Estate, or any sharing thereof.

68. At the close of the Receivership, the Receiver shall submit a Final Accounting, in a format to be provided by SEC staff, as well as the Receiver's final application for compensation and expense reimbursement.

**IT IS SO ORDERED**, this 29th day of November, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

# FILED AND RECORDED

OFFICIAL PUBLIC RECORDS

*Lila Deakle*

202421887
08/22/2024 02:08:24 PM
Fee: $169.00
Lila Deakle, County Clerk
Parker County, Texas
RELEASE

# Exhibit D
## (to Motion to Enforce Settlement)

202428549 LISPENDEN Total Pages: 5

**NOTICE OF LIS PENDENS**

STATE OF TEXAS §

§

COUNTY OF PARKER §

NOTICE IS HEREBY GIVEN that in Cause No. 3:22-cv-02118-X, styled **SEC vs. Barton,** commenced in the United States District Court for the Northern District of Texas Dallas Division, the defendant, Timothy Barton, has filed an appeal to the Fifth Circuit Court of Appeals against the order appointing receiver [Dkt No. 417], filed on November 29, 2023, and entered on November 29, 2023. This notice may affect the title to the real property herein set forth.

The Litigation seeks to address challenge the appointment of receiver and the declaring BM318 LLC under receivership entities, which has significant future value. The defendant argues that the pending appeal and the unresolved issues regarding the receivership's management be resolved into its vacatur in entirety. The property is specifically described on **exhibit A** attached, which has a common address located in County of Parker, TX, which will affect title to such real property, more particularly described in **Exhibit "A"** attached hereto and which is incorporated herein by reference.

SIGNED this 6th day of Sep, 2024.

By: */s/ Timothy Barton*
Timothy Barton

X [signature]

X Sept 6 2024

GUDELIA NICOLE GUTIERREZ
Notary Public, State of Texas
Comm. Expires 07-15-2028
Notary ID 134992294

STATE OF TEXAS §

§

COUNTY OF PARKER §

On the 6th day of September, 2024, this instrument was acknowledged before me by Tim Barton, Manager and President of BM318, LLC, on behalf of such entity.

[signature]
Notary Public, State of Texas

R

**EXHIBIT "A"**
**PROPERTY LEGAL DESCRIPTION**

**TRACT 1**

BEING 2055.70 acres of land situated in the JAMES BRADLEY SURVEY, ABSTRACT No. 119, JAMES BRADLEY SURVEY, ABSTRACT No. 120, JOHN D. BAY SURVEY, ABSTRACT NO. 195, J.H. REAN SURVEY, ABSTRACT No. 1106, T.J. BENDERMAN SURVEY, ABSTRACT No. 2519, I. & G.N. RR. CO., SECTION NO. 3, BLOCK 1, ABSTRACT
NO. 1799 and the PETER B. HOLDER SURVEY, ABSTRACT No. 614, Parker County, Texas, being a portion of those certain tracts of land described in deed as Parcel No. 1 and Parcel No. 2, to The Dixon Foundation, recorded in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 2055.70 acres being more particularly described as follows:

BEGINNING at the most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel fence corner post found in the south line of said Bear Creek Road bears S 01°12'56" E, a distance of40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone 4202 (Grid) coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;

THENCE along Bear Creek Road, as fo1lows:
S 67°36'03" E, a distance of3869.57 feet to the most northerly northeast corner of said Parcel No. 2·'
S 02°12'27" E, a distance of 1472.57 feet to a point;
S 55°59'27" E, a distance of 1165.45 feet to a point; S 71°46'27" E, a distance of 801.00 feet to apoint; S 70°43'19" E, a distance of 221.91 feet to apoint;
S 70°45'54 E, a distance of 1742.88 feet to a point for the most northerly northeast corner of the herein described 2055.70 acre tract;

THENCE S 24°06'27" W, leaving said Bear Creek Road, passing the northwest corner of that certain tract of land described in deed to Kevin Reeves, recorded in Instrument Number 2017- 02400, Official Public Records, Parker County, Texas, and continuing along the most west line of said Reeves tract, in all, a distance of 1 J 86.42 feet to a point from which a 5/8" iron rod found bears N 60°42'50" W, a distance of 0.42 feet, for reference;

THENCE along the southwesterly lines of said Reeves tract as follows:

S 60°42'50" E, a distance of 230.94 feet to a 5/8" iron rod found; S 14°49'14" E, a distance of 744.61 feet to a 5/8" iron rod found;
N 72°21'34" E, a distance of 390.26 feet to a point from which a 3" steel pipe fence post bears N 06°43'26" W, a distance of 1.25 feet for reference;
S 00°10'37" W, a distance of 764.25 feet to a 1/2" iron rod fom1d at the southwest corner of said Reeves tract, being in the north line of a Seventy (70) foot wide Transmission Easement and Right of-Way recorded in Book 2684, Page 531 and Book 2734, Page 1161, Official Public Records, Parker County, Texas;

☐

THENCE along the south line of said Reeves tract and the north line of said Transmission Easement and Right-of-Way, as follows:

N 89°17'27" E, a distance of 766.57 feet to a point; S 87°58'20" E, a distance of 852.96

feet to a point;
S 87 37'59" E, a distance of 500.58 feet to a point in the west occupied line of said Bear Creek Road, at the southeast corner of said Reeves tract;

THENCE S 20°01'40" E, along the west occupied line of said Bear Creek Road, a distance of
75.70 feet to a 5/8" capped iron rod found stamped "Brooks Baker", being in the most easterly south line of said Parcel No. 2;

THENCE along the most easterly south line of said Parcel No. 2, as follows:

N 87°38'33" W, a distance of 529.23 feet to a point; N 87°58'55" W, a distance of 851.08 feet to a point;
S 89°16'51" W, a distance of 765.97 feet to a point at the most southerly southwest corner of said Parcel No. 2 and being in the east line of said Parcel No. 1;

THENCE S 03°54'04" E, along the east line of said Parcel No. 1 and along the called east line of said BENDERMAN SURVEY, a distance of10017.79 feet to a 2" pipe in concrete at the southeast corner of said Parcel No. 1 and being the called southeast corner of said BENDERMAN SURVEY;

THENCE S 89°26'1O" W, along the south line of said Parcel No. 1 and along the called south line of said BENDERMAN SURVEY, a distance of 1606.98 feet to a 5/8" capped iron rod found stamped "Brooks Baker";

THENCE S 89°48'07" W, continuing along the south line of said Parcel No. 1 and continuing along the called south line of said BENDERMAN SURVEY, a distance of 3711.27 feet to a 2" pipe in concrete found at the most southerly southwest corner of said Parcel No. 1;



THENCE N 01°35'25" W, along the most southerly west line of said Parcel No. 1, a distance of 1216.91 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. I and being in the called south line of said J.H. REAN SURVEY;

THENCE N 89°19'15" W, along the most westerly south line of said Paree] No. I and along the called south line of said J.H. REAN SURVEY, a distance of660.00 feet to a 2" pipe in concrete found at the most westerly southwest corner of said Parcel No. 1 and being the called southwest corner of said J.H. REAN SURVEY;

THENCE along the west line of said Parcel No. 1 and along the called west line of said J.H. REAN SURVEY, as follows:

N 00°01'41" W, a distance of 2676.89 feet to a 5/8" iron rod found; N 00°04'03" W, a distance of 1981.74 feet to a 5/8" iron rod found;

N 00°10'29" E, a distance of 1520.50 feet to a 5/8" iron rod found; N 00°04'43" W, a distance of 1097.99 feet to a 5/8" iron rod found;
N 00°02'24" W, a distance of 901.55 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084";
N 00°25'07' W, a distance of 984.78 feet to a 2" pipe in concrete found at an interior corner of said Parcel No. 1;

THENCE N 89°37'52" W along the most northerly south line of said Parcel No. 1, a distance of 2013.88 feet to a 1/2" capped iron rod set stamped "C.F. Stark RPLS 5084, at the most westerly southwest corner of said Parcel No. 1;

THENCE N 00°45'08" W, along the most westerly west line of said Parcel No. l, a distance of 1196.14 feet to a 5/8" rod found;

THENCE N 01°17'22" W, continuing along the most westerly west line of said Parcel No. 1, a distance of 1964.12 to a 5/8" capped iron rod found stamped "Brooks Baker" at the northwest corner off said Parcel No. l and being the southwest corner of said Parcel No. 2, from which a 5/8" capped iron rod found (not legible) bears S 88°46'12" E, a distance of

728.31 feet for reference;

THENCE N 01°17'05" W, along the west line of said Parcel 2, a distance of3591.76 feet to the POINT OF BEGINNING and containing 2055.70 acres, more or less.

**SAVE AND EXCEPT** that certain 381.66 acres tract of land as conveyed to GH Lumar JV in Warranty Deed, filed 09/13/2019, recorded in cc#2019-24134, Real Property Records, Parker County, Texas.

**SAVE AND EXCEPT** that certain 23.95 acres of land, situated in Parker County, Texas, out of the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 119, the JAMES BRADLEY SURVEY, ABSTRACT NUMBER 120, the JOHN D. BAY SURVEY, ABSTRACT NUMBER 195 and the J. H. REAN SURVEY, ABSTRACT NUMBER 1106, and being part of a 2055.70 acre tract of land that is described in a deed from The Dixon Water Foundation to BM 318, LLC, dated November 26, 2018, recorded in Instrument No. 201829926, Official Public Records of Parker County, Texas and further described as follows:

Notice of Lis Pendens

BEGINNING at a railroad spike set in Bear Creek Road, and being an internal corner of said 2055.70 acre tract, and being in the East line of a 381.66 acres tract of land that is described in a deed from BM 318, LLC to GH Lumar JV, dated September 11, 2019, recorded in Instrument No. 201924134, Official Public Records of Parker County, Texas, for the Northwest corner of this tract;

THENCE South 55 degrees 59 minutes 27 seconds East, 840.04 feet, along Bear Creek Road, with the North line of said 2055.70 acre tract, to a railroad spike set at the calculated Northeast corner of a 60 foot wide access easement that is described in deed to GH Lumar JV, for the Northeast corner of this tract;

☐

THENCE South 33 degrees 46 minutes 16 seconds West, 811.29 feet, to a 1/2 inch iron rod set, South 09 degrees 44 minutes 07 seconds West, 103.49 feet to a 1/2 inch iron rod set, South 32 degrees 59 minutes 06 seconds East 349.92 feet, to a 1/2 inch iron rod set, South 09 degrees 47 minutes 14 seconds East, 797.08 feet, to a 1/2 inch iron rod set, and South 00 degrees 31 minutes 28 seconds East, 655.53 feet, to a 1/2 inch iron rod set, for the Southeast corner of this tract;

THENCE North 80 degrees 56 minutes 20 seconds West 369.25 feet, to a 1/2 inch iron rod set in the East line of said 381.66 acre tract, for the Southwest corner of this tract;

THENCE with the East line of said 381.66 acre tract, as follows North 02 degrees 12 minutes 27 seconds West, 1405.48 feet, to a 1/2 inch iron rod set, North 69 degrees 20 minutes 36 seconds West, 89.55 feet, to a 1/2 inch iron rod set, and North 02 degrees 12 minutes 27 seconds West, 1487.68 feet, to the Point of Beginning and containing 23.95 acres of land.

**SAVE AND EXCEPT**

**BEING 118.34 acres situated in the JAMES BRADLBY SURVEY, ABSTRACT NO. 120, Parker County, Taxes, being a portion of that certain tract of land described in deed a Parcel No. 2, to The Dixon Foundation, recored in Book 2416, Page 417, Official Public Records, Parker County, Texas, said 118.34 acres being more particularly described as follows**

**BEGINNING at most westerly northwest corner of said Parcel No. 2, in Bear Creek Road (Right-of-Way varies), from which a 2" steel**

**fence corner post found the south line of said Bear Creek Road bears S 01°12'56" E, a distance**

**of 40.00 feet, for reference, said BEGINNING point having a NAD 83, Zone**

**4202 (Grid) Coordinate value of NORTH: 6918277.984 and EAST: 2233063.538, for reference;**

**THENCE S 67°36'03" E, along the approximate centerline of said Bear Creek Road and along the most north line of said Parcel No. 2, a distance of 2856.45 feet to a point for the northeast, corner of the herein described 118.34 acre tract;.**

**THENCE S 24°50'49" W, leaving the approximate approximate centerline of said Bear Creek Road, and being along the west line of a Fifty (50} foot wide Right-of-way Agreement to ONEOK Arbuckle Pipeline, L.L.C., recorded in Book 2651, Page 405, Official Public Records, Parker County, Texas, at distance of 23.85 feet, passing a 1/2" capped iron rod set stamped "C.F. Start RPLS 5084", and continuing, along the west line of said Fifty (5O)foot wide Right-of-Way Agreement, in all, a distance of 205.78 feet to a 1/2"capped Iron rod set stamped "C.P. Stark RPLS 5084";**

**THENCE S 04°46'43" W, continuing along the west line of said Fitly (5O) foot wide Right-of-Way Agreement, a distance of 1684.81 feet to a point in the approximate centerline of Bear Creek for the southeast Corner of the herein described 118.34 acre tract;**

**THENCE along the approximate centerline of said Bear Creek, as follows:**

**N61°36'37" W, a distance of 807.44 feet to a point;**

N 71°14'04" W, a distance of 217.93 feet to a point;

N 85°16'07" W, a distance of 121.44 feet to a point;

S 77°05'53"W, a distance of 141.01 feet to a point;

S 82°12'59"' W, a distance of 239.64 feet to a point;

S 49°32'26" W, a distance of 208.64 feet to a point;

N 86011'59"W, a distance of 114.28 feet to a point;

N 53045'49" W, a distance of 175.97 feet to a point;

N47°13'56"W, a distance of 200.18 feet to point;

N 80°08'35" W, a distance of 392.40 feet to a point in the west line of said Parcel No. 2, for the southwest corner of the herein described 118.34 acre tract, from which a 5/8" capped Iron rod found at the southwest corner of said Parcel No. 2 bears S01017'05" E, a distance of 1216.41 feet, for reference;

THENCE N01°1705" W, along the west line of said Parcel No. 2, a distance of 2375.35 to the POINT OF BEGINNING and containing 118.34 acres of land more or less.

---

***TRACT2***

**TOGETHER WITH ACCESS EASEMENT CREATED BY THAT CERTAIN ACCESS EASEMENT, FILED 02/06/2020, RECORDED IN CC#202003138, REAL PROPERTY RECORDS, PARKER COUNTY, TEXAS**

**FILED AND RECORDED**

OFFICIAL PUBLIC RECORDS

Lila Deakle

202423549
09/10/2024 03:52 PM
Fee: 41.00
Lila Deakle, County Clerk
Parker County, TX
LISPENDEN

# Exhibit E
(to Motion to Enforce Settlement)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| BM318, LLC | § | Case No. 20-42789-mxm |
| | § | |
| Debtor. | § | |
| ___ | § | ___ |
| | § | |
| BM318 | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | Adv. Proc. No. 21-04051-mxm |
| THE DIXON WATER FOUNDATION, | § | |
| | § | |
| Defendant, | § | |
| | § | |
| LUMAR LAND & CATTLE, LLC | § | |
| | § | |
| Plaintiff-In-Intervention. | § | |

**ORDER GRANTING LUMAR LAND & CATTLE, LLC'S MOTION TO ENFORCE SETTLEMENT AND DISSOLVE AND EXPUNGE SECOND LIS PENDENS FILED BY TIMOTHY BARTON**

On __________________ 2024, in Fort Worth, Texas, came on for consideration the *Motion to Enforce Settlement and Dissolve and Expunge Second Lis Pendens Filed by Timothy*

*Barton* [BK Docket no. ___; Adv. Docket. No. __ ] ("Motion") filed by Lumar Land & Cattle, LLC ("Lumar") to enforce prior orders of the Court against Timothy Barton ("Barton"). Defined terms in the Motion are given the same meaning herein. With respect to the Motion, the Court finds as follows:

a) Adequate and proper notice of both the Motion and the hearing thereon has been given to Barton.

b) The Motion seeks to enforce the Court's prior orders approving a settlement among the Debtor, BM318, LLC ("BM318"), Dixon Water Foundation ("Foundation"), and Lumar relating to the following adversary proceeding ("Adversary Proceeding"):

> *BM318, LLC v. The Dixon Water Foundation, et al*., Adversary Proceeding No. 21-04051-mxm, in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division

c) As an action to enforce the Court's own orders, the Motion is a "core" proceeding. *Van Deelen v. Dickson*, 2024 U.S. App. LEXIS 21036 *6 (5th Cir. Aug. 20, 2024), citing *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own orders"); *QuarterNorth Energy, LLC v. Atl. Mar. Servs., LLC* (*In re Fieldwood Energy, LLC*), 687 B.R. 712, 715 (Bankr. S.D. Tex. 2022) ("A bankruptcy court has continuing core jurisdiction to enforce its own orders").

d) A settlement of the Adversary Proceeding was reached among BM318 (acting through the Receiver as defined below), the Foundation, and Lumar. The Motion seeks to enforce the Court's Orders [BK Docket nos. 163 and 164] (collectively, the "Settlement Orders") approving this settlement and the *Agreed Final Judgment* ("Judgment")[Adv. Docket no. 142] entered in the Adversary Proceeding pursuant to the Settlement Orders. The Court retained, has, and hereby exercises, this core jurisdiction to interpret and enforce both the Settlement Orders and the Final Judgment.

e) Both of the Settlement Orders have become final for all purposes. Although

Barton has appealed the Final Judgment,[1] Barton has neither sought nor obtained a stay pending appeal of the Final Judgment.

f) The Adversary Proceeding was based on avoidance actions pursuant to section 547 and 548 of the Bankruptcy Code asserted by BM318 to avoid a conveyance of a portion of a 2,055-acre tract of land ("Original Tract") by BM318 to the Foundation pursuant to a deed in lieu of foreclosure. The Original Tract includes the 204-acre tract ("Lumar Land") conveyed by the Foundation to Lumar after BM318 conveyed the Original Tract to the Foundation.

g) While the Adversary Proceeding was pending, the Securities and Exchange Commission (SEC) commenced the following lawsuit against Barton ("SEC Lawsuit"):

> *Securities and Exchange Commission v. Timothy Barton, et al.*, Case No. 3:22-cv-2118 in the United States District Court for the Northern District of Texas, Dallas Division

Cortney Thomas was appointed as a receiver ("Receiver") in the SEC Lawsuit. Barton has appealed the order ("Receiver Order") appointing the Receiver in the SEC Lawsuit. The appeal is currently pending before the Fifth Circuit. However, Barton has not obtained a stay pending appeal of the Receiver Order.

h) The settlements pursuant to the Settlement Orders resolved all claims by BM318 to hold or assert any right, title, or interest in the Original Tract, including the Lumar Tract as a part thereof. The Final Judgment dismissed with prejudice BM318's claims to assert any interest in the Original Tract as well as the Lumar Tract as a part of the Original Tract. Pursuant to the Settlement Orders, the Final Judgment also approved the form of the Lumar Release. The Lumar Release includes a release by BM318 of any right, title, or interest in the Lumar Land.

---

[1] Barton has appealed the Final Judgment in the following cause: *Timothy Barton v. Dixon Water Foundation, et al.*, Civ. Act. No.: 4:24-cv-863-P in the United States District Court for the Northern District of Texas, Fort Worth Division. This appeal is still pending.

i) Barton, acting pro se, has filed a Notice of Lis Pendens ("Second Lis Pendens") on September 10, 2024, in the Official Records of Parker County, Texas, as Document 202423549. The Second Lis Pendens also relates to the 2,055-acre Original Tract which constituted the subject matter of the Adversary Proceeding. The Second Lis Pendens is based upon the SEC Lawsuit and Barton's appeal of the Receiver Order. In executing the Second Lis Pendens, Barton purports to act on behalf BM318 as its manager and president. However, pursuant to the Receiver Order, only the Receiver has authority to act on behalf of BM318. While Barton has appealed the Receiver Order, he had not obtained a stay pending appeal. Consequently, Barton had no authority to act on behalf of BM318 in executing the Second Lis Pendens.

j) The Second Lis Pendens is contrary to the Settlement Orders and the Final Judgment. The only rights asserted by BM318 against the Original Tract, or the Lumar Tract as a part thereof, are those asserted by BM318 through the Adversary Proceeding. Any right, title, or interest claimed or held by BM318 in either the Original Tract or the Lumar Land, including any rights claimed by BM318 in the land pursuant to the Adversary Proceeding, were subject to this Court's exclusive *in rem* jurisdiction. *See* 28 U.S.C., section 1334(e); *Central Va. Comm. Coll. v. Katz*, 546 U.S. 356, 362 (2005) ("Bankruptcy jurisdiction is, at its core, is *in rem* jurisdiction"); *Tenn. Stud. Asst. Corp. v. Hood*, 541 U.S. 440, 448 (2004). As an exercise of this exclusive *in rem* jurisdiction, the Court approved the settlements relating to the Adversary Proceeding pursuant to the Settlement Orders. This included the Final Judgment which dismissed with prejudice BM318's claims to any interest in the Original Tract (which includes the Lumar Land as a part thereof). These claims were the sole basis for any claim by BM318 of any right, title, or interest in the Lumar Land. The Lumar Release approved in the Final Judgment contains a release by BM318 of all right, title, or interest in the Lumar Land.

k) Any claim by BM318 to any interest in the Original Tract or the Lumar Tract as a part thereof is precluded by the Settlement Orders, the Final Judgment, and the Lumar Release.

Consequently, the outcome of Barton's appeal of the Receiver Order can have no effect on the title to the land.

l) The Second Lis Pendens is in violation of, and contrary to, the terms of the settlements among BM318, the Foundation, and Lumar which were approved in the Settlement Orders and the Final Judgment. A lis pendens must relate to the title to or an interest in the land. *See* section 12.007(a) of the Tex. Prop. Code. Based upon the settlements, BM318 has no right, title, or interest in the Original Tract (or the Lumar Tract as a part thereof) to support the Second Lis Pendens.

m) The Second Lis Pendens is of no force or effect. First, Barton had no authority to file the Second Lis Pendens on behalf of BM318. Second, under the settlements BM318 has no claim to any right, title, or interest in either the Original Tract or to the Lumar Land as a part thereof. Consequently, the Second Lis Pendens is contrary to, and in violation of, the Settlement Orders and the Final Judgment and the documents executed pursuant thereto, including the Lumar Release.

n) The Motion should be granted and the Second Lis Pendens should be dissolved and expunged in all respects.

**ACCORDINGLY**, it is hereby **ORDERED** that:

1. The Motion is hereby GRANTED.

2. The Settlement Orders, the Final Judgment, and the Lumar Release preclude BM318 from asserting any right, title, or interest in and to either the Original Tract or the Lumar Land as a part thereof. The assertion by BM318 of any right, title, interest, or claim in either the Original Tract or the Lumar Land as a part thereof is contrary to the Settlement Orders, the Final Judgment, and the Lumar Release.

3. Barton had no authority to execute and file the Second Lis Pendens on behalf of BM318.

4. The Second Lis Penden is hereby dissolved and expunged for all purposes, and shall be of no force or effect against either the Original Tract or the Lumar Land.

5. The Court retains jurisdiction to construe and enforce this Order.

**# # # END OF ORDER # # #**